# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: AGGRENOX ANTITRUST LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>*Miami-Luken, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG*, et al., No. 14-cv-00477 (D. Conn.)<br><br>*Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG*, et al., No. 3:14-cv-000485-SRU (D. Conn.)<br><br>*American Sales Company, LLC v. Boehringer Ingelheim Pharma GmbH & Co. KG*, et al., No. 3:14-cv-00003-CSH (D. Conn.)<br><br>*Cesar Castillo, Inc. v. Boehringer Ingelheim Pharma GMBH & Co. KG, et al.*, No. 3:14-cv-00225-JBA (D. Conn.) | No. 3:14-md-02516 (SRU) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PLAINTIFFS MIAMI-LUKEN, INC., ROCHESTER DRUG CO-OPERATIVE, INC., AND AMERICAN SALES COMPANY, LLC FOR THE ENTRY OF <u>CASE MANAGEMENT ORDER NO. 1</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 3

    A.   The Direct Purchaser Class Plaintiffs' Allegations ........................................ 3

    B.   Procedural History ......................................................................................... 5

III.  ARGUMENT .......................................................................................................... 7

    A.   Consolidation of the Direct Purchaser Cases is Proper under Fed. R. Civ. P. 42(a) ................................................................................................................ 7

    B.   Appointment of Interim Co-Lead and Liaison Counsel is Proper under Fed. R. Civ. P. 23(g) .................................................................................................... 8

        1.   Proposed Co-Lead Counsel's Efforts to Identify and Investigate the Class's Claims ....................................................................................................... 10

        2.   Proposed Co-Lead Counsel's Experience in Litigating Pharmaceutical Antitrust Litigation, Including Pay-for-Delay Claims ............................... 10

        3.   Proposed Co-Lead Counsel's Commitment to Provide All Resources Needed to Represent the Class ................................................................... 19

IV.   CONCLUSION ..................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Callahan v. Unisource Worldwide, Inc.*,
  2004 U.S. Dist. LEXIS 3351 (D. Conn. Feb. 24, 2004) ...........................................7

*FTC v. Actavis, Inc.*,
  133 S.Ct. 2223 (2013) .........................................................................................3, 19

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 2008 U.S. Dist. LEXIS
  106327, 37 (S.D.N.Y. Dec. 29, 2008) .....................................................................9

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) .......................13

*Kelleher v. ADVO, Inc.,*
  2007 U.S. Dist. LEXIS 30309 (D. Conn. April 24, 2007) ........................................7

*Saudi Basic Indus. Corp. v. Exxonmobil Corp.*,
  194 F. Supp. 2d 378 (D.N.J. 2002) *vacated on other grounds by Exxon Mobil
  Corp. v. Saudi Basic Indus. Corp., 3*64 F.3d 102 (3d Cir. 2004) .............................7

*Sklar v. Bank of Am. Corp.*
  258 F.R.D. 260 (S.D.N.Y. 2009) .............................................................................9

*United States v. 43.47 Acres of Land in Litchfield*,
  45 F. Supp. 2d 187 (D. Conn. 1999) ........................................................................7

*Waudby v. Verizon Wireless Services, Inc.*,
  248 F.R.D. 173 (D.N.J. 2008) .................................................................................9

STATUTES

Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417,
  98 Stat. 1585 (1984) ("Hatch-Waxman") ........................................................4, 11, 13

5 U.S.C. §§1 and 2 ...............................................................................................5, 7, 8

15 U.S.C. §15(a) ..................................................................................................5, 7, 8

**OTHER AUTHORITIES**

C.A. Wright and A.R. Miller, *Federal Practice and Procedure* (2008 ed.), at 7 ............................1

Fed. R. Civ. P. 23(g) ...................................................................................................1, 8, 9, 10, 20

Fed. R. Civ. P. 42(a) ...............................................................................................................1, 7, 8

Manual for Complex Litigation (Fourth) ...........................................................................2, 9, 20

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 42(a) and 23(g), direct purchaser plaintiffs Miami-Luken, Inc. ("Miami-Luken"), American Sales Company, LLC ("American Sales"), Rochester Drug Co-Operative, Inc. ("RDC")  (collectively the "Majority Plaintiffs"), comprising three of the four pending direct purchaser class actions, respectfully move for entry of Case Management Order No. 1: (a) consolidating into one action all direct purchaser class actions involving a common question of law or fact that have been or will be transferred to or filed in this district; (b) appointing interim co-lead and liaison counsel, along with an executive committee, for the proposed class of direct purchasers of Aggrenox (the "Direct Purchaser Class"); and (c) establishing a preliminary case schedule.[1]  The plaintiff in the fourth class case, Caesar Castillo, Inc., which filed its complaint, a virtual copy of the earlier filed complaints, on February 24, 2014, more than three months after the first case was filed, declines to stipulate to this motion. Nonetheless, Grant & Eisenhoffer, P.A., Caesar Castillo's counsel, has been offered a position on the executive committee and will have a fair opportunity to participate in this litigation if the organizational structure envisioned by proposed Case Management Order No. 1 is adopted by the Court.

Fed. R. Civ. P. 42(a) permits the Court to consolidate actions that involve common questions of fact.[2]  Fed. R. Civ. P. 23(g)(3) permits the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." In complex litigation, it is recommended practice to consider these matters early in the litigation

---

[1] *In re: Aggrenox Antitrust Litigation*, No. 3:14-md-02516-SRU, Transfer Order, ECF No. 1 (D. Conn. April 3, 2014).

