# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE AGGRENOX ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Direct Purchaser Actions<br><br>*Cesar Castillo, Inc. v. Boehringer Ingelheim Pharma GMBH & Co. KG et al.*, No. 3:14-cv-00225<br><br>*American Sales Company, LLC v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:14-cv-00003<br><br>*Miami-Luken, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 14-cv-00477<br><br>*Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:14-cv-000485 | MDL No. 2516<br><br>Master File No. 3:14-md-02516-SRU<br><br>Hon. Stefan R. Underhill |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF PLAINTIFFS MIAMI-LUKEN, INC., ROCHESTER DRUG CO-OPERATIVE, INC., AND AMERICAN SALES COMPANY, LLC FOR ENTRY OF CASE MANAGEMENT ORDER NO. 1, AND IN SUPPORT OF CROSS-MOTION OF PLAINTIFF CESAR CASTILLO, INC. FOR APPOINTMENT OF GRANT & EISENHOFER P.A. AS INTERIM LEAD CLASS COUNSEL AND BRENNER, SALTZMAN & WALLMAN LLP AS LIAISON COUNSEL**

| | | |
|---|---|---|
| David R. Schaefer (ct04334)<br>BRENNER, SALTZMAN & WALLMAN LLP<br>271 Whitney Avenue<br>New Haven, CT 06511<br>Tel. (203) 772-2600<br>Fax: (203) 562-2098<br>dschaefer@bswlaw.com | Linda P. Nussbaum<br>Peter A. Barile III (ct24434)<br>Bradley Demuth<br>Adam Steinfeld<br>GRANT & EISENHOFER, P.A.<br>485 Lexington Avenue<br>New York, NY 10017<br>Tel: (646) 722-8500<br>Fax: (646) 722-8501<br>lnussbaum@gelaw.com<br>pbarile@gelaw.com<br>bdemuth@gelaw.com<br>asteinfeld@gelaw.com | Brent W. Landau<br>HAUSFELD LLP<br>1604 Locust Street<br>Philadelphia, PA 19103<br>Tel.: (215) 985-3273<br>Fax: (215) 985-3271<br>blandau@hausfeldllp.com |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

I. PRELIMINARY STATEMENT ...................................................................... 1

II. INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 2

III. FACTUAL AND PROCEDURAL BACKGROUND ....................................... 4

    A. THIS CASE AROSE FROM AN INVESTIGATION BY THE FEDERAL TRADE COMMISSION INTO DEFENDANTS' PATENT SETTLEMENTS AND RELATED AGREEMENTS IN RESTRAINT OF TRADE. ................................................. 4

    B. CCI BEGAN ITS OWN INVESTIGATION AND FILED SUIT IN THIS DISTRICT. ............ 4

    C. CCI IS THE ONLY DIRECT PURCHASER TO HAVE ARGUED BEFORE THE JPML IN FAVOR OF CONSOLIDATION IN THIS COURT. ........................................... 7

    D. CCI PARTICIPATED IN DISCOVERY PRIOR TO CONSOLIDATION. ........................... 8

    E. THREE DIRECT PURCHASERS MOVED FOR AN ORDER TO APPOINT THEIR COUNSEL AS LEAD COUNSEL WITHOUT CONSULTING CCI OR G&E, AND WITHOUT A SCHEDULE OR DIRECTION FROM THE COURT. ................................. 9

IV. THE COURT SHOULD APPOINT INTERIM LEAD CLASS COUNSEL IN THIS CASE UNDER RULE 23(g)(3) ......................................................... 9

V. THE COURT SHOULD APPOINT GRANT & EISENHOFER AS INTERIM LEAD CLASS COUNSEL ............................................................. 11

    A. GRANT & EISENHOFER IS WELL EQUIPPED TO LEAD THIS LITIGATION. ............... 11

    B. MS. NUSSBAUM IS A NATIONALLY RECOGNIZED LEADER IN THE FIELD WHO HAS ENJOYED UNSURPASSED SUCCESS LITIGATING AGAINST BIG PHARMA. ......... 12

        1. Ms. Nussbaum's proven track record demonstrates the value she would provide the Class by being a part of the leadership of this case. .............. 12

        2. Federal courts have praised Ms. Nussbaum's work in pharmaceutical antitrust cases, including her trial record. .................................................. 13

            *a. Neurontin* ...................................................................................... 13

            b. *Toprol* .......................................................................................... 14

            *c. Lorazepam & Clorazepate* ........................................................... 14

        3. Ms. Nussbaum serves and has served as lead or co-lead counsel in numerous pharmaceutical and other complex antitrust class actions. ...... 14

            a. Lead counsel roles in pharmaceutical antitrust cases .................... 14

            b. Lead counsel roles in other direct purchaser antitrust class cases .. 15

        c.     Individual representations in antitrust actions ................................. 16

    4.     Ms. Nussbaum is a leader in the antitrust bar. .......................................... 17

C.    MS. NUSSBAUM IS SUPPORTED BY SKILLED AND EXPERIENCED G&E ANTITRUST LAWYERS. ...................................................................................... 18

    1.     Peter A. Barile III .................................................................................. 18

    2.     Adam Steinfeld ...................................................................................... 19

    3.     Bradley Demuth .................................................................................... 19

D.    HAUSFELD LLP, ONE OF THE WORLD'S PREEMINENT PLAINTIFFS' ANTITRUST FIRMS, WILL WORK WITH GRANT & EISENHOFER IN PROSECUTING THIS CASE ON BEHALF OF THE DIRECT PURCHASER PLAINTIFF CLASS. ................................ 20

E.    BRENNER, SALTZMAN & WALLMAN SHOULD BE APPOINTED LIAISON CLASS COUNSEL. ....................................................................................................... 22

VI.    THE COURT SHOULD REJECT THE SUPPOSED "PRIVATE ORDER" OF THE REMAINING DIRECT PURCHASER PLAINTIFFS ............................................ 24

A.    THE THREE-WAY PROPOSAL BEFORE THE COURT IS THE RESULT OF IMPROPER PROCEDURE. ........................................................................................... 24

B.    ALTERNATIVELY, GRANT & EISENHOFER SHOULD BE APPOINTED CO-LEAD COUNSEL WITH ONE COUNSEL FROM THE OTHER GROUP OF PLAINTIFFS ............ 24

VII.    CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Air Cargo Shipping Services Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006) ........................................................................10

*In re Aluminum Phosphide Antitrust Litig.*,
    No. 1:02-CV-0844, 2002 WL 31988203 (N.D. Ohio Aug. 5, 2002) .........................................6

*In re Australian & New Zealand Banking Group Ltd. Secs. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010) ...................................................................1

*In re Crude Oil Commodity Futures Litig.*,
    No. 11 Civ. 3600 (WHP), 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) .................................1

*Digene Corp. v. Third Wave Technologies, Inc.*,
    536 F. Supp. 2d 996 (W.D. Wis. 2008), *aff'd*, 2009 U.S. App. LEXIS 7381 (C.A.F.C.
    April 1, 2009) ............................................................................................18

*In re LTL Shipping Services Antitrust Litigation*,
    No. 1:08-MD-01895-WSD, 2009 U.S. Dist. LEXIS 14276 (N.D. Ga. Jan. 28, 2009) ............18

*In re Medical Residents Antitrust Litigation*,
    339 F. Supp. 2d 26 (D.D.C. 2004), *aff'd*, 2006 U.S. App. LEXIS 14079 (D.C. Cir.
    2006), *cert. denied*, 549 U.S. 1156 (2007) ..............................................................18

