# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: AGGRENOX ANTITRUST LITIGATION | Docket No. 3:14 MD 2526 (SRU) |
| | Hon. Stefan R. Underhill |
| THIS DOCUMENT RELATES TO: | |
| All Indirect-Purchaser Actions | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..................................................5

    A.     Summary of Humana's Allegations Against Defendants .......................................5

    B.     Multidistrict Litigation ...........................................................................................7

ARGUMENT ...................................................................................................................8

I.     DESIGNATION OF INTERIM CLASS COUNSEL WILL PROMOTE THE
      EFFICIENT LITIGATION OF THIS MATTER ..........................................................8

II.    APPOINTING LOWEY DANNENBERG AND RAWLINGS AS INTERIM CO-
      LEAD COUNSEL WILL BEST SERVE THE INTERESTS OF THE CLASSES ....10

    A.     Humana Has Standing in All Indirect Purchaser States and the "Greatest
         Economic Interest" ................................................................................................11

    B.     Under Each and All of the Mandatory Criteria of FRCP Rule 23(g)(1)(A), This
         Court Should Appoint the Lowey/Rawlings Group as Counsel "Best Able to
         Represent the Interests of the Class" ....................................................................13

    C.     The Lowey/Rawlings Team Has Done the Work Necessary to Investigate and
         Identify Potential Claims .......................................................................................14

    D.     The Lowey/Rawlings Group Would Bring Unparalleled Skill, Experience, and
         Knowledge to Bear in Prosecuting This Case........................................................16

    E.     The Lowey/Rawlings Team Will Commit More Than Ample Resources to
         Representing the Classes.........................................................................................23

CONCLUSION..............................................................................................................23

# TABLE OF AUTHROITIES

## Cases

*Aetna, Inc. v. Pfizer, Inc.*,
  712 F.3d 51 (1st Cir. 2013) ................................................................................. 3

*Desiano v. Warner Lambert Co.*,
  326 F.3d 339 (2d Cir. 2003).................................................................................. 3

*In re Air Cargo Shipping Services Antitrust Litig.*,
  240 F.R.D. 56 (E.D.N.Y. 2006) ............................................................................8

*In re Avandia Marketing*,
  865 F.3d 353 (3d Cir. 2012)................................................................................. 3

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) .......................................................................8, 9

*In re Beacon Associates Litig.*,
  09 CIV. 777 CM, 2013 U.S. Dist. LEXIS 82192 (S.D.N.Y. May 9, 2013) ...............4

*In re Bear Stearns Co., Inc. Sec. Derivative and ERISA Litig.*,
  No. 08 MDL 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009)................................13

*In re Cardizem CD Antitrust Litig.*,
  352 F.3d 896 (6th Cir. 2000) ...............................................................................3

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 326 (E.D. Mich. 2001) .....................................................................17

*In re Cendant Corp. Litig.*,
  264 F.3d 201, 273 (3d Cir. 2001)................................................................... 12-13

*In re Facebook, Inc.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................9

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
  No. 11 Md. 2262, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) ...........................12

*In re Scrap Metal Antitrust Litig.,* ,
  No. 02 Civ. 0844, 2002 WL 31988203 (N.D. Ohio Aug. 5, 2002) ........................14

*In re Wellbutrin XL Antitrust Litig.*,
  282 F.R.D. 126 (E.D. Pa. 2011)...........................................................................18

*Nowak v. Ford Motor Co.,*
   240 F.R.D. 355 (E.D. Mich. 2006) .........................................................................................14

*Szymczak v. Nissan N. Am., Inc.,*
   2012 U.S. Dist. LEXIS 78285 (S.D.N.Y. May 15, 2012).........................................................10

**Statutes and Regulations**

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

**Other Authorities**

Manual for Complex Litigation, Fourth ("*Manual*"), §10.22 (2013) ................................... 8

National Law Journal (April 4, 2013)
   *Pfizer Suffers Big Setbacks on Trio of Appellate Rulings*....................................................... 21

Plaintiff Humana Inc. ("Humana") submits this memorandum of law in support of its motion for appointment of Lowey Dannenberg Cohen & Hart, P.C. ("Lowey" or the "Lowey Firm") and Rawlings & Associates, PLLC ("Rawlings") as interim co-lead class counsel pursuant to Federal Rule of Civil Procedure 23(g)(3), and Lowey as liaison counsel.

## PRELIMINARY STATEMENT

Under Federal Rule of Civil Procedure 23(g)(3), it is appropriate at this early stage of the litigation to appoint interim co-lead class counsel to further the efficiencies of multidistrict pretrial centralization. Rule 23(g)(3) requires the Court to appoint interim class counsel "best able to represent the interests of the class." As detailed herein, Lowey Dannenberg and Rawlings (collectively, the "Lowey/Rawlings Team") are the law firms most qualified to represent the interests of the proposed indirect-purchaser classes under the mandatory Rule 23(g) criteria.

The Lowey/Rawlings Team are two of the preeminent firms in this field. They represent, and have each represented continuously for more than a decade, the collective majority of the largest third party payers ("TPPs" or "end payers") for medical benefits—including prescriptions drugs—in the United States. The firms have represented Fortune 100 health insurers in complex cost recovery pharmaceutical litigation in a variety of contexts, most notably in Hatch-Waxman Act generic delay cases. These health insurers, including Humana, Aetna, Cigna, United, and WellPoint, routinely retain the Lowey/Rawlings Team to advise them concerning antitrust overcharges resulting from delayed competition, and, when appropriate, to litigate those claims. In this case, the Lowey/Rawlings Team represents Humana, which, since 2008, has purchased

more than $100 million of Aggrenox prescriptions from pharmacies located in every US state. *Compl.*[1] ¶¶ 1, 25.

Lowey Dannenberg has been the leading firm in pay-for-delay cases since it was appointed to serve as lead counsel, and prosecuted to conclusion, the first ever Hatch-Waxman generic delay antitrust cases on behalf of "end payers" (a term coined by Lowey Dannenberg lawyers during these proceedings to refer to the collective payments of consumers and their third party payers to retail pharmacies for prescription drugs).  Those cases were centralized by the Judicial Panel on Multidistrict Litigation under the caption *In re Cardizem CD Antitrust Litigation*, MDL No. 1278 (E.D. Mich.).  The *Cardizem CD* litigation was the progenitor of all end payer Hatch-Waxman litigation that has followed for more than a decade, including this case.

