## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE AGGRENOX ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Direct Purchaser Actions<br><br>*Cesar Castillo, Inc. v. Boehringer Ingelheim Pharma GMBH & Co. KG et al.*, No. 3:14-cv-00225<br><br>*American Sales Company, LLC v. Boehringer v. Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:14-cv-00003<br><br>*Miami-Luken, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 14-cv-00477<br><br>*Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.*, No. 3:14-cv-000485 | MDL No. 2516<br><br>Master File No. 3:14-md-02516-SRU<br><br>Hon. Stefan R. Underhill |

## PLAINTIFF MIAMI-LUKEN, INC.'s MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF CESAR CASTILLO'S CROSS-MOTION FOR APPOINTMENT OF GRANT & EISENHOFER P.A. FOR INTERIM LEAD CLASS COUNSEL AND BRENNER, SALTZMAN & WALLMAN LLP AS LIAISON COUNSEL

TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... 1

I.    INTRODUCTION ............................................................................................................ 3

II.   FACTS ............................................................................................................................ 7

III.  APPLICABLE LEGAL STANDARD GOVERNING THE APPOINTMENT OF CLASS
      COUNSEL ...................................................................................................................... 8

IV.   ARGUMENT .................................................................................................................. 9

      A.    Plaintiffs' Proposed Leadership Structure Best Serves the Interests of the Class ....... 9

      B.    Cesar Castillo's Cross Motion Should be Denied ................................................... 10

            1.    Conduct In This Case ................................................................................. 10

            2.    Ms. Nussbaum's Past Conduct Further Undermines Her Assertion That
                  She Is Willing And Able To Fairly Represent The Class ............................ 11

            3.    Ms. Nussbaum Does Not Enjoy The Support Of The Class Or The
                  Confidence Of Other Counsel Who Have Litigated The Hatch-Waxman
                  Antitrust Direct Purchaser Class Actions Over The Last Sixteen Years ....... 16

V.    CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    697 F.3d 154 (2d Cir. 2012) .......................................................................... 14

*Arkansas Carpenters Health And Welfare Fund, et al. v. Bayer AG et al.*,
    604 F.3d 98 ...................................................................................................... 5

*In re Cardizem CD Antitrust Litig.*,
    332 F.3d 896 (6th Cir. 2003) ............................................................................ 5

*FTC v. Actavis*,
    133 S.C. 2223 (2013) ........................................................................................ 5

*In re K-Dur Antitrust Litig.*,
    686 F.3d 197 (3d Cir. N.J. 2012) ("K-Dur") .................................................... 5

*Kingsepp v. Wesleyan Univ.*,
    142 F.R.D. 597 (S.D.N.Y. 1992) ...................................................................... 9

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    202 F.R.D. 12 (D.D.C. 2001) .......................................................................... 14

*Simon v. KeySpan Corp.*,
    694 F.3d 196 (2d Cir. 2012) ............................................................................ 14

*Valley Drug Co., et al. v. Geneva Pharms., Inc., et al.*,
    344 F.3d 1294 (11th Cir. 2003) ........................................................................ 5

*Walter v. Palisades Collection, LLC*,
    No. 06-378, 2010 U.S. Dist. LEXIS 7374 (E.D. Pa. Jan. 26, 2010) .............. 8-9

## DOCKETED CASES

*Caesar Castillo, Inc. v. Boehringer Ingelheim Pharma GMBH & Co. K,G et al.*,
    No. 3:14-cv-00225-JBA (D. Conn.) ..................................................................4

*In re K-Dur Antitrust Litigation*,
    No. 01-cv-1652 (D.N.J.) ....................................................................................6

*In re Lidoderm Antitrust Litig.*,
    No. C-14-md-02521 WHO (N.D. Ca.) ......................................................... 6, 7

*In re Lipitor Antitrust Litig.*,
    No. 3:12-cv-02389 (D.N.J.) ...............................................................................6

*In re Mushrooms Direct Purchaser Antitrust Litig.*,
    No. 06-cv-620 (E.D. Pa.) ................................................................................ 13

*In re Neurontin Antitrust Litigation*,
    MDL No. 1479 (D.N.J.)...................................................................................4

