## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IN RE AGGRENOX
ANTITRUST LITIGATION

No. 3:14-md-2516-SRU

THIS DOCUMENT RELATES TO:

ALL INDIRECT-PURCHASER ACTIONS

---

## MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION TO APPOINT INTERIM CO-LEAD COUNSEL

---

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................2

II.    PLAINTIFFS' ALLEGATIONS .................................................................................4

III.   PROCEDURAL BACKGROUND...............................................................................6

IV.    ARGUMENT ................................................................................................................8

    A.     The Court's Appointment Of Interim Co-Lead Counsel Is Critical To
        The Successful Management Of This Complex Antitrust Litigation ....................8

    B.     Consensus Counsel Will Best Serve The Interests Of The Proposed
        End-Payor Class ...............................................................................................10

        1.     Consensus Counsel Performed Substantial Work Identifying
            and Investigating the Potential Claims in this Action...............................11

        2.     Consensus Counsel Are Experienced and Well-Qualified .......................13

        3.     Plaintiffs' Proposed Interim Co-Lead Counsel.........................................15

            a.     Steve D. Shadowen of Hilliard & Shadowen LLP .......................15

            b.     Renae Steiner of Heins Mills & Olson P.L.C. .............................18

            c.     Marvin A. Miller of Miller Law LLC ...........................................19

        4.     Plaintiffs' Proposed Executive Committee................................................21

            a.     Daniel C. Girard of Girard Gibbs LLP .........................................21

            b.     J. Douglas Richards of Cohen Milstein .........................................22

            c.     Natalie Finkelman Bennett of Shepherd Finkelman
                Miller & Shah ................................................................................23

            d.     David W. Mitchell of Robbins Geller Rudman & Dowd
                LLP ................................................................................................25

        5.     Proposed Interim Liaison Counsel William H. Narwold
            and Michael M. Buchman of Motley Rice LLC .......................................26

        6.     Consensus Counsel Is Knowledgeable of the Applicable Law ................27

            a.     Economic Expert.............................................................................27

            b.     Patent Counsel ...............................................................................28

        7.     Consensus Counsel Will Commit Substantial Resources to the
            Litigation...................................................................................................28

        8.     Trial Resources and Commitment .............................................................29

        9.     Technological Resources ...........................................................................33

        10.    Strict Time and Expense Monitoring.........................................................33

V.     CONCLUSION............................................................................................................34

# TABLE OF AUTHORITIES

CASES

*Bettinelli v. Wells Fargo Home Mortgage, Inc.*,
   No. 09-11079-MLW, 2010 WL 2998608 (D. Mass. July 23, 2010) ..................................... 10

*California v. ARC America*,
   490 U.S. 93 (1989)............................................................................................................... 6

*Deangelis v. Corzine*,
   286 F.R.D. 220 (S.D.N.Y. 2012) ......................................................................................... 14

*FTC v. Actavis, Inc.*,
   __ U.S. __, 133 S. Ct. 2223 (2013)...................................................................................... 5

*In re Air Cargo Shipping Services Antitrust Litigation M.D.L.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ........................................................................................... 14

*In re Bank of America Corp. Securities, Derivative & ERISA Litigation*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ......................................................................................... 10

*In re Crude Oil Commodity Futures Litigation*,
   No. 11 Civ. 3600(WHP), 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) ............................... 14

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   No. 11 MD 2262(NRB), 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011)............................... 10

*In re Linerboard Antitrust Litigation*,
   292 F. Supp. 2d 644 (E.D. Pa. 2003) .................................................................................. 8

*In re Municipal Derivatives Antitrust Litigation*,
   252 F.R.D. 184 (S.D.N.Y. 2008) .................................................................................. 10, 13

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
   MDL No. 1869, 2008 WL 1883447 (D.D.C. Apr. 28, 2008) ................................................ 14

*In re Shop-Vac Marketing & Sales Practices Litigation*,
   MDL No. 2380, 2013 WL 183855 (M.D. Pa. Jan. 17, 2013) ................................................ 13

*In re Zyprexa Products Liability Litigation*,
   594 F.3d 113 (2d Cir. 2010)............................................................................................... 8

*Moradi v. Adelson*,
   No. 11-cv-00490-GMN-RJJ, 2011 WL 5025155 (D. Nev. Oct. 20, 2011) ........................... 13

*Smith v. State Farm Mutual Automobile Insurance Co.*,
   __ F.R.D.__, No. 13-cv-2018, 2014 WL 228892 (N.D. Ill. Jan. 21, 2014)........................... 14

*Walker v. Discover Financial Services*,
   No. 10-cv-6994, 2011 WL 2160889 (N.D. Ill. May 26, 2011)............................................. 13

*Waudby v. Verizon Wireless Services, LLC*,
   248 F.R.D. 173 (D.N.J. 2008)............................................................................................. 10

## RULES

Fed R. Civ. P. 23(g)(1)(A)(i)-(iv) ................................................................................... 10

Fed R. Civ. P. 23(g)(1)(B) ............................................................................................ 11

Fed R. Civ. P. 23(g)(2).......................................................................................... 9, 11

## TREATISES

*Manual for Complex Litigation* § 10.22 (4th ed. 2011)....................................... 2, 3, 8, 9

*Moore's Federal Practice* § 23.120[3][a] (2007) ...................................................... 13

Pursuant to Federal Rule of Civil Procedure 23(g)(3) and this Court's April 29, 2014 Practice and Procedures Order, Dkt. #37 (the "Order"), Plaintiffs in 19 of the 20 related End-Payor actions[1] currently consolidated in this MDL respectfully submit this memorandum of law in support of their motion for entry of the proposed Case Management Order, which seeks to appoint:  (1) Steve D. Shadowen of Hilliard & Shadowen LLP, Renae D. Steiner of Heins Mills & Olson, P.L.C. and Marvin A. Miller of Miller Law LLC as Interim Co-Lead Counsel for the proposed End-Payor class; (2) J. Douglas Richards of Cohen Milstein Sellers & Toll, PLLC, Daniel C. Girard of Girard Gibbs LLP, Natalie Finkelman Bennett of Shepherd Finkelman Miller & Shah LLP, and David Mitchell of Robbins Geller Rudman & Dowd LLP as Interim Executive Committee members for the proposed End-Payor class; and (3) William H. Narwold and Michael M. Buchman of Motley Rice LLC as Interim Liaison Counsel for the proposed End-Payor Class (collectively, "Consensus Counsel").

---

[1] The moving plaintiffs include:  International Union of Operating Engineers Local 132 Health and Welfare Fund; A.F. of L. – A.G.C. Buildings Trade Welfare Plan; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; United Food and Commercial Workers Local 1776 & Participating Health and Welfare Fund; Painters District Council No. 30 Health & Welfare Fund; Fraternal Order of Police Miami Lodge 20, Insurance Trust Fund; Man-U Service Contract Trust Fund; Pirelli Armstrong Retiree Medical Benefits Trust; Minnesota and North Dakota Bricklayers and Allied Craftworkers Health Fund; Newspaper and Magazine Employees Health and Welfare Fund; IAFF Local 22 Health and Welfare Fund; School Cafeteria Employees Local No. 634 Health and Welfare Fund; International Union of Painters and Allied Trades, District Council 21; AFSCME District Council 47 Health and Welfare Fund; Local 17 Hospitality Benefit Fund; NECA-IBEW Welfare Trust Fund; Welfare Plan of the International Union of Operations Engineers Locals 137, 137A, 137B, 137C, and 137R; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund; and Twin City Iron Workers Health and Welfare Fund (together, the "End-Payor Plaintiffs").  Humana Inc. is the only End-Payor plaintiff that has not joined this motion.

# I.      INTRODUCTION

The U.S. Judicial Panel on Multidistrict Litigation (the "Panel") has centralized before this Court 25 related antitrust class action lawsuits challenging Defendants'[2] anticompetitive agreement to delay competition from less expensive generic versions of the drug Aggrenox, which is prescribed to lower the risk of stroke in patients who have suffered a stroke or mini-stroke due to a blood clot. Plaintiffs in 20 of the actions are "End-Payors," i.e., consumers and third-party payors (primarily insurers and union health and welfare benefit funds) who ultimately bore the financial brunt of the alleged violations. The remaining five actions are brought on behalf of a proposed class of direct purchaser plaintiffs.

By Order dated April 29, 2014, this Court consolidated for pre-trial purposes the End-Payor actions. Order, ¶ 2.  The Court also directed the respective plaintiff groups, prior to the initial pretrial conference scheduled for May 22, 2014, to: (1) designate liaison counsel and (2) "confer to consider whether to seek the appointment of lead counsel and/or a committee of lead counsel (e.g., an executive committee) to act on behalf of multiple parties." *Id.* ¶¶ 13-14. End-Payor Plaintiffs respectfully submit this near unanimous proposal for the appointment of Liaison and Lead Counsel in satisfaction of the Order's requirements.

