UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE AGGRENOX<br>ANTITRUST LITIGATION | : <br> : Docket No. 3:14 MD 2516 (SRU)<br> : |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | : <br> : <br> : <br> : <br> : |

**PLAINTIFFS' INITIAL PRETRIAL CONFERENCE REPORT**

Pursuant to the Practice and Procedure Order dated April 29, 2014 (ECF No. 37),

Plaintiffs and Defendants conferred by telephone and in writing as instructed by the Court.

Plaintiffs submit this report to identify the areas of agreement and disagreement between the

parties concerning discovery, briefing, and administrative matters identified in the Order.

## I.      SUMMARY OF THE CLAIMS IN THE LITIGATION

Plaintiffs, direct purchasers and end-payers of prescription drugs, bring this consolidated

antitrust action to challenge an alleged pay-for-delay patent litigation settlement agreement

involving the drug Aggrenox.  The defendants are Boehringer Ingelheim Pharmaceuticals, Inc.

and its corporate parents (collectively, "Boehringer"), the manufacturer of the brand prescription

drug Aggrenox; Barr Pharmaceuticals, Inc. ("Barr"), a would-be manufacturer of generic

Aggrenox; and Barr's successor in interest, Teva Pharmaceuticals USA, Inc., its corporate parent

and related subsidiaries (collectively, "Teva").

Plaintiffs allege that but for the unlawful settlement agreement, generic Aggrenox –

substantially less expensive than the brand – would have been available to purchasers as early as

late 2009, but as a result of the agreement between Boehringer and Barr/Teva to delay generic

Aggrenox competition, cannot now be purchased until July of 2015.

Plaintiffs allege that, rather than litigate the patent merits or execute a lawful settlement without a reverse payment from Boehringer to Barr, Boehringer and Barr instead entered into a reverse-payment agreement in August 2008.  The agreement required Barr to drop its challenge to the patent purportedly covering Aggrenox and delay entering the market with its generic Aggrenox, in exchange for Boehringer's payment of approximately $120 million to Barr under the guise of a co-promotion agreement.  In various court papers and court hearings related to a Federal Trade Commission ("FTC") investigation of the settlement, Boehringer admitted that the millions of dollars it paid to Barr in ongoing payments under the co-promotion agreement were consideration for Barr's dropping its challenge to Boehringer's patent.

Sales of Aggrenox during the delay period have exceeded $400 million a year.  As a consequence of the unlawful agreement, Plaintiffs allege that generic competition to Aggrenox was eliminated and purchasers suffered (and continue to suffer) hundreds of millions of dollars in overcharge damages from paying higher brand prices rather than lower generic prices.

As this case concerns allegations of payments made by a brand pharmaceutical company to a generic pharmaceutical company to delay generic drug competition, it is governed by the Supreme Court's recent decision in *FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013).  The Court held in *Actavis* that such agreements are governed by the antitrust rule of reason.  Under the rule of reason, plaintiffs bear the initial burden of showing anticompetitive effects of the challenged reverse-payment agreement (*e.g.*, higher prices); then, the burden shifts to defendants to prove legitimate procompetitive benefits; if defendants do so, the burden shifts back to plaintiffs to prove that those legitimate procompetitive benefits could have been achieved through less

restrictive means (*e.g.*, settlement without a reverse payment).[1]   Ultimately, "the factfinder must engage in a careful weighing of the competitive effects of the agreement – both pro and con – to determine if the effects of the challenged restraint tend to promote or destroy competition."[2]

## II.      TOPICS TO BE ADDRESSED AT INITIAL PRETRIAL CONFERENCE

The parties have conferred in advance of the initial pretrial conference concerning the matters identified in the Court's Practice and Procedure Order.  Plaintiffs report as follows:

### A.      Organization of Counsel into Cooperating Groups

The Court has previously ordered that these actions are to be consolidated in two groups for pretrial purposes: all direct purchaser actions and all end-payer actions.  The two groups intend to cooperate and coordinate, to the greatest extent possible, to avoid duplication of effort and inconvenience to the Court, any party or its counsel, party and third-party witnesses, and experts.

### B.      Appointment of Lead and Liaison Counsel or Counsel Committees

#### 1.      Direct Purchaser Plaintiffs

On April 14, 2014, direct purchaser plaintiffs Miami-Luken, Inc. ("Miami-Luken"), American Sales Company, LLC ("American Sales"), and Rochester Drug Co-Operative, Inc. ("RDC"), comprising the plaintiffs in three of the four pending direct purchaser class actions, moved for entry of a case management order appointing their attorneys as interim co-lead and liaison counsel for the direct purchaser class (ECF No. 3).  The proposed case management order also sought the appointment of an executive committee comprised of attorneys representing each

---

[1] *See Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 506-07 (2d Cir. 2004).  *See also United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 238 (2d Cir. 2003) (same).  The Supreme Court in *Actavis* identified but two legitimate justifications that defendants can assert for a reverse-payment:  first, that the reverse payment "may amount to no more than a rough approximation of the litigation expenses saved through the settlement"; and second, that the "payment may reflect compensation for other services that the generic has promised to perform – such as distributing the patented item or helping to develop a market for that item." *Actavis*, 133 S. Ct. at 2236.

