**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE AGGRENOX<br>ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Docket No. 3:14-md-02516-SRU<br><br>Hon. Stefan R. Underhill |

## <u>DEFENDANTS' INITIAL PRETRIAL CONFERENCE REPORT</u>

This firm represents Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BI") in connection with the above-referenced matter. Pursuant to the Practice and Procedure Order dated April 29, 2014 (ECF No. 37), Defendants BI, Teva Pharmaceuticals USA, Inc. ("Teva"), Barr Pharmaceuticals Inc. (n/k/a Barr Pharmaceuticals, LLC), Barr Laboratories Inc. ("Barr"), and Duramed Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.) ("Duramed") (collectively, "Defendants") submit this report addressing the issues the Court advised it wished to address at the hearing scheduled for May 22, 2014.[1] The parties have met and conferred several times on the issues and have been able to agree on many points and expect that agreement will be possible on others at an appropriate time. However, as reflected below, there are certain areas of disagreement that we look forward to discussing with the Court at the hearing.

---

[1] Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharma GmbH & Co. KG, two German entities, have been named as defendants. We understand that the two German entities wish to stand on their rights to formal service and have so advised plaintiffs. Teva Pharmaceutical Industries Ltd. (Teva Ltd.) is a corporation headquartered in Israel that is not subject to personal jurisdiction in the U.S. Court in these matters. Teva Ltd. does not waive and expressly reserves the right to move to dismiss the actions that purport to name it as a defendant on the ground that it is not subject to personal jurisdiction.

A.    **Claims in the Litigation**

Plaintiffs' Initial Pretrial Conference Report ("Plaintiffs' Report")[2] (§ I) purports to describe their claims and characterize the legal standard for evaluating challenges to patent settlements under the Supreme Court's recent decision in *FTC v. Actavis*, 133 S. Ct. 2223 (2013). Defendants have no comment on plaintiffs' summary of their own complaints but do take issue with their characterization of the matter and of the legal standard.  We briefly respond below to some of plaintiffs' assertions and expect to address others more fully in the briefing on the motions to dismiss that defendants intend to file.  Defendants also note that plaintiffs are expected to file consolidated amended complaints on June 30.  The precise contours of the claims therefore may change when the new complaints are filed.

The current complaints focus on patent litigation between BI and Barr (which was subsequently acquired by Teva) relating to BI's Aggrenox®, a prescription medication indicated to reduce the risk of stroke in patients who have had transient ischemia of the brain or completed ischemic stroke due to thrombosis.  Plaintiffs claim that the parties' settlement of that litigation, in August 2008, should be declared an unlawful "reverse payment" arrangement, one which delayed entry of generic copies of Aggrenox®.

Defendants' position is that the settlement was and is lawful and cannot be viewed as containing a reverse payment.  Under *Actavis*, the settlement was in fact procompetitive.  Among other things, as reflected in the complaints themselves, the settlement:

- Gave Barr the opportunity to enter with its generic 18 months before expiry of the BI patent at issue.

---

[2] Plaintiffs' Initial Pretrial Conference Report, *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516, ECF No. 66 (D. Conn. May 21, 2014).

- Through a supply agreement, guaranteed Barr the ability to enter on the agreed early date even if Barr had not received requisite FDA approvals or was otherwise unable to make generic Aggrenox® on its own.

- Through a separate co-promotion agreement, helped to increase patient access to Aggrenox® by having the sales force of Barr's affiliate Duramed promote Aggrenox® to obstetricians and gynecologists.

The complaints seek to portray as a reverse payment the value realized by Barr/Duramed under the co-promotion agreement. But the Supreme Court in *Actavis* did not hold that *any* consideration flowing to the generic defendant in a pharmaceutical patent settlement qualifies as a reverse payment; if that were the case then all settlements would contain reverse payments.[3] Rather, the Court was concerned with situations in which the alleged infringing generic firm "walks away with money simply so it will stay away from the patentee's market." *Actavis*, 133 S. Ct. at 2233; *see also id.* at 2231 (concerned with generic defendant being paid "many millions of dollars to stay out of [the brand company's] market."). On the other hand, where the consideration flowing to the alleged generic infringer "reflects traditional settlement considerations, such as . . . *fair value for services*, there is not the same concern . . ." *Id.* at 2236 (emphasis added). The co-promotion agreement was for "fair value" within the meaning of *Actavis*. As such, it cannot even qualify as a reverse payment to begin with. Moreover, the co-promotion agreement was procompetitive in that its very purpose, inter alia, was to increase demand for Aggrenox® by educating obstetricians and gynecologists on the medical virtues of the product.

