UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE AGGRENOX ANTITRUST LITIGATION | : : : : Docket No. 3:14 MD 2516 (SRU) : |
| | : |
| THIS DOCUMENT RELATES TO: | : : |
| ALL END-PAYOR CLASS ACTIONS | : : : |

**END-PAYOR CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

    I.      PLAINTIFFS' CLAIMS FALL SQUARELY WITHIN
           *ACTAVIS.* ........................................................................................... 2

    II.     PLAINTIFFS ADEQUATELY ALLEGE MARKET
           POWER AND A RELEVANT MARKET. ......................................... 6

    III.    PLAINTIFFS HAVE STANDING TO PURSUE THEIR
           CLAIMS. .......................................................................................... 7

           A.     The Second Circuit Requires Separate Analysis of Article
                   III and Class Standing. .................................................... 8

           B.     Plaintiffs Have Article III Standing. ............................... 9

           C.     Plaintiffs Have "Class" Standing to Pursue Claims of
                   Absent Class Members Whose Claims Arose Under the
                   Laws of Other States. ................................................... 10

           D.     Defendants' Other Standing Arguments Fail. .............. 16

                1.     Plaintiffs Have Standing Under Puerto Rico and Utah's
                       Antitrust Statutes. ............................................ 16

                2.     Plaintiffs' Unjust Enrichment Claims are Not Barred by
                       *Illinois Brick.* ................................................. 18

                3.     Plaintiffs Have Standing to Assert Their Rhode Island State
                       Law Claims. ..................................................... 19

    IV.    PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED. ...................... 19

           A.     Plaintiffs' Claims Are Timely Under The Basic Accrual
                   Rule. .............................................................................. 20

           B.     Plaintiffs' Claims Are Timely Under the "Continuing
                   Violation" Rule. .......................................................... 22

                  1.     Defendants Committed Overt Acts by Charging
                       Supracompetitive Prices to Plaintiffs. ............. 23

                2.     Defendants Committed Numerous Other Continuing Overt
                       Acts. ................................................................. 28

           C.     The Same Statute of Limitations Principles Apply to
                   Plaintiffs' State Law Claims. ...................................... 30

i

V.    DEFENDANTS' "ADDITIONAL REASONS" FOR
      DISMISSING PLAINTIFFS' STATE ANTITRUST LAW
      CLAIMS MUST BE REJECTED...........................................................32

      A.    Plaintiffs Allege a Sufficient Nexus to Intrastate Commerce.
            ......................................................................................................... 32

      B.    Plaintiffs Have Monopolization Claims Under New York,
            Kansas, and Tennessee Law. ......................................................... 34

VI.   PLAINTIFFS HAVE PROPERLY PLED CONSUMER
      LAW CLAIMS. ............................................................................................35

      A.    Plaintiffs Need Not Allege Deception or Reliance Under
            the Consumer Protection Laws of California, Illinois, Iowa,
            Maine, Michigan, Nevada, Rhode Island, Tennessee, Utah,
            West Virginia, District of Columbia, Kansas and New
            Mexico. ........................................................................................... 35

      B.    Plaintiffs Allege Deceptive Acts Sufficient to State a New
            York Cause of Action. .................................................................. 40

      C.    The Alleged Conduct Has a Sufficient Consumer Nexus or
            is Consumer Oriented Under the Consumer Protection
            Statutes of the States of Arizona, the District of Columbia,
            Idaho, Illinois, Iowa, Kansas, Maine, Missouri, Nebraska,
            New Mexico, New York and West Virginia. ............................... 41

      D.    The Consumer Protection Statutes of the District of
            Columbia, Idaho, Illinois, Kansas, Michigan, New Mexico,
            Rhode Island, Tennessee, Utah and West Virginia Apply to
            Antitrust Conduct........................................................................... 44

      E.    Third Party Payors Have Standing to Bring Claims Under
            the Consumer Protection Statutes of Hawaii, Iowa, Kansas,
            Maine, Montana, North Carolina, Rhode Island, Utah and
            Vermont. ......................................................................................... 46

      F.    Pre-Filing Notice Requirements Do Not Mandate Dismissal.
            ......................................................................................................... 48

      G.    Plaintiffs Allege Intrastate Conduct Under Florida,
            Massachusetts, New Hampshire, New York and North
            Carolina's Consumer Protection Statutes...................................... 50

      H.    Class Action Bars Are Inapplicable. ............................................ 52

      I.    Plaintiffs' Iowa Consumer Law Claim Should Be Allowed. .................... 57

      J.    Nevada's Statute Is Not Limited to Claims by
            Elderly/Disabled Only.................................................................... 58

      K.    Florida Consumer Law Is Not Preempted. ................................. 58

VII.   PLAINTIFFS ADEQUATELY PLEAD UNJUST
       ENRICHMENT CLAIMS. ..................................................................59

       A.   Plaintiffs' Pleading Meets the Requirements of *Twombly*. ...................... 59

       B.   Defendants Confuse the Law of Quasi-Contract. .................................... 60

       C.   Plaintiffs May Plead Unjust Enrichment Claims Even
            Where There Is an Adequate Legal Remedy............................................. 61

       D.   Plaintiffs Do Not Seek to Circumvent *Illinois Brick*
            Through Their Unjust Enrichment Claims ................................................ 61

       E.   Plaintiffs May Plead Unjust Enrichment Claims Even
            Where They Have Not Brought Antitrust and Consumer
            Protection Claims....................................................................................... 61

       F.   Plaintiffs Allege a Sufficient Relationship for Unjust
            Enrichment in Idaho, Illinois, Kansas, New York, and
            South Carolina. ......................................................................................... 62

       G.   Plaintiffs Adequately Allege a Benefit Conferred on
            Defendants. ............................................................................................... 65

       H.   Unjust Enrichment Is a Viable Claim in California, Georgia,
            Illinois, and Mississippi. .......................................................................... 66

       I.   Plaintiffs' Unjust Enrichment Claim Under Connecticut
            Law is Adequately Pleaded For the Reasons Set Forth
            Above. ....................................................................................................... 68

CONCLUSION .................................................................................................................... 68

**TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Teva Pharm. USA, Inc.*, 432 F. Supp. 2d 408
(D. Del. 2006) ........................................................................... 41

*Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323 (D.
Vt. 2010) .................................................................................. 24

*Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F.
Supp. 2d 1356 (N.D. Ga. 2006) ................................................ 67

*American Needle, Inc. v. NFL*, 560 U.S. 183 (2010) ........................... 4

*Antoine v. U.S. Bank N.A.*, 821 F. Supp. 2d 1 (D.D.C. 2010) ............. 44

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ...................... 11, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................ 59

*Atwater v. D.C. Dept. of Consumer & Regulatory Affairs*,
566 A.2d 462 (D.C. 1989) ......................................................... 45

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D.
Cal. 2007) ................................................................................ 67

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d
Cir. 1979) ................................................................. 20, 22, 23, 24

*Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141 (10th Cir.
2013) ....................................................................................... 48

*Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, Nos. 02
C 0978, 02 C 3436, 2003 WL 151929 (N.D. Ill. Jan.
21, 2003) .................................................................................. 43

*Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445
(S.D.N.Y. 2010) ........................................................................ 15

*Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir. 1973) ..................... 61

*Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982) ..................... 17

*Boschma v. Home Loan Ctr., Inc.*, 129 Cal. Rptr. 3d 874
(Cal. Ct. App. 2011) ............................................................ 36, 37

*Boyle v. Giral*, 820 A.2d 561 (D.C. 2003) ...................................... 39

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ...................................................................................11

*Brown v. Louisiana-Pac. Corp.*, No. 4:12-cv-00120 (S.D. Iowa Jan. 18, 2013) ............................................................ 38

*California Dental Ass'n v. FTC*, 526 U.S. 756 (1999).................. 23

*California v. ARC America Corp.*, 490 U.S. 93 (1989) .................. 1

*Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396 (11th Cir. 1998) ........................... 51

*Carmona v. Spanish Broad. Sys., Inc.*, No. 08-cv-4475, 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) ................... 64

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care LLC.*, 504 F.3d 229 (2d Cir. 2007) ................................................................... 10

*Ciardi v. Hoffman-La Roche*, 762 N.E.2d 303 (Mass. 2002)....................... 51

*Cole v. Hewlett Packard Co.*, 84 P.3d 1047, 2004 WL 376471 (Kan. Ct. App.2004)........................................ 43

*Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977).................................................................................. 4

*Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004) ....................................................................... 68

*Corporate Trade, Inc. v. Golf Channel*, No. 13-3999-CV, 2014 WL 1673731 (2d Cir. Apr. 29, 2014) ................... 20

*D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006).............................................. 62

*Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303 (Haw. 2010) ................................................................... 46, 47

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466-67 (1992)............................................................ 4

*Edwards v. 21st Century Ins. Co.*, No. 09-cv-04364, 2010 WL 2652247 (D.N.J. June 23, 2010) ........................... 14

*Engram v. Engram*, 463 S.E.2d 12 (Ga. 1995) ........................... 67

*Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 514
(1988) ........................................................................................................ 35

*Exhaust Unlimited, Inc. v. Cintas Corp.*, 326 F. Supp. 2d
928 (S.D. Ill. 2004) .................................................................................... 25

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir.
1998) ...........................................................................................................11

*Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. C-1-01-447, 2004
WL 6073010 (S.D. Ohio, June 30, 2004) ...................................... 15

*First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657
(1992) ........................................................................................................ 67

*FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013) ........................... 2, 3, 4, 5, 6, 7

*FTC v. Cement Inst.*, 333 U.S. 683 (1948) ...................................................... 44

*FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925 (N.D. Ill.
2008) ......................................................................................................... 38

*FTC v. Motion Picture Adver. Serv. Co.*, 344 U.S. 392
(1953) ........................................................................................................ 44

*FTC v. Mylan Labs, Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999) ........................ 39

*Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 594
(N.Y. 1999) ................................................................................................ 43

*Galvan v. Northwestern Mem. Hosp.*, 888 N.E.2d 529 (Ill.
App. Ct. 2008) .......................................................................................... 56

*Gasperoni v. Metabolife, Int'l Inc.*, No. 00 71255, 2000 WL
33365948 (E.D. Mich. Sept. 27, 2000) ............................................... 38

*Geico v. Indem. Ins. Co. v. Kannaday*, No. 06-1067, 2007
WL 2990552 (D. Kan. Oct. 11, 2007) ................................................. 47

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91
(1979) ......................................................................................................... 9

*Glass Dimensions, Inc. v. State Street Bank & Trust Co.*,
285 F.R.D. 169 (D. Mass. 2012) ........................................................... 14

*Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233 (D. Kan.
2007) ......................................................................................................... 64

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002) ............................................................................................ 51, 52

*Gratz v. Bollinger*, 539 U.S. 244 (2003) .............................................7, 11, 12

*Grunewald v. United States*, 353 U.S. 391, (1957) ................................. 30

*Haile Grp. LLC v. City of Lenexa*, 242 P.3d 1281, 2010 WL 4977221 (Kan. Ct. App. 2010) .......................................................... 63

*Harbour Capital Corporation v. Allied Capital Corporation*, No. 08-cv-506-PB, 2009 WL 2185449 (D.N.H. July 22, 2009) ............................................................................................ 52

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) ................... 20

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988) .................................... 13

*Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73 (Idaho 2005) ...................................................................................................... 62

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839 (Kan. 1996) ...................................................................... 63, 64

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11-CV-282 JCH, 2012 WL 162361 (D. Conn. Jan. 19, 2012) .......................................................................................... 20

*Hemispherx Biopharma, Inc. v. Mid-S. Capital, Inc.*, 690 F.3d 1216 (11th Cir. 2012) .................................................................. 67

*Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004) ................... 7, 9, 12, 13

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499 (S.D.N.Y. 2009) .......................................................................... 27

*Hoglund ex rel. Johnson v. DaimlerChrysler Corp.*, 102 F. Supp. 2d 30 (D. Me. 2000) ....................................................... 47

*Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008) .................................................................... 15

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989) ............................................................ 68

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ. 5889(DAB), 2005 WL 323750 (S.D.N.Y Feb. 9, 2005) ...................................................................................................... 34

*Iadanza v. Mather*, 820 F. Supp. 1371, 1378 (D. Utah 1993) ........................................................ 48

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ........................................................................ 1

*Imperial Point Colonnades Condo. Inc., v. Mangurian*, 549 F.2d 1029 (5th Cir. 1977) ............................................................................... 24, 29

*In re Mercedes-Benz TeleAid Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ......................................................................................................... 60

*In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .......................................................... 40, 46

*In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732, 2007 WL 5215231 (E.D. Pa. Jan. 18, 2007) ................................................................ 24

*In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013) ................................................ 33, 36, 39, 57

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2014 WL 2993742 (E.D. Mich. July 3, 2014) ................................................ 64

*In re Bayer Cor. Combination Aspirin Prods. Marketing and Sales Practices Litig.*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010) ....................................................................................... 15

*In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002) ............................................................................................... 15, 24, 31

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000) ................................................................. 19, 33, 34, 62, 65

*In re Checking Account Overdraft Litig.*, 281 F.R.D. 667 (S.D. Fla. 2012) ................................................................................... 60

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009) ....................................................................... 45, 46

*In re Ciprofloxacin Hydrochoride Antitrust Litig.*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003) ............................................................... 27, 28

*In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274 (4th Cir. 2007) ........................................................................................................ 24

*In re DDAVP Indirect Purchaser Litig.*, 903 F. Supp. 2d 198 (S.D.N.Y. 2012) ..................................................... 10, 34, 35, 39, 43, 52, 58

*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011) ....................................................................... 15, 17, 33, 34

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007) .......................................................................... 37

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ........................... 38

*In re Flonase Antitrust Litig.,* 692 F. Supp. 2d 524 (E.D. Pa. 2010) ............................................................................ 41, 52, 56

*In re Ford Tailgate Litig.*, No. 11-cv-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ...................................... 50

*In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26 (D.D.C. 2008) ........................................................................................ 19

*In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, No. 06 MD 1739(SWK)(MHD), 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ..................................... 15

*In re Graphics Processing Units Antitrust Litigation*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................... 38

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993 (S.D. Cal. 2011) ........................................... 14

*In re Hydroxycut Mktg. & Sales Practices Litig.*, Case No. 09-2087, 2014 WL 295302 (S.D. Cal. Jan. 27, 2014) ..................... 53

*In re Hypodermic Prods. Antitrust Litig.*, MDL No. 1730, No. 05 Civ 1602, 2007 U.S. Dist. LEXIS 47438 (D.N.J. June 29, 2007) ................................................... 15

*In re Intel Corp., Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404 (D. Del. 2007) ........................... 18, 34, 39, 43, 46

*In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) ....................................................... 18, 25, 61, 65

*In re Light Cigarettes Mktg Sales Practices Litig.*, 751 F. Supp. 2d 183 (D. Me. 2010) ......................................... 68

*In re Linerboard Antitrust Litig.*, No. MDL 1261, 2000 WL 1475559 (E.D. Pa. Oct. 4, 2000) .................................... 25

*In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12 (D.D.C. 2001) .................................................... 13

*In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F.
    Supp. 2d 30 (D.D.C. 2003) ........................................................... 13

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d
    1144 (3d Cir. 1993) ..................................................................... 24

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Me. 2004) ................................... 38, 39, 40, 45, 46, 47

*In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp.
    2d 367 (D. Mass. 2013)................................................... 9, 13, 14, 22

*In re Nine West Shoes Antitrust Litig.,* 80 F. Supp. 2d 181
    (S.D.N.Y. 2000) ........................................................................... 27

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642
    (E.D. Mich. 2011) ....................................................................... 34

*In re Pharm. Indus. Average Wholesale Price Litig.*, 233
    F.R.D. 229 (D. Mass. 2006) .................................................... 39, 46

*In re Pharm. Indus. Average Wholesale Price Litig.*, 252
    F.R.D. 83 (D. Mass. 2008) ...................................................... 37, 38

*In re Pharm. Indus. Average Wholesale Price Litig.*, 230
    F.R.D. 61 (D. Mass. 2005) ......................................................... 50

*In re Pool Products Distribution Mkt. Antitrust Litig.*, 940 F.
    Supp. 2d 367 (E.D. La. 2013) ..................................................... 24

*In re Principal United States Prop. Account ERISA Litig.*,
    274 F.R.D. 649 (S.D. Iowa 2011) ............................................... 54

*In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d
    867 (E.D. Pa. 2012)................................... 18, 19, 34, 36, 37, 40, 61, 65, 67, 68

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent
    Actions*, 148 F.3d 283 (3d Cir. 1998) ........................................11

*In re Publication Paper Antitrust Litig.*, No. 04-md-1631-
    SRU, 2005 WL 2175139 (D. Conn. Sept. 7, 2005) ..................... 32

*In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-
    md-02042, 2013 WL 1431756 (E.D. Mich. April 9,
    2013) .......................................................................................... 34

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass.
    2004) ............................................................................... 12, 15, 39

*In re SE Milk Antitrust Litig.*, 555 F. Supp. 2d 934 (E.D.
Tenn. 2008) .................................................................................. 29

*In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-md-
2343, 2013 WL 2181185 (E.D. Tenn. May 20,
2013) ................................................................................... 27, 31

*In re Static Random Access Memory (SRAM) Antitrust
Litig.*, No. 07-md-01819 CW, 2010 WL 5094289
(N.D. Cal. Dec. 8, 2010) ...................................................... 17, 63

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D.
672 (S.D. Fla. 2004) .................................................................. 60

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-
1827 SI, 2011 WL 4501223 (N.D. Cal. Sept. 28,
2011) ........................................................................................ 66

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp.
2d 1179, 1185-86 (N.D. Cal. 2009) .................................. 39, 46, 66

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, 599 F.
Supp. 2d 1179 (N.D. Cal. 2009) ................................................ 17

*In re Trilegiant Corp.*, No. 3:12-cv-00396, 2014 WL
1315244 (D. Conn. Mar. 28, 2014) ............................................ 52

*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300
F. Supp. 2d 1107 (D. Kan. 2003) .......................................... 35, 45

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D.
Pa. 2009) .......................................................................... 9, 37, 56

*In re Wholesale Grocery Products Antitrust Litig.*, 752 F.3d
728 (8th Cir. 2014) .............................................................. 26, 27

*Indergit v. Rite Aid Corp.*, 08-cv-9361, 2009 WL 1269250
(S.D.N.Y. May 4, 2009) ............................................................. 10

*Int'l Union of Operating Eng'rs Local 132 Health &
Welfare Fund*, No. 13-cv-06579 (E.D. Pa.) .................................. 21

*Jepson v. Ticor Title Ins. Co.*, No. 06-cv-1723, 2007 WL
2060856 (W.D. Wash. May 1, 2007) .......................................... 15

*Karlin v. IVF Am., Inc.,* 712 N.E.2d 662 (N.Y. 1999) ........................... 42

*Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 567 (S.D. Iowa
2011) ......................................................................................... 56

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F.
Supp. 2d 514 (E.D. Pa. 2010) ................................................... 62

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) .......................... 27

*Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013
WL 2147413 (N.D. Cal. May 15, 2013) ................................... 67

*Krogull v. Woodfield Chevrolet*, No. 01L 729, 2004 WL
1429963 (Ill. App. Ct., June 22, 2004)...................................... 37

*Kuenzig v. Kraft Global Foods, Inc.*, No. 8:11-cv-838-T-24,
2012 WL 366927 (M.D. Fla. Feb. 3, 2012) ............................... 59

*Kuhl v. Guitar Ctr. Stores, Inc.*, No. 07-C-214, 2008 WL
656049 (N.D. Ill. Mar. 5, 2008) ............................................... 14

*Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012) ........................... 54

*Landgraf v. Usi Film Prods.*, 511 U.S. 244 (1994) ....................... 19

*Lantz v. Am. Honda Motor Co., Inc.*, No. 06-cv-5932, 2008
WL 162759 (N.D. Ill. Jan. 17, 2008) ........................................ 15

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000) ............... 66

*Leider v. Ralfe*, 387 F. Supp. 2d 283 (S.D.N.Y. 2005) .................. 41

*Lewis v. Lead Indus. Ass'n*, 342 Ill. App. 3d 95 (Ill. App. Ct.
2003) ......................................................................................... 63

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................... 8, 9

*Luria Bros. & Co. v. FTC*, 389 F.2d 847 (3d Cir. 1968) ............... 40

*M.J. McCarthy Motor Sales Co. v. Van C. Argiris & Co.*, 78
Ill. App. 3d 725 (Ill. App. Ct. 1979)......................................... 63

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997)........ 48

*Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100 (Fla.
Dist. Ct. App. 1996) .................................................................. 16

*Macquarie Grp. Ltd. v. Pac. Corporate Grp., LLC,* No. 08-
CV-2113, 2009 WL 539928, (S.D. Cal. Mar. 2,
2009) ......................................................................................... 41

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) ...................................................... 12, 15

*Marbry v. EMI Music Distrib., C.A.,* 129 Daily Wash. L.
    Rptr. 2065 (D.C. Super. Ct. 2001)................................................................................... 45

*Maricopa Cnty. v. Am. Pipe & Const. Co*., 303 F. Supp. 77
    (D. Ariz. 1969), *aff'd*, 431 F.2d 1145 (9th Cir. 1970)..................................................... 29

*Marks v. United States*, 430 U.S. 188 (1977)................................................................................ 54

*Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920
    (Ill. App. Ct. 2009)......................................................................................................... 63

*Meijer, Inc. v. 3M*, No. 04-5871, 2005 WL 1660188 (E.D.
    Pa. July 13, 2005)........................................................................................................... 25

*Meyers v. Bayer Corp.*, 303 Wis. 2d 295, 435 N.W.2d 448
    (2007)............................................................................................................................... 34

*Michelle Pommier Models, Inc. v. Men Women NY Model
    Mgmt., Inc.*, No. 97 CIV. 6837 (SAS), 1997 WL
    724575 (S.D.N.Y. Nov. 18, 1997).................................................................................. 22

Minute Order, *Boehringer Ingelheim Pharma GmbH & Co.
    KG v. Barr Labs. Inc.*, No. 07-cv-00432 (July 23,
    2008)................................................................................................................................ 22

*Molecular Diagnostics Labs. v. Hoffmann-LaRoche, Inc.*,
    402 F. Supp. 2d 276 (D.D.C. 2005) ............................................................................... 25

*Morton's Mkt., Inc.*, 198 F.3d 823 (11th Cir. 1999) ............................................................ 22, 24

*N. Hero Marina v. Melanson*, 2004 Vt. Super. LEXIS 82
    (Vt. Super. Ct. July 30, 2004) ........................................................................................ 48

