**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE:  AGGRENOX ANTITRUST LITIGATION | ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) )  C.A. No. 3:14-MD-2516(SRU) |
| ALL INDIRECT PURCHASER ACTIONS | ) ) ) |

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**</u>
<u>**MOTION TO DISMISS THE INDIRECT PURCHASER PLAINTIFFS'**</u>
<u>**CONSOLIDATED CLASS ACTION COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

I.   IPPS' CLAIMS FAIL FOR THE SAME REASONS THAT DPPS' CLAIMS FAIL..................................................................................................................2

II.   IPPS LACK ARTICLE III STANDING IN THE 29 JURISDICTIONS IN WHICH THEY DO NOT ALLEGE PURCHASES OF AGGRENOX ............................3

III.   IPPS' CLAIMS ARE TIME-BARRED..........................................................................7

    A.   IPPs' Claims Accrued as Early as August 2008, and in Any Event More than Four Years before IPPs Filed Their Complaint .................................8

    B.   IPPs Fail to Allege Conduct That Would Justify Extending the Statute of Limitations Under a Continuing Violation Theory.................................9

IV.   IPPS LACK STANDING UNDER THE RULE OF ILLINOIS BRICK .........................12

    A.   As Indirect Purchasers, IPPs Have No Standing in States Following *Illinois Brick*........................................................................................12

    B.   As Indirect Purchasers, IPPs Cannot Circumvent *Illinois Brick* by Relabeling Their Antitrust Claim as "Unjust Enrichment" ....................14

V.   IPPS FAIL TO ADEQUATELY ALLEGE CONSUMER PROTECTION CLAIMS .....................................................................................................................15

    A.   IPPs Fail to Plead Deception or Reliance as Required by the Consumer Protection Laws of Several States..........................................15

    B.   IPPs Fail to Allege Unconscionable Conduct Under the District of Columbia, Kansas, and New Mexico Consumer Protection Statutes ...................19

    C.   The Alleged Conduct Does Not Have a Consumer Nexus, Nor Is It Consumer Oriented, as Required by the Consumer Protection Laws of Twelve Jurisdictions ..........................................................................20

    D.   The Consumer Fraud Statutes of Several States Do Not Reach Antitrust Behavior.................................................................................23

    E.   Only Consumers Have Standing to Bring Claims under the Consumer Protection Statutes of Nine States .....................................................25

    F.   Class Action Bars Preclude Claims Under Six Consumer Protection Statutes...........................................................................................27

    G.   IPPs Fail to Meet the Pre-Filing Notice Requirements of Five States..................28

    H.   IPPs Have No Private Cause of Action under the Iowa Consumer Fraud Act.................................................................................................28

    I.   IPPs Have No Right of Action under the Nevada Deceptive Trade Practices Act .....................................................................................29

i

J.     IPPs' Florida Unfair and Deceptive Trade Practices Act Claims Are Preempted ........................................................................................................29

VI.   IPPS FAIL TO ALLEGE A SUFFICIENT NEXUS TO INTRASTATE COMMERCE................................................................................................................29

VII.  IPPS FAIL TO ADEQUATELY ALLEGE UNJUST ENRICHMENT CLAIMS ...........30

CONCLUSION.................................................................................................................................30

ii

## <u>TABLE OF AUTHORITIES</u>

### CASES

*A.F. of L.-A.G.C. Buildings Trade Welfare Plan v. Boehringer Ingelheim Pharma GmbH et al.,*
No. 13-cv-01716 (D. Conn. Nov. 18, 2013) ...............................................................................8

*Abbott Labs. v. Teva Pharm. USA, Inc.,*
432 F. Supp. 2d 408 (D. Del. 2006) ........................................................................................18

*Allen v. Dairy Farmers of Am., Inc.,*
748 F. Supp. 2d 323 (D. Vt. 2010) ......................................................................................9, 11

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ...............................................................................................................5, 6

*Antoine v. U.S. Bank Nat'l Ass'n,*
821 F. Supp. 2d 1 (D.D.C. 2010) .............................................................................................20

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997) ....................................................................................................................6

*Arreola v. Godinez,*
546 F.3d 788 (7th Cir. 2008) .....................................................................................................5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................................20

*Ashwander v. TVA,*
297 U.S. 288 (1936) ...................................................................................................................6

*Athey Prods. Corp. v. Harris Bank Roselle,*
89 F.3d 430 (7th Cir. 1996) .....................................................................................................21

*Beard v. Edmonson & Gallagher,*
790 A.2d 541 (D.C. 2002) ........................................................................................................12

*Bearden v. Honeywell Int'l,*
2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) .....................................................................17

*Bennett v. Visa U.S.A. Inc.,*
198 S.W.3d 747 (Tenn. Ct. App. 2006) ..............................................................................24, 25

iii

*Berneike v. CitiMortgage,*
    708 F.3d 1141 (10th Cir. 2013) ............................................................26

*Bilick v. Eagle Elec. Mfg.,*
    807 F. Supp. 243 (E.D.N.Y. 1992) ..........................................................7

*Blake v. Abbott Labs., Inc.,*
    1996 WL 134947 (Tenn. Ct. App. Mar. 27, 1996) ....................................24

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ..................................................................5

*Brett v. Toyota Motor Sales, U.S.A., Inc.,*
    2008 WL 4329876 (M.D. Fla. Sept. 15, 2008) .........................................29

*Brown v. Louisiana-Pacific Corp.,*
    No. 4:12-cv-00102 (S.D. Iowa Jan. 18, 2013) ..........................................16

*CIT Group/Sales Fin. v. E-Z Pay Used Cars,*
    29 Kan. App. 2d 676 (Kan. 2001) ..........................................................26

*CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.,*
    32 P.3d 1197 (Kan. Ct. App. 2001) ........................................................21

*City of El Paso v. Darbyshire Steel Co.,*
    575 F.2d 521 (5th Cir. 1978) ..................................................................10

*FTC v. Mylan Labs. Inc.,*
    62 F. Supp. 2d 25 (D.D.C. 1999) .......................................................19, 23

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ................................................................................5

*Doe v. United Methodist Church,*
    673 N.E.2d 839 (Ind. App. Ct. 1996) ......................................................12

*Durell v. Sharp Healthcare,*
    108 Cal. Rptr. 3d 682 (Cal. Ct. App. 2010) .............................................15

*Equitable Life Leasing Corp. v. Abbick,*
    757 P.2d 304 (Kan. 1988) ......................................................................24

iv

*ERI Max Entm't v. Streisand*,
690 A.2d 1351 (R.I. 1997) ...........................................................................18

*Exhaust Unlimited Inc. v. Cintas Corp.*,
326 F. Supp. 2d 928 (S.D. Ill. 2004) .............................................................9

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) .........................................................................5

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
194 F.3d 505 (4th Cir. 1999) .......................................................................26

*FTC v. Actavis Inc.*,
133 S. Ct. 2223 (2013) ..............................................................................2, 3

*FTC v. IFC Credit Corp.*,
543 F. Supp. 2d 925 (N.D. Ill. 2008) ..........................................................17

*Fuller Ford, Inc. v. Ford Motor Co.*,
2001 WL 920035 (D.N.H. Aug. 6, 2001) ....................................................12

*Gaebler v. N.M. Potash Corp.*,
676 N.E.2d 228 (Ill. App. Ct. 1996) ......................................................24, 28

*Gaidon v. Guardian Life Ins. Co. of Am.*,
725 N.E.2d 598 (N.Y. 1999) ........................................................................22

*Gardner v. Montgomery Cnty. Teachers Fed. Credit Union*,
2012 WL 692882 (D. Md. Feb. 29, 2012) ...................................................23

*Gasperoni v. Metabolife, Int'l Inc.*,
2000 WL 33365948 (E.D. Mich. Sept. 27, 2000) ........................................17

*Geico Indem. Ins. Co. v. Kannaday*,
2007 WL 2990552 (D. Kan. Oct. 11, 2007) .................................................26

*George v. George F. Berkander, Inc.*,
169 A.2D 370 (R.I. 1961) .............................................................................18

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.*,
285 F.R.D. 169 (D. Mass. 2012) ....................................................................5

v

*Grand Rapids Plastics v. Lakian*,
  188 F.3d 401 (6th Cir. 1999) ....................................................................11

*Granito v. Int'l Bus. Machs.*,
  2003 WL 1963161 (Conn. Super. Ct. Apr. 16, 2003)................................30

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)...................................................................................4

*Grodzitsky v. Am. Honda Motor Co.*,
  2013 WL 2631326 (C.D. Cal. June 12, 2013) ..........................................16

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004)..........................................................................5

*Iadanza v. Mather*,
  820 F. Supp. 1371 (D. Utah 1993)............................................................26

*Imperial Point Colonnades Condo, Inc. v. Mangurian*,
  549 F.2d 1029 (5th Cir. 1977) ....................................................................9

*In re Aftermarket Filters Antitrust Litig.*,
  2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .............................................18

*In re Aluminum Warehousing Antitrust Litig.*,
  2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014)............................................5

*In re Auto. Parts Antitrust Litig.*,
  2013 WL 2456612 (E.D. Mich. June 6, 2013)..........................................13

*In re Auto. Parts Antitrust Litig.*,
  2014 WL 2993742 (E.D. Mich. July 3, 2014) ..........................................28

*In re Auto. Refinishing Paint Antitrust Litig.*,
  515 F. Supp. 2d 544 (E.D. Pa. 2007) ........................................................22

*In re Bayou Hedge Funds Inv. Litig.*,
  472 F. Supp. 2d 528 (S.D.N.Y. 2007)........................................................30

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000).....................................................14

vi

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ..........................................................................17

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   261 F. Supp. 2d 188 (E.D.N.Y. 2003) ....................................................................10, 11

*In re Cotton Yarn Antitrust Litig.*,
   505 F.3d 274 (4th Cir. 2007) ......................................................................................9

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
   903 F. Supp. 2d 198 (S.D.N.Y. 2012).................................................................6, 18, 21

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011).........................................................................27

*In re Dynamic Random Access Memory (DRAM)*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) ......................................................................25

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   536 F. Supp. 2d 1129 (N.D. Cal. 2008) ......................................................................13

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................17, 18, 24, 25

*In re Flonase Antitrust Litig.*,
   692 F. Supp. 2d 524 (E.D. Pa. 2010) ....................................................................18, 27

*In re Ford Tailgate Litig.*,
   2014 WL 1007066 (N.D. Cal. Mar. 11, 2014)..............................................................27

*In re Graphics Processing Units Antitrust Litig. ("GPU")*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................................17, 23

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
   2014 WL 868827 (E.D.N.Y. Mar. 5, 2014)...................................................................7

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   496 F. Supp. 2d 404 (D. Del. 2007).......................................................................19, 25

*In re K-Dur Antitrust Litig.*,
   2008 WL 2660780 (D.N.J. Feb. 28, 2008) ..................................................................14

vii

*In re K-Dur Antitrust Litig.*,
   2008 WL 2660783 (D.N.J. Mar. 19, 2008).................................................................17

*In re K-Dur Antitrust Litig.*,
   338 F. Supp. 2d 517 (D.N.J. 2004) ...................................................................9, 14

*In re Magnesium Oxide Antitrust Litig.*,
   2011 WL 5008090 (D.N.J. Oct. 20, 2011).................................................................6

*In re New Motor Vehicles Canadian Exp. Antitrust Litig. (NMV)*,
   350 F. Supp. 2d 160 (D. Me. 2004) ...................................................................17, 19, 24

*In re Niaspan Antitrust Litig.*,
   2014 WL 4403848 (E.D. Pa. Sept. 5, 2014) ....................................................... passim

*In re Pharm. Indus. Average Wholesale Price Litig. (AWP I)*,
   233 F.R.D. 229 (D. Mass. 2006)...................................................................19, 25

*In re Pharm. Indus. Average Wholesale Price Litig. (AWP II)*,
   252 F.R.D. 83 (D. Mass. 2008)...................................................................17

*In re Polyurethane Foam Antitrust Litig.*,
   799 F. Supp. 2d 777 (N.D. Ohio 2011)...................................................................17, 23

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   940 F. Supp. 2d 367 (E.D. La. 2013) ...................................................................9

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)...................................................................5

*In re Relafen Antitrust Litig.*,
   286 F. Supp. 2d 56 (D. Mass. 2003) ...................................................................9

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   2013 WL 2181185 (E.D. Tenn. May 20, 2013)...................................................................10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   2010 WL 5094289 (N.D. Cal. Dec. 8, 2010)...................................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................................17, 24

viii

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
300 F. Supp. 2d 1107 (D. Kan. 2003) ........................................................24

*In re Wellbutrin XL Antitrust Litig.*,
260 F.R.D. 143 (E.D. Pa. 2010) ..................................................................6

*In re Wellbutrin XL Antitrust Litig.*,
756 F. Supp. 2d 670 (E.D. Pa. 2010) ........................................................27

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
2010 WL 2756947 (N.D. Ohio July 12, 2010) ........................................27

*In re Wholesale Grocery Prods. Antitrust Litig.*,
752 F.3d 728 (8th Cir. 2014) ....................................................................10

*John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*,
94 F. Supp. 2d. 77 (D. Mass. 1999) ..........................................................12

*K.R. Smith Trucking, LLC v. Paccar, Inc.*,
2009 WL 3488064 (D. Kan. Oct. 23, 2009) ............................................26

*Kanne v. Visa U.S.A. Inc.*,
723 N.W.2d 293 (Neb. 2006) ....................................................................22

*Kastner v. Intrust Bank*,
569 F. App'x 593, 599 (10th Cir. 2014) ..................................................21

*Kestrel Holdings I, L.L.C. v. Learjet Inc.*,
316 F. Supp. 2d 1071 (D. Kan. 2004) ......................................................26

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ..................................................................................13

*Laughlin v. Evanston Hosp.*,
550 N.E.2d 986 (Ill. 1990) ........................................................................24

*Layton v. Lester II*,
2011 WL 522887 (Conn. Super. Ct. Jan. 21, 2011) ..................................30

*Leider v. Ralfe*,
387 F. Supp. 2d 283 (S.D.N.Y. 2005) ......................................................18

ix

*Lowe v. Surpas Res. Corp.*,
253 F. Supp. 2d 1209 (D. Kan. 2003) ........................................................................12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................4

*Macquarie Grp. v. Pac. Corp.*,
2009 WL 539928 (S.D. Cal. Mar. 2, 2009) ...............................................................18

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012) .....................................................................................5, 6

*McKenna v. Wells Fargo Bank, N.A.*,
693 F.3d 207 (1st Cir. 2012) ....................................................................................28

*Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*
131 S.W.3d 457 (Tenn. Ct. App. 2003) ....................................................................19

*Molecular Diagnostics Labs. v. Hoffmann-LaRoche, Inc.*,
402 F. Supp. 2d 276 (D.D.C. 2005) ...........................................................................9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012) .......................................................................................4

*Nelson v. Lusterstone Surfacing Co.*,
605 N.W.2d 136 (Neb. 2000) ....................................................................................22

*Nev. Power Co. v. Eighth Judicial Dist. Ct. of Nev.*,
102 P.3d 578 (Nev. 2004) ..........................................................................................29

*New York v. Feldman*,
210 F. Supp. 2d 294 (S.D.N.Y. 2002) .......................................................................18

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ................................................................................................5, 6

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 623 N.Y.S.2d 529 (N.Y. 1995)* ......................................................................................................................22

*People ex rel. Spitzer v. Applied Card Sys. Inc.*,
805 N.Y.S.2d 175 (N.Y. App. Div. 2005) .................................................................18

x

*Piazza v. Ebsco Indus.*,
    273 F.3d 1341 (11th Cir. 2001) ....................................................................................5

