**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: AGGRENOX ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | C.A. No. 3:14-MD-2516(SRU) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY THE MARCH 23, 2015 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

LEGAL STANDARD..................................................................................................6

ARGUMENT ..............................................................................................................9

I. THE COURT SHOULD PERMIT INTERLOCUTORY APPEAL ON THE STATUTE OF LIMITATIONS ISSUES ..........................................................9

A. Application of the Statute of Limitations Is a "Controlling Question of Law" .......9

B. There Is "Substantial Ground for Difference of Opinion" Regarding the Application of the Statute of Limitations to the Continued Performance of the Challenged Agreements ..........................................................................11

1. Several Courts Within This Circuit Have Held that Claims Arising from Discrete Events Over Four Years Before the Filing of a Complaint Are Time-Barred ..........................................................12

2. The Second Circuit Recently Held that Mere Adherence to a Contract Does Not Restart the Limitations Period ....................................14

3. Other Courts Have Also Rejected Plaintiffs' Efforts to Restart Limitations Periods ..........................................................................16

4. The Existence of Conflicting Authority Underscores the Need for Appellate Guidance..........................................................................19

C. An Immediate Appeal "Would Materially Advance the Ultimate Termination of the Litigation"..........................................................................19

D. Guidance from the Second Circuit Is Particularly Important Here Given the Likelihood this Issue Will Recur and the Strong Public Interest in Encouraging Antitrust Challenges to Settlements to Be Brought Promptly..........20

II. THE COURT SHOULD GRANT CERTIFICATION ON THE APPLICATION OF SECTION 4 OF THE CLAYTON ACT TO PRIVATE ANTITRUST ACTIONS CHALLENGING PATENT SETTLEMENTS................................................23

A. The Application of Section 4 of the Clayton Act Presents a "Controlling Question of Law" ..........................................................................25

B. The Second and Third Elements for Immediate Appellate Review Are Satisfied Here as Well..........................................................................27

C. Guidance from the Second Circuit Is Particularly Important Given the Proliferation of Private Class Actions Challenging Patent Settlements ................28

CONCLUSION..........................................................................................................29

**TABLE OF CITATIONS**

**CASES**

*Al George, Inc. v. Envirotech Corp.*,
939 F.2d 1271 (5th Cir. 1991) ....................18

*Allen v. Dairy Farmers of Am., Inc.*,
748 F. Supp. 2d 323 (D. Vt. 2010)....................3, 13

*Am. Geophysical Union v. Texaco, Inc.*,
802 F. Supp. 1 (S.D.N.Y. 1992)....................20

*Argus Inc. v. Eastman Kodak Co.*,
801 F.2d 38 (2d Cir. 1986)....................26, 27

*Atlantic City Elec. Co. v. Gen. Elec. Co*,
207 F. Supp. 613 (S.D.N.Y. 1962) ....................7, 9

*Axis, S.p.A. v. Micafil, Inc.*,
870 F.2d 1105 (6th Cir. 1989) ....................27

*Balaklaw v. Lovell*,
14 F.3d 793 (2d Cir. 1994)....................23

*Bano v. Union Carbide Corp.*
273 F.3d 120 (2d Cir. 2001)....................21

*Barnosky Oils, Inc. v. Union Oil Co. of Calif.*,
665 F.2d 74 (6th Cir. 1981) ....................18

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979)....................2, 11

*Berkson v. Del Monte Corp.*,
743 F.2d 53 (1st Cir. 1984)....................18, 21

*Bertha Bldg. Corp. v. Nat'l Theatres Corp.*,
269 F.2d 785 (2d Cir. 1959)....................8, 9

*Boudreau v. Deloitte, Haskins & Sells*,
942 F.2d 497 (8th Cir. 1991) ....................9

*Breen Air Freight, Ltd. v. Air Cargo, Inc.*,
470 F.2d 767 (2d Cir. 1972)....................8

*Bush v. Oceans Intern.*,
621 F.2d 207 (5th Cir. 1980) ....................................................................................9

*Capital Temporaries, Inc. of Hartford v. Olsten Corp.*,
506 F.2d 658 (2d Cir. 1974)........................................................................................8

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ..................................................................................17

*Crimpers Promotions Inc. v. Home Box Office, Inc.*,
724 F.2d 290 (2d Cir. 1983)........................................................................................8

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
523 F.3d 1116 (9th Cir. 2008) ....................................................................................8

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
747 F.3d 145 (2d Cir. 2014)........................................................................................6

*F.T.C. v. Hope Now Modifications, LLC*,
09 1204 (JBS/JS), 2010 WL 1463008 (D.N.J. Apr. 12, 2010) ..................................24

*Fed. Housing Fin. Agency v. UBS Ams., Inc.*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012)...................................................................9, 20

*FTC v. Actavis*,
133 S. Ct. 2223 (2013)..................................................................................................1

*Garcia v. Wilson*,
731 F.2d 640 (10th Cir. 1984) ....................................................................................9

*Grand Rapids Plastics v. Lakian*,
188 F.3d 401 (6th Cir. 1999) ....................................................................................18

*Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*,
491 F.3d 310 (6th Cir. 2007) ....................................................................................22

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009)........................................................................14

*Hinds Cnty. Miss. v. Wachovia Bank N.A.*,
700 F. Supp. 2d 378 ..................................................................................................15

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
811 F. Supp. 2d 910 (S.D.N.Y. 2011)........................................................................15

*In re Brand Name Prescription Drugs Antitrust Litig.*,
123 F.3d 599 (7th Cir. 1997) ....................................................................................8

*In re Ciprofloxacin Hydrochloride Antitrust Litig.* ("*Cipro*"),
261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..............................................................2, 12, 13

*In re Flonase Antitrust Litig.*,
798 F. Supp. 2d 619 (E.D. Pa. 2011) ......................................................................24

*In re Japanese Elec. Prods. Antitrust Litig.*,
723 F.2d 319 (3d Cir. 1983)......................................................................................8

*In re Loestrin 24 Antitrust Litig.*,
45 F. Supp. 3d 180 (D.R.I. 2014) ..........................................................................21

*In re Microsoft Corp. Antitrust Litig.*,
MDL 1332, Civ. JFM-05-1087, 2005 WL 2063954 (D. Md. Aug. 19, 2005).......................7, 20

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ..................................................................................28

*In re Travel Agent Comm'n Antitrust Litig.*,
583 F.3d 896 (6th Cir. 2009) ..................................................................................18

*In re Uranium Antitrust Litig.*,
617 F.2d 1248 (7th Cir. 1980) ..................................................................................8

*In re WorldCom*, No. 02 Civ. 3288,
2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003) .........................................6, 9, 16, 19

*Ingram* v. *Kumar*,
585 F.2d 566 (2d Cir. 1978)......................................................................................9

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2664 ADM/SER,
2014 WL 943224,(D. Minn. Mar. 11, 2014) ............................................................17

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*,
369 F. Supp. 316, 327 (M.D.N.C. 1973), supplemented, 380 F. Supp. 976 (M.D.N.C. 1974)..24

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) ................................................................................17

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
552 F.3d 1033 (9th Cir. 2009) ....................................................................26, 27, 28

*Klinghoffer v. S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990)....................9

*Kuzinksi v. Schering Corp.*,
614 F. Supp. 2d 247 (D. Conn. 2009)....................6

*Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*,
824 F.2d 582 (8th Cir. 1987)....................17

*Mason v. Ford Motor Co.*,
755 F.2d 120 (8th Cir. 1985)....................9

*Matter of Schering-Plough Corp.*,
136 F.T.C. 956 (2003), *rev'd on other grounds*, *Schering-Plough Corp.*, 402 F.3d 1056 (11th Cir. 2005), *cert denied,* 548 U.S. 919 (2006)....................28

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004)....................7, 8, 9

*Midwestern Mach. Co. v. Nw. Airlines, Inc.*,
392 F.3d 265 (8th Cir. 2004)....................17

*Novell, Inc. v. Microsoft Corp*,
505 F.3d 302 (4th Cir. 2007)....................8

*Okure v. Owens*,
816 F.2d 45 (2d Cir. 1987)....................9

*Peck v. Gen. Motors Corp.*,
894 F.2d 844 (6th Cir. 1990)....................18

*Piedmont Label Co. v. Sun Garden Packing Co.*,
598 F.2d 491 (9th Cir. 1979)....................8

*Pinney Dock and Transp. Co. v. Penn Cent. Corp.*,
838 F.2d 1445 (6th Cir. 1988)....................8, 9

*Rothstein v. GMAC Mortg., LLC*, No. 12 Civ. 3412(AJN),
2014 WL 1329132 (S.D.N.Y. Apr. 3, 2014)....................13, 19

