IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: AGGRENOX ANTITRUST LITIGATION | Docket No. 3:14 MD 2516 (SRU) |
| THIS DOCUMENT RELATES TO:<br><br>HUMANA INC.,<br><br>                Plaintiff,<br>    v.<br><br>BOEHRINGER INGELHEIM PHARMA GmbH & CO. KG; BOEHRINGER INGELHEIM INTERNATIONAL GmbH; BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.; BARR PHARMACEUTICALS, INC. (n/k/a BARR PHARMACEUTICALS, LLC); BARR LABORATORIES, INC.; DURAMED PHARMACEUTICALS, INC. (n/k/a TEVA WOMEN'S HEALTH INC.); DURAMED PHARMACEUTICALS SALES CORP.; and TEVA PHARMACEUTICALS USA, INC.,<br><br>                Defendants. | Docket No. 3:14-cv-00572 (SRU)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**SECOND AMENDED COMPLAINT**

Plaintiff Humana Inc. ("Humana"), for its Second Amended Complaint ("Complaint") against Defendants Boehringer Ingelheim Pharma GmbH & Co. KG, Boehringer Ingelheim International GmbH, Boehringer Ingelheim Pharmaceuticals, Inc. (collectively, "Boehringer"); Barr Pharmaceuticals, Inc. (n/k/a Barr Pharmaceuticals, LLC) and Barr Laboratories, Inc. (collectively, "Barr"); Duramed Pharmaceuticals Inc.(n/k/a Teva Women's Health Inc.) and Duramed Pharmaceuticals Sales Corp. (collectively "Duramed"); Teva Pharmaceuticals USA, Inc. ("Teva USA") (Boehringer, Barr, Duramed and Teva USA are herein collectively referred to as "Defendants"); alleges as follows based on: (a) first-hand knowledge; (b) the investigation of Humana's undersigned counsel; and (c) information and belief:

## I. NATURE OF THE ACTION

1.      Pursuant to FED. R. CIV. P. 10(b)-(c), Humana adopts by reference Paragraphs 1 to 11 of its First Amended Complaint filed June 16, 2014, ECF No. 93 ("First Amended Complaint").[1]

## II. JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under 15 U.S.C. § 26 and 28 U.S.C. §§ 1331 and 1337. Humana asserts claims for relief arising under the laws of the United States, including under Section 16 of the Clayton Act, 15 U.S.C. § 26.

3.      Humana adopts by reference Paragraphs 13 to 15 of its First Amended Complaint.

## III. PARTIES

4.      Humana is a Delaware corporation, with its principal place of business at 500 West Main Street, Louisville, Kentucky. Humana provides prescription drug benefits to more

---

[1] With respect to all paragraphs incorporated by reference to Humana's First Amended Complaint, all references to "Teva" are to be read as referring to Teva USA only, and all references to "Defendants" are to be read as including only the Defendants named in this Second Amended Complaint (*i.e.* not including Teva Pharmaceutical Industries, Ltd.).

1

than five million people throughout the United States through the following managed care subsidiaries: Arcadian Health Plan, Inc., CarePlus Health Plans, Inc., Cariten Health Plan Inc., Cariten Insurance Company, CHA HMO, Inc., Emphesys Insurance Company, Humana AdvantageCare Plan, Inc., Humana Benefit Plan of Illinois, Inc., Humana Employers Health Plan of Georgia, Inc., Humana Health Benefit Plan of Louisiana, Inc., Humana Health Company of New York, Inc., Humana Health Insurance Company of Florida, Inc., Humana Health Plan of California, Inc., Humana Health Plan of Ohio, Inc., Humana Health Plan of Texas, Inc., Humana Health Plans of Puerto Rico, Inc., Humana Health Plan, Inc., Humana Insurance Company, Humana Insurance Company of Kentucky, Humana Insurance Company of New York, Humana Insurance of Puerto Rico, Inc., Humana Medical Plan of Pennsylvania, Inc., Humana Medical Plan of Utah, Inc.,[2] Humana Medical Plan, Inc., Humana Regional Health Plan, Inc., Humana Wisconsin Health Organization Insurance Corporation and M.D. Care, Inc. Humana's subsidiaries have assigned the claims pleaded herein to Humana.

