UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE AGGRENOX ANTITRUST
LITIGATION

No. 3:14-md-2516 (SRU)

THIS DOCUMENT RELATES TO:
INDIRECT-PURCHASER ACTIONS

<u>**MEMORANDUM OF DECISION AND ORDER**</u>

On March 23, 2015, I issued a decision on several motions to dismiss in this complex

multidistrict litigation ("MDL"). *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224 (D.

Conn. 2015) (doc. # 229) (hereinafter "March 23 Order"). I later expanded upon and clarified

some aspects of that decision in an order granting a motion to certify it for interlocutory appeal

under 28 U.S.C. § 1292(b). *See In re Aggrenox Antitrust Litig.*, 2015 WL 4459607 (D. Conn.

July 21, 2015) (doc. # 311) (hereinafter "July 21 Order").[1] The March 23 Order included many

subsidiary rulings so its holding was somewhat complicated, *see* 94 F. Supp. 3d at 257–58, but

the relevant portion for present purposes is that the motions to dismiss indirect-purchaser actions

were granted in part and denied in part.

At that time, the indirect-purchaser actions included two complaints: the putative-class

complaint of indirect-purchaser plaintiffs ("IPPs," though they style themselves end-payor

plaintiffs or EPPs), and a complaint filed by Humana, a large indirect purchaser and opt-out from

the putative class. Humana and the IPPs filed amended complaints, though they only actually

amended certain portions while leaving others unmodified, re-pleading them merely "to preserve

appellate rights." The defendants filed motions to dismiss the amended complaints (doc. ## 290,

291), and I heard oral argument on them, but I took the motions under advisement in part

---

[1] The Second Circuit declined to hear the interlocutory appeal (doc. # 362).

because new actions were being added to the MDL that appeared likely to raise common issues that could efficiently be taken up together.

There are now seven operative complaints in this case, which were filed respectively by: (1) direct-purchaser putative-class plaintiffs ("DPPs") (doc. # 105/109); (2) IPPs (doc. # 263); (3) Humana (doc. # 239); (4) Walgreen plaintiffs[2] (doc. # 340); (5) Rite Aid plaintiffs[3] (doc. # 341) (the Walgreens and Rite Aid plaintiffs are generally referred to collectively as the "retailer plaintiffs"); (6) Louisiana Health Service Indemnity Co., d/b/a BlueCross/BlueShield of Louisiana ("Louisiana Health," though they style themselves "BCBSLA"); and (7) CVS Pharmacy, Inc.[4]

After oral argument on a motion to dismiss the retailer plaintiffs' complaints, which pertained principally to the assignment of rights from (direct-purchaser) wholesalers to (indirect-purchaser) retailers, I denied the motion from the bench (doc. # 338).[5] I later held oral argument on a motion to dismiss Louisiana Health's complaint and took the motion under advisement. The motions to dismiss that remain pending are therefore the motion to dismiss the IPPs' amended complaint (doc. # 290), the motion to dismiss Humana's amended complaint (doc. # 291), and the motion to dismiss Louisiana Health's complaint (doc. # 374). Those motions involve many of the same or related issues, and each of them is granted in part and denied in part, as follows.

---

[2] Walgreen Co., The Kroger Co., Safeway Inc., HEB Grocery Company L.P., Albertson's LLC.

[3] Rite Aid Corporation, and Rite Aid Hdqtrs. Corp.

[4] CVS might naturally be regarded as part of the "retailer plaintiffs" group, but that phrase in earlier filings does not directly refer to it because its case was not yet part of the MDL. It has, however, agreed to be bound by the pertinent earlier rulings (doc. # 465).

[5] On the issue of the assignment of claims from wholesalers to retailers, I expressed my general agreement with the opinion that was issued on July 17, 2015 by United States District Judge William H. Orrick. *See United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 2015 WL 4397396 (N.D. Cal. July 17, 2015). I denied the motion to dismiss for essentially the same reasons described in that opinion.

