```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x

IN RE:  AGGRENOX                  :  No. 3:14-MD-2516(SRU)
ANTITRUST LITIGATION              :  915 Lafayette Boulevard
                                  :  Bridgeport, Connecticut
                                  :
                                  :  August 9, 2016
- - - - - - - - - - - - - - - - - x


              TELEPHONE STATUS CONFERENCE

B E F O R E:

    THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

   FOR THE PLAINTIFFS:

         GARWIN GERSTEIN & FISHER, LLP
              88 Pine Street, 10th Floor
              New York, New York  10005
           BY: JOSEPH OPPER, ESQ.


         KENNY NACHWALTER P.A.
              Wall Street Plaza
              1441 Brickell Avenue, Suite 1100
              Miami, Florida  33131
           BY: SCOTT E. PERWIN, ESQ.


   FOR THE DEFENDANTS:

         WHITE & CASE LLP
              1155 Avenue of the Americas
              New York, New York  10036
           BY: ROBERT A. MILNE, ESQ.


              Sharon L. Masse, RMR, CRR
                Official Court Reporter
                915 Lafayette Boulevard
             Bridgeport, Connecticut  06604
                  Tel: (860)937-4177
```

 1                 (Whereupon, the following proceedings commenced
 2     telephonically at 3:05 p.m.)
 3                 THE COURT:  Good afternoon.  This is Stefan
 4     Underhill.  I'm not going to take a roll call, but I would
 5     ask, since we're on the record, that each of you identify
 6     yourselves when you start speaking, and that would be
 7     helpful.
 8                 All right.  Well, I have the joint status
 9     report, and obviously there's some discovery issues at
10     least to take up.  Those seem to have been, many of them
11     at least, contingent on the ruling that came out after the
12     status report was filed and before this call, so I think
13     maybe the way to proceed might be to take up any issues
14     that any of you think can be usefully discussed today.
15     And we obviously have another call coming up in early
16     September, so to the extent you haven't had a chance to
17     meet and confer about some of the effects of the ruling,
18     perhaps we can take up those issues after you've had that
19     opportunity.  So who wants to start?
20                 MR. OPPER:  Your Honor, if I could, this is Joe
21     Opper for the direct purchaser class plaintiffs.  If I
22     could start out.
23                 As we set forth in the joint status report,
24     there are a couple of issues that we think are relevant
25     and timely, especially in light of the Court's ruling on

1   the order to show cause.  Number one is the number of
2   depositions that should be permitted per side in this
3   case.  As the Court is well aware, there are numerous
4   issues in this case.  The Court has dealt with at least
5   one area where there might not be as much discovery
6   necessary as the defendants had indicated, but there are
7   still a number of substantive issues where the plaintiffs
8   are going to have to conduct depositions, and those are
9   identified in the status report.  Obviously an issue is
10  the reasons why the defendants entered into the settlement
11  agreement and the related agreements; the negotiations of
12  those agreements and what the purpose and effect was of
13  those agreements; issues regarding the patent merits in
14  the case and the parties' subjective views regarding the
15  patent merits; issues regarding causation, that is, what
16  would have happened but for the agreements.  That issue
17  typically involves numerous issues involving regulatory
18  issues, such as when a generic would have received
19  approval to enter the market and whether it was planning
20  to enter the market and had the capability and the
21  capacity and the availability of API supply to actually
22  commercialize the product and enter.  And the issue of
23  damages, how much plaintiffs claim they were overcharged
24  as a result of the anticompetitive activity; that is, what
25  the price was that they paid and what the but for price

1  would have been absent the agreement.
2            We believe that in this case, with all these
3  issues -- and that's not even addressing the issue of
4  market power -- that plaintiffs would need up to 40
5  depositions.  We don't think, as we've set forth in the
6  status conference report, that that's an unnecessarily
7  large number.  It's consistent with a number of other
8  recent cases in which plaintiffs have been permitted fact
9  depositions -- that number of fact depositions in similar
10 cases, and obviously if plaintiffs can obtain the
11 discovery they need from the depositions with a number
12 short of 40, we would certainly be prepared to do that.
13           The other issue that I think is ripe has to do
14 with the schedule.  I think it's apparent that the parties
15 will not be able to complete discovery by the -- fact
16 discovery by the current cutoff, which I believe is in
17 October.  We had proposed a six-month extension.  I think
18 defendants -- I'm not sure what their position is now in
19 light of the Court's ruling on the order to show cause,
20 but I read from their submission that once the Court
21 issued its ruling on the order to show cause that they
22 thought that six months might be the appropriate extension
23 as well.
24           There are a number of other discovery issues
25 relating to what's unresolved as a result of the Court's

