# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **IN RE AGGRENOX ANTITRUST LITIGATION** | **Master Docket No. 3:14-cv-02516-(SRU)**<br><br><br>**Judge Stefan R. Underhill** |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    BACKGROUND ......................................................................................... 2

    A.     DPC PLAINTIFFS' CLAIMS AND PROCEDURAL BACKGROUND .................................. 2

    B.     SETTLEMENT NEGOTIATIONS AND THE PROPOSED SETTLEMENT ............................ 3

III.   THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT
CLASS HAVE BEEN MET .......................................................................... 5

    A.     RULE 23 REQUIREMENTS ........................................................................ 7

        1.     Impracticability of Joinder ..................................................... 7

        2.     Commonality ........................................................................ 8

        3.     Typicality ............................................................................. 9

        4.     Adequacy of Representation ................................................. 10

    B.     ALL REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ................................. 10

        1.     Common Questions of Law and Fact Predominate ................................. 10

        2.     A Class Action Is Superior to Other Methods of Adjudication ............... 15

        3.     Class Counsel Meet the Requirements for Appointment Under
Rule 23(g) .......................................................................... 16

IV.    THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR
PRELIMINARY APPROVAL ...................................................................... 17

    A.     THE PROPOSED SETTLEMENT WAS THE RESULT OF SERIOUS AND
INFORMED NEGOTIATIONS BY EXPERIENCED COUNSEL ........................................ 18

        1.     Negotiations Were At Arm's-Length Negotiations And Occurred
After Substantial Discovery .................................................... 18

    B.     CLASS COUNSEL ARE HIGHLY EXPERIENCED IN ANTITRUST LITIGATION
ALLEGING DELAYED GENERIC DRUG COMPETITION ............................................. 19

    C.     THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE
APPROVAL ....................................................................................... 20

    D.     THE PLAN OF DISTRIBUTION IS FAIR, REASONABLE, AND ADEQUATE ................... 21

    E.     THE PROPOSED FORM AND MANNER OF NOTICE ARE APPROPRIATE .................... 22

        1.     Form of Notice .................................................................... 22

        2.     Manner of Notice ................................................................. 23

    F.     THE COURT SHOULD APPOINT BERDON AS SETTLEMENT ADMINISTRATOR .......... 24

    G.     THE COURT SHOULD APPOINT BERDON AS ESCROW AGENT ............................ 24

    H.     THE PROPOSED SCHEDULE IS FAIR AND SHOULD BE APPROVED ...................... 24

V.     CONCLUSION.......................................................................................... 25

i

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Coca-Cola Co., No. 09 CV 395 (DLI)(RML)*,
  2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ...................................................... 14

*Air Cargo Shipping Servs. Antitrust Litig., No. MDL No. 1775*,
  2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) ............................................... 11, 13

*Allen v. Dairy Farmers of Am., Inc., No. 5:09-cv-230*,
  2012 U.S. Dist. LEXIS 164718 (D. Vt. Nov. 19, 2012) ......................................................... 11

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. Jan. 28, 2010) ................................................................................. 21

*Am. Sales Co. v. SmithKline Beecham Corp.*,
  274 F.R.D. 127 (E.D. Pa. 2010) ................................................................................................ 6

*Am. Sales Co., LLC v. Pfizer, Inc.*,
  2017 WL 3669604 (E.D. Va. July 28, 2017) ............................................................................. 6

*Am. Sales Co., LLC v. Pfizer, Inc.*,
  2017 WL 3669097 (E.D. Va. Aug. 24, 2017) ............................................................................ 6

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .............................................................................................................. 5, 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ....................................................................................................... 10, 11

*Blue Tree Hotels Investment v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004) .................................................................................................... 12

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ............................................................................................. 21

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ................................................................................................................. 12

*Capsolas v. Pasta Res. Inc.*,
  N2012 WL 1656920 (S.D.N.Y. May 9, 2012) ......................................................................... 18

*Comcast Corp. v. Behrend*
  133 S. Ct. 1426 (2013) ............................................................................................................. 11

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)............................................................................ 10, 12

*Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................... 21, 24

*DDAVP Direct Purchaser Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 97487 (S.D.N.Y. Aug. 15, 2011) ......................... 6, 8, 10, 15

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................... 14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156, 94 S. Ct. 2140 (1974) ............................................................... 24

*Elec. Books Antitrust Litig., No.*,
    2014 U.S. Dist. LEXIS 42537 (S.D.N.Y. Mar. 28, 2014) ...................................... 13

*Elkind v. Revlon Consumer Prods. Corp., No. CV 14-2484 (JS) (AKT)*,
    2017 U.S. Dist. LEXIS 24512 (E.D.N.Y. Feb. 17, 2017)........................ 17, 19, 21, 22

*Freeland v. AT&T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) .................................................................... 12

*FTC v. Actavis, Inc.*,
    133 S. Ct. 2223 (2013) ................................................................................. 3

*Hernandez v. Merrill Lynch & Co.*,
    2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) ................................... 18

*In re Aggrenox Antitrust Litig.*,
    94 F. Supp. 3d 224 (D. Conn. 2015) ................................................................ 3

*In re Am. Int'l Grp. Secs. Litig.*,
    689 F.3d 229 (2d Cir. 2012) ........................................................................... 5

*In re Buspirone Patent & Antitrust Litig.*,
    210 F.R.D. 43 (E.D. Mich. 2001) ............................................................. 6, 14, 15

*In re Colonial P'ship Litig.*,
    1993 U.S. Dist. LEXIS 10884 (D. Conn. Feb. 10, 1993) ...................................... 7

In re Currency Conversion Fee Antitrust Litig.),
    264 F.R.D. 100 (S.D.N.Y. 2010) .................................................................. 12, 13

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    256 F.R.D. 82 (D. Conn. 2009)................................................................... 12, 13

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ............................................................ 11

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ....................................................... 19

*In re K-Dur Antitrust Litigation*,
    686 F.3d 197 (3rd Cir. 2012) ........................................................ 6, 13

*In re Lidoderm Antitrust Litig.*,
    2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ....................................... 6

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................... 17, 21

*In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 158153 (D. Del. Nov. 16, 2011) ..................... 6

*In re Modafinil Antitrust Litigation*,
    837 F. 3d 238 (3d Cir. 2016) ............................................................ 8

*In re NASDAQ Market Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ................................................. 12, 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997). ...................................................... 19

*In re Neurontin Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 7453 (D.N.J. Jan. 25, 2011) .......................... 6

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    296 F.R.D. 47 (D. Mass. 2013) .................................................... 6, 14

*In re Nifedipine Antitrust Litig.*,
    246 F.R.D. 365 (D.D.C. 2007) ............................................... 6, 12, 14

*In re OxyContin Antitrust Litig.*,
    2010 U.S. Dist. LEXIS 146003 (S.D.N.Y. Sept. 27, 2010) .................. 7

*In re Pet Food Prods. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ............................................................. 5

*In re Prandin Direct Purchaser Antitrust Litig.*,
    2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ................................... 6

*In re Prograf Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 62043 (D. Mass. Apr. 23, 2013) ..................... 6

iv

*In re Relafen Antitrust Litig.*,
   218 F.R.D. 337 (D. Mass. 2003) ................................................................................... passim

*In re Skelaxin Metaxalone Antitrust Litig.*,
   2014 U.S. Dist. LEXIS 60214 (E.D. Tenn. Apr. 30, 2014) ...................................................... 6

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
   238 F. Supp. 2d 480 (E.D.N.Y. 2002) ................................................................................. 21

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................................. 17, 18

*In re Traffic Exec. Ass'n*,
   627 F.2d 631 (2d Cir. 1980) ......................................................................................... 17, 21

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989) .................................................................................... 18

*In re Visa Check/Mastermoney Antitrust Litig.*
   280 F.3d 124 (2d Cir. 2001) ............................................................................................. 11

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) .......................................................................................... 13

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
   2008 WL 1946848 (E.D. Pa. May 2, 2008) ....................................................................... 6, 14

