# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **IN RE AGGRENOX**<br>**ANTITRUST LITIGATION** | **Master Docket No. 3:14-md-02516 (SRU)**<br><br>**Judge Stefan R. Underhill** |

### DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   RELEVANT PROCEDURAL BACKGROUND ....................................................3

III.  ARGUMENT ..........................................................................................................4

      A.    Settlements of Class Actions Are Encouraged .................................................4

      B.    The Proposed Settlement Is Fair, Reasonable and Adequate ...........................5

            1.    The Settlement is Procedurally Fair.....................................................5

            2.    The Settlement is Substantively Fair....................................................7

                  a.    The First *Grinnell* Factor – the Complexity,
                        Expense and Likely Duration of the Litigation –
                        Favors Approval of the Settlement...........................................7

                  b.    The Second *Grinnell* Factor – the Reaction of the
                        Class to the Settlement – Favors Approval of the
                        Settlement. ................................................................................8

                  c.    The Third *Grinnell* Factor – the Stage of the
                        Proceedings and the Amount of Discovery
                        Completed – Favors Approval of the Settlement .....................10

                  d.    The Fourth *Grinnell* Factor – The Risk of
                        Establishing Liability – Favors Approval of the
                        Settlement..................................................................................11

                  e.    The Fifth *Grinnell* Factor – The Risk of
                        Establishing Damages – Favors Approval of the
                        Settlement..................................................................................12

                  f.    The Sixth *Grinnell* Factor – The Risks of
                        Maintaining the Class Action Through Trial –
                        Favors Approval of the Settlement...........................................13

                  g.    The Seventh *Grinnell* Factor – the Ability of the
                        Defendant to Withstand a Greater Judgment – Is
                        Neutral .......................................................................................14

                  h.    The Eighth and Ninth *Grinnell* Factors – the Range
                        of Reasonableness of the Settlement in Light of the

Best Possible Recovery and in Light of all the Attendant Risks of Litigation – Favor Approval of the Settlement ....................................................................14

C.  The Court Should Approve the Plan of Allocation .........................................16

IV.  THE CLASS ACTION FAIRNESS ACT HAS BEEN COMPLIED WITH ................19

V.  CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Federal Cases**

*Babcock v. C. Tech Collections, Inc.*,
  2017 U.S. Dist. LEXIS 44548 (E.D.N.Y. Mar. 27, 2017) ............................................... *passim*

*Brown v. SeaDog Brewpub BV, L.L.C.*,
  2017 U.S. Dist. LEXIS 4454 (M.D. Fla. Jan. 12, 2017) ...........................................................7

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .......................................................................................2, 7, 15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...................................................................................................13

*Eisen v. Carlisle & Jacquelin*,
  479 F.2d 1005 (2d Cir. 1973) ......................................................................................13

*Fleisher v. Phx. Life Ins. Co.*,
  2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ............................................. *passim*

*Guippone v. BH S&B Holdings L.L.C.*,
  2016 U.S. Dist. LEXIS 134899 (S.D.N.Y. Sept. 23, 2016) ..............................8, 9, 10, 11, 13

*Hall v. AT&T Mobility L.L.C.*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) ..............................................................................6

*In re Credit Default Swaps Antitrust Litig.*,
  2016 U.S. Dist. LEXIS 54587 (S.D.N.Y. Apr. 25, 2016) ........................................................8

*In re Lucent Techs., Inc. Sec. Litig.*,
  307 F. Supp. 2d 633 (D.N.J. 2004) .......................................................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................................12

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) ............................................................9

*Kiefer v. Moran Foods, L.L.C.*,
  2014 U.S. Dist. LEXIS 106924 (D. Conn. July 31, 2014) ............................................ *passim*

*King Drug Co. of Florence v. Cephalon, Inc.*,
  2017 U.S. Dist. LEXIS 137601 (E.D. Pa. Aug. 28, 2017) ....................................................14

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.* ,
  708 F.2d 1081 (7th Cir. 1983) .............................................................................................13

*Seijas v. Republic of Arg.*,
    2017 U.S. Dist. LEXIS 64398 (S.D.N.Y. Apr. 27, 2017) ........................................................4

*U.S. Football League v. Nat'l Football League*,
    644 F. Supp. 1040 (S.D.N.Y. 1986) ....................................................................................13

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) ..............................................................................................................4

**Docketed Cases**

*In re K-Dur Antitrust Litig.*,
    No. 01-1652 (D.N.J.) ...........................................................................................................17

*In re Provigil Antitrust Litig.*,
    No. 06-1797 (E.D. Pa.) ........................................................................................................17

*In re Doryx Antitrust Litig. (Mylan Pharms., Inc., v. Warner Chilcott Public Ltd.)*,
    No. 12-cv-3824 (E.D. Pa.) ...................................................................................................17