[2] C.A. Wright and A.R. Miller, *Federal Practice and Procedure* (2008 ed.), at 7.

and to set forth the identities and functions of interim lead and liaison counsel "in either court order or separate document drafted by counsel for judicial approval and review."[3]

Counsel for Majority Plaintiffs have a decade-long history of working together as co-leads in some of the nation's largest pharmaceutical antitrust cases brought on behalf of direct purchaser plaintiffs, resulting in over a billion dollars for class members consisting of large and sophisticated pharmaceutical wholesalers.  In that time, the three firms have adopted a leadership structure that has the confidence of the vast majority of the class members and lawyers who have regularly represented essentially the same class in these cases over the past dozen years.

The proposed interim co-lead counsel have developed a keen understanding of the unique capabilities of each of the firms, and the individual attorneys associated with the firms.  The proposed co-lead counsel have learned to leverage these capabilities by working across the firms to develop effective litigation strategies, maximize resources, and ensure that our clients receive the best representation possible at every stage of the litigation, from case development through trial.  Proposed co-lead counsel share a dedication to the class representatives and class members as fiduciaries and expend every possible effort to obtain the best outcome in every action our firms lead together.  The proposed executive committee members[4] are trusted partners who have time and again provided essential and extensive support to further augment our firms' capabilities.  As illustrated further below, the result has been outstanding outcomes, as reflected in the widespread support for our co-leadership within the proposed class.[5]  Therefore, Majority

---

[3] Manual for Complex Litigation (Fourth) §10.222 (the "Manual").

[4] For the reasons stated below, the proposed members of the executive committee are Odom & Des Roches, LLC; Smith, Segura & Raphael LLP, Faruqi & Faruqi, LLP; Taus, Cebulash and Landau LLP; The Radice Law Firm, P.C.; and counsel for Caesar Castillo, Grant & Eisenhoffer, P.A.

[5] The following represent a sample of matters Garwin Gerstein, Berger & Montague, and HBSS are productively collaborating on currently.  *In re Suboxone (Buprenorphine Hydrochloride and*

Plaintiffs respectively request the Court to consolidate the direct purchaser actions and appoint interim lead counsel, liaison counsel, and an executive committee for the direct purchaser class as set forth in proposed Case Management Order No. 1.

## II.   BACKGROUND

### A.   The Direct Purchaser Class Plaintiffs' Allegations

These antitrust actions seek damages for the delayed entry of generic 200 mg extended-release version of dipyridamole / 25 mg acetylsalicylic acid (the generic name for Aggrenox), a prescription drug marketed by pharmaceutical manufacturer Boehringer Ingelheim Pharmaceuticals, Inc. ("BI"). The plaintiffs in all direct purchaser actions challenge an alleged antitrust conspiracy between brand and generic manufacturers of Aggrenox, an expensive drug used to treat patients who have had transient ischemia of the brain or completed ischemic stroke due to thrombosis.[6] The case is governed by the Supreme Court's recent decision in *FTC v. Actavis, Inc.*,[7] which held that payments made by brand pharmaceutical companies to delay generic drug competition are illegal if the finder of fact determines that they violate the antitrust rule of reason.

---

*Naloxone) Antitrust Litig.*, No. 13-md-2445 (E.D. Pa.); *In re Lipitor Antitrust Litig.*, No. 12-2389 (D.N.J.); *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-02431 (E.D. Pa.); *In re Nexium Antitrust Litig.*, No. 12-md-2409). More detailed examples of our firms' individual and shared successes are described below.

[6] *See Miami-Luken, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,* No. 2:13-cv-06543-MSG, Complaint ¶1, ECF No. 1 (E.D. Pa. filed on November 8, 2013)("M-L Compl."); *Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 2:13-cv-06992-MSG, Complaint ¶1, ECF No. 1 (E.D. Pa. filed on December 2, 2013) ("RDC Compl."); *American Sales Company, LLC v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:14-cv-00003-CSH, Complaint ¶1, ECF No. 1 (D. Conn. filed on January 2, 2014) ("Am. Sales Compl."); and *Cesar Castillo, Inc. v. Boehringer Ingelheim Pharma GMBH & Co. K,G et al.*, No. 3:14-cv-00225-JBA, Complaint ¶ 1, ECF No. 1 (D. Conn. filed on February 24, 2014) ("Castillo Compl.").

[7] 133 S.Ct. 2223 (2013).

In 2008, BI had about $366 million in annual U.S. sales of Aggrenox.[8]  Defendant Barr

Pharmaceuticals, Inc. ("Barr") sought FDA approval to market a generic version of Aggrenox

pursuant to the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98

Stat. 1585 (1984) ("Hatch-Waxman"),[9] and BI and its affiliates then sued Barr for patent

infringement.  BI and Barr subsequently resolved the patent litigation with a settlement that

Majority Plaintiffs allege is anticompetitive because it delayed generic competition for Aggrenox

in exchange for allowing Barr to share in BI's monopoly profits.  (BI, Barr, and their affiliates or

successors named in the various complaints are collectively referred to as "Defendants.")

Specifically, the agreement required Barr to drop its challenge to the patent purportedly

covering Aggrenox and delay entering the market with its competing generic Aggrenox product

until July 1, 2015, in exchange for approximately $120 million in payments made under the

guise of a co-promotion agreement.[10]

The large, unexplained, and continuing payments under these agreements, which were

funded by overcharges paid by Aggrenox purchasers, have insulated BI from generic Aggrenox

price competition for years.[11]  Today, all manufacturers of generic Aggrenox remain blocked

from the market, and purchasers continue to pay significantly inflated, supracompetitive prices

for 200 mg extended-release version of dipyridamole / 25 mg acetylsalicylic acid.[12]

The Majority Plaintiffs, on behalf of themselves and the proposed class of direct

purchasers of Aggrenox, seek overcharge damages from the Defendants, and each of the Direct

---

[8] M-L Compl. ¶2; RDC Compl. ¶2; Am. Sales Compl. ¶1.