*Metallgesellschaft AG v. Sumitomo Corp. of America*,
    325 F.3d 836 (7th Cir. 2003) ............................................................................18

*In re Online DVD Rental Antitrust Litig.*,
    MDL No. 2029, 2010 U.S. Dist. LEXIS 138558 (N.D. Cal. Dec. 23, 2010) .........................18

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
    593 F. Supp. 2d 29, *aff'd*, 602 F.3d 444, *cert. denied*, 131 S. Ct. 822 (2010) .....................18

*In re Scrap Metal Antitrust Litig.*,
    2002 WL 31988203 (N.D. Ohio Aug. 5, 2002) .................................................6, 11

*In re Southeastern Milk Antitrust Litig.*,
    MDL No. 1899, 555 F. Supp. 2d 934 (E.D. Tenn. 2008) ...........................................18

*In re Vitamin C Antitrust Litigation*,
    Nos. 06-MD-1738(BMC)(JO), 05-cv-453,
    2013 WL 6858853 (E.D.N.Y. Dec. 30, 2013) ......................................................20

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION (Fourth) (2013) ...............................................................6, 10, 11

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Plaintiff CESAR CASTILLO, INC. ("Castillo" or "CCI") respectfully submits this Memorandum of Law in Support of its Cross Motion for Appointment of Linda P. Nussbaum of Grant & Eisenhofer P.A. as Interim Lead Class Counsel and David R. Schaefer of Brenner, Saltzman & Wallman LLP ("Brenner Saltzman") as Liaison Class Counsel, and further requests the entry of its proposed Case Management Order No. 1 in conformance therewith.[1]

## I.  PRELIMINARY STATEMENT

Interim class counsel appointments are designed to ensure the efficient prosecution of a complex lawsuit.  Overly complicated organizational structures "can lead to substantially increased costs and unnecessary duplication of efforts."[2]  Thus, a sole lead counsel is not uncommon in complex pharmaceutical antitrust cases, including cases in which direct purchaser plaintiffs' counsel here have been involved.[3]

---

[1] CCI does not oppose consolidation of the related direct purchaser cases in this matter, and proposes a Case Management Order which also achieves consolidation.  CCI respectfully suggests that further pre-trial scheduling be set after leadership of the consolidated case is determined.

[2] *In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 3600 (WHP), 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012); *see also In re Australian & New Zealand Banking Group Ltd. Secs. Litig.*, 712 F. Supp. 2d 255, 260 n.4 (S.D.N.Y. 2010) (appointing sole lead counsel). A compendium of unreported cases cited herein appears as Exhibit G to the Declaration of Linda P. Nussbaum, filed herewith ("Nussbaum Decl.").

[3] *See, e.g.*, Dkt # 22, *Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co. et al.* ("Taxol"), Case No. 1:01-cv-02313-EGS (D.D.C.) (filed May 21, 2002) (Linda Nussbaum appointed sole lead counsel); Dkt #21, *North Shore Hematology-Oncology Associates, P.C. v. Bristol-Myers Squibb Co.* ("Platinol"), Case No. 1:04-cv-00248-EGS (D.D.C.) (filed Sept. 10, 2004) (Linda Nussbaum appointed sole lead counsel); Dkt. #24, *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, Case No. 1:04-mc-00535-GDF (D.D.C.) (filed Jan. 9, 2006) (Linda Nussbaum appointed sole lead counsel); Dkt #43, *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-md-02343 (CLC) (E.D. Tenn) (filed July 18, 2012) (Hagens Berman appointed lead counsel.  "In the Court's view, the best way to accomplish [a fair and efficient resolution of the case] is [to] have one lead counsel authorized to function as the representative of each group."); Dkt. #16, *In re Modafinil Antitrust Litig.*, No. 06-cv-01797(MSG) (E.D. Pa.) (filed Aug. 8, 2006) (Garwin Gerstein appointed lead counsel).

Here, appointing Grant & Eisenhofer ("G&E") as sole lead counsel would provide the class with the leadership of a pioneer in pharmaceutical antitrust litigation, Linda P. Nussbaum, and the power of three preeminent firms—G&E plus Hausfeld LLP ("Hausfeld") and Brenner Saltzman—with unsurpassed antitrust experience, international capabilities, federal jury trial expertise, and a significant Connecticut presence. The appointment of G&E as sole interim lead counsel thus would ensure an outstanding combination of resources and legal talent, but with all the efficiencies inherent in having one lead counsel run this case in conjunction with, and utilizing the expertise of, the other plaintiffs' firms in a non-duplicative manner. Similarly, the appointment of David R. Schaefer as liaison counsel will assure that the case proceeds in an efficient and collegial manner. Mr. Schaefer has very ably served in this role in other MDL matters before this Court.

Alternatively, should the Court prefer a larger or more inclusive lead counsel structure, CCI is amenable to serving as one of two co-lead counsel, with the second co-lead counsel selected from among the other proposed lead counsel group, and with Brenner, Saltzman serving as liaison counsel. Ms. Nussbaum has had experience as a sole lead, one of two co-leads, and one or three or four co-leads, and will effectively litigate this case in whatever structure the Court deems appropriate.

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

Appointment of Linda P. Nussbaum as lead counsel and David R. Schaefer as liaison counsel will best serve the interests of the direct purchaser class for at least five reasons:

*First*, Grant & Eisenhofer has substantial expertise as lead counsel in complex class litigation, and its partner in charge of this litigation, Linda P. Nussbaum, has been court-appointed and successfully served as sole or co-lead counsel for direct purchaser plaintiffs in

more than twenty (20) antitrust class actions over the past fifteen (15) years, including numerous cases in the pharmaceutical and related industries.

*Second*, Grant & Eisenhofer has the financial, professional, investigative, and technological resources required to prosecute these claims.  With seventy (70) attorneys in four offices nationwide, G&E is willing and able to devote and expend the vast resources necessary to properly prosecute this litigation.  G&E's resources also include millions of dollars at its disposal for experts and consultants, the use of its own proprietary software systems for analyzing electronic documents, and the commitment of the numerous professionals needed to advance the complex claims here and to zealously represent plaintiffs against highly qualified defense counsel.

*Third*, Grant & Eisenhofer has assembled an accomplished team including Hausfeld and Brenner Saltzman, each with an exceptional record of success in antitrust litigation, and with the resources and expertise to prosecute this matter vigorously and effectively.  In addition to its top-notch competition and antitrust practice, Hausfeld brings international reach and presence which can play a significant role in this case.  Brenner Saltzman is a preeminent Connecticut firm with a proven track record of successfully litigating complex cases in this District.  All three firms bring to bear substantial resources and experience to bring, and an impressive track record of bringing, complex cases ***to trial***—and succeeding.

*Fourth*, the attorneys at Grant & Eisenhofer who will be primarily responsible for this litigation have outstanding backgrounds in antitrust actions and other complex civil litigation.

*Fifth*, the class would be represented by a direct purchaser class representative, Cesar Castillo, Inc., with deep ties in its community, and a commitment to pursuing this case for the benefit of the class.  Castillo has the resources, industry knowledge and history to both oversee

and participate in this litigation, as necessary, to ensure an optimal outcome for its fellow direct purchasers.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    THIS CASE AROSE FROM AN INVESTIGATION BY THE FEDERAL TRADE COMMISSION INTO DEFENDANTS' PATENT SETTLEMENTS AND RELATED AGREEMENTS IN RESTRAINT OF TRADE.