Lowey Dannenberg's leading role as class counsel in this arena was recognized by the health insurance industry in 2013, when America's Health Insurance Plans, a national association representing the health insurance industry, hired Lowey Dannenberg to represent it before the United States Supreme Court as *amicus curiae*, to advocate in favor of antitrust scrutiny of so-called "reverse payment" settlements in *Federal Trade Commission v. Actavis*, 570 U.S. 756 (2013).  The *Actavis* decision set the standards for the federal courts when reviewing "reverse payment" settlements among brand and generic pharmaceutical companies under the antitrust laws.

Further evidence that the Lowey/Rawlings Team is best able to represent the class here is the unparalleled history of success they have had in opening entire areas of cost recovery

---

[1]      "Compl." refers to Humana's Complaint filed on April 28, 2014 in *Humana v. Boeringer Ingelheim Pharma GmbH & Co. KG, et al.*, 14-cv-05762 (D. Conn.), at Dkt No. 1.

opportunities for their health insurer clients.  The Lowey Firm lawyers argued the following four

separate appeals, each of which established rights for pharmaceutical and medical payers that

federal courts of appeal had not previously recognized:

(1)   *In re Cardizem CD Antitrust Litig.*, 352 F.3d 896 (6th Cir. 2000) (first court of

appeals decision affirming a ruling that (a) an agreement between drug companies

settling Hatch-Waxman Act litigation was a *per se* violation of the antitrust laws;

and (b) end payers complaint challenging such an agreement under state antitrust

laws);

(2)   *Desiano v. Warner Lambert Co.*, 326 F.3d 339 (2d Cir. 2003) (first court of

appeals decision sustaining rights of health insurer to sue drug companies directly

for damages resulting from misrepresentations concerning the safety and efficacy

of prescription drugs);

(3)   *In re Avandia Marketing*, 865 F.3d 353 (3d Cir. 2012), *cert. denied sub nom.*,

*GlaxoSmithKline v. Humana Med. Plans, Inc.*, 81 U.S.L.W. 3579 (Apr. 15, 2013)

(first court of appeals decision recognizing a health insurer's private right of

action against a drug company under the Medicare Secondary Payer Act for

medical costs associated with side effects caused by drugs); and

(4)   *Aetna, Inc. v. Pfizer, Inc.* 712 F.3d 51 (1st Cir. 2013), *cert. denied*, 134 S. Ct. 786

(first court of appeals decision (along with two other contemporaneously issued

decisions) upholding claims by health insurers against drug companies for RICO

damages resulting from off-label marketing) ("Neurontin").

The lawyers at the Lowey/Rawlings Team (Barbara Hart, Peter St. Phillip and Mark

Fischer) who will be leading the work in this case are highly experienced antitrust litigators with

decades of collective experience.  Lowey partner Barbara Hart is the Chair of New York State

Bar Association's Antitrust Law Section.  Ms. Hart has led multiple complex class actions,

overseeing the work of numerous law firms and representing clients' interests in litigation and

negotiations with defense counsel and before the court.  Ms. Hart has successfully prosecuted as

co-lead counsel with the Connecticut and New York Attorneys General's Offices in both

antitrust and consumer fraud contexts.  Some of her case credentials are set forth at page 20.

Lowey partner Peter St. Phillip is Co-Chair of the Lowey firm's antitrust group.  Mr. St. Phillip

recently argued the successful groundbreaking Neurontin Appeal for Aetna before the First

Circuit.  Mr. Fischer, Rawlings's Chairman, has been active in reverse payment litigation dating

back to *In re Cardizem*.  Since successfully settling the antitrust claims of over 40 Rawlings'

clients in that case, Mr. Fischer has successfully participated in and negotiated settlements on

behalf of the nation's largest health plans in nearly all of the largest reverse payment cases,

including *In re Augmentin Antitrust Litig.* (E.D. Va.); *In Re Buspirone Antitrust*

*Litig.,*(S.D.N.Y.); *In re Terazosin Hydrochloride Antitrust Litig.* (S.D. Fla.); *In re Paxil Antitrust*

*Litig.* (E.D.Pa.); *In re Relafen Antitrust Litig.* (D. Mass.); and *In re Remeron Antitrust Litig.*

(D.N.J.).

Lowey recently served as lead and liason counsel and won Judge Colleen McMahon's

approval of a $219 million settlement of Madoff feeder-fund litigation.  In her written opinion,

Judge McMahon stated that "[t]he quality of representation is not questioned here, especially for

those attorneys (principally from Lowey Dannenberg) who worked so hard to achieve this

creative and, in my experience, unprecedented global settlement.*"  In re Beacon Associates*

*Litig.*, 09 CIV. 777 CM, 2013 U.S. Dist. LEXIS 82192, at *73 (S.D.N.Y. May 9, 2013).  Lowey

also successfully served as liaison counsel in *In re WorldCom Inc. Securities Litigation,* 02-cv-

3288 (S.D.N.Y.), on behalf of one of our public pension fund clients.

Humana and its subsidiaries are managed care organizations that pay for prescription drugs for more than six million people in virtually every state and territory of the United States. *Compl.* ¶ 24. During the Class Period, Humana, through its operating subsidiaries, has paid more than $100 million for Aggrenox, at monopoly prices, to pharmacies in every state. Humana will continue to have no choice but to make such monopoly-priced purchases until the Defendants' illegal market allocation scheme ends. *Compl.* ¶¶ 1, 25. Given its large, nationwide presence and standing to assert the claims of all end payers in every state at issue, Humana will be the best representative for the end payer classes, and its long-term preferred counsel is best suited to lead the prosecution of the classes' claims.

Appointment of the Lowey/Rawlings Team as interim co-lead class counsel and Lowey as liaison counsel will serve the best interests of the end payer classes.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Summary of Humana's Allegations Against Defendants

Defendant Boehringer manufactures and markets Aggrenox, a brand name prescription drug used to decrease the risk of stroke in patients who have had a stroke or transient ischemic attack. Humana has paid more than $100 million for Aggrenox prescriptions since 2008. *Compl.* ¶¶ 1, 25. There is no generic version of Aggrenox available in the United States.

Since the United States Food and Drug Administration ("FDA") approved Aggrenox in 1999, Boehringer has charged monopoly prices for, and earned monopoly profits from, Aggrenox. By 2008, Aggrenox had U.S. sales of approximately $330 million, which have since grown to more than $400 million per year. *Compl.* ¶ 6.