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    MDL Docket No. 2409 (D. Mass.)...............................................................6, 7

*In re Niaspan Antitrust Litig.*,
    No. 2:13-md-02460 (E.D. Pa.) ......................................................................6

*In re Prograf Antitrust Litig.*,
    MDL Docket No. 2242 (D.N.J.).....................................................................6

*In re Relafen Antitrust Litig.*,
    No. 01-cv-12239 (D. Mass.) ......................................................................... 12

*In re Remeron Antitrust Litig.*,
    No. 03-cv-323 (D.N.J.)................................................................................. 13

*In re Suboxone Antitrust Litig.*,
    MDL Docket No. 2445 (E.D.P.A.).................................................................6

*In re Wellbutrin XL Antitrust Litig.*,
    No. 08-cv-2431 (E.D Pa.) ............................................................................ 13

## FEDERAL STATUTES

Fed.R.Civ.P. 23(g) ............................................................................................. 3, 8

## I.    INTRODUCTION

This submission on behalf of Direct Purchaser Class Plaintiff Miami-Luken, Inc. ("Miami-Luken") is in opposition to the cross motion by Cesar Castillo to appoint its counsel, Grant & Eisenhofer, P.A., ("G&E)  as interim sole lead class counsel. The underlying policy behind Fed.R.Civ.P. 23(g) is that the counsel who will most adequately represent the interests of the putative class shall be designated lead counsel with the responsibilities and authority attendant thereto.  We submit that Garwin, Gerstein & Fisher, LLP ("GGF"), Berger & Montague, P.C. ("Berger Montague" or "BM") and Hagens Berman Sobol Shapiro LLP ("Hagens Berman" or "HBSS"), who earlier moved for an order appointing them as interim co-lead counsel (Dkt. No. 3), clearly satisfy this standard.

The factors typically relied on by courts in determining lead counsel weigh heavily in favor of the proposed leadership of GGF, BM, and HBSS. *First*, Miami-Luken (represented by GGF and the associated firms Smith Segura & Raphael, LLP ("SSR") and Odom and Des Roches, LLP ("ODR")) filed the first complaint in this proceeding on November 8, 2013.[1]  The complaint was based on an extensive investigation conducted over the course of nearly six months, and reflects counsels' considerable work product.[2] In contrast, the Cesar Castillo

---

[1] RDC filed its complaint on December 8, 2013, and American Sales filed its complaint on January 2, 2014.  *Miami-Luken Brief* at 5-6, fn.15,16.

[2] Declaration of David C. Raphael, Jr. in Support of the Motion of Miami-Luken, Inc., Rochester Drug Co-Operative, Inc., and American Sales Company, LLC for Entry of Case Management Order No. 1 and in Opposition to Cross-Motion of Cesar Castillo, Inc. for Appointment of Grant & Eisenhofer P.A. as Interim Lead Class Counsel and Brenner, Saltzman & Wallman LLP as Liaison Counsel ("Raphael Declaration"), Exhibit 4 to the Declaration of Joseph Opper in Support of the Motion of Miami-Luken, Inc., Rochester Drug Co-Operative, Inc., and American Sales Company, LLC for Entry of Case Management Order No. 1 and in Opposition to Cross-Motion of Cesar Castillo, Inc. for Appointment of Grant & Eisenhofer P.A. as Interim Lead Class Counsel and Brenner, Saltzman & Wallman LLP as Liaison Counsel ("Opper Declaration"), at ¶¶ 6-9.

3

complaint was filed over three months later on February 24, 2014, and is a virtual word for word copy of the Miami-Luken complaint.[3]

*Second*, GGF, SSR, and ODR have been at the forefront of Hatch-Waxman antitrust litigation on behalf of similar direct purchaser classes since 1998.[4] The direct purchaser class here is unique in that the core class members are sophisticated business entities that have been class members in multiple Hatch-Waxman antitrust class actions over the last sixteen years.[5] These class members have participated in numerous settlements, many have been subject to extensive third party discovery and as a group have extensive experience with class counsel.[6] The class in this case is very discrete and likely to comprise fewer than 100 members.