As this Court's Order recognizes, instituting special procedures for the coordination of counsel at an early stage in the litigation—particularly in cases such as this that involve distinct plaintiff groups, multiple defendants, and complicated issues of fact and law—helps to avoid unnecessary burden, confusion, and cost. *Manual for Complex Litigation* § 10.22 (4th ed. 2011)

---

[2] Defendants include:  Boehringer Ingelheim Pharm. GmbH & Co. KG, Boehringer Ingelheim International GmbH, and Boehringer Ingelheim Pharmaceuticals, Inc. (together, "Boehringer"); Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd. (together, "Teva"); Barr Pharmaceuticals Inc. ("Barr"); and Duramed Pharmaceuticals Inc. and Duramed Pharmaceuticals Sales Corp. (together, "Duramed").

("*Manual*").  The proposed Case Management Order will accomplish these ends and ensure that the End-Payor cases are litigated efficiently and effectively for the benefit of the proposed class.

Moreover, it is important in this complex litigation for the Court to timely appoint Interim Co-Lead Counsel who are qualified, experienced and responsible.  Through the favored "private ordering" approach,[3] virtually all of the End-Payor Plaintiffs—19 out of 20—have jointly agreed on the efficient and effective leadership structure set forth herein, consisting of three Interim Co-Lead Counsel, a small Interim Executive Committee and Interim Liaison Counsel.  Consensus Counsel, with unparalleled complex antitrust class action and pharmaceutical generic suppression litigation experience, are eminently qualified for appointment under Rule 23(g) of the Federal Rules of Civil Procedure.  Indeed, these firms have and are presently working extremely well together in leadership roles in other similar generic suppression cases.[4]  For the reasons discussed below, the End-Payor Plaintiffs respectfully request that the Court approve this leadership structure by entering the proposed Case Management Order.

---

[3] *See Manual* § 10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged.").

[4] *See, e.g.*, *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389 (D.N.J. Aug 10, 2012), Dkt. #109 (appointing Heins Mills, Motley Rice, and Cohen Milstein as three of four Interim Co-Lead Counsel for the proposed End-Payor Class and Shepherd Finkelman Miller & Shah LLP as a member of the Executive Committee for the End-Payor class); *In re Niaspan Antitrust Litig.*, 2:13-md-02460 (E.D. Pa. Dec. 23, 2013), Dkt. #36 (appointing Steve D. Shadowen, Marvin A. Miller and Michael M. Buchman as three of four Interim Co-Leads for the proposed End-Payor Class and Renae D. Steiner and Daniel C. Girard as members of the Executive Committee for the End-Payor Class); *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 2:13-md-02445 (E.D. Pa. Aug. 7, 2013), Dkt. #44 (appointing Steve D. Shadowen, Michael M. Buchman and Marvin A. Miller as three of four Interim Co-Leads for the proposed End-Payor Class and Renae D. Steiner and Natalie Finkelman Bennett as members of the Executive Committee for the End-Payor Class).

II.     **PLAINTIFFS' ALLEGATIONS**

Plaintiffs in these related actions challenge Defendants' continuing agreement to delay less expensive generic versions of Boehringer's brand-name drug Aggrenox from entering the market, which has caused the End-Payor Plaintiffs to pay millions in overcharges.

Aggrenox, the brand name for extended release dipyridamole/acetylsalic acid, was approved by the Food and Drug Administration ("FDA") in 1999 for the purpose of lowering the risk of stroke in certain patients and became a steady source of profit for Boehringer, with annual sales reaching over $400 million by 2009. In May of 2007, however, Barr sought FDA approval to manufacture, market and sell a generic equivalent of Aggrenox, the market entry of which would quickly have captured a significant portion of Boehringer's Aggrenox sales.

To protect its Aggrenox sales from the threat of generic competition, Boehringer sued Barr for infringing U.S. Patent No. 6,015,577 ("the '577 patent") solely to trigger an automatic stay of FDA approval of Barr's generic product for up to 30 months under the Hatch-Waxman Act, 21 U.S.C. § 355. During that patent suit, Barr raised a series of defenses demonstrating that the '577 patent was likely invalid and/or unenforceable and thus unlikely to prevent any generic Aggrenox product from entering the market before the patent's expiration in January 2017. Had Barr successfully invalidated Boehringer's patent, it would have opened the flood gates to competition not only from Barr, but also from any other generic manufacturer that sought to manufacture, market and sell a generic version of Aggrenox. This would have resulted in substantially lower prices for consumers and health insurers.

Because Boehringer could not rely on the '577 patent to prevent generic competition to Aggrenox, Boehringer paid Barr to drop its challenge to the '577 patent and stay out of the market with Barr's less expensive generic Aggrenox product for almost seven years. More specifically, on or about August 2008, Boehringer and Barr entered into a non-competition

agreement pursuant to which Barr agreed not to launch its generic version of Aggrenox until as late as July 1, 2015.  In exchange, Boehringer paid Barr through:  (1) compensation provided under a "co-promotion" deal—an estimated $120 million in upfront and continuing yearly royalty payments; and (2) Boehringer's agreement not to compete against Barr with Boehringer's own authorized generic Aggrenox product once Barr finally launches in 2015.

As a result of the agreement, Boehringer has continued to make payments to Barr (and to Barr's successor, Teva) pursuant to the terms of the ongoing "co-promotion deal" and Barr/Teva has continued to delay the launch of its generic equivalent of Aggrenox.  Thus, despite having FDA approval to manufacture, market and sell its generic Aggrenox product since August 2009, Barr/Teva has never sold generic Aggrenox—and no generic Aggrenox product has ever been available to consumers and other drug purchasers—because of the unlawful non-competition agreement plaintiffs challenge.

Plaintiffs allege that Defendants' conduct violates federal and state antitrust laws as well as various state consumer protection statutes and common law, at least in part, under the framework established by *FTC v. Actavis, Inc.*, __ U.S. __, 133 S. Ct. 2223 (2013).  *Actavis* held that under traditional antitrust principles, so-called "exclusion payment" or "reverse payment" agreements like those challenged here—whereby brand drug companies pay generic drug companies to delay generic drug competition—are illegal if the finder of fact determines they violate the rule of reason under the antitrust laws.

End-Payor Plaintiffs here allege that the purpose and/or effect of Defendants' scheme was to prevent, delay, and/or minimize the success of the entry of generic competitors which would have sold generic Aggrenox in the United States at prices significantly below Boehringer's branded Aggrenox price.  But for Defendants' overarching anticompetitive scheme

and agreements, End-Payor Plaintiffs would have paid less for generic extended release dipyridamole/acetylsalicylic acid as early as August 2009 instead of being forced to pay higher prices for branded Aggrenox.  Consumers and other drug purchasers have been overcharged by millions of dollars in connection with their Aggrenox purchases.

Although the End-Payor and direct purchaser groups of cases involve similar factual allegations and seek to hold Defendants liable for their anticompetitive conduct, each group brings its respective claims under different statutes for the recovery of damages.  *See California v. ARC Am.*, 490 U.S. 93, 105-06 (1989).  The entry of the proposed Case Management Order will protect the interests of the putative End-Payor Class and streamline this litigation as it progresses towards discovery, motion practice and, ultimately, trial.

## III.    PROCEDURAL BACKGROUND

The first private complaint challenging Defendants' agreement to delay generic competition to Aggrenox was filed on November 8, 2013 by direct purchaser Miami-Luken.  *See Miami-Luken, Inc. v. Boehringer Ingelheim Pharm. GmbH & Co. KG et al.*, No. 2:13-cv-06543-MSG (E.D. Pa. Nov. 8, 2013).

Three business days later, on November 13, 2013, proposed Executive Committee member Daniel C. Girard of Girard Gibbs filed the first End-Payor complaint challenging Defendants' Aggrenox agreement.  *See Int'l Union of Operating Eng'rs Local 132 Health & Welfare Fund v. Teva Pharm. USA, Inc. et al.*, No. 2:13-cv-06579 (E.D. Pa. Nov. 11, 2013).