[2] *Geneva Pharms.*, 386 F.3d at 507.

named direct purchaser plaintiff.  On April 29, 2014, Plaintiff Cesar Castillo, Inc. moved for the appointment of its counsel as interim sole lead counsel, or in the alternative as co-lead counsel in association with one of the other counsel for the direct purchaser plaintiffs, and liaison counsel for the direct purchaser class (ECF No. 32).  Each of these direct purchaser plaintiffs responded individually – Miami-Luken on May 16, 2014 (ECF No. 55), RDC on May 16, 2014 (ECF No. 58), and American Sales on May 19, 2014 (ECF No. 59).  These motions are pending.

### 2.      End-Payer Plaintiffs

On May 12, 2014, Plaintiff Humana moved for the appointment of its counsel as interim lead class counsel and liaison counsel for the End-Payer class.  (ECF No. 46).  On May 19, 2014, a consensus group representing all other End-Payer plaintiffs (19 of 20) moved for the appointment of their preferred co-lead structure, including interim co-lead class counsel, a small executive committee, and liaison counsel for the End-Payer class.  (ECF No. 60).  These motions are pending.

### 3.      Defendants

Alison Hanstead of White & Case LLP will be liaison counsel for Boehringer Ingelheim Pharmaceuticals, Inc., and will advise regarding liaison counsel for the other Boehringer Defendants once they have been served and have entered appearances.  Robert Carroll of Goodwin Procter LLP will be liaison counsel for the Teva and Barr Defendants.

### C.      The Scope and Timing of Discovery, including Expert Witness Discovery

The parties have conferred concerning the scope and timing of discovery, but their positions differ.  Plaintiffs say unlimited discovery should commence forthwith.  Defendants argue that only limited discovery should proceed pending the Court's resolution of Defendants' prospective motion to dismiss.  Defendants have agreed to produce during that time certain categories of documents, including documents from the underlying patent litigations, the

challenged reverse-payment agreements, documents from the FTC investigation, Boehringer's NDA and associated documents, and Barr/Teva's ANDA for generic Aggrenox and associated documents. But Defendants refuse to produce other categories of documents, and refuse to produce some subcategories of the documents, subcategories (documents produced to the FTC and testimony from that proceeding) that Defendants previously agreed before a transferor court that they would produce.

Defendants' attempts to limit discovery pending a motion to dismiss are inconsistent with the local rules and case law of this District. This District's *Standing Order on Scheduling of Civil Cases* ¶2(c) states explicitly that "[t]he filing of a motion to dismiss shall not result in the stay of discovery or extend the time for completing discovery." Consistent with the *Standing Order,* District of Connecticut cases are uniform that a motion to dismiss does not automatically stay discovery.[3] To the contrary, a request to obtain a stay of discovery during the pendency of a motion to dismiss must be supported by "substantial arguments for dismissal."[4] The party seeking a stay of discovery bears the burden of showing good cause.[5]

Defendants cannot meet their burden of presenting substantial arguments. This case, as *Actavis* dictates, is governed by the rule of reason. It is undisputed that there is an agreement between Defendants that calls for Boehringer to pay Barr, and that as a result of the agreement, market entry for generic versions of Aggrenox has been delayed for several years. Importantly, Defendants' justification for Boehringer's payment to Barr/Teva is the same justification as was

---

[3] *E.g., Morien v. Munich Reinsurance America, Inc.,* 270, F.R.D. 65, 66 (D. Conn. 2010) ("The pendency of a dispositive motion is not, in itself, an automatic ground for a stay."); *Briscoe v. City of New Haven,* No. 09-cv-01642, 2009 U.S. Dist. LEXIS 119948, at *6-7 (D. Conn. Dec. 23, 2009) ("Discovery is not normally stayed during the pendency of a motion to dismiss, absent a showing of good cause.").

[4] *Hong Leong Finance Limited v. Pinnacle Performance Limited,* 297 F.R.D. 69, 73 (S.D.N.Y. 2013) (quoting *Spencer Trask Software and Info. Servs., LLC v. RPost Intern. Ltd.,* 206 F.R.D. 367, 368 (S.D.N.Y. 2002)).

[5] *Chamberlain v. Farmington Sav. Bank,* 247 F.R.D. 288, 290 (D. Conn. 2007).

alleged in *Actavis*: that the payment was really for promotional services that Barr/Teva provided to Boehringer, and not for a delay in generic competition.[6]  The Supreme Court held that the FTC's lawsuit should not have been dismissed, but should have been allowed to proceed into discovery, and that this defense should be tested.[7]  Accordingly, a request to stay discovery at this stage fails, because a substantial argument for dismissal cannot be made.