---

[3] *See, e.g., In re Lamictal Direct Purchaser Antitrust Litig.,* No. 12-995, 2014 WL 282755, at *8 (D.N.J. Jan. 14, 2014) ("Without doubt [the generic] received consideration in the settlement. Otherwise, there would be no incentive to settle. A law student learns in the first semester that consideration is an essential element of any enforceable contract. In this sense, there is 'payment' in every settlement."); *Asahi Glass Co. v. Pentech Pharm., Inc.,* 289 F. Supp. 2d 986, 994 (N.D. Ill. 2003) ("[A]ny settlement agreement can be characterized as involving 'compensation' to the defendant, who would not settle unless he had something to show for the settlement. If any settlement agreement is thus to be classified as involving a forbidden 'reverse payment,' we shall have no more patent settlements.").

*Actavis* also requires that even where (unlike here) a reverse payment is shown, it must also be (a) large (in relation to litigation costs and/or the value of the patent) (*id.* at 2236-37 ("the likelihood of a reverse payment bringing about anticompetitive effects depends upon its size [and] scale in relation to the payor's anticipated future litigation costs")), (b) unjustified (*id.* at 2235-36 (anticompetitive consequences only "sometimes" will prove unjustified)), and (c) an indication that the patent-holder viewed the patent to be weak (*id.* at 2236 ("An unexplained large reverse payment itself would normally suggest that the patentee has serious doubts about the patent's survival.")). None of these elements even remotely applies to the BI-Barr co-promotion agreement.[4]

Defendants intend to move to dismiss the complaints. The motions are strong and, if granted, would dispose of the entire litigation. Grounds for dismissal include at least the following (any one of which would dictate dismissal of the entire case):

- a failure to plead the existence of a cognizable reverse payment, let alone any of the other requirements of *Actavis* noted above.

- a failure to plead that the settlement served to preserve or create monopoly power in any plausible relevant market (plaintiffs assert that Aggrenox® and its generic equivalents constitute a relevant product market unto itself).[5]

---

[4] Plaintiffs incorrectly characterize the requirements of *Actavis* and how a rule of reason analysis is required to proceed thereunder. Among other things, plaintiffs ignore that (1) no rule of reason analysis is required at all where, as here, plaintiffs cannot articulate a large and unjustified reverse payment, *Actavis,* 133 S. Ct. at 2237*; Lamictal*, 2014 WL 282755, at *8; and (2) *Actavis* in no way limited the "justifications" that could be advanced even where a reverse payment is established, 133 S. Ct. at 2237 (allowing "any other convincing justification" and noting that plaintiffs "must prove [their] case as in other rule-of-reason cases."). Defendants will address the other problems with plaintiffs' characterization of *Actavis* in briefing on the upcoming motions to dismiss.

[5] Courts dismiss complaints relying on facially implausible single-brand market definitions. *See, e.g., Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 576-78 (S.D.N.Y. 2011) (dismissing complaint because plaintiff's alleged product market was implausible); *Asahi*, 289 F. Supp. 2d at 996 (granting defendant's motion to dismiss as to plaintiff's antitrust claims and explaining that it is not enough for plaintiff or the court to assume that the drug-at-issue does not compete with other medications); *Shionogi Pharma., Inc. v. Mylan, Inc.*, No. 10-1077, 2011 WL 2174499, at *6 (D. Del. May 26, 2011) (dismissing claim based on single drug market of "orally disintegrating prednisone tablets" and

- the claims are time barred (the statute of limitations for private actions under the Sherman Act, and most of the state court claims, is four years, but the challenged settlement was entered and publicly announced in August 2008, more than four years before the filing of the initial complaint(s) in this matter).[6]

As discussed further below, Defendants believe that in order to avoid unnecessary expenditure of resources, the Court should order that general discovery be stayed pending resolution of the motions to dismiss under the principles articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Defendants further propose, however, that certain specified discovery and other activities proceed while the motions to dismiss are under consideration. The approach Defendants propose is consistent with that followed recently by many courts in multidistrict litigation challenging patent settlements.