*Nat'l Souvenir Ctr., Inc. v. Historic Figures, Inc*., 728 F.2d
    503 (D.C. Cir. 1984) ....................................................................................................... 29

*NECA-IBEW Health and Welfare Fund v. Goldman Sachs
    & Co.*, 693 F.3d 145 (2d Cir. 2012) ............................................. 7, 8, 9, 10, 12, 13, 16, 51

*Needham v. Cruver*, 19 Del. J. Corp. L. 383 (Del. Ch. 1993)....................................................... 32

*Nev. Power Co. v. Eighth Jud. Dist. Ct. of Nev.,* 102 P.3d
    578 (Nev. 2004) .............................................................................................................. 58

*New York v. Feldman,* 210 F. Supp. 2d 294 (S.D.N.Y. 2002) .......................................... 41, 42, 52

*Nossen v. Hoy*, 750 F. Supp. 740 (E.D. Va. 1990)........................................................................ 61

*Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors*, 659 A.2d 267 (Me. 1995) ........................................ 49

*Office of Public Guardian v. Hale & Dorr LLP*, 445 F. Supp. 2d 94 (D. Mass. 2006) ........................................ 50

*Okoye v. Bank of New York Mellon,* 2011 WL 3269686 (D. Mass. July 28, 2011) ........................................ 49

*Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014) ........................................ 26, 30

*Ortiz v. Cornetta,* 867 F.2d 146 (2d Cir. 1989) ........................................ 20

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................ 15

*Owens v. Apple, Inc.*, No. 09-cv-0479, 2009 WL 5126940 (S.D. Ill. Dec. 21, 2009) ........................................ 68

*Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 815 F.2d 270 (3d Cir. 1987) ........................................ 29

*Paul Davis Restoration of Lawrence v. Raney Props., L.P.*, 157 P.3d 7, 2007 WL 1309807 (Kan. Ct. App. 2007) ........................................ 64

*Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221 (Ill. App. Ct. 1998) ........................................ 67

*People ex rel. Spitzer v. Applied Card Sys., Inc.*, 805 N.Y.S.2d 175 (N.Y. App. Div. 3d Dept. 2005) ........................................ 41

*Piazza v. Ebsco Indus.*, 273 F.3d 1341 (11th Cir. 2001) ........................................ 11

*Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502 (S.C. Ct. App. 2002) ........................................ 65

*Potts v. United Parcel Serv., Inc.*, No. 06-cv-4766, 2007 WL 551555 (N.D. Ill. Feb. 15, 2007) ........................................ 15

*Powell v. Bank of Am., N.A.*, 842 F. Supp. 2d 966 (S.D. W. Va. 2012) ........................................ 44

*Powers v. Lycoming Engines*, 245 F.R.D. 226 (E.D. Pa. 2007) ........................................ 60

*Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-00042, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), report and recommendation adopted, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ........................................ 24

*Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.*, 137 P.R. Dec. 497 (P.R. 1994) ................................................................. 17

*Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84 (Ill. App. Ct. 2002) ..................................................................................... 37

*Prohias v. AstraZeneca Pharmaceuticals, L.P.*, 958 So.2d 1054 (Fla. Dist. Ct. App. 2007)..................................................... 59

*Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill. 2d 248 (2004) ................................................................................... 67

*Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496 (D.N.J. 2009) ................................................................................... 14

*Reading Int'l Inc. v. Oaktree Capital Mgmt.*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003) ...................................................... 64

*Reeves v. Newman*, 695 S.E.2d 626 (Ga. 2010) ......................... 67

*Rite Aid Corp. v. Am. Express Travel Related Servs. Co.*, 708 F. Supp. 2d 257 (E.D.N.Y. 2010) ............................... 21

*Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57 (D.P.R. 2010)................................................................... 16

*Rivera-Muñiz v. Horizon Lines Inc.*, No. 09-cv-2081 (GAG), 2010 WL 3703737 (D.P.R. Sept. 13, 2010) ......... 17

*Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314 (D.N.M. 2003)....................................................... 42

*Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ............................... 15

*Samuels v. Schultz*, No. 11-CV-6255, 2012 WL 1114095 (W.D.N.Y. Mar. 30, 2012) ............................................ 20

*Sauner v. Publ. Serv. Authority of S.C.*, 581 S.E.2d 161 (S.C. 2003)........................................................................... 65

*Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256 (2d Cir.1995) ................................................................. 41, 42

*Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010)...... 44

*Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkline, PLC*,  737 F. Supp. 2d 380 (E.D. Pa. 2010) ........................................................... 36, 37, 52

xv

*Sheet Metal Workers National Health Fund v. Amgen, Inc.*,
No. 07-cv-5295, 2008 WL 3833577 (D.N.J. Aug. 13,
2008) ................................................................................................ 15

*Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034 (N.D. Ill.
2007) ................................................................................................ 55

*Singer v. AT&T Corp.*, 185 F.R.D. 681 (S.D. Fla. 1998) ..................... 59

*Sosna v. Iowa*, 419 U.S. 393 (1975)...................................................... 10

*State ex rel. Douglas v. Associated Grocers of Neb. Coop.,
Inc.*, 332 N.W.2d 690 (Neb. 1983)................................................ 44

*State Ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*,
461 S.E.2d 516 (1995) ................................................................... 44

*State ex rel. Nixon v. Cont'l Ventures Inc.*, 84 S.W.3d 114
(Mo. Ct. App. W.D. 2002)............................................................. 42

*State ex. rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180
(N.M. 1987) ................................................................................... 43

*State v. International Collection Service, Inc.*, 594 A.2d 426
(Vt. 1991)....................................................................................... 48

*Tarpey v. Crescent Ridge Dairy, Inc.*, 713 N.E. 2d 975
(Mass. App. 1999).......................................................................... 50

*Tennille v. Western Union Co.*, 751 F. Supp. 2d 1168 (D.
Colo. 2010) .................................................................................... 32

*Thomas v. Petro-Wash, Inc.*, 429 F. Supp. 808 (M.D.N.C.
1977) .............................................................................................. 25

*Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792
(Me. 1998)...................................................................................... 38

*United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d
623 (7th Cir. 2003) ........................................................................ 28

*United States v. Borden Co.*, 308 U.S. 188 (1939)............................... 28

*United States v. Grimm*, 738 F.3d 498 (2d Cir. 2013)........................ 27

*United States v. Kissel*, 218 U.S. 601 (1910) ...................................... 29

*United States v. Ramallo-Diaz*, 455 F. Supp. 2d 22 (D.P.R.
2006) .............................................................................................. 30

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150
(1940) .......................................................................................... 28

*United States v. Stewart*, 12-2395, 2014 WL 715800 (1st
Cir. Feb. 26, 2014) ..................................................................... 30

*Vanderford Co. v. Knudson*, 165 P.3d 261 (Idaho 2007) ................... 63

*Vertex, Inc. v. City of Waterbury*, 898 A.2d 178 (Conn.
2006) .......................................................................................... 66

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85
(3d Cir. 2010) ............................................................................. 30

*Waldman v. New Chapter Inc.*, 714 F. Supp. 2d 398
(E.D.N.Y. 2010) ......................................................................... 64

*Walker v. Fleetwood Homes of N.C., Inc.*, 627 S.E.2d 629
(N.C. Ct. App. 2006) .................................................................. 48

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................... 12

*Warma Witter Kreisler, Inc. v. Samsung Electronics Am.,
Inc.*, No. 08 Civ 5380, 2009 U.S. Dist. LEXIS
112773 (D.N.J. Dec. 3. 2009) ..................................................... 15

*Warth v. Seldin*, 422 U.S. 490 (1975) .................................................. 9

*Williams Carpet Contractors, Inc. v. Skelly*, 734 S.E.2d
(S.C. Ct. App. 2012) ................................................................... 65

*Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560 (S.D.N.Y.
2012) .......................................................................................... 15

*Winfree v. N. Pac. Ry. Co.*, 227 U.S. 296 (1913) .............................. 19

*Woodward v. Fid. Nat. Title Ins. Co.*, No. 06-cv-1170, 2007
WL 5173415 (D.N.M. Dec. 4, 2007) .......................................... 15

*York v. Sullivan*, 338 N.E. 2d 341 (Mass. 1975) ............................... 50

*Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1023-24
(S.D. Iowa 2009) ........................................................................ 14

*Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853 (Ill.
1998) .......................................................................................... 37

*Zenith Radio v. Hazeltine Research, Inc.*, 401 U.S. 321
(1971) .......................................................................................... 22

**Statutes**

10 L.P.R.A. § 268 ........................................................................................................... 16

15 U.S.C. § 45 ............................................................................................................... 45

15 U.S.C. §§ 1, 2 (2012) ................................................................................................. 1

740 Ill. Comp. Stat. 10/7 ............................................................................................... 55

815 Ill. Comp. Stat. 505/2 ........................................................................................ 36, 45

Ariz. Rev. Stat. Ann. § 44-1521 ................................................................................... 42

Cal. Bus. & Prof. Code § 17209 ................................................................................... 49

D.C. Code §§ 28-3901 ................................................................................................. 42

D.C. Code Ann. § 4501 *et seq.* ..................................................................................... 39

Fla. Stat. § 501.212 ...................................................................................................... 59

Fla. Stat. § 501.201 ...................................................................................................... 16

Haw. Rev. Stat.  § 480-2 ............................................................................................... 47

Haw. Rev. Stat. §§ 480-13.3 ......................................................................................... 49

I.C.A. § 714.16 ............................................................................................................. 38

Iowa Code § 714H.5 ..................................................................................................... 58

Iowa Code § 714H.7 ..................................................................................................... 56

Iowa Code Ann. § 714.16 ............................................................................................. 47

Kan. Stat. Ann. 50-626 ............................................................................................ 35, 57

Kan. Stat. Ann. §50-634 ............................................................................................... 57

Mass. Gen. Laws Ann. ch. 93A, § 11 ........................................................................... 50

Mass. Gen. Laws Ann. 93A § 9 .................................................................................... 49

Me. Rev. Stat. Ann. tit. 5, § 206 .................................................................................. 47

Me. Rev. Stat. Ann. tit. 5, § 213 .............................................................................. 47, 49

Mich. Comp. Laws Ann. § 445.911 ............................................................................... 45

Mont. Code Ann. § 30-14-102 ................................................................................ 47

N.C. Gen Stat. § 75–1 *et seq* ................................................................................ 52

N.Y. G.B.L. § 349 ................................................................................................ 41

N.M. Stat. Ann. § 57-12-3 .................................................................................... 36

Neb. Rev. Stat. § 59-1601 .................................................................................... 43

Nev. Rev. Stat. § 41.600 ...................................................................................... 58

Nev. Rev. Stat. § 598.0923 .................................................................................. 38

Nev. Rev. Stat. § 598.0973 .................................................................................. 58

Nev. Rev. Stat. § 598.0977 .................................................................................. 58

R.I. Gen. Laws § 6–13.1–2 .................................................................................. 36

R.I. Gen. Laws § 6-36-2 ...................................................................................... 19

R.I. Gen. Laws § 6-36-7 ...................................................................................... 19

R.I. Gen. Laws §§ 6-13.1-1, *et seq.* .................................................................... 46

Tenn. Code. Ann. §§ 47-25-101, *et seq.* .............................................................. 34

Utah Code Ann. § 13-11-3 .................................................................................... 48

W. Va. Code § 46A-6-103 ............................................................................... 40, 46

W. Va. Code § 46A-6-106 .................................................................................... 50

## Other Authorities

1 William B. Rubinstein et al., Newberg on Class Actions
    §2:6 (5th ed. 2011) ...................................................................................... 10

2 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*,
    ¶338b (rev. ed. 1995) .................................................................................. 23

27A Am. Jur. 2d Equity § 143 .............................................................................. 32

30A C.J.S. Equity § 147 (2014) ............................................................................ 32

5 Fed. Prac. & Proc. Civ. § 1277 (3d ed.), *Raising
    Affirmative Defenses by Motion* .................................................................. 32

54 C.J.S. Limitations of Actions § 196 (2014) .......................................................... 32

7AA The Late Charles Alan Wright, et al., Federal Practice
    and Procedure §1785.1 (3d ed. 2010) ..............................................................11

ABA Section of Antitrust Law, *Antitrust Law Developments*,
    at 807 (7th ed. 2012) .................................................................................... 22

C. Kaufman, Corbin on Contracts, § 19 (Supp. 1989)................................................. 61

DOJ and FTC, *Antitrust Guidelines for the Licensing of
    Intellectual Property*, §§ 4.1.2, 5.1 (April 6, 1995) ........................................... 5

Restatement (Third) of Restitution and Unjust Enrichment
    § 70 (2011) ..................................................................................................... 31

*Statement of Chairman Jon Leibowitz on the Release of the
    Commission's Interim Report on Authorized
    Generics*, June 2009,
    http://www.ftc.gov/os/2009/06/P062105authgenstat
    ementLeibowitz.pdf ........................................................................................ 4

## INTRODUCTION

The Court should deny every aspect of Defendants' motion to dismiss the End-Payor Plaintiffs' Consolidated Class Action Complaint ("Complaint" or "Comp.").[1]

End-Payor Plaintiffs are fourteen union health and welfare funds who assert claims for injunctive and declaratory relief under the Sherman Act, 15 U.S.C. §§ 1 and 2, and claims for damages under state-law antitrust and consumer protection statutes and common law. When brand drug manufacturers and generic manufacturers collude to delay the advent of price competition, individual consumers and end-payors such as Plaintiffs, who purchase prescription drugs or who pay or reimburse for the costs of their members' prescription drugs, bear the brunt of the anticompetitive scheme.[2]

End-Payor Plaintiffs bring their damage claims under state laws because the Supreme Court held in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), that damage recovery under *federal* antitrust law is limited to "direct" purchasers. Following *Illinois Brick*, a majority of state legislatures enacted "*Illinois Brick*-repealer" statutes that allow end-payors to recover damages under state antitrust law. These state statutes thereby ensure that the ultimate consumers are compensated for their antitrust injuries. Moreover, additional jurisdictions allow for the recovery of damages for such violations under unfair and deceptive trade practices acts. Federal law does not preempt these statutes; on the contrary, courts must give full effect to these pro-consumer state laws. *California v. ARC America Corp.*, 490 U.S. 93, 105-06 (1989).

---

[1] End-Payor Plaintiffs filed a Corrected End-Payor Consolidated Class Action Complaint on June 27, 2014.

[2] Collectively, the End-Payor Plaintiffs purchase, pay for, or reimburse their members' purchases in 22 jurisdictions. Comp. ¶¶ 17-30. Plaintiffs assert their own claims under the Sherman Act and the laws of 20 of those states, and assert claims on behalf of a putative class of consumers and other End-Payors under the Sherman Act and the law of all repealer states plus the law of 22 additional states or jurisdictions.

Regarding the substance of End-Payors' antitrust claims, Defendants are correct that state law generally follows federal antitrust principles.[3]  But Defendants' arguments on the merits fail. Plaintiffs have alleged sufficient facts for this Court to find it plausible that Defendants' agreement with respect to 25 mg aspirin/200 mg extended release dipyridamole capsules, sold by Boehringer Ingelheim ("Boehringer") under the brand name Aggrenox, constitutes an unlawful reverse payment agreement under the principles of *FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013). Other courts, as well as scholarly opinion, have rejected the very arguments that Defendants try to resurrect here.

Moreover, Plaintiffs' claims are timely because they did not accrue until Defendants' conduct first caused injury to Plaintiffs – well within the statute of limitations.  And even if the claims had first accrued outside the limitations period, rock-solid Supreme Court and Second Circuit authority holds that purchaser plaintiffs may recover for injuries that occur within the statute of limitations even if the original conduct giving rise to the injury occurred outside the limitations period.[4]  Defendants' litany of other state-law-specific arguments similarly lacks merit.  For all these reasons, Defendants' motion should be denied.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS FALL SQUARELY WITHIN *ACTAVIS*.

In order to eliminate the risk that Boehringer's U.S. Patent No. 6,015,577 would be invalidated, Defendants entered an agreement whereby Boehringer paid its potential generic

---

[3] Defendants have incorporated by reference against the End-Payor Plaintiffs the arguments that Defendants make against the Direct Purchaser Plaintiffs. Defendants' Memorandum in Support of Motion to Dismiss Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint, ECF No. 151 ("Def. Mem.") at 1.  The End-Payor Plaintiffs hereby incorporate by reference all of the Direct Purchaser Plaintiffs' statement of facts and responsive arguments on issues applicable to the End Payors.

[4] *E.g.*, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979).

competitor Barr to delay market entry of its generic Aggrenox product for approximately seven years (the "Agreement").  Comp. ¶¶ 4-5, 7, 77-78.  The payment took two forms:  cash payments provided under the guise of a co-promotion agreement – an estimated $120 million in one-time and yearly royalty payments – that far exceeds the fair value of the services provided by Barr; and (b) an agreement not to compete against Barr's generic Aggrenox product with Boehringer's own generic Aggrenox product once generic entry belatedly occurs.  *Id.* ¶¶ 78-93.

Boehringer's payments to Barr guaranteed two distinct periods of non-competition: (a) the period before generic competition, whereby Boehringer and Barr agreed to allocate 100% of the market to Boehringer; and (b) the period after generic competition, whereby Boehringer and Barr agreed not to sell competing generic versions of Aggrenox, with the intent to allocate 100% of the generic segment to Barr during the 180-day exclusivity period and reduce inter-generic competition for the duration of the patent term.  *Id.* ¶¶ 94-95.  Under the Agreement, there was no period of unrestrained competition between possible generic entry and the end of the patent term.  *Id.*

For all the reasons discussed in the Direct Purchaser's brief, these allegations state a claim under *Actavis* as well as under "[v]irtually every state law invoked by" End-Payor Plaintiffs since each of those laws "either provides expressly that it should be interpreted harmoniously with federal law, or has been so construed by the courts."[5]  End-Payors elaborate on those arguments with these few brief points:

*First*, the Court should reject out-of-hand Defendants' suggestion that only cash payments are subject to scrutiny under *Actavis*.[6]  *Actavis* itself did not involve the payment of straight cash – the FTC alleged there that the brand overpaid the generics for services that were

---

[5] Def. Mem. at 1-2.
[6] Def. Mem. at 36 n.31.

3

not worth the amount paid.  133 S. Ct. at 2229.  Indeed, the *Actavis* majority opinion never uses the word "cash."  The majority twice uses the phrase "millions of dollars" – once in describing a hypothetical example of a payment from "A" to "B," *id*. at 2227; and once in describing the overpayment from the brand in that case to the generics, *id*. at 2229.  But the Court also twice uses that same phrase to describe the value to the generic manufacturer of not facing competition from other generics: "[T]his 180–day period of exclusivity can prove valuable, possibly 'worth several hundred million dollars.'"  *Id*. at 2229 (citation omitted).  And again: "[T]he special advantage of 180 days of an exclusive right to sell a generic version of the brand-name product … can be worth several hundred million dollars."  *Id*. at 2235 (citation omitted).[7]

*Second*, Defendants' no-authorized-generic pact fits comfortably within *Actavis*'s discussion of non-cash payments "worth several hundred million dollars." The former Chair of the FTC said it best:

> Because the impact of an authorized generic on first-filer revenue is so sizable, the ability to promise not to launch an AG [authorized generic] is a huge bargaining chip the brand company can use in settlement negotiations with a first-filer generic.  It used to be that a brand might say to a generic, "if you go away for several years, I'll give you $200 million."  Now, the brand might say to the generic, "if I launch an AG, you will be penalized $200 million, so why don't you go away for a few years and I won't launch an AG."[8]

---

[7] More generally, the relevant inquiry is "substance, not form" – in antitrust analysis the courts have consistently "eschewed such formalistic distinctions in favor of how the parties involved … actually operate." *American Needle, Inc. v. NFL*, 560 U.S. 183, 191 (2010); *see also Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 58-59 (1977) (antitrust analysis must "be based upon demonstrable economic effect rather than . . . upon formalistic line drawing"); *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 466-67 (1992) ("formalistic distinctions" are "generally disfavored in antitrust law").

[8] *Statement of Chairman Jon Leibowitz on the Release of the Commission's Interim Report on Authorized Generics*, June 2009, http://www.ftc.gov/os/2009/06/P062105authgenstatementLeibowitz.pdf.

*Third*, two dispositive economic facts defeat Defendants' argument that the no-authorized-generic clause is a harmless "exclusive license." Economically benign exclusive licenses involve economic actors that are in a wholly vertical relationship, *i.e.*, that of supplier and distributor. The licensor/supplier in effect hires the licensee/distributor who can more efficiently distribute the product. But exclusive licenses warrant significant antitrust scrutiny when "the licensor and its licensees[] are in a horizontal relationship." DOJ and FTC, *Antitrust Guidelines for the Licensing of Intellectual Property*, Sec. 4.1.2 (April 6, 1995); *see also id.* at Sec. 5.1 ("horizontal restraints often will be evaluated under the rule of reason" but may in some circumstances be condemned under a per se or truncated analysis). Defendants here were in a horizontal relationship, *i.e.*, they were competitors, not mere supplier and distributor. As in *Actavis*, the generic manufacturer here had been actively trying to enter the market without any license at all, asserting that the patent was invalid and not infringed: "The patent here may or may not be valid, and may or may not be infringed …. The paragraph IV litigation in this case put the patent's validity at issue, as well as its actual preclusive scope." 133 S. Ct. at 2231. Given this horizontal relationship, it is reversible error "to refer . . . simply to what the holder of a valid patent could do…." *Id.* at 2230-31.

Moreover, Boehringer did not merely give an "exclusive license" to Barr – Boehringer gave that consideration *in exchange for Barr's agreement to delay entry into the market*. This Court need not decide the proper antitrust treatment of a brand manufacturer's pledge not to compete against a generic manufacturer with an authorized generic product. This case instead involves the brand manufacturer's making such a pledge in exchange for the generic manufacturer's reciprocal pledge to delay entry into the brand manufacturer's market. And *Actavis* leaves no doubt as to the proper antitrust treatment of *that* agreement.

*Fourth*, it is irrelevant that Boehringer now denies that it promised to forgo marketing an authorized generic during Barr's 180-day exclusivity. Plaintiffs' Complaint plausibly alleges that Boehringer *did* make that promise. Moreover, Barr acknowledges that it believed that Boehringer had made that promise. Therefore, *regardless of Boehringer's purported subjective but unexpressed belief*, Defendants' agreement had the anticompetitive effect of inducing Barr to delay entry.