*Powell v. Bank of Am., N.A.*,
    842 F. Supp. 2d 966 (S.D. W. Va. 2012) ...................................................................22

*Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.*,
    137 D.P.R. 497 (1994) ................................................................................................12

*Pricaspian Dev. Corp. v. Total S.A.*,
    397 F. App'x 673 (2d Cir. 2010) ................................................................................10

*Prime Leasing, Inc. v. Kendig*,
    773 N.E.2d 84 (Ill. App. Ct. 2002) ............................................................................16

*Rail-Trailer Co. v. ACF Industries*
    358 F.2d 15 (7th Cir. 1966) ..........................................................................................3

*Rite Aid Corp. v. Am. Exp. Travel Related Servs. Co.*,
    708 F. Supp. 2d 257 (E.D.N.Y. 2010) ........................................................................10

*Rivera-Muñiz v. Horizon Lines Inc.*,
    737 F. Supp. 2d 57 (D.P.R. 2010) ..............................................................................12

*Schoenbaum v. E.I. DuPont De Nemours & Co.*,
    517 F. Supp. 2d 1125 (E.D. Mo. 2007) ......................................................................24

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
    559 U.S. 393 (2010) ..............................................................................................27, 28

*Shaw v. Marriott Int'l*,
    605 F.3d 1039 (D.C. Cir. 2010) ...................................................................................0

*Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkiline, PLC*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) .............................................................17, 20, 22

*Sidney Hillman Health Ctr., of Rochester v. Abbott Labs.*,
    2014 WL 4057439 (N.D. Ill. Aug. 14, 2014) .............................................................11

*Sosna v. Iowa*,
    419 U.S. 393 (1975).......................................................................................................5

xi

*State ex rel. Nixon v. Cont'l Ventures Inc.*,
  84 S.W.3d 114 (Mo. Ct. App. 2002)...........................................................................22

*State ex rel. Wasden v. Daicel Chem. Indus.*,
  106 P.3d 428 (Idaho 2005).................................................................................21, 23

*Stepan Co. v. Winter Panel Corp.*,
  948 F. Supp. 802 (N.D. Ill. 1996)............................................................................21

*Suarez v. City of Tampa*,
  987 So. 2d 681 (Fla. Ct. App. 2008)........................................................................12

*Tait v. BSH Home Appliances Corp.*,
  2011 WL 1832941 (C.D. Cal. May 12, 2011) .........................................................27

*Temple v. Circuit City Stores, Inc.*,
  2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007) ..........................................................7

*Thomas v. Petro-Wash, Inc.*,
  429 F. Supp. 808 (M.D.N.C. 1977) ...........................................................................9

*Tungate v. MacLean-Stevens Studios*,
  714 A.2d 792 (Me. 1998)..........................................................................................17

*U.S. Gypsum Co. v. Indiana Gas Co.*,
  350 F.3d 623 (7th Cir. 2003) .....................................................................................9

*Vertex, Inc. v. City of Waterbury*,
  898 A.2d 178 (Conn. 2006) ......................................................................................30

*W. Acceptance Corp. v. Jones*,
  788 P.2d 214 (Idaho 1990) .......................................................................................21

*White v. Wyeth*,
  705 S.E.2d 828 (W. Va. 2010)..................................................................................19

*Winfield v. Citibank, N.A.*,
  842 F. Supp. 2d 560 (S.D.N.Y. 2012)........................................................................5

*Winfree v. N. Pac. Ry.*,
  227 U.S. 296 (1913)..................................................................................................13

xii

*Zekman v. Direct Am. Marketers, Inc.*,
   695 N.E.2d 853 (Ill. 1998) ..................................................................................16

## STATUTES AND RULES

4 P.R. Laws Ann. §§ 257-76 ...................................................................................12

D.C. Code Ann. § 28-3904 ......................................................................................23

Iowa Code Ann. §§ 714H ...................................................................................26, 29

Iowa Code §§ 714 *et seq.* ..............................................................................16, 25, 28

Kan. Stat. Ann. § 50-624 ........................................................................................21

Me. Rev. Stat. Ann. Title 5, § 213(1) .....................................................................26

Mich. Comp. Laws § 445.911(3)(c) ........................................................................24

Mont. Code Ann. § 30-14-102(1) ...........................................................................26

N.Y. Gen Bus. Law § 349 ................................................................................18, 22

Nev. Rev. Stat. § 41.600(1) .....................................................................................29

Nev. Rev. Stat. § 598.0923(3) .................................................................................17

R.I. Gen. Laws § 6-13.1-1, *et seq.* ....................................................................18, 26

Utah Code Ann. § 13-11-1, *et seq.* .........................................................................26

Utah Code Ann. § 76-10-3109(1)(a) .......................................................................14

Vt. Stat. Ann. Title 9 § 2461(b) ..............................................................................27

## MISCELLANEOUS

Restatement (Third) of Restitution and Unjust Enrichment § 70 cmt. f (2011) ...............................11

*Antitrust Laws and Trade Regulation* § 162.02[2][d] .......................................................10

Indirect Purchaser Plaintiffs' ("IPPs") claims share the same fundamental defects that mandate dismissal of DPPs' claims in this case,[1] including the failure to plausibly allege a cognizable "reverse payment."   And IPPs' laundry list of state law claims also should be dismissed for additional, state-specific reasons, as summarized in **Attachments 1-3**.[2]

As an initial matter, IPPs abandoned (i) all claims under Florida and Massachusetts antitrust laws, (ii) monopolization claims under Kansas, New York, and Tennessee antitrust laws, and (iii) Pennsylvania unjust enrichment claims.[3]   The remaining claims should be dismissed for the reasons discussed below.  *First*, IPPs lack standing in 29 jurisdictions in which they do not even claim to have purchased Aggrenox.  *Second*, IPPs' claims, which attack a 2008 settlement agreement, are time-barred.  *Third*, IPPs lack standing under *Illinois Brick* in states that follow the Supreme Court's prohibition on indirect purchaser claims, which IPPs cannot circumvent by asserting antitrust claims under a different name.  *Fourth*, IPPs fail to state a claim under the consumer protection laws for several reasons.  *Fifth*, IPPs fail to state a claim under the laws of states that require a nexus to intrastate commerce.  *Finally*, IPPs fail to state a claim for unjust enrichment.

IPPs' shotgun state law claims – over 104 in all – should be dismissed for multiple, overlapping reasons.   Of the 29 state <u>antitrust</u> laws invoked by IPPs (Counts II–IV), IPPs abandon their claims in 2 states (Florida and Massachusetts, Opp. at 16 n.21), they did not purchase and therefore lack standing in 18 states, and they assert time-barred claims in 8 of the 9 remaining states.   Therefore, applying just those two grounds, only Wisconsin claims would

---

[1] As noted in Defendants' opening memorandum, arguments directed at DPPs' claims apply with equal force to IPPs' claims.  *See* Defs' Motion to Dismiss IPP Complaint at 1-2, ECF No. 151 ("Mem.").

[2] **Attachment 4** provides a guide to the bases for dismissal of the IPP and Humana complaints, including the pages in Plaintiffs' and Defendants' briefs on which the Court can find the relevant discussions.

[3] *See* IPPs' Opposition to Defendants' Motion to Dismiss at 68, ECF No. 182 ("Opp.").

remain – and those claims must be dismissed because they fail to allege the required connection to *intrastate* commerce.

For their <u>consumer protection</u> claims (Count V), IPPs allege no purchases in 17 of 25 states, and their claims are time-barred in the remaining 8 states.  As to <u>unjust enrichment</u> (Counts VI–VII), IPPs lack standing in 28 of 50 jurisdictions, they abandon their Pennsylvania claim, Opp. at 68, and their claims in 16 states are time-barred.  Of the remaining 5 states, 4 follow the *Illinois Brick* indirect purchaser bar, and the last state, Wisconsin, requires that plaintiff confer a "direct benefit" on the defendant – which IPPs do not claim.

## I.  IPPs' Claims Fail for the Same Reasons that DPPs' Claims Fail

IPPs' claims largely duplicate DPPs' claims.  IPPs, like DPPs, fail to allege plausibly a causal link between the conduct challenged and the harm claimed; fail to plead a cognizable "reverse payment," let alone one that is "large" or "unexplained" under the Supreme Court's decision in *FTC v. Actavis Inc.*, 133 S. Ct. 2223 (2013); and fail to allege monopoly power plausibly.  DPP Reply §§ II-IV.[4]

IPPs elaborate upon DPPs' arguments in a few ways, but none saves the Complaint.  *First*, IPPs' suggestion that *Actavis* somehow endorsed an expansive conception of a "reverse payment," Opp. at 3-4, is belied by the Court's repeated reference to monetary payments and its endorsement of settlement forms that IPPs' test would forbid.  *Second*, IPPs' argument that an alleged exclusive license qualifies as a reverse payment simply because it could be valuable to the generic is an improper expansion of *Actavis*.  *See* DPP Reply at 36-39.  *Third*, IPPs' suggestion that the legality of an exclusive license depends on whether it is "vertical" or

---

[4] Defendants incorporate their opening ("DPP Mem.") and reply memoranda ("DPP Reply") in support of their motion to dismiss DPPs' Complaints.

"horizontal" in nature, Opp. at 5, properly has been rejected by the courts.[5]   *Fourth*, IPPs' suggestion that "reverse payment" status can be determined based on whether one side believes it is receiving value, Opp. at 6 – even where the contract in question shows the opposite – is without support and should be rejected.   *Fifth*, like DPPs, IPPs have not adequately pled that the Co-Promotion Agreement was large or unjustified under *Actavis*.   *See* DPP Reply at 19-25. *Finally*, IPPs' suggestion that the mere existence of a large reverse payment is enough to establish market power, Opp. at 7, ignores that IPPs have not alleged cognizable reverse payments and, even if they had, that the Supreme Court made clear in *Actavis* that plaintiffs must prove their case under the rule of reason, which requires proving market power, as in any other case.   *See* 133 S. Ct. at 2237; DPP Reply § IV.

## II.   IPPs Lack Article III Standing in the 29 Jurisdictions in Which They Do Not Allege Purchases of Aggrenox

IPPs fail to establish threshold Article III standing in 28 states and Puerto Rico.[6]   Rather, IPPs argue that attempting to represent a class grants a plaintiff standing to assert any claims – in any state, under any statute – that might belong to any absent plaintiff within the purported class. Opp. at 9-15.   IPPs' argument runs directly counter to Supreme Court and Second Circuit precedent establishing that (i) a plaintiff must demonstrate standing for *each* claim it asserts, and (ii) named plaintiffs cannot piggy-back on the claims of proposed class members to satisfy Article III.   Mem. at 22 (citing cases), 23 & n.19.

IPPs improperly argue that Rule 23 can spare them the constitutional burden of

---

[5] For instance, the licenses in *Rail-Trailer Co. v. ACF Industries* were "horizontal," yet the court observed that it is uniformly recognized that a patent owner can grant exclusive licenses without running afoul of the antitrust laws.  358 F.2d 15, 17 (7th Cir. 1966).

[6] Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Hawaii, Idaho, Iowa, Kansas, Louisiana, Maine, Michigan, Mississippi, Montana, Nebraska, New Hampshire, New Mexico, North Carolina, Oklahoma, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, and Wyoming.

establishing standing.  Specifically, IPPs argue that once a class representative has established a

claim, it can represent class members whose similar claims are larger or involve somewhat

different facts.[7]  *See* Opp. at 8-10.  But that does not respond to Defendants' argument for why

IPPs lack standing.  A class representative that asserts injury under one statute does not thereby

somehow acquire standing to assert claims under *entirely different statutes*, for which the

plaintiff admittedly lacks standing, simply by claiming that there are *other* potential plaintiffs in

a putative class who might have standing to sue.  Mem. at 22-23.  To the contrary, a plaintiff

must demonstrate standing for each claim it asserts.  Mem. at 22.

   *Gratz v. Bollinger*, cited by IPPs, Opp. at 11, is instructive.  In *Gratz*, a student who had

been denied freshman admission through a process that used racial preferences was permitted to

bring an Equal Protection Act claim on behalf of freshman applicants *and* transfer applicants,

notwithstanding minor factual distinctions between the two applicant types.  539 U.S. 244, 264-

65 (2003).  But the Supreme Court never suggested that the plaintiff student would have standing

to assert a claim against the University under some *other* constitutional provision or statute for

which he would not otherwise have standing – a Title IX claim, for example – if suing on behalf

of some other, unnamed class member who allegedly was injured by a violation of that other law.

*See also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d

Cir. 2012) (also cited by IPPs; class representative with standing to assert Securities Act claims

for misrepresentations in shelf registration statement had class standing to raise claims asserting

violations of *same* federal securities-law provision with respect to purchases from same shelf

---

[7] IPPs' characterization of the Article III inquiry as requiring only a showing of injury, Opp. at 9 & n.11, is puzzling because they themselves cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), in which the Supreme Court announced a three-element inquiry for determining Article III standing, including causal connection and redressability, in addition to injury in fact.  *See id.* at 560-61.  IPPs have not argued that their injuries were caused by violation of, or are redressable by, state statutes in states where they did not make any purchases.

registration).[8]  IPPs have suffered no injury under the laws of 29 jurisdictions asserted here, and therefore they lack standing to assert claims under those statutes.

IPPs also try to avoid their standing problems by arguing that the Article III inquiry – a threshold question in every federal case and a fundamental constitutional constraint on judicial power, Mem. at 21 – can be deferred for months or years until after class certification is decided. Opp. at 13-15.  While some courts have issued inconsistent decisions based on an apparent misreading of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), the weight of authority rejects IPPs' view – including a recent Second Circuit decision that IPPs seek to brush aside.  Mem. at 25 & n.21; *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64-65 (2d Cir. 2012).[9]

*Ortiz* did not, as IPPs suggest, fundamentally shift the landscape for Article III standing in class actions, Opp. at 15 n.20.  Rather, *Ortiz* and *Amchem* simply allow courts to reject claims on Rule 23 grounds when dismissal on Article III grounds might also be available.  For example, in *Amchem*, the Court declined to reach the Article III issues because standing issues "would not exist but for the class-action certification" that brought potentially uninjured plaintiffs before the

---

[8] Other cases IPPs cite similarly involve situations in which the named plaintiff already had individual standing to assert claims for alleged injuries caused by the violation of the *same* statute.  *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012) (plaintiffs with standing to bring claim as current employees could potentially represent former employees asserting same claim); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (plaintiff with standing to bring claim could potentially represent class asserting same); *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (same); *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) (same); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591-94 (8th Cir. 2009) (same); *Piazza v. Ebsco Indus.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (same); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (same).  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 302-03 (3d Cir. 1998), based its finding of standing on the "nucleus of operative fact" approach later rejected in *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-53 (2006).  *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004), is not on point, as it addressed whether a lead plaintiff appointed under PSLRA needed standing to assert all claims where other named plaintiffs had standing to bring the additional claims.

[9] The potential standing issue in both *Amchem* and *Ortiz* – whether *absent* members of a proposed class suffered any injury – was rendered irrelevant by the Supreme Court's rejection of a proposed class.