*Russ Togs, Inc. v. Grinnell Corp.*,
426 F.2d 850 (2d Cir. 1970)....................8, 9

*RX.com v. Medco Health Solutions, Inc.*,
322 F. App'x 394 (5th Cir. Apr. 22, 2009)....................18

*Samsung Elecs. Co. v. Panasonic Corp.*,
747 F.3d 1199 (9th Cir. 2014) ....................21, 22

*Sanofi-Aventis v. Apotex, Inc.*,
659 F.3d 1171 (Fed. Cir. 2011)....................21

*SCM Corp. v. Xerox Corp.*,
645 F.2d 1195 (2d Cir. 1981)....................8

*Sierra Club v. Chevron U.S.A., Inc.*,
834 F.2d 1517 (9th Cir. 1987) ....................9

*Stinson v. Kaiser Gypsum Co., Inc.*,
972 F.2d 59 (3d Cir. 1992)....................9

*Storck v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local Union No. 660, et al.*, 712 F.2d 1194 (7th Cir. 1983)....................9

*Tomaselli v. Beaulieu*,
967 F. Supp. 2d 423 (D. Mass. 2013) ....................18

*Trane U.S., Inc. v. Meehan*,
563 F. Supp. 2d 743 (N.D. Ohio 2008)....................18

*Trans World Airlines, Inc. v. Hughes*,
332 F.2d 602 (2d Cir. 1964)....................8

*Travelers Prop. & Cas. Corp. v. GE*,
150 F. Supp. 2d 360 (D. Conn. 2001)....................6

*Twin Cities Bakery Workers Health & Welfare Fund v. Biovail Corp.*, No. Civ.A. 01-2197(JR), 2005 WL 3675999 (D.D.C. Mar. 31, 2005), *aff'd* 553 F.3d 857 (D.C. Cir. 2008) ....................24

*United Farmers Agents Assoc. v. Farmers Ins. Exch.*,
892 F. Supp. 890 (W.D. Tex. 1995)....................18

*United Paperworkers Int'l Union and Its Local 340 v. Specialty Paperboard, Inc.*,
999 F.2d 51 (2d Cir. 1993)....................9

*United States v. Colon-Munoz*,
192 F.3d 210 (1st Cir. 1999)....................18

*United States v. Doherty*,
867 F.2d 47 (1st Cir. 1989)....................18

*United States v. Glens Falls Newspapers, Inc.*,
160 F.3d 853 (2d Cir. 1998)....21

*United States v. Grimm*,
738 F.3d 498 (2d Cir. 2013)....3, 14, 15

*Valley Drug Co. v. Geneva Pharm., Inc.*,
344 F.3d 1294 (11th Cir. 2003)....8

*Varner v. Peterson Farms*,
371 F.3d 1011 (8th Cir. 2004)....17, 19

*Vitale v. Marlborough Gallery*,
1994 WL 654494 (S.D.N.Y. July 5, 1994)....12

*Wolsky v. Medical College of Hampton Roads*,
1 F.3d 222 (4th Cir. 1993)....9

*World Wrestling Entm't Inc. v. Jakks Pac. Inc.*,
425 F. Supp. 2d 484 (S.D.N.Y. 2006)....26, 27

*World Wrestling Entm't v. Jakks Pac., Inc.*,
328 F. App'x 695 (2d Cir. May 19, 2009)....16, 22

*Z Techs. Corp. v. Lubrizol Corp.*,
753 F.3d 594 (6th Cir. 2014).... passim

*Zenith Radio Corp.* v. *Matsushita Elec. Indus. Co.*,
494 F. Supp. 1190 (E.D. Pa. 1980)....8

**STATUTES AND RULES**

28 U.S.C. § 1292(b).... passim

15 U.S.C. § 15.... passim

**MISCELLANEOUS**

Ian Simmons et al., *Viewing FTC v. Actavis Through the Lens of Clayton Act § 4*, 28 Antitrust 24 (Fall 2013)....28

Phillip Areeda & Herbert Hovenkamp, *Antitrust Law*....3, 11

**INTRODUCTION**

On March 23, 2015, this Court denied (in substantial part) Defendants' motion to dismiss Plaintiffs' federal antitrust claims.[1] ECF No. 229 ("March 23 Order" or "Order"). Defendants wish to raise two issues that, because of their importance and clear compliance with the requirements of 28 U.S.C. § 1292(b), warrant interlocutory review by the Second Circuit: the first is the Court's ruling that the applicable four-year statute of limitations did not bar Plaintiffs' claims where the first lawsuit was filed more than five years after the entry of the challenged 2008 Agreements[2]; the second is the Court's ruling that the antitrust claims should not be dismissed due to Plaintiffs' failure to plead the causation requirement of Section 4 of the Clayton Act, a requirement that private plaintiffs such as these (unlike the FTC, the plaintiff in *Actavis*) must satisfy *independent* of the separate obligation to establish that the challenged patent settlement is "unreasonable" per the Supreme Court's teaching in *FTC v. Actavis*, 133 S. Ct. 2223 (2013). Defendants do not seek to delay or stay this action pending resolution of the petition.[3]

Interlocutory appeal under 28 U.S.C. § 1292(b) should be granted where the district court's order: (1) involves a controlling question of law, (2) as to which there is substantial

---

[1] Defendants are Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), Boehringer Ingelheim International GmbH, and Boehringer Ingelheim Pharma GmbH & Co. KG (collectively referred to as "Boehringer Ingelheim" or "BI") and Barr Pharmaceuticals, Inc. ("Barr"), Teva Pharmaceuticals USA, Inc. ("Teva USA"), Duramed Pharmaceuticals, Inc. ("Duramed"), and Duramed Pharmaceuticals Sales Corp. The Boehringer Ingelheim and Teva/Barr/Duramed defendants are collectively referred to as "Defendants."

[2] The 2008 Agreements are the Aggrenox Settlement, Supply and License, and Co-Promotion Agreements, all entered on August 11, 2008, together with the Mirapex Settlement and License Agreements entered that same day.

[3] Defendants respectfully disagree with various aspects of the Court's ruling, including the Court's construction of the substantive standard under *Actavis*, but do not seek interlocutory review of those issues.

ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Interlocutory review is appropriate here for at least the following reasons:

First, with respect to the statute of limitations, substantial grounds for difference of opinion exist over whether this Court was correct to conclude that it was bound under *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) to extend the statute of limitations for antitrust purchaser claims indefinitely by permitting Plaintiffs to restart the limitations period with every new purchase of Aggrenox, where (1) the "harm" Plaintiffs assert flows from Defendants' mere adherence to the 2008 Agreements, rather than an ongoing price-fixing conspiracy; (2) it is undisputed that the 2008 Agreements were widely publicized, and Plaintiffs concededly knew their terms due to the wide publicity at the time (indeed, many of the same plaintiffs and counsel even timely filed in 2009 an antitrust suit challenging the same 2008 Agreements under a conflicting theory); and (3) the "overcharges" about which Plaintiffs complain commenced more than four years before the first suit was filed (the latest plausible accrual date being when FDA actually approved Barr's generic Aggrenox product on August 14, 2009).

Interlocutory review would allow the Second Circuit to reconcile such a reading of *Berkey* with conflicting authority, including: (1) *In re Ciprofloxacin Hydrochloride Antitrust Litig.* ("*Cipro*"), 261 F. Supp. 2d 188 (E.D.N.Y. 2003), in which the court barred a *purchaser* from suing to challenge a patent settlement where suit was brought more than four years after the settlement was entered (and publicly announced), and where just like in this case plaintiffs alleged they were injured by paying ongoing overcharges, and (2) decisions from several other Circuits in which courts – focusing on the need for repose – have rejected efforts by plaintiffs,

including *purchasers* seeking overcharges, from extending limitations periods endlessly where the claimed harm flows from "the abatable but unabated inertial consequences of some pre-limitations action," *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014) (internal quotations and citation omitted).

In addition, the Court's reasoning is in significant tension with the reasoning of the Second Circuit in its very recent decision in *United States v. Grimm*, 738 F.3d 498 (2d Cir. 2013), which held that where a criminal antitrust conspiracy (prosecution was brought by the DOJ Antitrust Division) arises from a discrete event or transaction, the limitations period should run four years from the discrete event or transaction; it should not restart perpetually when Defendants merely carry out the terms of the challenged transaction. The Second Circuit has not yet been asked to reconcile its holding in *Grimm* with the language in its much older *Berkey* decision on which this Court relied. While this Court concluded that *Grimm* and other cases within the Circuit have "not cast doubt on the authority or reasoning of *Berkey Photo*" (Order at 13), there is at least substantial ground for difference of opinion concerning whether the Second Circuit's holding in *Berkey* should be read more narrowly, as both leading commentators and courts within this Circuit have advocated. *See* Areeda & Hovenkamp, Antitrust Law ¶ 320c4; *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 349-50 (D. Vt. 2010).