5. Humana adopts by reference Paragraphs 17 to 20 of its First Amended Complaint.

6. Defendant Teva USA, Inc. is a Delaware corporation with its principal place of business at 1090 Horsham Road, P.O. Box 1090, North Wales, Pennsylvania 19454. Teva USA is a subsidiary of Teva Pharmaceutical Industries, Ltd., a corporation organized and existing under the laws of Israel ("Teva Israel"). Teva USA is the largest generic drug company by sales volume in the United States.

7. Humana adopts by reference Paragraphs 23 to 26 of its First Amended Complaint.

8. The actions taken by Defendants as described herein are part of, and were taken in furtherance of, the unlawful scheme alleged. All such actions were authorized,

---

[2] Humana Medical Plan of Utah, Inc. is a Utah corporation with its principal place of business in Sandy, Utah.

ordered, and/or done by the Defendants' officers, agents, employees, or other representatives while engaged in the management of the Defendants' affairs (or the affairs of Defendants' predecessors-in-interest) within the course and scope of their duties and employment, and/or with the actual, apparent, and/or ostensible authority of the Defendants.

## IV. REGULATORY AND ECONOMIC BACKGROUND

### A. The Hatch-Waxman Act and FDA Approval Process

9. Humana adopts by reference Paragraphs 29 to 40 of its First Amended Complaint.

### B. The Economic Model of Prescription Drug Purchases and Sales

10. Humana adopts by reference Paragraphs 41 to 48 of its First Amended Complaint.

## V. FACTUAL ALLEGATIONS CONCERNING DEFENDANTS' ANTITRUST CONSPIRACY AND RESTRAINTS OF TRADE

### A. Barr's ANDA and Boehringer's Patent Infringement Suit

11. Humana adopts by reference Paragraphs 49 to 52 of its First Amended Complaint.

### B. Barr and Boehringer's Illegal Scheme to Thwart Generic Competition

12. Humana adopts by reference Paragraphs 53 to 72 of its First Amended Complaint.

### C. Boehringer Has Admitted that the Continuing Payments Under the Agreements Were Consideration for Barr's Agreement to Delay the Launch of Its Generic

13. Humana adopts by reference Paragraphs 73 to 76 of its First Amended Complaint.

### D. Barr's Agreement To Delay Competition For Aggrenox In Exchange For Reverse Payments Was Consistent With Its Historical Practices

14. Humana adopts by reference Paragraphs 77 to 85 of its First Amended Complaint.

## VI. ANTICOMPETITIVE EFFECTS

15. Humana adopts by reference Paragraphs 86 to 88 of its First Amended Complaint.

### VII.  EFFECTS ON INTERSTATE COMMERCE

16.     Humana adopts by reference Paragraphs 89 to 91 of its First Amended Complaint.

### VIII.  MARKET POWER AND RELEVANT MARKET

17.     Humana adopts by reference Paragraphs 92 to 104 of its First Amended Complaint.

### IX.  ANTITRUST INJURY

18.     Humana adopts by reference Paragraphs 105 to 109 of its First Amended Complaint.

### X.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### For Conspiracy and Combination in Restraint of Trade Under State Laws

19.     Humana adopts the preceding paragraphs by reference.

20.     In 2008, Boehringer, Barr and Duramed entered into the Reverse Payment Agreements to suppress generic competition with Aggrenox. Teva USA joined and continued the unlawful agreement to suppress generic competition. The Reverse Payment Agreements are contracts, a combination, and/or a conspiracy that substantially, unreasonably, and unduly restrained trade in every state and territory in the United States, the purpose and effect of which was to:

  a. Allocate all sales of Aggrenox and/or generic Aggrenox in the United States to Boehringer until at least July 1, 2015;

  b. Delay the availability of a generic equivalent of Aggrenox in the United States until July 1, 2015;

  c. Enable Boehringer to charge supra-competitive prices for Aggrenox; and

4

   d. Enable Barr to charge supra-competitive prices for generic Aggrenox if and when it is launched on or after July 1, 2015.