## I.      Standard of Review

The Rule 12(b)(6) motions to dismiss for failure to state a claim are of course reviewed by the same familiar standard that I applied and described at greater length in the March 23 Order. I accept the material facts alleged in the complaints as true, draw all reasonable inferences in favor of the plaintiffs, and decide on a claim-by-claim basis whether it is plausible that the plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). To survive a motion to dismiss, claims must be supported by factual allegations that are "enough to raise a right to relief above the speculative level" and with "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted).

## II.     Reasserted Dismissed Claims

The IPPs and Humana included without substantive revision in their amended complaints some claims[6] that I dismissed in the March 23 Order. They have reasserted them for the asserted purpose of preserving their rights on appeal and do not challenge the defendants' renewed motions to dismiss them, except by incorporating by reference their arguments opposing the first motions to dismiss. I do not believe repleading claims was necessary to preserve appellate rights

---

[6] The defendants list those claims reasserted by the IPPs in the defendants' memorandum in support of their motion to dismiss the amended IPP complaint (doc. #290-1 at 24); and they list those claims reasserted by Humana in the defendants' memorandum in support of their motion to dismiss Humana's amended complaint (doc. # 291-1 at 16–17).

3

and reassert my dismissal of those claims, granting the defendants' motions to dismiss them to the same extent and for the same reasons as described in the March 23 Order.

## III.    Injunctive Relief

The IPPs, Humana, and Louisiana Health all plead claims for injunctive relief, and the defendants move to dismiss them on the same basis that they moved to dismiss similar claims pleaded by the retailer plaintiffs. The defendants argue that the claims for injunctive relief are moot, because there is nothing left to enjoin: the challenged agreements were made in 2008, and even if they did unlawfully delay the entry of Aggrenox generics to the market, those generics have now in fact entered (and have been on the market since July 2015). The plaintiffs therefore can seek damages for alleged overcharges already incurred, but they cannot plead ongoing harm or a credible threat of future harm and thus cannot need (or even stand to benefit from) an injunction. The plaintiffs argue somewhat vaguely about the ongoing threat that the generics could be removed from the market (though they plead no plausible factual basis to justify that concern) and assert that even if the generics are not removed, the injunctive claims are not moot because I have the authority (and ought to exercise it) to enjoin bad actors from committing other similar bad acts in the future.

Now that generic entry has occurred, the plaintiffs' arguments for an injunction are thin, and the defendants have a strong argument to dismiss those claims.[7] In some other circumstances that argument might be still more persuasive. But as I observed from the bench when I denied the motion to dismiss the retailer plaintiffs' complaints, as a practical matter, the stakes of this argument in this case are exceedingly low. This case is not about injunctive relief, which is at

---

[7] I also recognize that Judge Orrick agreed with that argument and dismissed essentially similar claims for injunctive relief in *United Food & Commercial Workers*, 2015 WL 4397396, which is the opinion with which I agreed in substantial part (on the separate issue of assignment of claims) when I denied the motion to dismiss the retailer plaintiffs' complaints.

best a peripheral issue, and the case will proceed with those claims or without them. If they turn out *not* to be moot (however miniscule the risk), it will be significant to have wrongly dismissed them. But if they are indeed moot, as the defendants plausibly argue, then they will fall by the wayside and will not be pursued at trial, and their ongoing inclusion at this stage will not prejudice any party in any way. I therefore deny the motions to dismiss claims of injunctive relief.

## IV.   Louisiana Health

As an initial matter, I reassert the reasoning and the holdings of the March 23 Order and the July 21 Order, as applied to Louisiana Health's claims and the motion to dismiss them. To the extent that the defendants renew arguments that I rejected in those orders, I reject them again. Notably, I adhere to my ruling on the significance of *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979), which is discussed at length in the March 23 Order, 94 F. Supp. 3d at 237–39, and in the July 21 Order.  In short, "a purchaser suing a monopolist for overcharges in injured anew by each overcharge," *id.* at 238, and "[c]laims are therefore not time-barred that stem from alleged overcharges incurred within the relevant statutory period, whatever that period may be for a particular statute, measured backward from the filing of the claims." *Id.* at 248.[8]

I similarly adhere to other rulings from the earlier orders, and make new rulings relating to Louisiana Health's claims, as follows.