1 ruling, and I understand the Court to have advised the
2 parties to meet and confer to see if they can resolve any
3 of those outstanding issues, and if they are unable to do
4 that, to raise it at the next status conference.
5          So I think those are the major issues that the
6 direct purchaser plaintiffs would like to raise at this
7 time.
8          MR. MILNE:  Well, Your Honor, this is Robert
9 Milne -- M-i-l-n-e is how that's spelled for the court
10 reporter -- on behalf of Boehringer.
11          With respect to the issues that Mr. Opper
12 raised, taking the discovery period issue first, I think
13 Mr. Opper got it right.  I mean, we think a six-month
14 extension does make sense, and given that Your Honor has
15 now ruled on the order to show cause, we don't have an
16 objection to moving the schedule out accordingly.  I think
17 we'll -- and I think as Your Honor has indicated
18 throughout the case -- we'll all have to continue to be
19 flexible with respect to this in the sense that we likely
20 will be taking up Your Honor's invitation to raise the
21 issues implicated in the order to show cause with the
22 Second Circuit, and depending on how that plays out, we
23 may need to revisit scheduling again.  But for now six
24 months seems reasonable to us.
25          THE COURT:  All right, so why don't we start

1   there and just set the new discovery deadline as April 28
2   and reset the dispositive motion deadline as June 28.  I
3   will note that in my view an interlocutory appeal of the
4   memorandum of decision ought not to require a stay of
5   discovery of other issues.  I don't see how ongoing
6   discovery of other issues can affect the ability of the
7   Court of Appeals to address the issues raised in the order
8   should they choose to do that.  So if anybody disagrees
9   with that, let me know, but it's not my intention to stay
10  the case pending an interlocutory appeal, that is, if the
11  Court of Appeals certifies it under 1292(b).
12          MR. MILNE:  Well, Your Honor, we're not asking
13  for a stay at this point, and I think there are many ways
14  it could play out, and if we, for example, got a decision
15  from the Second Circuit and it permitted discovery that
16  had otherwise been blocked, well, then obviously we might
17  need more time to complete the discovery.  That's at least
18  one scenario that prompted me to say what I said.
19          THE COURT:  Oh, yes. Oh, absolutely. My point
20  is only this, there is case law that suggests that when a
21  matter is on appeal, that the district court is divested
22  of jurisdiction over matters that are the subject of that
23  appeal, and my only point is I believe that's a discrete
24  issue that should not interfere, the appeal of which
25  should not interfere with the ability of this case to

1  continue addressing unrelated issues.
2           MR. OPPER:  And, Your Honor, this is Joe Opper
3  again.  And with the Court's permission, we will submit a
4  revised schedule adjusting all the dates by six months.
5           THE COURT:  That's fine.  All right.  Mr. Milne,
6  did you want to be heard on the number of depositions?
7           MR. MILNE:  Well, yes, Your Honor, and I think
8  we sort of summarized our position in the joint status
9  report.  We understand that the issues raised here are
10 complicated ones; but on the other hand, unlike many of
11 the cases that are out there where you have more than two
12 defendants, here we have two defendants.  That would
13 imply, even with an equal division, ten depositions per
14 defendant, even if we just went with 20, which is what the
15 defendants propose should be allowed for the plaintiffs to
16 take on party depositions.  We think that's more than
17 adequate to cover the range of issues.  The plaintiffs are
18 seeking 40, which implies 20 or more from the standpoint
19 of often it's the branded company is subjected to perhaps
20 a few more depositions than the generic.  And 40, from our
21 perspective, seems excessive given the number of
22 defendants.  And what the plaintiff had proposed here is
23 40 and 40 per side; but when you look at it from the
24 defendants' perspective facing the plaintiffs here, at a
25 bare minimum we have, as we count it, 39 discrete