*In re Wellbutrin XL Antitrust Litig.*,
   2011 U.S. Dist. LEXIS 90075 (E.D. Pa. Aug. 11, 2011) ......................................................... 6

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*,
   225 F.R.D. 208 (S.D. Ohio 2003) .................................................................................. 14, 15

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
   2017 WL 3705715 (E.D. Pa. Aug. 28, 2017) ......................................................................... 8

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) ............................................................................................ 13

*Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*,
   2008 U.S. Dist. LEXIS 123291 (S.D.N.Y. Apr. 8, 2008) ............................................. 6, 8, 9, 15

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................. 21

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir.1997) ................................................................................................ 8

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)........................................................................ 18

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
    246 F.R.D. 293 (D.D.C. 2007)............................................................. passim

*Mims v. Stewart Title Guar. Co.*,
    590 F.3d 298 (5th Cir. 2009) .................................................................... 14

*Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*,
    2014 U.S. Dist. LEXIS 21504 (E.D. Pa. Feb. 18, 2014) ........................... 6

*NASDAQ Market-Makers Antitrust Litig.*,
    1999 U.S. Dist. LEXIS 8889  n.3 .............................................................. 24

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) .............................................................. 16

*O'Keefe v. Mercedes Benz*,
    214 F.R.D 266 (E.D.P.A. 2003).................................................................. 15

*Palacio v. E*TRADE Fin. Corp.*,
    2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) .......................................... 18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006).................................................................. 19

*Reade-Alvarez, v. Eltman, Eltman & Cooper, P.C.*,
    2006 U.S. Dist. LEXIS 31130 (E.D.N.Y. May 18, 2006) ......................... 21

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)........................................................................ 15

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..................................................................... 7, 8

*Rochester Drug Coop., Inc. v. Braintree Labs.*,
    2012 U.S. Dist. LEXIS 190011 (D. Del. Feb. 6, 2012) .............................. 6

*Spencer v. Hartford Fin. Servs. Group, Inc.*,
    256 F.R.D. 284 (D. Conn. 2009)..................................................... 7, 8, 9, 10

*Sullivan v. Barclays PLC*,
    2017 U.S. Dist. LEXIS 25756 (S.D.N.Y. Feb. 21, 2017)......................... 12

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011)....................................................................... 14

*Sykes v. Mel S. Harris & Assocs. LLC,*
    780 F.3d 70 (2d Cir. 2015) ............................................................................... 11

*Tart v. Lions Gate Entm't Corp.,*
    2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) .......................................... 5

*Teva Pharms. USA, Inc. v. Abbott Labs.,*
    252 F.R.D. 213 (D. Del. 2008) ................................................................ 6, 12, 14

*Tiro v. Pub. House Invs., LLC,*
    2013 U.S. Dist. LEXIS 72826  (S.D.N.Y. May 22, 2013) ...................................... 18

*United States v. City of N.Y.,*
    276 F.R.D. 22 (E.D.N.Y. 2011) ........................................................................ 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) .......................................................................... 18, 20

*Wilson v. DirectBuy, Inc.,*
    2011 U.S. Dist. LEXIS 51874 (D. Conn. May 16, 2011) ...................................... 17

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    395 U.S. 100 (1969) .................................................................................... 13

**Statutes**

28 U.S.C. § 1715 ...................................................................................................... 25

**Other Authorities**

Manual For Complex Litigation, § 21.632 (4th ed. 2005) .......................................... 18

Newberg On Class Actions § 18:5 (4th ed. 2011) ....................................................... 8

Direct Purchaser Class Plaintiffs Miami Luken Inc., ("Miami Luken"), Rochester Drug Co-Operative, Inc. ("RDC"), American Sales Company, LLC ("American Sales") and Cesar Castillo, Inc. ("Castillo") (collectively "Direct Purchaser Class Plaintiffs," "DPC Plaintiffs," or "Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Certification of a Settlement Class, Appointment of Class Counsel, Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class and Proposed Schedule for a Fairness Hearing.

## I.    INTRODUCTION

DPC Plaintiffs and Defendants[1] have reached a settlement by which Defendants will pay $146,000,000.00 (one hundred forty six million dollars and no/100) in cash into an escrow fund for the benefit of all members of the Class (the "Class")[2] in exchange for dismissal of the litigation between DPC Plaintiffs and Defendants with prejudice and certain releases (the "Settlement").  All the terms of the Settlement are set forth in the Settlement Agreement dated August 15, 2017 ("Settlement Agreement") (annexed as Exhibit 1 to the Declaration of Joseph Opper).

Preliminary approval of the proposed Settlement is appropriate.  DPC Plaintiffs and Defendants entered into the Settlement after years of intense, well-developed litigation and extensive mediation and negotiations.  Counsel for both sides are experienced in class actions generally and pharmaceutical antitrust litigation in particular, and are well-positioned to assess

---

[1] Defendants are Boehringer Ingelheim Pharma GmbH & Co KG, Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") and Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries, Ltd.,  Barr Pharmaceuticals, Inc. (n/k/a Barr Pharmaceuticals, LLC), Barr Laboratories Inc., Duramed Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.) and Duramed Pharmaceutical Sales Corp. (n/k/a Teva Sales and Marketing, Inc. ("Teva") (collectively, "Defendants").

[2] The Class is defined *infra* at 5-6.

1

the risks and merits of this case.  Defendants do not oppose certification of a direct purchaser class under Federal Rule of Civil Procedure 23 for purposes of the Settlement, and the Settlement assures that all Class members will receive a substantial cash settlement payment now, and that the litigation against Defendants will be put to rest, while avoiding continued litigation and potential appeals.

Accordingly, DPC Plaintiffs respectfully request that the Court enter the proposed order (Exhibit A to the Settlement Agreement) which provides for the following:

1.    Preliminary approval of the proposed Settlement Agreement and the documents necessary to effectuate the Settlement, including a proposed form of notice to the Class (Exhibit B to the Settlement Agreement) and a proposed plan of distribution for settlement funds as described in the proposed form of notice;

2.    Certification of the Class for purposes of settlement;

3.    Pursuant to Federal Rule of Civil Procedure 23(c)(1)(B) and 23(g), reaffirming Lead Counsel, Liaison Counsel and an Executive Committee as Class Counsel for purposes of settlement;

4.    Appointment of Berdon Claims Administration LLC ("Berdon") as settlement administrator;

5.    Appointment of Berdon as escrow agent for the settlement funds[3]; and

6.    A proposed settlement schedule, including the scheduling of a Fairness Hearing during which the Court will consider: (a) DPC Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment (Exhibit C to the Settlement Agreement); (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and incentive awards to the named class plaintiffs; and (c) DPC Plaintiffs' request for dismissal of this action against Defendants with prejudice.

## II.    BACKGROUND

### A.    DPC Plaintiffs' Claims and Procedural Background

In December 2013, DPC Plaintiffs filed the first antitrust lawsuit on behalf of all direct purchasers challenging Defendants' conduct regarding the prescription pharmaceutical

---

[3] The Escrow Agreement is annexed as Exhibit D to the Settlement Agreement

Aggrenox.[4] DPC Plaintiffs alleged that Defendants had unlawfully delayed the availability of less expensive, generic versions of Aggrenox through, *inter alia*, unlawful "reverse payment" agreements.[5] Defendants moved to dismiss DPC Plaintiffs' complaint, and after extensive briefing and oral argument, DPC Plaintiffs successfully defeated Defendants' motion.[6] The case then proceeded through intensive discovery, including production and review of millions of pages of documents, and several fact depositions.