*In re Skelaxin Antitrust Litig.*,
    No. 12-cv-83 (E.D. Tenn.) ...................................................................................................17

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    No. 05-cv-2237 (S.D.N.Y.)...................................................................................................17

*In re Miralax Antitrust Litig.*,
    No. 07-cv-142 (D. Del.) .......................................................................................................17

*In re Prograf Antitrust Litig.*,
    No.11-md-2242 (D. Mass.)...................................................................................................17

*In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*,
    No.06-cv-52 (D. Del.)...........................................................................................................17

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    Case No. 12-cv-2409 (D. Mass.) .........................................................................................12

*In re Tricor Direct Purchaser Antitrust Litig.*,
    No. 05-cv-340 (D. Del.) .......................................................................................................17

*In re Wellbutrin XL Antitrust Litig.*,
    No. 08-cv-2431 (E.D. Pa.) ...................................................................................................17

*Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*,
    Case No. 07-cv-07343 (S.D.N.Y.) .......................................................................................12

**Federal Statutes**

28 U.S.C. § 1715 (2012) ...........................................................................................................19

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................3, 5

## I.      INTRODUCTION

Pursuant to the Preliminary Approval Order entered by the Court on September 19, 2017, members of the direct purchaser class had until November 3, 2017 to opt out of the class or object to the Direct Purchaser Class Plaintiffs' ("DPCPs") $146 million settlement with Defendants[1] (the "Settlement") and/or Class Counsel's request for attorneys' fees, reimbursement of expenses and incentive awards. *See* Dkt No. 685 at ¶¶ 12, 17. There have been no opt-outs or objections to either the Settlement or Class Counsel's fee submission. Further, all four named class representatives (Miami-Luken, Inc., Rochester Drug Co-Operative, Inc., American Sales Company, LLC, and Cesar Castillo, Inc.) have submitted declarations to the Court affirmatively supporting both the Settlement and Class Counsel's fee submission,[2] and the three class members with the largest claims (AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp.) gave their approval to the Settlement, which disclosed that Class Counsel would seek attorneys' fees of one-third, reimbursement of reasonable costs and expenses, and incentive awards of $75,000.00 for each of the class representatives, prior to its

---

[1] Defendants are Boehringer Ingelheim Pharma GmbH & Co. KG, Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") and Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries, Ltd., Barr Pharmaceuticals, Inc. (n/k/a Barr Pharmaceuticals, LLC), Barr Laboratories Inc., Duramed Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.) and Duramed Pharmaceutical Sales Corp. (n/k/a Teva Sales and Marketing, Inc. ("Teva").

[2] *See* Second Gerstein Dec. at Ex. 1 (Declaration of Michael Faul); Ex. 2 (Declaration of Joseph Brennan); Ex. 3 (Declaration of Antoinette M. Coakley; and Ex. 4 (Declaration of Luis Vazquez). All exhibits are annexed to the supporting Declaration of Bruce E. Gerstein. DPCPs hereby incorporate by reference the previous Declaration of Bruce E. Gerstein, including exhibits thereto, that was annexed to Class Counsel's fee submission. *See* Dkt No. 707-2 ("Gerstein Dec."). To avoid confusion, DPCPs will refer herein to the previous declaration as "Gerstein Dec." and to the instant declaration as "Second Gerstein Dec."

execution.[3] The absence of any objections, as well as the supportive views expressed by class members, deserves great weight in the Court's consideration of whether to grant final approval to the Settlement. Many of these class members have participated in numerous other Hatch-Waxman antitrust cases (most of which were prosecuted by the same counsel as here), and thus in supporting both the Settlement and Class Counsel's fee submission, recognize the legal hurdles and risks involved in this hard-fought litigation and the excellent outcome obtained – immediate and substantial financial compensation and the conclusion of long-pending, complex litigation that could otherwise have resulted in a trial and appeal(s) of indeterminate length.

The fairness, reasonableness and adequacy of the Settlement is also strongly supported by an analysis of the "*Grinnell* factors," derived from *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F. 3d 43 (2d Cir. 2000), which courts in the Second Circuit use to determine whether a class settlement warrants final approval. As detailed below, analysis of each of these factors demonstrates that the class's support for the Settlement is well-founded. This highly complex litigation has been pending for more than four years, and every issue in the case – whether related to liability, causation, and/or damages – has been hotly contested. From the outset, Defendants presented sophisticated defenses to all of DPCPs' claims, and the parties proceeded to engage in substantial discovery and significant motion practice, including two petitions for interlocutory appeals to the Second Circuit Court of Appeals. While DPCPs have always been confident in their claims (and remain so), the litigation, as with all litigation, has involved

---

[3] *See* Dkt No. 683 (Ex. 1)(Settlement Agreement) at pp. 3, 12-13.

inherent risks. Absent the settlement, DPCPs would have had to obtain (and maintain) class certification and take the case through summary judgment, trial and beyond.