[9] M-L Compl. ¶4;  RDC Compl. ¶4; Am. Sales Compl. ¶2; Castillo Compl. ¶4.

[10] M-L Compl. ¶6;  RDC Compl. ¶6; Am. Sales Compl. ¶¶6-8; Castillo Compl. ¶6.

[11] M-L Compl. ¶12;  RDC Compl. ¶12; Am. Sales Compl. ¶13; Castillo Compl. ¶12.

[12] M-L Compl. ¶12;  RDC Compl. ¶12; Am. Sales Compl. ¶13; Castillo Compl. ¶12.

Purchaser Class complaints allege that Defendants' conduct violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1 and 2, which violations are made privately actionable through Section 4 of the Clayton Act, 15 U.S.C. §15(a).[13]

### B.     Procedural History

Prior to filing its complaint, Plaintiff Miami-Luken, through counsel, had been extensively investigating the delayed launch of generic versions of Aggrenox in the United States.  That investigation included gathering information regarding the market availability of generic versions of Aggrenox, reviewing and analyzing the Aggrenox patent litigation proceedings, and researching and reviewing publicly available information regarding the terms and conditions of the settlement of the lawsuit.

By early November, Miami-Luken, who through counsel had spent hundreds of hours investigating and preparing to file the action, filed its complaint in the Eastern District of Pennsylvania.[14]  Soon thereafter, on December 2, 2013, RDC filed its complaint in the Eastern District of Pennsylvania.[15]  One month later, on January 2, 2014, American Sales filed a separate complaint in the District of Connecticut elaborating on certain claims and asserting an earlier class period start date.[16]

---

[13] M-L Compl. ¶1;  RDC Compl. ¶1; Am. Sales Compl. ¶1; Castillo Compl. ¶1.

[14] *Miami-Luken, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,* No. 2:13-cv-06543-MSG, ECF No. 1 (E.D. Pa. filed on November 8, 2013) (the "*Miami-Luken*" action).

[15] *Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,* No. 2:13-cv-06992-MSG, ECF No. 1 (E.D. Pa. filed on December 2, 2013) (the "RDC" action).

[16] *American Sales Company, LLC v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,* No. 3:14-cv-00003-CSH, ECF No. 1 (D. Conn. filed on January 2, 2014).

In late February 2014, more than three months after Miami-Luken filed the first complaint in this action, plaintiff Cesar Castillo filed a complaint substantially duplicating the allegations of the previously filed complaints.[17]

After filing their respective complaints, Miami-Luken, RDC, and American Sales promptly served all domestic defendants,[18] and Miami-Luken and RDC engaged a third-party contractor to begin translating the complaints into German for service on the two German defendants, Boehringer Ingelheim Pharma GmbH & Co. KG and Boehringer Ingelheim International GmbH, in accordance with the Hague Convention.  Counsel for Miami-Luken and RDC engaged in meet and confer conferences with counsel for the Defendants on January 16, 2014, February 19, 2014 and March 5, 2014 to discuss service issues and initial document productions together with an interim confidentiality agreement governing production.  As a result of agreements reached during the meet and confer process, Plaintiffs and Defendants entered into a confidentiality agreement and began producing documents in late March 2014.

On April 3, 2014, the United States Judicial Panel on Multidistrict Litigation issued an order transferring the Direct Purchaser Class Actions (as well as indirect purchaser class actions) to this Court.[19]  Meanwhile, all Direct Purchaser Class Plaintiffs had agreed to, and their respective transferor courts had ordered, an extension of time to answer or move.  As proposed Case Management Order No. 1 provides, the Direct Purchaser Class Plaintiffs propose to file a Consolidated Amended Class Action Complaint by May 9, 2014, which counsel for the Majority

---

[17] *Cesar Castillo, Inc. v. Boehringer Ingelheim Pharma GMBH & Co. K,G et al.*, No. 3:14-cv-00225-JBA, ECF No. 1 (D. Conn. filed on February 24, 2014).

[18] *See Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG*, *et al.*, No. 2:13-cv-06992-MSG, Affidavit of Service, ECF No. 9 (E.D. Pa. filed on January 29, 2014).

[19] *In re: Aggrenox Antitrust Litigation*, No. 3:14-md-02516-SRU, Transfer Order, ECF No. 1 (D. Conn. April 3, 2014).

Plaintiffs have already started drafting in anticipation of consolidation of the above captioned

direct purchaser Plaintiffs' actions.

## III.    ARGUMENT

### A.    Consolidation of the Direct Purchaser Cases is Proper under Fed. R. Civ. P. 42(a)

Where actions before a court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions;

or (3) issue and other orders to avoid unnecessary cost or delay.[20]  Thus, consolidation may be

"the most efficient and convenient resolution" when, for example, evidence and witnesses

overlap.[21]  Whether consolidation is warranted in cases that involve common questions of law or

fact is a determination that falls within the discretion of the court.[22]

All Direct Purchaser Class Plaintiffs allege that Defendants engaged in an

anticompetitive scheme to maintain BI's monopoly in the U.S. market for 200 mg extended-

release version of dipyridamole / 25 mg acetylsalicylic acid products in violation of sections 1

and 2 of the Sherman Act.  All actions seek damages for a proposed Direct Purchaser Class

under section 4 of the Clayton Act.  The evidence and witnesses in the actions will be the same.

Moreover, any subsequently-filed or transferred direct purchaser action arising from the same

---

[20] Fed. R. Civ. P. 42(a).