In or around early 2009, the FTC began its investigation of "settlements and related agreements between Boehringer and Barr Pharmaceuticals, Inc." concerning a generic version of Aggrenox.[4]   The FTC investigation continued into 2013, including litigation to enforce subpoenas served upon Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer").

Through public court filings made in connection with the FTC's action, CCI and other Aggrenox purchasers learned of a "pay for delay" settlement deal between Boehringer and Barr.[5] All plaintiffs' complaints allege that by reason of Defendants' alleged violations of law, the entry of generic alternatives to Aggrenox has been delayed; competition foreclosed and restrained; and Plaintiffs overcharged (and Defendants enriched) as a result.

### B.    CCI BEGAN ITS OWN INVESTIGATION AND FILED SUIT IN THIS DISTRICT.

Following discovery of the information brought to light by the FTC, the various plaintiffs began their own investigations of the Boehringer/Barr agreement.  CCI did not take its potential role as private enforcer of the antitrust laws lightly.  CCI is a family-owned company with more than seventy (70) years of history.  A full-line pharmaceutical wholesaler, CCI serves customers

---

[4] *See, U.S. Court of Appeals Enforces Subpoenas in FTC's Androgel Investigation; In Separate Case, FTC Files Petition to Compel Enforcement of Subpoena Issued to Boehringer Ingelheim*, available at http://www.ftc.gov/news-events/press-releases/2009/10/us-court-appeals-enforces-subpoenas-ftcs-androgel-investigation (last visited April 16, 2014).

[5] *See, Boehringer Ingelheim Pharmaceuticals, Inc. Case Timeline, available at http://www.ftc.gov/enforcement/cases-proceedings/091-0023/boehringer-ingelheim-pharmaceuticals-inc* (last visited April 16, 2014) (collecting briefs filed by the FTC in the Boehringer subpoena enforcement action).

throughout Puerto Rico.[6]  Unlike the other direct purchaser plaintiffs who have filed complaints here, each of whom have serially appeared in past pharmaceutical antitrust cases, or belong to an industry group the members of which have done so, CCI has not previously sought to serve as a class representative.

Prior to filing its complaint, counsel for CCI sought to coordinate with other direct purchasers' counsel early in this process, in order to foster the efficient organization of cases and counsel.  On or around February 3, 2014, Ms. Nussbaum contacted Mr. Sobol, counsel for plaintiff ASC, to discuss the *Aggrenox* case, and coordination among the plaintiffs.[7]  Ms. Nussbaum informed Mr. Sobol that she represented a direct purchaser which had not previously served as a class representative before, and told him that she intended to file her client's *Aggrenox* case before this Court.

At the same time, CCI assembled a team of attorneys that could aggressively pursue the direct purchaser class' interests, including Brent Landau of Hausfeld and David Schaefer of Brenner Saltzman.  Hausfeld is a leading global law firm with a long track record of leading, and succeeding, in antitrust litigation.  It has been appointed lead or co-lead counsel in dozens of antitrust class actions, and has been repeatedly recognized for its accomplishments and expertise in competition and antitrust cases.  *See, infra*, at 20.  Here, Hausfeld's international capabilities, including an office in London and expertise in doing international discovery, will benefit the class if discovery is required outside of the United States from foreign-based defendants

---

[6] *See*, http://cesarcastillo.net/aboutus/aboutus/.

[7] Mr. Sobol also represented a second direct purchaser plaintiff, Professional Drug Company, Inc. ("PDC") in a related *Aggrenox* case brought in this district.  On April 9, 2014, PDC by and through its counsel voluntarily dismissed its case by stipulation with defendants. Dkt. 35, C.A. No. 13-cv-01776.

Boehringer and Teva Pharmaceuticals Industries, Ltd.  Mr. Landau and Ms. Nussbaum have a long history of working together in pharmaceutical and other antitrust matters.

Brenner Saltzman is a sophisticated Connecticut firm with significant experience in complex antitrust and class action litigation.  Mr. Schaefer has served as liaison counsel in other antitrust MDL proceedings that have previously come before this Court, including the *Polychloroprene Rubber (CR) Antitrust Litigation* (MDL No. 1642), the *Publication Paper Antitrust Litigation* (MDL No. 1631), and the *Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation* (MDL No. 1542).  As discussed in detail below, Mr. Schaefer will bring knowledge and experience that will not only serve plaintiffs in good stead, but also will benefit the Court through his ability to efficiently litigate complex cases.

CCI brought its complaint ***in this District***, with the understanding that its case would eventually be coordinated with related cases.  Recognizing that related cases were already pending, CCI made the strategic choice to file a complaint with allegations substantially similar to those set forth in the related cases.[8]  Anticipating consolidation through MDL proceedings, and supporting and arguing for transfer of all cases to this Court CCI saw no reason to preview

---

[8] The other direct purchaser plaintiffs make much of the fact that the several complaints here were filed over the course of several months.  Where, as here, allegations are based on facts developed through a prior government investigation, identity of the first filer, or time between filings, is not relevant in determination of lead counsel.  *See, In re Scrap Metal Antitrust Litig.*, No. 1:02-cv-0844, 2002 WL 31988203, *1 (N.D. Ohio Aug. 5, 2002), ("given the long history of governmental investigation and prosecution of the scrap metal industry in the relevant market, and the respective timing of all of the filings, first-to-file status is simply not meaningful.").  Moreover, courts have generally rejected the "race to the courthouse" as a measure of lead counsel qualification.  *See, In re Aluminum Phosphide Antitrust Litigation*, 1994 WL 481847, *7 (D. Kan. May 17, 1994) (rejecting "suggested race to the court house to file the first complaint and thereby obtain a supposed advantage for early appointment as lead counsel ... The court will not speculate who may have been more motivated than someone else by an interest in the question of appointment for lead counsel.").

for Defendants the factual research and allegations that will be incorporated into a months-later-filed consolidated complaint.[9]

### C. CCI IS THE ONLY DIRECT PURCHASER TO HAVE ARGUED BEFORE THE JPML IN FAVOR OF CONSOLIDATION IN THIS COURT.

On December 13, 2013, Defendants moved before the Judicial Panel on Multidistrict Litigation to consolidate the related *Aggrenox* cases in the District of Connecticut, and before this Court.  CCI filed papers supporting transfer and consolidation before this Court.  At the MDL hearing, Ms. Nussbaum appeared and argued before the Panel that this Court would be best suited to steer this complex antitrust litigation on a prudent course.  Ms. Nussbaum highlighted this Court's experience in past complex antitrust cases, and the efficiencies that would be served by litigating here.

Indeed, Ms. Nussbaum was the only direct purchaser plaintiffs' attorney that advocated for transfer to this Court before the MDL panel.  By contrast, the others, who now seek to be lead counsel, did not.  In its opposition to Connecticut, Garwin Gerstein (with whom Berger & Montague joined), described this forum as a "much less accessible" location and as follows:

> Bridgeport, Connecticut is a city with a population of approximately 144,000, located about one-third of the way from New York to Boston. Its one airport, Sikorsky Memorial Airport, offers only charter air service.  Moreover, there is only one hotel within two miles of the Bridgeport District Courthouse.[10]

And, despite filing in Connecticut, Hagens Berman affirmatively withdrew what support it had for transfer to Connecticut just prior to the MDL hearing.[11]

---

[9] *See* Manual at §22.36 (Filing of a consolidated, amended complaint in the transferee district serves "as the vehicle for determination of common issues, including trial.").

[10] *See* Dkt. #49 at 12, MDL 2516, *In re Aggrenox Antitrust Litigation* (J.P.M.L. Jan. 6, 2014).  *Id*. at Dkt. #54 at 1 (joining in "entirety").