On or about May 31, 2007, Defendant Barr sought FDA approval to sell a generic version of Aggrenox, certifying to the FDA that its generic did not infringe any valid patent held by Boehringer that covered Aggrenox.  Shortly thereafter, Boehringer sued Barr, alleging Barr infringed Boehringer's U.S. Patent No. 6,015,577 (the "'577 Patent"), which expires in January 2017.  By so doing, Boehringer triggered an automatic 30-month stay of the FDA's ability to approve Barr's generic version of Aggrenox.  *Compl.*¶ 8.

On August 2008, Boehringer agreed to pay Barr (later acquired by Defendant Teva) approximately $120 million over seven years to (a) discontinue its challenge to the '577 Patent and (b) delay selling a generic version of Aggrenox until July 1, 2015.

The purpose and effect of this agreement was to give Boehringer 100% of the United States market for Aggrenox and its generic equivalents through July 2015 in exchange for reverse payments that Boehringer gave to its alleged patent infringer Barr.

In or around early 2009, the Federal Trade Commission ("FTC") began its investigation of the settlement and related agreements between Defendants concerning a generic version of Aggrenox.  The FTC also initiated subpoena enforcement litigation against Boehringer in its efforts to obtain information on the deal's payment structure.

Following a thorough investigation by counsel of its claims and Aggrenox purchases, Humana filed its Complaint on April 28, 2014, on behalf of itself and (a) a proposed Rule 23(b)(3) class of persons or entities (the State Law End Payer Class), who have paid and/or co-paid pharmacies to dispense Aggrenox in the States at Issue during the period beginning August 14, 2008 and continuing until the anticompetitive effects of Defendants' unlawful conduct cease (the "Class Period"); and (b) a proposed Rule 23(b)(2) nationwide class comprising persons or

entities who or which have paid and/or co-paid pharmacies in the United States for Aggrenox during the Class Period (the Sherman Act End Payer Class).

**B.  Multidistrict Litigation**

On December 13, 2013, Defendants filed their initial Motion to Transfer eleven related class actions to this Court with the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407.  *In re: Aggrenox Antitrust Litig.*, MDL Docket 2516 (U.S.J.P.M.L.) (Dkt. No. 1).  On April 3, 2014, after briefing and argument, the Panel granted the motion and transferred these actions to this Court.  *Id.*  (Dkt. No. 109).  Eight later-filed related cases were transferred on April 16, 2014 (Dkt. No 116), and two additional cases followed on April 17, 2014 (Dkt. No. 117).  On April 29, 2014, this Court entered a Practice and Procedure Order governing all such actions and consolidating them into two groups for pretrial purposes: all direct-purchaser actions and all indirect-purchaser actions.  On May 7, 2014, this Court entered an order transferring Humana's action to the Master File Docket established in the April 29, 2014 Order.  *In re: Aggrenox Antitrust Litig.,* 3:14-md-2516 (D. Conn.) (Dkt. No. 45).  As of this writing, there are twenty-five (inclusive of Humana's action) related cases pending in this Court.

In accordance with this Court's April 29, 2014 Practice and Procedure Order, Lowey requested via telephone conversation on Tuesday, May 6, 2014, that a meet and confer regarding appointment of counsel for the indirect purchasers be arranged.  Lowey also participated in a telephone conversation with many of the counsel for the indirect-purchasers on Friday, May 9, 2014.  During various calls we explained that our client's position was that the case be managed tightly; with accountable counsel and no duplication of lawyering.  Lowey invited further conversations.  A formal request was also sent via e-mail to all counsel of record in the indirect-purchaser actions on Friday, May 9, 2014 to meet and confer that day or on Monday.  The meet

and confer was held at 3:00 p.m. (EST) on May 12, 2014.  On behalf of the Lowey/Rawlings

Team, Lowey once again explained our client's position and opened up the call for suggestions

on an alternative structure or proposal.  Because an uncontested leadership structure could not be

reached, the Lowey/Rawlings Team now submits its motion papers to the Court in the interest of

streamlining the leadership structure and advancing this litigation.  The Lowey/Rawlings Team

remains willing to work with the other indirect purchaser plaintiffs and their counsel.

## ARGUMENT

I.  **DESIGNATION OF INTERIM CLASS COUNSEL WILL PROMOTE THE EFFICIENT LITIGATION OF THIS MATTER**

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim

counsel to act on behalf of the putative class before determining whether to certify the action as a

class action."  FED. R. CIV. P. 23(g)(3); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,

258 F.R.D. 260, 271 (S.D.N.Y. 2009).  Designation of interim class counsel is appropriate here

"to protect the interests of the putative class."  FED. R. CIV. P. 23(g)(3), Advisory Committee's

Notes on 2003 Amendments.  In cases like this one, involving multiple class actions, designation

of interim class counsel is "encouraged, and indeed is probably essential for efficient case

management."  *In re Air Cargo Shipping Services Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y.

2006); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH ("*Manual*"), §10.22 (2013)

(interim counsel "assume a responsibility to the court and an obligation to act fairly, efficiently,

and economically in the interests of all parties and parties' counsel").

The appointment of interim class counsel is particularly necessary where, as here, there

are a "number of overlapping, duplicative or competing suits pending in other courts" that could

potentially be consolidated.  *See Manual* § 21.11.  "In such cases, designation of interim class

counsel clarifies responsibility for protecting the interest of the class during precertification

activities, such as making and responding to motions, conducting any necessary discovery,

moving for class certification, and negotiating settlement." *In re Bank of Am. Corp.* 258 F.R.D

at 271-272; *In re Facebook, Inc.*, 288 F.R.D. 26, 43-44 (S.D.N.Y. 2012).

      Here the direct-purchaser action in *Miami-Luken, Inc. v. Boehringer Ingelheim Pharma*

*GmbH & Co. KG, et al.,* No. 2:13-cv-06543 (E.D. Pa.), was filed on November 8, 2013—four

other direct purchaser actions followed.  Then, at least 20 indirect-purchaser actions were filed

and are now before this multidistrict transferee Court.  Several of these actions allege Sherman

Act damages claims against Defendants on behalf of entities that purchased Aggrenox directly

from the Defendants.[2]  Some actions, including this case, allege Sherman Act injunctive claims

and state law damages and restitution claims.[3]  Humana seeks appointment of its counsel, the

---

[2]      *American Sales Company, LLC v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:14-cv-00003 (D. Conn.); *Cesar Castillo, Inc. v. Boehringer Ingelheim Pharma & Co. KG, et al.*, No. 3:14-cv-00225 (D. Conn.); *Professional Drug Company, Inc. V. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,* No. 3:13-cv-01776 (D. Conn); *Miami-Luken, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,* No. 2:13-cv-06543 (E.D. Pa.); and *Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 2:13-cv-06992 (E.D. Pa.).