GGF, the firm proposed by Miami-Luken as one of the three co-lead counsel to represent the class, has served as sole lead counsel or co-lead counsel on behalf of a direct purchaser class in over sixteen Hatch-Waxman cases, having secured recoveries of over $1.2 billion.[7]  The most recent recovery is the settlement of a case against Pfizer that culminated over twelve years of hard fought litigation with a settlement in principal of $190 million.[8] As a result of these

---

[3] *Caesar Castillo, Inc. v. Boehringer Ingelheim Pharma GMBH & Co. K,G et al.*, No. 3:14-cv-00225-JBA (D. Conn.) ("*Cesar Castillo v. Boehringer*"), (Dkt. 1).

[4] *See* Opper Declaration at ¶ 5.

[5] *See id*. at ¶ 6.

[6] *See id*. at ¶ 7.

[7] *See id*. at ¶ 10; Declaration of Bruce E. Gerstein In Support of The Entry of Case Management Order No. 1 (Dkt. No. 5) ("Gerstein Declaration") at ¶¶ 4-5.

[8] *In re Neurontin Antitrust Litigation*, MDL No. 1479 (D.N.J.). The Court preliminarily approved the settlement on May 1, 2014 and set the hearing for final approval for July 31, 2014. *See* Opper Declaration at ¶¶ 10-11.

settlements, a number of the class members have received aggregate recoveries of over $10 million, and a few have recovered over $100 million in the aggregate.[9]

Moreover, GGF and its associated counsel (SSR and ODR) have been at the forefront of the development of the law in connection with reverse payment settlement agreements, a legal issue central to this case. GGF was lead or co-lead counsel in *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896 (6th Cir. 2003) ("Cardizem") (finding that reverse payments were *per se* illegal), *Valley Drug Co.*, *et al. v. Geneva Pharms., Inc., et al.*, 344 F.3d 1294 (11th Cir. 2003) ("Valley Drug") (holding contrary to *Cardizem* that patent settlements within the exclusionary power or scope of the patent would be *per se* legal), *Arkansas Carpenters Health And Welfare Fund, et al. v. Bayer AG et al.,* 604 F.3d 98 (2nd Cir. 2010) ("Cipro") (which questioned the legal basis for the scope of the patent rule that provided that a patent settlement which permitted generic entry before the patent expiration date is *per se* legal), and  *In re K-Dur Antitrust Litig.,* 686 F.3d 197 (3d Cir. N.J. 2012) ("K-Dur") (which provided that reverse payment settlements were presumptively illegal). This conflict among the circuits has since been resolved by the Supreme Court in *FTC v. Actavis*[10] where the Court adopted a rule of reason analysis. GGF coauthored an *amicus* brief in support of the FTC in *Actavis*. The continuing efforts of GGF and its associated counsel to challenge anticompetitive conduct by pharmaceutical companies to wrongfully extend and/or share monopoly profits have garnered the appreciation, respect, and strong support of many members of the class, as reflected by the declarations submitted by Miami-Luken and putative class members Prescription Supply, Inc., Value Drug Company, Louisiana Wholesale

---

[9] *See* Opper Declaration at ¶ 8.

[10] 133 S.C. 2223 (2013).

Drug Company, J M Smith Corporation d/b/a Smith Drug Company, and Burlington Drug Company, Inc.[11]

*Third*, unlike Cesar Castillo, which seeks sole leadership for its counsel G&E, Miami-Luken's counsel reached out to counsel for Rochester Drug Co-Operative, Inc. and American Sales Company, LLC to propose a co-lead counsel structure. These firms; Garwin Gerstein, Berger Montague and Hagens Berman have considerable experience working collegially and efficiently together, and a number of courts have appointed these three firms as co-lead counsel over the last number of years.[12] GGF agreed to a three way co-leadership with BM and HBSS based on the positive experiences of working as co-lead with them in several other cases. GGF is currently serving as co-lead counsel with both BM and HBSS in *In re Nexium (Esomeprazole) Antitrust Litig.*, MDL Docket No. 2409 (D. Mass.) ("*Nexium*"), *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389 (D.N.J.) ("*Lipitor*"), *In re Suboxone Antitrust Litig.,* MDL Docket No. 2445 (E.D.P.A.), and *In re Niaspan Antitrust Litig.*, No. 2:13-md-02460 (E.D. Pa.).[13] GGF is also currently serving as co-lead with HBSS in *In re Prograf Antitrust Litig.*, MDL Docket No. 2242 (D.N.J.), and proposed co-lead in *In re Lidoderm Antitrust Litig.*, No. C-14-md-02521 WHO (N.D. Ca.)[14] and is currently co-lead with Berger Montague in *In re K-Dur Antitrust Litigation*, No. 01-cv-1652 (D.N.J.).[15]