Other firms associated with Consensus Counsel filed additional related End-Payor complaints on behalf of their respective clients shortly thereafter.  *See, e.g., A.F. of L. – A.G.C. Bldgs. Trade Welfare Plan v. Boehringer Ingelheim Pharm. GmbH & Co. KG et al.*, No. 3:13-cv-01716 (D. Conn.) (filed by proposed Interim Liaison Counsel Michael M. Buchman and William H. Narwold on Nov. 18, 2013); *United Food & Commercial Workers Local 1776 &*

*Participating Employers Health & Welfare Fund v. Teva Pharm. USA, Inc. et al.*, No. 2:13-cv-06734 (E.D. Pa.) (filed by proposed Interim Co-Lead Steve D. Shadowen and Proposed Executive Committee member Natalie Bennett Finkelman on Nov. 20, 2013); *Painters District Council No. 30 Health & Welfare Fund v. Boehringer Ingelheim Pharm. GmbH & Co. KG et al.*, No. 3:13-cv-01763 (D. Conn.) (filed by proposed Interim Co-Lead Marvin Miller on Nov. 26, 2013); *Minnesota & North Dakota Bricklayers and Allied Craftworkers Health Fund v. Boehringer Ingelheim Pharm. GmbH & Co. KG et al.*, No. 13-03588 (D. Minn. 2013) (filed by proposed Interim Co-Lead Counsel Renae Steiner on Dec. 20, 2013).  On December 13, 2013, Defendants moved the Panel for an order under 28 U.S.C. § 1407 transferring and consolidating for coordinated pretrial proceedings all related Aggrenox actions in the District of Connecticut. *See In re: Aggrenox Antitrust Litig.*, MDL No. 2516 (J.P.M.L. 2013), Motion of Defendants for Transfer to and Centralization of Pretrial Proceedings in the District of Connecticut (Dkt. #1).

On April 3, 2014, the Panel transferred eleven of the related End-Payor and direct purchaser actions to this Court for coordinated or consolidated pretrial proceedings.  *See In re: Aggrenox Antitrust Litig.*, MDL No. 2516 (J.P.M.L. April 3, 2014), ECF No. Transfer Order (Dkt. #109). On April 16, 2014, the Panel issued Conditional Transfer Order (CTO-1), transferring another eight cases to this Court.  *In re: Aggrenox Antitrust Litig.*, MDL No. 2516 (J.P.M.L. April 16, 2014), Conditional Transfer Order (CTO-1), Dkt. #116.  On April 17, 2014, the Panel issued Conditional Transfer Order (CTO-2), transferring two more cases to this Court. *See In re: Aggrenox Antitrust Litig.*, MDL No. 2516 (J.P.M.L. April 17, 2014), Conditional Transfer Order (CTO-2), Dkt. #117.

On April 28, 2014—more than five months after the first End-Payor complaint was filed—End-Payor Plaintiff Humana Inc. filed its Aggrenox complaint in this District.  *See*

7

*Humana Inc. v. Boehringer Ingelheim Pharm. GmbH & Co. KG et al.*, No. 3:14-cv-00572-AWT (D. Conn.).  On April 29, 2014, the Court consolidated all end-payor actions and directed end-payors to file a Consolidated Amended Complaint within 60 days of entry of the Order.  Order, ¶¶ 2, 20.  On May 7, 2014, the Court added the Humana action to the Aggrenox MDL, consolidating the Humana action with the End-Payor actions.  *See In re: Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU) (D. Conn. 2014), Order, Dkt. #45.

## IV.   ARGUMENT

### A.   The Court's Appointment of Interim Co-Lead Counsel is Critical to the Successful Management of this Complex Antitrust Litigation

Interim Co-Lead Counsel is necessary to manage this complex litigation.  "The multiplicity of suits requires that the district court be allowed to combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discovery, etc. to minimize expense to all litigants and to provide judicial efficiency."  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) (internal quotation marks omitted).  "District courts typically appoint a lead counsel or plaintiffs' steering committee to coordinate and conduct pretrial proceedings on behalf of all plaintiffs in order to avoid what otherwise might well become chaotic."  *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 130 (2d Cir. 2010).  Indeed, in complex antitrust matters such as this, appointing seasoned lead counsel is one of the district court's key organizational tools.  *See Manual* §§ 10.224, 21.272.  The "designation of interim [class] counsel clarifies responsibility for protecting the interests of the class during pre-certification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."  *Id.* § 21.11.  Because lead counsel is charged with the ultimate responsibility of acting for and in the best interest of the class throughout the entire litigation process, it is a court's duty to appoint lead counsel who are

fully capable and qualified to fairly and adequately represent the interests of the entire class.  *See id*.  §§ 10.22, 21.271, 21.272; *see also* Fed R. Civ. P. 23(g)(2).

In complex matters, courts prefer the "private ordering" approach in which the lawyers agree among themselves, with the Court's approval, who will lead the litigation.  *See Manual* § 21.272 ("By far the most common [approach to selecting class counsel] is the so-called 'private ordering' approach: the lawyers agree who should be lead class counsel and the court approves the selection after review to ensure that the counsel selected is adequate to represent the class interests.").  Courts prefer plaintiffs to reach an agreement and submit their recommendations to the court for approval of the proposed leadership structure.  *See id.* § 10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged.").

Here, counsel for 19 End-Payor Plaintiffs agree that Consensus Counsel will best promote the interests of the class.  The proposed leadership structure here—three Interim Co-Lead Counsel and a four-lawyer Interim Executive Committee—ensures that the Class will benefit from a diversity of views and counsel who have the experience and resources necessary to combat the waves of lawyers that Defendants will devote to this case.  For this reason, courts routinely have approved similar leadership structures for the End-Payor Class in similar multi-defendant antitrust generic drug litigation.  *See, e.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409-WGY (D. Mass. 2013), Dkt. #85 at 5-6 (appointing four firms as interim Co-Lead Counsel and six firms to an executive committee for End-Payor plaintiffs); *In Re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, No. 2:13-md-02445-MSG (E.D. Pa. 2013), Dkt #44 at 1-4 (appointing four firms as Interim Co-Lead Counsel and nine firms to an Executive Committee for End-Payor plaintiffs); *In re Loestrin 24 Fe*

9

*Antitrust Litig.*, No. 1:13-md-02472-S-PAS (D.R.I. 2014), Dkt. #85 at 2-5 (appointing four firms as interim Co-Lead Counsel and 11 firms to an executive committee for End-Payor plaintiffs).[5] The Court should give this consensus, pursuant to the private ordering approach, substantial weight.

### B.    Consensus Counsel Will Best Serve the Interests of the Proposed End-Payor Class

Rule 23(g)(3) recognizes the importance of appointing lead counsel to act on behalf of a proposed class by expressly granting courts the power to appoint Interim Class Counsel before determining whether to certify the action as a class action.  *See* Fed R. Civ. P. 23(g)(3) (providing for the appointment of interim counsel on behalf of a proposed class).  Courts appointing interim class counsel look to the same factors that apply to the appointment of class counsel at the time of class certification.  *See Bettinelli v. Wells Fargo Home Mortg., Inc.*, No. 09-11079-MLW, 2010 WL 2998608 (D. Mass. July 23, 2010); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262(NRB), 2011 WL 5980198, at *2 (S.D.N.Y. Nov. 29, 2011); *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175-77 (D.N.J. 2008); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).

Courts consider the following factors in selecting Interim Lead Counsel:  (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Courts may also

---

[5] *See also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009) ("[T]here is no preference for only one law firm to be appointed lead counsel in cases such as the current action, with many different defendants and complicated issues.  Rather, appointment of multiple counsel is routine and widely accepted.").

consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed R. Civ. P. 23(g)(1)(B). If more than one adequate applicant seeks to be appointed, the Court must appoint "the applicant best able to represent the interests of the class." Fed R. Civ. P. 23(g)(2).

### 1. Consensus Counsel Performed Substantial Work Identifying and Investigating the Potential Claims in this Action

Individually and collectively, the firms comprising the Consensus Counsel conducted significant preliminary investigation before filing their respective complaints. For example, firms associated with Consensus Counsel, including proposed Interim Co-Lead Counsel Hilliard & Shadowen LLP and proposed Executive Committee member Girard Gibbs, began their investigation of Defendants' anticompetitive agreement by June 2013—more than five months before the first complaint by direct or indirect purchasers was filed. These firms ultimately devoted over 250 attorney hours to their pre-complaint investigation, and their draft complaints were near complete when direct purchaser Miami-Luken Inc. filed the first private action on November 8, 2013. Because Girard Gibbs had already performed the significant work necessary to investigate, identify and vet the claims, the firm was able to file an Aggrenox complaint for its client just three business days later.[6] Hilliard & Shadowen LLP's complaint for its client followed shortly thereafter.[7]

Moreover, all of the Consensus Counsel firms conducted substantial factual and legal research in developing their claims, which included, *inter alia*: (1) review and analysis of materials related to the '577 patent, including pleadings and briefs in the '577 patent litigation, as

---

[6] *Int'l Union of Operating Eng'rs Local 132 Health & Welfare Fund v. Teva Pharms. USA, Inc. et al.*, No. 2:13-cv-06579 (E.D. Pa. Nov. 11, 2013).

[7] *United Local & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teva Pharms. USA, Inc. et al.*, No. 2:13-cv-06734 (E.D. Pa. Nov. 20, 2013).

well as the file wrapper for the '577 patent; (2) review of materials on the FDA's website regarding Defendants' applications for approval to market Aggrenox and a bioequivalent generic version of Aggrenox; (3) review and analysis of documents regarding the Federal Trade Commission's investigation of the challenged agreement; (4) extensive review of Defendants' corporate statements and media coverage regarding the challenged agreement; and (5) consultation with numerous health and welfare plan participants as well as counsel for large third-party payors.