Plaintiffs also believe that attempts to separate discovery between "class" discovery and "merits" discovery would be likely to impose burden, delay, and unnecessary motion practice to determine whether requested discovery is class certification-related or not.

Accordingly, full discovery should proceed, with the exchange of initial disclosures, preliminary production of the documents the production of which Defendants have already agreed, and exchange of discovery requests, as follows:

### 1.    Initial Disclosures and Discovery Production

Plaintiffs position is that, by June 20, 2014, the parties should provide initial disclosures as required by Rule 26(a)(1).

### 2.    Preliminary Document Production by Plaintiffs

The parties have engaged in extensive discussions concerning preliminary production of documents, both before and after the transfer of these actions.  At the direction of the Court in eight related Aggrenox cases assigned to United States District Judge Mitchell S. Goldberg in the

---

[6] *Actavis*, 133 S. Ct. at 2229 ("The companies described these payments as compensation for other services the generics promised to perform, but the FTC contends the other services had little value.  According to the FTC the true point of the payments was to compensate the generics for agreeing not to compete against AndroGel until 2015.").

[7] *Id.* at 2236 (possibility that the "payment[s] . . . reflect compensation for other services that the generic has promised to perform" does not "justify dismissing the . . . complaint"; instead, Defendants "may show in the antitrust proceeding that legitimate justifications are present, thereby explaining the presence of the challenged term and showing the lawfulness of that term under the rule of reason").  *See also Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 573 & n.21 (S.D.N.Y. 2007) ("Although counter-defendants may ultimately establish a legitimate business purpose for their mandatory licensing requirement . . . Lime Wire's allegations are sufficient to state an antitrust injury as this stage of the litigation.") (motion to dismiss denied).

Eastern District of Pennsylvania prior to the transfer to this Court by the JPML,[8] counsel for

Plaintiffs and Defendants met and conferred regarding initial case management issues, including

the preliminary production of documents.  As a result of those discussions, certain of the

documents identified herein have already been produced pursuant to an interim confidentiality

letter agreement, dated March 16, 2014, a copy of which is attached hereto as Exhibit1, and the

production of still other documents was agreed to.  Defendants are willing to produce several

categories of documents, but are retreating from their prior agreement to produce certain

subcategories they previously agreed to (and already have collected for production), and

currently refuse to produce other documents that appear to be available to defendants without

undue burden.  Even if the Court decides that unlimited discovery should not proceed prior to a

decision on the motion to dismiss, the Court should still direct that the sought (and largely

agreed) categories of preliminary document production should proceed under the interim

confidentiality agreement.

a.      <strong>Production by Direct Purchaser Plaintiffs</strong>

At Defendants' request and by prior agreement of the parties, direct purchaser plaintiffs

have produced or will produce by June 2, 2014 the following documents:

(1)      Direct purchaser plaintiffs' electronic transaction-level purchase

and chargeback data showing direct purchases of Aggrenox and generic Aggrenox from August

14, 2009 to December 31, 2013.  Data will be provided for each direct purchaser plaintiff

---

[8] *Miami-Luken v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,*13-cv-06543-MSG (E.D. Pa.); *Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,* 2:13-cv-06992-MSG (E.D. Pa.); *Int'l Union of Operating Engineers Local 132 v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,*13-cv-06579-MSG (E.D. Pa.); *Plumbers & Pipefitters Local 178 v. Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,*13-cv-06692-MSG (E.D. Pa.); *United Food and Commercial Workers Local 1776 Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,*13-cv-06734-MSG (E.D. Pa.); *Fraternal Order of Police Miami Lodge 20 Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,*13-cv-06999-MSG (E.D. Pa.); *Man-U Service Contract Trust Fund Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,*13-cv-07068-MSG (E.D. Pa.); *AFSCME District Council 47 Boehringer Ingelheim Pharma GmbH & Co. KG, et al.,*14-cv-00151-MSG (E.D. Pa.).

showing all units purchased, including units from sellers which the direct purchaser plaintiff

asserts has assigned its claim to a direct purchaser plaintiff in this matter.  The produced data will

show net units purchased and net prices paid.

        (2)     Direct purchaser plaintiffs' proof of assignments (for any direct

purchaser plaintiff pursuing an assigned claim).

        (3)     Each contract with any Defendant concerning the purchase of

Aggrenox on which plaintiff relies for its claims.

### b.      Production by End-Payer Plaintiffs

On or before August 1, 2014, the end-payer plaintiffs will produce the following

documents:

        (1)     End payer plaintiffs' electronic transaction-level purchase data, as

kept in the ordinary course of business and reasonably available, showing purchases of Aggrenox

and generic Aggrenox for a period and in a format to be negotiated with Defendants.  End-payer

plaintiffs will only conduct one data pull to eliminate burdens associated with reproducing data

sets later in the litigation.