**B.** **Topics to be Addressed at Initial Pre-Trial Conference**

    **a.** **Organization of Counsel into Cooperating Groups**

    **b.** **Appointment of Lead and Liaison Counsel or Counsel Committees**

Alison Hanstead of White & Case LLP will be liaison counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc. We will advise regarding liaison counsel for the other Boehringer Defendants once they have been served and have entered appearances. Robert Carroll of Goodwin Procter LLP will be liaison counsel for the various Teva and Barr Defendants. Defendants expect to coordinate and cooperate.

Defendants take no position on the appointment of lead and liaison counsel for plaintiffs.[7]

---

rejecting "wholly conclusory allegations" that failed to identify facts showing "reasonably interchangeable commodities from the perspective of the consumer").

[6] There are also multiple additional grounds or motions to dismiss that may dismiss all claims against specific defendants or substantially narrow the categories of claims at issue.

[7] On May 20, 2014, plaintiff Humana Inc. ("Humana") circulated a draft Notice of Intention to Discuss Pretrial Coordination under 28 U.S.C. § 1407(a) at the May 22, 2014 Pretrial Conference and subsequently filed it (ECF No. 71). Given the timing, Defendants are still reviewing and considering Humana's position. Defendants expect to respond to Humana's position at the May 22 conference, but reserve their rights to submit a written response on this issue.

### c.      The Scope and Timing of Discovery; including Expert Witness Discovery

As shown above, Defendants expect to advance strong arguments for dismissal that we believe will obviate the need for any discovery at all (if the Court dismisses the complaints altogether) or, at a minimum, will narrow the scope of necessary discovery.   Defendants therefore believe that, under principles articulated by the Supreme Court in *Twombly*, and other authority, discovery should be stayed pending resolution of the motions to dismiss, with the exception of certain categories of document discovery specified below.

### i.      Defendants Believe a Stay of General Discovery Is Appropriate Pending Resolution of the Motions to Dismiss

In *Twombly*, the Supreme Court made clear, with specific reference to treble damage antitrust cases such as this one, that expensive and burdensome discovery should be avoided until the sufficiency of a plaintiff's complaint can be determined:

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "this basic deficiency should . . . be exposed *at the point of minimum expenditure of time and money by the parties and the court*."

*Twombly*, 550 U.S. at 558 (emphasis supplied).   The *Twombly* Court also quoted the following with approval:   "[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint."   *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984); *see also, e.g., Asahi,* 289 F.Supp.2d at 995 (noting that a "patent antitrust case" will have an "inevitably costly and protracted discovery phase"); *Nexstar Broad., Inc. v. Granite Broad. Corp.,* No. 1:11-CV-249, 2011 WL 4345432, at *3-4 (N.D. Ind. Sept. 15, 2011) (burden of discovery greater where multiple state and federal antitrust claims are advanced).   This antitrust case raises just such

concerns.[8]  The scope and cost of discovery that plaintiffs inevitably will seek in a case of this type will be enormous and will require the Court's involvement to resolve disputes that are sure to arise.

    ii.      **Defendants Propose Targeted Document Productions while the Motions to Dismiss Are Pending**

Under Defendants' proposal, the parties would avoid the kinds of burdensome discovery that the Supreme Court warned should not be imposed until the complaint has been tested. Although Defendants expect to advance strong arguments for dismissal, in order to facilitate the progress of the case in the event the Court does not dismiss the claims, Defendants propose certain specific categories of documents be exchanged and activities be undertaken during the stay period that will position the parties to move forward promptly and efficiently with document and other discovery if it becomes necessary.  First, if other activities are stayed, Defendants have agreed to produce certain targeted categories of documents, each comprising a substantial volume of material:

- The BI-Barr settlement agreement and related Aggrenox® agreements referenced in the complaints;

- BI's New Drug Application ("NDA") for Aggrenox® and correspondence with the FDA related to the  approval process for Aggrenox®;

- Barr's Abbreviated New Drug Application ("ANDA") for a proposed generic version of Aggrenox® and correspondence with the FDA related to the approval process for Barr's ANDA;