*Finally*, End-Payors have plainly alleged that the "sweetheart deal" that Boehringer gave to Barr for promoting Aggrenox is a "large" and "unjustified" payment under *Actavis*. *Actavis* defines a "large" payment as one that is greater than the brand manufacturer's saved future litigation costs. 133 S. Ct. at 2236-37. The Complaint alleges that the parties "would not have entered the co-promotion agreement and/or would not have agreed to the price and/or other terms that they did absent Barr's agreement to delay entry into the market with generic Aggrenox," Comp. ¶81; that "payments to Barr under the Co-Promotion Agreement vastly exceed the fair value of the services provided by Barr and its subsidiaries," *id*. ¶87; that "Boehringer's payments to Barr under the Agreement are based on a percentage of total U.S. sales, not just on the far smaller percentage of sales resulting from Barr's promotion," *id*. ¶88; and that Boehringer expressly admitted that the sweetheart deal was a way for Barr to "extract settlement payments" from Boehringer, *id*. ¶89.

## II.   PLAINTIFFS ADEQUATELY ALLEGE MARKET POWER AND A RELEVANT MARKET.

Plaintiffs allege that: (a) Boehringer made very substantial payments to Barr in exchange for delaying entry, Comp. ¶¶ 2, 7, 78-95; (b) upon market entry, AB-rated generics capture significant share of branded sales, causing a significant reduction in branded unit and dollar sales, *id*. ¶¶45, 47; (c) Boehringer has the power to maintain the price of Aggrenox at supracompetitive

levels without losing substantial sales to other products, *id*. ¶110; (d) Aggrenox does not exhibit significant, positive cross-price elasticity of demand with any product other than AB-rated generic equivalents of Aggrenox, *id*. ¶111; (e) only the market entry of AB-rated generics would render Boehringer unable to profitably maintain Aggrenox prices at supracompetitive levels without losing substantial sales, *id*. ¶113; (f) Boehringer has been able to profitably maintain Aggrenox prices well above competitive levels, *id*. ¶114; and (g) Aggrenox's unique drug release profile and ratio of active ingredients differentiate Aggrenox from all products other than AB-rated generics, *id*. ¶112. For all the reasons discussed in the Direct Purchaser's brief, these allegations sufficiently allege market power and (though not required where, as here, direct evidence of market power exists) a relevant market. Indeed, *Actavis* makes clear that item (a) above – the fact that Boehringer made a substantial payment to Barr to delay entry – is *alone* sufficient to plausibly allege market power. 133 S. Ct. at 2236.

## III.   PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS.

Defendants argue that Plaintiffs lack Article III standing in states in which named plaintiffs have no purchases.[9] According to Defendants, at least one named Plaintiff must have purchased Aggrenox in every state for which Plaintiffs assert a claim. Incredibly, however, Defendants fail to cite binding precedent that squarely rejects their argument that named plaintiffs must have the exact same claim or injury as absent class members. *See Gratz v. Bollinger*, 539 U.S. 244, 265-66 (2003); *NECA-IBEW Health and Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158, 161 (2d Cir. 2012); *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). Defendants' argument defies controlling law, and confuses two separate legal concepts – Article III and "class" standing.

---

[9] Def. Mem. at 2, 21.

### A. The Second Circuit Requires Separate Analysis of Article III and Class Standing.

*NECA-IBEW Health and Welfare Fund* made explicitly clear the distinction between Article III standing—plaintiff's standing to sue defendants "in its own right"—and "class" standing—"that is, standing to assert claims *on behalf of* [other] purchasers." 693 F.3d at 158 (emphasis in original). There, the Second Circuit reversed a district court decision that a plaintiff lacked standing to represent class members that did not purchase the same securities that plaintiff purchased. *Id.* The Court conducted a methodical analysis of three distinct types of standing – Article III, statutory, and "class" standing.

First, the Court found that plaintiff had Article III standing "in its own right" because it alleged an injury fairly traceable to defendants' conduct. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Next, the Court found that plaintiff had statutory standing "in its own right" because it could assert a claim based on its purchases under the securities laws. *Id.*

Finally, the Court turned to "class standing," emphasizing that a plaintiff's standing to assert claims *on behalf of other purchasers* "does not turn on whether [plaintiff] would have statutory or Article III standing to seek recovery" for purchases not made by the plaintiff. *Id.* Plaintiff "clearly lack[ed] [statutory or Article III] standing to assert such claims on its behalf because it did not purchase those Certificates." *Id.* But the standing inquiry did not properly end there. "[T]he class standing analysis is different …."[10] *Id.* To have "class" standing, Plaintiff did not need to have the exact same claim, or injury, as absent class members. *Id.* at 162 (the district court's requirement that plaintiff "show that its injuries are *the same* as those allegedly suffered by [absent class members] was error") (emphasis in original) (internal quotations and alterations

---

[10] Many other courts have also criticized the conflation of constitutional and class standing. *See infra* at p. 13, n.8.

omitted); *see also id*. at 158 n.9 (the district court "also erred to the extent it based its conclusion

on the (mistaken) assumption that 'only when …other people bought the same securities that the

plaintiff bought' may a 'practically identically situated' plaintiff serve as their 'class

representative'" (citing *Hevesi*, 366 F.3d at 82-83 (a named plaintiff can establish typicality

under Rule 23 if the defendants committed the same wrongful acts against other class members

even if the named plaintiff lacks standing to sue on every claim asserted by the class)).

Analyzed correctly—not by erroneously conflating Article III and class standing issues as

Defendants urge—Plaintiffs meet all standing requirements for all claims asserted.

### B.       Plaintiffs Have Article III Standing.

Defendants repeatedly stress that Article III standing is a "threshold" inquiry.  Here, each

named Plaintiff satisfies this threshold inquiry.  To demonstrate Article III standing, a plaintiff

need only show that "he personally has suffered some actual or threatened injury as a result of

the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441

U.S. 91, 99 (1979); *see also Lujan*, 504 U.S. at 560-61 ("injury has to be fairly … trace[able] to

the challenged action of the defendant") (alteration in original) (citation omitted);[11] *Warth v.

Seldin*, 422 U.S. 490, 498 (1975) (plaintiff must "ma[k]e out a 'case or controversy' between

himself and the defendant within the meaning of Art. III").  Plaintiffs allege that, as a result of

Defendants' unlawful conduct, each of them paid more than they otherwise would have in the

form of overcharges. Comp. ¶¶ 10, 17-30, 133-134.  This is all that is required to establish

Plaintiffs' Article III standing. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d

367, 405 (D. Mass. 2013) ("each of the named end-payor plaintiffs has claims against each of the

---

[11] Defendants' reliance on *Lujan*'s purported "causal relation" requirement (Def. Mem. at 22) is misplaced.  *NECA-IBEW* (and other established law discussed herein) makes clear that named plaintiffs need only establish individual Article III standing, which Plaintiffs have done. *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009), a non-binding district court decision from another Circuit, is not governing law.

defendants based on their alleged overpayments. . . [and] have therefore made out their Article III requisite") (citations omitted); *Indergit v. Rite Aid Corp.*, 08-cv-9361, 2009 WL 1269250, at *3 (S.D.N.Y. May 4, 2009) ("Once a plaintiff establishes individual standing, Article III's requirements are met.").[12]

### C.     Plaintiffs Have "Class" Standing to Pursue Claims of Absent Class Members Whose Claims Arose Under the Laws of Other States.

Once a named plaintiff establishes individual Article III standing to assert her own claim, whether she also may advance claims of absent class members is determined under principles of "class standing." *NECA-IBEW Health and Welfare Fund*, 693 F.3d at 158; *see also Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (once the named plaintiff establishes that he has suffered an injury that is "real and immediate," not "conjectural" or "hypothetical," it "shift[s] the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class'"); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care LLC.*, 504 F.3d 229, 241 (2d Cir. 2007) ("[t]o establish Article III standing in a class action … for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis"); 1 William B. Rubinstein et al., Newberg on Class Actions §2:6 (5th ed. 2011) ("[W]hen a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether, and to

---

[12] Defendants' citation to cases emphasizing the application of Article III to class actions (Def. Mem. at 22-23, 25) is without consequence.  Because Plaintiffs have Article III standing in their own right, this is not a case where Plaintiffs are trying to "piggy back" on the injuries of absent class members.  *In re DDAVP Indirect Purchaser Litig.*, 903 F. Supp. 2d 198, 214 (S.D.N.Y. 2012); *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, No. 06-md-1739, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006).  Moreover, Plaintiffs do not argue that Article III should take a backseat to class standing.  To the contrary, Plaintiffs argue that this Court should analyze standing as outlined in *NECA-IBEW*.  What the Court should not do is mistake Article III standing with "class" standing issues.

what extent, the plaintiff may serve in a representative capacity on behalf of the class."); 7AA The Late Charles Alan Wright, et al., Federal Practice and Procedure §1785.1 n.12 (3d ed. 2010) (once named plaintiff establishes his own standing, "whether he will be able to represent the putative class . . . depends solely on whether he is able to meet the additional criteria encompassed in Rule 23").[13]

There simply is no requirement under governing class (or Article III) standing principles that a named plaintiff must have the exact same claim, or suffer the exact same injury, as absent class members. Instead, Defendants' proposed rule is contrary to binding Supreme Court and Second Circuit precedent and the plain text of Rule 23.

In *Gratz v. Bollinger*, a transfer student challenged the University of Michigan's admissions criteria and sought to represent a class of both transfer students and first-year students, even though they were subject to different admissions criteria. 539 U.S. at 265. The Court held that Article III did *not* require the named plaintiff and class members to have the same claim. It was sufficient that "the University's use of race in undergraduate transfer admissions

---

[13] Numerous other Courts of Appeals have held likewise. *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) (plaintiff with Article III standing is not limited to asserting "his own rights or redress[ing] his own injuries. To the contrary . . . a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered"); *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (once plaintiff establishes standing to pursue his own claims "[w]hether he is entitled to relief on any or all of those claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions"); *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (where named plaintiff has standing to assert his own claim, whether he can adequately represent the class is determined solely by Rule 23); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998) ("[O]nce the named parties have demonstrated they are properly before the court, 'the issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing.'"); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("[O]nce an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants."); *accord Shady Grove Orthopedic Assoc. v. Allstate Ins.*, 559 U.S. 393, 398 (2010) (once Rule 23 is satisfied, the court must certify the class).

does not implicate *a significantly different set of concerns* than does its use of race in undergraduate freshman admissions." *Id*. (emphasis added); *see also In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 268-69 (D. Mass. 2004) (expressly declining to apply pre-*Gratz* Eleventh Circuit precedent that purportedly imposed an identity of claims requirement).[14]

In light of *Gratz* and other Supreme Court authority, *NECA-IBEW* announced a "broad standard for class standing":

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally suffered some actual injury as a result of the putatively illegal conduct of the defendant; and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

*NECA-IBEW Health and Welfare Fund*, 693 F.3d at 162 (internal quotations and citations omitted). Rejecting the same argument Defendants make here, the Court held that the district court erred in imposing a requirement that the named plaintiff have the exact same claim as the absent class members. *Id*.; *see also Hevesi*, 366 F.3d at 82 (no requirement that a lead plaintiff has "standing to sue on every available cause of action"); *id*. at 82 n.13 ("any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff").[15]

Defendants' proposed rule also defies the very language of Rule 23(a)(3), which provides that a named plaintiff may represent the class if her claims are "typical" of the claims of the class.

---

[14] Similarly, the Supreme Court has reaffirmed that despite "dissimilarities" in the claims of the named plaintiff and class members, Rule 23's adequacy requirement is met where the "plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011).

[15] *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012), cited by Defendants, is not to the contrary. *Mahon*, which was decided before *NECA-IBEW*, simply applied the well-established Article III principal that plaintiff must establish standing against each defendant. *Id*. at 62 (describing plaintiff's failed argument that Article III permits "suits against non-injurious defendants as long as one of the defendants in the suit injured the plaintiff").

Second Circuit law is clear that claims can be "typical" without being identical.  *See, e.g.*, *Hevesi*, 366 F.3d at 82-83 (class representatives establish typicality under Rule 23 if defendants "committed the same wrongful acts in the same manner" against the class); *see also Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988) ("The 'typicality' and 'commonality' prerequisites of Rule 23 do not require that all of the putative class members share *identical* claims.") (emphasis in original); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) ("[T]here is nothing in Rule 23(a)(3) which requires named plaintiffs to be clones of each other or clones of other class members.") (internal citation omitted).

Plaintiffs here clearly have class standing; they "personally … suffered some actual … injury as a result of the putatively illegal conduct of the defendant"[16] – overcharges on Aggrenox purchases as a result of Defendants' unlawful Agreement.  And "such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."[17]  Plaintiffs allege that the exact same conduct of Defendants—the Agreement—caused injury to other class members.

The *Nexium* court reached the same conclusion in another exclusion-payment case. Defendants there also "erroneously conflate[d] the requirements of Article III, for the purposes of assessing constitutional standing of the named plaintiffs, with the procedural requirements of Rule 23, which are designed to determine whether a putative class representative for whom Article III standing has already been established may also raise claims of the class which it purports to represent." *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d at 404.[18]

---

[16] *NECA-IBEW Health and Welfare Fund*, 693 F.3d at 162.

[17] *Id.* (citation omitted).

[18] *See also Arreola*, 546 F.3d at 795 ("[T]he inherent problem with the idea of 'standing to bring a class action' is that it conflates the standing inquiry with inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative…In our view, it is best to confine the

The court refused to dismiss claims asserted under the laws of states where no named plaintiff made a purchase, because "[a]ll members of the putative class have a common interest in litigating claims arising from the Defendants' allegedly anticompetitive collusion designed to cause the End-Payors to pay supracompetitive prices across the several states." *Id.* at 407.

Courts have applied this analysis with regularity, because "it is only through a determination of typicality of claims across the various state statutes that the court will know whether standing is appropriate for all the claims asserted." *Kuhl v. Guitar Ctr. Stores, Inc.*, No. 07-cv-214, 2008 WL 656049, at *3 (N.D. Ill. Mar. 5, 2008).[19]   Indeed, courts throughout this

term 'standing' to the Article III inquiry and thus to keep it separate from plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria.") (internal citations omitted); *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) ("Once a plaintiff establishes his own standing, the question of whether a plaintiff will be able to represent the putative class[] depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Civil Rules of Procedure.   Here, Defendants have conflated standing requirements with class certification analysis….") (internal citation omitted); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011) ("The constitutional issue of standing should not be conflated with Rule 23 class action requirements."); *Edwards v. 21st Century Ins. Co.*, No. 09-cv-04364, 2010 WL 2652247, at *4 (D.N.J. June 23, 2010) ("Defendants conflate the inquiry into Plaintiff's standing to bring her claims with the separate question of whether a class representative may bring claims on behalf of class members when the claims are based on slightly different facts from those experienced by the class representative.  Once this confusion is remedied, the legal answer is clear."); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009) ("Defendants' argument appears to conflate the issue of whether the named Plaintiffs have standing to bring their individual claims with the secondary issue of whether they can meet the requirements to certify a class under Rule 23. Defendants do not contest the fact that the named Plaintiffs have standing to bring their individual claims. The Complaint makes clear that the so-called 'sister state' consumer protection laws are only implicated by members of the putative class…. Hence, the fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' calling cards is immaterial.").

[19] *See also In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612, at *11-12 (E.D. Mich. June 6, 2013); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d at 1005; *Owens v. Apple, Inc.*, No. 09-cv-0479, 2009 WL 5126940, at *4 (S.D. Ill. Dec. 21, 2009); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579-80 (M.D. Pa. 2009); *Ramirez*, 644 F. Supp. 2d at 505; *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1023-24 (S.D. Iowa 2009); *Sheet Metal Workers National Health Fund v. Amgen, Inc.*, No. 07-

Circuit have repeatedly held that named plaintiffs have standing to pursue claims on behalf of consumers under the laws of states other than those in which the named plaintiffs reside or purchased the product. *See, e.g., In re DDAVP Indirect Purchaser Litig.*, 903 F. Supp. 2d at 213–14; *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 405-07 (S.D.N.Y. 2011); *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2010); *In re Bayer Cor. Combination Aspirin Prods. Marketing and Sales Practices Litig.*, 701 F. Supp. 2d 356, 376-77 (E.D.N.Y. 2010); *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, 2006 WL 3039993, at *3; *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002).[20]

---

cv-5295, 2008 WL 3833577, at *8-9 (D.N.J. Aug. 13, 2008); *Warma Witter Kreisler, Inc. v. Samsung Electronics Am., Inc.*, No. 08-cv-5380, 2009 WL 4730187, at *2 (D.N.J. Dec. 3. 2009); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 667–68 (E.D. Mich. 2008); *Lantz v. Am. Honda Motor Co., Inc.*, No. 06-cv-5932, 2008 WL 162759, at *4 (N.D. Ill. Jan. 17, 2008); *Woodward v. Fid. Nat. Title Ins. Co.*, No. 06-cv-1170, 2007 WL 5173415, at *4 (D.N.M. Dec. 4, 2007); *In re Hypodermic Prods. Antitrust Litig.*, MDL No. 1730, No. 05-cv-1602, 2007 WL 1959225, at *15 (D.N.J. June 29, 2007); *Jepson v. Ticor Title Ins. Co.*, No. 06-cv-1723, 2007 WL 2060856, at *2 (W.D. Wash. May 1, 2007); *Potts v. United Parcel Serv., Inc.*, No. 06-cv-4766, 2007 WL 551555, at *3 (N.D. Ill. Feb. 15, 2007); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004); *In re Relafen Antitrust Litig.*, 221 F.R.D. at 267-70; *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. C-1-01-447, 2004 WL 6073010, at *4 (S.D. Ohio, June 30, 2004).

[20] These cases are among the line of cases holding that class certification issues are "logically antecedent to Article III concerns" under *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). Contrary to Defendants' suggestion (Def. Mem. at 25), *Mahon* did not "expressly … reject[]" this Supreme Court precedent – nor could it. Rather, *Mahon* confirmed that "'logical antecedence'…is relevant when resolution of class certification obviates the need to decide issues of Article III standing." *Mahon*, 683 F.3d at 65; *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 406 (class certification precedes the standing inquiry where class certification is the source of the potential standing problems); *Blessing*, 756 F. Supp. 2d at 451 (referring to "growing consensus" that class certification is "logically antecedent [] where its outcome will affect the Article III standing determination"). Here, class certification will obviate the need to decide issues of Article III standing. Once the class is certified, absent class members will have standing under their states' laws to assert claims for overcharge damages they suffered as a result of Defendants' unlawful conduct. Or, if the class is not certified, the Article III issue goes away. In such cases, dismissal of claims for lack of standing is premature. Plaintiffs'

## D.  Defendants' Other Standing Arguments Fail.

### 1.  Plaintiffs Have Standing Under Puerto Rico and Utah's Antitrust Statutes.[21]

Defendants argue that Plaintiffs do not have standing to pursue their Puerto Rico and Utah antitrust claims.  Defendants are wrong.

Puerto Rico.  The Puerto Rico Antitrust Act ("PRAA") does not distinguish between direct and indirect purchasers but provides that "*[a]ny person*" injured by acts prohibited by the statute may sue.  10 L.P.R.A. § 268 (emphasis added).  The PRAA is liberally construed and has been held by two federal district courts in Puerto Rico, after examining the legislative history, to permit indirect purchasers to bring antitrust claims for damages:

> PRAA is modeled after federal antitrust statutes. Although federal jurisprudence has implied special standing requirements into private antitrust actions … Puerto Rico explicitly rejects any such limitations …. Because Puerto Rico liberally construes its standing requirements in private antitrust cases, it is immaterial whether Plaintiffs are direct or indirect purchasers . . .

*Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57, 61 (D.P.R. 2010) (internal citations omitted).

Ten days after issuing its decision in *Rivera-Muñiz*, the District of Puerto Rico considered indirect purchaser standing a "settled matter[] of Puerto Rico law." *Rivera-Muñiz v. Horizon*

---

claims survive this motion on the additional grounds that Plaintiffs' claims "implicate[] the same set of concerns" under *NECA-IBEW*.

[21] Plaintiffs withdraw their claims under the antitrust statutes of Florida and Massachusetts, but Plaintiffs still pursue their claims under each of those states' consumer protection statutes. Plaintiffs have alleged a violation of the antitrust statute as a predicate act in violation of these consumer protection statutes. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201 *et seq.*, allows indirect purchasers to sue for damages for anticompetitive conduct as an unfair method of competition. *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 107-110 (Fla. Dist. Ct. App. 1996). Similarly, it is well-settled that Plaintiffs can bring such claims under the Massachusetts consumer protection statute. *Ciardi v. Hoffman-La Roche*, 762 N.E.2d 303, 312 & n.18. (Mass. 2002).

16

*Lines Inc.*, No. 09-cv-2081 (GAG), 2010 WL 3703737, at *1 (D.P.R. Sept. 13, 2010).   The

District of Puerto Rico reasoned:

> The Puerto Rico legislature enacted PRAA in 1964. Since then,
> federal precedents have limited standing in private antitrust actions
> under federal law to direct purchasers. Without citing *Illinois Brick*
> explicitly, the Puerto Rico Supreme Court rejected such limitations
> on standing for the purpose of private antitrust actions under
> PRAA.

*Id.* (internal citations omitted); *see also Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.*, 137

P.R. Dec. 497, 519-520 (P.R. 1994) (noting that at the time of the PRAA's enactment in 1964 the

Supreme Court "had expressed itself on behalf of a liberal standing theory under Clayton Act sec.

4" and the law should be applied "'in accordance with its plain language and its broad remedial

and deterrent objectives'" (citing *Blue Shield of Va. v. McCready*, 457 U.S. 465, 473 (1982)).[22]

 *Rivera-Muñiz* and *Pressure Vessels* present *the only* in-depth substantive analyses of

indirect purchaser standing under Puerto Rico's antitrust law. By following those decisions, this

Court will give effect to the explicit language of the PRAA, the required liberal construction of

the statute, and the legislature's intent.

 <u>Utah</u>.   On May 1, 2006, Utah amended its antitrust law, Utah Code Ann. 76-10-

3109(1)(a) (formerly cited as Utah Code Ann. 76-10-919(1)) to specifically create an *Illinois*

---

[22] Defendants' cases are distinguishable because plaintiffs there provided no authority to support the standing of indirect purchasers under Puerto Rico law.  *See In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07-md-01819 CW, 2010 WL 5094289, at *4 (N.D. Cal. Dec. 8, 2010 (noting that "Plaintiffs point to no authority that suggests that *Illinois Brick's* interpretation of federal antitrust law would not be applied to Puerto Rico law."); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 599 F. Supp. 2d 1179, 1185-86, 1188 (N.D. Cal. 2009) (relying on defendants' argument that "there are no antitrust cases in . . . Puerto Rico permitting indirect purchasers to bring suit" and concluding that it was "reluctant to find standing in the absence of an explicit *Illinois Brick* repealer, either by statute *or case law*.") (emphasis added).  Likewise, in *In re Digital Music Antitrust Litig.*, the court concluded that "any state that has not expressly passed *Illinois Brick* repealer legislation *or interpreted its law in such a way as to override the rule of Illinois Brick* is presumed to have decided to follow federal law." 812 F. Supp. 2d at 413 (emphasis added).