5

Court and therefore "the class certification ruling would be dispositive" of plaintiffs' claims. 521 U.S. at 612-13 (internal quotation omitted; citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997), where the Court also avoided difficult constitutional issues by dismissing case on other grounds).[10]  The Court noted that if the certification ground had not disposed of the case, then the "jurisdictional issues would loom larger."  *Id.* at 613 n.15. Similarly, in *Ortiz*, the Supreme Court declined to decide the Article III standing of absent class members because the case could be disposed of by rejecting the class.  527 U.S. at 831.  Neither *Amchem* nor *Ortiz* remotely suggests, as IPPs argue, that a court may put off deciding whether it has constitutional authority to hear a case – and to require burdensome discovery in a case – based on the prospect of a hypothetical future class certification.  *See In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011).

The Second Circuit in *Mahon* accordingly rejected the argument asserted by IPPs here, explaining that the language in *Ortiz* relied upon by IPPs was simply "a description of the case before it and not . . . a general directive regarding the order in which a court should treat class certification and Article III standing."  683 F.3d at 65.  The Second Circuit expressly rejected "the approach that analyzes class certification before Article III standing and treats the class as the relevant entity for Article III purposes."  *Id.* at 64.[11]  Here, all the district court cases in the Second Circuit cited by IPPs for this argument, except one, pre-date *Mahon*.[12]  Opp. at 14-15.

---

[10] *See also Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *Wellbutrin XL*, 260 F.R.D. at 154 ("Courts utilize the advice of cases like *Ashwander* when two issues, one constitutional and one nonconstitutional, are 'properly presented by the record' at the same time.") (internal citation omitted).

[11] Notably, here, IPPs concede that Rule 23 should be addressed only when Article III standing *already has been established*.  Opp. at 13.  There is no Article III standing here.

[12] The single exception is *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 228 (S.D.N.Y. 2012), which decided a motion that was fully briefed and argued before *Mahon* was decided.

6

Cases decided after *Mahon* (and some decided before) have recognized standing as a threshold issue and dismissed claims in states where plaintiffs alleged no injury. *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 2014 WL 868827, at *13 (E.D.N.Y. Mar. 5, 2014) (dismissing state consumer protection and unjust enrichment claims), *on reconsideration in part*, 2014 WL 1598017 (E.D.N.Y. Apr. 21, 2014); *Temple v. Circuit City Stores, Inc.*, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (dismissing state antitrust, consumer protection, and unjust enrichment claims). Indeed, in a recent case involving patent settlement antitrust claims, the court held that "named plaintiffs lack standing to assert claims under the laws of states in which they do not reside or in which they suffered no injury." *In re Niaspan Antitrust Litig.*, 2014 WL 4403848, at *16 (E.D. Pa. Sept. 5, 2014). The court relied in part on precedent within the Second Circuit in holding that the Court should *not* defer ruling on standing until class certification. *Id.* at *16 n.20 (citing *HSBC Bank*, 2014 WL 868827, at *13).

## III.   IPPs' Claims Are Time-Barred

As discussed in Defendants' opening briefs, IPPs' claims are time-barred. DPP Mem. § I; Mem. § I. IPPs have now withdrawn their argument that Defendants' fraudulent concealment prevented IPPs from suing earlier. Opp. at 20 n.29. IPPs instead try to explain their lack of diligence by arguing that (1) their claims did not accrue until a hypothetical 30-month stay of regulatory approval for generic manufacturers would have expired, and (2) the continuing-violations exception extends the statute of limitations. Opp. at 20-30. Both theories are meritless. See DPP Mem. §§ I.B, I.C.2; DPP Reply § I.[13]

---

No notice of supplemental authority was filed in the case, and *Mahon* was not cited in the opinion.

[13] IPPs argue that statute of limitations issues should not be decided on a motion to dismiss. Opp. at 19-20. But such issues are particularly appropriate in a motion to dismiss because "[s]tatute of limitations defenses may be waived if not raised in a pleading at *the earliest possible moment*." *Bilick v. Eagle Elec. Mfg.*, 807 F. Supp. 243, 248 (E.D.N.Y. 1992) (internal quotations removed) (emphasis added).

### A. IPPs' Claims Accrued as Early as August 2008, and in Any Event More than Four Years before IPPs Filed Their Complaint

IPPs' claims accrued in August 2008, at the time the Aggrenox Settlement and Co-Promotion Agreement were entered and allegedly caused IPPs' harm – a fact that indirect purchaser Humana has conceded.[14]

Nonetheless, like DPPs, IPPs argue that their claims did not arise until November 30, 2009, when a hypothetical 30-month stay of generic approval under Hatch-Waxman would have expired. IPP Complaint ¶¶ 12, 122, ECF 101 ("Compl."). But that argument contradicts IPPs' own causation allegations, *i.e.*, that generic approval and launch would have occurred earlier absent Defendants' conduct, such that IPPs allegedly were overcharged at that earlier time. Compl. ¶¶ 5, 75, 122-26; DPP Mem. at 24-25; DPP Reply at 4-5. Indeed, IPPs repeat in their Opposition that the Aggrenox Settlement delayed Barr's entry by **seven years**, *i.e.*, from 2008 to 2015, not from November 30, 2009. Opp. at 2-3; *see also* Compl. ¶¶ 2, 7, 11, 87. At the very latest, IPPs' claims accrued on August 14, 2009, when the FDA actually approved Barr's ANDA for generic Aggrenox. DPP Reply at 4. Indeed, many IPPs acknowledged this reality, alleging in their Complaints that their claims accrued in *August 2009* – and amending their Complaint only after apparently realizing that their claims were time-barred. *See id.*[15] Finally, IPPs' argument also contradicts their allegation that Barr would have prevailed in the underlying patent litigation, which could have allowed generic entry – and therefore purported injury to IPPs – before November 2009. Mem. at 19-20.[16]

---

[14] Humana Compl. ¶¶ 9, 84, ECF 93; Humana Opp. to Motion to Dismiss at 4-5, ECF 178.

[15] *See, e.g.*, Compl. ¶ 67, *A.F. of L.-A.G.C. Buildings Trade Welfare Plan v. Boehringer Ingelheim Pharma GmbH et al.*, No. 13-cv-01716 (D. Conn. Nov. 18, 2013).

[16] The trial date in the Barr patent infringement litigation was set for May 2009, leaving the district court with time to reach a decision before November 2009. DPP Mem. at 24-25. If Barr had prevailed, then the stay would have ended and the FDA could have approved Barr's ANDA before November 2009 – as

8

**B. IPPs Fail to Allege Conduct That Would Justify Extending the Statute of Limitations Under a Continuing Violation Theory**

IPPs fail to allege any overt act that would constitute a continuing violation extending the statute of limitations. DPP Reply § I.b.2. Each payment of an allegedly inflated price does not create a new cause of action, as IPPs claim. Opp. at 23-28; DPP Reply § I.b.3. The additional cases IPPs cite are inapposite.[17] Even the authority cited by IPPs recognizes the danger of extending the limitations period to each purchase of a product, as such a rule would "effectively abrogate the statute of limitations." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 349 (D. Vt. 2010) (refusing to apply continuing violation theory outside context of ongoing conspiracies).

Moreover, IPPs rely on several cases that turned on the speculative damages exception to the statute of limitations – an exception IPPs do not (and could not) invoke. For example, IPPs point to several cases involving challenges to alleged tying arrangements,[18] but in that context courts have held that charges imposed under the tying arrangement will extend the statute of

---

it in fact did on August 14, 2009.

[17] *Exhaust Unlimited Inc. v. Cintas Corp.*, 326 F. Supp. 2d 928, 931 (S.D. Ill. 2004), relied on authority calling for "discre[te] act[s] with fresh adverse consequences," unlike what IPPs allege here. And in *Nexium*, the court acknowledged that "courts are generally fairly hostile to invocations of the continuing-violation exception in instances where a plaintiff fails to allege that the defendant committed overt acts separate and apart from the initial act giving rise to the initial injury." 968 F. Supp. 2d 367, 399 (D. Mass. 2013). Indeed, a prior decision by the same judge in *Nexium* made clear that a plaintiff cannot establish a continuing violation without an overt act. *In re Relafen Antitrust Litig.*, 286 F. Supp. 2d 56, 62 (D. Mass. 2003). *Molecular Diagnostics Labs. v. Hoffmann-LaRoche, Inc.*, 402 F. Supp. 2d 276, 286 (D.D.C. 2005), and *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004), erroneously applied the continuing violation doctrine merely because the plaintiffs were purchasers. And IPPs' other cases involve price-fixing conspiracies or other ongoing wrongdoing, and therefore are inapposite for the reasons discussed in the DPP Reply §§ I.b.2-3. *See In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 290-91 (4th Cir. 2007) (ongoing price-fixing); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367, 400 (E.D. La. 2013) (agreement to exclude company during limitations period); *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 628 (7th Cir. 2003) (defendant "regularly ke[pt] some capacity off the market, tie[d] gas and transport together, or perform[ed] other acts that could be thought to violate the antitrust laws").

[18] *See Imperial Point Colonnades Condo, Inc. v. Mangurian*, 549 F.2d 1029, 1043-44 (5th Cir. 1977); *Thomas v. Petro-Wash, Inc.*, 429 F. Supp. 808, 812 (M.D.N.C. 1977).

9

limitations only if the "damages were speculative . . . when the plaintiff executed the challenged contract." *Rite Aid Corp. v. Am. Exp. Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 269 (E.D.N.Y. 2010);[19] *see also City of El Paso v. Darbyshire Steel Co.*, 575 F.2d 521, 523 (5th Cir. 1978) (limiting *Imperial Point*, cited by IPPs, Opp. at 24 n.43, 29 n.62, to cases where damages were speculative when contract was entered);[20] *In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 737 (8th Cir. 2014) ("The limitations period begins to run against customers only when the 'customers *have reason to know* of the violation and their damages *are sufficiently ascertainable* to justify an antitrust action.'") (emphasis in original).

IPPs' theory is also irreconcilable with *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, where the court dismissed similar "reverse payment" allegations as untimely. 261 F. Supp. 2d 188, 230 (E.D.N.Y. 2003); DPP Reply at 12-13. IPPs try to distinguish *Cipro* by contending that the plaintiffs there somehow were not purchasers. Opp. 28. But *Cipro* is clear that the "Organizational Plaintiffs" whose claims were dismissed included plaintiffs that "purchased Cipro as third-party payors for their members." 261 F. Supp. 2d at 219.[21]

IPPs argue that their unjust enrichment claims are timely, Opp. at 31, but those claims accrued in August 2008, and no later than Barr's ANDA approval for generic Aggrenox in August 2009.[22] *See Pricaspian Dev. Corp. v. Total S.A.*, 397 F. App'x 673, 675 (2d Cir. 2010)

---

[19] Notably, the court also held that, for purposes of the continuing violations doctrine, "[c]ourts routinely state that contract payments cannot constitute overt acts." *Rite Aid*, 708 F. Supp. 2d at 270 n.15.

[20] IPPs also misleadingly cite a sentence from a treatise entry addressing when a plaintiff's claim *first* accrues. Opp. at 23 n.40 (citing van Kalinowski, *Antitrust Laws and Trade Regulation* § 162.02[2][d] (2d ed. 2003)). But initial cause of action accrual is a very different issue than whether a *subsequent sale* restarts the limitations period. The treatise IPPs rely upon indicates that the continuing violation question "is best determined by considering the type of violation involved." *Id.* § 162.02[2].

[21] IPPs point to *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL 2181185 (E.D. Tenn. May 20, 2013), as an "exclusion-payment case[]" that reached a different result. Opp. 27. But, as explained in the DPP Reply, this case is not persuasive and should not dictate the result here. DPP Reply at 11 n.10.

[22] Moreover, if IPPs' state law antitrust and consumer protection claims are dismissed as untimely, their

(unjust enrichment claims accrue upon "occurrence of the wrongful act giving rise to a duty of restitution"); Restatement (Third) of Restitution and Unjust Enrichment § 70 cmt. f (2011) (claim accrues "when the eventual action might first have been successfully brought").

Beyond relying on the mere sale of Aggrenox, IPPs identify three other alleged "continuing overt acts" to justify avoiding the statute of limitations: (1) Barr's decision not to sell generic Aggrenox during the pendency of the patent, (2) BI's refraining from launching an authorized generic, and (3) BI's payments under the Co-Promotion Agreement. Opp. at 28-30. Continued adherence to the terms of a settlement agreement, however, cannot give rise to a continuing violation exception. *See, e.g.*, *Grand Rapids Plastics v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999); *Allen*, 748 F. Supp. 2d at 350-51. These alleged "overt acts" are merely inertial consequences of the challenged agreements and cannot create an exception to the limitations period. DPP Reply at 13 (citing cases); *Cipro*, 261 F. Supp. 2d at 230.

And IPPs cannot rely on inaction – including *projected inaction* that BI will not launch an authorized generic in 2015 – to make out an overt *act*. *See* Opp. at 28-30. As for Barr's "continuous refusal to enter" the market with a generic Aggrenox product, Opp. at 28-29, Barr's inaction is at most the "mere reaffirmation of [its] initial act" of entering into the Aggrenox Settlement. *Cipro*, 261 F. Supp. 2d at 228. IPPs therefore suggest that Barr's failure to breach a contract is a "continuing violation." Opp. at 29. That is not the law, and IPPs cite no authority for such a counter-intuitive position.

In addition to these generally applicable defects, state laws further preclude application of the continuing violations doctrine here. Kansas, Massachusetts, and New Hampshire reject the

---

corresponding unjust enrichment claims also must be dismissed. *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 2014 WL 4057439, at *7 (N.D. Ill. Aug. 14, 2014) (dismissal of consumer protection claim on statute of limitations grounds mandated dismissal of unjust enrichment claim).

11

continuing violations doctrine,[23] while the District of Columbia, Florida, and Indiana reject this

exception to the statute of limitations where plaintiffs, like IPPs here, had notice of their claim.[24]

## IV.     IPPs Lack Standing Under the Rule of Illinois Brick

### A. As Indirect Purchasers, IPPs Have No Standing in States Following *Illinois Brick*

IPPs' claims must be dismissed in <u>5 jurisdictions</u> – Florida, Massachusetts, Puerto Rico,

Rhode Island, and Utah – which apply *Illinois Brick's* prohibition on indirect purchaser damage

claims.   *See* **Attachment 1**.   Recognizing that Plaintiffs lack standing to pursue claims as

indirect purchasers, IPPs abandon their Massachusetts and Florida antitrust claims.  Opp. at 16

n.21.  IPPs' antitrust claims in Puerto Rico, Rhode Island, and Utah similarly cannot stand.

IPPs assert a state law antitrust claim under the laws of <u>Puerto Rico</u>, but the Puerto Rico

legislature has not passed an *Illinois Brick* repealer, and no Puerto Rico territorial court has ever

interpreted Puerto Rico law to adopt a repeal.  *See* 4 P.R. Laws Ann. §§ 257-76; Mem. at 26-27.

IPPs' emphasis on *Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57 (D.P.R. 2010), for a

contrary position is misplaced.  Opp. at 16.  In *Rivera-Muñiz*, a federal district court relied on

*Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.*, 137 D.P.R. 497, 509-18 (1994), for the

proposition that the Puerto Rico Antitrust Act (PRAA) standing requirements generally are to be

interpreted liberally.  *Id*. at 61.  But *Pressure Vessels* did not involve indirect purchaser standing.

*Id.*  Subsequent courts thus correctly have held that the *Illinois Brick* rule applies in Puerto Rico

---

[23] *See, e.g.*, *Fuller Ford, Inc. v. Ford Motor Co.*, 2001 WL 920035, at *6 (D.N.H. Aug. 6, 2001) (rejecting continuing violation doctrine); *Lowe v. Surpas Res. Corp.*,  253 F. Supp. 2d 1209, 1252 (D. Kan. 2003) (in Kansas, "continuing violation doctrine has been applied very infrequently outside the . . . employment discrimination context"); *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77, 107 (D. Mass. 1999) (declining to apply continuing tort doctrine, noting "Massachusetts courts limit [continuing tort] theory to actions in nuisance and trespass").