Litigants would benefit greatly from immediate guidance from the Second Circuit on this issue. This is a quintessential issue for invocation of § 1292(b) – indeed, the legislative history of § 1292(b) makes clear that Congress enacted § 1292(b) specifically with the statute of limitations in antitrust cases in mind. Interlocutory review would be particularly beneficial here given that the Supreme Court's very recent *Actavis* decision substantially changed the prevailing law governing the antitrust treatment of pharmaceutical patent settlements. As this Court

recognized (Order at 29), the settlement agreement entered by Defendants here was lawful at the time it was entered under the Second Circuit's then-prevailing "scope of the patent" test. But under the open-ended view of the limitations period that this Court read *Berkey* to compel, settlements such as the ones at issue here, entered long ago – in reliance on existing law – become subject to attack when purchaser plaintiffs delay suit until the law changes. This deprives such settling parties of precisely the repose that statutes of limitations are intended to provide.

Second, substantial grounds for difference of opinion exist over the Court's holding that Plaintiffs' antitrust theories should not be dismissed for failure to plead the causation requirements of Section 4 of the Clayton Act. 15 U.S.C. § 15 ("[A]ny person who shall be injured . . . *by reason of* anything forbidden in the antitrust laws may sue therefor . . . .") (emphasis added). Even if a substantive violation is shown, private antitrust plaintiffs must plead that the violation in fact caused harm. In order to satisfy this requirement, Plaintiffs would have to plead (and ultimately prove) that – even assuming the 2008 Agreements were deemed "unreasonable" under *Actavis* – Barr's generic Aggrenox would have entered sooner than provided in the 2008 Agreements. To do this, Plaintiffs would have to establish, at a minimum, that absent the 2008 Agreements Barr would have been able to enter earlier without violating BI's rights in the '577 patent. The March 23 Order acknowledged that Plaintiffs' allegations in this regard were "spars[e]" and "relatively bare." Order at 18. The Court nonetheless found that those infirmities did not warrant dismissal because under the Court's reading of *Actavis*, the question of what would have happened in the '577 patent case may not have to be considered. Order at 18. The Court appears to have focused only on the *liability* standard set forth by the Supreme Court in *Actavis,* and not on whether Plaintiffs had met their independent burden under

Section 4 of the Clayton Act. But Section 4's pleading requirement is entirely *independent* from the requirement that a private plaintiff plead and prove an anticompetitive agreement, and, because the FTC was the plaintiff in *Actavis*, the Supreme Court did not address the requirements of Section 4 in its opinion in that case.

The parties and the Court would benefit from guidance from the Second Circuit on whether it was appropriate for the Court to merge – as it appears to have done – the substantive law (*Actavis*) with the separate causation requirement of Section 4.

Because both of these holdings present controlling and case-dispositive questions of law about which there are significant grounds for disagreement, Defendants respectfully request certification under 28 U.S.C. § 1292(b) to allow the Second Circuit to review these issues of critical importance in antitrust and related cases. Specifically, Defendants seek to certify one or both of the following questions:

(1) Does the Clayton Act's four-year statute of limitations period bar claims brought by purchasers alleging overcharges arising from a patent settlement (and related transactions) where (a) suit was commenced more than four years after the settlements were entered and publicly announced and more than four years after the claimed injury commenced, and (b) Plaintiffs do not allege any ongoing conspiratorial conduct within the limitations period, but rather that Defendants merely continued to carry out the terms of the publicly announced agreements?

(2) Is a private plaintiff alleging an antitrust violation based on a claimed "reverse payment" patent settlement required under Section 4 of the Clayton Act to plead and prove that generic competition in fact was delayed due to the allegedly unlawful settlement?

Certification of these questions satisfies each of three elements of the test for interlocutory appeal under Section 1292(b). Defendants therefore respectfully request that this Court certify its March 23, 2015 Order for appeal pursuant to 28 U.S.C. § 1292(b).

## LEGAL STANDARD

Interlocutory appeal under 28 U.S.C. § 1292(b) is appropriate where the district court's order: (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Kuzinksi v. Schering Corp.*, 614 F. Supp. 2d 247 (D. Conn. 2009); *Travelers Prop. & Cas. Corp. v. GE*, 150 F. Supp. 2d 360, 368 (D. Conn. 2001).

Interlocutory appeal is particularly appropriate in complex antitrust cases such as this one because "one of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases; . . . '[i]n 'so-called big cases,' courts may grant certification more freely." *In re WorldCom*, No. 02 Civ. 3288, 2003 WL 22953644, at *4 (S.D.N.Y. Dec. 16, 2003) (citing *In re Lloyd's American Trust Fund Litig.*, No. 96 Civ. 1262(RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997)); *see*, *e.g.*, *DPWN Holdings (USA), Inc.* v. *United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014) ("In view of the time and expense that a potentially needless antitrust trial would take, the [District] Court sensibly certified its ruling for interlocutory appeal, and this Court granted [the defendant's] petition for an interlocutory appeal.").

Indeed, Congress enacted Section 1292(b) with antitrust cases in mind, and specifically singled out statute of limitations issues within antitrust cases as particular candidates for interlocutory review. The Senate Report on Section 1292(b) used statute of limitations in antitrust cases as the prime example for the use of the then new law.

> [I]n an antitrust action a plea may be entered that the claim is barred by the statute of limitations. If this motion is denied, under existing law the matter is not appealable and the case then goes forward to trial. Disposition of antitrust cases may take considerable time, yet upon appeal following final disposition of such cases, the court of appeals may well determine that the statute of limitations had run and for that reason the district court did not have jurisdiction.

S. Rep. No. 85-2434, 85 Cong., 2d Sess., *reprinted in* 1958 U.S.C.C.A.N. 5255, 5256 (1958); *see also*, *Atlantic City Elec. Co. v. Gen. Elec. Co*, 207 F. Supp. 613, 620–21 n.23 (S.D.N.Y. 1962) (writing that statute of limitations issues, particularly in the antitrust context, "in part prompted the enactment of Section 1292(b)"); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257 (11th Cir. 2004) ("The same report gives as another example of when interlocutory appeal might be appropriate the denial of a motion to dismiss an antitrust action on statute of limitations grounds."); *In re Microsoft Corp. Antitrust Litig.*, MDL 1332, Civ. JFM-05-1087, 2005 WL 2063954, at *1 (D. Md. Aug. 19, 2005) (certifying interlocutory appeal in antitrust case, taking into account "the fact that the legislative history of [Section] 1292(b) cites antitrust cases that are brought at the end of (or past) the statute of limitations as examples of instances in which interlocutory appeals might be appropriate.").

The Senate Report accompanying the bill explains that allowing interlocutory appeals on questions of limitations in antitrust would result "in a saving of the time of the District Court and considerable expenses on the part of litigants." *Id.* The Judicial Conference committee, which was tasked with evaluating the proposed bill, similarly recommended the enactment of Section 1292 because "[an interlocutory] appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided . . . ." 1958 U.S.C.C.A.N. 5255 at 5259; *McFarlin*, 381 F.3d at 1256 ("The report of the Judicial Conference committee is particularly persuasive in regard to the intent behind the provision, because Congress enacted the report's proposed language verbatim.").

Since the adoption of Section 1292 in 1958, courts across the country have found that interlocutory appeal is appropriate in antitrust cases such as this one. The question of statute of

limitations has been previously certified in numerous antitrust cases.[4] Numerous other antitrust issues have been certified, including in pharmaceutical antitrust cases.[5] Indeed, antitrust cases are one of the leading types of case certified under § 1292. Tory Weigand, *Discretionary Interlocutory Appeals Under 28 U.S.C. §1292(b): A First Circuit Survey and Review*, 19 Roger Williams L. Rev. 183, 270 (2014).

As explained further below, each of the requirements for Section 1292(b) review easily is met here.

---

[4] *See, e.g.*, *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1453 (6th Cir. 1988) (antitrust case Section 1292(b) appeal on statute of limitations issue, among other things); *Russ Togs, Inc.* v. *Grinnell Corp.*, 426 F.2d 850, 852 (2d Cir. 1970) (same); *McFarlin*, 381 F.3d at 1256 (accepting Section 1292 appeal of denial of motions to dismiss on statute of limitations grounds, among others, in an antitrust action); *Bertha Bldg. Corp.* v. *Nat'l Theatres Corp.*, 269 F.2d 785, 787 (2d Cir. 1959) (Section 1292(b) appeal on denial of motion to dismiss on statute of limitations grounds in Clayton Act Section 4 case).