21. The Reverse Payment Agreements have harmed and continue to harm Humana.

22. The Reverse Payment Agreements allocate 100% of the relevant market and harm competition.

23. The Reverse Payment Agreements are a horizontal market allocation and price fixing agreement between actual and potential competitors and are illegal under state antitrust laws.

24. There is and was no legitimate, non-pre-textual, pro-competitive business justification for the Reverse Payment Agreements that outweighs their harmful effect. Even if there were such a justification, the Reverse Payment Agreements are and were broader than necessary to achieve any pro-competitive purpose.

25. The Defendants' conduct violated, and continues to violate, the following state antitrust laws:

   a. Arizona Rev. Stat. §§ 44-1402, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Arizona since April 28, 2010.

   b. Cal. Bus. Code §§ 16700, *et seq.*, and Cal. Bus. Code §§ 17200, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in California since April 28, 2010.

   c. D. C. Code Ann. §§ 28-4502, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in the District of Columbia since April 28, 2010.

   d. Haw. Rev. Stat. § 480-1, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Hawaii since April 28, 2010.

e. 740 Ill. Comp. Stat. 10/3, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Illinois since April 28, 2010.

f. Iowa Code § 553.2, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Iowa since April 28, 2010.

g. Kan. Stat. Ann. §§ 50-101, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Kansas since April 28, 2011.

h. Me. Rev. Stat. Ann. 10, § 1101, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Maine during the Relevant Period.

i. Mich. Comp. Laws Ann. §§ 445.772, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Michigan since April 28, 2010.

j. Minn. Stat. §§ 325D.51, *et seq.*, and Minn. Stat 8.31, et seq., with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Minnesota since April 28, 2010.

k. Miss. Code Ann. §§ 75-21-3, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Mississippi since April 28, 2011.

l. Neb. Code Ann. §§ 59-801, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Nebraska since April 28, 2010.

m. Nev. Rev. Stat. Ann. § 598A.060, *et seq.*, with respect to purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Nevada by Plaintiff, who paid/will pay substantially higher prices for 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in actions and transactions occurring substantially within Nevada since April 28, 2010.

n. N.H. Rev. Stat. Ann. §§ 356, 356:2, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in New Hampshire since April 28, 2010.

o. N.M. Stat. Ann. §§ 57-1-1, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in New Mexico since April 28, 2010.

p. N.Y. Gen. Bus. Law § 340, *et seq.*, with respect to Plaintiff's purchases of

        200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in New York since April 28, 2010.

q. N.C. Gen. Stat. §§ 75-1, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in North Carolina since April 28, 2010.

r. N.D. Cent. Code §§ 51-08.1-02, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in North Dakota since April 28, 2010.

s. Or. Rev. Stat. §§ 646.705, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Oregon since April 28, 2010.

t. R.I. Gen. Laws §§ 6-36-4, *et seq.*, (as amended by 2013 R.I. Pub. Laws, ch. 365), with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Rhode Island on or after July 15, 2013.

u. S.D. Codified Laws Ann. §§ 37-1-3.2, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in South Dakota since April 28, 2010.

v. Utah Code Ann. §§ 76-10-911, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Utah since April 28, 2010.[3]

w. Tenn. Code Ann. §§ 47-25-101, *et seq.*, with respect to purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Tennessee by Plaintiff, in that the actions and transactions alleged herein substantially affected Tennessee, whereby Plaintiff paid and will continue to pay substantially higher prices for 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules at Tennessee pharmacies since April 28, 2011.

x. Vt. Stat. Ann. tit. 9, §§ 2453, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Vermont during the Relevant Period.

y. W.Va. Code §§ 47-18-3, *et seq.*, with respect to Plaintiff's purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in West Virginia since April 28, 2010.

---

[3] Humana Medical Plan of Utah, Inc. ("Humana Utah"), a Utah corporation with its principal place of business in Sandy, Utah, is a subsidiary of Plaintiff Humana, and has assigned the claims pleaded in this Complaint to Humana. Humana Utah has purchased 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Utah since April 28, 2010.

7

  z. Wis. Stat. §§ 133.03, *et seq.*, with respect to purchases of 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules in Wisconsin by Plaintiff, in that the actions and transactions alleged herein substantially affected and continue to affect the people of Wisconsin, whereby Plaintiff paid and will continue to pay substantially higher prices for 200 mg extended release dipyridamole / 25 mg acetylsalicylic acid capsules at Wisconsin pharmacies during the Relevant Period.