### A.   Consumer Protection and Unjust Enrichment Claims

Louisiana Health has pleaded—quite like the other indirect purchasers pleaded— essentially undifferentiated claims under the separate consumer-protection laws of fifteen states

---

[8] There is, however, a caveat that *Berkey Photo* applies *federal* antitrust law, so I apply the same reasoning to state law only "[i]n the absence of any argument that the legislatures or courts of any particular states reject the reasoning in the *Berkey Photo* analysis . . . as it would apply to their particular statutes." 94 F. Supp. 3d at 248.

in its Count Eight. It also pleads generic unjust enrichment as its Count Nine, without even

listing the jurisdictions whose law(s) it invokes. It treats all of those laws—which may or may

not be materially different from each other, and which may or may not protect against the

particular harms that antitrust law addresses—as simple surrogates for antitrust law, with very

little elaboration. I held in the March 23 Order that:

> The indirect purchasers and Humana have *listed* claims under very
> many state laws, but they have not truly *pleaded* claims under
> those laws sufficient to show their entitlement to recovery under
> them, as required by Rule 8. *See Iqbal*, 556 U.S. at 678, 129 S.Ct.
> 1937 ("A pleading that offers labels and conclusions or formulaic
> recitation of the elements of a cause of action will not do.").
> Rather, they have pleaded federal antitrust claims and the factual
> foundation for them, viable under [*FTC v.*] *Actavis*, [133 S. Ct.
> 2223 (2013),] and they merely allege that those claims are also
> actionable under general consumer-protection laws and as unjust
> enrichment.

94 F. Supp. 3d at 255. Louisiana Health's complaint is no better on this score than the other

complaints, and I therefore adhere to that ruling. The motion to dismiss is similarly "granted with

respect to all such claims, without prejudice to repleading in nonconclusory fashion." *Id.* at 256.

B.  Rhode Island

A basic and complicating feature of all indirect-purchaser antitrust actions is the rule of

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). In that case, as I wrote in the March 23 Order,

"the Supreme Court held that only the overcharged direct purchaser, and no one else in the chain

of distribution, can recover damages under federal antitrust law." 94 F. Supp. 3d at 248. The

Court gave indirect purchasers an opening, however, in *California v. ARC America Corp.*, 490

U.S. 93 (1989), where it held that *Illinois Brick* "does not prevent indirect purchasers from

recovering damages under state antitrust laws where the state laws otherwise allow it (and many

states have passed so-called '*Illinois Brick* repealers' in order to do so)." 94 F. Supp. 3d at 248.

A recurring issue in this case, therefore, is whether the *Illinois Brick* rule applies to the antitrust law of particular states.

I noted in the March 23 Order that "Rhode Island was an *Illinois Brick* state until its legislature enacted a repealer on July 15, 2013." *Id.* at 252. The parties disputed whether that repealer should be applied retroactively, and I concluded that it should not. I adhere to that ruling with respect to Louisiana Health, and hold that its "claims under the Rhode Island antitrust statute alleging overcharges before July 15, 2013 are dismissed," *id.* at 253, but that the motion to dismiss Rhode Island antitrust claims is denied with respect to alleged overcharges incurred from that date forward.

C. <u>Louisiana Antitrust and Consumer Protection Claims</u>

Louisiana has not passed an *Illinois Brick* repealer and there appears to be no authoritative statement from Louisiana's courts that the logic of *Illinois Brick* does not apply to the state's own antitrust law. Louisiana Health argues that the logic of requiring a repealer is flawed, because *Illinois Brick* was only concerned with federal antitrust law. Though it is true that the Supreme Court in *Illinois Brick* was interpreting federal law, I adhere to the reasoning of the March 23 Order that "[i]n the absence of a clear decision—by either the legislature or by the jurisdiction's own courts—to allow indirect-purchaser recovery, the antitrust laws of a state (or territory) are interpreted as presumptively consistent with federal law." 94 F. Supp. 3d at 252. Louisiana is of course free to depart from federal antitrust law and allow indirect-purchaser recovery under its own law, but I cannot conclude that it has done so unless and until Louisiana's legislature or courts clearly say that it has done so.