1    plaintiffs, and at a bare minimum we'll need to take at
2    least one deposition per plaintiff for class certification
3    purposes, for basic, you know, discovery purposes.  And we
4    have a number of very large entities that are serving as
5    named plaintiffs here, including Humana, Walgreen's, CVS,
6    very large entities like that with multiple thousand
7    employees, multiple business units within their respective
8    companies, and so the idea of us -- of the defense side
9    being limited to essentially one deposition per plaintiff
10   seems overly restrictive.
11              And so what we had proposed was an aggregate of
12   50 for the defense side so that we would have a little bit
13   of flexibility to take more than one deposition for some
14   of the bigger defendants.  And --
15              THE COURT:  Well, do the defendants intend to
16   take the deposition literally of every plaintiff?
17              MR. MILNE:  Yes, yes.
18              THE COURT:  All right.  Well, okay.
19              MR. MILNE:  You know, because, Your Honor, at a
20   bare minimum some of these smaller plaintiffs are class
21   representative, and for purposes of assessing adequacy of
22   representation and issues like that, wherewithal and the
23   like, we need -- it's customary and it's certainly our
24   right to take a deposition.
25              THE COURT:  All right.  Well, I'm under the

1  impression that 25 depositions by the plaintiff and 50 by
2  the defendants is the right balance.  I'm not saying that
3  that won't change in the future.  If it turns out, for
4  example, that the depositions taken by the plaintiffs
5  reveal critical witnesses that they couldn't have
6  anticipated, then perhaps there would be an opportunity
7  for some more, but that's 75 party depositions.  We're
8  talking about a discovery cutoff of April 28.  All of you
9  are going to be extremely busy because presumably there's
10 some third-party deposition practice that's going to be
11 happening at the same time, not to mention experts.  So I
12 think a 25/50 break in light of the number of defendants
13 and plaintiffs probably makes sense.
14         Let me hear from anybody who thinks that that's
15 just entirely unfair.
16         (No response.)
17         THE COURT:  Okay.  All right.  Are there any
18 issues regarding what I'll call the meet-and-confer issues
19 that you think are ripe to be taken up now or should we
20 hold those for the September meeting?
21         MR. MILNE:  Well, for the defendants -- this is
22 Robert Milne again, Your Honor -- I think we agree with
23 what Mr. Opper said, that we just received Your Honor's
24 opinion last evening.  I think it makes sense for us to
25 process that, interact with the plaintiffs and then come

Case 3:14-md-02516-SRU   Document 497   Filed 08/16/16   Page 10 of 12

10

 1  back to Your Honor with any issues that remain and then --
 2  and give Your Honor our thoughts on a path forward with
 3  respect to the motions to compel that are pending.
 4          MR. PERWIN:  And, Your Honor, this is Scott
 5  Perwin for the Walgreens plaintiffs.  If I could just go
 6  back to the deposition issue for just a moment.  We don't
 7  dispute the defendants have a right to take depositions of
 8  each of our -- I represent some of the retailer
 9  plaintiffs -- we don't dispute that they have a right to
10  take at least a deposition of each of us, but we are going
11  to resist that they end up taking multiple depositions of
12  companies just because they're big companies.  I mean,
13  Walgreens is a big company, but its status in this case is
14  a purchaser of Aggrenox, an overcharged purchaser, and we
15  don't think that all of the various business units that
16  Walgreen has are relevant to this case, and I just want to
17  make it clear that we may not -- there may be a dispute
18  later on if the defendants want to take the depositions of
19  Walgreen, for example.
20          THE COURT:  All right.  Well, we'll see how that
21  plays out.  It may be, I assume that the defense would
22  proceed principally by way of 30(b)(6) topics that are
23  identified, and each of the plaintiffs can identify the
24  person or persons best able to respond to those issues,
25  but we'll see how that goes.

1              MR. PERWIN:  That's typically the way it's done,
2    Your Honor.
3              THE COURT:  Right.  Okay.  Anyone who thinks
4    there's an issue that we can usefully take up today,
5    please speak up.
6              (No response.)
7              THE COURT:  All right.  Well, I thank all of you
8    for calling in, and we will once again have our regularly
9    scheduled call in early September.
10             MR. OPPER:  Very good.
11             MR. MILNE:  Thank you, Judge.
12             THE COURT:  Thank you.
13             (Whereupon, the above proceedings adjourned at
14   3:22 p.m.)
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

      I, Sharon L. Masse, RMR, CRR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

August 15, 2016

/S/ Sharon L. Masse
Sharon L. Masse, RMR, CRR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (860)937-4177