### B.   Settlement Negotiations and the Proposed Settlement

After a substantial amount of documentary and deposition discovery in this case, the parties agreed to mediation with a private mediator, the Honorable Layn R. Phillips, a retired United States District Court Judge from the Western District of Oklahoma (hereinafter "Judge Phillips"). Prior to mediation, the parties submitted mediation briefs outlining the strengths and weaknesses of their respective cases. The mediation lasted two full days, and the settlement negotiations between Class Counsel and attorneys for Defendants were hard fought and at arm's-length. In conducting negotiations, Class Counsel assessed this action in light of their extensive experience litigating similar delayed generic entry cases, the Supreme Court's decision in *FTC v. Actavis*, *Inc.*, 133 S. Ct. 2223 (2013), and the opinions issued by this Court over the course of the

---

[4] *See Miami Luken, Inc. v. Boehringer Ingelheim Pharmaceuticals GMBH & Co. KG et al.*, Case No. 2:13-cv-06543-MSG (E.D.PA). *See also Rochester Drug Co-Operative, Inc. v. Boehringer Ingelheim Pharma GmBH & Co. KG et al.*, Case No. 2:13-cv-06992-MSG (E.D.PA); *American Sales Company, LLC v. Boehringer Ingelheim Pharma & Co. KG et al.*, Case No. 3:14-cv-00003-CSH (D. Conn.); *Professional Drug Company, Inc. v. Boehringer Ingelheim Pharma GmBH & Co. KG et al.*, Case No. 3:13-cv-01776-WWE (D.Conn.) *Cesar Castillo, Inc. v. Boehringer Ingelheim Pharma GmBH & Co. KG et al.*, Case No. 3:14:-cv-00225-SRU (D.Conn.); Direct Purchaser Class Plaintiffs' Consolidated Amended Class Action Complaint. June 14, 2014, ("DPC Plaintiffs' Complaint") ECF No. 97.

[5] *See FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013).

[6] *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224 (D. Conn. 2015).

litigation (including but not limited to the Court's Decision and Order on the Relevant Market, (ECF No. 489)).

The proposed Settlement provides that Defendants will pay $146,000,000 (one hundred forty six million and no/100 dollars) in cash for the benefit of all Class members in exchange for dismissal of the litigation between DPC Plaintiffs and Defendants and certain releases. Further, as added protection for  class members, Class Counsel successfully negotiated a provision in the Settlement Agreement providing that even if the Court does not approve the settlement (including because the Court does not certify the Class for purposes of settlement) for any reason other than that the settlement is not fair, reasonable or adequate, Defendants will offer each Class member its *pro rata* allocated share of the $146 million settlement fund (subject to 40% of each share being placed into escrow while the Court reviews Class Counsel's petition for attorney's fees, costs, and incentive awards for the named class plaintiffs).[7]

DPC Plaintiffs have proposed the form and manner of providing notice of the proposed Settlement Agreement to the Class, and the procedures by which: (a) Class members may receive their share of settlement funds; (b) Class members may seek exclusion from the Class or object to the proposed Settlement Agreement; and (c) Class members may object to Class Counsel's application for attorney's fees of one-third of the settlement amount, reimbursement of reasonable expenses incurred in prosecuting this action and service awards the named plaintiffs for their efforts on behalf of the Class.  Final approval of the proposed Settlement Agreement will result in the dismissal with prejudice of DPC Plaintiffs' claims in their entirety against Defendants.

---

[7] As discussed below, the proposed settlement class is similar to numerous classes that have been certified in other pharmaceutical antitrust cases, meets all applicable requirements of Rule 23 and is unopposed by Defendants for purposes of settlement.

## III.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET

DPC Plaintiffs and Defendants have agreed, subject to the Court's review and approval, to the certification of a class for purposes of settlement.  The requirements of Rule 23 are the same when certifying a class in connection with settlement (as opposed to certifying a class in connection with litigation), except that "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."[8]

Thus, the Court must still assess "whether the proposed class satisfies Rule 23(a)'s four threshold requirements," including: (1) whether "the class is so numerous that joinder of all members is impracticable", (2) commonality (whether "there are questions of law or fact common to the class"), (3) typicality (whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation (whether "the representative parties will fairly and adequately protect the interests of the class").[9] The district court must also determine whether the action can be maintained under Rule 23(b)(1), (2), or (3).[10]

Here, the proposed settlement class is defined as follows:

> All persons or entities in the United States and its territories and possessions including the Commonwealth of Puerto Rico who directly purchased branded Aggrenox in any form from any of the Defendants from December 1, 2009 through June 30, 2015 (the "Class Period"), or their assignees (the "Class").  Excluded from the Class are Defendants and

---

[8] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). *See also In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (quoting *Amchem*); *Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004 (AJN), 2015 U.S. Dist. LEXIS 139266, at *9 (S.D.N.Y. Oct. 13, 2015).

[9] *In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d at 239 (citing *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010)).

[10] *Id.*

5

their officers, directors, management and employees, predecessors, subsidiaries and affiliates, and all federal governmental entities.  Also excluded from the Class are CVS Pharmacy, Inc., Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co., The Kroger Co., Safeway Inc., HEB Grocery Company L.P. and Albertson's LLC and their officers, directors, management and employees, predecessors, subsidiaries and affiliates who have brought individual claims as direct purchasers or assignees of direct purchasers to the extent they have valid assignments as more fully described in paragraph 10 of the Settlement Agreement ("Retailer Plaintiffs").[11]

Courts have certified similar classes in 23 other generic prescription drug delay cases, including seven certified for purposes of settlement.[12]

---

[11] Settlement Agreement at ¶¶ 3-4.  This definition amends the definition contained in the Complaint.  The Class now excludes entities that purchased only the generic form of Aggrenox, as well as the Retailer Plaintiffs.

[12] *See Am. Sales Co., LLC v. Pfizer, Inc.*, Civ. A. No. 2:14cv361, 2017 WL 3669097 (E.D. Va. Aug. 24, 2017)  (adopting *Am. Sales Co., LLC v. Pfizer, Inc.*, Civ. A. No. 2:14cv361, 2017 WL 3669604 (E.D. Va. Jul. 28, 2017 ("*Celebrex*"))); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47 (D. Mass. 2013); *In re Prograf Antitrust Litig.*, 2013 U.S. Dist. LEXIS 62043 (D. Mass. Apr. 23, 2013); *In re K-Dur Antitrust Litig.*, No. CIV. A. 01-1652 JAG, 2008 U.S. Dist. LEXIS 118396 (D.N.J. Apr. 14, 2008), *aff'd*, 686 F.3d 197 (3d Cir. 2012), *vacated on other grounds*, 133 S. Ct. 2849 (2013), *reinstatement granted*, No. 10-2077, 2013 WL 5180857 (3d Cir. Sept. 9, 2013); *In re Wellbutrin XL Antitrust Litig.*, 2011 U.S. Dist. LEXIS 90075 (E.D. Pa. Aug. 11, 2011) ("*Wellbutrin XL*"); *In re Neurontin Antitrust Litig.*, 2011 U.S. Dist. LEXIS 7453 (D.N.J. Jan. 25, 2011); *Am. Sales Co. v. SmithKline Beecham Corp.*, 274 F.R.D. 127 (E.D. Pa. 2010) ("*Flonase*"); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848 (E.D. Pa. May 2, 2008); *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213 (D. Del. 2008) ("*TriCor*"); *Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*, 2008 U.S. Dist. LEXIS 123291 (S.D.N.Y. Apr. 8, 2008) ("*Arava*"); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365 (D.D.C. 2007) ("*Nifedipine*"); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293 (D.D.C. 2007) ("*Ovcon*"); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002) ("*Buspirone*"); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001).  *See also In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (certifying class for settlement); *In re Skelaxin Metaxalone Antitrust Litig.*, 2014 U.S. Dist. LEXIS 60214 (E.D. Tenn. Apr. 30, 2014) (same); *Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*, 2014 U.S. Dist. LEXIS 21504 (E.D. Pa. Feb. 18, 2014) ("*Doryx*") (same); *Rochester Drug Coop., Inc. v. Braintree Labs.*, 2012 U.S. Dist. LEXIS 190011 (D. Del. Feb. 6, 2012) ("*Miralax*") (same); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2011 U.S. Dist. LEXIS 97487 (S.D.N.Y. Aug. 15, 2011) (same); *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, 2011 U.S. Dist.