For the above reasons, and as detailed further below, DPCPs, on behalf of the class, respectfully request that the Court enter the accompanying proposed order which, *inter alia*: (a) grants final approval to the Settlement pursuant to Federal Rule of Civil Procedure 23(e); and (b) approves DPCPs' plan of allocation, which provides a fair and reasonable method of determining each class member's allocated share of the Settlement based upon each class member's actual purchases of Aggrenox.

## II.    RELEVANT PROCEDURAL BACKGROUND

On August 15, 2017, DPCPs and Defendants entered into the Settlement, pursuant to which the Defendants agreed pay $146 million into an escrow fund for the benefit of the class in exchange for dismissal of DPCPs' claims against Defendants with prejudice, and certain releases. On September 6, 2017, DPCPs filed the Settlement with the Court and requested that, *inter alia*, the Court certify a settlement class, grant preliminary approval to the Settlement and direct that notice of the Settlement be given to class members. *See* Dkt No. 667.

On September 19, 2017, the Court concluded that the Settlement "was arrived at by arm's-length negotiations by highly experienced counsel after years of litigation [and] falls within the range of possibly approvable settlements," certified a settlement class and granted preliminary approval to the Settlement. *See* Dkt No. 685 at ¶ 10. The Court further directed that notice of same be given to class members. *Id.* at ¶ 11.

On October 4, 2017, Class Counsel, through the Court-appointed claims administrator, caused notice of the Settlement to be given to class members via direct mailing. The notice detailed, *inter alia*: (a) the certification of a settlement class; (b) the terms of the Settlement; (c)

the procedures and deadline for opting out of the settlement class; (d) the procedures and deadline for objecting to either the Settlement and/or Class Counsel's fee submission; and (e) the location, date and time of the Court's final fairness hearing. *See* Dkt No. 707-2 (Gerstein Dec. at Ex. 2 (Affidavit of Michael Rosenbaum Regarding Mailing of Notice of Settlement)).

As noted above, on November 3, 2017, the deadline for class members to exclude themselves from the settlement class, or object to the Settlement and/or Class Counsel's fee submission, expired. No opt-out notices were received, and no objections to either the Settlement or Class Counsel's fee submission, which had been publicly filed and made otherwise available on October 13, 2017, were received. *See* Second Gerstein Dec. at Ex. 5 (Affidavit of Michael Rosenbaum Regarding Lack of Requests for Exclusion and Objections to the Settlement).

## III.   ARGUMENT

### A.   Settlements of Class Actions Are Encouraged

It is well-settled that the settlement of litigation is favored and encouraged, particularly in complex class action litigation, since settlement promotes the interest of judicial economy and encourages litigants to determine their respective rights among themselves. *See, e.g., Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts . . . and, presumptively, the parties to the compromise in question possessed the rights to adjust their differences."); *Seijas v. Republic of Arg.,* 2017 U.S. Dist. LEXIS 64398, *21 (S.D.N.Y. Apr. 27, 2017) ("Public policy favors settlement in class actions based on the reduction in litigation and related expenses and the risks inherent in maintaining class action litigation over long periods of time."); *Fleisher v. Phoenix Life Ins. Co.,* 2015 U.S. Dist. LEXIS 121574, *16-17 (S.D.N.Y. Sept. 9, 2015) ("The settlement of complex litigation is strongly favored. The Second Circuit is 'mindful of the strong judicial policy in favor of settlements, particularly in the class action context.'") (internal quotation omitted).

### B.      The Proposed Settlement Is Fair, Reasonable and Adequate

Federal Rule of Civil Procedure 23(e)(2) provides that a court may approve a class action settlement if it is "fair, reasonable and adequate." *See* Fed. R. Civ. P. 23(e)(2). Approval rests within the sound discretion of the district court, and in exercising such discretion, "courts should give proper deference to the private consensual decision of the parties," (*Fleisher*, 2015 U.S Dist. LEXIS 121574 at *17 (internal quotation omitted)), as well as the general judicial policy favoring settlement. *Babcock v. C. Tech. Collections, Inc.,* 2017 U.S. Dist. LEXIS 44548, *10 (E.D.N.Y. March 27, 2017).

In the Second Circuit, courts evaluating whether to grant final approval to a settlement consider both procedural fairness (the negotiation process leading to the settlement) and substantive fairness (the terms of the settlement and whether the *Grinnell* factors weigh in favor of approval). *See generally Babcock,* 2017 U.S. Dist. LEXIS 44548 at *10; *Fleisher*, 2015 U.S Dist. LEXIS 121574 at *17-19.