[21] *See Saudi Basic Indus. Corp. v. Exxonmobil Corp.*, 194 F. Supp. 2d 378 (D.N.J. 2002) *vacated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 364 F.3d 102 (3d Cir. 2004).  *See, e.g., Kelleher v. ADVO, Inc.,* 2007 U.S. Dist. LEXIS 30309, at *4-5 (D. Conn. Apr. 24, 2007) ("The complaints in these three actions uniformly allege that in violation of federal securities law, the defendants made false statements regarding ADVO's financial value in order to ease a merger with another company.  Further, the complaints each allege that the plaintiffs relied upon these statements to their detriment.").

[22]*Callahan v. Unisource Worldwide, Inc.*, 2004 U.S. Dist. LEXIS 3351, at *5-6 (D. Conn. Feb. 24, 2004); *United States v. 43.47 Acres of Land in Litchfield*, 45 F. Supp. 2d 187, 194 (D. Conn. 1999).

questions of law and fact, alleging substantially the same wrongful conduct against the same

defendants, asserting violations of sections 1 and 2 of the Sherman Act, and seeking certification

of the same nationwide class for damages under section 4 of the Clayton Act, will entail

substantially the same evidence and witnesses.  Accordingly, in the interest of efficiency,

consistency, and judicial economy, all direct purchaser actions transferred to this Court, as well

as all subsequently filed or transferred actions, should also be consolidated under Fed. R. Civ. P.

42(a)(2).

**B.      Appointment of Interim Co-Lead and Liaison Counsel is Proper under Fed. R. Civ. P. 23(g)**

The Majority Plaintiffs propose that the firms Garwin Gerstein & Fisher LLP ("Garwin

Gerstein" or "GGF," counsel for Miami-Luken), Berger & Montague, P.C. ("Berger Montague"

or "B&M," counsel for RDC), and Hagens Berman Sobol Shapiro LLP ("Hagens Berman" or

"HBSS," counsel for American Sales) serve as interim co-lead counsel for the proposed Direct

Purchaser Class ("Interim Co-Lead Counsel"); that the following six firms be appointed

members of an interim executive committee to assist Interim Co-Lead Counsel in the prosecution

of the case: Odom & Des Roches LLC, co-counsel for Miami-Luken; Smith, Segura & Raphael

LLP, co-counsel for Miami-Luken; Faruqi & Faruqi, LLP, co-counsel for RDC; Taus, Cebulash

and Landau LLP, co-counsel for RDC; The Radice Law Firm, P.C., co-counsel for American

Sales; and Grant & Eisenhoffer, P.A, counsel for Caesar Castillo.  Additionally, the Direct

Purchaser Class Plaintiffs also propose that Roche Pia, LLC, which has offices in Shelton, CT,

serve as interim liaison counsel for the proposed Direct Purchaser Class ("Interim Liaison

Counsel").

Pursuant to Federal Rule of Civil Procedure 23(g), this Court may "designate interim

counsel to act on behalf of a putative class before determining whether to certify the action as a

class action." Fed. R. Civ. P. 23(g).  Courts choosing interim class counsel apply the same standards set forth in Fed. R. Civ. P. 23(g)(1) for the appointment of counsel for a certified class.[23]

Rule 23(g)(1) provides, in relevant part, that in appointing class counsel the Court:

(A)   must consider:

(i)   the work counsel has done in identifying or investigating potential claims in the action;

(ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law; and

(iv)   the resources that counsel will commit to representing the class; and

(B)   may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

A class is fairly and adequately represented where counsel is "qualified and responsible, … will fairly and adequately represent all of the parties on their side, and [if] their charges will be reasonable."[24]  By designating a leadership structure, entry of Case Management Order No. 1 will facilitate the orderly advancement of this litigation and result in substantial efficiencies for the parties and the Court, thus comporting with the Manual's recommendations for the management of complex litigation.[25]

---

[23] *Sklar v. Bank of Am. Corp.* 258 F.R.D. 260, 272 (S.D.N.Y. 2009);  *Waudby v. Verizon Wireless Services, Inc.*, 248 F.R.D. 173, 175-76 (D.N.J. 2008).

[24] *Sklar v. Bank of Am. Corp.* 258 F.R.D.  at 272 (S.D.N.Y. 2009) (citing *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 2008 U.S. Dist. LEXIS 106327, at *37 (S.D.N.Y. Dec. 29, 2008).

[25] *See* Manual §§ 10.123, 10.22, 10.221.

Moreover, there need not be a single firm acting as lead counsel.  Co-lead counsel have been appointed in several recent class action lawsuits alleging pay-for-delay conspiracies, and three-firm co-lead counsel structures have become the norm.[26]

The firms designated herein meet the applicable criteria for serving as interim Class Counsel.   Our firms have worked, separately and together, to identify and investigate the potential claims; are experienced in working as a team to provide representation in pharmaceutical antitrust litigation that is second to none; possess in-depth knowledge of the applicable law; and possess the resources, individually and collectively, to represent the proposed Class.  *See* Fed. R. Civ. P. 23(g)(1).  We review each of these factors below.

1. **Proposed Co-Lead Counsel's Efforts to Identify and Investigate the Class's Claims**

Counsel for the Majority Plaintiffs filed the first three cases (Miami-Luken, then RDC and American Sales), and thus have been involved in this litigation from the outset, identifying and framing the issues, and then engaging Defendants in negotiations over discovery and an interim protective order, and getting discovery started.

2. **Proposed Co-Lead Counsel's Experience in Litigating Pharmaceutical Antitrust Litigation, Including Pay-for-Delay Claims[27]**

Proposed Interim Co-Lead and Liaison counsel GGF, B&M, and HBSS are preeminent antitrust class action firms, and each has substantial experience in prosecuting class actions

---

[26] *In re Niaspan Antitrust Litig.*, No. 13-md-2460, Order ¶ 2, ECF No. 36 (E.D. Pa. Dec. 23, 2013) (3-firm co-lead counsel); *In re Suboxone Antitrust Litig.*, No. 13-md-2445, Pretrial Order No. 2 ¶ 2, ECF No. 44 (E.D. Pa. Aug. 7, 2013) (3-firm co-lead counsel); *In re Nexium Antitrust Litig.*, No. 12-md-2409, Order ¶ 2, ECF No. 101 (D. Mass. Jan. 24, 2013) (3-firm co-lead counsel); *In re Lipitor Antitrust Litig.*, No. 12-cv-2389, Case Management Order No. 1 Consolidating and Coordinating Cases ¶ 19, ECF No. 109 (D.N.J. Aug. 10, 2012) (3-firm co-lead counsel).