[11] *Id*., Dkt. #88 at 1 (Mar. 10, 2014).

By Order dated April 3, 2014, the Panel transferred the pending related cases to this Court for coordinated or consolidated pretrial proceedings, agreeing with Ms. Nussbaum's arguments in favor of Connecticut and against those arguing against Connecticut:

> This district offers a forum that is both convenient and accessible for the parties and witnesses, which are primarily based on the East Coast. . . . . Finally, by assigning the litigation to Judge Stefan R. Underhill, we are selecting a jurist well versed in the nuances of complex and multidistrict litigation to steer this matter on a prudent course.[12]

### D.    CCI PARTICIPATED IN DISCOVERY PRIOR TO CONSOLIDATION.

Prior to centralization, plaintiffs in several related *Aggrenox* cases pending in the Eastern District of Pennsylvania were directed by Judge Goldberg to discuss preliminary discovery with defendants. Believing that efficiency was best served by having all of the related *Aggrenox* cases moving forward together, Grant & Eisenhofer, under the leadership of Ms. Nussbaum, participated in the meet and confer process with defense counsel. Grant & Eisenhofer discussed with defense counsel the preparation of an interim protective order, and the scope of discovery. Grant & Eisenhofer also conferred with defense counsel on consolidation and coordination of the related cases, among other case management issues.

As a result of this process, counsel representing all of the plaintiff groups now before the Court entered into an interim protective order. Grant & Eisenhofer then promptly supervised the production of the agreed upon requested material from CCI. Such material was timely produced by CCI to the defendants. Defendants, likewise, produced certain materials from the underlying *Aggrenox* patent litigation. Grant & Eisenhofer promptly collected these materials and organized them on a database for preliminary attorney review. At the same time, Grant & Eisenhofer

---

[12] Dkt. #1 at 2.

reached out to counsel for the other direct purchaser plaintiffs in order to coordinate this review in an efficient and timely fashion.

### E. THREE DIRECT PURCHASERS MOVED FOR AN ORDER TO APPOINT THEIR COUNSEL AS LEAD COUNSEL WITHOUT CONSULTING CCI OR G&E, AND WITHOUT A SCHEDULE OR DIRECTION FROM THE COURT.

On April 14, 2014, without prior notice to counsel for CCI and without a briefing schedule, directive, or invitation to move from this Court, and even before all direct purchaser cases had even been transferred to this Court, counsel for three direct purchaser plaintiffs filed a motion for entry of a pre-trial order establishing a leadership structure.[13]  By this Cross-Motion, CCI opposes their motion, and proposes the appointment of a single lead counsel, or alternatively two co-lead counsel, should the Court want a larger structure, to effectively and efficiently manage this complex litigation.  CCI believes that either arrangement is preferable to that of these movants, who propose a very complex leadership structure involving court-appointed positions for no fewer than nine separate firms, including multiple firms from each of their cases.

CCI and Ms. Nussbaum remain willing to work with the other direct purchaser plaintiffs, and their counsel, in whichever structure the Court deems best suited, be it Ms. Nussbaum as sole lead or co-lead counsel, with Mr. Schaefer serving as liaison in any structure appointed.

## IV. THE COURT SHOULD APPOINT INTERIM LEAD CLASS COUNSEL IN THIS CASE UNDER RULE 23(g)(3)

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a

---

[13] *See*, Dkt. #3.  At the very least, this motion is premature.  Not only has the Court not entered a scheduling order inviting such motions, two of the direct purchaser cases originally filed in Connecticut, the CCI action and movant ASC's case, had not yet been transferred to this Court's docket at the time of the motion.

class action."[14]   The Advisory Committee notes explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."[15]   In cases such as this, involving multiple class actions, designation of interim lead counsel is "encouraged, and indeed is probably essential for efficient case management."[16]   Selection of interim lead counsel facilitates "achieving efficiency and economy without jeopardizing fairness to the parties."[17]

In complex antitrust matters such as this, appointing seasoned lead counsel is one of the district court's key organizational tools.[18]   The "designation of interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."[19]   Because lead counsel is charged with the ultimate responsibility of acting on behalf of the class throughout the entire litigation, the Court must appoint lead counsel who are fully capable and qualified to fairly and adequately represent the interests of the class, including through trial if necessary.[20]

---

[14] Fed. R. Civ. P. 23(g)(3).

[15] Fed. R. Civ. P. 23(g)(3), Advisory Committee's Notes on 2003 amendments.

[16] *In re Air Cargo Shipping Services Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *see also* MANUAL FOR COMPLEX LITIGATION (Fourth) ("Manual"), §10.22 (2013) (interim counsel "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel").

[17] Manual at §10.22.

[18] *Id.*, §§ 10.224, 21.272.

[19] *Id.*, § 21.11.

[20] *Id.*, §§ 21.271-72; *see also* Rule 23(g)(2) (noting that "the court must appoint the applicant best able to represent the interests of the class" if more than one qualified applicant seeks to be appointed class counsel).

The Manual specifically cautions against "[d]eferring to proposals by counsel without independent examination, even those that seem to have the concurrence of the majority of those affected." Manual §10.224. *See also, Scrap Metal*, 2002 WL 31988203, at *1 (rejecting a "negotiated deal between counsel" and explaining that "the Manual warns the Court against accepting deals of counsel at face value without making an independent evaluation").

## V.   THE COURT SHOULD APPOINT GRANT & EISENHOFER AS INTERIM LEAD CLASS COUNSEL

### A.   GRANT & EISENHOFER IS WELL EQUIPPED TO LEAD THIS LITIGATION.

Grant & Eisenhofer is one of the largest and most respected plaintiffs' firms in the nation. The firm has 70-plus lawyers in New York, Chicago, Wilmington, and Washington, DC. The firm successfully prosecutes large, nationwide class actions and has been lead counsel in some of the largest class action recoveries in U.S. history.[21]   It is a national litigation boutique that concentrates on securities, antitrust, corporate governance, and false claims actions. In the last five years alone, the firm has obtained recoveries totaling over $12.5 billion for plaintiffs in cases in which the firm served as lead counsel. The firm is among America's Leading Lawyers for Business by Chambers and Partners, and it is a member of The National Law Journal's ("The NJL") Plaintiffs' Hall of Fame. For the ninth year in a row, the firm has been included in The NLJ's "Plaintiffs' Hot List," recognized for having done exemplary, cutting-edge work on the plaintiffs' side.[22]   The firm and its attorneys consistently achieve the highest rankings from Martindale Hubbell, Chambers, Best Lawyers, Lawdragon500, Legal 500 and *Super Lawyers*. Law360 recently named G&E among "the most feared plaintiffs firms."

---

[21]   Selections from the firm's website regarding the firm and its attorneys appears as Exhibit D to the Declaration of Linda P. Nussbaum.

[22]   *See, id.*

Linda P. Nussbaum is chair of the firm's Antitrust Practice Group.  Ms. Nussbaum is among the elite antitrust attorneys in the country.[23]   In addition to being one of the most accomplished members of the plaintiffs' antitrust bar generally, Ms. Nussbaum has unsurpassed expertise prosecuting antitrust class actions on behalf of direct purchaser plaintiffs in delayed generic entry pharmaceutical antitrust cases, such as *Aggrenox*.   Notably, Ms. Nussbaum has previously served as lead counsel in other pharmaceutical antitrust actions which the FTC has investigated or litigated.[24]   She also has and does represent large public companies in individual antitrust matters.