[3]     *A.F. of L. - A.G.C. Buildings Trade Welfare Plan v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:13-cv-01716 (D. Conn.); *Painters District Council No. 30 Health & Welfare Fund v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:13-cv-01763 (D. Conn); *Welfare Plan Of The International Union Of Operation Engineers Locals 137, 137A, 137B, 137C, 137R v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:14-cv-00336 (D. Conn.); *Minnesota And North Dakota Bricklayers And Allied Craftworkers Health Fund v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 0:13-cv-03588 (D. Minn.); *School Cafeteria Employees Local 634 Health And Welfare Fund v. Teva Pharmaceuticals USA Inc. et al.*, No. 0:13-cv-03650 (D. Minn.); *AGC-International Union Of Operating Engineers Local 701 Health & Welfare Trust Fund v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 0:14-cv-00748 (D. Minn.); *IAFF Local 22 Health & Welfare Fund v. Teva Pharmaceuticals USA, Inc., et al.*, No. 0:13-cv-03648 (D. Minn.); *International Union Of Painters And Allied Trades, District Council 21 v. Teva Pharmaceuticals, Inc. et al.,* No. 0:14-cv-00050 (D. Minn.); *Newspaper And Magazine Employees Health And Welfare Fund v. Teva Pharmaceuticals USA, Inc. et al.*, No. 2:13-cv-07806 (D.N.J.); *MAN-U Service Contract Trust Fund v. Teva Pharmaceuticals USA, Inc. et al.*, No. 2:13-cv-07068 (E.D. Pa.); *AFSCME District*

Lowey/Rawlings Team, to litigate the indirect-purchaser end payer actions.  Because all related

actions have been transferred before this Court, "the factors set forth in Rule 23(g)(1) are

applicable in ensuring these [twenty-five-plus] cases are administered efficiently, the claims of

named plaintiffs and the putative class members are properly prosecuted, and redundant work is

minimized." *Szymczak v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 78285, at *6 (S.D.N.Y.

May 15, 2012).

In order to proceed efficiently without duplication and protect the interests of the End

Payer Sherman Act Class and the State Law End Payer Class, the Court should appoint interim

co-lead class counsel.

## II.   APPOINTING LOWEY DANNENBERG AND RAWLINGS AS INTERIM CO-LEAD COUNSEL WILL BEST SERVE THE INTERESTS OF THE CLASSES

The Lowey/Rawlings Team is best able to represent the interests of the end payer classes.

Their client, Humana, has the greatest economic interest of any plaintiff in the outcome of this

litigation.  Humana and the Lowey/Rawlings Team have:  (1) unsurpassed commitment,

experience and knowledge relevant to this case; and (2) the resources necessary to vigorously

prosecute the action.

---

*Council 47 Health & Welfare Fund v. Teva Pharmaceuticals USA, Inc. et al.*, No. 2:14-cv-00151
(E.D. Pa.); *International Union Of Operating Engineers Local 132 Health And Welfare Fund v.
Teva Pharmaceuticals USA, Inc. et al.*, No. 2:13-cv-06579 (E.D. Pa.); *United Food And
Commercial Workers Local 1776 & Participating Employers Health And Welfare Fund v. Teva
Pharmaceuticals USA, Inc. et al.*, No. 2:13-cv-06734 (E.D. Pa.); *Local 17 Hospitality Benefit
Fund V. Boehringer Ingelheim Pharma GmbH & Co. KG et al.*, No. 0:14-cv-00130 (D. Minn.);
*Fraternal Order Of Police Miami Lodge 20, Insurance Trust Fund v. Teva Pharmaceuticals
USA, Inc. et al.*, No. 2:13-cv-06999 (E.D. Pa.); *NECA-IBEW Welfare Trust Fund v. Teva
Pharmaceuticals USA, Inc. et al.*, No. 2:14-cv-00329 (E.D. Pa.); *Pirelli Armstrong Retiree
Medical Benefits Trust v. Teva Pharmaceuticals USA, Inc. et al.*, No. 3:13-cv-01382 (M.D.
Tenn.); *Twin City Iron Workers Health And Welfare Fund v. Teva Pharmaceuticals USA, Inc. et
al.*, No. 2:14-cv-01921 (E.D. Pa.); and *Plumbers & Pipefitters Local 178 Health & Welfare Trust
Fund v. Teva Pharmaceuticals USA, Inc. et al.*, No. 2:13-cv-06692 (E.D. Pa.).

### A. Humana Has Standing in All Indirect Purchaser States and the "Greatest Economic Interest"

Humana has the greatest economic interest of any plaintiff in the prosecution of this action and will devote its sophistication and resources to the effective prosecution of this litigation. Humana paid more than $100 million for Aggrenox prescriptions during the proposed class period in every United States jurisdiction, including all those with laws permitting recoveries to indirect purchasers for antitrust violations. *Compl.* ¶¶ 1, 25. No other end payer plaintiff before the Court could plead (and none does plead) standing in every state or purchases anywhere approaching this magnitude.[4]