Cesar Castillo's counsel has opposed this leadership structure, and instead has moved for the appointment of its counsel, Linda Nussbaum of Grant & Eisenhofer, as sole lead counsel.

---

[11] *See* Opper Declaration at ¶¶ 44-49 and Exhibits 21-26 thereto.

[12] *See* Opper Declaration at ¶40.

[13] *See id.*

[14] *See id.*

[15] *See id.*

GGF, Berger Montague and Hagens Berman have offered Ms. Nussbaum and her firm a position

on the executive committee, a role she currently serves in several other cases where GGF, BM

and HBSS are the court appointed co-leads[16], but she has rejected this offer. We believe our

reasons for not including Ms. Nussbaum and her firm as a co-lead are well founded. There is a

well-documented history of Ms. Nussbaum's actions that reflect an indifference to the interests

of the class as opposed to the opportunistic interests of counsel, and, as discussed more fully in

Section III(B), *infra*, we strongly urge the court not to place Grant & Eisenhofer in a leadership

position ahead of the other counsel who actually developed the case, have shown a far greater

dedication to furthering the class members' interests, and have the strong support of many class

members.

## II.    FACTS

As detailed in Miami-Luken, RDC, and American Sales' joint Memorandum In Support

of their Motion for the Entry of Case Management Order No. 1 (Dkt. No. 4) ("Miami-Luken

Brief"), prior to filing its complaint,[17] Miami-Luken, through its counsel, independently

conducted an extensive and thorough investigation to verify the facts it alleges in its complaint.[18]

Plaintiffs RDC and American Sales filed their respective complaints shortly thereafter.

Subsequently, counsel for Miami-Luken, RDC and American Sales agreed to the leadership

structure proposed in the Miami-Luken Brief to combine their resources and decade-long

experience working together to successfully represent clients in Hatch-Waxman antitrust class

---

[16] *See, e.g.  In re Nexium (Esomeprazole) Antitrust Litig,.*(MDL Docket No. 2409 (D. Mass); *In re Lamictal Direct Purchaser Antitrust Litig.,* (12-cv-995) (DNJ) *In re Lidoderm Antitrust Litig.* (14-md-02521) (N.D. Cal) ("*In re Lidoderm*").

[17] RDC filed its complaint on December 8, 2013, and American Sales filed its complaint on January 2, 2014.  *Miami-Luken Brief* at 5-6, fn. 15 and 16.

[18] *See* Raphael Declaration at ¶¶ 6-9.

action litigations.[19]

In contrast, Cesar Castillo did not file its complaint (an almost word-for-word copy of the Miami-Luken complaint) until February 24, 2014, more than three months after Miami-Luken filed the first complaint.[20] Apart from Cesar Castillo's conclusory assertions about its own independent investigation, it has presented no detailed factual account of having done any substantial work to develop the allegations that Miami-Luken makes in its complaint.[21] Moreover, and contrary to Cesar Castillo's statements in its memorandum, the Miami-Luken Plaintiffs did not exclude Ms. Nussbaum but offered her a position on the executive committee, which Ms. Nussbaum rejected.[22]

## III.   APPLICABLE LEGAL STANDARD GOVERNING THE APPOINTMENT OF CLASS COUNSEL

Pursuant to Federal Rule of Civil Procedure 23(g), when faced with competing motions for appointment as lead counsel, the court is to appoint counsel that is "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). As Rule 23(g)(1)(c) suggests, in determining who is best able to represent the interests of the class, the court should review not only the qualifications of counsel seeking to act as lead counsel, but all other matters pertinent to counsel's ability to fairly and adequately represent the class. This analysis encompasses careful scrutiny of the "character, competence and quality of counsel." *Walter v. Palisades Collection,*

---

[19] Miami-Luken Brief at 6.