Counsel also carefully researched recent developments in both federal and state law as potentially applied to the theories of liability in this case, and adjusted the state statutory claims to account for new shifts in precedent.  In sum, Consensus Counsel has conducted substantial analysis and research, and collectively these firms have made a very significant investment of work on these cases in readying them for filing.

After filing their complaints, Consensus Counsel worked together to reach agreement with Defendants on the early production of certain categories of documents subject to the parties negotiated interim protective order.  In addition, Consensus Counsel performed substantial work advancing and managing the litigation during the pendency of the motion to centralize the Aggrenox antitrust cases, having:

- successfully coordinated the efforts of the plaintiffs in more than a dozen End-Payor cases;

- conducted several meet-and-confer discussions with defense counsel and counsel for the direct purchaser plaintiffs;

- negotiated and executed an interim confidentiality agreement governing the production of documents pending entry of a protective order in this Court;

- secured Defendants' agreement to produce, without the need for formal document requests:  (1) documents generated in connection with the underlying patent litigation between Boehringer and Barr; and (2) documents relating to the Federal

Trade Commission's investigation of Defendants' conduct with regard to Aggrenox or its generic equivalents;

▪ commenced review and analysis of the documents produced by Defendants to date; and

▪ agreed to produce and commenced production of data relating to the End-Payor Plaintiffs' Aggrenox purchases.

The work performed to advance the litigation is a substantial factor in selecting class counsel.[8]  Because Consensus Counsel has performed substantial work in investigating, developing, and advancing the litigation, the Court should grant the proposed order appointing the Consensus Counsel's proposed leadership structure.

2.    **Consensus Counsel are Experienced and Well-Qualified**

The attorney members of the Consensus Counsel have proven track records of success and professionalism in prosecuting numerous class actions, antitrust matters and generic drug cases such as this one.

As a result of their extensive knowledge and experience, the firms that comprise Consensus Counsel have near unanimous support from End-Payor plaintiffs in this MDL.  Courts

---

[8] *See In re Shop-Vac Mktg. & Sales Practices Litig.*, MDL No. 2380, 2013 WL 183855, at *3 (M.D. Pa. Jan. 17, 2013) (granting motion for appointment of interim class counsel, holding that counsel "demonstrated that it has conducted more significant work in identifying and investigating potential claims, and has already successfully coordinated the efforts of counsel in multiple courts"); *Moradi v. Adelson*, No. 11-cv-00490-GMN-RJJ, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit it would be appropriate to assign Kendall Law Group as lead counsel."); *Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 WL 2160889, at *3-4 (N.D. Ill. May 26, 2011) (appointing as interim class counsel firms that were the first to file class action complaints after having performed the most work in identifying and investigating the claims); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. at 186 (noting "the work done to identify and investigate the alleged antitrust violations weighs in favor" of the first-filing firms' "appointment as interim co-lead counsel"); *Miller v. Beazer Homes USA, Inc.*, No. 1:07-CV-00952-RWS, 2007 WL 3005332, at *2 (N.D. Ga. Oct. 11, 2007) (appointing lead counsel "based upon the work counsel have performed in identifying and investigating potential claims in the action as well as their knowledge and experience in this area of law"); *see also Moore's Federal Practice* § 23.120[3][a] (2007) (stating the court should consider whether an attorney has undertaken "the process of drafting the complaint [which] requires investigatory and analytical effort").

rightfully give great weight to lead counsel proposals that enjoy wide support among the proposed class counsels' peers. *See Smith v. State Farm Mut. Auto. Ins. Co.*, __ F.R.D.__, No. 13-cv-2018, 2014 WL 228892, at *4 (N.D. Ill. Jan. 21, 2014) (appointing interim counsel based on "the work [counsel] already have performed in this case, and their demonstrated ability to work cooperatively with additional counsel in these consolidated actions—*all of whom, except* [*one law firm*]*, support their appointment as interim class counsel*") (emphasis added); *In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 3600(WHP), 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012) (selecting as interim lead counsel "leadership structure proposed by plaintiffs in more than two-thirds of the related cases in this consolidated action [because] the Court gives some weight to plaintiffs' 'self-selection' of class counsel" (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 2008 WL 1883447, at *2 (D.D.C. Apr. 28, 2008))); *Deangelis v. Corzine*, 286 F.R.D. 220, 225 (S.D.N.Y. 2012) ("[T]he Court gives significant weight to the Consensus Plaintiffs' willingness to cooperatively develop a leadership structure among 10 of the 12 plaintiffs whose cases have been consolidated into the Commodities Action.  That a 'large number[] of experienced counsel are satisfied to be represented by' the Consensus Plaintiffs 'is some measure of the respect they command and the confidence of their peers that they will serve well in the role.'" (citing *In re Air Cargo Shipping Servs. Antitrust Litig. M.D.L.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006)) (alteration in original)); *In re Genetically Modified Rice Litig.*, No. 4:06-md-1811, slip op. at 1 (E.D. Mo. 2007) (approving leadership proposal over other proposals because "[t]his group closely meets the 'private ordering' concept, because it has support of the larger number of plaintiffs and lawyers involved. . . [and] members of the group have been involved in the litigation consistently and cooperatively since the beginning").

The specific qualifications of the lead attorneys associated with Consensus Counsel are summarized below and set forth in detail in the accompanying firm resumes.

3.      **Plaintiffs' Proposed Interim Co-Lead Counsel**

a.      **Steve D. Shadowen of Hilliard & Shadowen LLP**

Mr. Shadowen, a founding partner at Hilliard & Shadowen LLP, has represented plaintiffs in antitrust litigation for more than 20 years.  Before founding Hilliard & Shadowen LLP in January 2012, Mr. Shadowen was a partner at Schnader Harrison Segal & Lewis, where he was elected to the firm's executive committee, and later was a shareholder at Hangley Aronchick Segal & Pudlin.  He has regularly been hired to represent some of the nation's largest pharmaceutical purchasers, including CVS Caremark, Inc., and Rite Aid Corp., as plaintiffs in pharmaceutical antitrust cases.  Over his extensive career, he has been lead counsel on behalf of purchaser plaintiffs in multiple groundbreaking pharmaceutical antitrust cases, beginning with the influential case, *In re Brand Name Prescription Drug Antitrust Litigation*, MDL No. 997 (N.D. Ill. 1993).

Mr. Shadowen is uniquely qualified to lead this challenge to Defendants' reverse payment agreement.  From 1999 to the present Mr. Shadowen has continuously shaped the law on this subject, representing purchaser plaintiffs in all of the major reverse payment cases.  He presented the appellate arguments on behalf of the purchaser plaintiffs in all three of the cases in which the appellate panels concluded that reverse payment agreements should be subject to substantial antitrust scrutiny.  *In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012); *Arkansas Carpenters Health & Welfare Fund v. Bayer AG*, 604 F.3d 98, 110 (2d Cir. 2010); and *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 908 (6th Cir. 2003).  These victories ultimately led to the Supreme Court decision in favor of plaintiffs in *FTC v. Actavis*, *Inc.*, ___U.S. ___,133 S. Ct. 2223 (2013).

Specifically for his work on behalf of plaintiffs in reverse payment cases, in 2013 the American Antitrust Institute awarded Mr. Shadowen its first-ever national accolade for Outstanding Antitrust Litigation Achievement in Private Law Practice.

Other organizations and clients similarly recognize and seek the benefit of Mr. Shadowen's unparalleled expertise on this issue.  When not directly involved in reverse payment cases, Mr. Shadowen is regularly retained to represent prominent *amici curiae*, including Consumers Union[9] and the National Association of Chain Drug Stores.[10]   Most recently, Professor Herbert Hovenkamp and his colleagues retained Mr. Shadowen to represent them in the first post-*Actavis* appellate case involving reverse payments.[11]   Mr. Shadowen has given numerous invited lectures on reverse payments and related topics, including at the American Intellectual Property Law Association, Politico Pro forum, the National Association of Attorneys General, and the University of Oxford.

Other notable cases in which Mr. Shadowen has represented pharmaceutical purchasers include:

- *In re Relafen Antitrust Litig.*, No. 01-cv-12239 (D. Mass.) (challenging scheme to mislead the U.S. Patent and Trademark Office and prosecute sham litigation against potential generic competitors regarding the non-steroidal anti-inflammatory drug Relafen);

- *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (E.D. Mich.) (challenging reverse payment agreements regarding the hypertension drug Cardizem CD);

- *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, No. 00-md-1383 (E.D.N.Y.) (challenging reverse payment agreements regarding the antibiotic Cipro);

- *Louisiana Wholesale Drug Co., Inc. v. Abbott Labs.*, No. 05-cv 340 (D. Del.) (challenging exclusionary scheme to block generic versions of the cholesterol

---

[9] *E.g.*, *In re Wellbutrin XL Antitrust Litig.*, Nos. 2:08-cv-2431 and 2433 (E.D. Pa.).