        (2)     Unredacted copies of any contracts between end-payer plaintiffs

and pharmacy benefit managers, absent any objection filed with the Court by the counter-party to

those contracts, that governed the price paid by the end-payer plaintiffs for all relevant purchases

of Aggrenox and generic Aggrenox.

### 3.      Preliminary Document Production by Defendants

As detailed below, the Defendants have agreed to provide preliminary production of

some categories of documents requested by Plaintiffs, but have declined to produce other

categories, including certain subcategories of documents previously agreed to be produced prior

to the transfer of these actions.  Plaintiffs propose that Defendants produce all requested
documents by June 20, 2014.

       a.    *Patent litigation documents.*  Defendants have agreed to produce all
documents generated in patent litigation concerning Aggrenox between Boehringer (and its
affiliated companies) and Barr/Teva (and its affiliated companies and successors), including all
court pleadings, briefs and exhibits, court hearing transcripts, orders, discovery requests and
responses, expert reports and exhibits (to the extent they exist), and deposition transcripts and
exhibits.  Defendants have begun production of these documents.

       b.    *Challenged reverse-payment agreements.*  Defendants have agreed to
produce the agreements entered into between Boehringer and Barr and/or Teva concerning
Aggrenox cited in Plaintiffs' complaints.  Defendants have declined to produce any amendments
or supplements thereto, or any documents reflecting any payments under such agreements. A
complete production should be required.

       c.    *FTC documents.*  Retreating from their agreement to a full production of
documents and testimony to the FTC prior to answering the complaint, Defendants now agree to
produce only *publicly filed* court pleadings, briefs and exhibits, court hearing transcripts, and
orders concerning any action or investigation undertaken by the FTC concerning Aggrenox or
the Agreements (which Plaintiffs can by virtue of their public filing obviously can obtain
themselves).  Defendants now decline to produce non-public documents, including discovery
requests and responses, such as the documents produced to the FTC, governmental
CIDs/subpoenas and responses, expert reports and exhibits, transcripts of testimony and exhibits,
and settlement agreements with the FTC (if any).

       Defendants' current refusal to produce all documents from the FTC investigation directly

contradicts their previous agreement to produce these materials prior to resolution of any motion

to dismiss, as represented to Judge Goldberg in the pre-transfer proceedings in the Eastern

District of Pennsylvania.  In those actions, Plaintiffs had requested "documents defendants have

produced to or received from the FTC in connection with its investigation of defendants' conduct

with regard to Aggrenox or its generic equivalents[.]"[9]  In response, Boehringer and Barr/Teva,

by their attorneys, represented to Judge Goldberg that the parties had agreed to "a process for

producing certain FTC and patent materials" sought by Plaintiffs, and that "as those materials

become available [] Defendants will produce them simultaneously to the Plaintiffs in all nineteen

pending Aggrenox antitrust cases."[10]  Defendants gave every indication that they were not only

willing and able to produce the FTC documents in advance of any motion to dismiss, but that

they had actually begun the process of collecting and processing the documents, even telling

Plaintiffs the number of pages of FTC-related documents each defendant had collected for

production.  Defendants' current refusal to produce any documents except public court

pleadings, hearing transcripts and orders, is contrary to their prior representations to the

transferor court and contrary to their prior actions to collect these documents.  The record of

Defendants' representations to the transferor Court is clear that production was feasible, would

proceed forthwith, and pending resolution of an issue of redaction, would in fact proceed.[11]

---

[9]  Letter from Plaintiffs' Counsel to Hon. Mitchell S. Goldberg, E.D. Pa., 13-md-02516, Doc. 65, dated Jan. 17, 2014.  Ex. 2.

[10]  Letter from Boehringer to Hon. Mitchell S. Goldberg, E.D. Pa., 13-md-02516, Doc. 67, dated Jan. 24, 2014. Ex. 3.

[11]  In a February 20, 2014 letter, counsel for Plaintiffs wrote to counsel for Defendants, following a February 19, 2014 meet and confer call.  During the call, counsel for Boehringer reported that he had determined the volume of responsive FTC documents and expected to receive and begin processing the documents that week subject to an agreement on redactions.  Counsel for Teva reported that he had already received responsive documents relating to the FTC investigation.  Letter from Plaintiffs' Counsel to Defense Counsel, dated Feb. 20, 2014.  Ex. 4.  On March 6, 2014, Plaintiffs' counsel reported to Judge Goldberg on the parties' progress and sought a conference to discuss defendants' proposal to redact FTC documents prior to producing them.  Letter from Plaintiffs' Counsel to Hon. Mitchell S. Goldberg, E.D. Pa., 13-md-02516, Doc. 81, dated Mar. 6, 2014.  Ex. 5. On March 11, 2014, defense counsel wrote to Judge Goldberg to report that defendants had proposed to plaintiffs "an efficient process for

Defendants should be required to produce all requested FTC-related documents and transcripts of testimony.