---

[8] Aside from the agreements referenced in the complaints (which Defendants are prepared to provide promptly), Plaintiffs should not be permitted discovery before they file their consolidated amended complaints on June 30; discovery before then would be inappropriate pre-complaint discovery.  *See, e.g., In re White*, No. 2:10mc80, 2010 WL 1780234, at *1 (S.D. Miss. May 3, 2010) (pre-complaint discovery is not to be used as "a vehicle to uncover facts which may support a future action"); *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2008 WL 1995098, at *3 (E.D. La. May 6, 2008) (holding that pre-complaint discovery "may not be used as 'a method of discovery to determine whether a cause of action exists'"); *In re Solorio*, 192 F.R.D. 709, 710 (D. Utah 2000) (plaintiffs should not be permitted pre-complaint discovery "'to ascertain facts for the use in framing a complaint'").

- Documents related to the Aggrenox® patent litigation between BI and Barr; specifically, the pleadings, documents produced by both sides in the litigation, and written discovery requests and responses;[9] and

- Public court pleadings, court hearing transcripts, and orders in connection with an investigation that the Federal Trade Commission opened with respect to the BI-Barr Aggrenox® settlement (the sole focus of these cases), as well as the settlement of patent litigation between BI and Barr on an unrelated product, Mirapex®.

Defendants propose that plaintiffs produce the following documents while the general stay is in effect:

- For direct purchaser plaintiffs:

  o Contracts with any Defendant concerning the purchase of Aggrenox® on which plaintiff relies for its claims.

  o Any assignments pursuant to which plaintiff purports to bring suit.

- For indirect purchasers plaintiffs:

  o Documents sufficient to show each state in which the plaintiff purchased and/or provided reimbursement for Aggrenox®.

  o Documents sufficient to show the coverage plaintiff provided to its plan members for Aggrenox® (including co-pays, deductibles, exclusions, and caps on coverage).

The above-noted material contains important baseline information for the issues in the case, and will comprise a substantial quantity, for Defendants alone, on the order of 200,000 pages in aggregate.

Second, Defendants propose that while the motions are pending, the parties can:

- Negotiate a suitable ESI protocol – a process that will take time, given the number, size, and complexity of the parties' systems on both sides of the

---

[9] Defendants have already produced many documents in this category:  BI has produced the pleadings and has begun to produce its document production from the patent litigation; Barr has completed production of its document production from the patent litigation.  Defendants would be agreeable to completing production of the document productions from the patent litigation and also producing the discovery requests and responses.

litigation.  This should minimize disputes between the parties regarding the process to produce documents and focus the parties on the merits of their dispute.

- Negotiate an appropriate protective order.   The parties agree that they will seek to supplement this Court's standing protective order.[10]  For example, while it is not apparent that foreign discovery will be required, nevertheless the parties will need to address the data protection concerns of the originating country in the protective order.  The parties also agree that certain expert materials, including drafts and communications with counsel, should be protected from disclosure.

- Address service issues related to the non-U.S. entities.

These are necessary issues that, in addition to the targeted document productions and review, can

be addressed while the motions to dismiss are briefed and considered.

### iii.    Defendants' Proposal Is Consistent with Approaches Taken to Discovery Recently in Other Antitrust Actions

Defendants' proposal for limited discovery is consistent with that taken by courts recently

in managing the early stages of multi-district class actions of this kind.  For example:

- *In re Lamictal Direct Purchaser Antitrust Litig.,* No. 2:12-cv-00995 (WHW/MCA), ECF No. 104 (D.N.J. Nov. 16, 2012).  The court ordered a full stay pending resolution of the motion to dismiss.  (A copy of the order is attached as Exhibit A.)

- *In re Effexor XR Antitrust Litig.,* No. 3:11-cv-05661 (JAP/LHG), Letter Order, at 1, ECF No. 57 (D.N.J. Feb. 8, 2012).  The court stayed discovery prior to motion to dismiss briefing.  *See also In re Effexor*, No. 3:11-cv-05479, ECF No. 191, at 3 (D. N.J. Oct. 23, 2011) ("[w]hile the Court appreciates Plaintiffs' desire for prompt resolution of their claims, Plaintiffs have not pointed to any alleged prejudice that the Court concludes outweighs the interests of judicial efficiency here").   The court in *Effexor* later allowed production of limited categories of information – relevant settlement agreements, the NDA, ANDA, and certain patent litigation materials – but reiterated recently that all other discovery remained stayed pending resolution of motions to dismiss.  *See In re Effexor*, No. 3:11-cv-05479 (PGS/LHG), ECF No. 268 (D.N.J. Sept. 18, 2013).  (Copies of the orders are attached as Exhibits B, C, and D.)