*Brick*-repealer provision authorizing indirect purchasers to sue. *See In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 892 (E.D. Pa. 2012).   Plaintiffs' claims arise *after* enactment of the Utah *Illinois Brick*-repealer statute.   Defendants' accusation that Plaintiffs purportedly fail to allege that the Utah claims are brought on behalf of Utah residents is demonstrably wrong.   Comp. ¶¶ 176(y); 190(v).[23]   In Utah, the consumer protection statute also allows Plaintiffs to pursue an antitrust claim. *In re Intel Corp., Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404 (D. Del. 2007).   Accordingly, Plaintiffs are not barred from commencing competition-based claims under the Utah antitrust or consumer protection statutes.

### 2.   Plaintiffs' Unjust Enrichment Claims are Not Barred by *Illinois Brick*.

Defendants incorrectly assert that certain of Plaintiffs' unjust enrichment claims constitute impermissible attempts to circumvent *Illinois Brick*.  Def. Mem. at 27-29.[24]

Plaintiffs are permitted to plead alternative causes of action.  *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (refusing to dismiss unjust enrichment claims because indirect purchasers are "clearly permitted to plead alternative theories of recovery"). Courts routinely reject the argument that unjust enrichment claims constitute impermissible circumventions of *Illinois Brick*.  For example, in *In re Cardizem CD Antitrust Litigation*, the court denied defendants' motion to dismiss unjust enrichment claims and held that defendant "confuses Plaintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws." 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000).[25]  As another court put

---

[23] Named Plaintiffs need not reside in Utah for the reasons explained *supra* at Section III.

[24] Although Defendants challenge claims brought under the laws of twenty-four (24) states, they specifically address only Pennsylvania law. *See* Def. Mem. at 28 n.22. Plaintiffs withdraw their unjust enrichment claim under the laws of Pennsylvania.

[25] *See also In re Processed Egg Prods.*, 851 F. Supp. 2d at 914-36; *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 235-243 (M.D. Pa. 2010) (examining the

it:  "No reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy."  *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008).

### 3.   Plaintiffs Have Standing to Assert Their Rhode Island State Law Claims.

Defendants contend that Plaintiffs lack standing to pursue claims before the July 15, 2013 enactment of R.I. Gen. Laws § 6-36-7(d).  Def. Mem at 30-31.  The statute expressly grants indirect purchasers antitrust standing to sue and is entirely consistent with pre-2013 judicial determinations.[26] Defendants cite *no authority* to support their assertion that this remedial statute can be applied prospectively only.  Remedial statutes may be retroactively applied.  *See Winfree v. N. Pac. Ry. Co.*, 227 U.S. 296, 301 (1913); *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 273 (1994) (noting that "application of new statutes passed after the events in suit is unquestionably proper in many situations").  Rhode Island's antitrust law is intended to "complement the laws of the United States governing monopolistic and restrictive trade practices." (R.I. Gen. Laws § 6-36-2(a)(1)).  It is therefore entitled to retroactive application.  At any rate, Plaintiffs' post-July 15, 2013 damages claims clearly should be sustained.

## IV.   PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED.

The Court may dismiss a claim based on the affirmative defense of statute of limitations only if "the Complaint, on its face, 'clearly shows the claim is out of time.'"[27] Indeed, a statute of

---

laws of several states, including Massachusetts, and rejecting defendants' argument that unjust enrichment is an end-run around *Illinois Brick*).

[26] *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1145 (N.D. Cal. 2008); *see also Auto. Parts*, 2013 WL 2456612, at *27.

[27] *Samuels v. Schultz*, No. 11-CV-6255, 2012 WL 1114095, at *2 (W.D.N.Y. Mar. 30, 2012) (citing *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999)); *see also Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11-CV-282 JCH, 2012 WL 162361, at *3 (D. Conn.

limitations motion to dismiss "should not be granted unless it *appears beyond doubt* that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."[28]

Defendants here come nowhere near meeting this standard. Instead, the Plaintiffs' Complaint makes clear that the claims are *not* barred by the statutes of limitations, because: (1) the claims did not first accrue until Plaintiffs were injured – *i.e.*, until generic entry would have occurred but for Defendants' unlawful Agreement – and the Complaint specifically alleges that the date of first injury was November 30, 2009 at the earliest; and (2) even if they had accrued before November 30, 2009, Plaintiffs' claims are timely under the "continuing violation" rule.[29]

### A.    Plaintiffs' Claims Are Timely Under The Basic Accrual Rule.

The "basic accrual" rule for antitrust claims is that they accrue when the plaintiff is *first injured* by the defendant's unlawful conduct.  Defendants argue that Plaintiffs were first injured when Defendants entered into the anticompetitive agreement.  Not so.  Unlike a competitor, a consumer is not first injured until she pays a higher price than she would have paid absent the unlawful conduct.  *See, e.g., Berkey Photo*, 603 F.2d at 295 ("although the business of the monopolist's rival may be injured at the time the anticompetitive conduct occurs, a purchaser, by

---

Jan. 19, 2012) ("[Statute of limitations] defense may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint." (citing *Velez v. City of New London*, 903 F. Supp. 286, 289 (D. Conn. 1995))).

[28] *Corporate Trade, Inc. v. Golf Channel*, No. 13-3999-CV, 2014 WL 1673731, at *1 (2d Cir. Apr. 29, 2014) (citing *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989)) (emphasis added); *see also Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999) ("[T]he survival of a Rule 12(b)(6) motion to dismiss on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred.").

[29] In light of this Court's ruling in *In re Publication Paper Antitrust Litig.*, No. 04-md-1631-SRU, 2005 WL 2175139 (D. Conn. Sept. 7, 2005), and the fact that End-Payor Plaintiffs' claims are clearly timely under the accrual and continuing violation rules, End-Payor Plaintiffs have decided to drop their fraudulent concealment allegations.

contrast, is not harmed until the monopolist actually exercises its illicit power to extract an excessive price").[30]

Plaintiffs allege that they were injured by the delayed market entry of less expensive generic versions of Aggrenox.[31]  Thus, no claim could accrue until a generic Aggrenox would have entered the market.  Plaintiffs allege that, absent the unlawful conduct, generic competition would have first occurred on November 30, 2009 at the earliest.[32]  That is when the automatic 30-month stay of FDA approval of Barr's generic Aggrenox ANDA would have expired and Barr could have first entered the market.  The first End-Payor complaint was filed on November 13, 2013,[33] within four years of November 30, 2009 – the earliest date on which the Complaint alleges that Plaintiffs were injured.[34]

Defendants assert that Plaintiffs' claims accrued not when Plaintiffs were first injured, but when Defendants entered into the Agreement.  But it is literally hornbook law that "[t]he limitations period begins to run when the cause of action accrues—ordinarily, when the plaintiff

---

[30] *See also Rite Aid Corp. v. Am. Express Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 263-64 (E.D.N.Y. 2010) ("A purchaser plaintiff's cause of action accrues when he or she actually pays an overcharge.  By contrast, a competitor plaintiff's cause of action accrues at the time of the defendant's anticompetitive conduct.").

[31] *See* Comp. ¶ 165.

[32] *See id.* ¶¶ 9, 122.

[33] *Int'l Union of Operating Eng'rs Local 132 Health & Welfare Fund*, No. 13-cv-06579 (E.D. Pa.).

[34] In alleging that generic entry would have occurred "as early as" November 30, 2009, the Complaint does not rule out the possibility that a jury may conclude that generic entry would have occurred later than that.  For example, the jury may conclude that, absent the unlawful payments, Boehringer would have granted Barr a license to enter the market in, for example, November 2011 or November 2012. The but-for entry date will be the subject of expert testimony and ultimately will have to be resolved by the jury. The point for the current motion is that nothing in the Complaint precludes that possibility that the jury will find a but-for entry date as late as, say, November 2012.  Thus, Defendants' arguments about the state law claims with one, two, or three-year statutes of limitations (whether those claims are based on antitrust, consumer protection, or unjust enrichment) also fail.

suffers injury resulting from the antitrust violation."[35]    Simply put, "two events must occur in order to begin the running of the limitations period: the act and the injury."[36]

This conclusion is backed by decades of unanimous authority.[37] And it is just plain common sense.  The courts do not want to encourage plaintiffs to sue with respect to unlawful agreements that *might* injure them but have *not yet* done so.  Thus, Defendants' limitations argument never gets out of the starting gate.   Plaintiffs' claims did not first accrue until November 30, 2009, the date of Plaintiffs' first alleged injury.[38]

### B.    Plaintiffs' Claims Are Timely Under the "Continuing Violation" Rule.

Even if Defendants could somehow overcome the accrual hurdle, Plaintiffs' claims are timely under the "continuing violation" rule.  An antitrust defendant that has committed overt

---

[35] ABA Section of Antitrust Law, *Antitrust Law Developments*, at 807 (7th ed. 2012).

[36] *Marcus Corp. v. Am. Express Co.*, No. 04-cv-5432, 2005 WL 1560484, at *2 (S.D.N.Y. July 5, 2005).

[37] *See, e.g.*, *Zenith Radio v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971); *Berkey Photo,* 603 F.2d at 295; *Morton's Mkt. Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d at 399-402; *KFC Corp. v. Marion- Kay Co., Inc.*, 620 F. Supp. 1160, 1167 (S.D. Ind. 1985).

[38] Defendants argue that because trial in Defendants' patent litigation was scheduled for May 2009, Barr—if it won the case—would have been "free from a regulatory perspective to start selling its product well before November 2009." Def. Mem. at 24-25. Defendants alternatively argue that Plaintiffs' claims accrued no later than August 14, 2009, when the FDA approved Barr's ANDA for generic Aggrenox. *Id*. at 22-24. These arguments fail for several reasons. First, it is unlikely that the patent trial would have actually taken place in May 2009 as originally scheduled. Even by the time of settlement in early August 2008, the litigation was already running months behind schedule. For example, the opening claim construction brief originally due June 13, 2008 had been pushed to August 22, 2008 and the July 2008 *Markman* hearing was postponed until October 2008. *See* Minute Order, *Boehringer Ingelheim Pharma GmbH & Co. KG v. Barr Labs. Inc.*, No. 07-cv-00432 (July 23, 2008).  Second, the August 14, 2009 date is completely irrelevant because Plaintiffs must prove causation based on what would have happened in a world *absent* Defendants' unlawful Agreement. If Defendants had entered a lawful no-exclusion-payment settlement agreement, there is absolutely no reason Boehringer would have licensed Barr to enter prior to the expiration of the 30-month stay. Regardless, a motion to dismiss must be based on the *pleadings* and these factual disputes are inappropriate at this stage. *See Michelle Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, No. 97 CIV. 6837 (SAS), 1997 WL 724575, at *5 (S.D.N.Y. Nov. 18, 1997) ("a fact issue … cannot be determined on a motion to dismiss").

acts in furtherance of a conspiracy during the statutory period has no claim to the repose of the statute of limitations.[39] Defendants argue that the continuing violation rule is inapplicable because all of Plaintiffs' injuries flow from an antitrust violation that was complete the day they entered into the unlawful agreement.  Defendants are wrong on both the law and facts.

### 1.   Defendants Committed Overt Acts by Charging Supracompetitive Prices to Plaintiffs.

Boehringer and Barr entered an unlawful, ongoing horizontal market allocation agreement.  In relevant economic substance, the Agreement is no different than those reached by price-fixing cartels.[40] Their Agreement has brought about a series of unlawful overcharges that Defendants extracted from Plaintiffs and then shared between themselves by means of Boehringer's payments to Barr/Teva.

The Supreme Court has held that a separate cause of action accrues to purchasers each time defendants charge them an unlawfully high price—a high price that defendants' ongoing conspiracy makes possible.[41] The Court summarized its cases on this issue:

> Antitrust law provides that, in the case of a "continuing violation," say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, "*each overt act that is part of the violation and that injures the plaintiff,*" e.g., *each sale to the plaintiff, "starts the statutory period running again*, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.[42]

---

[39] *See, e.g., Berkey Photo*, 603 F.2d at 295.

[40] *See California Dental Ass'n v. FTC*, 526 U.S. 756, 777 (1999) (in general, "raising price, reducing output, and dividing markets have the same anticompetitive effects") (citation omitted); Julian O. von Kalinowski, *Antitrust Laws and Trade Regulation* § 162.02[2][d] (2d ed. 2003) (same statute-of-limitations rules apply to claims "involv[ing] price fixing, or some other form of cartel behavior that raises prices, such as dividing markets or customers").

[41] *See, e.g., Zenith Radio Corp.*, 401 U.S. at 338; *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968).

[42] *Klehr*, 521 U.S. at 189 (1997) (quoting 2 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, ¶338b (rev. ed. 1995), at 145 (footnote omitted)) (emphasis added).

The seven Courts of Appeals that have addressed the issue have reached the same conclusion.[43]

So have numerous district court decisions.[44] And, contrary to Defendants' assertions, the Second

Circuit is in accord with this unbroken line of authority.  As explained by a Court in this Circuit:

---

[43] *See, e.g., In re Wholesale Grocery Products Antitrust Litig.*, 752 F.3d 728, 736 (8th Cir. 2014) ("Under *Klehr* a monopolist commits an overt act each time he uses unlawfully acquired market power to charge an elevated price."); *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) ("[T]he Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act."); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 291 (4th Cir. 2007) ("[P]laintiffs' claims would be timely even under a one-year limitations period so long as the plaintiffs made a purchase from the Defendants within a year before the complaints were filed."); *Morton's Mkt., Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) ("when sellers conspire to fix the price of a product, each time a customer purchases that product at the artificially inflated price, an antitrust violation occurs and a cause of action accrues") (citation omitted); *Imperial Point Colonnades Condo. Inc., v. Mangurian*, 549 F.2d 1029, 1043-44 (5th Cir. 1977) (reversing grant of summary judgment where plaintiffs paid inflated rents during the four years prior to filing where plaintiffs bought their condominium units and became parties to the recreational lease more than four years before commencing suit); *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1172 (3d Cir. 1993) (observing the plaintiffs had satisfied their burden of establishing a continuing violation when they showed an injurious act that continued into the limitations period, namely, artificially inflated dock handling rates); *Berkey Photo*, 603 F.2d at 295 ("although the business of the monopolist's rival may be injured at the time the anticompetitive conduct occurs, a purchaser, by contrast, is not harmed until the monopolist actually exercises its illicit power to extract an excessive price").

[44] *See, e.g., In re Buspirone Patent Litig.*, 185 F. Supp. 2d at 380 (purchaser plaintiffs' claims are timely "to the extent that the claims are based on allegations of injury arising from purchases of Buspar at allegedly inflated prices beginning four years prior to the filings of their respective [c]omplaints"); *In re Pool Products Distribution Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367, 400 (E.D. La. 2013) ("[P]laintiffs have alleged overt anticompetitive acts and resulting injury to plaintiffs in the form of overcharges for Pool Products within the limitations period....Plaintiffs may therefore recover for overcharges paid in the four-year period before filing suit."); *Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd*., No. 08-cv-00042, 2011 WL 7053807, at *48 (E.D.N.Y. Jan. 4, 2011), report and recommendation adopted, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ("The statute of limitations for antitrust litigation runs from the most recent injury caused by the defendants' activities rather than from the violation's inception. Therefore, as the defendants continued to cause injury (through sales) into the limitations period, these claims would be timely.") (citations omitted); *Allen v. Dairy Farmers of Am., Inc*., 748 F. Supp. 2d 323, 349 (D. Vt. 2010) ("the every-purchase-equals-a-new-violation-theory is applicable to Plaintiffs' price-fixing claims"); *In re Aspartame Antitrust Litig*., No. 2:06-CV-1732, 2007 WL 5215231, at *3 (E.D. Pa. Jan. 18, 2007) (claims accrue "when the plaintiff purchases the product at a price inflated due to anti-competitive conduct. Harm resulting from each purchase is viewed individually to determine its timeliness") (citation

The Second Circuit has applied [the continuing violation] doctrine in antitrust cases, following the Supreme Court's holding in *Zenith Radio Corp v. Hazeltine Research, Inc.* that [i]n the context of a continuing conspiracy to violate the antitrust laws...[usually,] each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and...as to those damages, the statutes of limitations runs from the commission of the act. This means that, if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date. Under this rule, courts in this circuit will allow a plaintiff to recover for injuries that occur within the four-year statute of limitations period

---

omitted); *Meijer, Inc. v. 3M*, No. 04-5871, 2005 WL 1660188, at *4 (E.D. Pa. July 13, 2005) ("[C]ourts have held that . . . the requisite injurious act within the limitations period can include being overcharged as the result of an unlawful act which took place outside the limitations period but continued to allow the defendant to maintain market control."); *Molecular Diagnostics Labs. v. Hoffmann-LaRoche, Inc.*, 402 F. Supp. 2d 276, 286 (D.D.C. 2005) ("That [plaintiff] is litigating this action as a purchaser, not a competitor, is a critical distinction .... Because [plaintiff] is a purchaser, not a competitor, each time [plaintiff] was allegedly forced to pay a supra-competitive price as a result of [defendants'] anticompetitive conduct, a separate injury accrued.") (citation omitted); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004) ("Here, plaintiffs have alleged that they were overcharged and paid supra-competitive prices for K-Dur as a result of Defendants' settlement agreements. As such it appears that plaintiffs' claims are not barred by the statute of limitations to the extent that they bought and overpaid for K-Dur within the applicable time limitations."); *Exhaust Unlimited, Inc. v. Cintas Corp.*, 326 F. Supp. 2d 928, 931 (S.D. Ill. 2004) ("The statute of limitations for antitrust litigation runs from the most recent injury caused by the defendants' activities rather than from the violation's inception. [Plaintiff]'s complaint alleges that [defendant] imposed an environmental charge as late as February 2001, which is within the four-year period preceding the complaint, and that each imposition of an environmental charge caused additional antitrust injury.  Under established principles, this suffices so as to bring a timely antitrust claim under the Sherman Act.") (internal quotation marks and citations omitted); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2000 WL 1475559, at *6 (E.D. Pa. Oct. 4, 2000) ("each overt act that is part of the violation and that injures the plaintiff, e.g., each sale of linerboard or linerboard-based products to the plaintiffs, starts the statutory period running again") (internal quotation marks and citations omitted); *Thomas v. Petro-Wash, Inc.*, 429 F. Supp. 808, 812 (M.D.N.C. 1977) ("The plaintiff contends that the sale of gas under the lease agreement constitutes an overt act committed pursuant to the conspiracy of the defendants to violate the antitrust law.  The Court agrees with this proposition.  Therefore, when a private cause of action is based upon a continuous invasion of one's rights; i.e., the sale of gas, the plaintiffs' cause of action accrues from day to day as his rights are invaded to his damage.").

for antitrust actions, even if the underlying antitrust action that caused the injury occurred outside the statute of limitations.[45]

A very recent Ninth Circuit opinion on this issue lends even more support. In the *Oliver* case, purchasers of digital memory cards alleged the defendant manufacturers violated federal and state antitrust laws by conspiring to fix the price of the cards and engaging in improper licensing practices.[46] The unlawful agreements underpinning the pricing and licensing allegations dated to 2003 and 2006 but the plaintiffs did not bring suit until March 2011, more than four years after the second agreement.[47] The district court dismissed the action as untimely but the Ninth Circuit reversed, stating "the Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act."[48]

Likewise, an even more recent Eight Circuit opinion, *In re Wholesale Grocery Products*, rejects Defendants' arguments. In *Wholesale Grocery,* a small, family-owned grocery store accused two large grocery wholesalers of unlawfully dividing the market and inflating wholesale prices in violation of the federal Sherman and Clayton Acts.[49] The defendants reached agreement in late 2003, approximately five years before the grocery store filed suit, but failed in their efforts to dismiss the case on statute of limitations grounds.[50] Affirming the lower court's decision on the issue, the Eighth Circuit held:

> If the wholesalers' logic were accepted, two parties could agree to divide markets for the purpose of raising prices, wait four years to raise prices, then reap the profits of their illegal agreement with impunity because any antitrust claims would be time barred. That

---

[45] *de la Fuente*, F. Supp. 2d at 268 (citations and quotations omitted).
[46] *Oliver*, 751 F.3d at 1083.
[47] *Id*. at 1084-85.
[48] *Id*. at 1086 (citing *Klehr*, 521 U.S. at 189, as well as Court of Appeals decisions from the Fourth, Ninth, and Eleventh Circuits).
[49] *In re Wholesale Grocery Products*, 752 F.3d at 729.
[50] *Id*. at 730-32.

> is not the law. Under *Klehr*, a monopolist commits an overt act
> each time he uses unlawfully acquired market power to charge an
> elevated price.[51]

In other exclusion-payment cases, the courts agree that purchases within the limitations period start the statute anew. *In re Skelaxin (Metaxalone) Antitrust Litig.*,[52] exhaustively reviewed the precedent and held that purchaser plaintiffs "should be allowed to proceed with their claims because—even if most or all of the overt acts alleged as part of the continuing conspiracy occurred outside the limitations period—[p]laintiffs have sufficiently alleged those acts resulted in [p]laintiffs being overcharged for metaxalone well into the limitations period."[53]

Defendants attempt to respond to this vast line of authority by citing two cases: *United States v. Grimm*[54] (and the follow-on civil cases) and *In re Ciprofloxacin Hydrochoride Antitrust Litig.*[55]  Each of these attempts fails. First, *United States v. Grimm* is a criminal statute of limitations case and is therefore inapposite.  The Supreme Court has made clear that there is a special statute of limitations rule for civil consumer claims, *i.e.*: "each sale to the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality of much earlier times."[56]  Indeed, one of the *Grimm* civil cases clearly recognizes that "each overt act that is part of the violation and that injures the plaintiff, e.g., *each sale to the plaintiff*, starts the statutory period running again."[57] Moreover, unlike the plaintiffs in the

---

[51] *Id*. at 736.

[52] No. 12-md-2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013).

[53] *Id*. at *29.

[54] 738 F.3d 498 (2d Cir. 2013).

[55] 261 F. Supp. 2d 188 (E.D.N.Y. 2003).

[56] *Klehr*, 521 U.S. at 189.