[24] *See, e.g.*, *Beard v. Edmonson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002) (continuous tort doctrine inappropriate "once the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it"); *Suarez v. City of Tampa*, 987 So. 2d 681, 684 (Fla. Ct. App. 2008) (same); *Doe v. United Methodist Church*, 673 N.E.2d 839, 845 (Ind. App. Ct. 1996) (same).

12

absent a contrary statement by the legislature.  *See* Mem. at 26-27.[25]

IPPs also lack standing to assert their <u>Rhode Island</u> antitrust claim.  Rhode Island enacted an *Illinois Brick* repealer law on July 15, 2013 but Defendants cited ample authority showing that courts have refused to apply similar *Illinois Brick* repealers retroactively unless the statute or the legislative record expressly instructs otherwise.  Mem. at 30.  The Rhode Island legislature gave no such instructions.  Mem. at 30-31.

IPPs cite two cases that *applied* the strong general presumption against retroactivity.  Opp. at 19 (citing *Winfree v. N. Pac. Ry.*, 227 U.S. 296, 301-02 (1913) (describing "almost universal rule that statutes are addressed to the future, not to the past," and concluding that new cause of action could not apply retroactively); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 278, 280-86 (1994) (expressing intent not "to displace the traditional presumption against applying statutes affecting substantive rights . . . to conduct arising before their enactment")).[26]  Both cases confirm that retroactivity is highly disfavored, and that courts will not apply statutes imposing liability for pre-enactment conduct absent a clear legislative statement.  Neither case supports the rare application of retroactivity here.  *See also Niaspan*, 2014 WL 4403848, at *17 (holding Rhode Island "repealer statute[] . . . appl[ies] only prospectively").

IPPs misunderstand Defendants' argument as to the <u>Utah</u> Antitrust Act by arguing that IPPs' claims arose after the Utah *Illinois Brick* repealer statute.  Opp. at 17-18.  But Defendants'

---

[25] In fact, *In re Static Random Access Memory (SRAM) Antitrust Litigation* expressly cited *Pressure Vessels* and still found "no authority that suggests that *Illinois Brick*'s interpretation of federal antitrust law would not be applied to Puerto Rico law."  2010 WL 5094289, at *4 (N.D. Cal. Dec. 8, 2010).  The court in *Nexium*, cited by IPPs elsewhere, agreed and, after considering *Rivera-Muñiz*, held that indirect purchasers lacked standing.  968 F. Supp. 2d at 409-10.

[26] IPPs also cite two decisions that do not address indirect purchaser standing under the antitrust act.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1145 (N.D. Cal. 2008) (addressing meaning of unfair or deceptive practices under Rhode Island consumer protection statute); *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, at *27 (E.D. Mich. June 6, 2013) (same).

NEWYORK 9313703

argument was that, while Utah repealed *Illinois Brick*, it did so only for indirect purchasers who are Utah citizens or residents, which these IPPs are not.  Mem. at 27-29; Utah Code Ann. § 76-10-3109(1)(a).  IPPs' reliance on unnamed hypothetical Utah class members, Opp. at 18 n.23, is insufficient.  *See supra* § II; *Niaspan*, 2014 WL 4403848, at *18 (dismissing Utah claim because no named plaintiff was a citizen or resident of Utah).

### B.   As Indirect Purchasers, IPPs Cannot Circumvent *Illinois Brick* by Relabeling Their Antitrust Claim as "Unjust Enrichment"

In 22 states, IPPs' "unjust enrichment" claims should be dismissed because they represent an attempted end-run around *Illinois Brick*.  *See* **Attachment 3**.  IPPs attempt to defend their end-run around state laws following *Illinois Brick* by citing *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618 (E.D. Mich. 2000), for the proposition that parties may plead alternative causes of action – such as IPPs' "unjust enrichment" claims.  Opp. at 18.  However, IPPs are not pleading alternative claims that could apply here.  Instead, IPPs use an "unjust enrichment" label to bring claims that otherwise would be barred.  Courts repeatedly have held that such an end-run is not permitted.  Mem. at 27-28.

While IPPs cite an opinion in *K-Dur* permitting unjust enrichment claims to proceed, 338 F. Supp. 2d at 544, the same court later concluded that alternative pleading principles provided no basis for plaintiffs to avoid *Illinois Brick*.  As Special Master Orlofsky reasoned in *K-Dur*, "after considering the various courts' reasoning on this issue . . . where the applicable state law bars antitrust actions for damages by indirect purchasers, or simply does not recognize a private cause of action for antitrust violations, a plaintiff cannot circumvent the statutory framework by recasting an antitrust claim as one for unjust enrichment."  *In re K-Dur Antitrust Litig.*, 2008 WL 2660780, at *5 (D.N.J. Feb. 28, 2008).

The court in *Niaspan* recently joined the "majority of courts" in holding that "allowing

14

. . . unjust enrichment claims in [] states that explicitly disallow indirect purchasers from pursuing antitrust and consumer-protection claims . . . would result in circumvention of the policies expressed by state legislatures through limitations inherent in those laws."  2014 WL 4403848, at *21.  This Court should dismiss IPPs' unjust-enrichment claims in *Illinois Brick* states.

## V.    IPPS Fail to Adequately Allege Consumer Protection Claims

IPPs should not be permitted to list a "large array of statutory claims" and then require "the Court and the defendants . . . to determine how and why the alleged conduct violated a particular statute."  *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *38 (S.D.N.Y. Aug. 29, 2014).   Such generalized allegations fail "to meet even the basic requirements of Rule 8."  *Id.*   All of IPPs' state claims, including their consumer protection claims, fail for this reason and for the additional reasons discussed below and in Defendants' opening memorandum. *See* **Attachment 2**.

### A.   IPPs Fail to Plead Deception or Reliance as Required by the Consumer Protection Laws of Several States

Defendants demonstrated that the consumer protection statutes of <u>thirteen states</u> each require IPPs to allege deception or consumer reliance, which IPPs have not done.  Mem. at 35-37.  IPPs offer nothing to rebut this showing, and their claims fail in each of the following states:

<u>**California**</u>:  IPPs claim, Opp. at 37, that the California Unfair Competition Law ("UCL") does not require reliance, relying on three federal court decisions.  Recent California state court decisions have made clear, however, that the 2004 Proposition 64 amendments to the UCL were intended to "narrow the category of persons who could sue" to include only persons who suffered injury "as a result of the unfair competition," interpreting the phrase "as a result of" to require *actual reliance*. *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 690-94 (Cal. Ct.

App. 2010) (further clarifying that "[a] consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes"); *see also* Mem. at 35 n.34.  The alleged misconduct here arises from settlement of patent litigation, and IPPs do not and cannot allege actual reliance on that conduct.

**Illinois**:  IPPs' argument that the Illinois Consumer Fraud and Deceptive Business Practices Act does not require deception is puzzling, as the very case they cite holds that an ICFA claim must allege "(1) a deceptive act or practice by defendant, (2) defendant's intent that plaintiff rely on the deceptive act, and (3) that the deception occurred during trade or commerce."  *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 95 (Ill. App. Ct. 2002); *see also Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 860 (Ill. 1998).  IPPs fail to allege any of these elements to support an Illinois claim.

**Iowa**:  Even if IPPs brought a claim under the Iowa Private Right of Action for Consumer Frauds Act ("Private Act") – and they did not[27] – they could not state a claim under that statute because its plain language requires conduct done "with *the intent that others rely* upon the" alleged misconduct.  Iowa Code § 714.16(2)(a) (emphasis added).  IPPs' cited case confirms that the statute prohibits only conduct likely to affect a consumer's decision to purchase a product.  *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 2631326, at *9 (C.D. Cal. June 12, 2013).  IPPs do not allege such conduct.

**Maine**:  The Maine Unfair Trade Practices Act requires consumer reliance on an unfair or deceptive practice and thus provides no remedy in cases alleging "overcharges" because

---

[27] IPPs admit, Opp. at 37 n.91, they allege only the Iowa Consumer Fraud Act, Iowa Code §§ 714.16 *et seq.*, which is limited to lawsuits brought by the state attorney general.  Mem. at 35 & n.36, 48.  In addition, *Brown v. Louisiana-Pacific Corp.*, No. 4:12-cv-00102 (S.D. Iowa Jan. 18, 2013), simply does not support IPPs' argument, Opp. 37 n.91, that reliance is not required.  The *Brown* court permitted the Private Act claim to proceed because the plaintiff "in fact relied" on defendant's representations.  4:12-cv-00102 at 14, 18.

*higher* prices do not induce a consumer to buy a product.  *Tungate v. MacLean-Stevens Studios*, 714 A.2d 792, 797 (Me. 1998).[28]   IPPs rely on *In re New Motor Vehicles Canadian Exp. Antitrust Litigation (NMV)*, 350 F. Supp. 2d 160 (D. Me. 2004), to support their MUTPA claim, but the majority of courts expressly decline to accept *NMV*'s interpretation of Maine law and consistently dismiss pricing claims under the MUPTA.[29]

**Michigan:**  Courts dismiss Michigan Consumer Protection Act claims where plaintiffs fail to allege that defendants "had the intent to deceive *consumers* rather than the PTO or generic manufacturers."  *Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkline, PLC*, 737 F. Supp. 2d 380, 413 (E.D. Pa. 2010) (emphasis added).[30]

**Nevada:**  The Nevada Deceptive Trade Practices Act prohibits deceptive trade practices aimed at consumers, including a violation of a "statute or regulation relating to the sale or lease of goods or services."  Nev. Rev. Stat. § 598.0923(3).  None of the alleged misconduct here involved deception, much less deception of consumers relating to the sale or lease of goods.[31]

**New York:**  IPPs concede that New York's Deceptive Acts & Practices Act requires deception.  Opp. at 40.  Courts have held that alleged antitrust conduct does not constitute a

---

[28] *See also In re Graphics Processing Units Antitrust Litig. ("GPU")*, 527 F. Supp. 2d 1011, 1031 (N.D. Cal. 2007); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1126-27 (N.D. Cal. 2008).

[29] *E.g.*, *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 787 (N.D. Ohio 2011); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1159 (N.D. Cal. 2009); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584-85 & n.59 (M.D. Pa. 2009).

[30] *See also* Mem. at 36 n.38 (citing cases); *In re K-Dur Antitrust Litig.*, 2008 WL 2660783, at *9 (D.N.J. Mar. 19, 2008).  *Gasperoni v. Metabolife, Int'l Inc.*, 2000 WL 33365948, at *7 (E.D. Mich. Sept. 27, 2000), cited by IPPs, holds only that class members need not individually prove reliance if they can establish a *reasonable person would have relied* on the representation, which IPPs do not show here.

[31] IPPs' reliance on *AWP* is misplaced.  The court there did not rule on whether the NDTPA requires reliance, but noted only that the parties "appear to agree" that some of the consumer protection laws did not require reliance.  *In re Pharm. Indus. Average Wholesale Price Litig. (AWP II)*, 252 F.R.D. 83, 98 (D. Mass. 2008).  IPPs also cite *FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 941 (N.D. Ill. 2008), but that case does not even address <u>Nevada</u> law.

17

deceptive practice under N.Y. Gen Bus. Law § 349.  Mem. at 36 n.40.[32]  IPPs cite *DDAVP* for the proposition that an allegation of conduct "imbued with a degree of subterfuge" satisfies the New York statute.  903 F. Supp. 2d at 228. (quoting *Leider v. Ralfe*, 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005)).  But *DDAVP* inappropriately expands the holding in *Leider*.  Indeed, *Leider* found that the conduct at issue (alleged monopolistic practices) was *not* "imbued with subterfuge" because it was "not secretive."  387 F. Supp. 2d at 296.  The court specifically contrasted alleged anticompetitive acts from true deceptive conduct, such as Microsoft's alleged use of secret computer code to crash competitors' browsers, thus deceiving customers into believing those browsers were deficient.  *Id.*  Here, the publicly disclosed Aggrenox Settlement cannot possibly qualify as deceptive conduct "imbued with a degree of subterfuge."

**Rhode Island:**  The Rhode Island Unfair Trade Practices and Consumer Protection Act enumerates 20 practices that constitute "unfair methods of competition and unfair or deceptive acts or practices" under the statute, none of which includes the conduct alleged here.  R.I. Gen. Laws §§ 6-13.1-1(6)(i)-(xx).[33]  Moreover, the Rhode Island Supreme Court has held that "[i]t is our well-settled law that a finding of unfair competition must be predicated upon conduct on the part of the respondent that reasonably tended to confuse and mislead the general public into purchasing his product."  *George v. George F. Berkander, Inc.*, 169 A.2D 370, 371 (R.I. 1961); *cf. ERI Max Entm't v. Streisand*, 690 A.2d 1351, 1353-54 (R.I. 1997).  Plaintiffs cannot plausibly

---

[32] IPPs' cases are inapposite.  *See New York v. Feldman*, 210 F. Supp. 2d 294, 302 (S.D.N.Y. 2002) (only specific bid rigging conduct constituted deception); *People v. Applied Card Sys. Inc.*, 805 N.Y.S.2d 175, 178 (N.Y. App. Div. 2005) (solicitations *to consumers* deceptive); *Macquarie Grp. v. Pac. Corp.*, 2009 WL 539928, at *6 (S.D. Cal. Mar. 2, 2009) (addressing distinguishable conduct involving rumors that defendant allegedly spread that excluded plaintiff competitor from market.).  And *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 536 n.8 (E.D. Pa. 2010), and *Abbott Labs. v. Teva Pharm. USA, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006), did not even analyze § 349.

[33] *See also Flash Memory*, 643 F. Supp. 2d at 1161-62 (antitrust violations based on agreements to restrict competition not covered by consumer protection act); *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009).

allege that Defendants' conduct misled them into purchasing Aggrenox, and their claim under this statute must be dismissed.

**Tennessee**:  Defendants cannot be held liable under the Tennessee Consumer Protection Act without deception, *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 468-69 (Tenn. Ct. App. 2003), which IPPs cannot allege.  *See NMV*, 350 F. Supp. 2d at 203 (publicly known agreement not deceptive).  IPPs allege neither deception nor reliance.

**Utah**:  IPPs fail to identify any of the enumerated categories of deceptive practices under the Utah Consumer Sales Practices Act, which relate to consumer transactions (*e.g.*, false representations about a product).  *See* Mem. at 36 n.43; *NMV*, 350 F. Supp. 2d at 204.[34]

**West Virginia**:  The West Virginia Supreme Court has held that no private cause of action exists for prescription drug purchases under the Consumer Credit & Protection Act.  *White v. Wyeth*, 705 S.E.2d 828, 837-38 (W. Va. 2010) (claims also require deception).[35]  IPPs cite non-West Virginia cases that pre-date *White* and therefore do not apply.[36]

## B. IPPs Fail to Allege Unconscionable Conduct Under the District of Columbia, Kansas, and New Mexico Consumer Protection Statutes

IPPs fail to allege unconscionability as required by the consumer protection statutes of 3 jurisdictions: the District of Columbia, Kansas, and New Mexico.  Mem. at 36-37.  IPPs' complaint alleges, without detail or fact, a "gross disparity between the price that End-Payor Plaintiffs and the End-Payor Class members paid for the brand product and the value received."  Compl. ¶ 202.  This vague allegation gives no explanation for how the price of Aggrenox was or

---

[34] *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 418 (D. Del. 2007), is inapposite because defendant there had deceived consumers about the quality of competitor products.  *Id.*

[35] *See also* Order at 1, *IBEW Local Union No. 132 Health and Welfare Fund v. Warner Chilcott PLC*, Civ. No. 12-3824, ECF No. 541 (E.D. Pa. Mar. 14, 2014).