[5] *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir. 1997) (hearing Section 1292(b) appeal in antitrust case, and noting that "the fact that it may in the end not prove decisive does not show that the district judge and we were wrong to certify his ruling on the issue under [Section 1292(b)] for an immediate appeal."); *Valley Drug Co. v. Geneva Pharm., Inc.*, 344 F.3d 1294, 1300 (11th Cir. 2003) (hearing a Section 1292(b) appeal in a pharmaceutical antitrust class action); *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1263 (7th Cir. 1980) (hearing Section 1292(b) interlocutory appeal in antitrust case, noting that "Section 1292(b) of the Judicial Code provides appellate courts with a flexible tool for interlocutory review of complex and controlling questions of law," which is "permitted to assure orderly and efficient administration of complex cases"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190, 1244-45 (E.D. Pa. 1980) ("[I]t is clear that the statute [Section 1292(b)] was framed with special attention to the problems of protracted and expensive litigation, which seem to arise most frequently in big antitrust cases. Because Congress intended that § 1292(b) procedures be used to expedite the resolution of cases like the one before us, and because of the extraordinary burden that the case has been on the litigants and this court, we feel especially justified in invoking the aid of the Court of Appeals. . . .") (appeal certified by 3d Cir., *see*, *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 319, 322 (3d Cir. 1983)); *Novell, Inc. v. Microsoft Corp*, 505 F.3d 302, 305 (4th Cir. 2007) (hearing Section 1292(b) appeal on denial of defendant's motion to dismiss on antitrust standing grounds); *Trans World Airlines, Inc. Hughes*, 332 F.2d 602, 604 (2d Cir. 1964) (Section 1292(b) appeal in antitrust case); *Breen Air Freight, Ltd. v. Air Cargo, Inc.*, 470 F.2d 767, 769 (2d Cir. 1972) (same); *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1197 (2d Cir. 1981) (same); *Capital Temporaries, Inc. of Hartford v. Olsten Corp.*, 506 F.2d 658, 660 (2d Cir. 1974) (same); *Crimpers Promotions Inc. v. Home Box Office, Inc.*, 724 F.2d 290, 290 (2d Cir. 1983) (same); *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979) (same); *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116 (9th Cir. 2008) (same).

# ARGUMENT

## I. THE COURT SHOULD PERMIT INTERLOCUTORY APPEAL ON THE STATUTE OF LIMITATIONS ISSUES

### A. Application of the Statute of Limitations Is a "Controlling Question of Law"

The first element is readily met. "[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (internal citations omitted); *see also In re WorldCom*, 2003 WL 22953644, at *4. "Moreover, timeliness determinations, which go directly to the plaintiffs' ability to maintain some or all of its claims, are precisely the type of legal issue that Congress intended to be addressed through Section 1292(b) procedure." *Fed. Housing Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012); *Atlantic City Elec. Co.*, 207 F. Supp. at 619-620 (requirement of controlling question of law "clearly met" in antitrust litigation, where order involved question of whether statute of limitations had run on plaintiffs' cause of action); *Bertha* Building, 269 F.2d at 787; *Russ Togs, Inc.*, 426 F.2d at 852 (Section 1292(b) appeal on statute of limitations issue in antitrust case); *Okure* v. *Owens*, 816 F.2d 45, 46 (2d Cir. 1987) (Section 1292(b) appeal on denial of motion to dismiss on statute of limitations grounds); *Ingram* v. *Kumar*, 585 F.2d 566, 567 (2d Cir. 1978) (same); *United Paperworkers Int'l Union and Its Local 340* v. *Specialty Paperboard, Inc.*, 999 F.2d 51, 52 (2d Cir. 1993) (same).[6]

---

[6] And the statute of limitations has also been found to meet § 1292 in the other circuits. *See, e.g.*, *Stinson* v. *Kaiser Gypsum Co., Inc.*, 972 F.2d 59, 60 (3d Cir. 1992); *Wolsky* v. *Medical College of Hampton Roads*, 1 F.3d 222, 222 (4th Cir. 1993); *Bush v. Oceans Int'l*, 621 F.2d 207, 208 (5th Cir. 1980); *Pinney Dock*, 838 F.2d at 1453; *Storck v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local Union No. 660, et al.*, 712 F.2d 1194, 1195 (7th Cir. 1983); *Boudreau* v. *Deloitte, Haskins & Sells*, 942 F.2d 497 (8th Cir. 1991); *Mason v. Ford Motor Co.*, 755 F.2d 120 (8th Cir. 1985); *Sierra Club* v. *Chevron U.S.A., Inc.*, 834 F.2d 1517, 1519 (9th Cir. 1987); *Garcia* v. *Wilson*, 731 F.2d 640, 642 (10th Cir. 1984); *McFarlin*, 381 F.3d at 1256.

Here, Defendants ask this Court to certify for appellate review the question whether the Clayton Act's four-year statute of limitations bars Plaintiffs' antitrust challenge to the 2008 Agreements. Order at 14. The alleged "wrongdoing" here is simply the 2008 Agreements; there is no dispute that the 2008 Agreements were entered, and widely publicized, substantially more than four years before the first suit was brought here (5 years, 2 months, 28 days before to be precise). Def. Mot. to Dismiss DPP Compl. at 13, 19, ECF No. 149-1 ("Mem."); Def. Reply Mem. in Support of Def. Motion to Dismiss DPP Compl. at 2-4, ECF No. 213 ("Reply Mem."). Moreover, Plaintiffs' alleged injury is an overcharge from asserted "delay" of generic versions of Aggrenox allegedly caused by the 2008 Agreements. Because FDA approved Defendant Barr's generic version of Aggrenox on August 14, 2009 – and because Plaintiffs allege that, but for the settlement, Barr would have launched as soon as it received FDA approval – that date represents the latest date that Plaintiffs' overcharge harm plausibly could have accrued. Mem. at 22-25 (ECF No. 149-1). But the FDA approval date, August 14, 2009, is also more than four years before the first suit was brought here.

The question this Court addressed was whether, despite the facial untimeliness of Plaintiffs' claims, the limitations period should restart every time a plaintiff purchases branded Aggrenox while the 2008 Agreements remain in effect. This Court held that it should. Order at 12-14. If the Court of Appeals disagrees on this purely legal issue and holds Plaintiffs' claims time barred, then all of Plaintiffs' federal claims would be terminated as would the vast majority of the remaining state claims.[7] The question for appeal therefore presents a controlling question of law, the first element of the test for interlocutory review.

---

[7] Although not addressed by the Court in its March 23 Order, the DPPs and IPPs (but not Humana) tried to evade the import of FDA approval of Barr's ANDA by urging that the hypothetical expiration of the

### B. There Is "Substantial Ground for Difference of Opinion" Regarding the Application of the Statute of Limitations to the Continued Performance of the Challenged Agreements

The Court construed the Second Circuit's holding in *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979), to allow every new purchase of branded Aggrenox after the 2008 Agreements to restart the limitations period for plaintiffs' "overcharge" claims. The Court relied on language from *Berkey* referring to overcharge damages, which it interpreted to create a categorical rule in antitrust purchaser cases. Order at 13.

But unlike in this case, in *Berkey*, the conduct that gave rise to the overcharge claims was the ongoing, active exclusionary actions of a monopolist (Kodak). The *Berkey* court therefore did not address whether alleged overpayments that are merely the "inertial consequences" of a discrete agreement or transaction will always restart the statute of limitations. *Z Techs.*, 753 F.3d at 600. Moreover, *Berkey* grounded its conclusion that plaintiffs' claims were timely on a speculative damages exception that is not at issue here. 603 F.2d at 295-96. While this Court indicated that this discussion of speculative damages does not limit *Berkey*'s holding, the leading antitrust treatise has suggested precisely the opposite view. *See* Areeda & Hovenkamp, Antitrust Law ¶ 320c4 (discussing this "limiting language" which would prevent *Berkey* from "conflict[ing] with numerous decisions of other circuits holding that a 'continuing violation' tolls the statute of limitations only if the acts that are alleged to continue the violation are sufficiently independent of the initial unlawful act").

---

Hatch-Waxman 30-month stay should represent the accrual date for their claims. As covered in the earlier briefing, such an argument is pretextual, and indeed was contradicted by the original complaints Plaintiffs themselves filed here (which asserted the ANDA approval date as the accrual date). Mem. at 22-25 (ECF No. 149-1); Reply Mem. at 3-5 (ECF No. 163). If this Court intended to adopt Plaintiffs' "30-month stay" theory of accrual, Defendants request leave to address why such a ruling would also qualify for review under § 1292(b).