26. Humana purchased Aggrenox in each of these states.

27. As a direct and proximate result of Defendants' violations of the above state antitrust laws, Humana has been injured and will continue to be injured by being forced to pay higher prices for brand name Aggrenox, and eventually generic Aggrenox, than it would have paid if Defendants had not illegally delayed generic competition in violation of these state antitrust laws. These injuries are of the type the above state antitrust laws were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

28. Defendants are jointly and severally liable for all injuries suffered by Humana.

29. Humana seeks damages and multiple damages as permitted by law for the injuries it suffered because of the Defendants' anticompetitive conduct, and permanent injunctive relief to terminate Defendants' anticompetitive practices alleged in this Complaint.

## SECOND CLAIM FOR RELIEF
### Unfair and Deceptive Practices Under Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA")

30. Humana adopts the preceding paragraphs by reference.

31. Humana has purchased Aggrenox in Florida since April 28, 2010, and continues to purchase Aggrenox in Florida through the present.

32. Indirect purchasers of products that have suffered economic injury with respect to such purchases as a result of a defendant's violation of FDUTPA have a private civil right of action under FDUTPA to recover their damages. Fla. Stat. § 501.211(2). *See Mack v. Bristol-*

*Myers Squibb, Co.*, 673 So. 2d 100, 104–10 (Fla. Dist. Ct. App. 1st Dist. 1996).

33.     Violations of FDUTPA include violations of antitrust laws. *Mack*, 673 So. 2d at 104. By their conduct described herein in violation of antitrust laws, Defendants have engaged in unfair competition or unfair or deceptive acts or practices while conducting trade or commerce in violation of FDUTPA, with respect to Humana's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Florida, since April 28, 2010.

34.     As a direct and proximate result of this conduct in violation of FDUTPA, Humana has been injured and will continue to be injured by being forced to pay higher prices for brand name Aggrenox, and eventually generic Aggrenox, than it would have paid if Defendants had not illegally delayed generic competition in violation of FDUTPA.

35.     Defendants are jointly and severally liable for all injuries suffered by Humana.

36.     Humana seeks damages, plus attorney's fees and costs, as permitted by law for the injuries it suffered because of the Defendants' violation of FDUTPA, and permanent injunctive relief to terminate Defendants' anticompetitive practices alleged in this Complaint.

### THIRD CLAIM FOR RELIEF
**Unfair and Deceptive Practices Under Massachusetts Consumer Protection Act, Mass. Gen. L. Ch. 93A §§ 1-11 ("MCPA")**

37.     Humana adopts the preceding paragraphs by reference.

38.     Humana has purchased Aggrenox in Massachusetts since April 28, 2010, and continues to purchase Aggrenox in Massachusetts through the present.

39.     Indirect purchasers of products that have suffered economic injury with respect to such purchases as a result of a defendant's violation of the MCPA have a private civil right of action under MCPA to recover their damages. Mass. Gen. L. Ch. 93A §§ 9, 11. *See Ciardi v. F. Hoffmann La Roche, Ltd.*, 762 N.E.2d 303, 306, 311–14 (Mass. 2002).

40. Violations of MCPA include violations of antitrust laws. *Ciardi*, 762 N.E.2d at 309–12. By their conduct described herein in violation of antitrust laws, Defendants have engaged in unfair competition or unfair or deceptive acts or practices while conducting trade or commerce in violation of the MCPA, with respect to Humana's purchases of 200 mg extended-release dipyridamole / 25 mg acetylsalicylic acid capsules in Massachusetts, since April 28, 2010.

41. As a direct and proximate result of this conduct in violation of MCPA, Humana has been injured and will continue to be injured by being forced to pay higher prices for brand name Aggrenox, and eventually generic Aggrenox, than it would have paid if Defendants had not illegally delayed generic competition in violation of the MCPA.

42. Defendants are jointly and severally liable for all injuries suffered by Humana.

43. Humana seeks damages and multiple damages, plus attorney's fees and costs, as permitted by law for the injuries it suffered because of the Defendants' violation of the MCPA, and permanent injunctive relief to terminate Defendants' anticompetitive practices alleged in this Complaint.