Louisiana Health filed a notice of supplemental authority (doc. # 483), alerting me to a decision from a Louisiana trial judge that appears to allow indirect-purchaser recovery under

Louisiana antitrust law,[9] but it does so by means of a one-sentence decision that simply adopts the plaintiff's brief as its reasons. It also appears to conflict with the decision of another Louisiana trial judge,[10] and with the decisions of several federal courts, including the Fifth Circuit Court of Appeals. *See, e.g.*, *Free v. Abbott Laboratories, Inc.*, 176 F.3d 298, 300–01 (5th Cir. 1999); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 170 (D. Me. 2004); *In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 27 (D. Mass. 2004); *FTC v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 6–7 (D.D.C. 1999). I agree with Louisiana Health that none of those decisions is authoritative or binding on me, but they follow the same approach I am following and come to the same conclusion.

The same reasoning applies to claims under the Louisiana Unfair Trade Practices Act. Louisiana Health pleaded that claim as a separate count (Count Six) from the omnibus count of various state consumer-protection claims (Count Eight) discussed above, and it suffers the same infirmity of assuming the non-obvious proposition that a generic consumer-protection statute reaches the same conduct reached by antitrust law and can therefore act as surrogate for it. But more significantly, even if that proposition is correct and any antitrust claim can also be brought under consumer-protection law, that formality of pleading cannot avoid the rule of *Illinois Brick*. If Louisiana's law redundantly allows the same antitrust claim to be brought under multiple laws, the *Illinois Brick* rule will nevertheless apply until an authoritative statement of Louisiana's legislature or courts says otherwise. Indirect-purchaser claims under Louisiana antitrust and consumer-protection law are therefore dismissed.

---

[9] *State of Louisiana v. SmithKline Beecham Corp.*, No. 636,032, 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, Sec. 25 (May 17, 2016).
[10] *State of Louisiana v. AstraZeneca AB, et al.*, No. 637,960, 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, Sec. 22  (Mar. 18, 2016).

D.  Kansas

The defendants point out that Kansas antitrust law prohibits only combinations and conspiracies to monopolize and not monopolistic behavior by single parties, and they therefore move to dismiss Louisiana Health's claim under Kansas law to the extent it is a simple monopolization claim rather than a conspiracy-to-monopolize claim. It is obvious that the salient allegations in this case (and in any reverse-payment case) are allegations of an unlawful agreement between at least two parties. Kansas antitrust law would appear to reach such conduct (to the extent that any antitrust law reaches it), and the motion to dismiss a claim under that law is therefore denied.

**V.  Various State Claims**

A.  Illinois Antitrust and Consumer Protection Claims

The defendants move to dismiss the IPPs' and Louisiana Health's claims under the Illinois Consumer Fraud Act on the dual grounds that that statute does not reach antitrust conduct and that the plaintiffs have not sufficiently pleaded a consumer nexus. The defendants also move to dismiss the IPPs' claims under the Illinois Antitrust Act, on the basis that that statute does not permit indirect-purchaser class actions unless they are brought by the Illinois Attorney General.

1.  *Illinois Antitrust Act and* Shady Grove

The Illinois Antitrust Act provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of the State's Attorney General." 740 Ill. Comp. Stat. 10/7(2). It is not obvious that the formulaic expression "in any court of this State" appearing in an Illinois statute applies to a federal court in Connecticut, but if it does, the statute potentially raises a *Shady Grove*

problem. In the March 23 Order, I briefly discussed *Shady Grove Orthopedic Associates v. Allstate Ins. Co.*, 559 U.S. 393 (2010), as follows:

> [T]he Supreme Court held that Rule 23 applied in federal court to claims brought under New York law despite New York's general class action bar. It is difficult to isolate a holding in *Shady Grove* that is much broader than that, because the holding was announced by Justice Scalia in an opinion that garnered a majority only in part and a plurality in part. The fifth vote for the judgment was provided by Justice Stevens, who wrote a separate concurrence. When no single rationale garners a majority, the holding of the Court is "that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). The indirect purchasers argue for an expansive application of Justice Scalia's opinion, which would broadly eliminate state class-action restrictions in federal court. The defendants argue that the holding is narrowed by the scope of Justice [Stevens's] concurrence, which would allow state procedural rules to control in federal court when they are "part of a State's framework of substantive rights or remedies." *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring).