A.      **Rule 23 Requirements**

1.      **Impracticability of Joinder**

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. To meet this requirement, joinder need not be impossible.[13]   Rather, the court must look at the class as a whole and assess if "the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."[14] "Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers."[15] "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, [and] the ability of claimants to institute individual suits."[16]  Geographic dispersion of the class and judicial economy are factors which strongly support certification here,[17] as the proposed Class includes (at least) 35 members, spread across 14 states and Puerto Rico.[18]  Litigating – or even settling – the antitrust claims of such a geographically dispersed class on a one-by-one basis is impracticable, given the extreme complexity of this multi-party antitrust case and the associated volume of discovery and motion practice.  It is far more practicable to resolve the claims here via

---

LEXIS 158153 (D. Del. Nov. 16, 2011) ("*Toprol*") (same); *In re OxyContin Antitrust Litig.*, 2010 U.S. Dist. LEXIS 146003 (S.D.N.Y. Sept. 27, 2010) (same)).

[13] *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible.").

[14] *Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284, 289-90 (D. Conn. 2009) (citing *Robidoux*, 987 F.2d at 935).

[15] *Robidoux*, 987 F.2d at 936.

[16] *Id.*

[17] *In re Colonial P'ship Litig.,* Master File No. H-90-829 (JAC), 1993 U.S. Dist. LEXIS 10884, at *8-9 (D. Conn. Feb. 10, 1993)

[18] *See* Declaration of Jeffrey J. Leitzinger, Ph.D., dated September 5, 2017 at Ex. 3 (map showing locations of Class members) ("Leitzinger Decl.") (annexed as Ex. 2 to the Declaration of Joseph Opper).

settlement on a classwide basis.  Nearly every court in every similar case has certified a litigation and/or a settlement class. The result here should be no different.[19]

### 2.    Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact. But "[i]t does not require that all questions of law or fact raised be common."[20] Rather, Rule 23(a)(2) requires only that common questions exist "at the core of the cause of action alleged." Where the question of law involves "standardized conduct of the defendant towards members of the proposed class . . . the commonality requirement of Rule 23(a)(2) is usually met."[21]

Commonality may easily be established in this antitrust case where "[a]n allegation of … monopolization [ ] or conspiracy will be viewed as a central or single overriding issue or a common nucleus of operative fact and will establish a common question."[22]  Here, as in all delayed generic entry cases, all class members allege injury due to the same misconduct.[23]

---

[19] While the Third Circuit recently vacated and remanded a certified litigation class, directing the district court to re-analyze impracticality of joinder in accordance with the Third Circuit's opinion (*see In re Modafinil Antitrust Litigation*, 837 F. 3d 238 (3d Cir. 2016)), the Third Circuit's opinion is not controlling, and is indeed contradictory to Second Circuit law.  Likewise, the district court's subsequent decision not to certify the class on remand cannot be reconciled with the law in this Circuit.  *See King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1797, 2017 WL 3705715, at *1 (E.D. Pa. Aug. 28, 2017).  Specifically, the Third Circuit directed the district court to restrict its 23(a)(1) analysis to a "binary" choice between joinder and class certification, and not to consider the possibility of multiple lawsuits in different jurisdictions. Such a directive flatly contradicts the law of this Circuit, which specifically instructs courts to consider whether certification would further judicial economy through "the avoidance of a multiplicity of actions." *Robidoux*, 987 F.2d at 936.

[20] *Spencer*, 256 F.R.D. at 290 (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997)).

[21] *Spencer*, 256 F.R.D. at 290.

[22] 6 Wm. B. Rubinstein, NEWBERG ON CLASS ACTIONS § 18:5 (4th ed. 2011).

[23] *See, e.g.*, *Arava*, 2008 U.S. Dist. LEXIS 123291 at *6 (determining "that the foregoing classwide claims, issues, and defenses are questions of law or fact common to the Direct Purchaser Class that satisfy Rule 23(a)(2)."); *DDAVP*, 2011 U.S. Dist. LEXIS 97487, at *6

Class members share a number of common issues here, including: whether Boehringer possessed monopoly power during the relevant period of time; whether Boehringer made a large and unjustified payment to Teva to delay Teva's market entry with a less expensive generic version of Aggrenox; whether Teva could and would have entered the market earlier with a less expensive generic version of Aggrenox, absent the alleged payment from Boehringer; the timing, pricing and market erosion of Teva's market entry but for the alleged payment from Boehringer; and the amount of overcharged incurred by the DPC Plaintiffs.[24]

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.[25] The typicality requirement is satisfied even if some class members have larger damage claims than others or are proceeding under assignment because "typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff."[26]  In every similar case, courts have found the typicality prong met because the named plaintiffs asserted that defendant's conduct had delayed generic entry, and sought overcharges for themselves and the class.[27]  For the same reasons, typicality is met here.

---

(similar); *Oxycontin*, 2010 U.S. Dist. LEXIS 146003, at *41 (similar); *Buspirone*, 210 F.R.D. at 57 (similar).

[24] See Exhibit A, ¶¶ 3-4

[25] *Spencer,* 256 F.R.D. at 291.

[26] *Ovcon*, 246 F.R.D. at 301-02.

[27] *See, e.g.*, *Arava*, 2008 U. S. Dist. LEXIS 123291 at *7 (determining "LWD alleges on behalf of the proposed Direct Purchaser Class the very same manner of injury from the very same course of conduct that it complains of for itself, and LWD asserts on its own behalf the same

### 4.     Adequacy of Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." The court must consider "whether (1) the plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation."[28] Here, this prong is met because all of the class members have the same financial incentive for purposes of this litigation, *i.e.,* proving that they were overcharged and recovering damages based on that overcharge, and as is detailed below, Class Counsel has the qualifications and experience necessary to protect the interests of Class members.

### B.     All Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires: (1) that the Court find that common questions of law or fact predominate over individual questions; and (2) that a class action is superior to other available methods of adjudication.  Both requirements are easily met here.

### 1.     Common Questions of Law and Fact Predominate

Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'"[29] Predominance requires that "*questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[30] "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]'

---

legal theory that it asserts for the Class."); *DDAVP*, 2011 U.S. Dist. LEXIS 97487, at *6 (similar); *Oxycontin*, 2010 U.S. Dist. LEXIS 146003, at *42 (similar); *Buspirone*, 210 F.R.D. at 57 (similar).

[28] *Spencer,* 256 F.R.D. at 292 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (citation omitted).

[29] *Cordes*, 502 F.3d at 108.

[30] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013) (emphasis added).

best suited to adjudication of the controversy 'fairly and efficiently.'"[31]  In *Amgen*, the Supreme

Court explained that, "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to

prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof" but rather that

"common questions '*predominate* over any questions affecting only individual [class]

members.'"[32]  If common issues and evidence have greater overall significance, the presence of

individual issues will not defeat predominance.[33]  Rather, the plaintiff need only "demonstrate

that the element of antitrust impact is *capable of proof at trial* through evidence that is common

to the class rather than individual to its members."[34]

     Under *Comcast Corp. v. Behrend*, the Court has a "duty to take a 'close look' at whether

common questions predominate over individual ones."[35]  That "close look" shows that, as in

every prior case alleging impaired generic drug competition,[36] the predominance standard is met.

---

[31] *Id.*

[32] *Id.* at 1196 (emphases and alterations in original).

[33] *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015) ("The mere existence of individual issues will not be sufficient to defeat certification. Rather, the balance must tip such that these individual issues predominate."); *United States v. City of N.Y.*, 276 F.R.D. 22, 48 (E.D.N.Y. 2011) ("The mere fact that there are a great many people with plausible claims that the City has discriminated against them is hardly a reason to conclude that the individual issues that will arise in their claims will diminish the economies achieved by resolving those issues common to the claims of all the City's victims in a single class proceeding."); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232, at *88 n.35 (E.D.N.Y. July 17, 2013) ("'[A]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)'") (quoting *In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 138 (2d Cir. 2001).