### 1.      The Settlement is Procedurally Fair

If a proposed settlement is the product of arm's-length negotiations conducted by capable counsel who are experienced in class action litigation and have had the benefit of meaningful discovery, then the settlement is entitled to a strong presumption of fairness. *See Kiefer v. Moran Foods, LLC,* 2014 U.S. Dist. LEXIS 106924, *39-40 (D. Conn. Aug. 5, 2014). *See also Babcock,* 2017 U.S. Dist. LEXIS 44548 at *11 (counsel was versed in consumer class action litigation and informed about substance of case, and settlement was reached under court supervision); *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *19-21 (settlement procedurally fair where counsel was

experienced and informed, and settlement was reached with assistance of experienced mediator).[4]

Here, as detailed in the Gerstein Declaration, counsel for both parties are well-versed in complex antitrust class action litigation. Moreover, during the four-plus years that the instant hotly-contested litigation has been pending, the parties exchanged a voluminous amount of documents, took and/or defended depositions, and engaged in extensive motion practice, which rendered counsel for both parties well-equipped to make their respective informed assessments of the case. Finally, the mediation process took place over two days and was overseen by former federal district court judge, the Honorable Layn R. Phillips. *See generally* Gerstein Dec.; *Kiefer*, 2014 U.S. Dist. LEXIS 106924 at *40-41 ("Class Counsel . . . evaluated the claims and defenses, engaged in substantial discovery and motion practice, and reached a settlement after a two-day-long mediation…."). Indeed, as previously noted, in granting preliminary approval to the Settlement, this Court specifically recognized that the Settlement was the product of "arm's-length negotiations by highly experienced counsel after years of litigation.…" *See* Dkt No. 685 at ¶ 10.

For the above reasons, the Settlement is entitled to the strong presumption of procedural fairness.

---

[4] Settlement negotiations that take place before an independent mediator "virtually insure[] that the negotiations were conducted at arm's length and without collusion between the parties." *Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010) (citation omitted). *See also Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *21 ("The extensive participation of an experienced mediator also 'reinforces that the Settlement Agreement is non-collusive'").

### 2.      The Settlement is Substantively Fair

Courts within the Second Circuit analyze nine factors – the *Grinnell* factors – to determine whether a settlement is substantively fair and thus warrants final approval:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit,* 495 F. 2d at 463.   In applying these factors, a court's task is to determine "whether the settlement is within a range that reasonable and experienced attorneys could accept considering all relevant risks, facts and circumstances." *Babcock*, 2017 U.S. Dist. LEXIS 44548 at *14. *See also Fleisher,* 2015 U.S. Dist. LEXIS 121574 at *19 (not every factor must weigh in favor of settlement; rather, court must consider totality of factors in light of circumstances). In performing its analysis, a court should "neither substitute its judgment for that of the parties who negotiated the settlement nor conduct a mini-trial of the merits of the action." *Babcock*, 2017 U.S. Dist. LEXIS 4454 at *13-14.

As detailed below, application of each of the *Grinnell* factors to the relevant risks, facts and circumstances demonstrates that the Settlement is substantively fair and should therefore be granted final approval.

### a.      The First *Grinnell* Factor – the Complexity, Expense and Likely Duration of the Litigation – Favors Approval of the Settlement

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive and lengthy. As one court in the Second Circuit has recently recognized,

"[a]ntitrust cases are often challenging to . . . litigate," and can be "extremely expensive." *In re Credit Default Swaps Litig.,* 2016 U.S. Dist. LEXIS 54587, *24 (S.D.N.Y. Apr. 25, 2016). Such has been the case here, and would inevitably have continued to be so absent the Settlement. The instant litigation is indisputably complex, and had it continued, the parties would have had to engage in expert discovery (one of the most costly aspects of antitrust litigation) and proceed to trial. Likewise, expert discovery, class certification and summary judgment briefing, and trial (including any resulting appeals) would likely have taken several years. Thus, continued litigation would have required significant additional time and resources with no certainty of a favorable outcome. By contrast, the Settlement provides the Class with immediate, substantial and definite relief without the delay, risk, and uncertainty of continued litigation.  *See Kiefer,* 2014 U.S. Dist. LEXIS 106924 at *42 (continued litigation through trial "would be complex, expensive and long"); *Babcock,* 2017 U.S. Dist. LEXIS 44548 at *14 (continued litigation of consumer protection class action would have resulted in delay, risk and further expense whereas settlement provided class members immediate compensation); *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *22-23 (insurance class action was "indisputably complex" and class faced potentially lengthy and costly continued litigation).

Accordingly, analysis of the first *Grinnell* factor strongly supports approval of the Settlement.

### b.     The Second *Grinnell* Factor – the Reaction of the Class to the Settlement – Favors Approval of the Settlement.