[27] In support of the information contained herein, Majority Plaintiffs refer the Court to the Declarations of Bruce E. Gerstein (GGF), David F. Sorensen (B&M), and Thomas F. Sobol (HBSS), submitted herewith.

alleging that brand drug companies, through monopolization or conspiracy, delayed generic drug competition, including the very type of pay-for-delay allegations asserted here.  The firms have the resources necessary to prosecute this action and will devote those resources to the prosecution of this action in the best interest of the class.

GGF (garwingerstein.com), counsel for Miami-Luken, is a pioneer in Hatch-Waxman antitrust litigation, having been involved in the first such direct purchaser class action "pay-for-delay" case (filed in 1998).  *See In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278 (E.D. Mich.).  GGF has been appointed lead or co-lead class counsel in a total of 16 pharmaceutical antitrust actions since that time, and is among the most experienced and successful pharmaceutical antitrust litigation firms in the country.  As lead or co-lead class counsel, GGF, along with its co-counsel, has been responsible for a combined recovery of more than one billion dollars on behalf of direct purchasers.  These cases include, among others:

- *In re Tricor Antitrust Litig.,* C.A. No. 05-cv-340 (D. Del.) ($250 million) (sole lead);

- *In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278 (E.D. Mich.) ($110 million) (co-lead);

- *In re Buspirone Antitrust Litig.*, MDL Docket No. 1410 (S.D.N.Y.) ($220 million) (co-lead);

- *In re Relafen Antitrust Litig.*, Master File No. 01-12239 (D. Mass.) ($175 million) (co-lead);

- *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317 (S.D. Fla.) ($75 million) (co-lead);

- *In re Remeron Antitrust Litig.*, C.A. No. 03-cv-323 (D.N.J.) ($75 million) (co-lead);

- *In re Nifedipine Antitrust Litig.*, MDL No. 1515 (D.D.C.) ($35 million) (co-lead);

- *Meijer, Inc., et al., v. Abbott Laboratories*, C.A. No. 07-cv-5985 (N.D. Ca.) ($52 million) (co-lead);

- *Rochester Drug Co-Operative, Inc., v. Braintree Laboratories, Inc.*, C.A. No. 07-cv-0142 (D. Del.) ($17.25 million) (co-lead);

- *In re OxyContin Antitrust Litigation*, MDL No. 04-md-1603 (S.D.N.Y.) ($16

million) (co-lead);

- *In re DDAVP Direct Purchaser Antitrust Litig.*, C.A. No. 05-cv-2237 (S.D.N.Y.) ($20.25 million) (co-lead).

Additionally, GGF is currently serving as court-appointed lead or co-lead counsel in several other complex pharmaceutical antitrust litigations involving pay-for-delay allegations. For example:

- *King Drug Company of Florence, Inc. v. Cephalon, Inc., et al.*, No. 06-cv-1797 (E.D. Pa.) (co-lead);

- *In re Androgel Antitrust Litig. (II)*, MDL No. 2084 (N.D. Ga.)(co-lead);

- *In re Prograf Antitrust Litig.*, MDL No. 2242 (D. Mass.)(co-lead);

- *In re Neurontin Antitrust Litig.*, MDL No. 1479 (D.N.J.)(co-lead);

- *In re K-Dur Antitrust Litigation*, No. 01-cv-1652 (D.N.J.) (JAG) (co-lead counsel);

- *In re Prograf Antitrust Litig.*, MDL Docket No. 2242 (D.Mass.) (co-lead counsel);

- *In re Lipitor Antitrust Litig.* MDL. Docket No. 2332 (D.N.J.) (co-lead counsel)

- *In re Lamictal Direct Purchaser Antitrust Litigation,* Docket No. 12-md-00995(DNJ) (sole lead)

- *In re Nexium (Esomeprazole) Antitrust Litig.*, MDL Docket No. 2409 (D. Mass.) (co-lead counsel)

- *In re Niaspan Antitrust Litig.*, MDL Docket No. 2460 (E.D.P.A.) (interim co-lead counsel)

- *In re Suboxone Antitrust Litig.*, MDL Docket No. 2445 (E.D.P.A.) (liaison counsel and interim co-lead counsel)

GGF has expertly and consistently performed (and is performing) critical work in the above cases, including: (a) formulating and implementing litigation strategy; (b) writing briefs and arguing key motions; (c) taking and defending the depositions of key fact and expert witnesses; (d) retaining and working with experts; (e) working cooperatively with co-counsel to ensure that all litigation tasks, including trial, are efficiently and thoroughly handled by those lawyers best suited to particular issues and tasks; and (f) successfully negotiating multi-million dollar settlements for the benefit of class members.