**B.    MS. NUSSBAUM IS A NATIONALLY RECOGNIZED LEADER IN THE FIELD WHO HAS ENJOYED UNSURPASSED SUCCESS LITIGATING AGAINST BIG PHARMA.**

**1.    Ms. Nussbaum's proven track record demonstrates the value she would provide the Class by being a part of the leadership of this case.**

Ms. Nussbaum is a pioneer in the area of pharmaceutical antitrust cases, having first served as co-lead counsel in a pharmaceutical direct purchaser class action in *In re Lorazepam & Clorazepate Antitrust Litigation*, first filed in 1999.  She has been appointed by courts as sole lead counsel or co-lead counsel in numerous pharmaceutical and other antitrust cases since.[25]   In those cases in which she has served as a lead, she has achieved settlements on behalf of direct purchaser classes exceeding a billion dollars in the aggregate.  In addition, she has served as an executive committee member in other direct purchaser pharmaceutical matters.

---

[23] The law firm biography of Ms. Nussbaum is filed herewith.  *See* Nussbaum Decl., Ex. A.

[24] A few of such matters include *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, Case No. 1:04-mc-00535-GDF (D.D.C.), *Meijer, Inc. and Meijer Distribution, Inc. v. Warner Chilcott Holdings Co. III, Ltd. et al.*, Case No. 1:05-cv-02195-CKK (D.D.C.) ("Ovcon 35"); *In re Lorazepam & Clorazepate Antitrust Litigation*, No. 99-cv-00276 (D.D.C.).

[25] *See*, Nussbaum Decl.,  ¶¶ 2-5.

2.      **Federal courts have praised Ms. Nussbaum's work in pharmaceutical antitrust cases, including her trial record.**

a.      *Neurontin*

Of particular note is Ms. Nussbaum's recent role as a lead trial counsel in *In re Neurontin Marketing and Sales Practices Litig.*, No. 04-10981 (PBS) (D. Mass.).   In *Neurontin*, Ms. Nussbaum represented her client, Kaiser Foundation Health Plan ("Kaiser"), an integrated health care company.  On Kaiser's behalf, Ms. Nussbaum prosecuted a landmark RICO case concerning the prescription drug Neurontin.  Following six years of litigation on behalf of Kaiser, Ms. Nussbaum took the case to trial, with a team including Mr. Sobol.  After a five-week trial, Ms. Nussbaum and her team won a jury verdict for Kaiser, which was statutorily trebled to over $142 million and affirmed by the First Circuit.  Ms. Nussbaum and Kaiser's appellate team then successfully defeated Pfizer's petition for *certiorari*.

For her work on *Neurontin*, and in particular recognition of her summation before the jury, Ms. Nussbaum was selected as Litigator of the Week by the AmLaw Litigation Daily.[26]  In addition, Public Justice recognized her as one of the Finalists for its 2011 Trial Lawyer of the Year.[27]  Chief Judge Patti B. Saris observed that it was ***"a fabulous trial[.] . . . [I]t's the kind of thing that you become a judge to sit on."***[28]

---

[26]*See* Nussbaum Decl., Exs. B.

[27]*See* Nussbaum Decl., Exs. C.

[28] Ms. Nussbaum's proven track record at trial demonstrates the value she would provide the Class by being a part of the leadership of this case.  The recently concluded *Norvir Antitrust Litigation* also is emblematic of the value Ms. Nussbaum brings to a case.  As a co-lead counsel, Ms. Nussbaum secured a $52 million class settlement three days into trial, and shortly after Ms. Nussbaum's client testified before the jury.  The competitor plaintiff continued to try the case, only to receive a defense verdict on the antitrust claims.  Ms. Nussbaum thus earned the class more than $50 million in what was a very difficult case, which could have resulted in a defense verdict, as shown by the outcome of the competitor case at the end of trial.  *See Meijer, Inc. v. Abbott Labs.*, No. 3:07-cv-5985 (CW) (N.D. Cal.).

### b.     Toprol

Ms. Nussbaum served as a co-lead counsel in *Meijer, Inc. v. AstraZeneca Pharms., LP*, No. 06-052 (D. Del.).  The court commended the efforts of Ms. Nussbaum and her co-counsel, noting that **"everybody, at least in my presence, handled themselves professionally, appropriately, made strong arguments, [and made] strong presentations for their position[.]"**

### c.     *Lorazepam & Clorazepate*

*Lorazepam & Clorazepate* provides yet another recommendation for Ms. Nussbaum to serve as lead or co-lead in this case.  *In re Lorazepam & Clorazepate Antitrust Litigation*, No. 99-cv-00276 (D.D.C.).  As then-Chief Judge Hogan observed of Ms. Nussbaum and her co-lead counsel: **"Obviously, the skill of the attorneys, and I'm not going to spend the time reviewing it, I'm familiar with counsel, and they, as I said, are among the best antitrust litigators in the country."**

### 3.     Ms. Nussbaum serves and has served as lead or co-lead counsel in numerous pharmaceutical and other complex antitrust class actions.

### a.     Lead counsel roles in pharmaceutical antitrust cases

In the pharmaceutical arena, Ms. Nussbaum serves or has served as lead or co-lead counsel in a substantial number of complex antitrust class actions, including, *inter alia*:

### i.     Sole lead counsel

- ***Taxol.*** *Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co. et al.*, Case No. 1:01-cv-02313-EGS (D.D.C.) (Sole lead counsel).

- ***Platinol.*** *North Shore Hematology-Oncology Associates, P.C. v. Bristol-Myers Squibb Co.*, Case No. 1:04-cv-00248-EGS (D.D.C.) (Sole lead counsel).

- ***Children's Ibuprofen.*** *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, Case No. 1:04-mc-00535-GDF (D.D.C.); *Meijer, Inc. and Meijer Distribution, Inc. v. Perrigo Company and Alpharma Inc.*, Case No. 1:04-cv-01366-ESH (D.D.C) (Sole lead counsel).

14

ii.      **Co-lead counsel in pending pharmaceutical antitrust litigation**

- ***Doryx.***  *Meijer, Inc. & Meijer Distribution, Inc. v. Warner Chilcott Holdings Company, III, Ltd., et al*., Case No. 12-3824-PD (E.D. Pa.) (four co-lead counsel) (pending).

- ***Menactra.***  *Castro, et al. v. Sanofi Pasteur, Inc.*, Case No. 2:11-cv-07178-JLL-MAH (D.N.J.) (two co-lead counsel) (pending).

iii.      **Co-lead counsel in successfully resolved pharmaceutical litigation**

- ***DDAVP.***  *In re DDAVP Direct Purchaser Antitrust Litig.*, Case No. 7:05-cv-02237-CLB (S.D.N.Y.) (co-lead counsel).

- ***Lorazepam & Clorazepate.*** *In re Lorazepam & Clorazepate Antitrust Litig*., MDL No. 1290, Case No. 99-ms-00276-TFH (D.D.C.) (two co-lead counsel.

- ***Miralax.***  *Meijer, Inc. & Meijer Distribution, Inc. v. Braintree Labs., Inc.*, Case No. 1:07-cv-00142 (D. Del) (co-lead counsel).

- ***Norvir.***  *Meijer, Inc. & Meijer Distribution, Inc. v. Abbott Laboratories*, Case No. 4:07-cv-05985 (N.D. Cal.) (co-lead counsel).

- ***Ovcon 35.***  *Meijer, Inc. and Meijer Distribution, Inc. v. Warner Chilcott Holdings Co. III, Ltd. et al*., Case No. 1:05-cv-02195-CKK (D.D.C.) ("Ovcon 35") (head of executive committee, conducted all court appearances and lead mediation).