---

[4] *A.G.C. Buildings*, No. 3:13-cv-01716 (D. Conn.), Dkt. No. 1 ¶ 14 (purchase details not provided); *Painters D.C. 30*, No. 3:13-cv-01763 (D. Conn.), Dkt. No. 1 ¶ 14 (purchase details not provided); *I.U.O.E. Locals 137*, No. 3:14-cv-00336 (D. Conn.), Dkt. No. 1 ¶ 14 (purchase details not provided); *Minn. and N.D. Bricklayers*, No. 0:13-cv-03588 (D. Minn.), Dkt. No. 1 ¶ 16 (1981 active participants, plus spouses and dependents; purchases in Minnesota and Arizona); *Cafeteria Employees 634*, No. 0:13-cv-03650 (D. Minn.), Dkt. No. 1 ¶ 11 (purchases in D.C. area); *I.U.O.E. 701*, No. 0:14-cv-00748 (D. Minn.), Dkt. No. 1 ¶ 16 (purchases in Oregon and Washington);*IAFF Local 22*, No. 0:13-cv-03648 (D. Minn.), Dkt. No. 1 ¶ 11 (purchases in Pennsylvania);*Painters D.C. 21*, No. 0:14-cv-00050 (D. Minn.), Dkt. No. 1 ¶ 11 (purchases in Pennsylvania and Ohio); *Newspaper and Magazine Employees*, No. 2:13-cv-07806 (D.N.J.), Dkt. No. 1 ¶ 11 (purchases in Pennsylvania); *Man-U Service Contract Trust Fund*, No. 2:13-cv-07068 (E.D. Pa.), Dkt. No. 1 ¶ 11 (purchases in D.C. area); *AFSCME D.C. 47*, No. 2:14-cv-00151 (E.D. Pa.), Dkt. No. 1 ¶ 11 (purchase details not provided); *I.U.O.E. Local 132*, No. 2:13-cv-06579 (E.D. Pa.), Dkt. No. 1 ¶ 10 (purchases in Illinois, Maryland, Pennsylvania, Texas and West Virginia); *U.F.C.W. Local 1776*, No. 13-cv-06734 (E.D. Pa.), Dkt. No. 1 ¶ 12 (purchase details not provided); *Local 17 Hospitality Benefit Fund*, No. 0:14-cv-00130 (D. Minn.) (759 active participants, plus spouses and dependents; purchases in Minnesota and Arizona); *Fraternal Order of Police Miami Lodge 20*, No. 2:13-cv-06999 (E.D. Pa.), Dkt. No. 1 ¶ 12 (plan members limited to current and retired officers of City of Miami Police Dept.); *NECA-IBEW Welfare Trust Fund*, No. 2:14-cv-00329 (E.D. Pa.), Dkt. No. 1 ¶ 9 (purchase details not provided); *Pirelli Armstrong*, No. No. 3:13-cv-01382 (M.D. Tenn.), Dkt. No. 1 ¶ 12 (stating only that the association provided reimbursement for Aggrenox in "multiple states"); *Twin City Ironworkers*, No. 2:14-cv-01921 (E.D. Pa.), Dkt. No. 1 ¶ 11 (1,850 active participants, plus spouses and dependents; purchases in Minnesota and Wisconsin); and *Plumbers Local 178*, No. 2:13-cv-06692 (E.D. Pa.), Dkt. No. 1 ¶ 12 (purchase details not provided).

The Taft-Hartley welfare fund and other end payer plaintiffs before the Court likely do not have purchases in all of the pleaded "indirect purchaser" states. This standing deficiency has proven problematic for named plaintiff funds in prior Hatch-Waxman end payer proceedings. *See, e.g., In re: Wellbutrin XL Antitrust Litig.*, No. 08-cv-2433-MAM (E.D. Pa.) (Dkt. Nos. 90–91) (July 31, 2009) (dismissing the union health and welfare funds' complaint in part for lack of standing due to no purchases in various jurisdictions.); *In re Flonase Antitrust Litig.*, No. 08-cv-03301-ABB (E.D. Pa.) (Dkt. Nos. 436–437) (June 18, 2012) (denying certification of health and welfare funds' proposed multistate class; limiting class coverage to states where purchases were made). In *Wellbutrin XL*, for example, it became necessary for Aetna of California, Inc., represented by Lowey, to intervene in the action to rectify the standing deficiency identified by the Court in partially dismissing the claims under Rule 12(b)(6). No. 08-cv-2433-MAM (E.D. Pa.) (Dkt. No. 149) (May 13, 2010). Appointing the Lowey/Rawlings Team would avoid such complications.

Courts in this Circuit have held that selection of counsel by the plaintiff with the "greatest economic interest" is a "highly relevant" factor in selecting interim lead counsel. *See In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11 Md. 2262, 2011 WL 5980198, at *3 (S.D.N.Y. Nov. 29, 2011) (Buchwald, J.) (finding the selection of counsel by the plaintiff with the "greatest economic interest" to be a "highly relevant" factor in selecting interim lead class counsel). While this case in not governed by the Private Securities Litigation Reform Act of 1995, where the largest economic impact is often dispositive of the lead counsel selection, courts presiding over other types of class actions have endorsed Congress' rationale for focusing on the magnitude of the named plaintiff's claim: "that large [plaintiffs] would do a better job at counsel selection, retention, and monitoring than judges have traditionally done . . . ." *In re Cendant*

*Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001).  The same factors weigh in favor of recognizing Humana's choice here.

**B.      Under Each and All of the Mandatory Criteria of FRCP Rule 23(g)(1)(A), This Court Should Appoint the Lowey/Rawlings Team as Counsel "Best Able to Represent the Interests of the Class"**

The same Rule 23(g)(1)(A) factors that apply in choosing class counsel during class certification proceedings apply during the antecedent process of choosing interim class counsel. *See In re Bear Stearns Co., Inc. Sec. Derivative and ERISA Litig.*, No. 08 MDL 1963 (RWS), 2009 WL 50132 at *11 (S.D.N.Y. Jan. 5, 2009). The mandatory criteria that the Court "must consider" are:

(i)      the work counsel has done in identifying or investigating potential claims in the action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

FED. R. CIV. P. Rule 23(g)(1)(A)(i)-(iv).

Application of these factors to this case results in the conclusion that the Lowey/Rawlings Team is best able to represent the interests of the proposed end payer classes.

C.   **The Lowey/Rawlings Team Has Done the Work Necessary to Investigate and Identify Potential Claims**

Rule 23 requires a qualitative assessment of the work performed by counsel and the knowledge, skill and experience of counsel in the area of law at issue.  Quality, not speed, should be paramount when evaluating counsel's work.[5]

The Lowey/Rawlings Team has devoted a significant amount of time and resources to investigating and pleading the federal and state law claims on behalf of their client Humana and the members of the classes.  The Lowey/Rawlings Team worked extensively with Humana on its Complaint; meeting in-person to review the allegations with its in-house attorneys.  This client driven model will continue and that factor, coupled with the nationwide presence of Humana and the Firms' absent class member client base, will prove indispensable in advancing the interests of all members of the end payer classes in this litigation.