[20] *Id. at* 6, fn. 17. Caesar Castillo also filed a copycat complaint in another matter, *In re Lidoderm.*

[21] *See* Castillo Mem. at 4-6. *See* Declaration of Peter Kohn, at Ex. 1 (email from Peter Kohn to Linda Nussbaum dated February 24, 2014).  Ms. Nussbaum never did answer the questions posed to her in this email.

[22] *See* Gerstein Declaration at ¶ 3; D.I. 8 (Proposed Order), at 6.

*LLC*, No. 06-378, 2010 U.S. Dist. LEXIS 7374, at *29 (E.D. Pa. Jan. 26, 2010). In making its

assessment, a court may examine class counsel's conduct in prior litigations. *Id.*; *see also*

*Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 599 (S.D.N.Y. 1992).

## IV.   ARGUMENT

### A.   Plaintiffs' Proposed Leadership Structure Best Serves the Interests of the Class

Based on their longstanding experience successfully working together to represent

pharmaceutical wholesalers in some of the nation's largest pharmaceutical antitrust cases,

counsel for Miami Luken, RDC and American Sales[23] proposed the leadership structure they

submit would facilitate obtaining the best possible result for the proposed class in an efficient

and economical manner: that GGF, HBSS and BM be appointed co-lead counsel, along with an

executive committee that would include Cesar Castillo's counsel, G&E.[24] Accordingly, on April

14, 2014, all three plaintiffs filed a motion with the Court requesting approval of such a

leadership structure.[25] The plaintiffs' motion detailed the numerous reasons why their proposed

three firm co-leadership structure would best serve the interests of the class, including that GGF,

BM and HBSS have widespread support within the proposed class.[26]

---

[23] Counsel includes ODR, SSR, Faruqi & Faruqi, LLP; Taus, Cebulash and Landau LLP; The Radice Law Firm, P.C.; Heim, Payne & Chorush LLP., The Barrett Law Group, PA; and Roche Pia L.L.P.

[24] *See* Gerstein Declaration at ¶3. Contrary to Ms. Nussbaum's unsupported claims, GGF, HBSS, and BM have neither violated the federal policy of "private ordering" for multidistrict litigation nor the Local Rules of this Court. *See* Castillo Brief at 24. As detailed in Plaintiffs' April 14, 2014 motion and consistent with the Local Rules, HBSS, GGF and BM jointly came to a consensus concerning leadership structure in accordance with the "private ordering" approach. *See* Miami-Luken Brief at 2.

[25] *See* Miami-Luken Brief at 8-10; Gerstein Declaration at ¶¶ 9-13.

[26] *See* Miami-Luken Brief at 2.

**B.     Cesar Castillo's Cross Motion Should be Denied**

Not only do Ms. Nussbaum (the lead lawyer for Cesar Castillo) and her firm not have the comparable support of the class that has been demonstrated in the moving papers submitted by Miami-Luken, but based on the record in this case, as well as her conduct in other cases, Ms. Nussbaum is not best suited to represent the interests of the class.

**1.     Conduct In This Case**

In this case, Cesar Castillo's counsel has done little to no work to develop or support the allegations in Cesar Castillo's complaint. The Court need look no further than the complaint itself for confirmation.  Cesar Castillo waited more than three months after Miami-Luken filed the first complaint in this action to file a paraphrased copy of the Miami-Luken complaint.[27] Indeed, although Cesar Castillo touts its own investigation as well as that of Ms. Nussbaum, it admits that there is no evidence of that investigation in its own complaint,[28] and there is no discussion of any investigative efforts in its supporting declaration.[29] When asked whether she had not simply copied the Miami-Luken plaintiffs' complaint and, if not, what work she had done to advance the interests of the class, Ms. Nussbaum was silent.[30]

Despite a complete lack of evidence of any independent investigation of her own, Ms. Nussbaum nonetheless seeks to trivialize the work of the firms in the Miami-Luken group by implying that their initial complaints merely piggybacked an earlier FTC investigation.[31] This is simply wrong.  Although there was a preliminary FTC investigation of the settlement pursuant to

---

[27] *Compare* Miami-Luken Compl.; Cesar Castillo Complaint.