[10] *E.g.*, *FTC v. Watson Pharm., Inc.*, No. 12-416 (S. Ct.).

[11] *In re Lamictal Direct Purchaser Antitrust Litig.*, No. 14-1243 (3d Cir.).

drug Tricor by successively reformulating the drug in a manner that provided no medical benefit);

- *Meijer, Inc. v. Barr Pharm., Inc.*, No. 06-cv-795 (D.D.C.) (challenging exclusive supply agreement that prohibited generic competitor from launching a generic version of the contraceptive Ovcon);

- *In re Nifedipine Antitrust Litig.*, MDL No. 1515 (D.D.C.) (challenging conspiracy among potential competitors which prevented generic versions of the hypertension drug Adalat CC from entering the market);

- *In re Neurontin Antitrust Litig.*, MDL No. 1479 (D.N.J.) (challenging scheme to prevent generic competition to epilepsy drug Neurontin by obtaining patents through misconduct before the U.S. Patent and Trademark Office, improperly listing patents in the Orange Book, filing sham patent litigation suits against potential generic competitors, and marketing Neurontin for off-label uses);

- *In re Remeron Antitrust Litig.*, No. 03-cv-85 (D.N.J.) (challenging brand manufacturer's improper Orange Book listing and use of sham litigation to delay generic competition);

- *Safeway, Inc. v. Abbott Labs.*, No. 07-cv-5470 (N.D. Cal.) (challenging bundled pricing and refusal to deal regarding protease inhibitors used to treat HIV);

- *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-1317 (S.D. Fla.) (challenging reverse payment agreements regarding the drug Hytrin);

- *In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, No. 13-md-2445 (E.D. Pa.) (Co-Lead Counsel on behalf of End-Payors in pending challenge to brand manufacturer's scheme involving product hopping and a sham citizen's petition regarding the drug Suboxone);

- *In re Loestrin Antitrust Litig.*, No. 13-md-2472 (D. R.I.) (Co-Lead Counsel on behalf of End-Payors in pending challenge to reverse payment agreements used to suppress generic competition for Loestrin 24);

- *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (Co-Lead Counsel on behalf of End-Payors in pending challenge to reverse payment agreements used to suppress generic competition for Niaspan); and

- *In re Nexium (Esomeprazole Magnesium) Antitrust Litig.*, No. 12-md-2409 (D. Mass.) (Co-Lead Counsel on behalf of End-Payors in pending challenge to reverse payment agreements used to suppress generic competition for the blockbuster drug Nexium).

Publications such as *Chambers USA* and *America's Best Lawyers* regularly recognize Mr.

Shadowen as a top national antitrust lawyer.

**b.      Renae Steiner of Heins Mills & Olson P.L.C.**

Heins Mills' antitrust expertise is well-recognized. *The Legal 500 US*, which ranks "the best of the best" law firms in the country based on comments from clients and peers, lists Heins Mills among the five leading firms in antitrust class action litigation and *Benchmark Plaintiff* recognizes Heins Mills as leading practitioners in the plaintiffs' antitrust bar. Examples of the many actions in which Heins Mills has served as Lead or Co-Lead Counsel in MDL cases representing classes challenging price-fixing, unlawful trade restraints, monopolization, and other anticompetitive conduct in diverse markets are included in the firm's resume, and include:

- *In re Publication Paper Antitrust Litig.*, MDL No. 1631 (D. Conn.) (Underhill, J.), a nationwide antitrust action alleging an unlawful conspiracy by manufacturers to fix the price of publication paper;

- *In re Puerto Rican Cabotage Antitrust Litig.*, MDL No. 1960 (D.P.R.), which involved price-fixing by Jones Act shipping companies for ocean shipping services between the U.S. and Puerto Rico;

- *In re Polyester Staple Antitrust Litig.*, MDL No. 1516 (W.D.N.C.) (Co-Lead Counsel and co-lead trial counsel), a class action on behalf of business purchasers alleging price fixing of polyester staple fiber, which was settled on the eve of trial, bringing the total recovery from all defendants to $63 million—an amount exceeding single damages suffered by the class; and

- *In re Monosodium Glutamate Antitrust Litig.*, MDL No. 1328 (D. Minn.), which was settled for $123.4 million—an amount exceeding the single damages suffered by the class.

Heins Mills also has an active practice in delayed-entry drug cases, as Co-Lead Counsel on behalf of End-Payor plaintiffs in *In re Lipitor Antitrust Litig.*, MDL 2332 (D.N.J.), and as Executive Committee members in *In re Niaspan Antitrust Litig.*, MDL No. 2460 (E.D. Pa.), *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, MDL No. 2445 (E.D. Pa.), and *In re Prograf Antitrust Litig.*, MDL No. 2242 (D. Mass.).

Directing the prosecution of this case for the firm will be Renae Steiner. Ms. Steiner's 20-plus year practice in complex litigation is focused on antitrust matters on behalf of both direct

and indirect purchaser classes.  Ms. Steiner was part of the four-firm group that developed the case law on the first indirect purchaser claims post-*Illinois Brick* and with that group, Ms. Steiner established antitrust standing under Florida's consumer protection statues.  She was a trial team member in the Wisconsin *Infant Formula Antitrust Litig.* case and in the *In re Thermal Facsimile Paper Antitrust Litig.* case.  Currently, Ms. Steiner is a trial team member in *In re NCAA Name and Likeness Antitrust Litig.*, No. 4:09-cv-1967  (N.D. Cal.) (commonly called the "O'Bannon case," a landmark case against the NCAA and others for antitrust violations; Ms. Steiner directed the discovery in this action and is one of the five lawyers trying the action beginning June 9, 2014 in the Northern District of California).

Ms. Steiner's deep experience in prosecuting indirect purchaser actions also includes *In re DRAM Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) (federal court actions alleging price-fixing claims; prior firm was Co-Lead Counsel; settlements total $285 million) and *In re Aftermarket Filters Antitrust Litig.*, MDL No. 1957 (N.D. Ill.) (antitrust, consumer protection and unfair competition claims against leading manufacturers of replacement vehicle filters).

Ms. Steiner has routinely been noted for her experience, skills and expertise and has been recognized by her peers as a "SuperLawyer" yearly since 2008, and was recognized by *Benchmark Plaintiff* as a "litigation star" and as one of the top 150 women's plaintiffs' lawyers in the United States.

c.      **Marvin A. Miller of Miller Law LLC**

Marvin A. Miller has more than 40 years of commercial and complex class action litigation experience.  Mr. Miller has been Lead or Co-Lead Counsel across the full spectrum of industries (airline, cell and telephone, financial services, Internet and technology, manufacturing, pharmaceuticals, retailing, stock broker and exchange, and utilities) and practices (antitrust, consumer and investor fraud and protection, employment and employee benefits, insurance,

19

shareholder derivative actions) that encompass Miller Law LLC's practice.  Mr. Miller holds an AV Preeminent (highest) rating from Martindale-Hubbell.  Each year from January 2007 through 2013, Law & Politics and the publishers of Chicago Magazine named Mr. Miller an Illinois Super Lawyer.  Mr. Miller has also served as a panelist for Practicing Law Institute and the Chicago Bar Association.

Throughout his career in class action jurisprudence, Mr. Miller has represented shareholders and investors in high profile and precedent-setting class action litigation involving such companies as Continental Illinois National Bank and Trust and Baldwin United Corporation.  He was lead attorney in *Smith v. Groover*, in which he represented clients against the Chicago Board of Trade and several of its traders; the decision in the case, later affirmed, *sub nom. Curran v. Merrill Lynch Pierce Fenner & Smith*, by the U.S. Supreme Court, established the precedent that an individual has an implied private right of action to sue an exchange for negligence in failing to supervise its members.

In addition to his experience above, Mr. Miller has served in the leadership and as Lead Counsel or Co-Lead Counsel in several pharmaceutical cases, beginning with the drug marketing case *In re Synthroid Mktg. Litig.*, MDL No. 1182 (N.D. Ill.), and more recently cases that are similar to this action, including *In re Flonase Antitrust Litig.*, No. 08-3301 (E.D. Pa.); *In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich.); *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.); and *In re Warfarin Sodium Antitrust Litig.*, No. 98-1232 (D. Del.). Most recently, in *In re: Polyurethane Antitrust Litig.*, MDL No. 2196 (N.D. Ohio) (Order dated April 16, 2014), Mr. Miller was appointed sole Class Counsel in a complex antitrust case and Judge Zouhary commented and found that, designation of Mr. Miller is in the best interest of the Class because he (a) has zealously represented the interests of the class in litigating this case

while serving as interim lead counsel; (b) has extensive relevant experience in complex antitrust litigation and knowledge of the law applicable to this case; and (c) he has and is willing to continue to commit the resources necessary to represent the Class."