        d.     *Boehringer's New Drug Application.*  Boehringer has agreed to produce the New Drug Applications ("NDAs") relating to Aggrenox, any supplements thereto, and all correspondence (including but not limited to memorialized conversations in the formal correspondence file) with the FDA concerning the NDAs.

        e.     *Barr/Teva's Abbreviated New Drug Application.*  Barr/Teva have agreed to produce the Abbreviated New Drug Applications ("ANDAs") relating to generic Aggrenox, any supplements thereto, and all correspondence (including but not limited to memorialized conversations in the formal correspondence file) with the FDA concerning the ANDAs.

        f.     *Sales Data.*  Plaintiffs have requested that Defendants produce electronic transaction-level data concerning sales of Aggrenox and/or generic Aggrenox.  Plaintiffs have already produced their transactional purchase data or will do so shortly.  The standard fields produced in litigation such as this, requested here, are customer name, invoiced sales (including at least invoice number, date of sale, units sold, unit price, total price, billing type, customer bill-to and ship-to addresses, NDC number, and keys to billing types and NDC numbers, including package size), as well as concurrent or subsequent credits and discounts (including chargebacks, prompt payment discounts, returns, etc.) from January 1, 2008 to December 31, 2013. Defendants have declined to produce this data, even though Plaintiffs have done so or will do so promptly.  Defendants should be required to produce this data.

---

redacting highly confidential and trade secret information."  Letter from Counsel for Boehringer to Hon. Mitchell S. Goldberg, No. 13-md-02516, Doc. 91, dated Mar. 11, 2014.  Ex. 6.

### 4.      Limitations on Written and Deposition Discovery

The parties agree that the presumptive number of discovery requests, including requests for production and interrogatories, and depositions will not be sufficient in this case.  Defendants submit that any further discussion of discovery limitations is premature given their position that discovery should be stayed pending their prospective motions to dismiss.  Plaintiffs have provided their specific proposal to Defendants, and submit it below:

a.      *Interrogatories*.  The plaintiffs as a group and the Defendants as a group may serve up to 30 interrogatories on any opposing party.

b.      *Requests for Admissions*.  There should be no limit on the number of requests for admission that any party may serve.

c.      *Requests for Production of Documents*.  There should be no limits on the number of requests for production of documents that any party may serve.

d.      *Party Depositions*.  The Plaintiffs as a group and the Defendants as a group may take a total of 40 fact depositions per side.  Notwithstanding the foregoing, the parties reserve the right to seek leave of the Court to increase the number of fact depositions to be taken.  Counsel for each plaintiff group may question a defense witness, and counsel for each Defendant may question a plaintiff's witness in a single deposition, so long as the deposition does not exceed the seven-hour cap.  The plaintiff groups will coordinate with one another in the selection, scheduling, and taking of depositions.

e.      *Rule 30(b)(6) Depositions of Parties*.  Each Rule 30(b)(6) deposition counts against the per-side deposition cap.  Any Rule 30(b)(6) deposition of a named party noticed by Plaintiffs or Defendants counts as one deposition no matter the number of witnesses designated to testify.  Subject to the per-side deposition cap, the parties are not precluded from seeking the deposition of a Rule 30(b)(6) designee in his or her individual capacity.  A witness

may be deposed both in his or her individual capacity and as a Rule 30(b)(6) designee, which will count as one deposition unless it exceeds the seven-hour cap.

        **f.**    *Third-Party Depositions*.  A third-party deposition will not count toward the per-side deposition cap.  If a party or parties on only one side have noticed the third party's deposition, it or they will be allowed up to five hours of examination (which may be shared with parties on that side as they decide), allowing the parties on the other side up to two hours of examination (which will be shared as those parties decide).  In the event any Plaintiff and any Defendant notice the same deposition, Plaintiffs as a group and Defendants as a group will each be allocated three and one half hours of examination time.  The plaintiff groups will coordinate with one another concerning allocation of time for Plaintiffs' examination.  Notwithstanding the forgoing, the parties reserve their rights to seek additional time to depose any third-party witness.

        **g.**    *Expert Discovery*.  Expert testimony likely will be needed on issues relating to the Plaintiffs' motions for class certification and the parties' motions for summary judgment and at trial.  An expert deposition will not count against the per-side deposition cap for each party.

    For any depositions, if one side does not use its full allotted time for all examinations of the witness (including direct and re-direct), the other side may use any remaining time for their examination.

### 5.    Non-Discoverable Information

    The parties agree that drafts of expert reports or declarations, notes, written communications, and other types of preliminary work created or generated by or for experts or their staff (unless such notes are generated while testifying) are exempt from discovery. Communications to, from, and/or among experts, including their staff, and (a) outside counsel or in-house counsel for a party or (b) other experts or consultants and their respective staff, shall not

be discoverable except to the extent the expert specifically relied upon any such communications as a basis for any of his or her ultimate opinions or reports.  Notes taken by any expert or his or her staff reflecting communications with any party or the employee of any party are discoverable only if relied upon as a basis for the expert's opinions or reports.  Suggestions from counsel regarding revisions to the form of the expert's report or additional support for the expert's ultimate opinions are examples of communications that are protected from discovery.  (The parties propose to include this provision in the Protective Order.)