- *In re Niaspan Antitrust Litig.*, No. 2:13-md-02460 (JD), ECF No. 54 (E.D. Pa. Jan. 31, 2014); *In re Niaspan*, No. 2:13-md-02460 (JD), ECF No. 61 (E.D. Pa.

---

[10] The parties entered an interim confidentiality agreement on March 16, 2014.   A copy of the executed agreement is attached as Exhibit I.  Plaintiffs attached a non-final version of the agreement as Exhibit 1 to their Report.

Feb. 19, 2014).  The court stayed all discovery, except for the preliminary production of relevant settlement agreements, certain patent litigation materials, and transaction level data for sales of the drug at issue.  (Copies of the orders are attached as Exhibits E and F.)

- *In re Lipitor Antitrust Litig.,* MDL No. 2332, 3:12-cv-02389 (PGS/DEA), ECF No. 197 (D. N.J. Oct. 19, 2012).  The court ordered limited categories of documents be produced – the settlement agreement, NDA, ANDA, and certain patent litigation materials – pending resolution of the motions to dismiss.  (A copy of the order is attached as Exhibit G.)

- *In re Loestrin 24 FE Antitrust Litig.*, MDL No. 2472, 1:13-cv-02472 (S/PAS), ECF No. 10 (D.R.I. Nov. 8, 2013).  The court stayed general discovery but ordered the parties to meet and confer on production of documents relating to the patent litigation and settlements, as well as identification of 30(b)(6) deposition topics that might be pursued after the motions to dismiss were decided.  (A copy of the order is attached as Exhibit H.)

Defendants propose that the Court adopt the same approach here.  If the Court would like to receive additional briefing on these issues, Defendants stand willing to provide it.

### iv.       Plaintiffs' Proposed Categories of "Automatic" Discovery Are Unduly Burdensome

The categories of upfront discovery set forth in Section B.c.ii have been agreed upon with plaintiffs and fall within plaintiffs' proposal regarding "automatic" discovery categories. Plaintiffs propose that Defendants also produce upfront two additional categories of documents: (1) materials related to the investigation that the Federal Trade Commission opened, and (2) transaction-level data concerning sales of Aggrenox® or generic versions thereof.  Defendants believe that production of these categories would be inappropriate given the burdens involved.

The first disputed category of documents consists of "discovery requests and responses, Civil Investigative Demand(s) and responses, expert reports and exhibits, deposition transcripts and exhibits" in connection with the investigation that the Federal Trade Commission opened with respect to the Aggrenox® and Mirapex® patent settlements.  Such discovery is both premature and unduly burdensome since, among other things, plaintiffs have not even served

their amended complaints and, in any event, the parties should not be required to commence wholesale discovery until the new complaint(s) are tested.  *See Twombly*, 550 U.S. at 558. Sorting through the FTC production before the complaints are tested would impose the very types of burdens that *Twombly* says courts should avoid.  The FTC productions are extremely voluminous, as we understand it, consisting of more than 400,000 pages of material; given the different scope of materials sought by the FTC, a substantial portion of the requested documents will likely have no bearing on this litigation; and there are heightened confidentiality concerns, including third-party confidentiality issues.  For example, the FTC requested documents related to the Defendants' agreements with other drug companies and Defendants' marketing plans and forecasts related to other products.  Not only are these documents not relevant to plaintiffs' claims as Defendants currently understand them and, therefore, outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1), but the production of some of these materials would require third-party notice and/or consent and may also additional steps to comply with German data protection regulations.  Moreover, these materials include commercially sensitive information which is outside the scope of the present litigation.  Defendants – whose outside counsel do not represent Defendants in the FTC investigation – would have to review such material and undertake these steps.  It is not an efficient use of party and court resources to engage in such tasks before the motions have been decided.