[57] *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 519 (S.D.N.Y. 2009) (citing *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 191 (S.D.N.Y. 2000)) (emphasis added).

*Grimms* civil cases, Plaintiffs in this case specifically allege that *each overcharge* within the limitations period constituted an overt act.[58]

Defendants' reliance on the *Cipro* case is equally misplaced. First, the statute of limitations issues in *Cipro* were directed to certain advocacy group plaintiffs who had never purchased Cipro, directly or indirectly, were "not consumers," and "were not intended to be members of the [indirect purchaser] class."[59] As just discussed, purchaser plaintiffs have different rules. Thus, the question of purchaser overcharges was *not even at issue* in *Cipro*.

### 2. Defendants Committed Numerous Other Continuing Overt Acts.

If required, Plaintiffs could readily show many other overt acts in addition to Defendants' ongoing extraction of overcharges.

#### a. Teva/Barr's Refusal to Enter the Market

Barr/Teva's continued refusal to enter the market constitutes additional overt acts in furtherance of the conspiracy.[60] This is not a case where a monopolist unilaterally obtains exclusion of a rival through some one-time, once-and-for-all anticompetitive act (*e.g.*, acquiring the rival or driving him out of business). Barr/Teva has not entered the market because it is continuously adhering to an agreement not to enter—an agreement that it could have renounced and quit adhering to at any time. Because it has long been the rule that "[a] conspiracy thus continued is in effect renewed during each day of its continuance,"[61] Barr/Teva's continuous refusal to enter continually re-sets the statute of limitations.

---

[58] *See* Comp. ¶ 162.

[59] *Cipro*, 261 F. Supp. 2d at 220.

[60] As Barr/Teva's co-conspirator, Boehringer shares responsibility for this ongoing refusal to enter. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253-54 (1940).

[61] *United States v. Borden Co.*, 308 U.S. 188, 202 (1939) (citation omitted); *see also United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 628 (7th Cir. 2003) ("The parties' decision to keep a joint venture in operation or manage the operations in ways that may violate antitrust rules is one that may be challenged when adverse effects are felt."); *Pa. Dental Ass'n v. Med.*

Here Defendants have caused, and continue to cause, anticompetitive harm not by a one-time act but by continual adherence to an ongoing agreement. Hence, "the defendant could quit causing the injury of which the plaintiff complains at any time, simply by not enforcing or collecting benefits under the contract in question."[62]   Plaintiffs' claims are timely because "the violation is not 'final at its impact . . . or . . . by its nature permanent at initiation without further acts.'"[63]

        **b.**        **Boehringer's Refusal to Launch a Competing Generic**

Defendants' Agreement also provides that once Barr/Teva finally enters the market, Boehringer will not compete with respect to generic Aggrenox.[64] Similar to Barr/Teva's refusal to enter the market until July 1, 2015, Boehringer's refusal to enter the market with a competing generic will result in End-Payor Plaintiffs incurring additional overcharges in furtherance of the conspiracy. Defendants cannot immunize the additional, different, and accumulating injury that

---

*Serv. Ass'n of Pa.*, 815 F.2d 270, 278 (3d Cir. 1987) ("[T]he conspiracy charged by Blue Shield is a continuing one and that its effects continued well into the four-year period…. Most of the offending [agreements] have never been rescinded."); *Nat'l Souvenir Ctr., Inc. v. Historic Figures, Inc.*, 728 F.2d 503, 510 (D.C. Cir. 1984) ("the 'overt act' requirement may be satisfied merely by the parties continuing to maintain contractual relationships that directly affect competition"); *Maricopa Cnty. v. Am. Pipe & Const. Co.*, 303 F. Supp. 77, 82 (D. Ariz. 1969), *aff'd*, 431 F.2d 1145 (9th Cir. 1970) ("A conspiracy of the nature here alleged is a continuing one and is in effect renewed during each day of its continuance."); *In re SE Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 947 (E.D. Tenn. 2008) ("A conspiracy is presumed continuing where there is an agreement to eliminate competition with no 'affirmative showing of the termination of that agreement.'").

[62] *Imperial Point*, 549 F.2d at 1037 ("[I]t does not lie well in the mouth of a defendant to argue that he is immunized . . . because a pre-limitations contract, alleged to be unlawful in itself or the product of an unlawful conspiracy, purports to authorize the commission of such acts.").

[63] *Id.*; *see also United States v. Kissel*, 218 U.S. 601, 608 (1910) ("If [defendants] do continue such efforts in pursuance of the plan, the conspiracy continues up to the time of abandonment or success.").

[64] Comp. ¶¶ 90-94.

Boehringer's refusal to launch an authorized generic will cause by having agreed to cause that harm in August 2008.[65]

### c.   Boehringer's Continuing Payments Under the Co-Promotion Agreement

Defendants are today still in the midst of performing another one of the principal aspects of their market-allocation agreement. That is, pursuant to the Co-Promotion Agreement between Boehringer and Barr/Teva, Boehringer agreed to make quarterly payments (based on annual increasing royalties on the total U.S. Aggrenox sales) through July 1, 2015.[66] The total value of these payments is an estimated $120 million and counting.[67] The Co-Promotion Agreement "did not permanently and finally control the acts of" the Defendants in this case,[68] and even where the overt acts could be viewed as "manifestations of decisions made or acts done outside the limitations period," each payment constitutes an overt act justifying the application of the continuing violation doctrine.[69]

### C.   The Same Statute of Limitations Principles Apply to Plaintiffs' State Law Claims.

As Defendants emphasize on the first page of their brief, "virtually every state law invoked" by End-Payors "should be interpreted harmoniously with federal law."[70] Plaintiffs' state law claims are thus timely for all the reasons stated above.  More specifically, thirty-four of the state antitrust and/or consumer protection statutes enjoy at least a four-year statute of

---

[65] *See, e.g., United States v. Stewart*, 12-2395, 2014 WL 715800, at *4 (1st Cir. Feb. 26, 2014) (conspiracy remains in effect until "the conspiratorial object was achieved"); *United States v. Ramallo-Diaz*, 455 F. Supp. 2d 22, 28 (D.P.R. 2006) (complaint timely when conspiracy is ongoing and "'at least one overt act in furtherance of the conspiratorial agreement was performed within that period'" (quoting *Grunewald v. United States*, 353 U.S. 391, 396-7, (1957)).

[66] *See* Comp. ¶ 79.

[67] *Id.*

[68] *Oliver*, 751 F.3d at 1087 n.5.

[69] *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 106 (3d Cir. 2010).

[70] Def. Mem. at 1-2.

limitations.[71] Thus, Plaintiffs' claims under these state statutes are timely under the basic accrual and continuing violation rules. As to the remaining fourteen states' laws,[72] at a minimum the continuing violation doctrine applies.[73] Regarding Plaintiffs' unjust enrichment claims, fourteen states employ at least a four-year statute of limitations, making Plaintiffs' claims timely in those states for the reasons discussed above.[74] Moreover, because a claim for unjust enrichment does not accrue until all of its elements are present, Plaintiffs' claims are timely even in those states with less than a four-year statute of limitations[75] to the extent that purchases were made during the applicable limitations period.[76]

---

[71] Arizona AT, California AT/CP, District of Columbia AT, Florida AT/CP, Hawaii AT/CP, Illinois AT, Iowa AT, Massachusetts AT/CP, Michigan AT, Minnesota AT, Missouri CP, Nebraska AT/CP, Nevada AT/CP, New Hampshire AT, New Mexico AT/CP, New York AT, North Carolina AT/CP, North Dakota AT, Oregon AT, Puerto Rico AT, Rhode Island AT/CP, South Dakota AT, Utah AT, and West Virginia AT/CP.  *See* Def. Mem. at 17-19.

[72] Arizona CP, District of Columbia CP, Illinois CP, Iowa CP, Idaho CP, Kansas AT/CP, Mississippi AT, Montana CP, New Hampshire CP, New York CP, Tennessee AT/CP, and Utah CP. Def. Mem. at 17-19. Defendants have not challenged Plaintiffs' antitrust or consumer protection claims under Maine, Vermont, or Wisconsin state law or Plaintiffs' Michigan consumer protection claim on statute of limitations grounds.

[73] *See In re Skelaxin*, 2013 WL 2181185, at *32 (recognizing applicability of continuing violation doctrine to state antitrust and consumer protection statutes); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d at 381 (denying motion to dismiss plaintiffs' state law claims on statute of limitations grounds "to the extent that the claims are based on allegations of injury arising from purchases .. at allegedly inflated prices beginning four years prior to the filings"); *see also* Appendix A, individually addressing each statute with less than a four-year limitations period.

[74] Connecticut, Georgia, Florida, Idaho, Illinois, Iowa, Kentucky, Missouri, Nebraska, Nevada, New Mexico, North Dakota, Utah, and Wyoming.  *See* Def. Hum. Mem. at 10, n.14-15.

[75] Alaska, Arizona, Arkansas, California, Colorado, Delaware, District of Columbia, Kansas, Maryland, Mississippi, Montana, New Hampshire, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and Washington.  *See* Def. Hum. Mem. at 9-10, n.12-13. Defendants have not challenged Plaintiffs' unjust enrichment claims under the laws of Alabama, Louisiana, Maine, Massachusetts, Michigan, Minnnesota, New York, Puerto Rico, Rhode Island, South Dakota, Vermont, or Wisconsin on statute of limitations grounds.

[76] Restatement (Third) of Restitution and Unjust Enrichment § 70, Comment f (2011) ("The accrual of a claim in restitution or unjust enrichment is governed by the same general logic as any other sort of claim: in effect, the claim accrues at the point when the eventual action might first have been successfully brought. … [N]umerous decisions reiterate that a claim for indemnity or contribution accrues at the time of payment by the claimant. … In [some]

Defendants' laches arguments regarding unjust enrichment claims under five states' laws (Connecticut, Hawaii, New Jersey, Oregon, and West Virginia) likewise fail.  Defendants do little aside from reciting the basic elements necessary to establish laches. They do not explain how End-Payors lacked diligence or how Defendants have suffered prejudice. There is no lack of diligence—indeed, as described above, Plaintiffs' claims are timely. And Defendants have suffered no prejudice. Defendants' vague claim that they have "rel[ied] on a business arrangement that by all accounts was (and remains) lawful" is insufficient to establish prejudice.[77] Finally, this argument is inappropriate at this stage of litigation.[78]

## V. DEFENDANTS' "ADDITIONAL REASONS" FOR DISMISSING PLAINTIFFS' STATE ANTITRUST LAW CLAIMS MUST BE REJECTED.

### A. Plaintiffs Allege a Sufficient Nexus to Intrastate Commerce.

Contrary to Defendants' arguments (Def. Mem. at 31), Plaintiffs allege a sufficient nexus to intrastate commerce in their District of Columbia, Mississippi, New York, Tennessee, and Wisconsin antitrust claims.   Plaintiffs explicitly allege that (a) Defendants' conduct had

---

situations, the defendant's wrongful conduct toward the claimant antedates the point at which the defendant acquires the benefit later characterized as unjust enrichment. .... [Such] cases are governed by the general rule that a cause of action in restitution does not accrue until all its elements are present. … [T]here is no unjust enrichment before there has been enrichment."); *see also* 54 C.J.S. Limitations of Actions § 196 (2014) (statute of limitations for unjust enrichment "begins to run when the injury occurs"); *accord Tennille v. Western Union Co.,* 751 F. Supp. 2d 1168 (D. Colo. 2010) (applying continuing violation doctrine to unjust enrichment claims).  As noted *supra* at fn. 34, Plaintiffs' claims with less than a four-year statute are also timely to the extent the jury determines that Plaintiffs' injury occurred after November 2009.

[77] 27A Am. Jur. 2d Equity § 143 ("Generic claims of prejudice … do not suffice for a laches defense."); 30A C.J.S. Equity § 147 (2014) ("Prejudicial harm does not occur merely because one loses what he or she otherwise would have kept. … Prejudice is not presumed, but rather must be affirmatively demonstrated.").

[78] 5 Fed. Prac. & Proc. Civ. § 1277 (3d ed.), *Raising Affirmative Defenses by Motion* ("[T]he defense of laches, although similar to a limitations defense, involves more than the mere lapse of time and depends largely upon questions of fact. Thus, … a motion to dismiss generally is not a useful vehicle for raising the issue."); *see also Needham v. Cruver,* 19 Del. J. Corp. L. 383, 393 (Del. Ch. 1993) ("Defendants' motion to dismiss on the grounds of laches must be denied because whether a delay is unreasonable normally is a question of fact unsuited to be decided on a motion to dismiss.").

substantial intrastate effects in that, among things, retailers within each state were foreclosed from selling generic Aggrenox to in-state purchasers, Comp. ¶137; and (b) Defendants' unlawful Agreement affected commerce in each state and resulted in overcharges to end-payors in every state, *id*.

It is well settled that a complaint alleging a nationwide antitrust violation satisfies "intrastate" pleading requirements. *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 408 (collecting cases and finding plaintiffs' allegations of a nationwide conspiracy affecting commerce within the states to satisfy intrastate conduct requirements under the antitrust laws of the District of Columbia, Tennessee and Wisconsin).  The logic behind this is straightforward – a nationwide antitrust violation decreases competition in each state, thereby increasing the price of goods paid by consumers in each state. *See In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d at 665-70; *In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997).

An effect on commerce within each state is a sufficient nexus to intrastate commerce. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612, at *20-21 (E.D. Mich. June 6, 2013) (similar allegations sufficient to satisfy the intrastate requirements of the antitrust laws of the District of Columbia, Mississippi, and New York).  Accordingly, Plaintiffs have satisfied "intrastate" pleading requirements for the District of Columbia,[79] Mississippi,[80] New York,[81] Tennessee,[82] and Wisconsin.[83]

---

[79] *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 408; *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 411−14 (D. Del. 2007); *Processed Egg Prods.*, 851 F. Supp. 2d at 887-891.

[80] *In re DDAVP*, 903 F. Supp. 2d at 230; *Processed Egg Prods.*, 851 F. Supp. 2d at 887-891.  Defendants' characterization of *DDAVP* (Def. Mem. at 32) is clearly wrong.  Plaintiffs in that case did not reside or claim injury in Mississippi.  *DDAVP*, 903 F. Supp. 2d at 213 (named plaintiffs were residents of Florida, Pennsylvania and Illinois).  *DDAVP* ruled that the named plaintiffs had standing to assert claims under the laws of states in which they did not reside or suffer injury, including Mississippi.  *Id*. at 213-14.  It was therefore not necessary for *named*

33

### B.    Plaintiffs Have Monopolization Claims Under New York, Kansas, and Tennessee Law.

Plaintiffs voluntarily dismiss their monopolization claims under the Kansas, New York, and Tennessee antitrust laws, but Plaintiffs are entitled to challenge Boehringer's monopolization under those states' consumer protection laws.   *See DDAVP*, 903 F. Supp. 2d at 228 (monopolization claim upheld under N.Y. Gen. Bus. Law § 349); *Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 514 (1988) (the Kansas Consumer Protection Act "is to be construed liberally to promote the objective, among others, of protecting consumers from suppliers who commit deceptive and unconscionable acts.  Kan. Stat. Ann. 50-626(b) provides a non-exclusive list of examples of prohibited unconscionable acts…"); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1154 (D. Kan. 2003) (sustaining claims under both

---

*plaintiffs* to have purchases of the drug at issue in Mississippi in order to allege a sufficient connection to intrastate trade under the Mississippi Antitrust Act.  *Id.* at 230.  The Act requires "that the product be incorporated into the general mass of property in the state" and that "*some activity*…took place in Mississippi…related to Defendants' allegedly unlawful conduct."  *Id.* (internal quotations and citations omitted) (emphasis added).

[81] *Wellbutrin SR*, 737 F. Supp. 2d at 399 n.7; *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 664 (E.D. Mich. 2011).  Defendants' reliance on *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03 Civ. 5889(DAB), 2005 WL 323750, at *5 (S.D.N.Y Feb. 9, 2005), is misplaced.  That was a ruling on a motion to remand in which the plaintiffs failed to "put forth any specific allegations … of impact on intrastate commerce."  Plaintiffs here have explicitly alleged that Defendants' Agreement had anticompetitive intrastate effects in New York and nationwide.

[82] *In re Digital Music Antitrust Litig*ation, 812 F. Supp. 2d at 408; *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d at 666-67.  Defendants' reliance on *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. April 9, 2013) is misplaced as those plaintiffs failed to allege any Tennessee-specific antitrust activities or effects.  Here, Plaintiffs allege that they paid substantially higher prices for Aggrenox – a substantial effect on Tennessee commerce in violation of Tennessee's antitrust statute, Tenn. Code. Ann. §§ 47-25-101, *et seq.* Comp. ¶¶ 127, 137, 176(u), and 198 (v).

[83] *In re Digital Music Antitrust Litig*ation, 812 F. Supp. 2d at 408; *Sheet Metal Workers Nat. Health Fund v. Amgen, Inc.*, No. 07-cv-5295-SRC, 2008 WL 3833577, at *12; *Meyers v. Bayer Corp.*, 303 Wis. 2d 295, 435 N.W.2d 448, 464  (2007) (holding that purchasers of the prescription antibiotic Cipro were "substantially affected" by Defendants' monopolistic prices in violation of the Wisconsin antitrust statute despite that plaintiffs alleged a nationwide conspiracy).

federal antitrust law and Kansas Consumer Protection Act); *Blake*, 1996 WL 134947, at *5-7 (indirect purchasers could challenge unilateral anticompetitive conduct under the Tennessee Trade Practices Act).

## VI.   PLAINTIFFS HAVE PROPERLY PLED CONSUMER LAW CLAIMS.

Ignoring the claims and facts actually pleaded by Plaintiffs, Defendants move to dismiss nearly every consumer protection statutory claim by arguing a laundry list of perceived problems. Def. Mem. at 35. Defendants' challenges to Plaintiffs' state consumer law claims ignore Plaintiffs' detailed allegations, misconstrue the applicable law and should be rejected.

### A.   Plaintiffs Need Not Allege Deception or Reliance Under the Consumer Protection Laws of California, Illinois, Iowa, Maine, Michigan, Nevada, Rhode Island, Tennessee, Utah, West Virginia, District of Columbia, Kansas and New Mexico.

Defendants move to dismiss the consumer protection claims in 14 of the 24 pleaded jurisdictions, insisting that deception and reliance is required in 11 states and unconscionable conduct must be alleged in the additional three states. Def. Mem. at 35-37.[84]   Because deception and reliance are not necessary elements of these state laws and paying a higher price than is fair is sufficient to state claims for unconscionable conduct, Defendants' arguments fail.

First, a word about consumer protection statutes:  Every state has one; most statutes cover various types of conduct, or "prongs."  Those prongs are written in the disjunctive and include, generally, *deceptive* acts, *unfair* practices or *unconscionable* acts.[85]  Courts have routinely held that state consumer protection statutes do not enumerate one cause of action, but rather grant

---

[84] *See* Def. Mem. at Section V and Attachment 4.

[85] *See, e.g.*, the New Mexico Unfair Practices Act (NMUPA), which prohibits both "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."  N.M. Stat. Ann. § 57-12-3; the Rhode Island Unfair Trade Practice and Consumer Protection Act ("RIUTPCPA"), which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I. Gen. Laws § 6–13.1–2; and the Illinois statute, which covers "Unfair methods of competition and unfair or deceptive acts or practices."  815 Ill. Comp. Stat. 505/2.

broad remedies flowing from either unfair competition generally or other, more particular claims such as fraud. *See, e.g., In re Auto. Parts Antitrust Litig*., No. 12-MD-02311, 2013 WL 2456612, at *23 (E.D. Mich. June 6, 2013); *Processed Egg Prods*., 851 F. Supp. 2d at 894; *Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkline*, *PLC*,  737 F. Supp. 2d 380, 406 (E.D. Pa. 2010) ("*Wellbutrin SR*").

To support its "deception is required" argument, Defendants cite to the one state—New York—that has a unique, one-prong statute covering only deceptive acts, implying to the Court that the New York statute is representative of other states' statutes.[86]  Defendants ignore the disjunctive clauses in all the other states' statutes, which is fatal to Defendants' argument.

In the jurisdictions other than New York, Plaintiffs allege claims under the unfair competition, acts or practices prong.  Comp. ¶ 204.  When alleging claims of unfairness or unconscionability, no allegations of deception or reliance are necessary.  *See Boschma v. Home Loan Ctr., Inc.*, 129 Cal. Rptr. 3d 874, 893 (Cal. Ct. App. 2011) (as the statute is written in the disjunctive, a plaintiff need only allege that the defendant's conduct is unlawful, unfair *or* fraudulent under the California statute). Indeed, for all but one of the states Defendants challenge, the plain language of the statutes indicates that neither fraud nor deceit is a necessary element of the claims.[87]

If a plaintiff alleges facts sufficient to state a claim under one prong, the court need not determine whether plaintiff has alleged facts sufficient to state a claim under a different prong.[88]  Thus, even if Defendants were right that deception and reliance is required under one prong of

---

[86] *See* Def. Mem. at 35. New York's statute is separately addressed *infra* at p. 41
[87] *See, e.g., In re Ditropan XL Antitrust Litig*., 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007) (under California statute, fraud or reliance is not required for "claims which fall under the unfair or unlawful prongs").
[88] *In re Ditropan XL Antitrust Litig*., 529 F. Supp. 2d at 1106.

these 14 jurisdiction's statutes, Defendants have not addressed the unfairness or unconscionable conduct prongs, and the Court should reject the entirety of their argument out of hand.

For each state challenged, courts have held that state laws' "unfairness" prong does not require allegations of deception and reliance. California: *See, e.g., In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d at 894 (stating that "antitrust violations can constitute 'unfair competition' under the [California] UCL");[89] Illinois: *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 98 (D. Mass. 2008) (certifying claims under Illinois' consumer statute on behalf of end-payor pharmaceutical purchasers);[90] Iowa: *Grodzitsky v. Am. Honda Motor Co.,* No. 2:12-CV-1142-SVW-PLA, 2013 WL 2631326, at *5 n.7, *9 (C.D. Cal. June 12, 2013) (finding that neither reliance or deception was a necessary element; Plaintiff has plausibly alleged that Defendant did have knowledge of the alleged defect at the time of sale, which was sufficient to state a claim under Iowa's consumer protection statute);[91] Maine: *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 187 (D. Me. 2004) (finding that

---

[89] *See also Wellbutrin SR*, 737 F. Supp. 2d at 406 (E.D. Pa. 2010) (holding allegations of anticompetitive conduct to prevent entry of generic competition states a valid claim under California's statute); *Wellbutrin XL*, 260 F.R.D at 160 (allegations that would constitute violations of California antitrust law may provide a basis of a claim under the unlawful or unfair prongs of California's consumer statutes).