[36] *FTC v. Mylan Labs.*, Inc., 99 F. Supp. 2d 1, 10 (D.D.C. 1998); *In re Pharm. Indus. Average Wholesale Price Litig. (AWP I)*, 233 F.R.D. 229, 231 (D. Mass. 2006).  *Mylan* is also inapplicable as it involved an action by the state of West Virginia.  99 F. Supp. 2d at 3.

could have been in excess of the health benefits of the medication – or otherwise would be considered "unconscionable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (rejecting "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements").

### C.  The Alleged Conduct Does Not Have a Consumer Nexus, Nor Is It Consumer Oriented, as Required by the Consumer Protection Laws of Twelve Jurisdictions

The consumer protection statutes of <u>12 states</u> – Arizona, District of Columbia, Idaho, Illinois, Iowa, Kansas, Michigan, Missouri, Nebraska, New Mexico, New York, and West Virginia – require that IPPs allege conduct connected with a consumer transaction or that is consumer-oriented.  Mem. at 37-40.  But rather than link Defendants' alleged conduct to a consumer sale (which they cannot do), IPPs argue that their reimbursements as third-party payors constitute consumer transactions.[37]  Opp. at 41.  However, such an attenuated relationship among IPPs' alleged injury, Defendants' conduct, and consumers is insufficient to satisfy the consumer nexus requirement.  Mem. 39-40.  Similar, IPPs' argument that defendants' actions "were consumer-oriented in that they were designed to prevent the consuming public's access to a less expensive form of [a drug] . . . is weak."  *Sheet Metal*, 737 F. Supp. 2d at 418.

**District of Columbia**:  The District of Columbia Consumer Protection Procedures Act requires that the challenged conduct occur within the "consumer sphere" during transactions "primarily for personal use."  *Antoine v. U.S. Bank Nat'l Ass'n*, 821 F. Supp. 2d 1, 7 (D.D.C. 2010); *see also* Mem. at 39 n.51.  IPPs do not allege any misconduct in the consumer sphere, instead focusing on alleged conduct in settling litigation.  IPPs also lack standing because they do no use the products they purchase for personal use – but instead reimburse purchases made by others.  *Shaw v. Marriott Int'l*, 605 F.3d 1039, 1043 (D.C. Cir. 2010) (DCCPPA "does not reach

---

[37] IPPs' citations to portions of the consumer protection statutes defining terms such as "person," "sale," and "consumer," are insufficient to show that Defendants' conduct took place during a consumer transaction or had a consumer nexus.

transactions intended primarily to promote business or professional interests").

**Idaho:**   The Idaho Consumer Protection Act prohibits unfair or deceptive conduct directed at consumers, which IPPs fail to allege.  Mem. at 39 n.52.  IPPs rely on *DDAVP*, which based its holding on a case indicating only that the ICPA should be construed liberally, Opp. at 42.  903 F. Supp. 2d at 225 (citing *W. Acceptance Corp. v. Jones*, 788 P.2d 214, 216 (Idaho 1990)).  But *DDAVP* ignored a more recent Idaho Supreme Court opinion, which specifically held that antitrust conduct that does not constitute "sales conduct that is directed at consumers" is not actionable under the ICPA.  *See State ex rel. Wasden v. Daicel Chem. Indus.*, 106 P.3d 428, 433-35 (Idaho 2005).  As *Daicel* explained, the ICPA is confined to the conduct enumerated in the statute, *id.*, which is not alleged here.

**Illinois:**   Courts "have uniformly held that claims under the [ICFA] must meet the consumer nexus test," *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996), which is not met by arguing that a "misrepresentation affected consumers because consumers ultimately used the product."  *Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 807 (N.D. Ill. 1996).  IPPs argue that the consumer nexus requirement applies only to business plaintiffs, not consumers.  Opp. at 42.  But IPPs here are businesses.  Compl. ¶¶ 17-30.  IPPs also do not purchase goods for personal or household use, as the ICFA requires.

**Kansas:**   The KCPA applies only to conduct connected to a consumer transaction, and protection under the act is limited to individuals and sole proprietors who directly contract with defendant for goods or services.[38]  IPPs fail both tests.

**Missouri:**   IPPs rely on a distinguishable case in which the defendant already had been found to violate the Missouri Merchandising Practices Act, so the issue was whether harmed

---

[38] *See* Kan. Stat. Ann. § 50-624; *Kastner v. Intrust Bank*, 569 F. App'x 593, 599 (10th Cir. 2014) (citing *CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 32 P.3d 1197, 1204 (Kan. Ct. App. 2001)).

21

consumers could seek restitution.  *State ex rel. Nixon v. Cont'l Ventures Inc.*, 84 S.W.3d 114 (Mo. Ct. App. 2002).  IPPs can rely on no similar finding of liability here.

**Nebraska**:  IPPs argue that the Nebraska Consumer Protection Act applies to antitrust conduct, Opp. at 43, but the state requires that the practices alleged affect the public interest, *see Nelson v. Lusterstone Surfacing Co*., 605 N.W.2d 136, 141-42 (Neb. 2000), and that damages not be remote from the claimed unfair practices, *see Kanne v. Visa U.S.A. Inc*., 723 N.W.2d 293, 302 (Neb. 2006).  IPPs make no attempt to satisfy those requirements.

**New Mexico**:  IPPs argue that the New Mexico Unfair Practices Act is "construed liberally," Opp. at 42 n.103, 43 n.104, but make no attempt to address the requirement that the alleged practice be connected to the sale of Aggrenox.  Mem. at 38.

**New York**:  A plaintiff must demonstrate that deceptive acts were directed at consumers, which IPPs cannot satisfy here by indirect allegations of consumer impact.[39]

**West Virginia**:  IPPs fail to satisfy a fundamental requirement under the WVCCPA: that the alleged misconduct not only take place in connection with a consumer transaction, but also that it induce a consumer to buy something he otherwise would not have purchased.  Mem. at 38.[40]  IPPs do not allege that here.

IPPs do not address Defendants' arguments regarding the Arizona, Iowa, or Michigan consumer protection law requirements of conduct connected to a consumer transaction, and those

---

[39] *See Sheet Metal*, 737 F. Supp. 2d at 417-18 (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 623 N.Y.S.2d 529, 532-33 (N.Y. 1995)); *cf. In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 553 (E.D. Pa. 2007) (agreement to sell products at artificially high prices is "clearly not consumer-oriented" and not actionable under § 349); Mem. at 39-40.  IPPs' reliance on *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598 (N.Y. 1999), is misplaced because the case involved misleading representations *to consumers* during the purchase of insurance.

[40] IPPs cite *Powell v. Bank of Am., N.A.*, 842 F. Supp. 2d 966, 982-83 (S.D. W. Va. 2012), which merely holds the WVCCPA should be interpreted broadly, Opp. at 43-44.  But IPPs fail to allege the basic elements of a claim under the statute no matter how broadly interpreted.

claims should be dismissed for reasons set forth in Defendants' opening memorandum.

**D. The Consumer Fraud Statutes of Several States Do Not Reach Antitrust Behavior**

IPPs' claims arising from <u>5 states</u> should be dismissed because the state laws specifically identify the categories of conduct prohibited by their consumer protection laws, and the statutes do not include the conduct IPPs allege here.  Mem. at 41-42 (District of Columbia, Idaho, Michigan, Rhode Island, and West Virginia).  Similarly, several courts have held that the consumer protection statutes of <u>5 additional states</u> – Illinois, Kansas, New Mexico, Tennessee, and Utah –  don't apply to antitrust-related claims like IPPs' here.  Mem. at 40-41.

IPPs nonetheless argue that FTC interpretations of the FTC Act should be imported wholesale into each state's consumer protection statute to support IPPs' claims.  Opp. at 44-45.  But a legislature's instruction "to courts to give weight to the FTC's interpretation of 'unfair or deceptive trade practice' obviously does not mean that anything the FTC decides is an unfair or deceptive practice automatically becomes [a state] violation."  *Gardner v. Montgomery Cnty. Teachers Fed. Credit Union*, 2012 WL 692882, at *3 (D. Md. Feb. 29, 2012).

**District of Columbia**:  The DCCPPA's list of prohibited conduct does not include antitrust conduct.  D.C. Code Ann. § 28-3904; *see also GPU*, 527 F. Supp. 2d at 1029-30.[41]

**Idaho**:  The Supreme Court of Idaho has held that the ICPA applies only to conduct enumerated in the statute.  *Daicel*, 106 P.3d at 433-34.  Antitrust conduct that is not "sales conduct" directed at consumers is not actionable under the act.  *Id.*; *see also* Mem. at 39 n.52; *Polyurethane Foam*, 799 F. Supp. 2d at 786.[42]  IPPs allege no such conduct here.

**Illinois**:  The Supreme Court of Illinois has held that the ICFA is not an "additional

---

[41] The DCCPPA prohibits conduct in violation of numerous *other* acts, but does not include antitrust conduct covered by the D.C. Antitrust Act.  D.C. Code Ann. § 28-3904(w)-(hh).

[42] IPPs cannot avoid this clear statement by Idaho's highest court by citing a non-Idaho case that predates *Daicel*.  *FTC v. Mylan Labs. Inc.*, 62 F. Supp. 2d 25, 46 (D.D.C. 1999).

antitrust enforcement mechanism." *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990); *cf. Gaebler v. N.M. Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. Ct. 1996) (allegations of anticompetitive conduct not actionable under ICFA).  IPPs cite no authority to the contrary.

**Kansas:**  Acts relating to alleged agreements, monopolies, trusts, conspiracies, or combinations in restraint of trade are not actionable under the KCPA.  *Schoenbaum v. E.I. DuPont De Nemours  & Co.*, 517 F. Supp. 2d 1125, 1153 (E.D. Mo. 2007) (citing *Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 307 (Kan. 1988)).[43]

**Michigan:**  The MCPA prohibits only the practices itemized in the statute, none of which is alleged here.  *See NMV*, 350 F. Supp. at 189.[44]  IPPs cite no authority to the contrary.

**New Mexico:**  IPPs apparently agree that they cannot bring a claim for unfair or deceptive conduct under the NMUPA, and instead argue they can bring a claim for unconscionable conduct under a separate part of the NMUPA.  But as discussed, IPPs fail to allege unconscionability.  *Supra* § V.B.

**Rhode Island:**  The RIUTPCPA does not cover the antitrust-type claims asserted here.[45]

**Tennessee:**  Claims based on anticompetitive conduct are not actionable under TCPA.[46]

---

[43] IPPs resort to arguing that in one case, antitrust and consumer protection claims were brought simultaneously; there, however, the conduct giving rise to the antitrust claim (price-fixing) was distinct from the conduct giving rise to the KCPA claim (consumer deception).  *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1153 (D. Kan. 2003).

[44] IPPs cite a separate section of the Michigan code, Opp. at 40 n.98, providing a cause of action for conduct declared by certain federal courts "to be an unfair or deceptive act or practice within the meaning of [the FTC Act], in a decision which affirms or directs the affirmance of a cease and desist order issued by the federal trade commission."  Mich. Comp. Laws § 445.911(3)(c).  Yet IPPs make no allegations sufficient to bring a claim under that subsection.

[45] *Flash Memory*, 643 F. Supp. 2d at 1161 ("[U]nfair methods of competition and unfair or deceptive acts or practices" under the statute do not include antitrust conduct that does not reasonably confuse or mislead the general public.); *see also* Mem. at 41 n.64.  *TFT-LCD*, 586 F. Supp. 2d at 1129, cited by IPPs, holds that the statute applies only to enumerated practices, which IPPs do not (and cannot) allege.

[46] *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 754-55 (Tenn. Ct. App. 2006); Mem. at 41 n.60.  The sole case IPPs rely on for the argument to the contrary, *Blake v. Abbott Labs., Inc.*, 1996 WL 134947 (Tenn.

24

**Utah:**  The UCSPA simply does not cover the conduct alleged here.  IPPs ignore the case cited by Defendants – in which the court acknowledged the potential relevance of the FTC Act, yet still held that the UCSPA *does not cover antitrust claims*, because the UCSPA omits the portion of the FTC Act prohibiting antitrust conduct.  Mem. at  41; *In re Dynamic Random Access Memory (DRAM)*, 516 F. Supp. 2d 1072, 1117 (N.D. Cal. 2007).  IPPs instead rely solely on *Intel*, 496 F. Supp. 2d at 418, which is distinguishable.  *See supra* note 34.

**West Virginia:**  IPPs again ignore Defendants' authority expressly holding that the WVCCPA's enumerated list of unlawful conduct does not encompass antitrust conduct.[47]

### E.  Only Consumers Have Standing to Bring Claims Under the Consumer Protection Statutes of Nine States

The consumer protection statutes of 9 states – Hawaii, Iowa, Kansas, Maine, Montana, North Carolina, Rhode Island, Utah, and Vermont – explicitly limit standing to *consumers*, Mem. at 42-44, and therefore IPPs' claims under these statutes must be dismissed.

**Hawaii:**  IPPs do not dispute that their claim under the "unfair or deceptive acts or practices" prong of the Hawaii Antitrust Act must be dismissed because they are not consumers. Mem. at 42; Opp. at 46 & n.113.[48]

**Iowa:**  IPPs argue about how "person" is defined in Iowa Code Ann. § 714, *see* Opp. at 46-47, but that is irrelevant because only the attorney general can bring an ICFA claim.  *See supra* note 27.  Nor could IPPs assert a claim under Iowa's Private Act, because the statute

---

Ct. App. Mar. 27, 1996), has been expressly interpreted as *not* supporting the proposition that the TCPA applies to anticompetitive conduct.  *Bennett*, 198 S.W.3d at 753.

[47] Mem. at 41 n.65; *Flash Memory*, 643 F. Supp. 2d at 1162 (alleged anticompetitive conduct does not fall within WVCCPA).  IPPs cite a decision related to certification of a subclass under various state statutes, including the WVCCPA, without any analysis of the statute.  *AWP I*, 233 F.R.D. at 231.

[48] The claim under the "unfair method of competition" prong must be dismissed because IPPs did not comply with pre-filing notification requirements.  Mem. at 42 n.66; *see infra* §  V.G.  Defendants did not "ignore" this prong as IPPs argue.  Opp. at 46 n.113.

permits suits only by consumers.  Iowa Code Ann. §§ 714H.2(3), 714H.5.

**Kansas:**  The KCPA precludes companies, such as IPPs here, from bringing claims.[49]

**Maine, Montana, and Utah:**  IPPs do not purchase Aggrenox "primarily for personal, family, or household purposes."  *See* Me. Rev. Stat. Ann. Tit. 5, § 213(1); Mont. Code Ann. § 30-14-102(1); Utah Code Ann. §§ 13-11-3(2)(a)[50]; *see also* Mem. at 43 & n.69-70, 73.  Whether or not IPPs are "persons" under these states' laws, as IPPs argue, IPPs are not persons who have purchased Aggrenox for personal, family, or household purposes.

**North Carolina:**  Under North Carolina's consumer protection statute, only consumers, competitors, or plaintiffs engaged in commercial dealings with the defendant may sue.  *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 519-20 (4th Cir. 1999).   IPPs and Defendants are not competitors, and IPPs do not have commercial dealings with Defendants.