The Court's decision to extend *Berkey* to cases involving such discrete pre-limitations conduct where there is no issue of speculative damages raises a substantial ground for difference of opinion. First, the court's broad reading of *Berkey* conflicts with authority within this Circuit, including with a case involving remarkably similar facts: an antitrust challenge by purchaser plaintiffs to a patent settlement that was publicly disclosed more than four years before suit. *See Cipro*, 261 F. Supp. 2d at 229. Second, the decision is in tension with the Second Circuit's very recent decision in *Grimm*, in which the Court of Appeals held that the statute of limitations should bar claims where the action was commenced more than four years after a *discrete act* (there, the entry into "rigged" municipal bond investment contracts), despite the fact that the continued adherence to the bond contracts subjected victims to rigged rates over many years. Third, the decision is also in tension with the decisions of other circuits that, like *Grimm*, rejected efforts by plaintiffs (including *purchasers*) to extend limitations periods indefinitely beyond the four-year period prescribed by Congress.

**1. Several Courts Within This Circuit Have Held that Claims Arising from Discrete Events Over Four Years Before the Filing of a Complaint Are Time-Barred**

Courts within this Circuit have long recognized that the continuing violations theories – such as the theory that every purchase of an alleged overcharged product can restart the limitations clock – are "heavily disfavored" and specifically have held that a "'mere[] . . . reaffirmation of a previous act'" should not restart the limitations period. *Cipro*, 261 F. Supp. 2d at 219, 228; *see also Vitale v. Marlborough Gallery*, 1994 WL 654494, at *5 (S.D.N.Y. July 5, 1994) ("[C]ourts in this Circuit 'consistently have looked unfavorably on continuing violation arguments.'").

Significantly, in *Cipro*, Judge Trager held that the statute of limitations barred claims brought by *purchasers*, including "third party payors," who alleged that they had "been forced to pay supra-competitive prices" for a brand drug as a result of a claimed reverse payment patent settlement. *Cipro*, 261 F. Supp. 2d at 212, 219, 230. The court held that payments "contemplated by, and needed to implement, the fixed terms of the challenged agreements" did not extend the limitations period. *Id.* at 229. Thus, while this Court indicated that decisions within the Circuit rejecting the continuing violations exception were "either not antitrust cases" or "did not examine the issue . . . of purchasers alleging ongoing overcharges" (Order at 13), *Cipro* is in fact an antitrust case where the court rejected purchasers' overcharge claims as untimely. The decision, which like the claims here involved a challenge to a patent settlement that was fully disclosed to the public, is not reconcilable with this Court's application of *Berkey*.

Other courts within this Circuit have also not interpreted *Berkey* to establish the categorical rule recognized by this Court. *See Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 349-50, 352-53 (D. Vt. 2010) (applying ongoing overcharge theory to conspiracy claims because they were paired with allegations of ongoing "threats, retaliation and punishment of dairy farmers . . . within the limitations period," but rejecting theory for other conspiracy claims having no claims of ongoing *conduct*, holding that "[n]o reasonable reading of *Berkey Photo*" would support the plaintiffs' expansive interpretation). Such an intra-Circuit split of authority demonstrates that there is a substantial ground for disagreement on the issue and strongly supports granting Defendants' motion to certify an interlocutory appeal. *See, e.g.*, *Rothstein v. GMAC Mortg., LLC*, No. 12 Civ. 3412(AJN), 2014 WL 1329132, at *2 (S.D.N.Y. Apr. 3, 2014) (certifying an interlocutory appeal where "two courts in this district" had reached a different result on a question of law).

**2. The Second Circuit Recently Held that Mere Adherence to a Contract Does Not Restart the Limitations Period**

Recent authority from the Second Circuit also raises a substantial ground for disagreement concerning this Court's reading of *Berkey*. In *Grimm*, the Second Circuit distinguished between the acts necessary to maintain a price-fixing conspiracy (which could justify starting a new limitations period) and inertial consequences flowing from an act outside the limitations period (which did not reset the clock). *See Grimm*, 738 F.3d at 503-04. The Antitrust Division alleged that defendants had conspired to rig bids for municipal bond interest contracts, so as to obtain artificially deflated interest rates. The bond interest contracts were entered more than four years prior to the government's action, but the government argued that victims continued to pay "fixed" interest rates within the limitations period and asserted that the limitations period was restarted every time such "rigged" interest rates were paid. *Id.* at 503, 508. The Second Circuit squarely rejected the government's argument for extending the statute of limitations, holding that "a conspiracy ends notwithstanding the receipt of anticipated profits where [] the payoff merely consists of a lengthy, indefinite series of ordinary, typically noncriminal, unilateral actions . . . and there is no evidence that any concerted activity posing the special societal dangers of conspiracy is still taking place." *Id.* at 502 (internal quotation marks and emphasis omitted).

Though *Grimm* was a criminal antitrust case, in the civil antitrust cases brought by *purchasers* in parallel to the *Grimm* criminal case, Judge Marrero has twice found the antitrust claims time-barred, where purchasers filed complaints more than four years after the rigged bond contracts were entered – despite the fact that the purchasers continued to receive rigged rates. *See Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 519-20, 522 (S.D.N.Y. 2009) (purchaser plaintiffs' claims were "based upon events that occurred outside of the statute

of limitations period" and therefore barred);[8] *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 811 F. Supp. 2d 910, 914 (S.D.N.Y. 2011) (dismissing on statute of limitations grounds later-filed purchaser plaintiff Sherman Act antitrust claims based on the specific derivatives at issue in *United States v. Grimm*).

In *Grimm*, the Second Circuit rejected the idea that merely carrying out the terms of an earlier event restarts the limitations period; while the *consequences* of discrete agreements may be "ongoing," a challenged agreement does not become a "continuing violation" absent "*[c]ontinuity of action* to produce the unlawful result or '*continuous co-operation* of the conspirators to keep it up.'" *Grimm*, 738 F.3d at 503-04 (emphasis added). There is therefore substantial ground for difference of opinion as to whether the Second Circuit would apply its reasoning to a purchaser action of the kind at issue here. Defendants submit that there is substantial reason to believe that the Court of Appeals would apply the reasoning of *Grimm* to these circumstances. Among other things, there would be no conflict with *Berkey* since, as discussed, *Berkey* involved ongoing, not discrete, conduct where speculative damages were at issue. And to the extent the Second Circuit might find tension between the two decisions, there is good reason to believe it would adopt a narrow reading of *Berkey* rather than of *Grimm*.

As the authors of the leading antitrust treatise note, there is a trend in modern cases "toward increased strictness against plaintiffs who knew or should have known of a violation but delayed bringing their suit." Areeda & Hovenkamp at ¶ 320a. A claim will be barred when not brought in the limitations period when the nature of the claim is "open and notorious," especially

[8] *See also Hinds Cnty. Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 398 (rejecting continuing violation argument: "Although [Purchaser] Plaintiffs are correct that a new overt act will restart the applicable statute of limitations, "the commission of a 'separate and new overt act' [there, later-entered interest contracts] will not permit the plaintiff to recover for the injury caused by the old overt acts that do not fall within the limitations period.'").

when the plaintiff is "sophisticated." *See also World Wrestling Entm't v. Jakks Pac., Inc.*, 328 F. App'x 695, 698 (2d Cir. May 19, 2009) (dismissing time-barred antitrust claims when "joint nature" of anti-competitive conduct "was open and notorious"). The Areeda and Hovenkamp treatise stresses that "publicly announced joint ventures" are especially compelling for immediate triggering of the four-year statute of limitations. Areeda & Hovenkamp at ¶ 320a. Here, there is no dispute that a press release was issued, that the trade press carried numerous articles, and that class action plaintiffs actually filed an antitrust lawsuit in 2009 based on the announcement of the 2008 Agreements. Mem. at 12, 14-15, Attachment 3, 4 (ECF No. 149-1); Hanstead Aff., Exs. E-V (ECF No. 149-2); Reply Mem. at 2 (ECF No. 213).

### 3. Other Courts Have Also Rejected Plaintiffs' Efforts to Restart Limitations Periods

Outside the Second Circuit, other Courts of Appeal have also required active conduct within the limitations period, and have refused to allow limitations periods to be extended indefinitely for challenges arising from a discrete event. This conflicting authority further supports certification of an interlocutory appeal. *See In re WorldCom*, 2003 WL 22953644, at *6 (granting certification even absent a conflict within the Circuit where "a handful of courts elsewhere have reached a different conclusion").