### **FOURTH CLAIM FOR RELIEF**
**Injunctive Relief Pursuant to Section 16 of the Clayton Act for Defendants' Violations of Section 1 of the Sherman Act**

44. Humana re-alleges the preceding paragraphs as though set forth herein.

45. Humana's allegations described herein and in the preceding Counts comprise violations of Sections 1 of the Sherman Act, in addition to the state laws depicted above.

46. Humana seeks permanent injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to end forever the anticompetitive market effects caused by the Defendants' unlawful conduct, and other relief to ensure that similar

anticompetitive conduct does not reoccur in the future.

47. Humana has no adequate alternative form of relief in the United States for its overpayment for Aggrenox purchased indirectly in the states that do not provide damages remedies to indirect purchasers injured by anticompetitive conspiracies.

### FIFTH CLAIM FOR RELIEF (PLEADED TO PRESERVE APPELLATE RIGHTS FOR DISMISSED CLAIMS)

**Unfair and Deceptive Practices Under State Laws**

48. Humana adopts by reference paragraphs 139 to 147, 150 to 152, 154, and 156 to 180 of its First Amended Complaint.

49. These claims were dismissed in the March 23, 2015 Decision and Order, ECF No. 229, and are re-pleaded to preserve Humana's appellate rights. *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004).

### SIXTH CLAIM FOR RELIEF (PLEADED TO PRESERVE APPELLATE RIGHTS FOR DISMISSED CLAIMS)

**Restitution for Unjust Enrichment**
**(Fifty States and the District of Columbia, Except Ohio and Indiana)**

50. Humana adopts by reference paragraphs 181 to 195 of its First Amended Complaint.

51. These claims were dismissed in the March 23, 2015 Decision and Order, ECF No. 229, and are re-pleaded to preserve Humana's appellate rights. *See P. Stolz*, 355 F.3d at 96.

### XI.   DEMAND FOR JUDGMENT

WHEREFORE, Humana respectfully prays that the Court:

A. Enter Judgment against Defendants jointly and severally in favor of Humana;

B. Adjudge and decree the acts alleged herein, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201(a), to be in violation of the laws identified above;

11

      C.      Award Humana actual damages and multiple damages or punitive damages where available by law in an amount to be determined at trial;

      D.      Permanently enjoin the Defendants from continuing their unlawful conduct, to stop their illegal conduct and assure that similar anticompetitive conduct does not occur in the future;

      E.      Award Humana its costs of suit, including reasonable attorneys' fees as provided by law; and

      F.      Grant any such other further relief to which Humana may be entitled and/or is necessary to correct the anticompetitive effects caused by the unlawful conduct of Defendants and as the Court deems just and/or equitable.

## XII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Humana demands a trial by jury on all issues so triable.

Dated: April 13, 2015
White Plains, New York

                                              LOWEY DANNENBERG COHEN
                                              & HART, P.C.

                                       By: /s/ Peter D. St. Phillip
                                                  Peter D. St. Phillip (District of Connecticut
                                                  Bar No. ct29379)
                                                  Richard W. Cohen (admitted pro hac vice)
                                                  Gerald Lawrence (admitted pro hac vice)
                                                  Uriel Rabinovitz (admitted pro hac vice)
                                                  Noelle Ruggiero (admitted pro hac vice)
                                                  One North Broadway
                                                  White Plains, New York 10601
                                                  Tel.: 914-997-0500
                                                  Fax: 914-997-0035
                                                  pstphillip@lowey.com

                                                  RAWLINGS & ASSOCIATES PLLC
                                                  Mark D. Fischer
                                                  Robert Griffith
                                                  One Eden Way
                                                  LaGrange, KY 40031-8100
                                                  Telephone: 502-587-1279

                                                  *Attorneys for Plaintiff Humana Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2015, a copy of the foregoing Second Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: April 13, 2015    Respectfully Submitted,

/s/ Noelle Ruggiero
Noelle Ruggiero
LOWEY DANNENBERG COHEN
& HART, P.C
One North Broadway
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
nruggiero@lowey.com