94 F. Supp. 3d at 253–54. I declined to "wade any deeper into the difficult problem of what part of the reasoning in *Shady Grove* is or is not controlling," *id.* at 254, because I was not able to conclude on the basis of the arguments that were before me that the answer would have made a difference for the particular state law then in question. The same issue arises now in the context of Illinois law, and the parties make the same arguments as before.

The Second Circuit has not taken up the problem of the effect of *Shady Grove*'s split opinions, but the defendants point out that most of the lower courts that have done so—including in this district—have concluded that the Stevens concurrence controls. *See, e.g.*, *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 115–18 (D. Conn. 2014) (collecting cases and concluding that the Stevens concurrence controls). *But see 3M Co. v. Boulter*, 842 F. Supp. 2d 85, 95 n.7 (D.D.C. 2012) (rejecting the argument that the Stevens concurrence controls). I have some doubt, however, that those courts are correct. The *Marks* doctrine—that is, the doctrine that in a split

10

decision the controlling rationale is that taken by the Justices who concur in the judgment on the narrowest grounds—works "only when one opinion is a logical subset of other, broader opinions. In essence, the narrowest opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment." *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991). The Stevens concurrence is "narrower" than the position of the other Justices who made up the *Shady Grove* majority only in the sense that it would reject state procedural rules in fewer cases. It is not logically narrower, however, because it is not a logical subset of the opinion of the other Justices in the majority. Those Justices do not implicitly approve of its rationale for sometimes allowing state procedural rules to control—on the contrary, they explicitly reject that rationale—and it therefore does not represent the common denominator of the Court's reasoning.

The courts that have taken the Stevens concurrence to be controlling have generally not addressed that problem. At least one court took the Stevens approach to form the "narrowest grounds" not because it represents the common denominator of the judgment but because it "was consistent with [the] approach of the four members of the dissent." *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 675 (E.D. Pa. 2010). In other words, even though Stevens joined the majority to hold that Rule 23 trumps New York's class-action bar, he agreed with the dissent that *some* state procedural rules—when sufficiently intertwined with the state's substantive rights and remedies—can control in federal court. The *Wellbutrin* Court infers from that agreement that there were five votes for Stevens's approach. The problem is that no other Justice joined his concurrence, and even if we nevertheless infer agreement, the common denominator of a concurrence and a dissent does not support the judgment. It is, in effect, *Marks*-doctrine dicta rather than *Marks*-doctrine holding.

11

It does not follow, of course, that the stricter view represented by the Scalia plurality controls: the portions of Scalia's opinion with which Stevens did not agree did not garner a majority. So it may be that in a case where a state procedural rule is part of the state's framework of substantive rights, there simply is no controlling Supreme Court holding, and that *Marks*-doctrine dicta is the most persuasive guide.

The defendants argue that the indirect-purchaser class-action bar in the Illinois Antitrust Act is just such a procedural rule. A few courts, including the *Wellbutrin* Court, agree—because the bar is part of and applies only to the antitrust law rather than being a separate and generally applicable procedural provision, and because, in the view of those courts, it "appear[s] to reflect a policy judgment about managing the danger of duplicative recoveries." 756 F. Supp. 2d at 677. Those points are well taken, but I respectfully disagree that they are sufficient to alter the scope of a substantive right or remedy, because any indirect purchaser procedurally blocked from participation in a class action would still have the same remedy in an individual action. It may be true that many indirect purchasers will decide not to bother, and that fact could have a profound effect on the defendants' total liability. But that was also true in *Shady Grove*, which "transform[ed] a $500 case into a $5,000,000 award." 559 U.S. 393, 436 (2010) (Ginsburg, J., dissenting).

In sum, I cannot square *Shady Grove*'s allowance of a Rule 23 class action despite New York's class-action bar with the *dis*allowance of a Rule 23 class action in the case of Illinois's class-action bar simply on the basis that Illinois's bar is narrower. It is narrower because its application is limited to indirect-purchaser antitrust claims, and that does tie it more specifically to particular substantive rights; but if New York's state-law bar is not a procedural rule that alters

12

the scope of a substantive right or remedy, then the narrower scope of Illinois's state-law bar does not make it one that does. I therefore deny the motion to dismiss claims under the Illinois Antitrust Act. This issue will no doubt surface again later in this litigation. Perhaps by then we will have clearer guidance about the applicability of *Shady Grove*.