[34] *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MDL No. 1775, 2014 U.S. Dist. LEXIS 180914, at *208 (E.D.N.Y. Oct. 15, 2014) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008) (emphasis added); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2012 U.S. Dist. LEXIS 164718, at *32 (D. Vt. Nov. 19, 2012) (citing *Hydrogen Peroxide*, 552 F.3d at 311-312).

[35] 133 S. Ct. 1426, 1432 (2013) (quotation omitted).

[36] *See supra* n.12.

Specifically, DPC Plaintiffs have alleged claims against the Defendants for violations of the

Sherman Act.[37] Consequently, proof of a violation of the antitrust laws, resulting antitrust injury,

and measurable damages[38] "will not vary among class members."[39]  If Class members were to

pursue this case individually, each would have to prove the same course of conduct, using the

same documents and witnesses.  Predominance is therefore satisfied on the issue of antitrust

violation.[40]

---

[37] *See generally* Consolidated Amended Class Action Complaint.

[38]  *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig*., 256 F.R.D. 82, 86-87 (D. Conn. 2009) (citing *Cordes*, 502 F.3d at 105);  *Ross v. Am. Express Co. (In re Currency Conversion Fee Antitrust Litig.)*, 264 F.R.D. 100, 114 (S.D.N.Y. 2010) (same); *Freeland v. AT&T Corp*., 238 F.R.D. 130, 149 (S.D.N.Y. 2006) (citing *Blue Tree Hotels,* 369 F.3d 212, 220 (2d Cir. 2004)) ("To establish antitrust injury, "a plaintiff must show (1) an injury-in-fact; (2) that has been caused by the violation; and (3) that is the type of injury contemplated by the statute."); *Sullivan v. Barclays* PLC, No. 13-cv-2811 (PKC), 2017 U.S. Dist. LEXIS 25756, at *45 (S.D.N.Y. Feb. 21, 2017) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 489 (1977). ("A plaintiff 'must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'")

[39] *In re NASDAQ Market Makers Antitrust Litig*., 169 F.R.D. 493, 518 (S.D.N.Y. 1996).

[40] *See TriCor*, 252 F.R.D. at 228("the court finds that each putative class member, had they pursued their claims individually, would have been required to prove identical facts, such as defendants' monopoly power, exclusionary scheme, effect on interstate commerce, conspiracy, and unreasonable restraint of trade.  Therefore, these common issues predominate over any individual issues relating to proof of an antitrust violation"); *Flonase*, 2010 U.S. Dist. LEXIS 120177, at *21 ("Direct Purchasers' Section 2 claim requires proof of GSK's actions and intent. Such proof will necessarily be class-wide – GSK's actions did not vary with respect to individual direct purchasers, aside from the price charged …. The evidence thus should be identical for all 33 members of the Proposed Class.  I find that Direct Purchasers satisfy this prong of the predominance inquiry."); *K-Dur*, 2008 U.S. Dist. LEXIS 118396, at *49 ("[c]ourts routinely find that proof of a violation of the antitrust law focuses on the defendants' conduct and not on the conduct of individual class members") (citations omitted); *Nifedipine*, 246 F.R.D. at 369 n.5("[w]hether [defendants'] actions] constituted a 'conspiracy' … is an issue common to all prospective plaintiffs") (predominance standard satisfied); *Ovcon*, 246 F.R.D. at 308 ("the Court notes that because the alleged violation here relates solely to Defendants' conduct[,] proof for this issue will not vary among class members") (citations, quotation, and alterations omitted) (predominance standard satisfied);  *Relafen*, 218 F.R.D. at 343 ("the direct purchaser plaintiffs commonly assert that SmithKline's prosecution of sham patent lawsuits delayed the marketing of generic nabumetone," which was a "common course of conduct") (predominance standard

Likewise, demonstrating antitrust injury presents predominantly common issues. Antitrust injury, or impact, requires a showing of "some damage" due to a defendant's antitrust violation.[41] "Plaintiffs' burden at the class certification stage is not to prove the element of antitrust impact," but rather "to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members."[42] Thus, "[w]hen assessing the predominance requirement of Rule 23(b)(3), the Court "need only determine whether the element of injury-in-fact can be proven by evidence common to the class."[43] Plaintiff need only show "widespread injury to the class[,]"[44] and certification remains available even if some class members may ultimately be shown to have been uninjured.[45] DPC Plaintiffs here rely on evidence here that is consistent with every other class decision in similar generic delay cases.[46]

---

satisfied); *Buspirone*, 210 F.R.D. at 58 ("[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs").

[41] *See Ross,* 264 F.R.D. at 115-16 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc*., 395 U.S. 100, 114 n.9 (1969) ("'plaintiff's burden of proving the fact of damage under § 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage'").

[42] *K-Dur*, 686 F.3d at 222.

[43] *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig*., 256 F.R.D. at 90.

[44] *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252 (D. Del. 2002) (quoting *NASDAQ*, 169 F.R.D. at 523); *Neurontin*, 2011 U.S. Dist. LEXIS 7453, at *36-37 n. 23 ("widespread injury to the class" sufficient).

[45] *In re Air Cargo Shipping Servs. Antitrust Litig*., 2014 U.S. Dist. LEXIS 180914, at *219-21 (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC,* 571 F.3d 672, 677 (7th Cir. 2009) ("Nothing in our class certification jurisprudence requires that every single class member suffer an impact or damages, regardless of the size of the class. To the contrary, courts have routinely recognized what an unrealistic burden this would put on plaintiffs"); *In re Elec. Books Antitrust Litig*., No. 11 MD 2293 (DLC), 2014 U.S. Dist. LEXIS 42537, at *66 (S.D.N.Y. Mar. 28, 2014) (citing *Kohen,* 571 F.3d at 677)( "What is true is that a class will often include persons who have not been injured by the defendant's conduct . . . Such a possibility or indeed inevitability does not preclude class certification"); *K-Dur,* 686 F.3d at 221-22 (that some class members have "zero"

DPC Plaintiffs' economist, Dr. Leitzinger, discusses the availability of four types of classwide common evidence to demonstrate antitrust impact: (1) research showing that generics are priced well below the corresponding brand and that purchasers quickly switch from brand to generic; (2) internal business planning documents used by Defendants predicting this same pattern would play out once generic versions of Aggrenox became available; (3) observations that virtually all members of the Class are resellers (wholesalers and retailers) who must respond to customer demand and so must buy generics once they are available; and (4) analysis of data on actual sales and prices that show that once generic Aggrenox finally launched in July 2015, generic Aggrenox was indeed priced substantially below the brand, and purchases quickly switched from the brand to the generic.  *See* Leitzinger Decl. at ¶¶23-32.  These sources of evidence, independently and in combination, support Dr. Leitzinger's conclusion that all (or nearly all) class members suffered some overcharge (assuming Defendants' unlawfully delayed generic competition).  *See id.*  And such proof is precisely the kind of common evidence that other courts in similar cases have found sufficient to satisfy plaintiff's burden on the issue of antitrust impact.[47]

---

or "negative" damages does not defeat certification if "all (or virtually all) members of the proposed class" were harmed); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (*en banc*) (rejecting argument that would require "each class member possess[] a valid claim under the applicable substantive laws"); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009); *Nexium*, 296 F.R.D. at 58 (same).

[46] *See, e.g., Nexium*, 296 F.R.D. at 55-59; *Tricor*, 252 F.R.D. at 229; *Neurontin*, 2011 U.S. Dist. LEXIS 7453, at *26-39; *Wellbutrin SR*, 2008 WL 1946848, at *7-10; *K-Dur*, U.S. Dist. LEXIS 118396, at *59-61; *Ovcon*, 246 F.R.D. at 308-10; *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 218 (S.D. Ohio 2003)("*Premarin*"); *Relafen*, 218 F.R.D. at 343-46; *Buspirone*, 210 F.R.D. at 58; *Cardizem*, 200 F.R.D. at 307-21.