The "reaction of the class to the settlement is 'perhaps the most significant factor to be weighed in considering its adequacy.'" *Guippone v. BH S&B Holdings LLC*, 2016 U.S. Dist. LEXIS 134889, *16 (S.D.N.Y. Sept. 23, 2016)(internal quotation omitted). *See also Fleisher,* 2015 U.S. Dist. LEXIS 121574 at *23 (same). If no class members have lodged objections, that

factor "may itself be taken as evidencing the fairness of a settlement." *Id.* (internal quotation omitted).

Here, not a single class member has opted out of the class or objected to any aspect of the Settlement. To the contrary, as aforementioned, all four named class representatives (Miami-Luken, Inc., Rochester Drug Co-Operative, Inc., American Sales Company, LLC, and Cesar Castillo, Inc.) have submitted declarations to the Court affirmatively supporting both the Settlement and Class Counsel's fee submission, and the three class members with the largest claims (AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp.) were required to give, and did give, their approval to the Settlement, which disclosed that Class Counsel would seek attorneys' fees of one-third, reimbursement of reasonable costs and expenses, and incentive awards of $75,000.00 for each of the class representatives, prior to its execution. With the exception of other Hatch-Waxman antitrust cases, most of which have been litigated by the same counsel as here, support of this magnitude is unprecedented. Such support is overwhelming evidence of the Settlement's fairness and adequacy, particularly since the class is composed of business entities, all of whom are well-positioned to oppose any settlement that they deem unreasonable. *See, e.g., In re Remeron Antitrust Litig.,* 2005 U.S. Dist. LEXIS 27013, *16 (D.N.J. Nov. 9, 2005) ("The absence of objections from the sophisticated Class is particularly significant here because many Class members here have also been members of classes certified in other pharmaceutical antitrust actions . . . and are therefore well suited to evaluate a proposed settlement in an action of this type") (citations omitted); *Guippone*, 2016 U.S. Dist. LEXIS 134899 at *17 ("The fact that no class members objected or opted out is a strong indication of fairness, satisfying the second *Grinnell* factor"); *Kiefer*, 2014 U.S. Dist.

LEXIS 106924 at *42-43 (second *Grinnell* factor satisfied where no class member objected or opted out of settlement).

Accordingly, analysis of the second *Grinnell* factor strongly supports approval of the Settlement.

**c.    The Third *Grinnell* Factor – the Stage of the Proceedings and the Amount of Discovery Completed – Favors Approval of the Settlement**

The third *Grinnell* factor considers the amount of discovery completed, with a "focus[] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *26 (internal quotation omitted). *See also Kiefer,* 2014 U.S. Dist. LEXIS 106924 at * 43 ("The proper question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating'") (quoting *In re Warfarin Sodium Antitrust Litig.,* 391 F. 3d 516, 537 (3d Cir. 2004)); *Babcock*, 2017 U.S. Dist. LEXIS 44548 at *15-16 (factor ensures that parties "have a clear view of the strengths and weaknesses of their cases").

At the time the Settlement was reached, the parties had reviewed documents, engaged in other written discovery, participated in depositions and engaged in extensive motion practice on numerous topics (including but not limited to the applicable legal standard that would ultimately be used by a jury at trial to evaluate whether Defendants' agreement was unlawful and issues pertaining to market power). As a result, Class Counsel, who have litigated numerous similar cases over nearly two decades, were not only intimately familiar with the strengths and weaknesses of DPCPs' claims and the various defenses that had been put forth, but also with the future disputes that likely would have arisen had the litigation progressed, such as during class certification and summary judgment. Indeed, it was this intimate familiarity that was called upon by Class Counsel in the process of negotiating the Settlement. *See, e.g., Guippone*, 2016 U.S.

10

Dist. LEXIS 134899 at *17 (parties engaged in substantial discovery and analyzed the application of the law to the facts); *Babcock*, 2017 U.S. Dist. LEXIS 44548 at *16 (discovery obtained was "sufficient for plaintiffs' counsel to analyze the merits of the case and damages before engaging in settlement negotiations"); *Kiefer*, 2014 U.S. Dist. LEXIS 106924 at *43 (parties had exchanged "substantial quantities of documents" and taken depositions).

Accordingly, analysis of the third *Grinnell* factor strongly supports approval of the Settlement.

> ### d.   The Fourth *Grinnell* Factor – The Risk of Establishing Liability – Favors Approval of the Settlement

In assessing the risks of liability, a court need not decide the merits of the case, resolve unsettled legal questions, or attempt to predict the outcome. *See Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *29. Rather, a court "need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* (internal quotation omitted). *See also Guippone*, 2016 U.S. Dist. LEXIS 134889 at *18 ("When evaluating the risks of establishing liability, a court 'must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.") (internal quotation omitted).