Bruce E. Gerstein is the senior partner of GGF and has personally supervised and been intimately involved in the litigation of these actions.  GGF's leadership and excellence as class counsel has been recognized repeatedly by the courts.  In the very first Hatch-Waxman antitrust case filed on behalf of direct purchasers, *In re Cardizem CD Antitrust Litig.*, District Court Judge Nancy G. Edmunds recognized the trailblazing efforts of GGF and its co-counsel, stating:

> Furthermore, in bringing this litigation, Plaintiffs' Counsel focused the attention of the FTC, the United States Congress, state legislatures, and State Attorneys General on anticompetitive conduct in the pharmaceutical industry that delays generic competition. This litigation has elevated the public debate on the intersection of patent and antitrust law. Congress has since worked to amend Hatch-Waxman's exclusivity provisions to curb the very abuses alleged in this action, and the President of the United States issued an Executive Order directed at those abuses. This case has helped put prescription drug pricing and marketing tactics at the forefront of media, Congressional scrutiny, and judicial scrutiny. Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society.

218 F.R.D. 508, 534 (E.D. Mich. 2003).

Berger & Montague (www.bergermontague.com) has handled complex and class action litigation from its Philadelphia office for over 40 years, and was among the first firms to prosecute cases such as this seeking to recover overcharges for a class of direct purchasers caused by unlawfully delayed generic competition.  Over the past decade, Berger & Montague has played a principal role in obtaining hundreds of millions of dollars in settlements from drug companies alleged to have impeded the entry of generics and artificially inflated drug prices. Berger & Montague is routinely appointed by federal courts to serve in leadership roles in complex antitrust class action cases.  For example, Berger & Montague has been appointed by federal courts as lead or co-lead counsel or played leading roles in:

- *In re Nexium (Esomeprazole) Antitrust Litigation*, No.12-md-2409-WGY (D. Mass.) (co-lead counsel, with HBSS and GGF);

- *In re Loestrin 24 FE Antitrust Litigation*, No. 13-md-2472 (D.R.I) (co-lead counsel);

- *In re Lipitor Antitrust Litig.*, MDL No. 2332 (D.N.J.) (co-lead counsel, with HBSS and GGF);

- *In re K-Dur Antitrust Litigation*, No. 01-01652 (D. N.J.) (co-lead counsel with GGF);

- *In re Niaspan Antitrust Litigation*, No. 2:13-md-2460 (E.D. Pa.)(liaison counsel and co-lead counsel with HBSS and GGF);

- *In re Effexor XR Antitrust Litigation*, No. 11-05479 (D. N.J.) (member of executive committee with HBSS and others);

- *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431 (E.D. Pa.) (co-lead counsel with HBSS);

- *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, No. 12-3824 (E.D. Pa.) (co-lead);

- *King Drug Company of Florence, Inc. v. Cephalon, Inc., et al.*, No.06-cv-1797 (E.D. Pa.) (liaison counsel and executive committee member);

- *In re Prandin Antitrust Litigation*, No. 10-cv-12141-AC-DAS (E.D. Mich.) (co-lead);

- *In re Androgel Antitrust Litigation* (II), MDL Docket No. 2084 (N.D. Ga.) (co-lead);

- *Rochester Drug Co-Operative, Inc., v. Braintree Laboratories, Inc.*, No. 07-cv-0142 (D. Del.) ($17.25 million settlement) (co-lead);

- *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, No. 06-52 (D. Del.) ($20 million settlement) (co-lead);

- *Meijer, Inc., et al., v. Abbott Laboratories*, Civil Action No. 07-cv-5985 (N.D. Ca.) ($52 million settlement) (co-lead);

- *In re DDAVP Direct Purchaser Antitrust Litigation*, Civil Action No. 05-cv-2237 (S.D.N.Y.) ($20.25 million settlement) (co-lead);

- *In re Tricor Antitrust Litig.*, Civil Action No. 05-cv-340 (D. Del.) ($250 million settlement) (member of trial team);

- *In re OxyContin Antitrust Litigation*, MDL No. 04-md-1603 (S.D.N.Y.) ($16 million settlement) (co-lead);

- *In re Nifedipine Antitrust Litigation*, MDL No. 1515 (D.D.C.) ($35 million settlement) (executive committee);

- *In re Remeron Antitrust Litig.*, Civil Action No. 03-cv-323 (D. N.J.) ($75 million settlement);

- *In re Buspirone Antitrust Litig.*, MDL Docket No. 1410 (S.D.N.Y.) ($220 million settlement) (steering committee);

- *In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278 (E.D. Mich.) ($110 million settlement) (executive committee); and

- *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317 (S.D. Fla.) ($75 million settlement) (executive committee).

Berger & Montague has also played leading roles in many antitrust cases outside the pharmaceutical context, including *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.), in which Berger & Montague is co-lead counsel and helped achieve a $7.25 billion and injunctive relief settlement.  The firm and its lawyers (including shareholder David F. Sorensen, who will be handling this matter) are regularly recognized by Chambers and Partners, The Legal 500, Martindale-Hubbell, America's Best Lawyers, Lawdragon.com, and The National Law Journal for outstanding work in antitrust litigation.  Chambers and Partners has noted that Berger & Montague "specializes in plaintiffs' antitrust class actions, and is noted for its exceptional work in pharmaceutical and financial disputes," is "the top choice for plaintiff antitrust representation, particularly in complex class actions" and "stand[s] out by virtue of its first-class trial skills."  Chambers also quotes Berger & Montague's clients as saying that "the lawyers are superb at preparing briefs and arguments, and they command the respect of the courts because they are always so well prepared."  Indeed, for seven straight years, Berger & Montague has been selected by Chambers and Partners' America's Leading Lawyers for Business as one of Pennsylvania's top antitrust firms. Furthermore, The National Law Journal has selected B&M in ten out of the last twelve years to

15

its "Hot List" of top plaintiffs'-oriented litigation firms in the United States with a history of high achievement and significant, groundbreaking cases.  Nationally, 15 or fewer firms are chosen for this honor.

Furthermore, attorneys from Berger & Montague have a long history of working successfully with GGF, HBSS, and the other firms in the proposed Executive Committee.