- ***Relafen.***  *In re Relafen Antitrust Litig.*, Master File No. 1:01-cv-12239-WGY (D. Mass.) (co-lead counsel).

- ***Remeron.***  *In re Remeron Antitrust Litig.*, *Meijer, Inc. & Meijer Distribution, Inc. v. Organon, Inc*., Case No. 2:03-cv-0085-FSH-PS (D.N.J.) (co-lead counsel).

- ***Toprol.***  *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, Case No. 1:06-cv-00052 (D. Del.) (co-lead counsel).

b.      **Lead counsel roles in other direct purchaser antitrust class cases**

Ms. Nussbaum serves or has served with success as lead or co-lead class counsel in numerous other complex antitrust class actions, including:

- ***In re Aluminum Antitrust Litigation***, MDL No. 2481 (S.D.N.Y.) (co-lead counsel) (pending);

- ***In re Foundry Resins Antitrust Litigation***, MDL No. 1638 (S.D. Ohio) (co-lead counsel);

- ***In re Methionine Antitrust Litigation***, MDL No. 1311 (N.D. Cal.) (co-lead counsel);

- ***In re Microcrystalline Cellulose Antitrust Litigation***, MDL No. 1402 (E.D. Pa.) (co-lead counsel);

- ***In re Plastics Additives Antitrust Litigation***, MDL No. 1684 (E.D. Pa.) (co-lead counsel);

- ***In re Puerto Rican Cabotage Antitrust Litigation***, MDL No. 1960 (D.P.R.) (co-lead counsel); and

- ***In re Sorbates Direct Purchaser Antitrust Litigation***, Case No. 3:98-cv-04886-MMC (N.D. Cal.) (co-lead counsel).

<strong>c.       Individual representations in antitrust actions</strong>

Fortune 500 companies place their trust in Ms. Nussbaum to represent them individually in complex antitrust cases.  Ms. Nussbaum often represents direct action plaintiffs and private clients in connection with proceedings in which her clients seek to be represented by their own counsel rather than by class counsel.  For instance, in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig*., MDL No. 1720 (E.D.N.Y.) (Gleeson, J.), Ms. Nussbaum litigated the case for seven years on behalf of a group of companies including Kroger, Co., Meijer, Inc., Publix Super Markets, Inc., QVC and others.  After their claims were resolved, Ms. Nussbaum was retained to represent another large group of plaintiffs as opt-outs from a class settlement including Avis Budget Group, Bed Bath & Beyond, Brinker International, Burlington Coat Factory, Forever 21, Global Cash Access, Hewlett-Packard, Landry's, Inc., Progressive Casualty Insurance Company and Wegmans Food Markets, Inc.

Ms. Nussbaum also is actively litigating *In re American Express Anti-Steering Rules Antitrust Litig. (No. II)*, MDL No. 2221 (Garaufis, J.) (E.D.N.Y.), on behalf of direct action plaintiffs.  Her clients in that matter include CVS Pharmacy, Inc., Meijer, Inc., Publix Super Markets, Inc., Raley's, Supervalu, Inc., and others.

4.      **Ms. Nussbaum is a leader in the antitrust bar.**

Ms. Nussbaum has lectured and published extensively concerning antitrust law and class actions, generally, and pharmaceutical antitrust law, specifically.  She has lectured extensively about various aspects of antitrust law and litigation.[29]  On November 5, 2012, for instance, Ms. Nussbaum participated in a panel for the American Bar Association, entitled *FDA Citizen Petitions and Noerr Immunity: Policy Questions and Litigation Tactics to Consider*.

Other of her presentations and publications include:

- *The Fifth Annual Future of Antitrust Enforcement Conference*, presented at the American Antitrust Institute's Fifth Annual Symposium on December 7, 2011;

- *The Evolving Challenges of Class Certification*, presented at the American Antitrust Institute's Third Annual Symposium on Private Antitrust Enforcement on December 8, 2009;

- *Daubert 15 Years Later: How Have Economists Fared?*, presented at the ABA Section of Antitrust Law Spring Meeting in March 2009; and

- *The Hatch-Waxman Act 25 Years Later: Successes, Failures and Prescriptions for the Future*, presented at a panel entitled Lawyers, Drugs and Money, a Prescription for Antitrust Enforcement in the Pharmaceutical Industry, at the University of San Francisco School of Law Antitrust Symposium on September 25, 2009.

Her article entitled *Where do we go now? The Hatch-Waxman Act 25 Years Later: Successes, Failures, and Prescriptions for the Future*, was recently published in the Rutgers Law Journal.  *See*, 41 Rutgers L. J. 229 (Fall/Winter 2009).

Ms. Nussbaum serves on the Advisory Board of the American Antitrust Institute.  She also is a member of the American Law Institute, and is on the Board of Legal Advisors of Legal Momentum (formerly known as NOW Legal Defense and Education Fund).[30]

---

[29] *See* Nussbaum Decl., ¶¶ 9-11.

[30] *See id.*, ¶ 12.

### C.    Ms. Nussbaum Is Supported By Skilled And Experienced G&E Antitrust Lawyers.

#### 1.    Peter A. Barile III

Mr. Barile is a member of the Connecticut bar and admitted to practice in this Court.  Mr. Barile has many years of experience litigating multidistrict class actions, on behalf of plaintiff classes, opt-outs, and individual competitors.  Mr. Barile also has substantial experience handling federal appeals, including antitrust cases before the United States Supreme Court,[31] and he also brings to the table the perspective of having practiced antitrust law at major defense firms in Connecticut, New York, and Washington, D.C. prior to joining the plaintiffs' bar.[32]

Mr. Barile also has published numerous articles and served as a panelist or speaker on antitrust issues, including on patent-antitrust interface.[33]  His work has been cited by the Federal

---

[31] *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, MDL 2481 (S.D.N.Y.); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL 2542 (S.D.N.Y.); *In re Lithium-Ion Batteries Antitrust Litig.*, MDL No. 2420 (N.D. Cal.); *In re Online DVD Rental Antitrust Litig.*, MDL No. 2029, 2010 U.S. Dist. LEXIS 138558 (N.D. Cal. Dec. 23, 2010) (obtained certification of 40 million member class; $27 million partial settlement); *In re Southeastern Milk Antitrust Litig.*, MDL No. 1899, 555 F. Supp. 2d 934 (E.D. Tenn. 2008) (defeated motion to dismiss price fixing and monopolization claims brought on behalf of classes of dairy farmers; $140 million partial settlement); *Metallgesellschaft AG v. Sumitomo Corp. of America*, 325 F.3d 836 (7th Cir. 2003) (represented opt-out plaintiffs in a precedent-setting antitrust case concerning extraterritorial jurisdiction; settlement figure confidential).

[32] Among his defense wins are: *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 593 F. Supp. 2d 29, *aff'd*, 602 F.3d 444, *cert. denied*, 131 S. Ct. 822 (2010) (obtained dismissal, affirmance, and denial of certiorari in an indirect purchaser price fixing class action against major national railroads); *In re LTL Shipping Services Antitrust Litigation*, No. 1:08MD01895-WSD, 2009 U.S. Dist. LEXIS 14276 (N.D. Ga. Jan. 28, 2009) (obtained dismissal of price fixing class action brought against major trucking companies); *In re Medical Residents Antitrust Litigation*, 339 F. Supp. 2d 26 (D.D.C. 2004), *aff'd*, 2006 U.S. App. LEXIS 14079 (D.C. Cir. 2006), *cert. denied*, 549 U.S. 1156 (2007) (obtained dismissal of price fixing class action alleging conspiracy in the hiring and compensation of medical residents); *Digene Corp. v. Third Wave Technologies, Inc.*, 536 F. Supp. 2d 996 (W.D. Wis. 2008), *aff'd*, 2009 U.S. App. LEXIS 7381 (C.A.F.C April 1, 2009) (obtained summary judgment and affirmance in Federal Circuit in patent-antitrust dispute between leading companies in the genetic testing industry).