On April 28, 2014, the Lowey/Rawlings Team filed its Complaint on behalf of Humana and the proposed Sherman Act End Payer Class and State Law End Payer Class in this Court. *Humana v. Boheringer, et al.*, 14-cv-05762 (D. Conn.), Dkt No. 1.  Prior to filing, the Firms meticulously evaluated Humana's claims, as well as the existing and potential "reverse payment"

---

[5]     "Whether someone was 'first to file' by itself has little to do with the best qualified to lead the case, and does not satisfy the requirements of Rule 23(g).  To hold otherwise would further encourage a 'rush to the courthouse.'"  *Nowak v. Ford Motor Co.*, 240 F.R.D. 355, 365 (E.D. Mich. 2006).  Moreover, where, as here, the allegations are grounded in facts developed by a prior governmental investigation, the filing order is irrelevant to the determination of lead counsel.  *See, e.g.*, *In re Scrap Metal Antitrust Litig.*, No. 02 Civ. 0844, 2002 WL 31988203, at *1 (N.D. Ohio Aug. 5, 2002) (noting that "consideration of the 'first-to-file' status when making lead counsel determinations has been rejected by many courts," and that "given the long history of governmental investigation and prosecution of the scrap metal industry in the relevant market, and the respective timing of all of the filings, first-to-file status is simply not meaningful.").  The 2009 FTC investigation first developed the facts of this litigation against Defendants.  The first private litigation was filed on behalf of direct-purchaser Miami-Luken, Inc. on November 8, 2013.  *Miami-Luken, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 2:13-cv-06543 (E.D. Pa.).

Hatch-Waxman end payer circumstances publically disclosed.  Large institutions such as Humana do not file class action lawsuits casually.  When they do, it is only after carefully analyzing the merits of the claims and weighing all potential alternatives.  In preparing Humana's Class Action Complaint, the Lowey/Rawlings Team conducted a robust investigation into the factual underpinnings of the federal and state law claims.  Our extensive experience representing end payers in generic delay cases informed our investigation, and we were careful to conduct our due diligence on all relevant facts and background information surrounding the claims.

We have thoroughly examined the background facts, including relevant Federal Drug Administration filings as well as the litigation between Defendants.  We also analyzed the investigation commenced by the Federal Trade Commission into the Boehringer-Barr settlement in 2009, as well as the subsequent subpoena litigation.

In addition to investigating and confirming all underlying facts, the Lowey/Rawlings Team conducted extensive research into the potential antitrust and state claims asserted against Defendants.  The Lowey/Rawlings Team also engaged in analysis of Humana's purchases and other internal materials relevant to Humana's claims, crafted an appropriate strategy to commence a document hold within Humana, and otherwise communicated with Humana's pharmacy department personnel concerning a variety of issues relevant to the claims.  The Lowey/Rawlings Team reviewed Humana data and internal documentation to support their pre-filing investigation efforts.  The Lowey/Rawlings Team also developed a claims segregation strategy for purposes of enabling it to plead the origin and value of Humana's purchases in the relevant jurisdictions.

Throughout this pre-filing investigation, the Firms have communicated extensively with Humana to keep it actively informed of the claims and the status of the litigation, and ensure that they are the best informed representative for all members of the End Payer Sherman Act Class and State Law End Payer Class. In short, the Lowey/Rawlings Team performed its diligence efforts in structuring Humana's claims, the class definitions, and the theories of recovery. This factor weighs in favor of appointing the Lowey/Rawlings Team under Rule 23(g)(3).

### D. The Lowey/Rawlings Team Would Bring Unparalleled Skill, Experience, and Knowledge to Bear in Prosecuting This Case

Rules 23(g)(1)(A)(ii) asks the Court to consider "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Both of the Lowey/Rawlings Team firms are extremely well qualified to litigate this matter effectively on behalf of the proposed classes. The Lowey/Rawlings Team are among the very top firms in the country in representing plaintiffs in this precise type of Hatch-Waxman end payer class action litigation. The Lowey/Rawlings Team firms have become the nation's premier litigation firms representing health insurers in pay-for-delay and other actions to recover overcharges for prescription drug and other medical products and services. Our skills in this area are recognized by the largest third party payers in the United States, including Aetna, CIGNA, Humana, and WellPoint, which frequently retain the firms to assert claims against pharmaceutical manufacturers for conduct resulting in overpriced medication. [6]

---

[6]    *See In re Flonase Antitrust Litig.,* 08-cv-03301 (E.D.Pa.), Dkt. No. 566, Declaration of Marvin M. Miller in Support of Indirect-Purchaser Plaintiffs' Motion for Preliminary Approval of Settlement, at ¶¶ 8, 10, Ex. B to Prelim. App. Mot. (detailing Class Counsel's efforts to reach out to and "initiate discussions" with Lowey Dannenberg and Rawlings whose clients provide or administer prescription drug and health benefits to "at least 60 percent of the covered lives privately insured in the United States.").

As a testament to its expertise, in January 2013 Lowey Dannenberg was retained by America's Health Insurance Plans, a national association representing the health insurance industry, to file an *amicus* brief in the U.S. Supreme Court in support of the Federal Trade Commission regarding the anti-competitive effects of "pay-for-delay" reverse payments and the harm they do to consumers and health insurers. *See FTC v. Watson Pharm., Inc.*, No. 12-416 (S. Ct.). In addition, in the 2013 edition of Corporate Counsel magazine's "In House Law Departments at the Top 500 Companies," Lowey Dannenberg is identified as a "Go-To Law Firm" for litigation services by its longtime clients Humana and Aetna.

Lowey Dannenberg has been lead class counsel for indirect purchaser End Payers in the following generic delay antitrust class action lawsuits, in each of which—long <u>before</u> settlements occurred—Lowey Dannenberg (1) successfully prosecuted contested motions to <u>certify litigation classes</u> (as contrasted with unopposed motions to certify settlement classes); (2) took depositions of fact and expert witnesses; and (3) prosecuted and/or defended summary judgment motions:

- *In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich.). Certification of <u>litigation</u> class—200 F.R.D. 326 (E.D. Mich 2001); secured partial summary judgment for plaintiffs—332 F.3d 896 (6th Cir. 2003); secured $80 million class settlement—481 F.3d 355 (6th Cir. 2007). Lowey Dannenberg attorneys argued for the end payer class in the three reported decisions identified above, and successfully argued other dispositive and evidentiary motions that were unreported, but were vital to enable us to negotiate the $80 million settlement.

- *In re Terazosin Hydrochloride Antitrust Litig.*, MDL No. 1317 (S.D. Fla.). Certification of 17-state <u>litigation class</u>—220 F.R.D. 672 (S.D. Fla. 2004); Approval of 17-state settlement (after submission of final pretrial order, jury

interrogatories and motions *in limine*) for $28.7 million—2005 WL 251960 (July 8, 2005). Lowey Dannenberg attorneys argued for the class in the decisions identified above and successfully argued numerous pretrial motions that were unreported.