[28] Cesar Castillo Mem. at 6.

[29] *See* D.I. 36.

[30] *See* Opper Declaration at ¶50. *See also* Declaration of Peter Kohn, ¶8(b), Ex. 1.

[31] Cesar Castillo Mem. at 4.

the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"),
Miami-Luken's counsel had to investigate well beyond the FTC's filings.[32]

Equally misleading is Ms. Nussbaum's insinuation that because Miami-Luken has
purportedly "serially appeared in past pharmaceutical antitrust cases" that somehow makes it
less qualified to be class representative, and that Cesar Castillo's having "not previously sought
to serve as a class representative" makes it more qualified.[33] First of all, her assertion is
incorrect. This is Miami-Luken's first case where it seeks to serve as a representative plaintiff.[34]
GGF has represented eight different class members as representative plaintiffs in Hatch-Waxman
litigation over the last 16 years.[35] Moreover, her argument is a non sequitur and hypocritical.
Prior to her recent representation of Cesar Castillo, Ms. Nussbaum represented the same assignee
of a wholesaler, Meijer, Inc., in over twenty antitrust cases.[36] In any event, the fact that a
dedicated plaintiff has appeared in more than one lawsuit should, by itself, not be grounds for
criticism.

### 2. Ms. Nussbaum's Past Conduct Further Undermines Her Assertion That She Is Willing And Able To Fairly Represent The Class

Ms. Nussbaum has a history of opportunistically exploiting circumstances to her benefit
regardless of the interests of the class. Specifically, Ms. Nussbaum has demonstrated a repeated
practice of obtaining a court order approving a leadership position secured on the basis of her
representation of a particular plaintiff and then subsequently withdrawing that plaintiff from the

---

[32] *See* Raphael Declaration at ¶¶ 6-9.

[33] Caesar Castillo Mem. at 5

[34] Opper Declaration at ¶ 13.

[35] *Id.* at ¶ 10.

[36] *See* Opper Declaration at ¶ 15.

action while she remains (or attempts to remain) in a leadership role on the basis of the prior court appointment.[37] Ms. Nussbaum followed this pattern most recently in *Lamictal*, where her former client, Meijer, Inc., after filing a complaint that copied the complaint filed by GGF's client, Louisiana Wholesale Drug Co., Inc., filed a motion seeking to have Ms. Nussbaum and her firm (G&E) appointed as sole lead counsel.[38] When challenged with facts similar to those raised here Ms. Nussbaum agreed to withdraw her motion in exchange for a position on the Executive Committee[39] and this leadership arrangement was so ordered by the court.[40] Shortly thereafter, her client voluntarily withdrew from the case, but Ms. Nussbaum failed to withdraw as interim class counsel despite having no client and despite repeated requests from the other class counsel for her to do so.[41] She only withdrew (fifteen months later) after her conduct was raised in yet another leadership dispute in *Nexium*, where she opposed the co-leadership proposal by GGF, BM, and HBSS and sought a leadership position.[42] In each of these situations, Ms. Nussbaum's *failure to withdraw as counsel, despite no longer representing a client*, placed other counsel in the position of having either to challenge Ms. Nussbaum during the litigation and potentially create a controversy that could impede the prosecution of the litigation and prejudice the class, or accede to Ms. Nussbaum's refusal to voluntarily withdraw.

     *Lamictal* is only the most recent example of Ms. Nussbaum's opportunistic behavior. In *In re Relafen Antitrust Litig.*, 01-cv-12239 (D. Mass.), Ms. Nussbaum filed a case on behalf of

---

[37] *See, e.g.*, *id.* at ¶¶ 23, 30, 33, 35, 37.

[38] *See id.* ¶¶ 16-18.

[39] *See id.* at ¶¶ 19.