4. **Plaintiffs' Proposed Executive Committee**

a. **Daniel C. Girard of Girard Gibbs LLP**

Daniel C. Girard serves as the managing partner of Girard Gibbs LLP and is experienced in handling class actions and antitrust litigation. The firm served as liaison counsel in the *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.), which resulted in a $571 million settlement on behalf of direct purchasers. Mr. Girard serves on the executive committee and his firm has been responsible for coordinating the end-payor plaintiffs' discovery efforts in *In re Nexium (Esomeprazole Magnesium) Antitrust Litigation*, No. 12-md-2409-WGY (D. Mass.), a case that challenges brand and generic pharmaceutical manufacturers' agreements to delay and suppress generic competition to the $3 billion a year blockbuster drug Nexium. Mr. Girard also currently serves on the executive committee in *In re Niaspan Antitrust Litigation*, MDL No. 2460, Case No. 13-md-2460-JD (E.D. Pa.), and serves as plaintiffs' counsel in several additional "pay-for-delay" cases including cases challenging alleged anticompetitive conduct relating to the marketing and sale of brand name drugs including Lidoderm, Aggrenox, Solodyn and ACTOS. The firm has also achieved substantial recoveries for investors in complex class actions, including *In re Lehman Brothers Equity/Debt Litigation*, No. 09-md-2017 (S.D.N.Y) ($120 million settlement approved December 10, 2013); *In re SLM Corporation Securities Litigation*, *No. 08-Civ-1029 (WHP)* ($35 million settlement); and *In re American Express Financial Advisors Securities Litigation*, No. 04-cv-01773-DAB ($100 million settlement).

21

### b.      J. Douglas Richards of Cohen Milstein

Mr. Richards has extensive knowledge and experience concerning class actions, other complex litigation, and the specific types of Hatch-Waxman related pharmaceutical antitrust claims asserted in this action.  He has served as Lead or Co-Lead Counsel in more than sixteen class actions in the last twelve years.  As a consequence of his extensive experience in class action practice, Mr. Richards has twice been invited to write chapters on class action practice for books on private antitrust litigation published by the American Antitrust Institute.  Mr. Richards has also written two law review articles in recent years on class action practice, published in the Rutgers Law Review and the N.Y.U. Annual Survey of American Law, and he has been invited to speak in prestigious venues, including before the Standing Committee on the Federal Rules of Civil Procedure, the Federal Bar Council, and the American Antitrust Institute, on practical perspectives from his extensive experience on the plaintiffs' side of class action practice.

Mr. Richards has been Co-Lead Counsel in at least eight antitrust class actions brought on behalf of indirect purchasers dealing specifically with Hatch-Waxman and the application of antitrust law in the pharmaceutical and patent law context, including:

- *In re Nexium (Esomeprazole) Antitrust Litig.*, MDL 2409 (D. Mass);

- *In re Loestrin Antitrust Litig.*, No. 1:13-md-02472 (D.R.I);

- *In re Lipitor Antitrust Litig.*, MDL No. 2332 (D.N.J.);

- *In re Buspirone Antitrust Litig.*, MDL No. 1413 (S.D.N.Y.);

- *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, MDL No. 1383 (E.D.N.Y.);

- *In re K-Dur Antitrust Litig.*, MDL No. 1419(D.N.J.);

- *In re Relafen Antitrust Litig.*, No. 01-12239-WGY (D. Mass.);

- *In re Tamoxifen Citrate Antitrust Litig.*, MDL No. 1408 (E.D.N.Y.); and

- *In re Wellbutrin Antitrust Litig.*, MDL No.04-5525 (E.D. Pa.)

In addition, Mr. Richards represents consumers and third-party payors in the following generic suppression cases:

- *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (executive committee);

- *In re Suboxone (Buprenorphine Hydrochloride And Naloxone) Antitrust Litig.*, No. 2:13-md-02445-MSG (E.D. Pa.) (executive committee);

- *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503 (D. Mass.) (executive committee);

- *U.F.C.W. Local 1776 & Participating Emp'rs Health and Welfare Fund v. Takedas Pharm. Co., Ltd. et al.*, No. 1:13-cv-09244 (S.D.N.Y.) (executive committee);

- *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521 (N.D. Cal.) (proposed Co-Lead Counsel)

In recognition of his leading role regarding pharmaceutical antitrust issues, Mr. Richards has been invited to speak on those specific issues in venues as diverse as the United States House Judiciary Committee, the National Association of Attorneys General, and the Federal Bar Council.

### c.     Natalie Finkelman Bennett of Shepherd Finkelman Miller & Shah

Shepherd Finkelman Miller & Shah has significant experience in antitrust class actions. Natalie Finkelman Bennett, one of the firm's principals, concentrates on representing plaintiffs in antitrust, and consumer class actions, as well as other complex litigation, including Hatch-Waxman related pharmaceutical antitrust claims asserted in the present action.  Ms. Finkelman has served as lead, co-lead or class counsel in numerous class action cases throughout the United States in the past fifteen years.  A complete biography for Ms. Finkelman, as well as a description of her firm's many accomplishments, may be found at http://www.sfmslaw.com. Significantly, the firm has an office in Chester, Connecticut, and under the leadership of partner James E. Miller, represented the State of Connecticut in asserting claims in the Average

Wholesale Pricing ("AWP") Litigation involving pharmaceutical pricing and reimbursement schemes.

Most relevant to the instant motion, Ms. Finkelman has represented consumers and third-party payors in the following cases involving pharmaceutical antitrust issues and the healthcare industry:

- *In re Androgel Antitrust Litig., II*, MDL No. 2084 (N.D. Ga.) (pending challenge to reverse payment agreements used to suppress generic competition for Androgel);

- *In re Nexium Antitrust Litig.*, MDL No. 2409 (D. Mass.) (pending challenge to reverse payment agreements used to suppress generic competition for Nexium);

- *In re Loestrin Antitrust Litig..*, No. 13-md-2472 (D.R.I.) (executive committee) (pending challenge to reverse payment agreements used to suppress generic competition for Loestrin 24);

- *In re Niaspan Antitrust Litig.*, No. 13-md-2460 (E.D. Pa.) (pending challenge to reverse payment agreements used to suppress generic competition for Niaspan);

- *In re Lipitor Antitrust Litig.*, MDL No. 2332 (D.N.J.) (executive committee) (pending challenge to reverse payment agreements used to suppress generic competition for Lipitor);

- *In Re: Suboxone (Buprenorphine Hydrochloride And Naloxone) Antitrust Litig.*, No. 2:13-md-02445-MSG (E.D. Pa.) (executive Committee) (pending challenge to brand manufacturer's scheme involving product hopping and a sham citizen's petition regarding the drug Suboxone);

- *In re Solodyn End-Payor Antitrust Litig.*, No. 13-cv-04235-JCJ (E.D. Pa.)(pending challenge to reverse payment agreements and other methods used to suppress generic competition for Solodyn);

- *In re Pharm. Industry Average Wholesale Price Litig.*, No. 01-cv-12257, MDL No. 1456 (D. Mass.) (pharmaceutical overpricing).

Ms. Finkelman's skills and expertise as a class action lawyer have been recognized by both colleagues and private institutions. She has participated in seminars regarding class action litigation and serves as an arbitrator in Pennsylvania state court proceedings. Ms. Finkelman has

also been recognized by her peers as a Pennsylvania Super Lawyer each year from 2008 to the present.

### d.      David W. Mitchell of Robbins Geller Rudman & Dowd LLP

David W. Mitchell is a partner of Robbins Geller, a firm specializing in antitrust and securities litigation.  With 200 lawyers across 10 offices nationwide, Robbins Geller attorneys have successfully prosecuted some of the nation's most complicated antitrust, consumer protection, securities fraud, and patent litigation.  Robbins Geller lawyers possess extensive experience prosecuting complex antitrust actions, having successfully prosecuted numerous antitrust actions and been appointed as Lead or Co-Lead Counsel in landmark class actions, including *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998), and *In re Payment Credit Card Interchange Fee & March. Disc. Antitrust Litig.*, MDL No. 1720 (E.D.N.Y), which resulted in the largest-ever class action antitrust settlement.  Individually, Mr. Mitchell has achieved significant settlements on behalf of plaintiffs in numerous cases, including the *NYSE Specialists Sec. Litig.* (S.D.N.Y.), and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* (E.D.N.Y.), which will provide approximately $5.7 billion to class member merchants that accept Visa or MasterCard.  Mr. Mitchell is also currently serving as a member of the leadership team in the ACTOS antitrust litigation, *U.F.C.W. Local 1776 & Participating Emp'rs Health and Welfare Fund v. Takedas Pharm. Co., Ltd. et al.*, No. 1:13-cv-09244 (S.D.N.Y.).  Prior to joining the Firm, he served as an Assistant United States Attorney in the Southern District of California and prosecuted cases involving narcotics trafficking, bank robbery, and murder-for-hire.  Mr. Mitchell tried 18 cases to verdict before federal criminal juries and made numerous appellate arguments before the Ninth Circuit Court of Appeals.