### 6.      Protective Order

The parties agree to meet and confer regarding a proposed protective order governing the confidentiality of documents in this litigation for the Court's review and submit a joint proposed protective order covering all documents, data and other information produced in this case by any party or non-party on or before July 25, 2014.  The proposed protective order will also consider claims of privilege and privilege logs, and a proposed process for challenging a party's claims of privilege.  To the extent the parties are unable to reach an agreement on specific provisions in the joint proposed protective order, the joint submission should identify those disagreements and include a brief statement of each party's position.  The parties agree that the lack of a protective order shall not prohibit or delay the production of materials in this litigation and that such materials shall be produced pursuant to the interim confidentiality agreement (Ex. 1).

### D.      Timing of Document Production

The parties agree that responses to the parties' requests for production of documents shall be served within the time prescribed by Fed. R. Civ. P. 34.  Plaintiffs' position is that documents responsive to the parties' requests for production of documents shall be served within 60 days of service of the request, and that any party unable to produce responsive documents within 60 days may move for relief from this provision for good cause.  Plaintiffs' position is that Direct

Purchaser Plaintiffs' preliminary document production (§ II.C.2.a above) should be served by June 2, 2014; Defendants' preliminary document production (§ II.C.3 above) should be served by June 20, 2014; and End-Payer Plaintiffs' preliminary document production (§ II.C.2.b above) should be served by August 1, 2014.  Defendants argue that documents should be produced on a rolling basis, without any deadlines.

### E.   Electronic Discovery Issues

The parties agree that they expect the majority of discovery in this action to be electronic or computer-based.  The parties will meet and confer regarding the issues surrounding ESI and the form of document production and develop for the Court's review a joint protocol for the form and production of such information on or before July 25, 2014.  To the extent the parties are unable to reach an agreement on specific provisions in the ESI stipulation, the joint submission should identify those disagreements and include a brief statement of each party's position.

### F.   Foreign Discovery Issues

Although several of the Defendants are located overseas, the parties do not have sufficient information at this time to determine whether foreign discovery will be required, and if so where.  If foreign discovery is required, the parties will cooperate in good faith to conduct such discovery consistent with principles of economy, data protection, and fairness, and subject to an appropriate protective order and, if necessary, to approach the Court with any unresolved disputes.

### G.   Discovery Motion Practice

Consistent with the practices and procedures of the Court, and the rules of the District of Connecticut, the parties agree that no discovery motion shall be filed "unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a

mutually satisfactory resolution." L.R. 37(a).  The parties further agree as to the appropriateness

and applicability of L.R. 37 generally to discovery disputes in this action.  Defendants request

that to the extent foreign discovery is required, certain documents may not be able to be

produced until a protective order is issued that addresses the data protection concerns of the

originating country.  Plaintiffs are amenable to such a process, so long as any foreign defendant,

or defendant with a corporate relationship with any foreign defendant, believing that such

confidentiality issues may exist here, expeditiously identify those concerns and propose a

protective order (or provisions for inclusion in a protective order) that will adequately address

any such confidentiality concerns, so as to prevent any delay in the production of documents or

information based on confidentiality concerns.

### H.      Dispositive Motion Procedures and Schedule

Plaintiffs set forth below a proposed schedule for the case as a whole, including

dispositive motions, which schedule contemplates discovery commencing immediately.

Defendants agree to the motion to dismiss schedule, but otherwise say discussion of a case

schedule is premature.  Consistent with the practices and procedures of the Court, and the rules

of the District of Connecticut, Plaintiffs support the appropriateness and applicability of L.R. 56

generally to discovery disputes in this action.  Defendants decline to consider a specific schedule

for the litigation at this time.

### I.      Mechanisms for Promoting Settlement

The parties have had no settlement discussions and do not believe that there is a

meaningful prospect for settlement at this time.  Plaintiffs agree to meet and confer as discovery

proceeds and the case develops and report to the Court as to the appropriateness of settlement

discussions and potential mechanisms to facilitate such discussions.

**J.      Related Actions Pending in State Court**

None.

**K.      Other Issues that May Affect the Efficient Progress and Resolution of the Actions**

The parties agree to the following parameters regarding briefing the motion to dismiss in this action:  Briefs in support of and opposition to motions to dismiss shall not exceed 50 pages.  Replies in support of motion to dismiss shall not exceed 25 pages.

Plaintiffs propose the following parameters for additional briefing.  Defendants decline to propose specifics at this time.

*Motion for Provisional (Injunctive or Declaratory) Relief.*  Briefs in support of and opposition to any motions for preliminary injunctions shall not exceed 40 pages.  Replies in support of any motions for provisional relief shall not exceed 15 pages.