In their Report, the plaintiffs have taken the position that Defendants had committed before a transferor court to produce all of the FTC material while the motions to dismiss were pending.  With respect, that is not the case.  Defendants committed to discussing a process for resolving the various issues of relevance, confidentiality and the like, such that the material could be produced at an "appropriate time" – namely, once the motions to dismiss were decided.  *See*

*In re Aggrenox Antitrust Litig.,* MDL No. 2516, No. 13-cv-06543, Letter to Hon. Mitchell S. Goldberg from Jack E. Pace III, at 1 (E.D. Pa. Jan. 24, 2014), ECF No. 67 (attached as Exhibit 3 to the Plaintiffs' Report).  Defendants explained that a number of logistical issues would have to be resolved prior to any production, such as addressing confidentiality concerns.  *Id.* at 2.

The second disputed category of documents consists of "electronic transaction-level data concerning sales of Aggrenox® and/or generic Aggrenox® that show, by customer and identified by clear units of measure, invoiced sales (including at least invoice number, date of sale, units sold, unit price, total price, billing type, customer bill-to and ship-to addresses, NDC number, and keys to billing types and NDC numbers, including package size), as well as concurrent or subsequent credits and discounts (including chargebacks, prompt payment discounts, returns, etc.) from January 1, 2008 to December 31, 2013."  Such discovery would be unduly burdensome for Defendants to identify and produce under the short deadline the plaintiffs have demanded.  Not only is there no reason for Defendants to produce this data on an expedited basis, but the parties have not even begun discussions as to a reasonable and efficient manner to produce this type of information.  While certain plaintiffs have voluntarily produced facially similar sales data, those plaintiffs are relatively small businesses in comparison to the defendant pharmaceutical companies.  Therefore, there is a great disparity in burdens in producing sales data.  In addition, plaintiffs have produced no more than information that they should have collected as part of their pre-complaint investigations.   Finally, plaintiffs' sales data relates to their standing and ability to bring antitrust claims on behalf of the putative classes.   Defendants' sales data is not relevant to any threshold issues.

*Twombly* was concerned about subjecting defendants to unduly burdensome discovery obligations before the sufficiency of a complaint is tested.  Production of these categories of

proposed documents would violate that principle.  Defendants stand ready to provide the Court

with more detail regarding the relative burdens if the Court wishes to receive it.

> **v.**     **Plaintiffs' Proposals Regarding Specific Discovery Limitations and Case Scheduling Beyond the Motions to Dismiss Are Premature**

Plaintiffs propose a detailed schedule through trial, and further propose specific

limitations on and timing for written discovery and depositions.  Defendants believe that these

proposals are premature as assessing such issues as the time needed for discovery, limitations on

written discovery and depositions, timing of document productions, etc., depends on the scope of

the case after resolution of the motions to dismiss.

If the Court disagrees and believes that an overall schedule should be entered, Defendants

stand ready to meet and confer promptly to try to agree on items raised in §§ II.C.1, II.C.4, II.D,

and III of Plaintiffs' Report.  In general, Defendants believe that plaintiffs' proposed schedule is

unrealistic given the complexity of this antitrust litigation.  We offer the following high-level

comments at this juncture:

- Defendants believe that twelve (12) months of fact discovery is insufficient, and that at least eighteen (18) months is appropriate based on our current understanding of the claims.

- Defendants propose that any dates, including any trial date, be keyed off decisions by the Court, including on the motions to dismiss and summary judgment motions.

- Defendants believe that the 60-day time limit that plaintiffs propose for the production of responsive documents is unreasonable given the complexity of the litigation and that Defendants have not even seen the scope of plaintiffs' requests; instead, documents should start being produced at a reasonable time on a rolling basis.

- Defendants generally agree that there should be limitations on written discovery and depositions.  At the appropriate time, Defendants expect to propose limiting the number of requests for admissions and requests for documents to ensure that discovery proceeds efficiently.

- With respect to the expert reports, in order to avoid disputes as to which party has

the burden of proof on an issue, we propose that the plaintiffs first serve their expert reports and that the defendants then serve responsive reports.