[90] Under Illinois law, deception is not an element*, Krogull v. Woodfield Chevrolet*, No. 01L 729, 2004 WL 1429963, at *6 (Ill. App. Ct., June 22, 2004), nor is reliance required. *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 95 (Ill. App. Ct. 2002). *Zekman v. Direct Am. Marketers, Inc*., 695 N.E.2d 853 (Ill. 1998) does not support Defendants' argument. Indeed, *Zekman* itself states that a plaintiff need not establish actual reliance to state a claim under Illinois' consumer law. *Id*. at 860.

[91] I.C.A. § 714.16(2)(a) prohibits both unfair and deceptive conduct.  Defendants cite *Brown v. Louisiana-Pac. Corp*., No. 4:12-cv-00120 (S.D. Iowa Jan. 18, 2013) for the proposition that reliance is necessary, but *Brown* did not require actual reliance. *Brown* only requires that the Defendants were aware of the unfairness of their practice at the time they engaged in it.  There is no doubt that Defendants were aware that their agreement to extend Boehringer's monopoly would cause Plaintiffs to unfairly pay inflated brand prices rather than the less expensive generic price – that is why they entered the Agreement in the first place.

allegations of price-fixing constitute a violation of Maine's Unfair Trade Practices Act);[92]

Michigan: *Gasperoni v. Metabolife, Int'l Inc*., No. 00 71255, 2000 WL 33365948, at *7 (E.D. Mich. Sept. 27, 2000) ("Under [the Michigan statute], reliance and causation are satisfied by proof that plaintiffs purchased and consumed the product."); Nevada: *In re Pharm. Indus. Average Wholesale Price Litig.,*, 252 F.R.D. at 98 (certifying class under Nevada consumer statute based on allegations of illegal pricing of prescription drugs);[93] Rhode Island: *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 536 F. Supp. 2d 1129, 1145 (N.D. Cal. 2008) (holding that plaintiffs' complaint "fairly alleges unscrupulous conduct by defendants, at the very least, and that such conduct caused injury to consumers in Rhode Island, as well as consumers across the country");[94] Tennessee: *Blake*, 1996 WL 134947, at *5-7 (finding that, although "price fixing is not among the unfair or deceptive acts or practices specifically enumerated" in the consumer law, it is an act encompassed by Tennessee's consumer law); Utah: *In re Intel Corp., Microprocessor Antitrust Litig*., 496 F. Supp. 2d 404, 418 (D. Del. 2007) (holding allegations of higher prices sufficient to state a claim under Utah's consumer protection law); and West Virginia: *FTC v. Mylan Labs, Inc*., 99 F. Supp. 2d 1, 10 (D.D.C. 1999)

---

[92] *New Motor Vehicles* rejected Defendants' argument that *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792 (Me. 1998) requires plaintiffs to prove that a deceptive price term induced their purchase. *New Motor Vehicles* properly held that *Tungate* did not control a case, like here, that is based on unfair methods of competition. 350 F. Supp. 2d at 187 n.40. Defendants' reliance on *In re Graphics Processing Units Antitrust Litigation*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ("GPU"), is unavailing because it ignores state statutes' mandate that courts interpreting the statute adhere to federal courts' interpretations of § 5 of the FTC Act and ignores the unfairness prong of the statutes.

[93] The Nevada Unfair and Deceptive Trade Practices Act ("NUDTPA") applies to any corporation that "[v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services." Nev. Rev. Stat. § 598.0923. The complaint states a claim under this provision. *FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 941 (N.D. Ill. 2008) (FTC Act relates to the sale or lease of goods and service).

[94] *See also In re Auto. Parts Antitrust Litig*., No. 12-md-02311, 2014 WL 2993742, at *26 (E.D. Mich. July 3, 2014) (Rhode Island statute covers allegations of price-fixing).

(reinstating claims for restitution under West Virginia statute on behalf of indirect purchasers where defendants anti-competitively priced the drugs).[95]

Likewise, in the three states where unconscionability is the standard, a pleading that alleges price fixing or an unfair price is sufficient.   *See* District of Columbia: *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125-26 (N.D. Cal. 2008) (District of Columbia statute encompasses consumer injuries stemming from price-fixing);[96] Kansas: *In re Relafen Antitrust Litig.,* 221 F.R.D. at 278 (finding standing under Kansas's consumer law in a similar delayed-entry drug case); and New Mexico: *DDAVP*, 903 F. Supp. 2d at 227-28 (allegations of "a gross disparity between the price paid for the product and the value received" sufficient under New Mexico law).[97]

End-Payors allege facts sufficient to support a cause of action under the unfairness or unconscionable conduct prongs.  Defendants illegally delayed the entry of generic Aggrenox, causing a gross disparity between the price that Plaintiffs and the Class were forced to pay for the brand product and the value received, given that less expensive generic substitutes should have been available.   Comp. ¶¶ 201-204.   The substantially inflated price of Aggrenox—a consequence of Defendants' alleged anticompetitive conduct—satisfies the "gross disparity"

---

[95] *See also In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229 (D. Mass. 2006) (certifying a subclass of indirect purchasers under West Virginia statute).

[96] Price-fixing is actionable in the District of Columbia under both the District's Antitrust Act of 1980, D.C. CODE ANN. § 4501 *et seq.*, and also under its Consumer Protection Procedures Act. *Boyle v. Giral*, 820 A.2d 561, 563 (D.C. 2003); *New Motor Vehicles*, 350 F. Supp. 2d at 183 (denying motion to dismiss antitrust allegations and noting that "the [District of Columbia] statute is broad enough to cover the alleged conspiracy here").

[97] *New Motor Vehicles*, 350 F. Supp. 2d at 196 (New Mexico indirect purchasers adequately stated UPA claims against automobile companies and national dealer associations for alleged conspiracy among themselves to prevent less expensive Canadian vehicles from entering the American market); *accord*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1127.

standard of the unfairness prong.[98]   Likewise, Plaintiffs' allegations are sufficient under the unconscionable acts prong.[99]

In summary, under at least one prong of each jurisdiction's statute, it is sufficient to plead that Defendants' Agreement caused Plaintiffs to pay higher prices than they would have absent the unlawful conduct, without alleging deception toward, or reliance of, consumers. Plaintiffs have done so; the motion to dismiss should be denied.

### B.   Plaintiffs Allege Deceptive Acts Sufficient to State a New York Cause of Action.

Only New York's consumer statute arguably requires a deceptive practice directed at Plaintiffs.   But even for a New York consumer claim, the Complaint is sufficient.   New York's "consumer-oriented act" requirement is "construed liberally" and includes actions that "cause any 'consumer injury or harm to the public interest.'" *New York v. Feldman,* 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995)).   Moreover, allegations of anticompetitive conduct "imbued with a degree of subterfuge," *Leider v. Ralfe,* 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005), are sufficient to state the deception required under New York law where, as here, consumers are alleged to have felt the

---

[98] *See, e.g., In re Processed Egg Prods.*, 851 F. Supp. 2d at 906-07; *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009); *New Motor Vehicles*, 350 F. Supp. 2d at 195-96.   Most consumer protection statutes are modeled on the Federal Trade Commission Act ("FTC Act").   *See, e.g.*, 815 Ill. Comp. Stat. § 505/2; Mich. Comp. Laws Ann. § 445.911(3)(c); W. Va. Code § 46A-6-103; *Mylan Labs.*, 99 F. Supp. 2d at 7 (the Maine consumer protection statute "is modeled on the FTC Act, and is explicitly required to be construed consistent with its federal counterpart").   Courts construing statutes modeled on the FTC Act must adhere to interpretations of § 5 of the FTC Act.   Because antitrust violations constitute an FTC Act violation, *Luria Bros. & Co. v. FTC*, 389 F.2d 847, 859 (3d Cir. 1968), and these state laws are modeled after the FTC Act, Plaintiffs have plainly satisfied their pleading requirements under these States' laws – no allegations of fraud or deceit are required. *See New Motor Vehicles*, 350 F. Supp. 2d at 186-87.

[99] *See, e.g., DDAVP,* 903 F. Supp. 2d at 227-28 (allegations of "a gross disparity between the price paid for the product and the value received" sufficient under New Mexico law).

deception's effects.[100] Here, Plaintiffs allege that Defendants falsely portrayed that the payments were for independent business transactions rather than for delaying the entry of lower-priced Aggrenox generics, causing consumers and other end-payors to pay overcharges.  Plaintiffs state a claim under New York law.

C.   **The Alleged Conduct Has a Sufficient Consumer Nexus or is Consumer Oriented Under the Consumer Protection Statutes of the States of Arizona, the District of Columbia, Idaho, Illinois, Iowa, Kansas, Maine, Missouri, Nebraska, New Mexico, New York and West Virginia.**

Defendants contend that Plaintiffs have not alleged conduct "in connection with a specific consumer transaction" or a sufficient "nexus" with consumers.  Def. Mem. at 37-38. Defendants' puzzling assertion is without merit.  Plaintiffs' overcharge injuries resulted directly from consumer transactions, *i.e.*, every purchase of Aggrenox.[101]  Defendants ignore the Complaint's well-pled allegations, which set forth a widespread pattern of unlawful conduct aimed at consumers.  Plaintiffs allege Defendants entered the Agreement to maintain supra-competitive prices (paid by consumers) and to keep lower cost generics off the market (i.e., out

---

[100] *See, e.g., DDAVP*, 903 F. Supp. 2d at 228 (allegations in a similar generic suppression case that caused consumers to pay inflated prices stated a claim under Section 349); *Macquarie Grp. Ltd. v. Pac. Corporate Grp., LLC,* No. 08-CV-2113, 2009 WL 539928, at *9 (S.D. Cal. Mar. 2, 2009) (allegations regarding scheme designed to prevent plaintiffs' entry into market, thereby allowing defendant to charge supra-competitive prices, stated Section 349 claim because such conduct "undermin[es] New York's interest in an 'honest marketplace in which economic activity is conducted in a competitive manner'"); *Feldman,* 210 F. Supp. 2d at 301-02 (allegations regarding rigged bids that deprived the public of an "honest marketplace" stated Section 349 claim); *accord People ex rel. Spitzer v. Applied Card Sys., Inc*., 805 N.Y.S.2d 175, 178 (N.Y. App. Div. 3d Dept. 2005) (the FTC Act informs whether conduct is deceptive under New York's G.B.L. § 349); *In re Flonase Antitrust Litig.,* 692 F. Supp. 2d 524, 536 n.8 (E.D. Pa. 2010) (finding that a false statement in a citizen petition to the FDA is a deceptive statement for purposes of the consumer statutes); *Abbott Labs. v. Teva Pharm. USA, Inc.*, 432 F. Supp. 2d 408, 433-34 (D. Del. 2006) (consumer deception plausibly alleged because patents were obtained by fraud, and defendants "failed to demonstrate that such allegations were insufficient" to state claim under any state statute).

[101] Named Plaintiffs' purchases are also consumer transactions because they purchase Aggrenox for the personal use of their consumer insureds.  Third party payors are not mere reimbursers of their members' purchasers; rather, they become obligated to pay the pharmacy the balance of the total price for the prescription when their members make co-payments.

of the hands of consumers). The intended and actual result of Defendants' conduct was to overcharge consumers, the very parties whom these state statutes were intended to protect.  In the face of such allegations, Defendants cannot plausibly argue that Plaintiffs' claims do not involve conduct directed at, oriented toward, or having a nexus with consumers.[102] Consumer laws are construed liberally to afford broad protection to the public.[103]   Defendants' anticompetitive scheme to deny consumers access to lower cost generics is squarely within the scope of such laws.

Idaho: *DDAVP*, 903 F. Supp. 2d at 221-22, 224-25 (noting "Plaintiffs have plausibly pleaded misrepresentations that, although they may not have been made directly to consumers, had the kind of effect on end payors that [consumer protection laws] seek to remedy" and upholding claims under Idaho law); Illinois: *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929, at *17 (N.D. Ill. Jan. 21, 2003) (under the Illinois Consumer Fraud Act "[w]hen the plaintiff itself is a consumer, the plaintiff does not need to show the transaction implicates consumer protection concerns") (citations omitted);  Kansas:

---

[102] A "consumer-oriented act" is simply one that causes "any 'consumer injury or harm to the public interest.'" *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).

[103] *See e.g*., Arizona: Ariz. Rev. Stat. Ann. § 44-1521 & -1522 (allowing any person, defined as natural persons or corporations to bring claims for the unlawful sale of "any objects, wares, goods, commodities, intangibles, real estate or services, including direct primary care provider plans as defined in § 20-123"); District of Columbia: D.C. Code §§ 28-3901(a)(1), (a)(2)(A) (defining "consumer" as "a person who, other than for purposes of resale, does or would purchase, lease (as lessee), or receive consumer goods or services" and further defining "person" as "an individual, firm, corporation, partnership, cooperative, association, or any other organization, legal entity, or group of individuals however organized"); Idaho: *In re W. Acceptance Corp*., 788 P.2d 214, 216 (Idaho 1990) (purpose of Idaho statute is to protect both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce); Missouri: *State ex rel. Nixon v. Cont'l Ventures Inc*., 84 S.W.3d 114, 117 (Mo. Ct. App. W.D. 2002); New Mexico: *Salmeron v. Highlands Ford Sales, Inc*., 271 F. Supp. 2d 1314, 1318 (D.N.M. 2003) (statute is remedial legislation that courts must interpret liberally to facilitate and accomplish its purposes and intent); and New York: *Karlin v. IVF Am., Inc.,* 712 N.E.2d 662, 665 (N.Y. 1999).

*Cole v. Hewlett Packard Co.*, 84 P.3d 1047, 2004 WL 376471, at *6 (Kan. Ct. App.2004) (unpublished table decision) ("Based on the plain wording of K.S.A. 2003 Supp. 50–624(j), Cole, the consumer, did not need to deal directly with HP, the supplier, for the sale of the 882C printer in order for her and HP to be involved in a consumer transaction. As a result, this transaction falls within the [Kansas Consumer Protection Act]."); <u>Kansas, New Mexico and New York</u>: *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d at 418 (allegations that direct purchaser was subject to discriminatory rebates and discounts, which caused higher prices for end users, was sufficient to state a claim under the consumer laws of Kansas, New Mexico and New York);[104] <u>Nebraska</u>: *TFT-LCD*, 586 F. Supp. 2d at 1127 (noting that the NCPA "includes both antitrust and consumer protection aspects" and allowing Nebraska consumer claims to proceed);[105] and <u>West Virginia</u>: *Powell v. Bank of Am., N.A.*, 842 F. Supp. 2d 966, 982-983 (S.D. W. Va. 2012) ("The West Virginia Supreme Court of Appeals has indicated that the [West Virginia Consumer Credit and Protection Act] is to be construed broadly: 'The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. . . . Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended."

---

[104] *See also Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 594, 603 (N.Y. 1999) (an "extensive marketing scheme that had a broader impact on consumers at large" satisfies "consumer oriented" deceptive act or practice under N.Y. Gen. Bus. L. § 349) (citations and internal quotes omitted); *State ex. rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1185 (N.M. 1987) ("Because the [New Mexico] Unfair Practices Act constitutes remedial legislation, we interpret the provisions of this Act liberally to facilitate and accomplish its purpose and intent.").

[105] Neb. Rev. Stat. § 59-1601(2) (2013) (Nebraska's statute defines "trade and commerce" as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."); *State ex. rel. Douglas v. Associated Grocers of Neb. Coop., Inc.*, 332 N.W.2d 690, 693 (Neb. 1983) (The NCPA is Nebraska's state law equivalent of the Sherman Act.).

(citing *State Ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (1995))).[106]

D.    **The Consumer Protection Statutes of the District of Columbia, Idaho, Illinois, Kansas, Michigan, New Mexico, Rhode Island, Tennessee, Utah and West Virginia Apply to Antitrust Conduct.**

Defendants' assertions that the state consumer protection laws of ten states do not redress conduct sounding in antitrust (Def. Mem. at 40) ignores the key role that the FTC Act, which prohibits unfair methods of competition,[107] plays in the application of consumer protection laws in those states.   The Federal Trade Commission has interpreted the FTC Act to encompass violations of the Sherman Act. *See FTC v. Cement Inst.*, 333 U.S. 683, 694 (1948) ("all conduct violative of the Sherman Act may likewise come within the unfair trade practice prohibitions of the Trade Commission Act").

Plaintiffs have properly alleged a cause of action under each state's statute.   <u>District of Columbia</u>:  *New Motor Vehicles*, 350 F. Supp. 2d at 183 & n.9 (the District of Columbia statute, D.C. Code § 28-3901(b)(1), is a comprehensive statute intended to remedy "all improper trade practices," including price-fixing and illegal conspiracies resulting in higher prices);[108] <u>Idaho</u>: *Mylan Labs.*, 62 F. Supp. 2d at 46 (allowing indirect purchaser claims under Idaho's consumer

---

[106] Regarding the District of Columbia, Defendants rely only on distinguishable cases.  In *Antoine v. U.S. Bank N.A.*, 821 F. Supp. 1, 7 (D.D.C. 2010), plaintiffs did not argue that the subject loan was a consumer transaction. And this case, unlike *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010), clearly involves consumers and third-party payors purchasing Aggrenox for consumers' personal, not business, use.  Plaintiffs' overcharge injuries resulted directly from consumer transactions, i.e., the purchase of Aggrenox.  Plaintiffs, therefore, have adequately pled a claim under the DCCPPA.

[107] *FTC v. Motion Picture Adver. Serv. Co.*, 344 U.S. 392 (1953).

[108] *See also TFT-LCD*, 586 F. Supp. 2d at 1125-26 (consumer injuries for price-fixing); *Marbry v. EMI Music Distrib., C.A.*, 129 Daily Wash. L. Rptr. 2065, 2067 (D.C. Super. Ct. 2001) (price-fixing); *Atwater v. D.C. Dept. of Consumer & Regulatory Affairs*, 566 A.2d 462, 466 (D.C. 1989) ("[T]he statute obviously contemplates that procedures and sanctions provided by the Act will be used to enforce trade practices made unlawful by other statutes.").

protection act, and holding that "great weight is given to the FTC's interpretation of the FTC Act in the construction of the [Idaho Consumer Protection Act]"); Illinois: 815 Ill. Comp. Stat. § 505/2 (Section 2 of the Illinois Consumer Fraud and Deceptive Practices Act specifically provides that "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act" in interpreting what constitutes unlawful conduct under the act); Kansas: *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1114 (D. Kan. 2003) (Kansas antitrust and consumer protection claims brought simultaneously);  Michigan: Mich. Comp. Laws Ann. § 445.911(3)(c) (providing a cause of action under Michigan law for any "method, act, or practice in trade or commerce declared by a circuit court of appeals or the supreme court of the United States to be an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the federal trade commission act, 15 U.S.C. § 45(a)(1)"); New Mexico: *In re Chocolate Confectionary Antitrust Litig.,* 602 F. Supp. 2d 538, 586 (M.D. Pa. 2009) (courts have allowed claims based on price-fixing allegations to proceed under the New Mexico consumer protection act);[109] Rhode Island: *In re TFT-LCD,*  586 F. Supp. 2d at 1129 (indirect purchasers may pursue competition-based claims under the Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*);[110] Tennessee:  *Blake v. Abbott Labs., Inc*., No. 03A01-9509-CV-00307, 1996 WL 134947, at *5-7 (Tenn. Ct. App. Mar. 27, 1996) (the consumer protection and antitrust statutes "are cumulative remedies in all respects and their application under the circumstances of this case [price fixing], at least for the purposes of a Rule 12 motion, are not inconsistent"); West Virginia: *In re Pharm. Indus. Average Wholesale Price*

---

[109] *See also In re Aftermarket Filters*, 2009 WL 3754041, at *9; *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1127; *New Motor Vehicles*, 350 F. Supp. 2d at 196.

[110] *See also In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 586-87.

*Litig*, 233 F.R.D. at 231 (allowing West Virginia consumer protection claims in a price fixing case);[111] and Utah: *In re Intel Corp. Microprocessor Antitrust Litig*., 496 F. Supp. 2d at 418 (allowing Utah consumer claim to go forward in antitrust-based case).

### E. Third Party Payors Have Standing to Bring Claims Under the Consumer Protection Statutes of Hawaii, Iowa, Kansas, Maine, Montana, North Carolina, Rhode Island, Utah and Vermont.

Defendants contend that Plaintiffs have no cause of action in nine states that allow a plaintiff to sue in its capacity as a consumer. Def. Mem. at 42.[112] Defendants misconstrue the law: both individual consumers and third-party payors like the named Plaintiffs are consumers under the laws of those states. Hawaii: *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 307 (Haw. 2010) (unlike actions based on unfair or deceptive acts or practices, actions based on unfair methods of competition are not limited to natural persons; instead, Haw. Rev. Stat. § 480-2(e) provides that "*[a]ny person* may bring an action based on unfair methods of competition declared unlawful by this section.");[113] Iowa: Iowa Code Ann. § 714.16 (West) ("person" includes any natural person or the person's legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee,

---

[111] *See also* W. Va. Code § 46A-6-103 (application of West Virginia's Consumer Credit and Protection Act ("WVCCPA") is guided by the FTC Act).

[112] Although named Plaintiffs are not natural persons, the claims under Rhode Island law should not be dismissed. For the reasons explained in Section III *supra*, the question here is not one of standing, but rather, of the proper contours of any class. At the class certification stage, Plaintiffs will limit their class to natural persons in Rhode Island.