**Rhode Island:**  IPPs admit (as they must) that they are not natural persons, Opp. at 46 n.112, and accordingly they lack standing to sue under the RIUTPCPA.  R.I. Gen. Laws § 6-13.1-1, *et seq.  See* Mem. at 43 & n.72 (citing case law).

**Vermont:**  IPPs reimburse for drugs used by their plan participants; they do not purchase drugs for internal use or as an input for their businesses.  Third-party payors, such as IPPs, thus are not "consumers" and cannot sue under the Vermont Consumer Fraud Act.  *See* Mem. at 43

---

[49] *See* Mem. at 42; *Kestrel Holdings I, LLC. v. Learjet Inc.*, 316 F. Supp. 2d 1071, 1076-77 (D. Kan. 2004) ("A corporation or similar entity . . . cannot assert a claim under the [KCPA]."); *K.R. Smith Trucking, LLC v. Paccar, Inc.*, 2009 WL 3488064, at *3 (D. Kan. Oct. 23, 2009) ("Washington Act includes corporations, whereas the Kansas Act does not."); *CIT Group/Sales Fin. v. E-Z Pay Used Cars*, 29 Kan. App. 2d 676, 685 (Kan. 2001) (KPCA limited to individuals and sole proprietors).  The dicta in *Geico Indem. Ins. Co. v. Kannaday*, 2007 WL 2990552 (D. Kan. Oct. 11, 2007), on which IPPs rely, Opp. at 47, is contrary to the statute's plain language; the court's mention of IPPs in that case is unexplained, non-binding, and inapposite in any event.

[50] IPPs rely on *Berneike, Inc.* and *Iadanza* in support of their claims under the UCSPA, but neither case addresses standing to bring such claims.  *Berneike v. CitiMortgage*, 708 F.3d 1141, 1149-50 (10th Cir. 2013) (whether USCPA applies to mortgage loan transactions; affirming dismissal); *Iadanza v. Mather*, 820 F. Supp. 1371, 1376 (D. Utah 1993) (whether UCSPA applies to real estate transactions).

NEWYORK 9313703

(quoting Vt. Stat. Ann. tit. 9 § 2461(b)).

**F.  Class Action Bars Preclude Claims Under Six Consumer Protection Statutes**

IPPs cannot bring claims under the consumer protection statutes of 6 states – Illinois, Iowa, Kansas, Montana, Tennessee, and Utah – because these statutes bar class actions.  IPPs rely primarily on Justice Scalia's opinion in *Shady Grove Orthopedic Associates v. Allstate Ins. Co.*, 559 U.S. 393 (2010), to conclude that Rule 23 preempts state class action bars.  Opp. at 52-54.  However, virtually all courts that have considered this subject have held that Justice Stevens's concurring opinion is controlling because it sets out the narrowest grounds for the Court's decision.  Mem. at 47 n.85.  Under Justice Stevens's rule, class action bars still apply if they are part of a state statute's substantive scope.  *See Shady Grove*, 559 U.S. at 419.  Accordingly, courts routinely hold that class action bars that appear in the very statutes that define substantive rights – as in the statutes cited by IPPs – apply post-*Shady Grove*.[51]

IPPs cite no authority for the unsubstantiated statement that the Iowa class action bar is procedural rather than substantive, Opp. at 56; IPPs are not eligible for the exception to the Kansas class action bar because they fail to allege deceptive or unconscionable conduct; and IPPs offer no argument whatsoever concerning the class action bars in Tennessee and Utah.  In Illinois, multiple courts since *Shady Grove* have held that the explicit class action bar found in the state's antitrust statute prohibits IPPs from bringing class action suits in federal court.  *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677-78 (E.D. Pa. 2010); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415-16 (S.D.N.Y. 2011); *In re Flonase Antitrust Litig.*, 692

---

[51]  *E.g.*, *Bearden v. Honeywell Int'l*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) (Tennessee class action bar); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2010 WL 2756947, at *2 (N.D. Ohio July 12, 2010), *aff'd*, 678 F.3d 409 (6th Cir. 2010), *vacated on other grounds* 133 S. Ct. 1722 (2013), *remanded to and aff'd* 722 F.3d 838 *6th Cir. 2013) (Ohio class action bar); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *9 (N.D. Cal. Mar. 11, 2014) (dismissing Tennessee class action claims); *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *8 (C.D. Cal. May 12, 2011) (same).

F. Supp. 2d 524, 539 (E.D. Pa. 2010); *In re Auto. Parts Antitrust Litig.*, 2014 WL 2993742, at *18-19 (E.D. Mich. July 3, 2014).  Moreover, because the Illinois legislature clearly intended to prohibit indirect purchaser classes from having standing to assert antitrust claims, courts have held that indirect purchasers are precluded from bringing these same antitrust claims as class actions under the ICFA.  Mem. at 47 n.86; *see also Gaebler v. N.M. Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. Ct. 1996).  Finally, <u>Montana</u>'s class action bar also continues to apply post-*Shady Grove*, because it involves the same statutory framework – limiting the substantive scope of the cause of action – as other class action bars that have applied in federal court.[52]

### G.  IPPs Fail to Meet the Pre-Filing Notice Requirements of Five States

IPPs failed to comply with the pre-filing requirements of the consumer protection statutes in <u>5 states</u> – California, Hawaii,[53] Maine, Massachusetts, and West Virginia.  Because these requirements are part of the individual consumer protection statutes – rather than a generally applicable procedural rule as in *Shady Grove*, cited by IPPs, Opp. at 48 n.117 – and are meant to shape rights and remedies in the statutes, the notice requirements apply in federal court.  *E.g.*, *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 217-18 (1st Cir. 2012) (statutory notice requirement "not merely a procedural nicety," but rather "a prerequisite to suit" that "must be alleged in the plaintiff's complaint").  Therefore, under Justice Stevens's controlling opinion in *Shady Grove*, pre-filing notice requirements require dismissal of IPPs' claims.

### H.  IPPs Have No Private Cause of Action under the Iowa Consumer Fraud Act

IPPs concede that their ICFA claim, Iowa Code § 714.16, cannot proceed as pled, and now seek leave to cure this deficiency.  *See* Opp. at 57; Compl. ¶ 204(f).  But even if this Court

---

[52] Contrary to IPPs' assertion, Opp. at 57, *In re Packaged Ice Antitrust Litigation* did address *Shady Grove*.  779 F. Supp. 2d 642, 661 n.4 (E.D. Mich. 2011).

[53] IPPs concede that they have failed to meet the notice requirement for the "unfair methods of competition" prong of the Hawaii Antitrust Act.  Opp. at 48-49.

28

grants IPPs leave to add "Iowa Code § 714H.5" (Private Act) to their Complaint, that claim would still fail: IPPs do not allege approval by the Iowa attorney general, as required by Iowa Code § 714H.7.  *See* Mem. at 47.[54]  Further, the statute applies only to causes of action accruing after July 1, 2009 – well after IPPs' cause of action accrued, Mem. at 48-49, and otherwise cannot be asserted for the reasons discussed in Section V.A.-B, D of the Opening Memorandum.

### I.   IPPs Have No Right of Action under the Nevada Deceptive Trade Practices Act

Although § 41.600(1) of the Revised Nevada Statutes provides "[a]n action may be brought by any person who is a victim of consumer fraud," *see* Opp. at 58, IPPs do not allege consumer deception, nor do they bring a claim under that section.  Compl. ¶ 204(p).  Courts have expressly held that the NDTPA grants a cause of action only to elderly or disabled persons.  Mem. at 49.[55]  This Court should dismiss IPPs' NDTPA claims.

### J.   IPPs' Florida Unfair and Deceptive Trade Practices Act Claims Are Preempted

IPPs ignore that the alleged conduct at issue here (*e.g.*, settlement) is "specifically permitted" under federal law, *see* DPP Mem. at 34-36, 52-53.  As such, § 501.212 exempts the alleged conduct from the FDUPTA.  *See Brett v. Toyota Motor Sales, U.S.A., Inc.*, 2008 WL 4329876, at *7 (M.D. Fla. Sept. 15, 2008) (dismissing FDUPTA claims under safe harbor).

### VI.   IPPs Fail to Allege a Sufficient Nexus to Intrastate Commerce

The plain language of 11 statutes at issue here – from the District of Columbia, Massachusetts, Mississippi, New York, Tennessee, and Wisconsin antitrust statutes, and the Florida, Massachusetts, New Hampshire, New York, and North Carolina consumer protection statutes – prohibits conduct that predominantly occurred in or affects *intra*state commerce.

---

[54] To the extent that IPPs are asking this Court to permit them to amend their pleadings, IPPs must file a proper motion to amend their complaint.  But as discussed above, any amendment would be futile.

[55] *Nev. Power Co. v. Eighth Judicial Dist. Ct. of Nev.*, 102 P.3d 578 (Nev. 2004), is irrelevant here.  Opp. 58.  That case addresses jurisdictional questions for claims against a public utility.

Mem. at 31-33, 45-46.   IPPs claim a "nationwide antitrust violation," and their claims are quintessentially national in scope.  Opp. at 33.

## VII.    IPPS Fail to Adequately Allege Unjust Enrichment Claims

Defendants incorporate by reference the reasons for dismissal of IPPs' unjust enrichment claims identified in the Humana Memorandum § VI and Humana Reply § VII.   *See also* **Attachment 3**.[56]  IPPs' Connecticut unjust enrichment claim fails for the additional reason that Connecticut requires – and IPPs have not pled – that the defendant received a benefit directly from the plaintiff.  *See* Mem. at 50-52.[57]

## CONCLUSION

For the foregoing reasons, this Court should dismiss IPPs' claims with prejudice.

Dated: September 26, 2014          Respectfully Submitted,

*/s/ J. Mark Gidley*
J. Mark Gidley (ct 22743)
Peter J. Carney (ct 24721)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

Robert A. Milne (pro hac vice)

---

[56] *See also Niaspan*, 2014 WL 4403848, at *21(dismissing Connecticut unjust enrichment claim because IPPs could not seek recovery under either the state antitrust or consumer protection statutes).

[57] *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 531-32 (S.D.N.Y. 2007) ("[B]enefit must be 'specific' and 'direct' . . . to support an unjust enrichment claim" in Connecticut) (citations omitted); *Layton v. Lester II*, 2011 WL 522887, at *2 (Conn. Super. Ct. Jan. 21, 2011) ("[T]he benefit to the defendant must be conferred by the plaintiff directly."); *Granito v. Int'l Bus. Machs.*, 2003 WL 1963161, at *2 (Conn. Super. Ct. Apr. 16, 2003) (plaintiff must have "conferred a benefit directly upon the defendant rather than merely through the chain of commerce").  *Vertex, Inc. v. City of Waterbury*, 898 A.2d 178 (Conn. 2006), does not establish otherwise.  Opp. at 66.  *Vertex* addressed a question not at issue in this case:  whether a jury instruction was improper because it described elements of an implied contract claim rather than an unjust enrichment claim.  898 A.2d  at 190.  Accordingly, *Vertex* presents no obstacle and, in fact, supports dismissal of IPPs' unjust enrichment claim in Connecticut.  *See id.* at 189; *Bayou Hedge Fund*, 472 F. Supp. 2d at 531 (citing *Vertex* in support of direct-benefit requirement).

30

Jack E. Pace III (pro hac vice)
Alison Hanstead (pro hac vice)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Richard P. Colbert (ct 08721)
DAY PITNEY LLP
One Canterbury Green
201 Broad Street
Stamford, CT 06901
Telephone: (203) 977-7300
Facsimile: (203) 977-7301

*Counsel for Boehringer Ingelheim Pharm., Inc.,*
*Boehringer Ingelheim Int'l GmbH, &*
*Boehringer Ingelheim Pharma GmbH & Co. KG*

Christopher T. Holding (ct 29474)
Robert D. Carroll
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

James T. Shearin (ct 01326)
PULLMAN & COMLEY, LLC
850 Main St., Po Box 7006
Bridgeport, CT 06601-7006
Telephone: (203) 330-2000

*Counsel for Defendants Teva Pharm. USA, Inc., Teva*
*Pharm. Indus. Ltd., Barr Pharm. Inc. (n/k/a Barr Pharm.,*
*LLC), Barr Laboratories Inc., & Duramed Pharm. Inc.*
*(n/k/a Teva Women's Health Inc.)*

31

**ATTACHMENT 1: BASES TO DISMISS IPPS' STATE ANTITRUST LAW COUNTS II, III, AND IV (UPDATED)**

| State, D.C., or Puerto Rico | I. C. Statute of Limitations (Years) | II. Failure to Allege Antitrust Injury | II. Failure to Allege Large Unjustified Reverse Payment | II. Failure to Allege Monopoly by Reliance on Aggrenox-Only Product Market | III. A. Lacks Article III Standing – No Purchases | III. B & D Lacks Standing in *Illinois Brick* States or Rhode Island Antitrust Act Is Not Retroactive | IV. A. Intrastate Conduct Required | IV. B. Concerted Action Required for Agreement | IV. C. No Compliance with Pre-Filing Notice Requirement |
|---|---|---|---|---|---|---|---|---|---|
| Arizona | 4 | X | X | X | X | | | | |
| California | 4 | X | X | X | X | | | | |
| D.C. | 4 | X | X | X | | | X | | |
| ~~Florida~~ | 4 | X | X | X | | No Standing | | | |
| Hawaii | 4 | X | X | X | X | | | | X |
| Illinois | 4 | X | X | X | | | | | |
| Iowa | 4 | X | X | X | X | | | | |
| ~~Kansas~~ | 3 | X | X | X | X | | | X | |
| Maine | | X | X | X | X | | | | |
| ~~Massachusetts~~ | 4 | X | X | X | | No Standing | X | | |
| Michigan | 4 | X | X | X | X | | | | |
| Minnesota | 4 | X | X | X | | | | | |
| Mississippi | 3 | X | X | X | X | | X | | |
| Nebraska | 4 | X | X | X | X | | | | |
| Nevada | 4 | X | X | X | | | | | |
| New Hampshire | 4 | X | X | X | X | | | | |
| New Mexico | 4 | X | X | X | X | | | | |
| ~~New York~~ | 4 | X | X | X | | | X | X | |
| North Carolina | 4 | X | X | X | X | | | | |
| North Dakota | 4 | X | X | X | | | | | |
| Oregon | 4 | X | X | X | | | | | |
| Puerto Rico | 4 | X | X | X | X | No Standing | | | |
| Rhode Island | 4 | X | X | X | X | R.I. Not Retroactive | | | |
| South Dakota | 4 | X | X | X | X | | | | |
| ~~Tennessee~~ | 3 | X | X | X | X | | X | X | |
| Utah | 4 | X | X | X | X | No Standing | | | |
| Vermont | | X | X | X | X | | | | |
| West Virginia | 4 | X | X | X | | | | | |
| Wisconsin | | X | X | X | | | X | | |
| **Total:** | **26** | **29** | **29** | **29** | **18** | **5** | **6** | **3** | **1** |

——: IPPs have dropped all claims under the Florida and Massachusetts antitrust statutes. IPP Opp. at 16 n.21, 68.

– – –: IPPs have dropped their monopolization claims under the Kansas, New York, and Tennessee antitrust statutes. IPP Opp. at 34, 68.