In a recent case involving a purchaser's claim of overcharge arising from an alleged anticompetitive corporate acquisition, the Sixth Circuit applied reasoning consistent with *Grimm* in finding the claim time barred. *Z Techs.*, 753 F.3d at 598-600. The Sixth Circuit rejected plaintiffs' effort to restart the limitations period for each overcharge allegedly arising from the discrete event (the acquisition) which had closed more than four years prior to the filing of the complaint. *Id.* at 603. The Court held that the strong interests in repose, and in raising antitrust challenges to widely publicized agreements or transactions as early as possible, precluded

current, and by the Court's reasoning even future, purchasers from bringing suit more than four years after the discrete event or transaction was entered – even though any claimed "overcharges" would have continued. *See id.*

Similarly, the District of Minnesota also recently held that *purchaser* plaintiffs could not extend the limitations period due to sales made pursuant to an allegedly anticompetitive arrangement. *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2664 ADM/SER, 2014 WL 943224, at *7 (D. Minn. Mar. 11, 2014) ("Where a defendant's continued sales under an anticompetitive arrangement merely enforces the initial, unabated arrangement, the sales do not constitute a continuing violation.").

Other courts have similarly held that alleged consequences arising out of past discrete conduct, such as the mere adherence to the terms of a contract, do not restart the limitations period. For example, the Eighth Circuit has held that neither "performance of [pre-limitations] contracts during the limitations period," nor receiving payments under such contracts, constitutes a "new and independent act" sufficient to "restart the period." *Varner v. Peterson Farms*, 371 F.3d 1011, 1019-20 (8th Cir. 2004) ("Performance of the alleged anticompetitive contracts during the limitations period is not sufficient to restart the period.").[9] Other Circuit courts have reached similar conclusions. *See, e.g., Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1053, 1056 (5th Cir. 1982) (receipt of benefits under fixed

[9] *See also, e.g., Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 270-71 (8th Cir. 2004) ("[T]he statute of limitations begins to run from the initial violation where defendants are accused of attempting to monopolize by passively implementing anti-competitive policies . . . ."); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052 (8th Cir. 2000) ("[a]cts that 'simply reflect or implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations''") (citations omitted); *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 586-87 (8th Cir. 1987) (no overt act in furtherance of refusal to deal where plaintiff did not request to deal during the limitations period and reaction to request "was merely the residual effect of the earlier refusal to deal").

contract "were merely 'the abatable but unabated inertial consequences of some pre-limitations action'");[10] *Grand Rapids Plastics v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999) ("individual payments" under an existing contract "were only a manifestation of the previous agreement" and "therefore do not constitute a 'new and independent act,'[] as required to restart the statute of limitations" (internal quotation marks omitted));[11] *see also, e.g.*, *Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir. 1984) (challenge to corporate acquisition that closed more than four years before suit commenced was time-barred despite claimed ongoing harm, because "the impact of events leading up to the sale became final at that time and any subsequent harm must be seen as the 'unabated inertial consequence[]' of the earlier events").[12]

---

[10] *See also, e.g.*, *RX.com v. Medco Health Solutions, Inc.*, 322 F. App'x 394, 397 (5th Cir. Apr. 22, 2009) (internet pharmacist claims against pharmacy benefits managers for being excluded from their networks barred when the exclusion had clearly occurred more than four years prior to filing, plaintiff had complained to FTC around that time, and there was no evidence of reiteration of refusal to admit defendants during limitations period); *Al George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1274 (5th Cir. 1991) (there must be "some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action"); *United Farmers Agents Assoc. v. Farmers Ins. Exch.*, 892 F. Supp. 890, 912 (W.D. Tex. 1995) ("continuing conduct within the limitations period which merely furthers the initial antitrust violation" not a continuing violation).

[11] *See also, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) (holding that if mere adherence to a travel agent commission policy was a continuing overt act it would render limitations period effectively "infinite"); *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) (continuing violation doctrine did not apply to alleged conspiracy to restrain trade and discriminate against plaintiff in favor of other defendants because adverse impact felt by alleged conspiracy was a "rippling effect into the future" and plaintiffs did not allege that "overt acts causing their injuries" occurred within the limitations period); *Barnosky Oils, Inc. v. Union Oil Co. of Calif.*, 665 F.2d 74, 81-82 (6th Cir. 1981) ("That Barnosky may have suffered, and Union may have benefitted, from the consequences of Union's conduct during the limitations period does not render the act a continuing violation of the antitrust laws."); *Trane U.S., Inc. v. Meehan*, 563 F. Supp. 2d 743, 759 (N.D. Ohio 2008) (continuing violation theory did not apply because enforcement actions are not "independent of the policy they aim to enforce").

[12] *See also, e.g.*, *United States v. Colon-Munoz*, 192 F.3d 210, 228 (1st Cir. 1999) (repayment of loan taken to fund conspiracy was not continuing violation: "[a] conspiracy does not continue indefinitely simply because the fruits of the conspiratorial objective continue into the future"); *United States v. Doherty*, 867 F.2d 47, 61-62 (1st Cir. 1989) (receipt of inflated salary payments resulting from promotions secured through conspiracy did not restart the limitations period; to hold otherwise would "extend[] the conspiracy statute of limitations indefinitely"); *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423,

The same is true here. As the Second Circuit made clear in *Grimm*, when defendants enter into a contract outside the limitations period, adherence to the contract's terms does not extend the limitations period, regardless of whether the contract is claimed to violate the Sherman Act. Rather, mere performance of a contract is the quintessential "reaffirmation of a previous act." *Varner*, 371 F.3d at 1019.

#### 4. The Existence of Conflicting Authority Underscores the Need for Appellate Guidance

To be sure, as this Court noted, some district courts have construed the statute of limitations more broadly than Defendants submit is appropriate under cases such as *Grimm*, *Cipro*, *Z-Techs*, and others. *See* Order at 13 (citing *Niaspan, Buspirone,* and *Skelaxin*). But the existence of conflicting authority – from district courts both within and outside this Circuit – only reinforces the need for immediate appellate guidance. *See, e.g.*, *In re Worldcom*, 2003 WL 22953644, at *6 (certification of interlocutory appeal warranted when "a handful of courts elsewhere have reached a different conclusion and at least one member of the Second Circuit has indicated a possible disagreement with this Court's ruling").

### C. An Immediate Appeal "Would Materially Advance the Ultimate Termination of the Litigation"

A ruling by the Second Circuit that the claims are barred by the statute of limitations would materially advance the litigation, because it would result in the dismissal of all of the asserted federal claims. *See, e.g., Rothstein*, 2014 WL 1329132, at *3 (certifying order for interlocutory appeal when "reversal on the issue sought to be appealed would result in dismissal of th[e] litigation" and "some of th[e] protracted litigation might be avoided by an immediate

443 (D. Mass. 2013) (even though payments under an agreement were made "over time," the alleged wrongful conduct of imposing an assessment "was a one-time event").

appeal"). Indeed, "timeliness determinations, which go directly to the plaintiff's ability to maintain some or all of its claims, are precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure." *Fed. Housing Fin. Agency,* 858 F. Supp. 2d at 337. Here, if the Second Circuit concludes that claims filed more than four years after entry of the settlement (or even more than four years after Barr received final FDA approval) were untimely, then it would terminate the DPPs' claims in their entirety.

A ruling in Defendants' favor on the federal claims would also dispose of almost all of the pending state law claims. Twenty-seven of IPPs' state antitrust claims remain pending after the March 23 Order, twenty-four of which have statute of limitation periods of four years or less. Twenty-nine of Humana's state antitrust claims remain pending after the March 23 Order, twenty-six of which have statute of limitation periods of four years or less.

### D. Guidance from the Second Circuit Is Particularly Important Here Given the Likelihood this Issue Will Recur and the Strong Public Interest in Encouraging Antitrust Challenges to Settlements to Be Brought Promptly

Granting interlocutory review is particularly appropriate where the issue as to which appellate review is sought is one of public importance and is likely to recur. *See Am. Geophysical Union v. Texaco, Inc.*, 802 F. Supp. 1, 30 (S.D.N.Y. 1992) (granting interlocutory appeal where "there is a strong public interest in having prompt appellate review;" explaining that "[t]he shared interests of large research corporations and the publishing community would be importantly served by an immediate appeal, clarifying these questions"); *In re Microsoft Litig.*, Civ. JFM-05-1087, 2005 WL 2063954, at *1 (granting motion for interlocutory review "particularly in light of the fact that it is strongly in the interest of the public and in the interest of the parties to manage this litigation (which arises from events that occurred many years ago) in an efficient manner").