> 2. *Illinois Consumer Protection Claims*

The IPPs and Louisiana Health plead claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, which provides that "[u]nfair methods of competition and unfair or deceptive acts or practices ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. § 505/12. The defendants argue that because indirect purchasers are not consumers—whom that statute protects from fraud and deception—they must plead a sufficient "consumer nexus" in order for their claims under the statute to survive. That may be so, but even if the IPPs and Louisiana Health were able to plead such a nexus, I agree with the *Wellbutrin* Court (which held in an earlier opinion than the one already cited above) that "plaintiffs may not assert what are essentially antitrust claims in the guise of a claim under the Illinois consumer protection statute." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 162 (E.D. Pa. 2009).

The allegations in this case are antitrust allegations, plainly and clearly, and the "allegations of consumer fraud overlap entirely with the allegations of anticompetitive conduct." *Id.* The Supreme Court of Illinois has reasoned that "[t]here is no indication that the legislature intended that the Consumer Fraud Act be an additional antitrust enforcement mechanism. The language of the Act shows that its reach was to be limited to conduct that defrauds or deceives

consumers or others. The title of the Act is consistent with its content." *Laughlin v. Evanston Hosp.*, 133 Ill. 2d 374, 390 (1990).

At least one court has distinguished *Laughlin* as preventing the use of the consumer-protection statute to reach antitrust conduct only when the antitrust law provides no remedy (that is, it prevents the use of the consumer-protection law as an end-run around limitations on the antitrust law). *See Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1046–48 (N.D. Ill. 2007). That is consistent with the holding in *Laughlin*, but the *Laughlin* Court nevertheless used the broader language doubting whether the consumer-protection statutes were "an additional antitrust enforcement mechanism" at all, not merely in some class of antitrust cases. 133 Ill. 2d at 390. If the antitrust claims in this case were not cognizable under Illinois's antitrust law, then using the state's consumer-protection law in the absence of non-antitrust allegations would be an end-run around the antitrust law and would squarely violate the rule of *Laughlin*. If the antitrust claims in this case *are* cognizable under Illinois's antitrust law, then pleading claims under the state's consumer-protection law as well is duplicative and merely muddies the water, violating at least the broad dicta of *Laughlin* if not squarely violating its holding.

The plaintiffs' argument for using the consumer-protection law as a surrogate for antitrust law is essentially that the language of the consumer-protection law is so vague and so broad that it reaches any "unfair" business practice, which manifestly includes antitrust violations. By that reasoning, all antitrust claims can be brought under the consumer-protection law, and the antitrust statute is redundant. A state's highest court may authoritatively interpret its laws that way, but *Laughlin* suggests that Illinois's highest court does not. I accordingly grant the motions to dismiss claims under the Illinois Consumer Fraud and Deceptive Business Practices Act.

14

B.  California Unfair Competition Claims

The defendants move to dismiss the IPPs claims under the California Unfair Competition Law, which creates a cause of action for persons who have "has lost money or property as a result of . . . unfair competition," Cal. Bus. & Prof. Code § 17204, which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited" by the false advertising law. *Id.* § 17200.

The defendants argue that the statute requires deception and reliance, citing cases about deceptive practices and false advertising. The IPPs argue again that the statute is extremely broad and phrased in the disjunctive, and that the conduct alleged (and presumably any conceivable antitrust violation) constitutes "unfair" business practices. The problem here is the same as the problem with the Illinois claims above. This is an antitrust case, and California has antitrust law. The IPPs offer no authority for the proposition that other provisions of California law besides its antitrust law can act as surrogates for antitrust law. The motion to dismiss the IPPs claims under the California Unfair Competition Law is therefore granted.