[47] *See, e.g., K-Dur*, 2008 U.S. Dist. LEXIS 118396, at *59-60 (scholarly studies, defendants documents, and data analysis are "precisely the types of evidence" found sufficient to meet predominance requirement in other cases alleging delayed generic entry); *Wellbutrin SR*, 2008 WL 1946848, *8 n.20; *Tricor*, 252 F.R.D. at 229; *Nifedipine*, 246 F.R.D. at 369-71 & n.10;

Damage issues similarly present common issues, as Dr. Leitizinger opines he can calculate damages on an aggregate, classwide basis. *See* Leitzinger Decl. at ¶¶ 33-37. Moreover, even if individual issues arise as to damages, that is no bar to certification (before or after *Comcast*),[48] and Class members will get notice of the plan of allocation explaining how each Class member's share of the $146 million settlement will be calculated on a *pro rata* basis based on that Class member's purchases.

## 2. A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) provides that the court may assess the superiority of the class action mechanism by weighing class members' interest in pursuing separate actions, the extent of any independent litigation already commenced by class members, the desirability of concentrating the litigation in this forum, and the difficulties likely to be encountered in the management of the class action.[49] Certification will not present manageability concerns, particularly in a settlement context because there will be no trial.[50] Moreover, class treatment is superior to resolving Class members' claims on an individual basis.[51] Given that this case has already progressed for more than three years, that substantial fact discovery has been conducted and that the Court has made a

---

*Ovcon*, 246 F.R.D. at 308-09; *Relafen*, 218 F.R.D. at 345-46; *Cardizem*, 200 F.R.D. at 308; *Premarin*, 225 F.R.D. at 217-18.

[48] *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) ("*Comcast,* then, did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis.").

[49] Fed. R. Civ. 23(b)(3). *See also Amchem Prods.*, 521 U.S. at 615 (the requirement of superiority ensures that resolution by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.").

[50] *Amchem Prods.*, 521 U.S. at 620; *O'Keefe*, 214 F.R.D. at 291.

[51] *See, e.g., Arava*, 2008 U.S. Dist. LEXIS 123291 at *10; *Buspirone*, 210 F.R.D. at 58; *DDAVP*, 2011 U.S. Dist. LEXIS 97487 at *8; *OxyContin*, 2010 U.S. Dist. LEXIS 146003 at *44.

key ruling as to relevant market, class treatment is far superior to individualized treatment of Class members' claims, whether here or in multiple federal courts around the country.

Class certification also limits the likelihood of inconsistent rulings.[52]  In short, certification of the Class is plainly the superior method by which Class members can obtain compensation for their injuries.

### 3.    Class Counsel Meet the Requirements for Appointment Under Rule 23(g)

Under Rule 23(g), a court that certifies a class must appoint class counsel.  Class counsel is charged with fairly and adequately representing the interests of the class.[53] In appointing class counsel, the Court must consider: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.[54]

The Court previously appointed Garwin Gerstein & Fisher LLP ("GGF") as Interim Lead Counsel for the Class,[55] and additional counsel as members of the Executive Committee, and DPC Plaintiffs respectfully request that the Court reaffirm these appointments.[56] Harnessing the experience garnered by litigating antitrust cases resulting from unlawful generic suppression for

---

[52] *See Relafen*, 218 F.R.D. at 347 ("Resolution by class action would instead promote uniform treatment of class members-similarly situated direct purchasers who allege similar injuries resulting from the same conduct.").

[53] *See* Fed. R. Civ. P. 23(g)(1)(B).

[54] *See* Fed. R. Civ. P. 23(g)(1)(A)(i-iv). *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 339-40 (S.D.N.Y. 2004).

[55] *See* ECF No. 94 (Order Appointing Counsel).

[56] The Executive Committee includes Berger & Montague, PC, Hagens Bermen Sobol Shapiro, L.L.P., and Linda Nussbaum of Nussbaum Law Group, P.C. Other class counsel include Smith Segura Raphael LLP, Faruqi & Faruqi LLP, Odom and Des Roches, LLC, and Heim Payne & Chorush LLP.

more than 18 years, Class Counsel investigated and then filed the first antitrust actions challenging Defendants' conduct at issue here, and vigorously pursued the litigation on behalf of the proposed Class for over three years.  As noted above, Class Counsel engaged in an extensive fact discovery and motion practice, has already expended substantial resources in litigating this case, has capably represented the Class throughout the litigation and thus should be appointed as Class Counsel.

## IV.   THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Preliminary approval of a proposed class settlement is warranted if the court determines that the settlement is the result of serious, informed, and non-collusive negotiations, it has no grounds to doubt the settlement's fairness, the settlement has no obvious deficiencies, and the settlement appears to fall within the range of possible approval.[57]

Preliminary approval does not require a court to reach any ultimate conclusions on the merits of the litigation[58]  Rather, the court "need only determine that there is probable cause to submit the agreement to the proposed class members and to hold a fairness hearing, at which time the court will have the opportunity to closely examine the intricacies of the settlement terms and to assess their fairness."[59]

In a court's evaluation of a proposed settlement, the "professional judgment of counsel involved in the litigation is entitled to great weight."[60]  A hearing is not necessary or required

---

[57] *See Elkind v. Revlon Consumer Prods. Corp.*, No. CV 14-2484 (JS) (AKT), 2017 U.S. Dist. LEXIS 24512, at *46 (E.D.N.Y. Feb. 17, 2017)

[58] *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974)).

[59] *See Elkind v. Revlon Consumer Prods. Corp.,* 2017 U.S. Dist. LEXIS 24512, at *45-46 (citing *In re Traffic Exec. Ass'n E.R.Rs*., 627 F.2d 631, 634 (2d Cir. 1980))

[60] *In re Metlife Demutualization Litig.,* 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008)). *See also Wilson v. DirectBuy,*

under Rule 23(e) at the preliminary approval stage.  As explained in the Manual for Complex

Litigation (the "Manual"), "[i]n some cases, this initial evaluation can be made on the basis of

information already known, supplemented as necessary by briefs, motions, or informal

presentations by parties."[61]  Of course, the named class plaintiffs and Class Counsel are available

at the Court's convenience if it wishes to hold a hearing at the preliminary approval stage.

### A.    The Proposed Settlement Was the Result of Serious and Informed Negotiations by Experienced Counsel

If a court finds that a settlement is the result of good faith, serious, "arm's-length

negotiations between experienced, capable counsel after meaningful discovery" the settlement is

entitled to a presumption of fairness.[62]  Moreover, "participation by a neutral third party supports

a finding that the agreement is non-collusive.[63]

### 1.    Negotiations Were At Arm's-Length Negotiations And Occurred After Substantial Discovery

The settlement here was achieved after more than three years of hard-fought litigation,

and with the assistance of a private mediator. The voluminous record permitted the parties to

---

*Inc.,* No. 3:09-CV-590 (JCH), 2011 U.S. Dist. LEXIS 51874, at *15 (D. Conn. May 16, 2011) ("A presumption of fairness will arise, where ''a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.''") (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)).

[61] MANUAL FOR COMPLEX LITIGATION, § 21.632 at 382 (4th ed. 2005). *See also Hernandez v. Merrill Lynch & Co.,* 2012 U.S. Dist. LEXIS 165771, at *4 (S.D.N.Y. Nov. 15, 2012) (citing *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012)); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) ("Courts often grant preliminary settlement approval without requiring a hearing or a court appearance.").

[62] *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005).  *See also In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570 at 575 (Citing *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("a class action settlement enjoys a "presumption of correctness" where it is the product of arm's-length negotiations conducted by experienced, capable counsel.").

[63] *Id.* at 48 (citing *Tiro v. Pub. House Invs., LLC*, 2013 U.S. Dist. LEXIS 72826, at *9  (S.D.N.Y. May 22, 2013).

scrutinize the strengths and weaknesses of their respective claims and defenses. Equipped with this knowledge, the parties engaged in intensive settlement discussions through two days of mediation facilitated by Judge Phillips.  As noted above, the negotiations were detailed, time-consuming, and hard-fought.