While Class Counsel have always been confident in DPCPs' claims, Defendants have been represented by some of the best law firms in the country who have vigorously represented their clients and continuously maintained that Defendants' agreement was not unlawful. Thus, notwithstanding Class Counsel's confidence, there was no guarantee that DPCPs would have succeeded in establishing liability through trial and appeal. *See, e.g., Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *30 ("While Plaintiffs and Class Counsel believe that they would prevail in their claims . . . they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial and appeals."). In conducting settlement

negotiations, Class Counsel was cognizant of the numerous and multi-layered risks and complexities facing the class through continued litigation, including those pertaining to liability. Absent the Settlement, these risks and complexities could have resulted in the class receiving no recovery at all, as has occurred in some prior Hatch-Waxman antitrust cases.[5]

Accordingly, analysis of the fourth *Grinnell* factor strongly supports approval of the Settlement.

e.   **The Fifth *Grinnell* Factor – The Risk of Establishing Damages – Favors Approval of the Settlement**

Akin to the fourth *Grinnell* factor, this factor focuses on the risks in establishing damages. Here, causation was a hotly contested matter in that defendant Teva asserted that due to capacity, formulation and ingredient supply issues, it was not capable of entering the market with less-expensive generic Aggrenox any earlier than its actual market entry. Further, although the parties had not yet exchanged formal expert reports on damages at the time of the Settlement, the parties' respective experts would have inevitably disputed the existence of and/or quantification of damages. *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (the issue of damages at trial "would inevitably involve a battle of the experts . . . [with no] certainty [as to] which testimony would be credited"). While DPCPs are confident they could have proven overcharge damages (assuming that a jury found in favor of DPCPs on liability), antitrust history is replete with examples of plaintiffs receiving little or no damages despite having engaged in extensive litigation – even when they succeeded in

---

[5] For example, jury trials were lost in the cases of *Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*, Case No. 07-cv-07343 (S.D.N.Y.) and *In re Nexium (Esomeprazole) Antitrust Litig.,* Case No. 12-cv-2409 (D. Mass.) (on causation).

establishing liability.  *See, e.g., United States Football League v. National Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd.*, 842 F.2d 1335 (2d Cir. 1988); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1983) (antitrust judgment was remanded for new trial on damages); *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vac'd*, 417 U.S. 156 (1974) (after two trips to the Second Circuit and one to the Supreme Court, plaintiff and the putative class recovered nothing). Here, the Settlement alleviates the uncertainty of DPCPs prevailing upon liability, but losing on damages.

Accordingly, analysis of the fifth *Grinnell* factor strongly supports approval of the Settlement.

### f.    The Sixth *Grinnell* Factor – The Risks of Maintaining the Class Action Through Trial – Favors Approval of the Settlement

"The risk of maintaining a class through trial is present in any class action." *Guippone*, 2016 U.S. Dist. LEXIS 134889 at *19. Numerous courts have recognized that settlement benefits class members by eliminating the disk of a denial of class certification, or a later decertification. *See Babcock*, 2017 U.S. Dist. LEXIS 44548 at *16 (settlement eliminated "risk, expense and delay" that would have resulted when class certification would have been contested); *Kiefer*, 2014 U.S. Dist. LEXIS 106294 at *44-45 (same).

Here, although the parties had not briefed class certification at the time the Settlement was reached, there is no doubt that Defendants would have vigorously contested a motion for class certification, as has been done in nearly every class action case in which Class Counsel has participated. While DPCPs are confident in the arguments that they would advance in favor of class certification, there is no guarantee that a direct purchaser class would have been certified.

Moreover, as noted above, even if certified, a 23(f) petition presents risk, as illustrated by a recent case in which Class Counsel is participating, in which the initial certification of a litigation class was reversed after a 23(f) appeal by the defendants there, and on remand, the district court declined to certify the class.[6]

Accordingly, analysis of the sixth *Grinnell* factor strongly supports approval of the Settlement.

> **g.      The Seventh *Grinnell* Factor – the Ability of the Defendant to Withstand a Greater Judgment – Is Neutral**

The seventh *Grinnell* factor inquires whether the defendant(s) is able to withstand a greater judgment. But even if that is the case, "this factor, standing alone, does not suggest that the settlement is unfair." *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *33 (internal quotation omitted). *See also id.* (that a defendant is able to pay more than it offers in settlement does not in itself indicate that the settlement is unreasonable or inadequate).

Here, DPCPs do not contend that the Settlement is fair because Defendants could not withstand a greater judgment, and thus DPCPs do not believe that this risk is relevant.

Accordingly, this *Grinnell* factor is neutral in the consideration of whether to grant final approval of the Settlement.

> **h.      The Eighth and Ninth *Grinnell* Factors – the Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of all the Attendant Risks of Litigation – Favor Approval of the Settlement**

---

[6] *See King Drug Co. of Florence, Inc. v. Cephalon, Inc.,* 2017 U.S. Dist. LEXIS 137601 (E.D. Pa. Aug. 28, 2017).