HBSS (www.hbsslaw.com) is a 60-lawyer firm, with offices in Berkeley, Boston, Chicago, Colorado, Los Angeles, Minnesota, New York, Phoenix, Seattle, and Washington D.C. Since its founding in 1993, HBSS has represented plaintiffs in a broad spectrum of complex, multi-party antitrust cases.  The firm has been recognized by courts throughout the United States for its ability and experience in handling major complex litigation.  HBSS has been listed in the *National Law Journal's* Plaintiffs' "Hot List" every year since 2009.

HBSS has extensive experience in pharmaceutical antitrust litigation.  Thomas M. Sobol, who will be primarily responsible for HBSS's participation in this matter, is the Managing Partner of the firm's Boston, MA office.  The firm's Boston office leads HBSS's drug litigation efforts and has significant experience representing purchasers in pharmaceutical antitrust actions. Individually and in conjunction with other members of his firm, Mr. Sobol has been appointed lead, co-lead, or liaison counsel in many pharmaceutical antitrust litigation matters, including the following:

- *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 13-md-2445 (E.D. Pa.)
- *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-2472 (D.R.I.);
- *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-MD-2343 (E.D. Tenn.);
- *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409 (D. Mass.);
- *In re Prograf Antitrust Litig.,* MDL No. 2242 (D. Mass.);
- *In re Lipitor Antitrust Litig.*, No. 12-2389 (D.N.J.);

16

- *In re Effexor XR Antitrust Litig.*, No 11-5479 (D.N.J.);

- *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141 (E.D. Mich.);

- *In re Flonase Antitrust Litig.*, No. 08-cv-3149 (E.D. Pa.);

- *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-02431 (E.D. Pa.);

- *In re OxyContin Antitrust Litig.*, MDL No. 1603 (S.D.N.Y.);

- *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, No. 06-cv-52 (D. Del.);

- *In re Tricor Indirect Purchasers Antitrust Litig.*, No. 05-cv-0360 (D. Del.);

- *In re Neurontin Antitrust Litig.*, MDL No.1479 (D.N.J.);

- *In re Paxil Direct Purchaser Litig.*, No. 03-cv-4578 (E.D. Pa.);

- *In re Augmentin Antitrust Litig.*, No. 02-cv-442 (E.D. Va.); and

- *In re Relafen Antitrust Litig.,* No. 01-cv-12239 (D. Mass.).

In addition, reflecting HBSS's broad experience in pharmaceutical industry litigation generally HBSS has also been appointed lead or co-lead counsel in many pharmaceutical industry pricing and marketing actions, including:

- *New England Carpenters Health Benefits Fund v. First DataBank, Inc. and McKesson Corp.*, No. 05-cv-11148 (D. Mass.) (AWP manipulation);

- *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litig.*, MDL No. 1699 (N.D. Ca.) (unlawful marketing);

- *Kaiser Foundation Health Plan, et al v. Pfizer, Inc., et al*, No. 04-cv-10739 (D. Mass.) (Neurontin promotion);

- *In re Vioxx Products Liability Litig.*, MDL No. 1657 (E.D. La.) (TPP claims);

- *In re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litig.*, MDL No. 193 (D.N.J.) (TPP claims);

- *Government Employees Hospital Association v. Serono,* No. 05-cv-11953 (D. Mass.) (Serostim) (unlawful promotion of Serostim);

- *In re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (AWP manipulation); and

- *In re Lupron Marketing and Sales Practices Litig.*, MDL No. 1430 (D. Mass.) (AWP manipulation).

HBSS also has twice been selected by the Attorney General of the State of Connecticut pursuant to a rigorous RFP process to advise and represent the State of Connecticut in all litigation related to the pharmaceutical and medical device industries, and currently serves the State of Connecticut in that capacity.

HBSS has been recognized by federal courts for its representation of direct purchaser plaintiff classes in pharmaceutical antitrust litigation.  As Judge Brody recently explained in *In re Flonase Antitrust Litig.,* No. 08-cv-3149 (E.D. Pa.),

> Thomas Sobol of Hagens Berman Sobol Shapiro LLP and Joseph Meltzer of Kessler Topaz Meltzer & Check, LLP were co-lead counsel for the direct purchasers in this case.  Both firms have extensive experience in plaintiff-side class actions, with particular expertise in delayed generic entry cases. Indeed, counsel for both sides were knowledgeable, tenacious, and highly skillful. As discussed above, the $150 million settlement award represents a substantial amount and clearly demonstrates the value of class counsel's efforts.[28]

Because of their prior and current involvement with numerous class action pharmaceutical antitrust cases, GGF, B&M, and HBSS have gained expertise in applicable law, including the law governing "pay for delay" conspiracies.  Some of them have been briefing, arguing, obtaining fact and expert discovery, and preparing for trial on "pay for delay" issues since the late 1990s.  Since the Supreme Court's *Actavis* decision, GGF, B&M, and HBSS have briefed and argued motions to dismiss and summary judgment, taken fact and expert discovery, and prepared for trial in several such cases.  Lawyers at GGF, B&M, and HBSS participated in *amicus* briefing to the Supreme Court regarding *Actavis*.

---

[28] *In re Flonase Antitrust Litig.,* No. 08-cv-3149 (E.D. Pa.), *Memorandum and Order*, June 14, 2013, Doc. No. 495, at 12-13.

3.     **Proposed Co-Lead Counsel's Commitment to Provide All Resources Needed to Represent the Class**

GGF, B&M, and HBSS will commit substantial personnel and financial resources to representing the Direct Purchaser Class in this matter.

In addition to the financial resources it has and will commit to this case, GGF has assigned 4 of its own lawyers to this matter, and has associated with two other firms (Odom & Des Roches LLC and Smith, Segura & Raphael LLP), who are equally experienced with pharmaceutical antitrust cases,[29] and who will assign 3 lawyers to this matter.