[33] Mr. Barile's publications include: *The Pattern Exception to Sham Litigation*, Antitrust Exemptions & Immunities Update (2009); *Antitrust Damages Resulting from Meritorious Patent*

Trade Commission and the Antitrust Modernization Commission, as well as by a number of leading academics and practitioners.  Mr. Barile serves on the Competition Editorial Advisory Board for Law360, as well as on the Advisory Board of the Loyola Institute for Consumer Antitrust Studies.

### 2.  Adam Steinfeld

Mr. Steinfeld, formerly a partner with Garwin Gerstein & Fisher, LLP, has focused his entire career on antitrust litigation, with a particular emphasis on pharmaceutical cases.  He has played substantial roles in numerous cases in which his law firms have been named as Lead Counsel, including in the following cases:

- *In re Buspirone Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.);

- *In re Remeron Antitrust Litigation*, C.A. No. 03-cv-00085 (D.N.J.);

- *In re DDAVP Direct Purchaser Antitrust Litigation*, C.A. No. 7:05-cv-02237 (S.D.N.Y.);

- *In re Neurontin Direct Purchaser Antitrust Litig.*, MDL No. 1479 (D.N.J.); and

- *In re Tricor Antitrust Litig.*, No. 05-340 (D. Del.).

### 3.  Bradley Demuth

Brad Demuth specializes in antitrust litigation, including pharmaceutical antitrust cases.  *See, e.g., In re Tricor Antitrust Litig.*, No. 05-340 (D. Del.) (where he represented defendants); *In re Flonase Antitrust Litig.*, Case No. 08-cv-3149 (E.D. Pa.); *In re Nexium Antitrust Litig.*, No. 12-md-2409 (D. Mass.).  Prior to associating with Grant & Eisenhofer, Mr. Demuth was an antitrust associate at major defense firms in New York City after having served as a law clerk to the United States Court of Appeals for the Second Circuit.  Mr. Demuth has tried several cases to

---

*Litigation*, Antitrust Exemptions & Immunities Update (2007); *Antitrust & International Intellectual Property Licensing* (contributing editor, 2008).  Recent speaking engagements include: Panelist, ABA, *Sham Litigation: Claiming and Defeating Antitrust Immunity* (2011); Panelist, ABA, *Fundamentals of Antitrust Exemptions & Immunities* (2010).

the jury, both as first-chair and as a member of a larger trial team.  His antitrust trial experience includes trial team work in *Compuware v. IBM*, No. 02-cv-70906 (E.D. Mich.).

**D. HAUSFELD LLP, ONE OF THE WORLD'S PREEMINENT PLAINTIFFS' ANTITRUST FIRMS, WILL WORK WITH GRANT & EISENHOFER IN PROSECUTING THIS CASE ON BEHALF OF THE DIRECT PURCHASER PLAINTIFF CLASS.**

CCI has associated Hausfeld LLP to add their expertise to the prosecution of this action, including their international presence and capabilities.  The Class would be well-served to have the Hausfeld firm litigate this case with G&E.

Hausfeld LLP ranks among the world's top plaintiffs' firms.[34]  Founded in 2008 by Michael Hausfeld, the firm and its attorneys have been appointed lead or co-lead counsel in dozens of antitrust and other cases.  Among these was *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, No. 3:03 MDL 1542 (SRU) (D. Conn.), which was pending before this Court and resulted in over $107 million in settlements for members of the direct purchaser class.

Another was *In re Vitamin C Antitrust Litigation*, No. 06-MD-1738 (E.D.N.Y.), in which the court remarked—following a jury trial that resulted in a judgment for the plaintiffs of over $153 million—that "there is no plaintiffs' class action firm with the capacity to deal with a case of this magnitude resident within this district." *In re Vitamin C Antitrust Litigation,* Nos. 06-MD-1738(BMC)(JO), 05-cv-453, 2013 WL 6858853, at *1 (E.D.N.Y. Dec. 30, 2013).

Recognizing the firm's antitrust prowess, the *Global Competition Review* has noted that "[t]he Hausfeld team has established themselves as one of—if not the—top Plaintiffs' antitrust firm in the US."  The *Legal 500* likewise consistently lists Hausfeld among the top five firms in

---

[34] An excerpt from the firm resume of Hausfeld LLP is filed herewith.  *See* Nussbaum Decl., Ex. E.

the U.S. for antitrust litigation, and the *National Law Journal* repeatedly has named the firm to the "Plaintiffs' Hot List." More information about the firm is available at www.hausfeldllp.com.

Brent W. Landau is a partner in Hausfeld's Philadelphia office. Among other matters, Mr. Landau is the partner principally responsible for *In re Air Cargo Shipping Services Antitrust Litigation*, MDL No. 1775 (E.D.N.Y.), in which the firm serves as co-lead counsel and in which the plaintiff class has recovered over $758 million in settlements to date. In *Air Cargo*, Mr. Landau has been a lead settlement negotiator and argued the pending motion for class certification, presenting both the opening and closing arguments at a recent evidentiary hearing. He also was a member of the successful *Vitamin C* trial team and was a principal drafter of the plaintiffs' Rule 23(f) opposition brief in *EPDM*. In recognition of his accomplishments, in 2013 Mr. Landau was selected by *Law360* as one of its "Rising Stars Under 40," placing him among only five "up and coming competition attorneys" in the Competition/Antitrust category.

In addition, Mr. Landau has experience in cases involving pharmaceutical and medical products and exclusion of generic competition. He was appointed co-lead counsel in *Jabo's Pharmacy, Inc. v. King Pharmaceuticals, Inc.*, No. 31,973 (Cir. Ct., Cocke Cty., Tenn.), and serves as counsel for the indirect purchaser for resale plaintiffs in the related federal litigation, *In re Skelaxin (Metaxalone) Antitrust Litigation*, MDL No. 2343 (E.D. Tenn.), both of which concern the alleged exclusion of a generic version of a drug, as in this case.

With twenty-five lawyers in its three U.S. offices, as well as thirteen solicitors in London, Hausfeld is prepared to devote the necessary personnel and resources to the litigation of this case.

21

E.   **Brenner, Saltzman & Wallman Should Be Appointed Liaison Class Counsel.**

Brenner Saltzman has provided legal services to clients in Connecticut and throughout the Northeast for the last fifty (50) years.  Brenner Saltzman has approximately twenty (20) attorneys of which eight principally handle litigation matters. [35]  Its litigation attorneys are admitted in Connecticut, as well as in the United States District Court for the District of Connecticut, the Second Circuit Court of Appeals, the First and Third Circuit Courts of Appeals and before the United States Supreme Court.

Brenner Saltzman has successfully handled many types of litigation in the state and federal courts, administrative agencies and before arbitration panels.  It represents clients in the Connecticut state courts and in federal courts across the country.  Its litigation practice, on behalf of both plaintiffs and defendants, encompasses business disputes, antitrust, securities, constitutional and civil rights, employment, environmental, franchise, healthcare, insurance coverage, municipal real estate, tax and probate, trade secrets, trademark, patent, copyright, unfair trade practices, and white collar crime.