- *In re Wellbutrin XL Antitrust Litig.*, Civ. No. 08-2433. Certification of 6-state litigation class—282 F.R.D. 126 (E.D. Pa. 2011); Decision sustaining class pleading of New York antitrust claims, the first post-*Shady Grove* (559 U.S. 393 (2010)) decision to so hold—756 F. Supp. 2d 670 (E.D. Pa. 2010); Partial settlement for $11.75 million (unreported). The case continues against the non-settling defendant. Lowey Dannenberg attorneys argued all of these motions.

The Lowey/Rawlings Team's achievements for its TPP clients also include the following:

- Starting with pre-litigation conception of a lawsuit in 2005, Lowey Dannenberg and Rawlings worked with class counsel on a lawsuit alleging that the prescription drug wholesaler, McKesson, and the prescription drug pricing information publisher, First DataBank, illegally conspired in 2001 to increase the reported average wholesale prices of approximately 800 prescription drugs, resulting in increased prescription drug costs for consumers and third party payer health benefit plan providers. We represented TPP interests in settlement negotiations with McKesson that resulted in a $350 million settlement and a subsequent allocation mediation with counsel representing consumer class members, resulting in allocation of $285 million of the settlement award to TPPs.

- Pfizer paid $85 million to a class of consumers and health benefit plan providers to settle claims of allegedly fraudulent marketing of the Cox-2 inhibitor painkillers Bextra and Celebrex. Bextra was withdrawn from the market by Pfizer due to its risks of heart attacks and strokes. Lowey Dannenberg and Rawlings represented the interests of TPP members of the settlement class with respect to allocation of settlement proceeds between TPPs and consumers in negotiations resulting in the allocation of $59 million of the settlement award to TPPs

- Lowey Dannenberg, with Rawlings, represented more than 40 of the largest health benefit plan providers in the U.S. in civil actions in New Jersey state court against Merck, seeking recovery of amounts they paid for Vioxx prescribed to their insureds. Vioxx was pulled off the market in September 2004 by Merck due

to its side-effect risks of heart attack and strokes.  On August 4, 2009, Merck agreed to pay $65 million to settle these claims and similar claims by other TPPs.

- Lowey Dannenberg and Rawlings negotiated a preferred set-aside settlement of $55 million for its clients and the clients of cooperating law firms. In the complaint, Lowey Dannenberg alleged that TAP Pharmaceutical Products, Inc., Abbott Laboratories and Takeda Pharmaceuticals conspired to fraudulently market and distribute Lupron by inflating the Average Wholesale Price for the drug causing third party payers to overpay for the drug.

- The United States District Court for the District of Delaware approved, and the Third Circuit Court of Appeals affirmed, a $44.5 million class action settlement paid by DuPont Pharmaceuticals to consumers and third party payers nationwide to settle claims of unfair marketing practices in connection with the prescription blood thinner Coumadin.  The Lowey firm, which had been appointed by the District Court as the representative of third party payers, argued the successful appeal.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3rd Cir. 2004).

A sampling of current litigations and representations of several TPPs also demonstrates the Lowey/Rawlings Team's qualifications.  In *Blue Cross Blue Shield Association, et al. v. GlaxoSmithKline LLC*, 13-cv-4663 (E.D. Pa.), Lowey Dannenberg and Rawlings jointly represent 40 TPPs, accounting for more than 50% of the privately-insured covered lives in the United States, in an action related to adulterated and illegally marketed drugs.  Lowey Dannenberg and Rawlings also represent several TPPs in prosecution of their claims related to the regarding the generic delay of the prescription drugs Skelaxin and Suboxone.  *See Blue Cross Blue Shield Association, et al. v. King Pharmaceuticals LLC, et al.*, (Pa. CCP); *CareFirst of Maryland, Inc., et al. v. Reckitt Benckiser Inc., et al.* (Pa. CCP).  Lowey Dannenberg and Rawlings also represent 29 TPPs—with more than a collective 150 million covered lives—as opt-outs in the Nexium pay-for-delay litigation.  *See Time Insurance Company, et al. v. AstraZeneca AB, et al.* (Pa. CCP) and *Cariten Insurance Company, et al. v. AstraZeneca AB, et al.* (Pa. CCP); *see also In re Nexium (Esomerprazole) Antitrust Litig.*, 12-md-2409 (D. Mass.).

These cases demonstrate that Lowey Dannenberg and Rawlings are the go-to firms to protect the interests of TPPs in pharmaceutical drug recovery litigations.

Barbara Hart will lead the Lowey/Rawlings Team. She has successfully prosecuted numerous complex actions, including: *In re Beacon* ($219 million settlement; Judge McMahon commended Ms. Hart on the "unprecedented global settlement" reached in this litigation and recognized that she "carried the laboring oar."); *In re Air Cargo* ($89 million original settlement); *In re Juniper Networks Securities Litig.* ($169 million settlement). Specifically in the pharmaceutical and chemical arena, a few of the notable antitrust litigations include: *In re Brand Name Drug Litig.* ($65 million settlement); *In re Paxil Antitrust Litig.* ($65 million settlement); *In re Sodium Erythorbate and Maltol Antitrust Litig.* ($18.45 million settlement); *In re Synthroid Marketing and Antitrust Litig.* ($87.4 million settlement); and *In re Warfarin Sodium Antitrust Litig.* ($44.5 million settlement). She co-edited the 2011 New York Antitrust and Consumer Protection Law handbook. Ms. Hart has also served as Counsel to the Office of the Treasurer of the State of Connecticut in the *In re Waste Management Securities Litigation*, which settled for $457 million and was (at the time) the third-largest securities class action settlement.[7]

Mr. St. Phillip, another Lowey lawyer who will actively represent Humana here, has been one of the leading Hatch-Waxman end payer plaintiffs' litigators in the country for more than a decade. Mr. St. Phillip developed much of the plaintiff strategies for prosecuting these types of claims in the *Cardizem CD* litigation and continued these efforts in *In re Terazosin*

---

[7]     In addition, Ms. Hart is Lead Counsel for the NYC Pension Funds prosecuting a securities class action against Community Health Systems, Inc. (*Norfolk County Retirement System v. Community Health Systems, Inc.*, 11-cv-0433) currently pending in the United States District Court for the Middle District of Tennessee.