[40] *See id.* at ¶¶ 19-23

[41] *See id.* at ¶¶ 23-24..

[42] *See id.* at ¶¶ 25. Ms Nussbaum's motion was denied and GGF, BM and HBSS were approved as co-lead counsel. *id.* at ¶26  *Nexium* 12-md-2409 (D.Mass.), Dkt. No. 101.

Meijer, Inc., was named co-lead counsel based on that representation, and later withdrew Meijer from the case.[43] Similarly, in *In re Remeron Antitrust Litig.*, 03-cv-323 (D.N.J.), Ms. Nussbaum again filed a case on behalf of Meijer, Inc., was named co-lead counsel based on that representation, and Meijer later withdrew from the case.[44] In *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2431 (E.D Pa.), Meijer, Inc. (again represented by Ms. Nussbaum) withdrew while a motion to compel discovery was pending, and the case continued with another class representative that intervened.[45] In yet another case, *In re Mushrooms Direct Purchaser Antitrust Litig.*, No. 06-cv-620 (E.D. Pa.), Meijer, Inc. (represented by Ms. Nussbaum) withdrew from the case as a class representative.[46]

Furthermore, in at least one other *Hatch-Waxman* antitrust case, *In re Lorazepam & Clorazepate Antitrust Litigation*,[47] Ms. Nussbaum acted in a manner that was inimical to the interests of the class members who she purported to represent. In *Lorazepam*, Ms. Nussbaum represented two discrete classes of purchasers with conflicting interests: (1) immediate direct purchasers (like the wholesaler plaintiffs GGF, BM, and HBSS represent); and (2) their downstream customers (Group Purchasing Organization members who purchased from the wholesalers, also known as "contract customers"). In connection with the class certification proceeding, defendants identified the existence of the irreconcilable conflict between the wholesalers and the contract customers; the two groups had conflicting claims to being the true

---

[43] *See id.* at ¶¶ 30-32.

[44] *See id.* at ¶¶ 33-34.

[45] *See id.* at ¶¶ 35-36.

[46] *See id.* at ¶¶ 37-38.

[47] MDL Docket No. 1290 (D.D.C.).

direct purchaser with standing to assert the federal antitrust damages claim.[48] Instead of representing a discrete group of plaintiffs (such as the wholesalers here) and striving to maximize that group's recovery, Ms. Nussbaum and the other lead counsel ignored the conflict of interest between her two client groups, and sought certification for a class that included both.  The court certified the class, but specifically held that the class members would only be entitled to recover to the extent of their direct purchases, thereby deferring a decision on who was the actual direct purchaser.[49] Subsequently, Ms. Nussbaum and her co-lead counsel agreed to settle the case under terms that failed to distinguish between the competing claims of the immediate direct purchasers until a later time. The ultimate *Lorazepam* settlement provided for an allocation plan that contained a specific offset reducing the recovery of the wholesalers to the full extent that they sold product to the downstream customers.  By operation of the offset, the contract purchasers were awarded the proportionate recovery of 100% of the contested contract purchases from wholesalers, thereby providing no recovery for those purchases to the wholesalers for those claims. The net effect was that the wholesalers – who numbered fewer than one hundred – were forced to share a recovery with a settlement class that, including the contract customers, amounted to 55,000 members.[50] Many of the *Lorezapam* wholesalers, whose rightful share of the recovery was severely diluted as a result of Ms. Nussbaum's and her co-counsel's decisions, will be class members in this case.  The relevant point here is not that Ms. Nussbaum and her co-lead

---

[48] The standing of contract customers as direct purchasers has been repeatedly rejected by courts in this circuit.  *See In re Air Cargo Shipping Servs. Antitrust Litig.,* 697 F.3d 154, 157 (2d Cir. 2012) ("Plaintiffs, as indirect purchasers of air freight shipping, dealt with the defendant airlines through intermediaries, such as freight forwarders."); *Simon v. KeySpan Corp.,* 694 F.3d 196, 201 (2d Cir. 2012) (Same)

[49] *See In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 25 (D.D.C. 2001).