5.    **Proposed Interim Liaison Counsel William H. Narwold and Michael M. Buchman of Motley Rice LLC**

William H. Narwold and Michael M. Buchman are members of Motley Rice LLC ("Motley Rice"). Motley Rice is an 80-attorney law firm with unprecedented success. Motley Rice attorneys achieved the largest civil settlement in U.S. history with the $246 billion Master Tobacco Settlement Agreement. It has also served as one of two counsel responsible for negotiating the $7.8 billion settlement in the Deepwater Horizon oil spill MDL case *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on April 20, 2010, the largest class action settlement in U.S. history. Motley Rice has received numerous accolades and has recently been named to: (1) *The National Law Journal*'s 2014 Plaintiffs' Hot List; (2) *The National Law Journal*'s 2013 Plaintiffs' Hot List; (3) *Law360*'s 2013 "Most Feared Plaintiffs Firms" list; and (4) Best Law Firm 2012-2013, U.S. News – Best Lawyers.

The primary Motley Rice lawyers handling this case will be William H. Narwold and Michael M. Buchman. Mr. Narwold oversees all of Motley Rice's non-mass tort litigation, including securities, antitrust, and intellectual property matters. He has tried court and jury trials to verdict in numerous state and federal courts. He also leads the firm's appellate practice and has been involved in over 200 appeals, including appeals in every circuit court and in many state appellate courts. Mr. Narwold has been recognized as a SuperLawyer yearly since 2009 and as a Best Lawyer in America from 2005 to the present.

Michael M. Buchman is a former Assistant Attorney General in the Antitrust Bureau of the New York State Attorney General's Office. He has served as Lead or Co-Lead Counsel in many antitrust class actions including some of the most prominent and hard-fought matters, such as *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005), *rev'd*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), and *Kruman v. Christie's International PLC*,

284 F.3d 384 (2d Cir. 2002). He has effectively managed in a leadership capacity a number of antitrust class action cases over the past 17 years, including in *In re Buspirone Antitrust Litig.*, MDL No. 1413 (S.D.N.Y.); *In re Relafen Antitrust Litig.*, No. 01-12222-WGY (D. Mass. 2001); *In re Flonase Antitrust Litig.*, No. 08 Civ. 3301 (E.D. Pa.); and *In re Augmentin Antitrust Litig.*, No. 02 Civ. 445 (E.D. Va.). He has recently been appointed Interim Co-Lead Counsel in *In re Lipitor Antitrust Litig.*, MDL No. 2332(D.N.J.); *In re Effexor Antitrust Litig.*, No. 11-cv-5479 (D.N.J.); *Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, No. 2:13-md-02445-MSG (E.D. Pa.); *In re Niaspan Antitrust Litig.*, No. 2:13-md-02460-JD (E.D. Pa.); *In re Loestrin Antitrust Litig.*, No. 13-md-2472 (D.R.I.); and *In re Actos Antitrust Litig.*, No. 13 Civ. 09244 (S.D.N.Y.)

### 6.    Consensus Counsel Is Knowledgeable of the Applicable Law

As demonstrated above, the Consensus Counsel's attorneys collectively have decades of experience prosecuting a wide variety of complex litigation matters, including antitrust claims on behalf of consumers and third-party payors, and have extensive knowledge of the applicable law. This experience, ranging from filing the first pioneering generic suppression cases to obtaining class certification orders for End-Payor classes, has provided proposed End-Payor counsel with extensive knowledge of the applicable law.

### a.    Economic Expert

In addition to reviewing publicly available documents and data and each respective End-Payor Plaintiff's information, Consensus Counsel has been consulting with an economic expert. Consensus Counsel are in the process of identifying and obtaining data and information necessary to prepare a report in connection with class certification and market definition issues, which are typically raised by Defendants in these cases. Consensus Counsel are also in the process of identifying potential scientific experts we may need in connection with this case.

###### b.     Patent Counsel

Consensus Counsel has worked closely and consulted with patent counsel.  And because of the makeup of their organization, Consensus Counsel has in-house patent counsel readily available as a valuable resource to assist and provide guidance, if and when needed.  These resources will eliminate the need to add additional counsel and promote the efficient prosecution of these claims.

###### 7.     Consensus Counsel Will Commit Substantial Resources to the Litigation

Given the success that the lawyers from the proposed leadership structure have had in prosecuting complex antitrust class actions, especially in the realm of healthcare litigation, there can be no doubt that the proposed litigation team has the financial and personnel resources to commit to this litigation.  These resources are not merely financial.  The proposed litigation team has the personnel and expertise necessary to pursue a case of this magnitude and to achieve a positive outcome for the End-Payor plaintiffs.  This legal team has substantial experience with the tasks unique to complex litigation, including supervising large teams of lawyers analyzing discovery documents, and finding and engaging highly qualified expert witnesses and consultants.  The proposed leadership team is accustomed to working this type of case and knows how to coordinate with co-counsel and the direct purchasers to prosecute this matter in an effective and efficient manner.

If approved by the Court, the individuals and respective firms associated with the Consensus Counsel will commit the necessary time and resources to pursue the matter to its conclusion, will coordinate and cooperate with co-counsel to prosecute the case efficiently, effectively, and in a manner that minimizes costs, and will at all times meet the fiduciary obligations owed to the named plaintiffs, all members of the proposed class, and this Court.

8.      **Trial Resources and Commitment**

Consensus Counsel also has vast experience and been formidable in litigating complex class actions through trial.  The following is only a brief spotlight on some of the trial successes achieved by members of the Consensus Counsel.

Marvin Miller was a member of the defense trial team that went to trial in a lengthy patent case in which the jury found for Defendant.  *See Baxter v. McGaw*, 149 F.3d 1321 (Fed. Cir. 1998) (affirming same).  Mr. Miller was also a member of the trial team that tried a lengthy securities case with Robbins Geller Rudman & Dowd LLP, and which resulted in a jury verdict of more than $2.4 billion.  *Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill. 2002), No. 02-5893 (N.D. Ill. 2002).  Mr. Miller is now scheduled for trial of two complex price-fixing antitrust class action cases, *In re: Polyurethane Antitrust Litig.*, MDL No. 2196 (N.D. Ohio), where Mr. Miller was recently appointed sole lead class counsel for the indirect purchaser plaintiffs, and *In re Text Messaging Antitrust Litig.*, MDL 1997 (N.D. Ill.).

Mr. Shadowen served on the plaintiffs' trial team in two recent pharmaceutical antitrust cases:  *Safeway, Inc. v. Abbott Labs.*, No. 07-cv-5470 (N.D. Cal.), and *Abbott Laboratories v. Teva Pharms. USA, Inc.*, No. 02-1512-KAJ (D. Del.).  He is co-lead trial counsel for plaintiffs in the upcoming reverse payment trial in *In re Nexium Antitrust Litig.*, No. 1:12-md-02409-WGY (D. Mass.).  The senior lawyers at Hilliard & Shadowen LLP have served as lead trial counsel in more than 100 jury trials.

Heins Mills & Olson is committed to expending the resources necessary to resolve complex litigation, and has tried several antitrust and other complex litigation cases to verdict, including *In re High Pressure Laminates Antitrust Litig.*, MDL No. 1368 (S.D.N.Y.) (price-fixing case tried to verdict on behalf of businesses that purchased high-pressure laminates, ultimately recovering $40.5 million in settlement payments from several of the defendant

29

manufacturers); *In re Universal Service Fund Telephone Billing Practices Litig.*, MDL No. 1468 (D. Kan.) (representing business and residential customers nationwide alleging a conspiracy to fix USF surcharges and breach of contract claims against long-distance telephone companies and obtaining a verdict for the class that was affirmed on appeal by the Tenth Circuit); and in the coordinated *Infant Formula cases* (Kansas case tried; 17-state settlement reached on the eve of the Wisconsin trial).

Other cases that settled on the eve of trial include:  *In re Travel Agency Commission Antitrust Litig.*, MDL No. 1058 (D. Minn.) (lead trial counsel in case alleging that major domestic airlines conspired to fix agent commissions, which claims were settled on day of jury selection for a total of $86 million); and *In re Polyester Staple Antitrust Litig.*, MDL No. 1516 (W.D.N.C.) (a class action on behalf of business purchasers alleging price fixing of polyester staple fiber, which settled on the eve of trial, bringing the total recovery from all defendants to $63 million—an amount exceeding single damages suffered by the class).

In addition, Ms. Steiner is one of the trial counsel for antitrust plaintiffs in *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 4:09-cv-1967 (N.D. Cal.) (trial to begin June 2014; challenging under the antitrust laws policies that prevent U.S. collegiate student-athletes from receiving a share of the revenue generated from use of their likeness).