*Class Certification.*  Briefs in support of class certification shall not exceed 30 pages.  Briefs in opposition to class certification shall not exceed 45 pages.  Replies in support of class certification shall not exceed 45 pages.

*Motions for Summary Judgment.*  Briefs in support of and in opposition to dispositive motions, including motions for summary judgment, shall not exceed 45 pages, not including the required Local Rule 56(a)(1) Statement or Local Rule 56(a)(2) Statement.  Motions for summary judgment may not be filed until the date called for in the schedule ordered by the Court.

*Summary Judgment Reply Briefs.*  Any party moving for summary judgment shall be permitted a reply brief not to exceed 25 pages.

*Daubert Motions.*  Any brief supporting or opposing a *Daubert* motion shall not exceed 15 pages.  Any reply brief in support of a Daubert motion shall not exceed 10 pages.

*Other Motions.*  All motions (other than summary judgment, *Daubert* and class certification motions, which are addressed above), including discovery motions, shall be accompanied by a brief not to exceed 25 pages without prior leave of court.  Opposition briefs shall be filed within 21 days of the motion being opposed and not exceed 25 pages without prior leave of court, except that to the extent any opposition brief submitted is in opposition to more than one opening brief, joint opposition briefs shall not exceed 20 pages for each such motion (*i.e.*, if Plaintiffs are jointly opposing two motions and two briefs in one brief, their opposition brief shall not exceed 40 pages).  Reply briefs may be filed within 14 days of the opposition brief and may not exceed 10 pages.

### III.    PROPOSED CASE SCHEDULE

The Plaintiffs state that it is reasonable to complete discovery and other pretrial proceedings and prepare for trial within a period of 24 months from the date of the initial pretrial conference.  Therefore, trial of these actions should be completed before June 2016.  Regardless of the date of the trial, it is critical to the "just, speedy, and inexpensive determination of [this] action," that a trial date be set.  Plaintiffs have ample experience that shows that if both sides are facing a trial date, this matter will proceed more efficiently.

Plaintiffs estimate the litigation will require twelve months to complete fact discovery, and then six to nine months to complete the process of expert discovery, and briefing and arguing summary judgment.  With these parameters in mind and subject to further order and definition by the Court, Plaintiffs propose the following schedule for this litigation.

Defendants decline to consider a specific schedule for the litigation at this time.

| DATE | EVENT |
| --- | --- |
| May 22, 2014 | Initial Pretrial Conference.<br><br>Discovery commences. |
| June 2, 2014 | Direct purchaser plaintiffs serve automatic production (to the extent not already produced). |
| June 20, 2014 | Parties serve Rule 26(a) Disclosures.<br><br>Defendants serve preliminary production (to the extent not already produced). |
| June 30, 2014 | Direct purchaser plaintiffs file consolidated amended complaint.<br><br>19 of 20 end-payer plaintiffs file consolidated amended complaint.<br><br>End-payer plaintiff Humana Inc. will join in the amended complaint pending clarification from the Court and counsel. |
| July 25, 2014 | Parties file joint or contested Protective Order and ESI Protocol. |
| August 1, 2014 | End-payer plaintiffs serve preliminary production. |
| August 14, 2014 | Defendants serve Rule 12 motion(s). |
| September 29, 2014 | Plaintiffs respond to Rule 12 motion(s). |
| October 20, 2014 | Defendants serve replies to Rule 12 motion(s). |
| May 29, 2015 | Fact Discovery closes.  All discovery requests must be served to be answerable by this date. |
| June 30, 2015 | The party with the burden of proof on an issue serves its expert report on that issue and provides opposing parties with potential dates (within the following three weeks) for depositions of those experts.<br><br>Plaintiffs file motions for class certification, related expert reports, and provide Defendants with potential dates (within the following three weeks) |

| | |
|---|---|
| | for depositions of those experts. |
| August 31, 2015 | Parties serve responsive expert reports and provides opposing parties with potential dates (within the following three weeks) for depositions of those experts.<br><br>Defendants file oppositions to class certification, related expert reports, and provide Plaintiffs with potential dates (within the following three weeks) for depositions of those experts. |
| September 30, 2016 | Parties serve reply expert reports and potential dates (within the following three weeks) for depositions of those experts.<br><br>Plaintiffs file replies in further support of motion for class certification and related rebuttal expert reports. |
| October 30, 2015 | All expert depositions must be completed by this date. |
| November 30, 2015 | Parties file motion(s) for summary judgment.  No party may file a motion for summary judgment prior to this date. |
| January 15, 2016 | Parties file opposition(s) to motion(s) for summary judgment. |
| February 15, 2016 | Parties file replies in further support of motion(s) for summary judgment. |
| March 4, 2016 | Parties file motions *in limine* and *Daubert* motions. |
| April 4, 2016 | Parties file oppositions to motions *in limine* and *Daubert* motions. |
| May 2016 | Court holds pretrial conference. |
| June 2016 | Trial. |