### d.      Electronic Discovery Issues

Defendants will meet and confer with plaintiffs and develop for the Court's review a joint protocol for the timing, process, form, and production of electronic information.    Defendants expect that the parties should be able to submit a joint protocol to the Court by July 25, 2014.[11]

### e.      Foreign Discovery Issues

Although several of the named defendants are located overseas, the parties do not have sufficient information at this time to determine whether foreign discovery will be required, and if so where.   While it is not apparent that foreign discovery will be required, the parties will cooperate in good faith to conduct such discovery should it be necessary consistent with principles of economy, data protection, and fairness and, if necessary, to approach the Court with any unresolved disputes.   To the extent foreign discovery is determined to be required, documents will not be able to be produced without a protective order that addresses the data protection concerns of the originating country.

### f.      Discovery Motion Practice

The parties agree that any discovery disputes will be resolved in accordance with the Local Rules of the District of Connecticut and Your Honor's Pretrial Practices.

### g.      Dispositive Motion Procedures and Schedule

Defendants agree to plaintiffs' proposed schedule for briefing the Rule 12 motions, specifically:

---

[11] Defendants expect that the parties should also be able to submit a joint proposed protective order to the Court by July 25, 2014.

- June 30, 2014:  Plaintiffs file consolidated amended complaints.

- August 14, 2014:  Defendants serve Rule 12 motion(s).

- September 29, 2014:  Plaintiffs respond to Rule 12 motion(s).

- October 20, 2014:  Defendants serve replies to Rule 12 motion(s).

Given the complexity of this antitrust litigation, Defendants believe that the page limits imposed by Local Rule 7 may be insufficient.   The parties agree that briefs in support of and opposition to motions to dismiss shall not exceed fifty (50) pages, and that replies in support of motions to dismiss shall not exceed twenty-five (25) pages.[12]

### h.    Mechanisms for Promoting Settlement

The parties agree that there is no meaningful prospect for settlement at this time.  The parties will meet and confer as discovery proceeds and the case develops and report to the Court if and when the need for settlement discussions arises.

### i.    Related actions in state court.

There are no related stated court actions.

### j.    Other Issues that May Affect the Efficient Progress and Resolution of the Actions

Defendants are not aware of any such issues.

We look forward to discussing these issues with the Court at the initial status conference on May 22nd.

---

[12] Defendants submit that any discussion of page limits for future filings, apart from those set forth in Local Rule 7(a), is premature.

Dated: May 21, 2014                      Respectfully submitted,

                                         */s/ Robert A. Milne*
                                         Robert A. Milne (ny 2317527)
                                         Jack E. Pace III
                                         Alison Hanstead
                                         WHITE & CASE LLP
                                         1155 Avenue of the Americas
                                         New York, NY 10036-2787
                                         Telephone:  (212) 819-8200
                                         Facsimile: (212) 354-8113
                                         rmilne@whitecase.com
                                         jpace@whitecase.com
                                         ahanstead@whitecase.com

                                         J. Mark Gidley
                                         Peter J. Carney
                                         WHITE & CASE LLP
                                         701 Thirteenth Street, N.W.
                                         Washington, DC 20005-3807
                                         Telephone: (202) 626-3600
                                         Facsimile: (202) 639-9355
                                         pcarney@whitecase.com
                                         mgidley@whitecase.com

                                         *Counsel for Defendant Boehringer Ingelheim*
                                         *Pharmaceuticals, Inc.*

                                         Christopher T. Holding
                                         Robert D. Carroll
                                         GOODWIN PROCTER LLP
                                         Exchange Place
                                         53 State Street
                                         Boston, MA 02109
                                         Telephone: (617) 570-1000
                                         Facsimile: (617) 523-1231
                                         cholding@goodwinprocter.com
                                         rcarroll@goodwinprocter.com

                                         *Counsel for Defendants Teva Pharmaceuticals*
                                         *USA, Inc., Barr Pharmaceuticals Inc. (n/k/a*
                                         *Barr Pharmaceuticals, LLC), Barr*
                                         *Laboratories Inc., and Duramed*
                                         *Pharmaceuticals Inc. (n/k/a Teva Women's*
                                         *Health Inc.)*

16

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Initial Pretrial Conference Report was filed electronically and served by mail on anyone unable to accept electronic filing on this May 21, 2014.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Date:  May 21, 2014

*/s/ Robert A. Milne*
Robert A. Milne
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036-2787
Tel:  (212) 819-8924
Fax: (212) 354-8113
rmilne@whitecase.com

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*