[113] Again, Defendants improperly limit Plaintiffs' claims to the prong of the statute that may support an argument for dismissal, and ignore another prong that demonstrates that Plaintiffs' claims are properly pled. *Compare* Haw. Rev. Stat. § 480-2 (d) ("No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section") *with* (e) ("Any person may bring an action based on unfair methods of competition declared unlawful by this section."). "Any person" is defined as "individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability limited partnerships, limited liability companies, and incorporated or unincorporated associations." *Davis v. Four Seasons Hotel Ltd.,* 228 P.3d 303, 309 (Haw. 2010).

salesperson, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof); <u>Kansas</u>: *Geico v. Indem. Ins. Co. v. Kannaday*, No. 06-1067, 2007 WL 2990552, at *3 (D. Kan. Oct. 11, 2007) (referring to "third-party payors" as "consumers" under the Kansas Unfair Trade and Consumer Protection Act); <u>Maine</u>: Me. Rev. Stat. Ann. tit. 5, § 213 (the MUTPA allows "[a]ny person who purchases . . . goods, services or property . . . primarily for personal, family or household purposes" to sue); Me. Rev. Stat. Ann. tit. 5, § 206(2) ("Person" is defined to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity.");[114] <u>Montana</u>:  Mont. Code Ann. § 30-14-102(6) (defining "person" as any "natural persons, corporations, trusts, partnerships . . . and any other legal entity"); *New Motor Vehicles*, 350 F. Supp. 2d at 193 ("[T]he application of the Montana consumer protection statute is not limited to those who engage directly in consumer transactions."); <u>North Carolina</u>: *Walker v. Fleetwood Homes of N.C., Inc*., 627 S.E.2d 629, 633 (N.C. Ct. App. 2006) ("such person, firm or corporation so injured shall have a right of action . . .'"); *Sheet Metal Workers*, 737 F. Supp. 2d at 419 (end-payors have specifically been found to have standing under North Carolina's Unfair and Deceptive Trade Practices Act);  <u>Utah</u>: Utah Code Ann. § 13-11-3 (5) ("Person" means an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association,

---

[114] Defendants cite *Hoglund ex rel. Johnson v. DaimlerChrysler Corp.*, 102 F. Supp. 2d 30 (D. Me. 2000).  The facts of that case could not be more different.  *Hoglund* held that a three-year-old child injured in an automobile accident was not the purchaser of the car in which he was injured and therefore was not a covered "person who purchased" under the MUTPA.  *Id.* at 30-31.  By contrast, each End-Payor Plaintiff (each individual consumer and health plan) purchased Aggrenox primarily for personal, household, or family purposes and therefore meets MUTPA's definition of a "person."

cooperative, or any other legal entity."); [115] and <u>Vermont</u>: Vt. Stat. Ann. tit. 9, 2451(a) (a

"consumer" is any "person who purchases . . . or *otherwise agrees to pay consideration for*

*goods or services not for resale*, but for his or her use or benefit or the use or benefit of a

member of his household") (emphasis added).[116]

### F.      Pre-Filing Notice Requirements Do Not Mandate Dismissal.

Defendants argue that Plaintiffs' claims under California, Hawaii, Maine, Massachusetts,

and West Virginia law should be dismissed for failure to meet requirements of pre-suit notice to

either the defendant or the State Attorney General.  Def. Mem. at 44-45.  Pre-notice requirements

do not mandate dismissal under these states' laws or are otherwise inapplicable.[117] Defendants'

arguments fail for the further state-specific reasons detailed below.

<u>California.</u>    By its plain language, Cal. Bus. & Prof. Code § 17209 applies *only* to

§17200 actions in which a party seeks relief in the California appellate courts from a trial court's

decision, and that situation is not presented here.

<u>Hawaii.</u>  No notice is required to proceed under the "unfair or deceptive acts or practices"

prong of the Hawaii Antitrust Act.  *See* Haw. Rev. Stat. §§ 480-13.3(a) (requiring pre-suit notice

---

[115] Utah's consumer protection laws are to be construed liberally and with a view towards achieving the statute's object. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149-50 (10th Cir. 2013); *Iadanza v. Mather*, 820 F. Supp. 1371, 1378 (D. Utah 1993).

[116] Defendants rely upon *State v. International Collection Service, Inc.*, 594 A.2d 426 (Vt. 1991), but that case was superseded by a subsequent statutory amendment.  *N. Hero Marina v. Melanson*, 2004 Vt. Super. LEXIS 82, at *6-7 (Vt. Super. Ct. July 30, 2004) (1997 amendment intended to expressly create a private cause of action for businesses).

[117] Moreover, courts have found that pre-suit notice requirements in state statutes are procedural and are therefore not applicable to cases brought under those statutes in federal court. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 393 (2010); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997) ("the notice provision of the WCA does not grant or deny a substantive right . . . . If the purpose of the WCA's notice requirement is, as argued by the defendants, to prevent a suit from ever being filed (by encouraging the parties to reach an agreement extra-judicially), such a notice requirement is not substantive.").

to the state attorney general for violations "other than for unfair or deceptive acts or practices"). As discussed at p. 46, third-party payors like named Plaintiffs can assert claims based on unfair methods of competition under Hawaii law.

Maine. Me. Rev. Stat. Ann. tit. 5, § 213(1-A) does not require the dismissal of Plaintiffs' claims as a consequence of non-compliance. *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors*, 659 A.2d 267, 273 (Me. 1995) (refusing to dismiss for failure to provide pre-suit notice and stating that "[i]n the absence of explicit terms regarding noncompliance, we conclude that the notice requirements of section 213 (I-A) are not jurisdictional and do not operate in this case to preclude the plaintiffs from maintaining their UPTA claim against [defendant]").

Massachusetts. The pre-filing notice requirement under Mass. Gen. Laws. Ann. 93A § 9(3) does "not apply ... if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth." Mass. Gen. Laws ch. 93A § 9(3); *see also Okoye v. Bank of New York Mellon,* 2011 WL 3269686, at *4 (D. Mass. July 28, 2011). Here, pre-suit notification is not applicable because the Complaint does not allege that Defendants, as the "prospective respondents," maintain places of business or keep assets within Massachusetts.[118]  In addition, there is no pre-suit demand requirement for claims brought by businesses under Mass. Gen. Laws Ann. ch. 93A, § 11.[119]  Further, the Seventh Circuit has

---

[118] In the event that this Court should find notice is required to proceed under Massachusetts law, courts uniformly grant leeway to cure any defect in such notice by amending the operative pleading. *Burns ex rel. Office of Public Guardian v. Hale & Dorr LLP*, 445 F. Supp. 2d 94, 96-97 (D. Mass. 2006); *Tarpey v. Crescent Ridge Dairy, Inc.*, 713 N.E. 2d 975, 983 (Mass. App. 1999). Any dismissal for failure to timely serve pre-filing notice should *not* be on the merits or with prejudice, so as to allow plaintiff to amend or re-file 30 days after compliance. *York v. Sullivan*, 338 N.E. 2d 341, 346-347 (Mass. 1975).

[119] *See In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 86 (D. Mass. 2005).

persuasively held that a state law pre-suit notice requirement is procedural and thus inapplicable to cases brought in federal court. *Van Ru*, 109 F.3d at 346.

West Virginia. W. Va. Code § 46A-6-106(b) does not mandate dismissal but is designed to encourage settlement.  Like in *Van Ru*, the statute has the purpose of encouraging settlement, as the statute provides "the seller or lessor twenty days from receipt of the notice of violation to make a cure offer," the consumer then has "ten days from receipt of the cure offer to accept the cure offer or it is deemed refused and withdrawn." *Id.*[120]

### G.   Plaintiffs Allege Intrastate Conduct Under Florida, Massachusetts, New Hampshire, New York and North Carolina's Consumer Protection Statutes.

As discussed above, Plaintiffs have explicitly alleged that Defendants' conduct "had substantial intrastate effects" in every state.  *See* Comp. ¶ 137; *supra* at pp. 33-34.  Nevertheless, Defendants contend that Plaintiffs fail to satisfy the intrastate pleading requirements of several states.  Defendants are wrong.  Just as allegations of anticompetitive conduct causing nationwide injury have been found sufficient to allege intrastate effects under the state antitrust laws, *see* discussion *supra* at pp. 33-34, these allegations more than satisfy "intrastate" pleading requirements under state consumer protection laws.  *See, e.g., Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1196 (N.Y. 2002) ("the intent [of the New York Consumer Fraud statute] is to protect consumers in their transactions that take place in New York State").[121]  Additional state-specific responses to Defendants' meritless argument follow below.

Florida.   Plaintiffs specifically plead Local 49, NECA-IBEW Welfare Trust Fund, Painter's Fund, Local 1776, and Locals 137 all indirectly purchased, paid and/or provided

---

[120] *In re Ford Tailgate Litig.*, No. 11-cv-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) did not hold, as defendants suggest, that a claim must be dismissed for pre-suit notice. The court denied Ford's motion to dismiss plaintiffs' West Virginia claim. *Id.* at *9.

[121] *See also Sheet Metal Workers*, 737 F. Supp.2d at 397-402 (intrastate effect alleged where interstate restraint of trade has effect within state).

reimbursement for Aggrenox purchases in Florida during the class period.  Comp. ¶¶ 20, 23, 24, 29, and 30.

Massachusetts. In *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998), cited by Defendants, the plaintiff did not "fe[el] the 'sting' of any deception" in Massachusetts; here, Plaintiffs felt the sting of overpayments in Massachusetts (along with everywhere else Aggrenox was purchased). *See also Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 313 (Mass. 2002) (affirming right to bring indirect purchaser claims under Mass. G.L. 93A where conduct largely occurred out of state because the foreign defendants "are manufacturing and distributing vitamin products that are intended for use by persons exactly like the plaintiff, the ultimate consumer"); *Tanol Distribs., Inc.*, No. 86-3355-S, 1987 WL 13319, at *3-4 (D. Mass. July 2, 1987) ("businesses engaged in interstate commerce enjoy no blanket exemption from the [Massachusetts Consumer Protection] Act").  Moreover, Plaintiffs explicitly alleged that Plaintiff Pipefitters indirectly purchased, paid and/or provided reimbursement for Aggrenox purchases in Massachusetts during the class period.  Comp. ¶ 25.

New Hampshire.  The New Hampshire Consumer Protection Act ("NHCPA") does not require unfair or deceptive conduct to occur within New Hampshire.  In *Harbour Capital Corporation v. Allied Capital Corporation*, the court held that a defendant who "injure[s] trade or commerce in New Hampshire" does not "escape liability under [the NHCPA] by remaining outside the state." *Harbour Capital Corporation v. Allied Capital Corporation*, No. 08-cv-506-PB, 2009 WL 2185449, at *8-9 (D.N.H. July 22, 2009).  Conducting business within New Hampshire is sufficient to satisfy the territorial requirement. *Id*. at *8.

New York.  GBL § 349 is intentionally broad, applying to "virtually all economic activity." *Goshen.*, 774 N.E.2d at 1195. Plaintiffs' allegations that Defendants engaged in anticompetitive

51

conduct that caused consumers in New York to pay overcharges satisfies the intrastate pleading requirement.  *New York v. Feldman,* 210 F. Supp. 2d 294, 302 (S.D.N.Y. 2002; *DDAVP*, 903 F. Supp. 2d at 228.

<u>North Carolina.</u>    The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen Stat. § 75–1 *et seq,* states: "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."   The NCUDTPA "only requires plaintiffs to prove a substantial injury in North Carolina."  *Sheet Metal Workers*, 737 F. Supp. 2d at 419-20 ("Plaintiffs have alleged a substantial effect in North Carolina in pleading that they and members of their plans paid more for Wellbutrin SR in North Carolina as a result of" defendants' anticompetitive conduct).[122]

### H.    Class Action Bars Are Inapplicable.

Defendants bring a Rule 12(b)(6) motion to dismiss,[123] asserting that class actions are barred under the consumer fraud laws of six states.  Anticipating Plaintiffs' response, Defendants argue that *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) is inapplicable.  Defendants are wrong about the import of *Shady Grove*.

In *Shady Grove*, the Supreme Court held that in diversity actions, Rule 23 preempts state rules restricting class actions and will control unless the federal rule interferes with substantive state law rights. *Id.* at 393. The Court held that, "Rule 23 unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met. We

---

[122]  *Flonase*, 692 F. Supp. 2d at 540–41 (allegations that defendant sold large amounts of product in North Carolina satisfied the substantial in-state effect requirement).

[123]  *See* Def. Mem. at 46. A Rule 12(b)(6) motion is inappropriate. *See In re Trilegiant Corp.*, No. 3:12-cv-00396, 2014 WL 1315244, at *24-25 (D. Conn. Mar. 28, 2014) (noting that the proper procedure is a motion to strike under Rule 12(f)); *see also* Fed. R. Civ. P. 23(d)(1)(D) (authorizing a motion to strike class action allegations).

cannot contort its text, even to avert a collision with state law that might render it invalid." *Id*. at 406.

The Supreme Court, in its plurality opinion, noted that Rule 23 is a classic procedural rule that controls the business of the federal courts:

> Such rules neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed . . . . A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged.

*Id*. at 408.

Justice Scalia, writing for himself and three others, explained that in determining whether a rule is within the Rules Enabling Act, the sole inquiry is what the rule regulates: "If it governs only 'the manner and means' by which the litigation and rights are enforced, it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id*. at 407. The effect the rule might have on state substantive or procedural law is irrelevant – the focus must be on the substantive or procedural nature of the federal rule. Scalia's formulation of the rule has been considered to be controlling.[124]

---

[124] *See In re Hydroxycut Mktg. & Sales Practices Litig.*, Case No. 09-2087, 2014 WL 295302 (S.D. Cal. Jan. 27, 2014); *In re Principal United States Prop. Account ERISA Litig.*, 274 F.R.D. 649, 656-57 (S.D. Iowa 2011). Writing separately as the fifth vote, Justice Stevens concurred in the result. Justice Stevens believed that the Rules Enabling Act inquiry instructs courts to consider whether the federal rule would displace a state law that "is so intertwined" with the right or remedy that it defines the scope of the right. *Shady Grove*, 430 U.S. 423. Respectfully, those decisions holding that Justice Stevens' opinion is controlling are incorrect. In so finding, they improperly rely on *Marks v. United States*, 430 U.S. 188, 193 (1977), where the Supreme Court explained, "[T]he holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ...." But *Marks* has no application here.  The *Marks* standard should only be applied "where an opinion can be meaningfully regarded as narrower than another *and can represent a common denominator of the Court's reasoning.*" *Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012) (emphasis added). This standard "requires that the narrowest opinion is actually the logical subset of other, broader

Under the plurality test, Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions.  Under *Shady Grove*, "it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule." *Shady Grove*, 430 U.S. at 410.[125]  Rule 23 is undoubtedly procedural. Thus, all six state prohibitions on class actions (to the extent they exist) do not apply here.

But, even if Justice Steven's test applies, the class action claims of Illinois, Iowa, Kansas and Montana would still survive.  Justice Stevens said that the bar for finding an Enabling Act problem is "a high one." *Id*. at 432.   There must be "little doubt" that a federal rule would alter a state-created right. *Id*.  It is Defendants' "high" burden to prove, with "little doubt" that the states' legislatures, by their clear terms, meant to preclude the use of the class action device in a consumer protection claim.  Here, applying Rule 23 will not enlarge any substantive rights under these states' laws. It is undisputed that individual claims can be brought in each of these states. Thus, the substantive right is not changed—only the procedure by which that right can be enforced is changed.  Defendants have failed to meet their high burden of showing that Rule 23 would enlarge a substantive state law right.

<u>Illinois</u>:   It is undisputed that Illinois' *consumer protection statute* does not contain any language precluding the use of Rule 23 to bring a class action.  Ignoring that fatal problem,

---

opinions, such that it embodies a position implicitly approved by at least five Justices who support the judgment." *Id*. (internal quotation marks omitted).  Because Justice Stevens' test is entirely different than the test laid out in the plurality opinion, it cannot be viewed as "a common denominator" and thus does not apply. While some courts have held that Justice Stevens' concurring opinion is controlling, the Second Circuit has not addressed the issue. The better reasoned analysis is that the four-member opinion written by Justice Scalia is the controlling test.

[125] Indeed, the *Shady Grove* majority noted that, if the focus were entirely on the nature of the affected state law, this would allow States to force a wide array of parochial procedures on federal courts so long as they are sufficiently intertwined with a state right or remedy. *Id*. at 413 n.11.

Defendants invent a different standard.  First, they argue that Illinois' *antitrust* statute contains a limitation on class actions – it doesn't.[126]  Then, they argue that the legislature has made a policy decision to limit antitrust cases to individual actions, so they *would probably want* to limit consumer protection cases to individual actions, too.  Def. Mem. at 47.  Defendants' argument is contrary to even the narrowest reading of *Shady Grove*, and further, is contrary to Illinois law.[127]

Defendants cannot meet their "high" burden to demonstrate that there is "little doubt" that the Illinois legislature intended to preclude consumer class actions. Under Justice Stevens' view, which Defendants espouse, the proper analysis under *Shady Grove* is whether the application of Rule 23 to state law claims abridges, enlarges or modifies a right given under state law. Since the state laws of Illinois provide the right to seek damages for the Defendants' conduct, there is no class prohibition contained in the consumer law statute itself, and the class action prohibition in the antitrust statute does not cross-reference the consumer law remedies, the use of a Rule 23 class action does not impact any state restriction on class actions for consumer protection claims and is therefore permissible.[128]

---

[126] The Illinois antitrust statute provides: "No provision of this act shall deny any person who is an indirect purchaser the right to sue for damages." 740 Ill. Comp. Stat. 10/7 (2). The statute continues: "Provided further that no person shall be authorized to maintain a class action *in any court of this State for indirect purchasers asserting claims under this Act*, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection." *Id.* (emphasis added). This highlighted language does not: (1) deprive an indirect purchaser of her individual substantive right to sue under the statute; or (2) prohibit anyone from filing a class action in *federal* (or any other state) court, as opposed to an Illinois state court.  Thus, Defendants' *Shady Grove* argument never gets out of the starting gate.

[127] *Siegel v. Shell Oil Co*., 480 F. Supp. 2d 1034 (N.D. Ill. 2007) held that consumers can elect to pursue a remedy under the Consumer Fraud Act where the Illinois Antitrust Act may also provide relief. *Id.* at 1048-49.  Thus, Plaintiffs' claims under ICFA are not inconsistent with any policy articulated in the Illinois Antitrust Act.

[128] This Court is not bound by the opinions in *In re Wellbutrin XL Antitrust Litig*., 260 F.R.D. 143 (E.D. Pa. 2009) and *In re Flonase*, 692 F. Supp. 2d at 539, which, respectfully, were wrong in refusing to apply Rule 23. Moreover, *Wellbutrin XL* addressed whether class action restrictions contained in the *antitrust* statute precluded *antitrust* class actions.  And this Court

Iowa:  Defendants argue that Plaintiffs have not complied with a procedural pre-suit approval provision.  Specifically, Defendants cite § 714H.7 of Iowa's Consumer Fraud Act ("ICFA").  Section 714H.7 provides that "[a] class action lawsuit alleging a violation of this chapter shall not be filed with a court unless it has been approved by the attorney general."  Iowa Code § 714H.7.  Class action lawsuits are approved "unless the attorney general determines that the lawsuit is frivolous."  *Id*.; *see also Kelly v. Phiten USA, Inc*., 277 F.R.D. 564, 567, 568-71 (S.D. Iowa 2011) (approving settlement and certifying class claims brought under ICFA).

Section 714H.7 runs directly afoul of *Shady Grove*, and Rule 23 preempts it.  That is, section 714H.7 does not limit Iowa consumers' substantive rights under the ICFA, but instead, only serves to impose additional, procedural requirements to maintaining a class action.  A consumer may file an individual lawsuit without Iowa Attorney General approval.  But the AG-approved provision would interfere with a federal court's ability to adjudicate aggregate claims through Rule 23.  *Shady Grove* prohibits such limitations of Rule 23 class action procedure.

Kansas:  Defendants misunderstand Kansas law.  Kan. Stat. Ann. §50-634(b) provides that those "*aggrieved* by a violation of this act may recover, but not in a class action, damages or a civil penalty as provided in subsection (a) of K.S.A. 50-636 and amendments thereto, whichever is greater." (emphasis added).  But, a plaintiff who "*suffers loss* as a result of a

---

should decline to follow *Flonase*'s interpretation of ICFA. The *Flonase* court did not consider *Siegel's* discussion of *Laughlin* or *Gaebler*. *Siegel's* analysis makes clear that neither *Laughlin* nor *Gaebler* should be interpreted as broadly as Defendants have advocated. For example, while the Illinois Appellate Court in *Galvan v. Northwestern Mem. Hosp.,* 888 N.E.2d 529, 538 (Ill. App. Ct. 2008) ultimately rejected plaintiffs' use of ICFA to support their particular claim of unconscionable pricing, the court made clear that it did not believe the Illinois Supreme Court's decision in *Laughlin* to decide the issue, because the claims of the *Galvan* plaintiffs implicated public policy concerns that were not present in *Laughlin. See id.* at 538 ("While the holding in *Laughlin* is informative, the plaintiff raises public policy arguments and allegations of oppressiveness that were not relevant in that case."). Likewise here, where Plaintiffs have made allegations that Defendants engaged in the conduct to keep far less expensive generics off the market, there is a public policy element here that was not present in *Laughlin.*

violation of this act may bring a class action for the damages caused by an act or practice."
(emphasis added).  *See* Kan. Stat. §50-634(d).  Defendants argue that Plaintiffs' claims do not
fall into the enumerated practices against which a class action may be maintained. Def. Mem. at
47 n.87.  But that is exactly what Plaintiffs allege: Defendants have engaged in unfair or
unconscionable or acts or practices (Comp. ¶204(i), (z)), conduct for which class actions may be
maintained.[129]

Montana: Class action consumer claims have been allowed under Montana law.  *See In re
Auto. Parts Antitrust Litig.,* No. 12-md-02311, 2014 WL 2993742, at *25 (E.D. Mich. July 3,
2014) (allowing Montana class action claim to go forward; finding that it is defendants' burden
to show dismissal is required).  Defendants' cases do not support their argument.  *See* Def. Mem.
at 47 n.88 (citing *DRAM*, decided three years before *Shady Grove*, and *Packaged Ice*, which did
not address the *Shady Grove* issue).

## I.      Plaintiffs' Iowa Consumer Law Claim Should Be Allowed.

As Defendants note, there is a private right of action for consumer protection under
Iowa's statutory scheme.  *See* Def. Mem. at 48-49.  Plaintiffs properly plead that cause of action.
Comp. ¶ 204(f).  To the extent necessary to plead a right to bring class claims, Plaintiffs seek
leave to expressly plead the class action enabling statute by adding "pursuant to Iowa Code §
714H.5" to their Iowa claim.  Defendants' statute of limitation argument fails.  As discussed
*supra* at pp. 20-22, Plaintiffs' Iowa claim accrued after July 1, 2009.

---

[129] A class action is allowed if Defendants "[v]iolat[ed] any of the acts or practices
specifically proscribed in K.S.A. 50-626 [deceptive acts and practices], 50-627 [unconscionable
acts and practices]…."  Kan. Stat. Ann. § 50-634(d).  As described *supra*, Plaintiffs' allegations
fit within the enumerated acts.

**J.      Nevada's Statute Is Not Limited to Claims by Elderly/Disabled Only.**

The Nevada statute provides that "[a]n action may be brought by any person who is a victim of consumer fraud," Nev. Rev. Stat. § 41.600(1), and broadly defines "consumer fraud" to include a "deceptive trade practice as defined in [NDTPA Sections] 598.0915 to 598.0925, inclusive," *id.* § 41.600(2)(e).