**ATTACHMENT 2:  BASES TO DISMISS IPPS' CONSUMER PROTECTION LAW COUNT V (UPDATED)**

| State or D.C. | I.C. Statute of Limitations (Years) | III. A. Lacks Article III Standing – No Purchases | III. C. No End Run around *Illinois Brick* | V. A. Consumer Deception and/or Consumer Reliance Required | V. B. Consumer Transaction that is Consumer Oriented or Has Consumer Nexus Required | V. C. Inapplicable to Antitrust Conduct or Does Not Include Antitrust Conduct as Prohibited | V.D. Allows Suits Only in a Consumer Capacity | VI. Additional Reasons to Dismiss |
|---|---|---|---|---|---|---|---|---|
| Arizona | 1 | X | | | X | | | |
| California | 4 | X | | X | | | | Pre-Filing Notice Required |
| D.C. | 3 | | | X | X | X | | |
| Florida | 4 | | | | | | | Intrastate Conduct Required; Preempted |
| Hawaii | 4 | X | | | | | X | Pre-Filing Notice Required |
| Idaho | 2 | X | | | X | X | | |
| Illinois | 3 | | | X | X | X | | No Class Actions |
| Iowa | 2 | X | | X | X | | X | No Class Actions; No Private Right of Action |
| Kansas | 3 | X | | X | X | X | X | No Class Actions |
| Maine | | X | | X | | | X | Pre-Filing Notice Required |
| Massachusetts | 4 | | | | | | | Pre-Filing Notice Required; Intrastate Conduct Required |
| Michigan | | X | | X | X | X | | |
| Missouri | 5 | | | | X | | | |
| Montana | 2 | X | | | | | X | No Class Actions |
| Nebraska | 4 | X | | | X | | | |
| Nevada | 4 | | | X | | | | Elderly/Disabled Only |
| New Hampshire | 3 | X | | | | | | Intrastate Conduct Required |
| New Mexico | 4 | X | | X | X | X | | |
| New York | 3 | | | X | X | | | Intrastate Conduct Required |
| North Carolina | 4 | X | | | | | X | Intrastate Conduct Required |
| Rhode Island | 4 | X | X | X | | X | X | |
| Tennessee | 1 | X | | X | | X | | No Class Actions |
| Utah | 2 | X | X | X | | X | X | No Class Actions |
| Vermont | | X | | | | | X | |
| West Virginia | 4 | | | X | X | X | | Pre-Filing Notice |
| **Total:** | **22** | **17** | **2** | **14** | **12** | **10** | **9** | **16** |

A-2

**ATTACHMENT 3:  BASES TO DISMISS IPPS' UNJUST ENRICHMENT LAW COUNTS VI AND VII (UPDATED)**

| State, D.C., or Puerto Rico | I. C. Statute of Limitations (Years) | III. A. Lacks Article III Standing – No Purchases | VII. No Effort To Plead Elements of Claim | VII. Quasi-contract Theory With No Application to Antitrust Claims | VII. Adequate Remedy At Law Available | VII. End Run around *Illinois Brick* | VII. No Unjust Enrichment in States with No Other Claims | VII. Lacks Privity with Defendant | VII. Direct Benefit Required | VII. No Independent Cause of Action |
|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | | | X | X | X | X | X | | X | |
| Alaska | 3 | X | X | X | X | X | X | | | |
| Arizona | 3 | X | X | X | X | | | | X | |
| Arkansas | 3 | X | X | X | X | | X | | | |
| California | 3 | X | X | X | X | | | | | X |
| Colorado | 3 | X | X | X | X | X | X | | | |
| Connecticut | | X | X | X | X | X | X | | | |
| Delaware | 3 | X | X | X | X | X | X | | | |
| D.C. | 3 | | X | X | X | | | | X | |
| Florida | 4 | | X | X | X | | | | X | |
| Georgia | 4 | | X | X | X | X | X | | X | X |
| Hawaii | Laches | X | X | X | X | | | | | |
| Idaho | 4 | X | X | X | X | X | | X | X | |
| Illinois | 5 | | X | X | X | | | X | | X |
| Iowa | 5 | X | X | X | X | | | | | |
| Kansas | 3 | X | X | X | X | | | X | X | |
| Kentucky | 5 | | X | X | X | X | X | | | |
| Louisiana | | X | X | X | X | X | X | | | |
| Maine | | X | X | X | X | | | | X | |
| Maryland | 3 | | X | X | X | X | X | | X | |
| Massachusetts | | | X | X | X | X | | | X | |
| Michigan | | X | X | X | X | | | | X | |
| Minnesota | | | X | X | X | | | | | |
| Mississippi | 3 | X | X | X | X | | | | | X |
| Missouri | 5 | | X | X | X | X | | | | |
| Montana | 3 | X | X | X | X | X | | | | |
| Nebraska | 4 | X | X | X | X | | | | | |
| Nevada | 4 | | X | X | X | | | | | |
| New Hampshire | 3 | X | X | X | X | | | | | |
| New Jersey | Laches | | X | X | X | X | X | | X | |
| New Mexico | 4 | X | X | X | X | | | | | |
| New York | | | X | X | X | | | X | X | |
| North Carolina | 3 | X | X | X | X | | | | X | |
| North Dakota | 4 | | X | X | X | | | | X | |
| Oklahoma | 2 | X | X | X | X | X | X | | | |

| State, D.C., or Puerto Rico | I. C. Statute of Limitations (Years) | III. A. Lacks Article III Standing – No Purchases | VII. No Effort To Plead Elements of Claim | VII. Quasi-contract Theory With No Application to Antitrust Claims | VII. Adequate Remedy At Law Available | VII. End Run around *Illinois Brick* | VII. No Unjust Enrichment in States with No Other Claims | VII. Lacks Privity with Defendant | VII. Direct Benefit Required | VII. No Independent Cause of Action |
|---|---|---|---|---|---|---|---|---|---|---|
| Oregon | Laches | | X | X | X | | | | | |
| ~~Pennsylvania~~ | ~~4~~ | | ~~X~~ | ~~X~~ | ~~X~~ | ~~X~~ | ~~X~~ | | ~~X~~ | |
| Puerto Rico | | X | X | X | X | X | | | | |
| Rhode Island | | X | X | X | X | X | | | X | |
| South Carolina | 3 | X | X | X | X | X | X | X | X | |
| South Dakota | | X | X | X | X | | | | | |
| Tennessee | 3 | X | X | X | X | | | | | |
| Texas | 2 | | X | X | X | X | X | | X | |
| Utah | 4 | X | X | X | X | X | | | X | |
| Vermont | | X | X | X | X | | | | | |
| Virginia | 3 | | X | X | X | X | X | | | |
| Washington | 3 | | X | X | X | X | X | | X | |
| West Virginia | Laches | | X | X | X | | | | X | |
| Wisconsin | | | X | X | X | | | | X | |
| Wyoming | 4 | X | X | X | X | | X | | X | |
| **Total:** | **33** | **29** | **50** | **50** | **50** | **23** | **18** | **5** | **24** | **4** |

——: IPPs have dropped all unjust enrichment claims under Pennsylvania law.  IPP Opp. at 68.

**Attachment 4**: Guide to Arguments in BI's Opening Memoranda for IPP and
Humana Complaints, IPPs' and Humana's Oppositions, and BI's Replies to IPP and Humana

| Argument | BI Opening (Class) | BI Opening (Humana) | IPP Class Opp. | Humana Opp. | BI Reply (Class) | BI Reply (Humana)[1] |
|---|---|---|---|---|---|---|
| **Statute of Limitations Arguments** | | | | | | |
| **Indirect Purchasers Claims are Barred by SoL** | Section I | Section I | Section IV | Section I | Section III | Section I |
| Federal and State claims | p. 7-19 | p. 5-15 | p. 19-32 | p. 4-10 | p. 7-12 | p. 2-5 |
| **General Arguments** | | | | | | |
| **Indirect Purchaser Claims Fail for Reasons Direct Purchaser Claims Fail** | Section II | Section II | Section I-II | Section II | Section I | Section II |
| All claims | p. 21-26 | P. 15-16 | p. 2-7 | p. 10-19 | p. 2-3 | p. 5 |
| **Indirect Purchasers Lack Article III Standing in States Where No Injury** | Section III.A | N/A | Section III | N/A | Section II | N/A |
| 29 Jurisdictions | p. 21-26 | N/A | p. 7-15 | N/A | p. 3-7 | N/A |
| **State Antitrust Statutes** | | | | | | |
| **Indirect Purchasers Lack Standing in *Illinois Brick* States** | Section III.B | Section IV.A | Section III.D.1 | Section IV.A | Section IV.A | Section V.A |
| Florida | p. 27 | p. 20 | Withdrawn | | p. 12 | p. 16 |
| Massachusetts | p. 27 | -- | Withdrawn | -- | p. 12 | p. 16 |
| Ohio | --[2] | p. 20 | -- | -- | -- | -- |
| Puerto Rico | p. 26-27 | p. 20 | p. 16-17 | p. 21 | p. 12-13 | p. 8 n. 11 |
| Texas | -- | p. 20 | -- | -- | -- | -- |
| Utah | p. 27 | p. 20 | p. 17-18 | p. 21 | p. 14 | p. 8 |
| **Cannot Circumvent *Illinois Brick* Using CP or UE** | Section III.C | Section IV.A | Section III.D.2 | Section V.A, Section VI.D | Section IV.B | Section V.B |
| Alaska (CP) | -- | p. 21 | -- | p. 24 | -- | p. 8-9 |
| Colorado (CP) | -- | p. 21 | -- | p. 24 | -- | p. 9 |
| Louisiana (CP) | -- | p. 21 | -- | p. 24 | -- | p. 9-10 |
| Massachusetts (CP) | -- | p. 21 | -- | p. 25 | -- | p. 8 |
| Rhode Island (CP) | p. 29 | -- | No Response | -- | -- | N/A |
| South Carolina | -- | p. 21 | -- | p. 25 | -- | p. 10 |
| Utah (CP) | p. 29 | p. 21 | p. 17-18 | p. 24 | p. 14 | p. 10 n. 13 |
| Unjust Enrichment (24 states) | p. 27-29 | p. 21 | p. 18-19 | p. 44 | p. 14-15 | p. 25-26 |

[1] Certain arguments are addressed only in BI's opening memorandum and not its reply.

[2] "--" means the argument does not apply because the statute is not at issue.

**Attachment 4**: Guide to Arguments in BI's Opening Memoranda for IPP and Humana Complaints,
IPPs' and Humana's Oppositions, and BI's Replies to IPP and Humana

| Argument | BI Opening (Class) | BI Opening (Humana) | IPP Class Opp. | Humana Opp. | BI Reply (Class) | BI Reply (Humana)[1] |
|---|---|---|---|---|---|---|
| **Rhode Island *Illinois Brick* Repealer Not Retroactive** | **Section III.D** | **Section IV.A** | **Section III.D.3** | **Section IV.A** | **Section IV.A** | **Section V.A** |
| Rhode Island | p. 30-31 | p. 20 | p. 19 | p. 21-22 | p. 13 | p. 7-8 |
| **Certain Statutes Require Primarily Intrastate Conduct** | **Section IV.A** | **Section IV.B** | **Section V.A** | **Section IV.B** | **Section VI** | **Section VI.F** |
| District of Columbia | p. 31 | p. 22 | p. 32-33 | p. 22-24 | p. 29-30 | p. 23 |
| Massachusetts | p. 32 | p. 22 | p. 32-33 | p. 22 | p. 29-30 | p. 23 |
| Mississippi | p. 32 | p. 22 | p. 32-33 | p. 22-24 | p. 29-30 | p. 23 |
| New York | p. 32 | p. 22 | p. 32-33 | p. 22-24 | p. 29-30 | p. 23 |
| Tennessee | p. 32 | p. 22 | p. 32-33 | p. 22-24 | p. 29-30 | p. 23 |
| Wisconsin | p. 32-33 | p. 22 | p. 32-33 | p. 22-24 | p. 29-30 | p. 23 |
| **Certain Statutes Do Not Apply to Unilateral Conduct** | **Section IV.B** | **N/A** | **Section V.B** | **N/A** | **Intro** | **N/A** |
| Kansas | p. 33 | -- | p. 34-35 (Withdrawn) | -- | p. 1 | -- |
| New York | p. 33 | -- | p. 34-35 (Withdrawn) | -- | p. 1 | -- |
| Tennessee | p. 34 | -- | p. 34-35 (Withdrawn) | -- | p. 1 | -- |
| **Pre-Filing Notice Required** | **Section IV.C** | **N/A** | **Section VI.F** | **N/A** | **Section V.G** | **N/A** |
| Hawaii | p. 34 | -- | p. 48-49 | -- | p. 28 & n.53 | -- |
| **State Consumer Protection Statutes** | | | | | | |
| **Consumer Deception or Consumer Reliance Required** | **Section V.A** | **Section V.A** | **Section VI.A-B** | **Section V.C.ii** | **Section V.A-B** | **Section VI.A** |
| Arkansas | -- | p. 23 | -- | p. 32 | -- | p. 11 |
| California | p. 35 | p. 22 | p. 35-37 | p. 30 | p. 15-16 | p. 10 n. 13 |
| Colorado | -- | p. 24 | -- | p. 30 | -- | p. 11 |
| District of Columbia | p. 36 | p. 23 | p.39 | p. 33 | p. 19-20 | p. 10 n. 13 |
| Illinois | p. 35 | p. 22 | p. 35-37 | p. 30 | p. 16 | p. 10 n. 13, p. 11-12 |
| Iowa | p. 35 | -- | p. 35-37 | -- | p. 16 | -- |
| Kansas | p. 36 | p. 23 | p.39 | Withdrawn | p. 19-20 | p. 1 |
| Maine | p. 35-36 | p. 22 | p. 35-38 | p. 30 | p. 16-17 | p. 10 n. 13 |
| Michigan | p. 36 | p. 22 | p. 35-38 | p. 30 | p. 17 | p. 10 n. 13 |
| Nevada | p. 36 | p. 22 | p. 35-38 | p. 30 | p. 17 | p. 10 n. 13 |
| New Mexico | p. 36 | p. 23 | p.39 | p. 33 | p. 19-20 | p. 10 n. 13 |
| New York | p. 36 | p. 22 | p. 40-41 | p. 30 | p. 17-18 | p. 12, p. 10 n. 13 |
| North Dakota | -- | p. 23 | -- | p. 31 | -- | p. 12 |
| Pennsylvania | -- | p. 23 | -- | p. 32 | -- | p. 12 |
| Rhode Island | p. 36 | -- | p. 34-38 | -- | p. 18-19 | -- |