That is the case here. The proper application of limitations periods in cases such as these, arising from a discrete transaction or event that is widely publicized, is of great importance to the litigants, courts, and the public. Encouraging settlement, including in the patent context, is an important public and institutional policy issue for the courts.[13] To the public, there is also strong interest in greater clarity as to when challenges like this must be initiated. Limitations issues often arise from transactions as to which there is great public interest, e.g., mergers and acquisitions in any number of industries, *Z Techs.*, 753 F.3d at 596 (acquisition challenged involving oxidate business and assets); *Berkson*, 743 F.2d at 54-55 (purchase of fruit plantations), and transactions involving intellectual property rights in high tech industries, *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1201-02 (9th Cir. 2014).

While considerations of repose underlying statutes of limitation are always significant, "it is especially important that antitrust challenges be timely made, thus minimizing the social costs of any antitrust violation *but* giving the parties repose for conduct that is lawful." Areeda & Hovenkamp at ¶ 320a (emphasis added). Requiring any challenge in an antitrust case to be brought promptly is essential because "assessing antitrust consequences is often difficult, and reasonable minds might differ on that question." *Id.* (noting that prompt challenge in antitrust cases also important because "tests of legality are often rather vague, . . . many business practices

[13] *See Bano v. Union Carbide Corp.* 273 F.3d 120,129-30 (2d Cir. 2001) (noting that "it is axiomatic that the law encourages settlement of disputes" and explaining that if the court were to allow action covered by previous settlement agreement to proceed then the court would "fail to vindicate the reasonable expectations of [the defendant]" and "also risk undermining the ability of defendants generally to gauge in advance the finality of settlements . . . ."); *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856-57 (2d Cir. 1998) ("Where a case is complex and expensive, and resolution of the case will benefit the public, the public has a strong interest in settlement."); *see also Sanofi-Aventis v. Apotex, Inc.*, 659 F.3d 1171, 1180 (Fed. Cir. 2011) ("The law strongly favors the settlement of all litigation, including patent disputes."); *In re Loestrin 24 Antitrust Litig.*, 45 F. Supp. 3d 180, 192 (D.R.I. 2014) (explaining that both the *Actavis* majority and dissent "suggest that public policy favors the settlement of patent litigation").

can be simultaneously efficient and beneficial to consumers but also challengeable, . . . liability doctrines change and expand, . . . damages are punitively trebled, and . . . duplicate treble damages for the same offense may be threatened").

And, of course, prompt challenge is all the more desirable with respect to "publicly announced" acts, as distinguished from concealed conduct such as a price-fixing scheme. *Id.* As the Second Circuit has recognized, exceptions to the limitations periods are frowned upon where the alleged conduct "was open and notorious, and a reasonable person – especially a sophisticated party such as plaintiff – would have investigated and brought suit within the statute of limitations period." *World Wrestling Entm't*, 328 F. App'x at 698; *see also, e.g.*, *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 315-16 (6th Cir. 2007) (statute of limitations ran on claim when material relevant facts were "highly publicized" and reported throughout the nation). This case – where the challenged agreements were clearly known to purchaser Plaintiffs long before they brought suit (so much so that several of the same plaintiffs and counsel actually brought an action in 2009 challenging the same agreements under a conflicting theory) – is an ideal vehicle for raising this issue with the Court of Appeals.

Finally, appellate guidance is desirable because the issue is likely to recur. As the Court is well aware, in the wake of *Actavis*, purchaser challenges to pharmaceutical patent settlements have been proliferating, and statute of limitations defenses have been asserted in many of those cases. And there is every reason to believe that, as here, plaintiffs in those cases will attempt to use *Actavis* to challenge agreements entered many years earlier – under a legal regime where they were considered clearly lawful.

In short, the public interest strongly favors Second Circuit guidance at this juncture.

## II. THE COURT SHOULD GRANT CERTIFICATION ON THE APPLICATION OF SECTION 4 OF THE CLAYTON ACT TO PRIVATE ANTITRUST ACTIONS CHALLENGING PATENT SETTLEMENTS

The Court appears to have held that, in a private antitrust action under Section 4 of the Clayton Act – as opposed to a government action under Section 5 of the FTC Act (which was the type of case considered by the Supreme Court in *Actavis*) – Plaintiffs can properly state a claim without alleging sufficient well-pleaded facts to show that the alleged antitrust violation was the actual and proximate cause of any actual injury to them. Order at 14-18.

Both government plaintiffs and private plaintiffs, when bringing antitrust claims, must show that the challenged conduct amounts to a substantive antitrust violation, such as an agreement that unreasonably restrains trade. But, in addition to making that showing, private plaintiffs face additional burdens that a government plaintiff does not. Most importantly here, Section 4 of the Clayton Act requires a private plaintiff (as distinguished from a government plaintiff such as the FTC) to plead and prove but-for causation – that is, that the claimed wrongdoing actually caused it harm – to prevail in an antitrust case seeking damages. 15 U.S.C. § 15 ("[A]ny person who shall be injured . . . *by reason of* anything forbidden in the antitrust laws may sue therefor . . . .") (emphasis added); s*ee also, e.g.*, *Balaklaw v. Lovell*, 14 F.3d 793, 797 n.9 (2d Cir. 1994) (Section 4 requires a "causal connection" between challenged conduct and the antitrust injury) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-45 (1983)).

In other words, "[a] mere showing by the private plaintiff of a violation of the antitrust laws has no actionable significance because, while in a government action there need be established only an antitrust violation, a private litigant must not only show the violation of the antitrust laws, but show also the impact of the violations upon him, *i.e.*, some injury (or

threatened injury where injunctive relief only is sought) proximately resulting from the antitrust violation." *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 369 F. Supp. 316, 327 (M.D.N.C. 1973), supplemented, 380 F. Supp. 976 (M.D.N.C. 1974) (internal quotations omitted); *see also, e.g.*, *In re Flonase Antitrust Litig.*, 798 F. Supp. 2d 619, 629 n.9 (E.D. Pa. 2011) ("The causation requirement under the FTC Act is broader than that [for private actions] under the Clayton Act and does not require a showing that the defendants' conduct proximately caused harm to consumers."); *F.T.C. v. Hope Now Modifications, LLC*, 09 1204 (JBS/JS), 2010 WL 1463008 (D.N.J. Apr. 12, 2010) ("[T]he FTC is not obligated to show that the defendants' conduct proximately caused harm to consumers.").

Plaintiffs claim here that the BI/Barr settlement violates Sections 1 and 2 of the Sherman Act (as well as state laws). That is a substantive liability issue, similar to what the Supreme Court addressed in *Actavis*. But, in addition, plaintiffs claim that, by setting the generic entry date at July 1, 2015, the 2008 Agreements *caused* a delay in the entry of Barr's generic – in other words, absent the 2008 Agreements, the theory goes, Barr *would have* entered before July 1, 2105. In order to do this with the factual plausibility required by *Twombly*, Plaintiffs would have to plausibly assert facts establishing, at a minimum, that Barr would have been able to enter earlier than July 1, 2015 without violating BI's rights in the '577 patent.[14]

---

[14] Even if Plaintiffs could show that, absent this agreement, Barr could have lawfully come to market on an earlier date without violating BI's patent rights, Plaintiffs will have to address other causation issues as well. For example, Plaintiffs would have to show that Barr also would have been in a position to produce commercial quantities of its generic (consistent with FDA's demanding quality and consistency requirements). Courts have dismissed cases for failure to establish this aspect of causation as well. *See Twin Cities Bakery Workers Health & Welfare Fund v. Biovail Corp.*, No. Civ.A. 01-2197(JR), 2005 WL 3675999, at *3 (D.D.C. Mar. 31, 2005) (chain of causation "too speculative" when manufacturer's generic experienced "testing failures and manufacturing problems"), *aff'd* 553 F.3d 857 (D.C. Cir. 2008). There will be a number of other causation issues to address as the case proceeds. Defendants do not understand the Court's decision concerning patent matters to implicate such additional causation issues.

The Court acknowledged that Plaintiffs' allegations regarding Barr's ability to enter earlier without violating BI's rights in the '577 patent were "spars[e]" and "relatively bare." Order at 18. Nonetheless, the Court held that although Defendants' points regarding such sparsity might be "logically compelling . . . in isolation" (Order at 14), the case should not be dismissed because, under the Court's view of *Actavis*, the merits of the '577 patent may not have to be considered:

> The defendants by expecting the plaintiffs to plead with specificity reasons to infer that the '577 patent would ultimately have been invalidated, appear to presume that the Supreme Court in Actavis favored a rule that required litigating the patent's merits, at least in some abbreviated fashion, in order to determine whether a settlement violates the antitrust law.