C.  Florida Deceptive and Unfair Trade Practices Claims

The IPPs, Humana, and Louisiana Health all plead claims under the Florida Deceptive and Unfair Trade Practices Act. That statute prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. The statute does not define the proscribed methods, acts, or practices, and it is not obvious that they would reach any alleged antitrust conduct. Antitrust claims brought under that statute might therefore seem to suffer from the same infirmity discussed in the context of Illinois and California law above. The plaintiffs do, however, point to the authority of at least one Florida appellate court that has held that those

proscribed acts include antitrust violations, and therefore that the statute can be used as a surrogate for antitrust law. *See Mack v. Bristol-Myers Squibb Co.,* 673 So. 2d 100, 110 (Fla. Dist. Ct. App. 1996). I recognize the authority of Florida's appellate courts to so interpret Florida's law, and I accordingly deny the motions to dismiss claims under the Florida Deceptive and Unfair Trade Practices Act.

### D. Massachusetts Consumer Protection Claims

The IPPs, Humana, and Louisiana Health plead claims under sections nine and eleven of the Massachusetts Consumer Protection Act. Those sections, however, are mutually exclusive. Section eleven provides standing to any person "who engages in the conduct of any trade or commerce," Mass. Gen. Laws. ch. 93A, § 11, while section nine provides standing to any person "other than a person entitled to bring action under section eleven." Mass. Gen. Laws. ch. 93A, § 9. The precise meaning of "the conduct of any trade or commerce" may be slippery, but those provisions are naturally construed to make section nine exclusively applicable to consumers and section eleven exclusively applicable to business entities. *See, e.g.*, *Cont'l Ins. Co. v. Bahman*, 216 F.3d 150, 156 (1st Cir. 2000) ("Withal, section 11 affords no relief to consumers and, conversely, section 9 affords no relief to persons engaged in trade or commerce."). Where there is ambiguity, the choice between consumer and business claims under the statute "appears to turn on whether a given party has undertaken the transaction in question for business reasons, or has engaged in it for purely personal reasons (such as the purchase of an item for personal use)." *Frullo v. Landenberger*, 814 N.E.2d 1105, 1112 (Mass. App. Ct. 2004).

The difference between claims brought under sections nine and eleven is particularly consequential because of the application of the *Illinois Brick* rule. The Massachusetts Antitrust Act is "construed in harmony with judicial interpretations of comparable Federal antitrust

statutes," and thus "the rule of law established in *Illinois Brick*" applies. *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 57–58 (2002). Section eleven of the Massachusetts Consumer Protection Act "includes a specific provision that in any action brought under that section, the court shall be guided in its interpretation of unfair methods of competition by the provisions of the Antitrust Act," *id.*, and section nine does not. Thus, Massachusetts courts hold that *Illinois Brick* applies to section eleven and not to section nine.

Despite the fact that they are business entities, the IPPs, Humana, and Louisiana Health argue that they are not engaged in the conduct of any trade or commerce, and therefore can bring claims under section nine.[11] They cite *In re Pharmaceutical Industry Average Wholesale Price Litigation ("In re AWP")*, 491 F. Supp. 2d 20 (D. Mass. 2007), for the proposition that health plans are not engaged in trade or commerce when they are not motivated by a desire to make money but act within their "core mission." The District Court in that case reasoned that the party in question was a nonprofit acting pursuant to its legislative mandate rather than as a business— which the plaintiffs here do not allege of themselves—but even so, that outcome is somewhat counterintuitive, since nonprofits do act in commercial capacities and engage in trade and commerce. The First Circuit Court of Appeals did not take up the question, but affirmed the decision on other grounds and held that any errors in that analysis were harmless. *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 194 (1st Cir. 2009).

Because the IPPs, Humana, and Louisiana Health are business entities rather than consumers and have not purchased Aggrenox "for purely personal reasons (such as the purchase of an item for personal use)," *Frullo*, 814 N.E.2d at 1112, I decline to follow *In re AWP*, and I follow instead *In re Lidoderm Antitrust Litigation*, 103 F. Supp. 3d 1155, 1163 (N.D. Cal. 2015),

---

[11] Though they pleaded claims under section eleven, none of the plaintiffs appears to oppose the argument that indirect purchasers are barred by *Illinois Brick* from bringing such claims, and Humana indicates in a footnote that it is not pursuing them.

and *United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Terikoku Pharm. USA, Inc.*, 74 F. Supp. 3d 1052, 1084–85 (N.D. Cal. 2014). I hold as those courts did that the indirect purchasers are engaged in the conduct of trade or commerce and therefore cannot make claims under section nine. For the foregoing reasons, the motions to dismiss are granted with respect to all claims under the Massachusetts Consumer Protection Act.