### B.    Class Counsel Are Highly Experienced in Antitrust Litigation Alleging Delayed Generic Drug Competition

In approving class action settlements, courts often defer to the judgment of experienced counsel who have engaged in arm's-length negotiations,[64] understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Rule 23(e).

Here, Class Counsel believe that the settlement with Defendants is fair and in the best interests of the Class. Class Counsel have very substantial experience in similar delayed generic entry cases, having been involved in many such cases for over 18 years.[65]  In fact, no other group

---

[64] *See, e.g., Elkind v. Revlon Consumer Prods. Corp., No.* 2017 U.S. Dist. LEXIS 24512*, at \* 46-48 (citing *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006)) (settlement found to be the result of "serious, informed, and non-collusive negotiations "[b]ased on counsel's representations, the agreement is the product of vigorously fought litigation and months of arm's-length negotiations between seasoned attorneys"). *See also In re Initial Pub. Offering Sec. Litig.,* 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (proposed settlement clearly the product of "serious, informed, non-collusive negotiations'" where the parties were "represented by experienced and talented counsel that share expertise in this field and an extensive knowledge of the details of this case.") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. at 102).

[65] Some or all of the attorneys here also were counsel in the following prior generic delay cases that have been resolved:  *K-Dur*, 2:01-cv-1652-SRC (D.N.J.) ECF No. 1045 (preliminary approval granted on May 23, 2017); *Prograf*, 1:11-md-02242-RWZ, ECF No. 678 (final approval granted on May 19, 2015); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv12141 (E.D. Mich.) (Cohn, J.) (Jan. 20, 2015); *Mylan Pharma., Inc. v. Warner Chilcott, LTD*, No. 12-cv-3824 (E.D. Pa.) (Diamond, J.) (Sept. 15, 2014); *In re Neurontin Antitrust Litig.*, No. 02-1830 (D.N.J.) (Hochberg, J.) (Aug. 6, 2014); *Rochester Drug Co-Operative et al. v. Braintree Labs. Inc.*, No-07-142 (D. Del.) (Robinson, J.) (May 31, 2012); *In re DDAVP Direct Purchaser Antitrust Litig.*, No.05 Civ. 2237 (S.D.N.Y.) (Seibel, J.) (Nov. 28, 2011); *In re Wellbutrin SR Antitrust Litig.*, No.04-5525 (E.D. Pa.) (Stengel, J.) (Nov. 21, 2011); *Meijer*, *Inc. v. Abbot Labs.*, N.D. Cal. No. 07-5985 (N.D. Cal.) (Wilken, J.) (August 11, 2011); *In re Nifedipine Antitrust Litig.*, MDL No. 1515  (D.D.C.) (Leon, J.) (Jan. 31, 2011); *In re OxyContin Antitrust Litig.*,

of lawyers has more experience representing classes of direct purchasers in similar cases.

Significantly, the proposed Class includes many of the same wholesalers and retail entities that

composed the classes in those prior cases, and no member of the proposed Class has objected to

any of the prior settlements. The Court has first-hand knowledge of the vigor with which Class

Counsel have prosecuted this case.

### C.     The Proposed Settlement Is Within the Range of Possible Approval

The proposed cash payout to Class members here is unquestionably significant. The

settlement easily falls "within the range of" settlements that could "possibl[y]" be worthy of final

approval as fair, reasonable, and adequate. Whether a settlement is ultimately granted *final*

approval is determined at the final fairness stage in accordance with *City of Detroit v. Grinnell*

*Corp.,* 495 F.2d 448 (2d Cir. 1974), which enumerates nine factors to be considered by courts

assessing the fairness of a settlement under Rule 23(e).[66]   At the *preliminary* approval stage, by

---

No.04 md 1603 (S.D.N.Y.) (Stein, J.) (Jan. 25, 2011); *In re Tricor Antitrust Litig*., No. 05-340
(D. Del.) (Robinson, J.) (April 24, 2009); *Meijer, Inc. et al. v. Warner Chilcott, & Barr Pharma.
Inc.  et al*., No. 05-2195 (D.D.C.) (Kollar-Kotelly J.) (April 20, 2009); *In re Children's Ibuprofen
Oral Suspension Antitrust Litig*., No. 1:04 CV-01620 (D.D.C.) (Huvelle, J.) (April 24, 2006); *In
re Remeron Antitrust Litig*, No. 03-CV-0085 (D.N.J.) (Hochberg, J.) (Nov. 9, 2005); *In re
Terazosin Hydrochloride Antitrust Litig*., No. 99-mdl-1317 (S.D. Fla.) (Seitz, J.) (Apr. 19, 2005);
*North Shore Hematology-Oncology Assoc., P.C. v. Bristol Myers Squibb Co*., No. 1:04-cv-248
(D.D.C.) (Sullivan, J.) (Nov. 30, 2004); *In re Relafen Antitrust Litig*., No. 01-12239 (D. Mass.)
(Young, J.) (April 9, 2004); *In re Buspirone Antitrust Litig*., MDL Docket No. 1413 (S.D.N.Y.)
(Koeltl, J.) (April 7, 2003); *In re Cardizem CD Antitrust Litig*., No. 99-md-1278 (E.D. Mich.)
(Edmunds, J.) (November 25, 2002).

[66] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the
reaction of the class to the settlement; (3) the stage of the proceedings and the amount of
discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to
withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of
the best possible recovery; and (9) the range of reasonableness of the settlement fund to a
possible recovery in light of all the attendant risks of litigation.  *See Wal-Mart Stores, Inc. v.
Visa U.S.A. Inc.,* 396 F.3d 96, 117 (2d Cir. 2005) (citing *Grinnell*, 495 F.2d at 463).

contrast, courts simply determine if the settlement could possibly be approved using the *Grinnell* factors.[67]

The proposed Settlement is in the best interest of the Class. The proposed Settlement, if finally approved, will result in a settlement fund of $146,000,000 million, and free Class members from continued litigation against Defendants.  Compared to litigating to final resolution, the certain immediate receipt of the proceeds of the Settlement establishes an initial presumption that the settlement is "fair, adequate, and reasonable."[68]

### D. THE PLAN OF DISTRIBUTION IS FAIR, REASONABLE, AND ADEQUATE

Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, *i.e.,* the distribution plan must be fair, reasonable and adequate.[69]  "In particular, the opinion of experienced and informed counsel is entitled to considerable weight."[70] Generally, to be found "fair and reasonable," the plan for distribution "need have only a reasonable, rational basis," when recommended "by competent and experienced class counsel."[71]

---

[67] *See Elkind v. Revlon Consumer Prods. Corp.* 2017 U.S. Dist. LEXIS 25412 at *52-53 (citing *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) ("Fleshing out these nine factors at this stage of the settlement approval process is premature. Such a review is reserved for the final stage of approval"). *See also Reade-Alvarez* 2006 U.S. Dist. LEXIS 31130 at *7 ("Clearly, some of these factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing.")

[68] *Elkind v. Revlon Consumer Products Corp.,* 2017 U.S. Dist. Lexis 24512 at *18-19)(quoting *In re Traffic Exec. Asso.--E. R.Rs.*, 627 F. 2d at 634) ("Preliminary approval 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'").

[69] *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d at 341.

[70] *Id.* (quoting *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 52 (E.D.N.Y. 2010); citing *In re Sterling Foster & Co., Inc.* Sec. Litig., 238 F. Supp. 2d 480, 486 (E.D.N.Y. 2002)).

[71] *Id.* (citing *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)).

The proposed plan of distribution meets this standard.  As described in the proposed notice to Class members, the proceeds of the proposed Settlement in this case, net of Court-approved attorneys' fees, incentive awards for named plaintiffs, and costs of litigation ("Net Settlement Fund"), will be paid to Class members who submit claims based on each Class member's *pro rata* share of the total Class' purchases of Aggrenox during the class period.  This plan is similar to plans that have previously been approved by courts in analogous cases and implemented with a high degree of success and efficiency,[72] and should be approved here as well.

### E.     The Proposed Form and Manner of Notice Are Appropriate

#### 1.     Form of Notice

Under Rule 23(e), class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court, and notice of the final Fairness Hearing.[73] For 23(b)(3) classes, the court must "direct to class members the best notice that is practical under the circumstances, including individual notice to all members who can be identified through reasonable effort"[74]  There are two components of notice:  (1) the form of the notice; and (2) the manner in which notice is sent to Class members.

---

[72] *See, e.g., In re OxyContin Antitrust Litig.*, No.04 md 1603 (S.D.N.Y.) (Stein, J.) (Jan. 25, 2011); *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05 Civ. 2237 (S.D.N.Y.) (Seibel, J.) (Nov. 28, 2011); *In re Buspirone Antitrust Litig.*, MDL Docket No. 1413 (S.D.N.Y.) (Koeltl, J.) (final settlement approval on  April 7, 2003)

[73] *See* Manual §§ 21.312, 21.633.

[74] *Elkind v. Revlon Consumer Prods. Corp.* 2017 U.S. Dist. LEXIS 24512 at *55 ("the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(b)(3)").

The proposed form of notice is based on notices in similar cases.[75]  The proposed notice is designed to alert Class members to the proposed Settlement by using a bold headline, and the plain language text provides important information regarding the terms of the proposed Settlement.[76] In addition, the proposed notice prominently features Class Counsel's contact information and directions to the firm website for Class Counsel where the Settlement documents and supplemental information will be provided, as well as contact information for the settlement administrator.

### 2.    Manner of Notice

Plaintiffs propose to send notice by first-class United States mail to each Class member, all of which are business entities with known addresses. The list of Class members was drawn from Defendants' electronic transactional sales data and/or are otherwise known to Class Counsel.  In circumstances in which all class members can be identified and reached with certainty, the best method of notice is individual notice.[77]  Individual notice by first class mail

---

[75] Defendants reviewed and agreed to the proposed form and manner of notice.

[76] The notice fairly, clearly and concisely describes in plain, easily understood language: the nature of the action; the definition of the Class certified; which Defendants are parties to the proposed Settlement; the significant terms of the proposed Settlement including the total amount Defendants have agreed to pay to the Class; that a Class member may exclude itself from the Class and the deadline and implications of doing so; that a Class member may object to all or any part of the proposed Settlement and the process and deadline for doing so, including entering an appearance through an attorney if the Class member desires; the process for obtaining a portion of the settlement proceeds; the final approval process for the proposed Settlement and Class Counsel's request for attorneys' fees of one third of the Settlement and reimbursement of all litigation expenses, and incentive awards to the named plaintiffs; the schedule for completing the settlement approval process, including deadlines for Class members to submit objections to the Settlement, the submission of the motion for final approval of the settlement, and the submission of the motion for attorneys' fees, expenses, and incentive awards to the named plaintiffs; and the binding effect of a final judgment on members of the Class. *See generally* Exhibit B to the Settlement Agreement.

[77] *See* Manual, § 21.311 at 488 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort.").

has been recognized by the courts as appropriate.[78]

### F.    The Court Should Appoint Berdon as Settlement Administrator

DPC Plaintiffs request that Berdon, whom Class Counsel has used in prior, similar cases, be appointed as the settlement administrator.[79] Berdon will oversee the administration of the Settlement, including disseminating notice to the Class, calculating each Class member's *pro rata* share of the Net Settlement Fund, and distributing settlement proceeds.

### G.    The Court Should Appoint Berdon as Escrow Agent

DPC Plaintiffs also request that Berdon serve as escrow agent, as Berdon has done in prior, similar cases.  Defendants have approved this selection.[80]

### H.    The Proposed Schedule Is Fair and Should Be Approved

As set forth in the proposed order, DPC Plaintiffs propose the following schedule for completing the Settlement approval process:

- Within 10 days from the date of filing for preliminary approval, Defendants shall serve notices pursuant to the Class Action Fairness Act of 2005;

- Within 15 days from the date of preliminary approval, notice is mailed to each member of the Class;

- Within 30 days from the date that notice is mailed to each member of the Class, Class members may request exclusion from the Class or object to the Settlement and/or the requested attorney's fees, expenses and incentive awards;

- 21 days prior to the expiration of deadline for Class members to request exclusion from the Class or object to the Settlement and/or attorney's fees, expenses and

---

[78] *See, e.g. In re Glob. Crossing Sec. & ERISA Litig.,* 225 F.R.D. at 448  (citing  *In re NASDAQ Market-Makers Antitrust Litig*., 1999 U.S. Dist. LEXIS 8889, at *2 n.3 ("for opt out class actions, due process and the Federal Rules require individual notice only to 'all class members whose names and addresses may be ascertained through reasonable effort"); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 94 S. Ct. 2140, 2150 (1974) (same);

[79] Berdon is well-reputed within the legal, accounting and financial service fields, and frequently handles claims administration in settlement of large, complex antitrust cases.

[80] *See* Exhibit D to Settlement Agreement (Escrow Agreement).

incentive awards, Class Counsel will file Class Counsel's petition for attorney's fees, expenses and incentive awards;

- 21 days after the expiration of the deadline for Class members to request exclusion from the Class or object to the Settlement and/or attorneys' fees, expenses and incentive awards, Class Counsel will file a motion and memorandum in support of final approval of the Settlement; and

- On a date to be set by the Court no less than 100 days following the issuance of an order preliminarily approving the proposed Settlement, the Court will hold a final Fairness Hearing.

This schedule is fair to Class members.  It gives Class members ample time for consideration of the Settlement and Class Counsel's request for fees, expenses and incentive awards before the deadline for opting-out and/or submitting objections.  Specifically, Class members will have the notice for 30 days before the deadline to request exclusion from the Class or object to the Settlement, and will have Class Counsel's request for fees, expenses and incentive awards for 14 days before the deadline to request exclusion from the Class or object to the Settlement and/or Class Counsel's request for fees, expenses and incentive awards. And as noted herein, the notice will, *inter alia*, explain the Settlement, inform Class members of Class Counsel's intent to move for attorney's fees, expenses and incentive awards, and direct Class members as to how they can get more information or answers to any questions they may have. In addition, the schedule allows the full statutory period for Defendants to serve their Class Action Fairness Act notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed settlement and, if they choose, advise the Court of their view.

## V.     CONCLUSION

For the foregoing reasons, DPC Plaintiffs respectfully request that the Court enter the proposed Order.

Dated: September 6, 2017

Respectfully submitted,

/s/ Joseph Opper
Joseph Opper
Bruce E. Gerstein
Noah Silverman
Ephraim R. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street Fl. 10
New York, NY 10005
212-398-0055
Email: bgerstein@garwingerstein.com
jopper@garwingerstein.com
nsilverman@garwingerstein.com
egerstein@garwingerstein.com

*Interim Lead Counsel for Direct Purchaser Class Plaintiffs*

David F. Sorensen
Daniel C. Simons
Nick Urban
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: dsorensen@bm.net
dsimons@bm.net
nurban@bm.net

Thomas M. Sobol
David S. Nalven
Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Email: tom@hbsslaw.com
davidn@hbsslaw.com
EdwardNotargiacomo@hbsslaw.com

Linda P. Nussbaum
NUSSBAUM LAW GROUP, P.C.
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel: (646) 722-8504
Email: lnussbaum@nussbaumpc.com

*Interim Executive Committee for Direct
Purchaser Class Plaintiffs*

Gerald C. Pia, Jr.
Brian C. Roche
ROCHE PIA LLC
Two Corporate Drive, Suite 248
Shelton, CT 06484
Tel: (203) 944-0235
Email: gpia@rochepia.com
broche@rochepia.com

David R. Schaefer
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney A venue
New Haven, CT 06511
dschaefer@bswlaw.com
Telephone: (203) 772-2600
Facsimile: (203) 562-2098

*Interim Co-Liaison Counsel for Direct
Purchaser Class Plaintiffs*