Typically, courts evaluate the final two *Grinnell* factors together by considering and weighing "the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *34 (quoting *Grinnell*, 492 F. 2d at 462). Determining "whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *34 (internal quotation omitted). Rather, "there is a range of reasonableness . . . a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* Further, the settlement amount is judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Id.* at *34-35. Indeed, as the Second Circuit held in *Grinnell*, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of Detroit*, 495 F. 2d at 455.

Through analyses employed in similar cases, DPCPs made an estimate of damages for purposes of settlement negotiations, taking into account, *inter alia*, the price declines and rate of substitution that occurred once generic Aggrenox actually entered the market. DPCPs also took into account the potential risks that DPCPs faced concerning class certification, establishing liability, causation and/or quantifying damages during a jury trial. In the context of such risks, DPCPs believe that the Settlement, which offers class members immediate and substantial cash recovery versus the risk of receiving nothing at all through continued litigation, represents an excellent recovery. *See*, *e.g., Babcock*, 2017 U.S. Dist. LEXIS 44548 at *18 (in FDCA class action, settlement of $90.7 million "well within the range of reasonableness given the risks and

delay of continued litigation measured against the value of obtaining certain compensation more quickly"); *Kiefer,* 2014 U.S. Dist. LEXIS 106924 at *46-46 (in FLSA class action, "substantial" settlement of $4.5 million weighed in favor of final approval).

Accordingly, analysis of the eighth and ninth *Grinnell* factors strongly supports approval of the Settlement.

### C.     The Court Should Approve the Plan of Allocation

"A distribution plan is fair and reasonable as long as it has a 'reasonable, rational basis.'" *Fleisher*, 2015 U.S. Dist. LEXIS 121574 at *41 (internal quotation omitted). Numerous courts have approved plans of allocation which would distribute funds to class members on a *pro rata* basis as fair, adequate and reasonable.  *See, e.g., Fleisher,* 2015 U.S. Dist. LEXIS 121574 at *42 (collecting cases); *In re Lucent Tech., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable").

Here, the proposed Plan of Allocation meets this standard. Like many similar plans in analogous cases that Class Counsel has participated in, and as set forth more fully in the proposed Plan of Allocation (the "Plan of Allocation") (Second Gerstein Dec. at Ex. 6), and the Declaration of Jeffrey J. Leitzinger, Ph.D. Related to Proposed Allocation Plan and Net Settlement Fund Allocation (the "Leitzinger Dec.") (Second Gerstein Dec. at Ex. 7), DPCPs propose to allocate the Settlement Fund, net of any Court-approved attorneys' fees, expenses, and incentive awards ("Net Settlement Fund") in proportion to purchases of branded Aggrenox units made by each class member, which will in turn reflect the amount of relative damages

sustained by each class member.[7] Thus, the Plan of Allocation would allocate the net settlement funds to class members who submit claims on a *pro rata* basis efficiently and fairly by relying upon the electronic data that has been produced in this litigation so as to make submission of claims by class members a simple matter of verifying the purchase data provided to each of them on individualized claim forms that will be mailed to them by the Court-approved claims administrator.[8]  Under the proposed plan, the claims administrator, working with Dr. Leitzinger and his economic consulting firm, will prepare and send these individualized claim forms to each member of the Class within forty-five days of the Court issuing an Order finally approving the Settlement and the plan.  *See* Plan of Allocation at ¶ 1.1.

---

[7] Class Counsel have proposed similar plans of allocation in many similar cases involving the suppression of generic competition. *See, e.g.*, *In re K-Dur Antitrust Litig.*, No. 01-1652 (D.N.J.), Dkt No. 1050-3 (*pro rata* shares of settlement fund computed on basis of class members' purchases of brand); *In re Provigil Antitrust Litig.*, No. 06-1797 (E.D. Pa.), Dkt No. 864-17 (same); *In re Doryx Antitrust Litig. (Mylan Pharms., Inc., v. Warner Chilcott Public Ltd.)*, No. 12-cv-3824 (E.D. Pa.), Dkt No. 452-3 (same); *In re Skelaxin Antitrust Litig.*, No. 12-cv-83 (E.D. Tenn.), Dkt No. 788 (same); *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-cv-2237 (S.D.N.Y.), Dkt No. 101 (S.D.N.Y.) (same); *In re Miralax Antitrust Litig.*, No. 07-cv-142 (D. Del.), Dkt No. 240 (same); *In re Prograf Antitrust Litig.*, No.11-md-2242 (D. Mass.), Dkt No. 667-2 (same); *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, No.06-cv-52 (D. Del.), Dkt No. 192 (same); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-340 (D. Del.), Dkt No. 536-1 (same); *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2431 (E.D. Pa.), Dkt No. 481-1 (same), and courts have approved the allocation plans in each instance.

[8] *See* Second Gerstein Dec. at Ex. 8 (Proof of Claim and Release). This allocation method is consistent with what class members were advised in the notice that was mailed to them. *See* Second Gerstein Dec. at Ex. 5 at Ex. 1, Question 8 ("Your share of the Net Settlement Fund will depend on the amount of Aggrenox you directly purchased from Defendants between December 1, 2009 through June 30, 2015. Generally, those who purchased more Aggrenox during that period will get a higher recovery. Your share of the Net Settlement Fund will also depend on the number of valid claim forms that Class Members submit. If less than 100% of the Class sends in a claim form, you could get a larger *pro rata* share.").

The Plan of Allocation designed by Dr. Leitzinger provides a fair and reasonable method of determining each class member's proportionate share of the Net Settlement Fund in proportion to the share of overcharges each suffered.  It does so based on each class member's purchases of Aggrenox during the time period at issue.  *See* Plan of Allocation at ¶¶ 2.1-2.4. Among other things, the Plan of Allocation describes: (1) the method of calculating each class member's *pro rata* share of the Net Settlement Fund; (2) the contents and method of disseminating a claim form; (3) the manner in which claims will be initially reviewed and processed; (4) the method of notifying class members of the amount that each class member will receive from the Net Settlement Fund; and (5) the process for handling and resolving challenged claims, if any.  The Plan of Allocation also provides timetables for completing various tasks related to calculating and distributing each class member's *pro rata* share of the Net Settlement Fund.[9]

Similar plans of allocation have been approved and employed successfully in multiple previous Hatch-Waxman direct purchaser class cases, such as most recently in the *K-Dur* litigation.[10]  Moreover, the Plan of Allocation proposes that Dr. Leitzinger be retained to assist in making allocation computations under the Plan. *See* Plan of Allocation at ¶¶ 2.3, 3.1.

Accordingly, the proposed Plan of Allocation is fair and reasonable, and should be approved by the Court.

---

[9] For instance, the Plan of Allocation sets a deadline for class members to submit claim forms, and authorizes Class Counsel to extend the deadline by forty-five days without further approval from this Court. *See* Plan of Allocation at ¶ 1.3.

[10] *See In re Neurontin Antitrust Litig.,* Case No. 02-cv-01830 (Dkt No. 109 at Ex. 2)(Plan of Allocation). *See also* n. 7, *supra*.

## IV.     THE CLASS ACTION FAIRNESS ACT HAS BEEN COMPLIED WITH

The Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA") requires that the

Defendants notify appropriate state and federal officials of the proposed settlement and to allow

90 days to pass before final approval of the proposed settlement may be entered. *See* 28 U.S.C. §

1715(d).  Class Counsel was informed by Defendants that such notification was given on

September 15, 2017. The 90-day period will expire on December 14, 2017, allowing the Court to

approve the settlement as of that date.

## V.     CONCLUSION

For the reasons detailed above, DPCPs respectfully request that the Court enter the

proposed Order.


Dated: November 22, 2017                                    Respectfully submitted,

                                                           /s/ Bruce E. Gerstein
                                                           Joseph Opper
                                                           Bruce E. Gerstein
                                                           Noah Silverman
                                                           Ephraim R. Gerstein
                                                           GARWIN GERSTEIN & FISHER LLP
                                                           88 Pine Street Fl. 10
                                                           New York, NY 10005
                                                           212-398-0055
                                                           Email: bgerstein@garwingerstein.com
                                                           jopper@garwingerstein.com
                                                           nsilverman@garwingerstein.com
                                                           egerstein@garwingerstein.com

                                                           *Lead Counsel for Direct Purchaser Class
                                                           Plaintiffs*

                                                           David F. Sorensen
                                                           Daniel C. Simons
                                                           Nick Urban
                                                           BERGER & MONTAGUE, P.C.
                                                           1622 Locust Street

Philadelphia, PA 19103
Tel: (215) 875-3000
Email: dsorensen@bm.net
dsimons@bm.net
nurban@bm.net

Thomas M. Sobol
David S. Nalven
Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Email: tom@hbsslaw.com
davidn@hbsslaw.com
EdwardNotargiacomo@hbsslaw.com

Linda P. Nussbaum
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Tel: (917) 438-9189
Email: lnussbaum@nussbaumpc.com

*Executive Committee for Direct Purchaser
Class Plaintiffs*

Gerald C. Pia, Jr.
Brian C. Roche
ROCHE PIA LLC
Two Corporate Drive, Suite 248
Shelton, CT 06484
Tel: (203) 944-0235
Email: gpia@rochepia.com
broche@rochepia.com

David R. Schaefer
BRENNER, SALTZMAN & WALLMAN LLP
271 Whitney Avenue
New Haven, CT 06511
dschaefer@bswlaw.com
Telephone: (203) 772-2600
Facsimile: (203) 562-2098

*Co-Liaison Counsel for Direct Purchaser
Class Plaintiffs*