In addition to the financial resources it has and will commit to this case, B&M assigned 3 of its own lawyers to this matter, and has associated with two other firms (Faruqi & Faruqi, LLP and Taus, Cebulash & Landau LLP), who are equally experienced with pharmaceutical antitrust cases,[30] and who will assign 4  lawyers to this matter.

---

[29] Odom & Des Roches LLC (www.odrlaw.com) is a firm in New Orleans, Louisiana.  Named partner Stuart E. Des Roches has litigated pharmaceutical antitrust cases, including "pay for delay" cases, since the late 1990s and is currently involved in preparing several such cases for trial today.  Smith, Segura and Raphael, LLP (www.ssrllp.com) is a firm in Alexandra, Louisiana, and has also been involved in the litigation of pharmaceutical antitrust cases, including "pay for delay" cases, since the late 1990s.  Named partner David Raphael and partner Erin Leger, counsel for Miami-Luken, were intimately involved in the investigation of this case and the drafting of the *Miami-Lukens* complaint.  Odom & Des Roches LLC and Smith Segura & Raphael, LLP have authorized the undersigned to represent to the Court that they are supportive of relief requested by this motion and to the entry of proposed Case Management Order No. 1.

[30] Faruqi & Faruqi, LLP (www.faruqilaw.com), co-counsel for RDC, is a premier antitrust class action firm with offices in New York, Pennsylvania, California, and Delaware.  Partner Peter Kohn has litigated pharmaceutical antitrust cases, including "pay for delay" cases, since the late 1990s and is lead or co-lead counsel in several such cases today.  Taus, Cebulash and Landau LLP (www.tcllaw.com) is a class action firm located in New York, New York, whose partners have litigated pharmaceutical antitrust cases, including pay-for-delay cases, since the late 1990s.  Taus, Cebulash & Landau LLP is currently co-counsel for RDC in several such cases.  Faruqi & Faruqi, and Taus, Cebulash & Landau LLP have authorized the undersigned to represent to the Court that they are supportive of relief requested by this motion and to the entry of proposed Case Management Order No. 1.

In addition to the financial resources it has and will commit to this case, HBSS has assigned 3 of its lawyers to this matter, and has associated with one other law firm (the Radice Law Firm, P.C.).[31]

GGF, B&M, and HBSS are able to represent the Direct Purchaser Class fairly and adequately as Interim Co-Lead counsel.[32]  They brought the first cases relating to Aggrenox and have more than a decade of experience working together effectively to prosecute these cases. Accordingly, appointment of Interim Co-Lead Counsel and the assignment of responsibilities to them as set forth in Proposed Order Case Management No. 1, accompanying this motion is consistent with Rule 23(g) and the Manual's recommendations regarding establishment of an organizational structure for counsel in furtherance of the ultimate goal of achieving "efficiency and economy" in the litigation.[33]

## IV.    CONCLUSION

For the reasons set forth above, the Majority Plaintiffs respectfully request that the Court enter the proposed order filed concurrently herewith.


Dated: April 14, 2014                              Respectfully submitted,


                                         _____/s/_____
                                         Gerald C. Pia, Jr. (ct21296)
                                         Brian C. Roche (ct17975)

---

[31] John Radice, the founder of the Radice Law Firm, P.C. (www.radicelawfirm.com), has substantial experience in the prosecution of antitrust, False Claims Act, and other complex civil litigation on behalf of relators and plaintiffs, including antitrust litigation involving pharmaceutical products, and has authorized the undersigned to represent to the Court that they are supportive of relief requested by this motion and to the entry of proposed Case Management Order No. 1.

[32] *See* Fed. R. Civ. P. 23(g)(1)(B).

[33] *See* Manual § 10.221.

Roche Pia LLC
Two Corporate Drive, Suite 248
Shelton, CT 06484
Tel: (203) 944-0235
Fax: (203) 567-8033
Email: gpia@rochepia.com
         broche@rochepia.com

*Proposed Interim Liaison Counsel for the Direct Purchaser Class*

Bruce E. Gerstein
Joseph Opper
Ephraim R. Gerstein
Garwin Gerstein & Fisher, LLP
1501 Broadway, Suite 1416
New York, NY 10036
Tel:  (212) 398-0055
Email:  bgerstein@garwingerstein.com
         jopper@garwingerstein.com
         egerstein@garwingerstein.com

David F. Sorensen
Andrew C. Curley
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (800) 424-6690
Email: dsorensen@bm.net
         acurley@bm.net

Thomas M. Sobol
David S. Nalven
Ed Notargiacomo
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Email: tom@hbsslaw.com
         davidn@hbsslaw.com
         ed@hbsslaw.com

*Proposed Interim Co-Lead Counsel for the Direct Purchaser Class*

Peter Kohn
Joseph Lukens
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel: (215) 277-5770
Email:  pkohn@faruqilaw.com
          jlukens@faruqilaw.com

David C. Raphael, Jr.
Smith Segura & Raphael, LLP
3600 Jackson Street,
Suite 111 Alexandria, LA 70303
Tel: (318) 445-4480
Email: draphael@ssrllp.com

Stuart E. Des Roches
Odom & Des Roches, LLP
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Email: stuart@odrlaw.com

Barry S. Taus
Archana Tamoshunas
Taus, Cebulash & Landau, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
Email: btaus@tcllaw.com
          atamoshunas@tcllaw.com

John Radice
Radice Law Firm, P.C.
34 Sunset Boulevard
Long Beach, NJ 08008
Tel: (646) 386-7688
Email: jradice@radicelawfirm.com

*Proposed Interim Executive Committee for the Direct Purchaser Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 14, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/
_____
Gerald C. Pia, Jr.
Brian C. Roche