Brenner Saltzman has extensive experience in complex federal court litigation and specifically in multi-district antitrust class actions.  Its litigators have successfully tried a securities class action in this district as lead trial counsel in *Silverberg v. Peoples Bank*, 5:90-cv-0060(AVC)), and a complex patent, trademark and unfair trade practices action dealing with counterfeit goods imported from China in *Romag Fastener, Inc. v. Fossil, Inc. et al*., 10-cv-1827(JBA).  Brenner Saltzman has served as liaison counsel in three antitrust class actions in this district.  In the *EPDM Antitrust Litigation*, 3:03MD1542(PCD), Brenner Saltzman worked extensively with class counsel for eight years bringing that large and complex litigation to a

---

[35] The firm resume of Brenner Saltzman is filed herewith.  *See* Nussbaum Decl., Ex. F.

successful conclusion for the plaintiff class.   It played a similar role in the *CR Antitrust Litigation*, 3:05 MD 1642 (SRU) and in the *Publication Paper Antitrust Litigation* 3:04 MD 1631 (SRU) coming to a conclusion at this time before this Court.   Brenner Saltzman litigators also obtained a favorable settlement after four days of trial in a complex trade secret matters before this Court in *Ohaus Management Group, Inc. v. Worthington Precision Metals, Inc*., 3:00cv1257(SRU).   Brenner Saltzman  is local counsel for defendants in two pending consumer fraud class actions:   *In re Trilegant*, 3:12-cv-396(VLB) and *DiMauro v. the Estee Lauder Company, Inc*., 3:12-cv-1789 (AVC).

Brenner Saltzman litigators have served this Court in many capacities, including on the Court's Federal Grievance Committee, the Magistrate Judges Review Panel, the District of Connecticut Federal Court Outreach Committee, and handling pro bono matters at the request of the Court on behalf of indigent clients.

Brenner Saltzman is well versed on the rules, practices and procedures of this Court, as well as on the work necessary to organize representation of a class and to work with defendants' counsel to move complex antitrust class actions forward efficiently and in a collegial manner.   In serving as liaison counsel for plaintiff classes in antitrust class actions, it brings to the table its commitment to provide vigorous and effective representation on behalf of its clients in a manner that is in all respects forthright and ethical, with a goal of working with the other legal professionals that are part of bringing this litigation to an efficient and appropriate conclusion. Those legal professionals include defendants' lead counsel, defendants' liaison counsel, the court employees, and the Court.

The Brenner Saltzman partners who would be involved in the work as plaintiff class liaison counsel in this MDL proceeding would be David Schaefer and Brian Daniels.

## VI. THE COURT SHOULD REJECT THE SUPPOSED "PRIVATE ORDER" OF THE REMAINING DIRECT PURCHASER PLAINTIFFS

### A. THE THREE-WAY PROPOSAL BEFORE THE COURT IS THE RESULT OF IMPROPER PROCEDURE.

Although no one is more qualified to serve as lead counsel in this antitrust class action than is Ms. Nussbaum, the three other direct purchaser plaintiffs have excluded Ms. Nussbaum and CCI from the process of forming the leadership in this case. Ms. Nussbaum was simply informed of their decision. This is contrary to the preferred practice of private ordering in multidistrict complex litigation, and should be viewed by the Court with suspicion.

Their motion was filed without notice, and, in fact, a copy was not served on counsel for CCI until the following day. Their motion contemplates a complex structure of at least nine firms. It was filed prior to all cases being transferred to this Court, and before a schedule was set. Despite this, CCI and Ms. Nussbaum wish to move forward with the other plaintiffs for the greater good.

### B. ALTERNATIVELY, GRANT & EISENHOFER SHOULD BE APPOINTED CO-LEAD COUNSEL WITH ONE COUNSEL FROM THE OTHER GROUP OF PLAINTIFFS.

Should the Court in its discretion determine that more than one lead counsel is appropriate in this matter, CCI is amenable to a structure in which Ms. Nussbaum is one of two co-lead counsel, with the other co-lead counsel selected from the lawyers proposed by the competing group: either Thomas M. Sobol of Hagens Berman, David Sorensen of Berger & Montague, or Bruce Gerstein of Garwin Gerstein & Fisher. Under any lead structure ordered by the Court, we respectfully submit that Brenner, Saltzman serve as liaison counsel.

CCI notes that courts in the District have ordered even four firm co-lead counsel structures in other major antitrust class action litigation, including some of those litigated before this Court:

- *In re Polychloroprene Rubber ("CR") Antitrust Litigation*, Case No. 05-md-01642, Dkt. 72 (D. Conn. May 20, 2005) (Dorsey, J) (appointing four co-lead counsel);

- *In Re: EPDM Anti-trust Litigation*, Case No. 03-md-01542, Dkt. 17 (D. Conn. Sept. 11, 2003) (Dorsey, J.) (appointing four co-lead counsel).

Indeed, even-numbered, co-lead counsel appointments are standard in major antitrust class actions, and certainly could be employed here.  However, the more recent trend has been to appoint just one or two firms to serve as lead or co-lead counsel.[36] Whatever number of lead counsel the Court prefers, CCI respectfully submits that the best interests of the class will be served by including Ms. Nussbaum among them.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff CCI's Cross Motion for Appointment of Grant & Eisenhofer P.A. as Interim Lead Class Counsel and Brenner, Saltzman & Wallman LLP as Liaison Counsel should be GRANTED and the motion of the other direct purchaser plaintiffs DENIED.

Dated:  April 29, 2014.                              Respectfully submitted.

By:     /s/ David R. Schaefer, Esq.
David R. Schaefer (ct04334)
BRENNER, SALTZMAN &
WALLMAN LLP
271 Whitney Avenue
New Haven, CT 06511
Tel. (203) 772-2600
Fax: (203) 562-2098
E-mail: dschaefer@bswlaw.com

---

[36] *See, e.g.*, *In re Crude Oil Commodity Futures Antitrust Litig.*, Case No. 1:11-cv-03600-WHP, Dkt. 42 (S.D.N.Y. Feb. 14, 2012) (two lead counsel); *In re Electronic Books Antitrust Litig.*, MDL No. 2293, Case No. 1:11-md-02293-DLC, Dkt. 23 (S.D.N.Y. Dec. 21, 2011) (two co-lead counsel); *In re Libor-Based Financial Instruments Antitrust Litig.*, MDL No. 2262, Case No. 1:11-md-02262-NRB, Dkt. 66 (S.D.N.Y. Nov. 29, 2011) (two co-lead counsel, including Hausfeld LLP); *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13 Civ. 07789 (LGS), Dkt. 145 (S.D.N.Y. Mar. 4, 2014) (two co-lead counsel, including Hausfeld LLP).

Linda P. Nussbaum
Peter A. Barile III (ct24434)
Bradley Demuth
Adam Steinfeld
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
Email:   lnussbaum@gelaw.com
         pbarile@gelaw.com
         bdemuth@gelaw.com
         asteinfeld@gelaw.com

Brent W. Landau
HAUSFELD LLP
1604 Locust Street
Philadelphia, PA 19103
Tel.: (215) 985-3273
Fax: (215) 985-3271
E-mail:   blandau@hausfeldllp.com

*Counsel for Plaintiff Cesar Castillo, Inc. and the
Proposed Direct Purchaser Plaintiff Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system.  Those attorneys having appeared and who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:   April 29, 2014

By: /s/ David R. Schaefer, Esq.