*Hydrochloride Antitrust Litig.*, MDL No. 1317, and *In re Wellbutrin XL Antitrust Litig.* (E.D. Pa.).  Mr. St. Phillip has also long advised his health insurer clients concerning their interests in Hatch-Waxman end payer litigation involving a host of drugs, including, *inter alia*, Buspirone, Augmentin, Bextra, Toprol, Remeron, Relafen, DDAVP and Wellbutrin SR.  Mr. St. Phillip was also featured in the National Law Journal for his efforts successfully arguing Aetna's landmark appeal in the *In re Neurontin Marketing Litigation* case before the First Circuit in "Pfizer Suffers Big Setbacks on Trio of Appellate Rulings." National Law Journal (April 4, 2013).

Lowey Dannenberg's ground-breaking and successful end payer drug litigation practice complements its over 40 years of experience and success in litigating many other complex class actions and has represented sophisticated clients in litigation involving federal securities, antitrust, commodities and RICO violations, for which Lowey Dannenberg has achieved recoveries in excess of one billion dollars.  Lowey Dannenberg's clients, in addition to Humana, include Fortune 100 companies such as WellPoint, Inc.; Aetna, Inc.; CIGNA; Horizon BC/BS of New Jersey; Verizon, Inc.; the nation's largest pension funds, including the New York State Common Retirement Fund and the New York City Pension Funds; and sophisticated institutional investors, such as Federated Investors, Inc., an investment firm with more than $341 billion in assets under management.

For the past twenty years, Rawlings has represented the majority of the health insurance industry in all litigation-related recovery efforts against the pharmaceutical industry, and like Lowey Dannenberg, it has long been involved in litigating and resolving reverse-payment antitrust claims.  The Lowey/Rawlings Team typically represents clients with over 60% of national purchases in these cases. As such, Rawlings has historically played an active role in steering this litigation and in resolving its clients' claims through settlement.  Mr. Fischer,

Rawlings's Chairman, has personally been involved in settling claims for Rawlings clients in a string of major reverse-payment antitrust cases, including *In re Augmentin Antitrust Litig.* ( E.D. Va.); *In Re Buspirone Antitrust Litig.* (S.D.N.Y.); *In re Terazosin Hydrochloride Antitrust Litig.* (S.D. Fla.); *In re Paxil Antitrust Litig.* (E.D.Pa.); *In re Relafen Antitrust Litig.* (D. Mass.); *In re Remeron Antitrust Litig.*(D.N.J.); and *In re Wellbutrin SR Antitrust Litig.* (E.D. Pa.).

In addition to its work in antitrust cases, Rawlings has a twenty-year record of complex recovery litigation for large national health plans, dating back to the DuPont breast implant and Fen-Phen cases of the mid-1990s. Rawlings has been instrumental in securing recoveries not only in antitrust cases, but also in fraudulent marketing cases, including the AWP litigation and McKesson/FDB litigation discussed above; off-label marketing cases involving the drugs Paxil and Oxycontin; and mass tort cases involving the drugs Vioxx, Avandia, Yaz, Prempro, and others. As such, Rawlings has an intimate and unique knowledge of a range of issues relevant or potentially relevant to the claims of Humana and other class members in this case. These include the nature of the health insurance market, including the market for pharmaceutical products; the general and financial management of health plans, including drug purchasing decisions, risk underwriting, and health claims administration and processing; formulary management; and so on.

This expertise has made Rawlings an industry leader. In addition to Humana, Rawlings counts among its clients nearly every major health insurer in the country, including Blue Cross-Blue Shield Association, Health Net, United, and WellPoint; most of the country's Blue Cross/Blue Shield plans, including those of Arizona, California, Florida, Kansas, Illinois, Massachusetts, New York, North and South Carolina, Tennessee, and Texas; and dozens of other insurers, including Highmark, Medical Mutual of Ohio, Harvard Pilgrim, Tufts, and AvMed.

The Lowey/Rawlings Team has extensive, pinpoint experience and knowledge of the applicable antitrust laws covering "pay-for-delay" actions, which supplements its broader knowledge and experience of the procedural law governing class action litigation.  The Lowey/Rawlings Team's focus on complex class actions, coupled with its many years of experience, weighs heavily in favor of appointment as interim co-lead class counsel under Rule 23(g).

### E.   The Lowey/Rawlings Team Will Commit More Than Ample Resources to Representing the Classes

Lowey and Rawlings have historically advanced millions of dollars on behalf of the classes the Firms have represented.  The Team has the resources to finance and vigorously prosecute this action, and are prepared to advance similar substantial sums in this case.  This factor also weighs in favor of appointing the Lowey/Rawlings Team as interim co-lead class counsel under Rule 23(g)(3) and Lowey as liaison counsel.

## CONCLUSION

For the stated reasons, Plaintiff Humana Inc. respectfully requests that the Court appoint Lowey Dannenberg Cohen & Hart, P.C. and Rawlings & Associates, PLLC as interim co-lead class counsel under FED. R. CIV. P. 23(g)(3) for the indirect-purchaser classes, and Lowey Dannenberg Cohen & Hart, P.C. as liaison counsel.


Dated: May 12, 2014
       White Plains, New York

Respectfully submitted,

**LOWEY DANNENBERG COHEN
& HART, P.C.**

By:   **/s/  Peter St. Phillip**
Peter St. Phillip
    (District of Connecticut Bar No. ct29379)
Barbara J. Hart
Gerald Lawrence
Richard Cohen
Noelle Ruggiero
One North Broadway, Suite 509
White Plains, NY 10601-2301
Telephone:     (914) 997-0500
Facsimile:      (914) 997-0035
E-mail:          pstphillip@lowey.com


**RAWLINGS & ASSOCIATES, PLLC**
Mark D. Fischer
Robert Griffith
One Eden Parkway
LaGrange, Kentucky  40031-1800
Telephone:     (502) 587-1279
Facsimile:      (502) 584-8580
E-mail:    mdf@rawlingsandassociates.com

*Counsel to Humana Inc. and Proposed
Interim Co-Lead Counsel*

## Certificate of Service

I hereby certify that on May 12, 2014, a copy of Plaintiff Humana Inc.'s Memorandum of Law in Support of Motion for Appointment of Interim Co-Lead Class Counsel and Liaison Counsel was filed electronically  and served by mail on anyone  unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all  parties by operation of the Court's electronic filing system or by mail to anyone  unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Peter St. Phillip _____

Peter St. Phillip (District of Connecticut Bar No. ct29379)
One North Broadway, Suite 509
White Plains, NY 10601-2301
Telephone:    (914) 997-0500
Facsimile:    (914) 997-0035
E-mail:    pstphillip@lowey.com