[50] *See id.* at 2003 U.S. Dist. LEXIS 12344, *21 (D.D.C. June 16, 2003).

counsel were mistaken about the law, but that in the face of an obvious conflict, they represented two antagonistic groups and wrongly acted in favor of the contract purchasers and against the interests of the very group of class members that Ms. Nussbaum seeks to represent here. In *Lorazepam*, the wholesalers were entitled to lawyers who were faithful only to them. That is not what they got.

Relatedly, Ms. Nussbaum's proposed leadership structure here relies heavily on Hausfeld LLP ("Hausfeld") as a key member of the "team."[51] Yet the conduct of that firm in this very case, however, only mirrors the opportunistic conduct that Ms. Nussbaum has repeatedly demonstrated.  In these proceedings, Hausfeld first filed an action on behalf of an indirect purchaser in the Eastern District of Pennsylvania.[52] As counsel in the indirect action, Hausfeld opposed transfer of the cases to this district.[53] (MDL No. 2516, Dkt. No. 55). Yet, just one day after the JPML handed down its Initial Transfer Order on April 3, 2014,[54] Hausfeld withdrew as counsel representing the indirect purchasers[55] and has now teamed up with G&E to represent a putative direct purchaser, Caesar Castillo.

---

[51] In support of her argument that her leadership will be beneficial to the class, Ms. Nussbaum touts her firms' intention to closely collaborate with an "accomplished trial team *including Hausefeld.*" Caesar Castillo Mem. at 3, 5-6, 20-21.

[52] *See Plumbers & Pipefitters Local 178 Health and Welfare Trust Fund, et al. v. Teva Pharmaceuticals, et al.*(13-cv-06692) (E.D.PA.) (Doc No. 1)  ("*Plumbers*")

[53] MDL No. 2516, (Dkt. No. 55)

[54] *In re Aggrenox Antitrust Litigation*  (MDL no. 2516)(D.Conn)( Dkt. No. 1)

[55]*Plumbers,* (13-cv-6992)(E.D.PA.), Dkt. No. 7, Dkt. No. 8)

3.    **Ms. Nussbaum Does Not Enjoy The Support Of The Class Or The Confidence Of Other Counsel Who Have Litigated The Hatch-Waxman Antitrust Direct Purchaser Class Actions Over The Last Sixteen Years**

For the past 16 years, private Hatch-Waxman antitrust cases have been prosecuted on behalf of the same core direct purchaser class by the same core group of attorneys. The declarations submitted herewith establish the level of confidence the putative class members have in the core group of attorneys representing Miami Luken, RDC, and American sales.[56] Ms. Nussbaum's submission contains no support from any class member save Cesar Castillo, her own client. This lack of support for Ms. Nussbaum is telling.

**V.    CONCLUSION**

In sum, for at least the reasons stated above, the Miami-Luken, RDC and American Sales Plaintiffs respectfully submit that the Court deny Cesar Castillo's cross-motion and grant the motion of plaintiffs Miami-Luken, RDC and American Sales seeking the appointment of GGF, BM, and HBSS as co-lead class counsel.

Dated: May 15, 2014                          Respectfully submitted:

                                             /s/ Joseph Opper
                                             Joseph Opper (ct12840)
                                             Bruce E. Gerstein
                                             Ephraim R. Gerstein
                                             Jonathan M. Gerstein
                                             GARWIN GERSTEIN & FISHER LLP
                                             Wall Street Plaza
                                             88 Pine Street, 10th Floor
                                             New York, NY 10005
                                             Tel: (212) 398-0055
                                             Email: jopper@garwingerstein.com

---

[56] *See* Opper Declaration at ¶¶44-49.

## CERTIFICATE OF SERVICE

I, Joseph Opper, hereby certify that I caused the foregoing to be electronically filed with the Clerk for the United States District Court for the District of Connecticut through the CM/ECF system, which provides notification of the foregoing filing to all attorneys of record via electronic mail.

Dated: May 15, 2014

Respectfully submitted:

s/ Joseph Opper
Joseph Opper (ct12840)
Bruce E. Gerstein
Ephraim Gerstein
GARWIN GERSTEIN & FISHER LLP
Wall Street Plaza
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Email: bgerstein@garwingerstein.com