Robbins Geller Rudman & Dowd LLP has extensive trial experience in complex class action litigation.  *Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill. 2002), in particular, is but one example of how effectively the lawyers from Robbins Geller and Miller Law (two Consensus Counsel firms) have successfully worked together to benefit members of injured classes.  Following the firms' appointment as lead and liaison counsel, respectively, Robbins Geller and Miller Law defeated the defendants' motions to dismiss and obtained certification of

the class.  For more than six years, Robbins Geller and Miller Law methodically prepared the *Household* case for trial, including taking more than 60 depositions and reviewing countless millions of pages of documentary evidence.  The six-week trial yielded a plaintiffs' verdict and a judgment exceeding $2.4 billion—the largest judgment following a securities fraud class action trial in history.  The *Household* trial and favorable verdict is but one example that demonstrates the Consensus Counsel's willingness to commit the necessary, and likely significant, resources to protect the interests of the class.  Such outstanding results are not often possible when law firms that lack the resources and experience necessary to properly prepare a complex class action case for trial are selected as class counsel.

Motley Rice is a firm comprised of skilled trial lawyers.  The firm's lawyers presume each case they litigate will require resolution by trial and prepare each case with this in mind. Motley Rice keeps trial considerations in the forefront through all phases of litigation so it can build the best case possible for its clients.  The firm's trial experience, technological capabilities and financial resources allow Motley Rice to provide a full spectrum of important litigation support services to trial teams.  Because Motley Rice operates with the philosophy that combined resources add value for clients and build stronger cases, the firm's complex case and trial teams often work closely with associated co-counsel. This significant and diverse network of plaintiffs' attorneys from across the nation often calls on Motley Rice's trial team for support.  These resources include but are not limited to:  trial strategies, command center (war rooms) design and execution, courtroom graphics, exhibits and demonstratives, multimedia, audio visual hardware and software, video to transcript synchronization, encoding and database and document management.  By preparing cases for trial, it has been Motley Rice's experience the firm is able to obtain higher settlements.  As a result of this trial approach and experience, Motley Rice has

built a national reputation as a firm of formidable trial lawyers.  The firm's lawyers try cases in courtrooms across the country on a monthly basis.  Indeed, late last year the firm obtained a $1.15 billion judgment in a California Lead Paint trial.[12]  Motley Rice lawyers, who have gained national recognition for their work, *inter alia*, with State Attorneys General in the $246 billion landmark litigation against Big Tobacco, bring time tested trial skills and an indefatigable resolve to cases like this for the benefit of the class members whom they represent.

For over 40 years, Cohen Milstein Sellers & Toll PLLC has been one of the nation's leading plaintiffs' class action firms.  The firm has litigated some of the nation's most complex class cases and has recovered billions of dollars in damages for injured plaintiffs.  In 2012 and 2013, the *National Law Journal* named Cohen Milstein one of the top Plaintiffs' firms in the nation.  Similarly, the *Legal 500* publication ranked Cohen Milstein as a "Leading Plaintiff Class Action Law Firm" in the United States.  The *Trial Lawyer Magazine* also has described the firm as one of "America's 25 Most Influential Law Firms."   In February 2013, Cohen Milstein attorneys obtained a $400 million verdict (pre-trebling) against Dow Chemical Company in a nationwide antitrust class action, *In re Urethanes Antitrust Litigation* (D. Kan.), the largest verdict of 2013 and one of the largest known antitrust verdicts to date.

Shepherd Finkelman also has tried numerous complex cases.  Most recently, in the fall of 2013, firm lawyers tried a complex ERISA class action case, which was filed in the District of Connecticut, *Healthcare Strategies, Inc., et al. v. ING Life Insurance & Annuity Co.*, No. 3:11-cv-00282 (D. Conn.), but transferred for trial to the District of Massachusetts.  In addition, in December 2013, the firm resolved a complex shareholder dispute on the first day of trial before the Honorable Warren W. Eginton of this Court.

---

[12]  http://www.scefiling.org/filingdocs/194/69125/endorse_108301_ProposedxStatementxofxDecisionxJPK.pdf.

In sum, Consensus Counsel is prepared to commit significant trial resources and acumen to the prosecution of this case.

### 9.     Technological Resources

To maximize recovery for the class and to contain costs, Consensus Counsel possesses unmatched technological resources that are critical to the exacting and efficient review of the voluminous document productions that are commonplace in sophisticated document-intensive litigation such as this.  For example, Robbins Geller, has amassed resources, capabilities, and technology comparable to the top e-discovery and document review vendors in the industry.  The firm employs seven dedicated staff with more than 50 years of combined e-discovery experience. Its resources include the highly sophisticated Relativity software used by most of the top vendors in the industry.  Through the use of this cutting edge technology, the firm is capable of performing the most sophisticated analytics including concept searching and predictive coding in order to expedite the document review process.  Due to the scope of services that are expertly handled in-house, the firm offers document intensive litigation support services in a far less costly manner than what would otherwise be realized through the retention and use of third-party vendors.  Each of the Consensus Counsel firms will similarly employ their resources and experiences for the benefit of the class.

### 10.     Strict Time and Expense Monitoring

Consensus Counsel has formulated a plan to closely monitor the time and expenses of all Plaintiffs' counsel.  Proposed Interim Co-Lead Counsel recognize the importance of cost containment in order to maximize the recovery for the class, but that recovery of common benefit time and cost reimbursements is essential.  To that end, Plaintiffs' counsel who endorse Consensus Counsels' appointment as Interim Co-Lead Counsel have agreed that they shall only be eligible to receive common benefit attorneys' fees and cost reimbursement if the time

expended, costs incurred and activity in question are: (1) for the common benefit of the End-Payor Class; (2) appropriately authorized by and at the direction of Interim Co-Lead Counsel; (3) timely submitted as required by Interim Co-Lead Counsel; (4) appropriately limited with respect to the nature and amount of eligible expenses; and (5) ultimately approved by this Court. Counsel have agreed that they shall keep daily contemporaneous records of their time and expenses, noting with specificity the activity, amount of time expended, and authorization to perform each common benefit effort. Those submissions will be initially reviewed by Interim Co-Lead Counsel and for the purpose of coordinating these guidelines and tracking submissions, Interim Co-Lead Counsel will employ a Certified Public Accountant or other vendor to insure proper compliance by the participating counsel.

As demonstrated above, Consensus Counsel is exceedingly qualified to lead this litigation on behalf of the putative End-Payor Class and have worked, and have committed to continue to work, cooperatively, efficiently and effectively for the benefit of the End-Payor Class.

## V.      CONCLUSION

For the foregoing reasons, End-Payor Plaintiffs respectfully request that the Court enter the proposed Case Management Order in its entirety.


Dated:  May 19, 2014                                   Respectfully Submitted,


                                                       */s/ William H. Narwold*
                                                       William H. Narwold (ct 00133)
                                                       Mathew P. Jasinski (ct 27520)
                                                       **MOTLEY RICE LLC**
                                                       One Corporate Center
                                                       20 Church Street, 17th Floor
                                                       Hartford, CT 06103
                                                       Telephone: (860) 882-1676
                                                       Fax: (860) 882-1682
                                                       bnarwold@motleyrice.com

Donald A. Migliori
Michael M. Buchman
John A. Ioannou
Alex R. Straus
**MOTLEY RICE LLC**
600 Third Avenue, Suite 2101
New York, NY 10016
Telephone: (212) 577-0040
Facsimile: (212) 577-0054
dmigliori@motleyrice.com
mbuchman@motleyrice.com

*Proposed Liaison Counsel for the*
*Proposed End-Payor Class*

Steve D. Shadowen
**HILLIARD & SHADOWEN LLC**
39 West Main Street
Mechanicsburg, PA  17055
Telephone: (855) 344-3928
steve@hilliardshadowenlaw.com

*Proposed Interim Co-Lead Counsel for the*
*Proposed End-Payor Class*

Renae D. Steiner
David R. Woodward
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
rsteiner@heinsmills.com
dwoodward@heinsmills.com

*Proposed Interim Co-Lead Counsel for the*
*Proposed End-Payor Class*

Marvin A. Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: (312) 332-3400
mmiller@MillerLawLLC.com

*Proposed Interim Co-Lead Counsel for the*
*Proposed End-Payor Class*

Daniel C. Girard
**GIRARD GIBBS LLP**
601 California Street
San Francisco, CA 94108
Telephone: (415) 981-4800
dcg@girardgibbs.com

*Proposed Executive Committee Member for*
*the Proposed End-Payor Class*

J. Douglas Richards
**COHEN MILSTEIN SELLERS &**
**TOLL, PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
drichards@cohenmilstein.com

*Proposed Executive Committee Member for*
*Proposed End-Payor Class*

David W. Mitchell
**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7423
davidm@rgrdlaw.com

*Proposed Executive Committee Member for*
*the Proposed End-Payor Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 19, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ William H. Narwold*
William H. Narwold (ct00133)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Tel.: (860) 882-1676
Fax: (860) 882-1682
bnarwold@motleyrice.com

36