Dated: May 21, 2014

Respectfully submitted,

\_\_/gcp/_____

Bruce E. Gerstein
Joseph Opper
Ephraim R. Gerstein
Garwin Gerstein & Fisher, LLP
1501 Broadway, Suite 1416
New York, NY 10036
Tel:  (212) 398-0055
Email:  bgerstein@garwingerstein.com
          jopper@garwingerstein.com
          egerstein@garwingerstein.com

Gerald C. Pia, Jr. (ct 21296)
Brian C. Roche (ct17975)
Roche Pia LLC
Two Corporate Drive, Suite 248
Shelton, CT 06484
Tel: (203) 944-0235
Email: gpia@rochepia.com
          broche@rochepia.com

David F. Sorensen
Andrew C. Curley
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (800) 424-6690
Email: dsorensen@bm.net
          acurley@bm.net

Thomas M. Sobol
David S. Nalven
Ed Notargiacomo
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Email: tom@hbsslaw.com
          davidn@hbsslaw.com
          ed@hbsslaw.com

Peter Kohn
Joseph Lukens
Faruqi & Faruqi, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel: (215) 277-5770
Email:  pkohn@faruqilaw.com
          jlukens@faruqilaw.com

Stuart E. Des Roches
Odom & Des Roches, LLP
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Email: stuart@odrlaw.com

David C. Raphael, Jr.
Smith Segura & Raphael, LLP
3600 Jackson Street,
Suite 111 Alexandria, LA 70303
Tel: (318) 445-4480
Email: draphael@ssrllp.com

Barry S. Taus
Archana Tamoshunas
Taus, Cebulash & Landau, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
Email: btaus@tcllaw.com
          atamoshunas@tcllaw.com

John Radice
Radice Law Firm, P.C.
34 Sunset Boulevard
Long Beach, NJ 08008
Tel: (646) 386-7688
Email: jradice@radicelawfirm.com

Brent W. Landau
Hausfeld LLP
1604 Locust Street
Philadelphia, PA 19103
Tel.: (215) 985-3273
E-mail: blandau@hausfeldllp.com

**/s/ David R. Schaefer**
David R. Schaefer (ct04334)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT 06511
Tel. (203) 772-2600
E-mail: dschaefer@bswlaw.com

Linda P. Nussbaum
Peter A. Barile III (ct24434)
Bradley Demuth
Adam Steinfeld
Grant & Eisenhofer, P.A.
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Email: lnussbaum@gelaw.com
         pbarile@gelaw.com
         bdemuth@gelaw.com
         asteinfeld@gelaw.com

*Attorneys for Direct Purchaser Plaintiffs*

**/s/ William H. Narwold**
William H. Narwold (ct 00133)
Mathew P. Jasinski (ct 27520)
Motley Rice LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Tel: (860) 882-1676
Fax: (860) 882-1682
E-mail:  bnarwold@motleyrice.com

**/s/ Peter St. Phillip**
Peter St. Phillip (ct29379)
Barbara J. Hart
Gerald Lawrence
Richard Cohen
Noelle Ruggiero
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2301
Telephone: (914) 997-0500
Email: pstphillip@lowey.com
         bhart@lowey.com
         glawrence@lowey.com
         rcohen@lowey.com
         nruggeiero@lowey.com

Steve D. Shadowen
Anne K. Fornecker
Hilliard & Shadowen LLC
39 West Main Street
Mechanicsburg, PA  17055

Mark D. Fischer
Robert Griffith
Rawlings & Associates, PLLC
One Eden Parkway
LaGrange, KY  40031-1800

Tel: (855) 344-3928
E-mail:  steve@hilliardshadowenlaw.com

Renae D. Steiner
David R. Woodward
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel: (612) 338-4605
E-mail:  rsteiner@heinsmills.com
            dwoodward@heinsmills.com

J. Douglas Richards
Cohen Milstein Sellers & Toll, PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
E-mail:  drichards@cohenmilstein.com

David W. Mitchell
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7423
E-mail:  davidm@rgrdlaw.com

Telephone: (502) 587-1279
Email: mdf@rawlingsandassociates.com
      rg1@rawlingsandassociates.com

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
E-mail:  mmiller@MillerLawLLC.com

Daniel C. Girard
Girard Gibbs LLP
601 California Street
San Francisco, CA 94108
Tel: (415) 981-4800
E-mail:  dcg@girardgibbs.com

Donald A. Migliori
Michael M. Buchman
John A. Ioannou
Alex R. Straus
Motley Rice LLC
600 Third Avenue, Suite 2101
New York, NY 10016
Tel: (212) 577-0040
Fax: (212) 577-0054
E-mail:  dmigliori@motleyrice.com
        mbuchman@motleyrice.com

*Attorneys for End-Payer Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 21st, 2014, I electronically filed the foregoing Notice of Appearance with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_/gcp/_____
Gerald C. Pia, Jr. (ct 21296)