The NDPTA section cited by Defendants (Def. Mem. at 49, citing Nev. Rev. Stat. § 598.0977) sets forth the *remedies* an elderly or disabled person may receive if subjected to a deceptive trade practice, and refers to another NDPTA section that provides additional *penalties* for deceptive trade practices directed toward elderly or disable people.  *See* Nev. Rev. Stat. § 598.0973(1).  In other words, although any victim of consumer fraud may bring a civil action, elderly and disabled persons may recover more for each violation.  *See Nev. Power Co. v. Eighth Jud. Dist. Ct. of Nev.,* 102 P.3d 578, 583 n.7 (Nev. 2004) ("NRS § 41.600, however, provides for a private cause of action by a person who is a victim of consumer fraud and defines 'consumer fraud' to include '[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive.'" (quoting Nev. Rev. Stat. § 41.600(2)(e))).  The court in *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198 (S.D.N.Y. 2012), correctly found that any person can sue under the Act, and that the elderly and disabled can seek enhanced penalties.  *Id.* at 226-27.  This Court should similarly uphold Plaintiffs' Nevada claim.

**K.      Florida Consumer Law Is Not Preempted.**

The safe harbor provision of FDUTPA provides that there is no liability under the statute when the challenged conduct is specifically permitted under federal law.  Fla. Stat. § 501.212(1).  There is absolutely no federal law permitting pharmaceutical manufacturers to enter the type of pay-for-delay agreements alleged here. Defendants' citations to *Kuenzig v. Kraft Global Foods, Inc.*, No. 8:11-cv-838-T-24, 2012 WL 366927 (M.D. Fla. Feb. 3, 2012), and *Prohias v.*

*AstraZeneca Pharmaceuticals, L.P.*, 958 So.2d 1054 (Fla. Dist. Ct. App. 2007) (Def. Mem. at 49), are misleading. Those decisions involved challenges to specific decisions made by the FDA and USDA with respect to labeling of the drug products. In contrast, here no federal agency granted permission for Defendants to agree to delay generic entry in return for cash and other consideration.

## VII.   PLAINTIFFS ADEQUATELY PLEAD UNJUST ENRICHMENT CLAIMS.

### A.   Plaintiffs' Pleading Meets the Requirements of *Twombly*.

Defendants argue that Plaintiffs' unjust enrichment pleading fails to meet the requirements of *Twombly* and *Iqbal*, Def. Mem. 52; Def. Hum. Mem. 32, but many courts have upheld identical unjust enrichment claims.[130]  State law claims of unjust enrichment are "universally recognized causes of action that are materially the same throughout the United States."[131] As one court summarized:

> In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements—the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state….In other words, regardless of which state's unjust enrichment elements are applied, the result is the same.[132]

---

[130] Defendants take snippets from *Iqbal* out of context.  Defs.' Humana Mem. at 33.  *Iqbal* and *Twombly* require plaintiffs to plead sufficient facts.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  Plaintiffs have alleged more than enough factual detail to meet the requirements of the Federal Rules.  CAC ¶¶ 70, 77-88, 90-92, 94, 96, 102-104, 110-15, 121-22, 125-28, 130-31, 133.

[131] *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998).

[132] *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007) (emphasis in original), *rev'd on other grounds*, 328 Fed. Appx. 121 (3d Cir. 2009); *see also In re Mercedes-Benz TeleAid Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("At the core of each state's law are two fundamental elements—the defendant received a benefit from the plaintiff and it would be

Plaintiffs have adequately alleged these two "fundamental elements": Defendants knowingly received a benefit from Plaintiffs in the form of ill-gotten profits from the sale of Aggrenox and/or its AB-rated bioequivalents, and it would be inequitable to allow Defendants to retain their ill-gotten gains.  Comp. ¶¶ 70, 77-88, 90-92, 94, 96, 104.  Plaintiffs have also alleged that these benefits flowed from Defendants' unlawful, anticompetitive conduct in the form of profits derived from charging artificially inflated prices for Aggrenox.  *Id.* ¶¶ 102-04, 110-15, 121-22, 125-28, 130-31, 133.

### B.     Defendants Confuse the Law of Quasi-Contract.

Arguing that "Defendants do not form a quasi-contract with the entire world each time they sell a unit of product,"[133] Defendants confuse quasi-contracts with implied-in-fact contracts. Contracts implied in fact exist where all the elements of an actual contract are present except a writing.[134] By contrast, a quasi-contract is "an equitable remedy thrust upon the recipient of a benefit under conditions where that receipt amounts to unjust enrichment."[135] Plaintiffs do not allege that an implied-in-fact contract exists between Defendants and every purchaser of Aggrenox.  Instead, Plaintiffs allege that they are entitled to the equitable remedy of unjust

---

inequitable for the defendant to retain that benefit without compensating the plaintiff."); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) ("The standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical. Courts have recognized that state claims of unjust enrichment are universally recognized causes of action that are materially the same throughout the United States."); *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 681 (S.D. Fla. 2012) ("[C]ourts often certify unjust enrichment claims because 'common questions predominate' and are 'all easily resolved class wide.'") (internal citation omitted).

[133] Def. Hum. Mem. at 34.

[134] *See, e.g., Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990) (citing C. Kaufman, Corbin on Contracts, § 19, at 50 (Supp. 1989), discussing distinction between implied-in-fact agreement and quasi-contract).

[135] *Id.*; *see also Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973) ("For the purpose of preventing unjust enrichment, however, a quasi-contract—an obligation to pay money to another—will be recognized in appropriate circumstances, even though no intention of the parties to bind themselves contractually can be discerned.").

enrichment, a remedy falling under the umbrella of quasi-contract, because Defendants have wrongfully retained benefits from their unlawful, anticompetitive conduct.

### C.   Plaintiffs May Plead Unjust Enrichment Claims Even Where There Is an Adequate Legal Remedy.

Plaintiffs are not relegated to pursuing unjust enrichment claims only where there is no adequate legal remedy.  Plaintiffs are allowed to plead in the alternative under Federal Rule of Civil Procedure 8.[136] Accordingly, even if a legal remedy would bar Plaintiffs' unjust enrichment claims, it is premature to dismiss such claims before Plaintiffs' remedies are determined.[137]

### D.   Plaintiffs Do Not Seek to Circumvent *Illinois Brick* Through Their Unjust Enrichment Claims

Defendants incorrectly assert that Plaintiffs' unjust enrichment claims constitute impermissible attempts to circumvent *Illinois Brick*, and "an end run around the will of the Connecticut legislature."  Def. Mem. at 51, 52; Def. Hum. Mem. at 33-34.  Courts routinely reject this argument.  *See* discussion *supra* at pp. 18-19.

### E.   Plaintiffs May Plead Unjust Enrichment Claims Even Where They Have Not Brought Antitrust and Consumer Protection Claims.

Defendants argue that Plaintiffs' unjust enrichment claims must be dismissed wherever Plaintiffs have not brought antitrust and consumer protection claims, but Plaintiffs' unjust enrichment claims do not depend on the success of their other claims.  Rule 8 of the Federal Rules of Civil Procedure allows for pleading in the alternative, and equitable remedies for unjust enrichment claims are often awarded when there is no statutory remedy or such a claim is

---

[136] *See, e.g., Processed Eggs Prods.*, 851 F. Supp. 2d at 917-18.
[137] *See, e.g., K-Dur*, 338 F. Supp. 2d at 541, 544.

unsuccessful.[138]  Indeed, courts have repeatedly held that unjust enrichment claims "[do] not hinge upon the success of the state statutory antitrust claims."[139]

### F.  Plaintiffs Allege a Sufficient Relationship for Unjust Enrichment in Idaho, Illinois, Kansas, New York, and South Carolina.

Idaho.   Idaho does not require a legal relationship between the parties for an unjust enrichment claim to be viable.  Defendants misstate the law under *Hayden*, Def. Hum. Mem. at 38, which found the existence of a relationship between the parties to be merely a factor—not a requirement—in determining whether a benefit had passed to the defendant from plaintiff, rather than a third party.  *Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73 (Idaho 2005).  The Supreme Court of Idaho subsequently confirmed that the elements of an Idaho unjust enrichment claim are not what Defendants claim:

> A prima facie case of unjust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof.

*Vanderford Co. v. Knudson*, 165 P.3d 261, 272 (Idaho 2007).

Illinois.   Illinois law does not require a fiduciary duty or privity between parties to state an unjust enrichment claim.  *M.J. McCarthy Motor Sales Co. v. Van C. Argiris & Co.*, 78 Ill. App. 3d 725, 730 (Ill. App. Ct. 1979).  Neither *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) nor *Lewis v. Lead Indus. Ass'n*, 342 Ill. App. 3d 95, 105-06 (Ill. App. Ct. 2003), relied upon by Defendants (Def. Hum. Mem. at 39), is analogous to the case here.

---

[138] *D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 506 (E.D. Pa. 2006).

[139] *Id.*; *see also Cardizem*, 105 F. Supp. 2d at 669 ("courts often award equitable remedies under common law claims for unjust enrichment in circumstances where claims based upon . . . other state law violations prove unsuccessful); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 540 (E.D. Pa. 2010) ("unjust enrichment claims are viable regardless of the applicable state antitrust laws").

There the connection between the plaintiff and defendant was far more attenuated than it is here. Plaintiffs here purchased Defendant's product at prices that were artificially inflated as a result of Defendants' unlawful acts.

Kansas.  Defendants are wrong when they claim that Kansas law requires a plaintiff to allege it is in privity with the defendant unless certain "special circumstances" exist.  Defendants cite *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, which decided only the very specific question of "whether a subcontractor can recover from an owner on the basis of unjust enrichment or quantum meruit," and requires "special circumstances" in the absence of privity *only* in the context of subcontractors' claims against owners.[140]  910 P.2d 839, 846 (Kan. 1996); *see also Haile Grp. LLC v. City of Lenexa*, 242 P.3d 1281, 2010 WL 4977221, at *14 (Kan. Ct. App. 2010) (unpublished table decision) (distinguishing *Haz-Mat* as limited to subcontractor cases).  Even if the *Haz-Mat* holding applied to cases other than subcontractor cases (which it does not), Kansas courts still do not require privity.  *Haz-Mat* holds that in unjust enrichment cases involving subcontractors, the law does not require privity, but merely "some special circumstances that would justify requiring the [defendant] to pay."  910 P.2d at 847; *see also Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1249 (D. Kan. 2007).[141]  Plaintiffs allege Defendants unjustly enriched themselves at Plaintiffs' expense by unlawfully inflating prices for

---

[140] Defendants also cite *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5094289, at *6 (N.D. Cal. Dec. 8, 2010), but that case cites only to *Haz-Mat* in support of its holding.  *In re SRAM*, therefore, also does not support Defendants' argument that Kansas requires a showing of privity for unjust enrichment actions.

[141] Other courts have agreed with this interpretation.  *See Paul Davis Restoration of Lawrence v. Raney Props., L.P.*, 157 P.3d 7, 2007 WL 1309807, at *4 (Kan. Ct. App. 2007) (unpublished table decision) ("[Defendant] argues [Plaintiff] was not entitled to recovery under quantum meruit because there was no evidence of privity between the parties.  This argument was expressly rejected by the Kansas Supreme Court in *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.* . . . ."); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2014 WL 2993742, at *32 (E.D. Mich. July 3, 2014) (quoting *Haz-Mat*, and stating that "there is no element requiring that the benefit flow directly from the plaintiff to the defendants.").

Aggrenox and/or its generic equivalents, which "justif[ies] requiring" Defendants to pay.  *See Gonzalez*, 489 F. Supp. 2d at 1249; Comp. ¶¶ 478, 480-82.

New York.  New York's law of unjust enrichment does not require that the plaintiff plead "direct dealing" or an "actual, substantive relationship" with the Defendants, but only that the "plaintiffs' relationship with a defendant not be 'too attenuated.'"  *Waldman v. New Chapter Inc.*, 714 F. Supp. 2d 398, 403-04 (E.D.N.Y. 2010) (holding that "the indirect purchaser can assert . . . an unjust enrichment claim against the manufacturer of the product itself" and distinguishing cases involving claims by indirect purchasers against suppliers of ingredients in products purchased by indirect purchasers) (emphasis omitted). *Waldman* is more closely analogous to the case here than the cases cited by Defendants.  Indeed, *Waldman* involved a claim by an indirect purchaser against a manufacturer.  *Id.*[142]

South Carolina. Defendants misstate the law of South Carolina.  The elements of unjust enrichment in South Carolina are "(1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value."  *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502, 512 (S.C. Ct. App. 2002); *see also Sauner v. Publ. Serv. Authority of S.C.*, 581 S.E.2d 161, 167-68 (S.C. 2003).  Plaintiffs need not allege that Defendants owed them a duty in order to state a claim for unjust enrichment.  *See, e.g., Williams*

---

[142] Defendants' other cases are either inapposite or support Plaintiffs. *Carmona v. Spanish Broad. Sys., Inc.*, dismissed an unjust enrichment claim by radio listeners against a radio station which received no payment—directly or indirectly—from the plaintiffs. No. 08-cv-4475, 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009). The court *sustained* the plaintiff radio listeners' unjust enrichment claims against the tour company that *did* receive the payments. *Id.* at *7. *Reading Int'l Inc. v. Oaktree Capital Mgmt.* dismissed an unjust enrichment claim by an independent movie theater against two movie theater chains with which it had never done business—directly or indirectly.  317 F. Supp. 2d 301, 333-34 (S.D.N.Y. 2003).

*Carpet Contractors, Inc. v. Skelly*, 734 S.E.2d 177 (S.C. Ct. App. 2012) (upholding subcontractor's unjust enrichment claim against property owner without mentioning any duty the owner owed to the subcontractor).

**G.    Plaintiffs Adequately Allege a Benefit Conferred on Defendants.**

According to Defendants, Plaintiffs fail to allege that they conferred a direct benefit upon Defendants as allegedly required in twenty-four jurisdictions. Defendants' argument appears to be premised on the fact that Plaintiffs are indirect purchasers. Antitrust defendants regularly rely upon this defense and courts just as regularly reject it. *See, e.g.*, *In re Processed Egg Prods.*, 851 F. Supp. 2d at 927-36 (rejecting defendant's arguments that ten jurisdictions require or would "likely" require a direct benefit that cannot be satisfied by indirect purchasers); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d at 544 ("Defendant's argument fails because a benefit conferred need not mirror the actual loss of the plaintiff . . . . The critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct."); *Cardizem*, 105 F. Supp. 2d at 671 ("Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct.").

As one court explained in analyzing unjust enrichment claims in an indirect purchaser case, the proper focus should be on the relationship between the plaintiffs' injury and the defendants' conduct, rather than on the relationship between the parties. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011). *TFT-LCD* recognized that claims that were held to be too indirect typically involved only tenuous connections between the plaintiff's injury and the defendant's gain. *Id.*   It held, "Here . . . there is a direct relationship between the plaintiffs' expenses and the defendants' benefit . . . There are no intervening events that disrupt the flow of money from plaintiffs

[indirect purchasers] to defendants. . . . [T]he money they paid was 'passed through' directly to defendants." *Id.* at *7-8.  The same reasoning applies here.

Defendants focus particularly on Connecticut, arguing that the direct-benefit requirement is "inherent" in Connecticut's unjust enrichment action.  Def. Mem. at 50.  They cite only Connecticut's jury instructions and no case law in support of this argument.  In fact, Connecticut's unjust enrichment cause of action is "consistent with the principles of equity, a broad and flexible remedy." *Vertex, Inc. v. City of Waterbury*, 898 A.2d 178, 190 (Conn. 2006).  A plaintiff need only prove "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Id.*  Plaintiffs have done so.  Comp. ¶¶ 102-04, 110-15, 121-22, 125-28, 130-31, 133.

### H.     Unjust Enrichment Is a Viable Claim in California, Georgia, Illinois, and Mississippi.

<u>California</u>.  Defendants incorrectly assert that there is no independent cause of action for unjust enrichment in California.  Many California courts have recognized an equitable claim for unjust enrichment. *See, e.g.*, *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000); *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-63 (1992); *In re Processed Egg Prods.*, 851 F. Supp. 2d at 913 (refusing to dismiss California unjust enrichment claim).  The claim requires the: "(1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007).  Any split of authority among California courts as to whether an independent cause of action for unjust enrichment exists "is essentially founded on semantics, drawing a distinction—between unjust enrichment, restitution, and quasi-contract—without a difference." *Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 WL 2147413, *14 n.8 (N.D. Cal. May 15, 2013).

66

<u>Georgia</u>.   The Supreme Court of Georgia has recognized unjust enrichment as an independent cause of action.  *Reeves v. Newman*, 695 S.E.2d 626, 627 n.2 (Ga. 2010) (describing a constructive trust as "not an independent cause of action . . .  but a device by which property might be recovered *if [an] unjust enrichment claim were to prevail*.") (emphasis added); *Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995) (discussing the period of limitation "in an action for unjust enrichment").   Under Georgia state law, unjust enrichment occurs when there is "a benefit conferred which would result in an unjust enrichment unless compensated."  *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006) (treating unjust enrichment as an independent claim); *see also Hemispherx Biopharma, Inc. v. Mid-S. Capital, Inc.*, 690 F.3d 1216, 1227 (11th Cir. 2012) ("Georgia law provides alternative equitable theories of recovery, including . . . unjust enrichment.").

<u>Illinois</u>.  The Illinois Supreme Court has recognized unjust enrichment as an independent cause of action.   *Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill. 2d 248, 258 (2004); *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998) (recognizing independent cause of action for unjust enrichment and citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989)).   "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  *HPI Health Servs.*, 545 N.E.2d at 679.

<u>Mississippi</u>.   Mississippi law also allows recovery under an unjust enrichment theory.  *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 342 (Miss. 2004) ("Mississippi law provides that, in an action for unjust enrichment, the plaintiff need only allege and show that the defendant holds money which in equity and good conscience belongs to the plaintiff."); *In re*

*Processed Egg Prods.*, 851 F. Supp. 2d at 913 (surveying Mississippi state law and stating "there is considerable authority that supports the existence of an independent state law claim for unjust enrichment").[143]

> **I.      Plaintiffs' Unjust Enrichment Claim Under Connecticut Law is Adequately Pleaded For the Reasons Set Forth Above.**

Defendants assert that Plaintiffs' unjust enrichment claim under Connecticut law must be dismissed for some of the same reasons addressed above—namely that unjust enrichment is a quasi-contract theory, that Plaintiffs must allege a direct benefit, and that Plaintiffs' claims are an "end run" around the will of the Connecticut legislature. For the reasons just discussed, these arguments fail.

### CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be denied.  Plaintiffs are dropping the following claims: (1) Florida antitrust claims, Comp. ¶¶ 176(d), 190(d), 198(d); (2) Massachusetts antitrust claims, *id*. ¶¶ 176(i), 190(h), 198(i); (3) unjust enrichment under Pennsylvania law, *id*. ¶ 204 (Pennsylvania claim only); (4) monopolization claims under Kansas, New York and Tennessee law, *id*. ¶¶ 198(g), 198(q), 198(v); and (5) fraudulent concealment, *id*. ¶¶ 155-160.  Plaintiffs have adequately alleged that Defendants entered an unlawful exclusion payment agreement, and the statute of limitations is no obstacle to the prosecution of these claims. Moreover, Plaintiffs have standing to pursue their state and common law claims as alleged.

---

[143] Defendants cite two federal cases, including *Coleman v. Conseco* in support of their argument.  Def. Hum. Mem. at 44.  "Contrary to *Coleman* and its federal progeny, however, there is a substantial body of Mississippi case law that treats unjust enrichment as a separate cause of action." *In re Light Cigarettes Mktg Sales Practices Litig.*, 751 F. Supp. 2d 183, 194 (D. Me. 2010) (collecting and analyzing Mississippi state cases).

Dated: August 22, 2014                    Respectfully Submitted,

/s/ *William H. Narwold*

William H. Narwold (ct 00133)
Mathew P. Jasinski (ct 27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Tel: (860) 882-1676
Fax: (860) 882-1682
E-mail:  bnarwold@motleyrice.com

Donald A. Migliori
Michael M. Buchman
John A. Ioannou
Alex R. Straus
MOTLEY RICE LLC
600 Third Avenue, Suite 2101
New York, NY 10016

Tel: (212) 577-0040

Fax: (212) 577-0054

E-mail:  dmigliori@motleyrice.com
         mbuchman@motleyrice.com

*Liaison Counsel for the*
*Proposed End-Payor Class*

Steve D. Shadowen
Anne K. Fornecker
R. Bryce Duke
HILLIARD & SHADOWEN LLC
39 West Main Street
Mechanicsburg, PA  17055
Tel: (855) 344-3928
E-mail:  steve@hilliardshadowenlaw.com
        anne@hilliardshadowenlaw.com
        bryce@hilliardshadowenlaw.com

Renae D. Steiner
David R. Woodward
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403

Tel: (612) 338-4605
E-mail:  rsteiner@heinsmills.com
          dwoodward@heinsmills.com

Marvin A. Miller
Lori A. Fanning
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
E-mail:  mmiller@millerlawllc.com
          lfanning@millerlawllc.com

*Co-Lead Counsel for the Proposed End-Payor Class*

Daniel C. Girard
GIRARD GIBBS LLP
601 California Street
San Francisco, CA 94108
Tel: (415) 981-4800
E-mail:  dcg@girardgibbs.com

J. Douglas Richards
COHEN  MILSTEIN  SELLERS  &  TOLL,
PLLC
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
E-mail:  drichards@cohenmilstein.com

Natalie Finkelman Bennett
SHEPHERD FINKELMAN MILLER &
SHAH LLP
35 East State Street
Media, PA 19063

Tel: (610) 891-9880

E-mail:  nfinkelman@sfmslaw.com

David W. Mitchell
ROBBINS GELLAR RUDMAN & DOWD
LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058

70

Fax: (619) 231-7423
E-mail:  davidm@rgrdlaw.com

*Executive Committee for the Proposed End-Payor Class*

## CERTIFICATE OF SERVICE

I, Michael M. Buchman, hereby certify that I caused to be electronically filed the foregoing End Payor Class Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss, with accompanying Appendix A, with the Clerk of Court via CM/ECF. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

Dated: August 22, 2014                    Respectfully Submitted,

                                          /s/  _Michael M. Buchman_
                                          Michael M. Buchman
                                          MOTLEY RICE LLC
                                          600 Third Avenue, Suite 2101
                                          New York, NY 10016
                                          (212) 577-0050
                                          mbuchman@motleyrice.com