**Attachment 4**: Guide to Arguments in BI's Opening Memoranda for IPP and Humana Complaints, IPPs' and Humana's Oppositions, and BI's Replies to IPP and Humana

| Argument | BI Opening (Class) | BI Opening (Humana) | IPP Class Opp. | Humana Opp. | BI Reply (Class) | BI Reply (Humana)[1] |
|---|---|---|---|---|---|---|
| South Dakota | -- | p.24 | -- | p. 32 | -- | p. 13 |
| Tennessee | p. 36 | -- | p. 35-38 | -- | p. 19 | -- |
| Utah | p. 36 | p. 22 | p. 35-38 | p. 31 | p. 19 | p. 10 n. 13 |
| Vermont | -- | p. 22 | -- | p. 31 | -- | p. 13, p. 10 n. 13 |
| Virginia | -- | p. 24 | -- | p. 32 | -- | p. 13-14 |
| West Virginia | p. 36 | p. 22 | p. 35-38 | p. 31 | p. 19 | p. 14, p. 10 n. 13 |
| Wisconsin | -- | p. 24 | -- | p. 32 | -- | p. 14-15 |
| **Consumer-Oriented Conduct, Consumer Nexus, or Consumer Transaction Required** | **Section V.B** | **Section V.B** | **Section VI.C** | **Section V.C.iii** | **Section V.C** | **Section VI.B** |
| Arizona | p. 37 | p. 25 | p. 41-42 | p. 34 | p. 22-23 | p. 15 n. 16 |
| District of Columbia | p. 38 | p. 26 | p. 41-42 | p. 35 | p. 20-21 | p. 15 n. 16, p. 15 |
| Idaho | p. 39 | p. 26 | p. 41-42 | p. 35 | p. 21 | p. 15 n. 16 |
| Illinois | p. 39 | p. 26 | p. 41-42 | p. 35 | p. 21 | p. 15 n. 16 |
| Iowa | p. 38 | -- | No Response | -- | p. 22-23 | -- |
| Kansas | p. 38 | p. 25 | p. 41-43 | Withdrawn | p. 21 | p. 1 |
| Michigan | p. 39 | p. 26 | No Response | p. 35 | p. 22-23 | p. 15 n. 16, p. 15-16 |
| Missouri | p. 38 | p. 25 | p. 41-42 | p. 34 | p. 21-22 | p. 15 n. 16, p. 16 |
| Nebraska | p. 39 | p. 26 | p. 41-43 | p. 35-36 | p. 22 | p. 15 n. 16, p. 16 |
| New Mexico | p. 38 | p. 25 | p. 41-43 | p. 34 | p. 22 | p. 15 n. 16, p. 16 |
| New York | p. 39 | p. 26 | p. 41-43 | p. 36 | p. 22 | p. 15 n. 16 |
| Virginia | -- | p. 25 | -- | p. 34 | -- | p. 15 n. 16, p. 16-17 |
| West Virginia | p. 38 | p. 25 | p. 41-43 | p. 34-35 | p. 22 | p. 15 n. 16 |
| Wisconsin | -- | p. 26 | -- | p. 36 | -- | p. 14 |
| Wyoming | -- | p. 25 | -- | p. 35 | -- | p. 15 n. 16, p. 17 |
| **Statutes Inapplicable to Antitrust Conduct** | **Section V.C** | **Section V.C** | **Section VI.D** | **Section V.C.iv** | **Section V.D** | **Section VI.C** |
| Arkansas | -- | p. 27 | -- | p. 37 | -- | p. 18 |
| Colorado | -- | p. 27 | -- | p. 36 | -- | p. 18 |
| District of Columbia | p. 41 | p. 26 | p. 44 | p. 37 | p. 23 | p. 17 |
| Idaho | p. 41 | p. 26 | p. 44-45 | p. 37 | p. 23 | p. 17 |
| Illinois | p. 40 | p. 26 | p. 45 | p. 37 | p. 23-24 | p. 17 |
| Indiana | -- | p. 27 | -- | p. 31, 37 | -- | p. 18-19 |
| Kansas | p. 40 | p. 26 | p. 45 | Withdrawn | p. 24 | p. 1 |
| Michigan | p. 41 | p. 26 | p. 45 | p. 37 | p. 24 | p. 18 |
| Minnesota | -- | p. 28 | -- | p. 31, 37 | -- | p. 19 |
| Mississippi | -- | p. 27 | -- | p. 36 | -- | p. 19 |
| New Mexico | p. 40 | p. 26 | p. 45 | p. 37 | p. 24 | p. 18 |
| Oregon | -- | p. 27 | -- | p. 38 | -- | p. 19 |
| Pennsylvania | -- | p. 27 | -- | p. 38 | -- | p. 19 |
| Rhode Island | p. 41 | p. 27 | p. 45 | No Response | p. 24 | p. 18 |

Attachment 4: Guide to Arguments in BI's Opening Memoranda for IPP and Humana Complaints,
IPPs' and Humana's Oppositions, and BI's Replies to IPP and Humana

| Argument | BI Opening (Class) | BI Opening (Humana) | IPP Class Opp. | Humana Opp. | BI Reply (Class) | BI Reply (Humana)[1] |
|---|---|---|---|---|---|---|
| South Dakota | -- | p. 27 | -- | p. 38 | -- | p. 20 |
| Tennessee | p. 40 | p. 27 | p. 45 | No Response | p. 24 | p. 18 |
| Utah | p. 41 | p. 26 | p. 46 | p. 37 | p. 25 | p. 18, p. 19-20 |
| Virginia | -- | p. 27 | -- | p. 38 | -- | p. 20 |
| West Virginia | p. 41 | p. 26 | p. 45-46 | p. 38 | p. 25 | p. 18, p.  20 |
| Wisconsin | -- | p. 27 | -- | p. 38 | -- | p. 20 |
| **Suits Allowed Only in Consumer Capacity** | **Section V.D** | **Section V.D** | **Section VI.E** | **Section V.C.i** | **Section V.E** | **Section VI.D** |
| Hawaii | p. 42 | p. 29 | p. 46 | Withdrawn | p. 25 | p. 1 |
| Iowa | p. 42 | -- | p. 46 | -- | p. 25-26 | -- |
| Kansas | p. 42 | p. 29 | p. 47 | Withdrawn | p. 26 | p. 1 |
| Maine | p. 42 | p. 29 | p. 47 | p. 27-28 | p. 26 | p. 20 n.22, p. 20 n.23 |
| Mississippi | -- | p. 29 | -- | p. 27-28 | -- | p. 21, p. 20 n.22 |
| Montana | p. 43 | p. 29 | p. 47 | p. 27-28 | p. 26 | p. 21 |
| North Carolina | p. 43 | p. 29 | p. 47 | p. 27-28 | p. 26 | p. 20 n.22 |
| Oregon | -- | p. 30 | -- | p. 27-29 | -- | p. 21 |
| Pennsylvania | -- | p. 29 | -- | p. 27-29 | -- | p. 22 |
| Rhode Island | p. 43 | -- | p. 46 | -- | p. 26 | -- |
| Utah | p. 43 | p. 29 | p. 47 | p. 27-29 | p. 26 | p. 22, p. 20 n.22 |
| Vermont | p. 43 | p. 29 | p. 48 | p. 27-29 | p. 26-27 | p. 22, p. 20 n.22 |
| **Pre-Filing Notice Required** | **Section VI.A** | **Section V.E** | **Section VI.F** | **Section V.D** | **Section V.F** | **Section VI.E** |
| California | p. 44 | p. 30 | p. 48 | p. 38 | p. 28 | p. 23 n.25 |
| Hawaii | p. 44 | -- | p. 48-49 | Withdrawn | p. 28 & n.53 | p. 1 |
| Maine | p. 44-45 | -- | p. 49 | -- | p. 28 | -- |
| Massachusetts | p. 44 | p. 30 | p. 49-50 | p. 38-39 | p. 28 | p. 23 n.25 |
| West Virginia | p. 45 | p. 30 | p. 50 | p. 39 | p. 28 | p. 23 n.25 |
| Wyoming | -- | p. 30 | -- | p. 39 | -- | p. 23 |
| **Primarily Intrastate Conduct Required** | **Section VI.B** | **Section V.F** | **Section VI.G** | **Section V.B** | **Section VI** | **Section VI.F** |
| Florida | p. 45 | p. 31 | p. 50-51 | p. 26 | p. 29-30 | p. 23 |
| Massachusetts | p. 45 | p. 31 | p. 51 | p. 26 | p. 29-30 | p. 23 |
| New Hampshire | p. 45 | p. 31 | p. 51 | p. 26-27 | p. 29-30 | p. 23 |
| New York | p. 46 | p. 31 | p. 51-52 | p. 26-27 | p. 29-30 | p. 23 |
| North Carolina | p. 46 | p. 31 | p. 52 | p. 26-27 | p. 29-30 | p. 23 |
| **Class Actions Disallowed** | **Section VI.C** | **N/A** | **Section VI.H** | **N/A** | **Section V.G** | **N/A** |
| Illinois | p. 47 | -- | p. 52-55 | -- | p. 27-28 | -- |
| Iowa | p. 47 | -- | p. 52-56 | -- | p. 27 | -- |
| Kansas | p. 47 | -- | p. 52-57 | -- | p.27 | -- |
| Montana | p. 47 | -- | p. 52-58 | -- | p. 28 | -- |
| Tennessee | p. 47-48 | -- | No Response | -- | p. 27 | -- |
| Utah | p. 48 | -- | No Response | -- | p. 27 | -- |
| **No Private Right of Action** | **Section VI.D** | **Section V.C** | **Section VI.I** | **N/A** | **Section V.H** | **Section VI.C** |
| Iowa | p. 48-49 | -- | p. 57 | -- | p. 28-29 | -- |
| Wyoming | -- | p. 28 | -- | No Response | -- | p.20 |

**Attachment 4**: Guide to Arguments in BI's Opening Memoranda for IPP and Humana Complaints,
IPPs' and Humana's Oppositions, and BI's Replies to IPP and Humana

| Argument | BI Opening (Class) | BI Opening (Humana) | IPP Class Opp. | Humana Opp. | BI Reply (Class) | BI Reply (Humana)[1] |
|---|---|---|---|---|---|---|
| **Elderly or Disabled Plaintiff Required** | **Section VI.E** | **Section V.G** | **Section VI.J** | **Section V** | **Section V.I** | **Section V.F** |
| Nevada | p. 49 | p. 32 | p. 58 | p. 24 | p. 29 | p. 23 |
| **Florida Claims Preempted** | **Section VI.F** | **Section V.H** | **Section VI.K** | **Section V** | **Section V.J** | **Section V.F** |
| Florida | p. 49 | p. 32 | p. 58-59 | p. 24 | p. 29 | p. 23 |
| **State Unjust Enrichment (UE) Theories** | | | | | | |
| **Connecticut UE Claim Fails** | **Section VII.A** | **N/A** | **Section VII.I** | **N/A** | **Section VII** | **N/A** |
| Connecticut | p. 50-52 | -- | p. 68 | -- | p. 30 | -- |
| **Undifferentiated UE Claims Fail** | **Section VII.B** | **Section VI.A** | **Section VII.A** | **Section VI.A** | *See* **Humana Reply** | **Section VII.A.1** |
| All states | p. 52 | p. 32-33 | p. 59-60 | p. 40 | | p. 24 |
| **Quasi-Contract Relationship Required** | **Section VII.B** | **Section VI.B** | **Section VII.B** | **Section VI.B** | *See* **Humana Reply** | **Section VII.B** |
| All states | p. 52 | p. 33-38 | p. 60-61 | p. 41-42 | | p. 26 |
| **Plaintiffs Lack Required Relationship with Defendants** | **Section VII.B** | **Section VI.C.1** | **Section VII.F** | **Section VI.E** | *See* **Humana Reply** | **Section VII.C.1** |
| Idaho | p. 53 | p. 38 | p. 62 | p.45 | | p. 27 |
| Illinois | p. 53 | p. 38-39 | p. 62-63 | p. 46 | | p. 27 |
| Kansas | p. 53 | p. 38-39 | p. 63-64 | p.45 | | p. 27-28 |
| New York | p. 53 | p. 38-40 | p. 64 | p.45 | | p. 28 |
| South Carolina | p. 53 | p. 38-40 | p. 64-65 | p. 46 | | p. 28 |
| **Plaintiffs Have Not Alleged Direct Benefit** | **Section VII.B** | **Section VI.C.2** | **Section VII.G** | **Section VI.B** | *See* **Humana Reply** | **Section VII.C.3** |
| Alabama | p. 53 | p. 41 | p. 65-66 | p. 41-42 | | p. 28 |
| Arizona | p. 53 | p. 41 | p. 65-66 | p. 41-42 | | N/A |
| District of Columbia | p. 53 | p. 41 | p. 65-66 | p. 41-42 | | N/A |
| Florida | p. 53 | p. 41 | p. 65-66 | p. 41-42 | | p. 30 |
| Georgia | p. 53 | p. 41 | p. 65-66 | p. 41-42 | | p. 30 |
| Idaho | p. 53 | p. 41 | p. 65-66 | p. 41-42 | | p. 30 |
| Kansas | p. 53 | p. 41 | p. 65-66 | p. 41-42 | | p. 30 |
| Maine | p. 53 | p. 41 | p. 65-66 | p. 41-42 | | N/A |
| Maryland | p. 53 | p. 42 | p. 65-66 | p. 41-42 | | p. 30 |
| Massachusetts | p. 53 | p. 42 | p. 65-66 | p. 41-42 | | N/A |
| Michigan | p. 53 | p. 42 | p. 65-66 | p. 41-42 | | N/A |
| New Jersey | p. 53 | p. 42 | p. 65-66 | p. 41-42 | | N/A |

**Attachment 4**: Guide to Arguments in BI's Opening Memoranda for IPP and Humana Complaints, IPPs' and Humana's Oppositions, and BI's Replies to IPP and Humana

| Argument | BI Opening (Class) | BI Opening (Humana) | IPP Class Opp. | Humana Opp. | BI Reply (Class) | BI Reply (Humana)[1] |
|---|---|---|---|---|---|---|
| New York | p. 53 | p. 42 | p. 65-66 | p. 41-42 | | p. 30 |
| North Carolina | p. 53 | p. 42 | p. 65-66 | p. 41-42 | | p. 30 |
| North Dakota | p. 53 | p. 42 | p. 65-66 | p. 41-42 | | p. 30 |
| Pennsylvania | p. 53 | p. 42 | p. 65-66 (Withdrawn) | p. 41-42 | | p. 30 |
| Rhode Island | p. 53 | p. 42 | p. 65-66 | p. 41-42 | | p. 30 |
| South Carolina | p. 53 | p. 43 | p. 65-66 | p. 41-42 | | p. 30 |
| Texas | p. 53 | p. 43 | p. 65-66 | p. 41-42 | | p. 30 |
| Utah | p. 53 | p. 43 | p. 65-66 | p. 41-42 | | p. 30 |
| Washington | p. 53 | p. 43 | p. 65-66 | p. 41-42 | | p. 30 |
| West Virginia | p. 53 | p. 43 | p. 65-66 | p. 41-42 | | N/A |
| Wisconsin | p. 53 | p. 43 | p. 65-66 | p. 41-42 | | N/A |
| Wyoming | p. 53 | p. 43 | p. 65-66 | p. 41-42 | | p. 30 |
| **UE Not an Independent Cause of Action** | **Section VII.B** | **Section VI.D** | **Section VII.H** | **Section VI.F** | *See* **Humana Reply** | **Section VII.C.2** |
| California | p. 53 | p. 43-44 | p. 66 | p. 46 | | p. 28-29 |
| Georgia | p. 53 | p. 44 | p. 67 | p. 47 | | p. 28 |
| Illinois | p. 53 | p. 44 | p. 67 | p. 47 | | p. 28, p. 29 |
| Mississippi | p. 53 | p. 44 | p. 67-68 | p. 47 | | p. 28, p. 29 |
| **Other Theories (Humana Only)** | | | | | | |
| **Humana Fails to Differentiate Between Direct and Indirect Purchases** | **N/A** | **Section III** | **N/A** | **Section III** | **N/A** | **Section IV** |
| All claims | -- | p. 16-19 | -- | p. 19 (withdrawing DP claims) | -- | p. 5-7 |

## CERTIFICATE OF SERVICE

I, J. Mark Gidley, certify that on September 26, 2014, I caused a true and correct copy of the foregoing Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint to be served through the CM/ECF system and by e-mail upon all counsel of record.


Date:  September 26, 2014


By:  /s/ *J. Mark Gidley*
J. Mark Gidley
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel:  (202) 626-3609
Fax: (202) 639-9355
mgidley@whitecase.com

*Counsel for Defendants Boehringer Ingelheim Pharmaceuticals, Inc.*