*Id.* at 15. But, according to the Court, the Supreme Court "expressly disclaimed" that proposition in *Actavis*. *Id.* at 16. This Court seems to have held that under *Actavis* even private plaintiffs do not need to prove causation in a case such as this one – at least to the extent of proving that Barr would have been able to enter earlier without violating BI's rights in the '577 patent.

In reaching this result, the Court focused solely on the substantive requirements of *Actavis* (is the challenged agreement an unreasonable restraint on trade?), and did not discuss the separate causation requirement of Section 4 of the Clayton Act (even assuming an antitrust violation, did it actually inflict harm on these plaintiffs, and by how much?). As a result, the Court seems to have collapsed the liability and causation standards.

### A. The Application of Section 4 of the Clayton Act Presents a "Controlling Question of Law"

As noted, Section 4 of the Clayton Act requires a private plaintiff to establish both (a) the defendants' conduct violated the antitrust laws, and (b) that a causal connection between the challenged conduct and the claimed injury. Courts routinely dismiss private antitrust claims

where a plaintiff has failed to plead or prove causation under Section 4, even assuming a substantive violation of the Sherman Act. *See, e.g.*, *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 41 (2d Cir. 1986) (noting that "[c]ausation in fact is, of course, a necessary element of any claim for relief under Section 4 of the Clayton Act" and upholding summary judgment dismissal for failure to show "that injuries alleged would not have occurred *but for* [defendant's] antitrust violation") (emphasis in original); *World Wrestling Entm't Inc. v. Jakks Pac. Inc.*, 425 F. Supp. 2d 484, 519-20, 522-23 (S.D.N.Y. 2006) (dismissing antitrust claim for failure to plead causation under Section 4, recognizing that even assuming that plaintiff "pled a *per se* violation of § 1" plaintiff was not relieved from pleading actual injury under the Clayton Act); *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1041 (9th Cir. 2009) (plaintiff's challenge to reverse payment settlement failed where settlement found unlawful, but plaintiff could not establish that generic entry was in fact "delayed").

Despite this body of case law under Section 4, the March 23 Order appears to interpret *Actavis* as abrogating the Section 4 requirements for private plaintiffs in reverse payment cases, dispensing with the requirement that they plead and prove that the challenged conduct caused them actual injury. The Court took language from *Actavis* bearing on the standards for determining whether a substantive violation occurred (for which, according to the Supreme Court, a determination of the patent merits may not be necessary), and seemingly interpreted this language from *Actavis* as *also* establishing that, in a private claim subject to Section 4, a plaintiff can establish causation without alleging and proving how the patent did not block earlier entry. This decision presents a controlling question of law. If the Second Circuit disagrees and finds that the Section 4 requirements should be treated as distinct from and additional to those of the substantive standard (*Actavis*), then Plaintiffs' antitrust claims should be dismissed given their

entirely conclusory (or, as the Court put it, "sparse") nature.

**B. The Second and Third Elements for Immediate Appellate Review Are Satisfied Here as Well**

Second Circuit review is appropriate here as well because there exists substantial ground for difference of opinion over the Court's resolution of the injury issue, and appellate resolution of this issue may materially advance the ultimate termination of this litigation.

This Court's apparent use of the substantive antitrust standard – *i.e.*, the standard by which one determines whether the challenged conduct unreasonably restrains trade – as the test for determining whether Plaintiffs have satisfied Section 4 is in tension with decisions from around the country. As noted, courts routinely dismiss claims where a substantive antitrust violation has been pled (or proven) but the private plaintiff has not pled (or proven), pursuant to Section 4, that the violation *caused* it harm.[15]

In a closely related context, in *Kaiser Foundation Health Plan, Inc. v. Abbott Laboratories, Inc.*, the district court held that an alleged reverse payment settlement was unlawful – under the then-applicable substantive standard, the court found the settlement a *per se* violation of the Sherman Act. But the plaintiff was nonetheless required to plead and prove (under Section 4) that, absent the settlement, the generic would have entered sooner, *i.e.*, that the generic firm would have entered earlier in the face of patent litigation and/or whether it would have been in a position to produce the generic in commercial quantities sooner. 552 F.3d at

[15] *See, e.g.*, *Argus*, 801 F.2d at 40-41 (conduct was held to be an antitrust violation in previous decision and defendant "was collaterally estopped to deny the violation of Section 1" but court held that there was insufficient evidence to show that plaintiffs' claims of lost profits "would not have occurred *but for* [defendant's] antitrust violation") (emphasis in original); *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1111 (6th Cir. 1989) (court assumed that there was a substantive violation of the antitrust laws but dismissed complaint for failure to allege antitrust injury because "the anticompetitive act . . . did not cause the plaintiff's alleged injury"); *Jakks*, 425 F. Supp. 2d at 519-20, 522-23 (even assuming a *per se* violation of § 1, plaintiffs complaint was dismissed for failure to plead causation under Section 4).

1041. The Ninth Circuit affirmed a jury verdict for defendants when plaintiffs were unable to establish that the generic firm would or could have entered sooner than provided in the settlement. *Id.* at 1043.

This Court's ruling is in tension with the above authority, in which courts treat substantive antitrust standards as distinct from the independent requirements of Section 4.[16] *See* Ian Simmons, *et al.*, *Viewing FTC v. Actavis Through the Lens of Clayton Act Section 4*, 28 Antitrust 24 (Fall 2013) (Section 4 requires *private* plaintiffs to establish what would have happened absent settlement, a distinct requirement from *Actavis* reasonableness inquiry). There is substantial ground for difference of opinion.

And, given that Section 4 provides a distinct requirement for a private antitrust plaintiff, if the Second Circuit disagrees with the March 23 Order, then the antitrust claims should be dismissed in light of Plaintiffs' "sparse" pleading. This would materially advance the ultimate termination of the litigation.

### C. Guidance from the Second Circuit Is Particularly Important Given the Proliferation of Private Class Actions Challenging Patent Settlements

As the Court is well aware, private class action suits challenging pharmaceutical patent settlements are proliferating around the country. There is no appellate-level guidance on the interplay between Section 4 of the Clayton Act and the substantive requirements of *Actavis*, and the parties would benefit from guidance from the Second Circuit on this issue. *Cf. In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 627 (7th Cir. 2010) (where the relevant Supreme Court

---

[16] The FTC has acknowledged the difference between the substantive antitrust violation, and a private plaintiff's need to prove causation. *See Matter of Schering-Plough Corp.*, 136 F.T.C. 956, 995 (2003) ("In a private action for damages" FTC acknowledged that courts need to consider whether the settlement "ultimately cause[d] consumer harm"; FTC had no such obligation), *rev'd on other grounds*, *Schering-Plough Corp.*, 402 F.3d 1056 (11th Cir. 2005).

authority is new, 1292(b) review is further justified). This case would provide an ideal vehicle for the Second Circuit to provide such guidance.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court certify its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: April 2, 2015

Respectfully submitted,

/s/ J. Mark Gidley
J. Mark Gidley (pro hac vice)
Peter J. Carney (pro hac vice)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Robert A. Milne (pro hac vice)
Jack E. Pace III (pro hac vice)
Alison Hanstead (pro hac vice)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Richard P. Colbert (ct 08721)
DAY PITNEY LLP
One Canterbury Green
201 Broad Street
Stamford, CT 06901
Telephone: (203) 977-7300
Facsimile: (203) 977-7301

*Counsel for Defendants Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim International GmbH, and Boehringer Ingelheim Pharma GmbH & Co. KG*

Christopher T. Holding
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231

James T. Shearin (ct 01326)
PULLMAN & COMLEY, LLC
850 Main St., Po Box 7006
Bridgeport, CT 06601-7006
Telephone: (203) 330-2000

*Counsel for Defendants Teva Pharmaceuticals USA, Inc., Barr Pharmaceuticals Inc. (n/k/a Barr Pharmaceuticals, LLC), Duramed Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.), and Duramed Pharmaceuticals Sales Corp. (n/k/a Teva Sales and Marketing, Inc.)*

**Certificate of Service**

I hereby certify that on the 2nd day of April 2015, I did send a true copy of the within Memorandum of Law in Support of Defendants' Motion to Certify the March 23, 2015 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) **by electronic means (ECF)** to all counsel of record in MDL No. 2516.

By: */s/ J. Mark Gidley*

J. Mark Gidley (ct 22743)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for Defendants Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim International GmbH, and Boehringer Ingelheim Pharma GmbH & Co*