### E.  South Carolina Unfair Trade Practices Claims

The defendants move to dismiss the IPPs claim under the South Carolina Unfair Trade Practices Act. They argue that the claim should be dismissed because the statute by its own terms does not permit class actions (it allows that a plaintiff may "bring an action individually, but not in a representative capacity." S.C. Code Ann. § 39-5-140(a)), and because the indirect purchasers should not be permitted to use that statute as an end-run around *Illinois Brick*.

I am not persuaded by the first argument, because my analysis of the effect of *Shady Grove* on the class-action bar in this statute is not materially different than the parallel analysis in the discussion of Illinois law above. But I agree that *Illinois Brick* is decisive. The rule of *Illinois Brick* appears to control in South Carolina, and the IPPs have offered no authority to the contrary. Nor have they offered any authority for the argument that the South Carolina Unfair Trade Practices Act can operate as a surrogate for antitrust law, even if the *Illinois Brick* rule did not apply. The motion to dismiss is granted with respect to the claim brought under the South Carolina Unfair Trade Practices Act.

### F.  Vermont Consumer Fraud Claims

The defendants move to dismiss Humana's claim under the Vermont Consumer Fraud Act on the basis that Humana is not a "consumer." Humana argues that it is a consumer under

the Act, because it defines that word to include, among other things, "a person who purchases . . . or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for the use or benefit of his or her business or in connection with the operation of his or her business." Vt. Stat. Ann. tit. 9, § 2451a(a).

That definition of "consumer" allows businesses to sue as consumers with respect to the products that they *use* as consumers. The fact that Humana's members are consumers, and that Humana co-purchases or reimburses for consumer products that its members use, does not make Humana a consumer of those products. Humana may be able to sue under the Vermont Consumer Fraud Act in connection with computers or office equipment of which Humana is a business consumer, but not in connection with drugs of which Humana's members are consumers. Moreover, Humana has not offered authority for the proposition that the Vermont Consumer Fraud Act reaches antitrust conduct. The motion to dismiss claims under that act is therefore granted.

## VI.    Conclusion

The defendants' motions to dismiss the IPPs' amended complaint (doc. # 290), Humana's amended complaint (doc. # 291), and Louisiana Health's complaint (doc. # 374) are granted in part and denied in part as follows:

- All claims that have been reasserted without amendment after dismissal merely to preserve appellate rights are dismissed to the same extent and for the same reasons as described in my March 23 Order;
- the motions to dismiss are denied with respect to claims for injunctive relief;
- Louisiana Health's undifferentiated claims under the consumer-protection laws of fifteen states and its generic claim of unjust enrichment are dismissed without prejudice to repleading in nonconclusory fashion within the next thirty days;
- Louisiana Health's claims under the Rhode Island antitrust statute alleging overcharges before July 15, 2013 are dismissed, but the motion to dismiss is denied with respect to alleged overcharges incurred from that date forward;

- Louisiana Health's claims under Louisiana antitrust law and the Louisiana Unfair Trade Practices Act are dismissed;
- the motion to dismiss Louisiana Health's claims under Kansas antitrust law is denied;
- the motions to dismiss claims under Illinois antitrust law are denied;
- claims under the Illinois Consumer Fraud and Deceptive Business Practices Act are dismissed;
- claims under California Unfair Competition Law are dismissed;
- the motions to dismiss are denied with respect to claims under the Florida Deceptive and Unfair Trade Practices Act;
- claims under the Massachusetts Consumer Protection Act are dismissed;
- claims under the South Carolina Unfair Trade Practices Act are dismissed; and
- claims under the Vermont Consumer Fraud Act are dismissed.

It is not necessary for any party to re-assert dismissed claims in order to preserve appellate rights. The rulings set forth in this order may be raised on appeal from a final judgment.

So ordered.

Dated at Bridgeport, Connecticut, this 9th day of August 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge