IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **IN RE AGGRENOX ANTITRUST LITIGATION**<br><br><br>**ALL END-PAYOR CASES** | **Master Docket No. 3:14-cv-02516-(SRU)**<br><br>**Judge Stefan R. Underhill** |

**END-PAYOR CLASS PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT
CLASS, APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL,
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT,
APPROVAL OF FORM AND MANNER OF NOTICE TO CLASS,
AND PROPOSED SCHEDULE FOR FINAL APPROVAL**

115314

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 1

II.     BACKGROUND .......................................................................................................... 4

        A.      Plaintiffs' Claims and Procedural History.......................................................... 4

        B.      Negotiation of the Settlement ............................................................................. 5

III.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE
        BEEN MET.................................................................................................................. 7

        A.      Rule 23(a)'s Requirements Are Satisfied. ......................................................... 10

                1.      Numerosity ............................................................................................. 10

                2.      Commonality .......................................................................................... 10

                3.      Typicality ............................................................................................... 12

                4.      Adequacy of Representation .................................................................. 12

        B.      The Requirements of Rule 23(b)(3) Are Also Satisfied. .................................. 13

                1.      Common Questions of Law and Fact Predominate. ............................... 13

                2.      A Class Action Is Superior to Other Methods of Adjudicating the Class Claims.................. 19

                3.      Class Counsel Meet the Requirements for Appointment Under Rule 23(g). ......................... 20

IV.     THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY
        APPROVAL. ............................................................................................................. 21

        A.      The Proposed Settlement Was the Result of Serious and Informed Negotiations by
                Experienced Counsel. ....................................................................................... 22

        B.      Class Counsel Are Highly Experienced in Antitrust Litigation Alleging Delayed
                Generic Drug Competition. ............................................................................... 23

        C.      The Proposed Settlement Is Well Within the Realm of Possible Approval. ................... 24

        D.      The Plan of Allocation is Fair, Reasonable, and Adequate. .................................... 25

        E.      The Proposed Form and Manner of Notice Are Appropriate........................................ 26

                1.      Form of Notice........................................................................................ 26

                2.      Manner of Notice ................................................................................... 27

        F.      The Court Should Appoint A.B. Data, Ltd. as Settlement Administrator........................ 28

        G.      The Court Should Appoint Bank Leumi USA as Escrow Agent. ................................. 28

i

H.      The Court Should Approve the Proposed Schedule for Final Approval. ....................................... 28

I.      The Court Should Stay Further Litigation Between the Parties. .................................................... 30

V.      CONCLUSION ................................................................................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Coca-Cola Co.*,
  No. 09 CV 395 (DLI)(RML),
  2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013) ...................................................14

*Allen v. Dairy Farmers of Am., Inc.*,
  No.  5:09-cv-230, 2012 U.S. Dist. LEXIS 164718 (D. Vt. Nov. 19, 2012)............................14

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. 2010) ...........................................................................................26

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................7, 14, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)..................................................................................................13, 14

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004)..................................................................................................15

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ..........................................................................................25

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S.  477 (1977) ............................................................................................................15

*Capsolas v. Pasta Res. Inc.*,
  No. 10 Civ. 5595 2012 WL 1656920 (S.D.N.Y. May  9, 2012)............................................22

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons,  Inc.*,
  502 F.3d 91 (2d Cir. 2007) ......................................................................................12, 13, 15

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................................................21

*DG ex rel. Stricklin v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ............................................................................................16

*Eisen v. Carlisle &  Jacquelin*,
  417 U.S. 156,  94 S. Ct. 2140 (1974) ...................................................................................28

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. CV 14-2484 (JS) (AKT), 2017 U.S. Dist.  LEXIS 24512 (E.D.N.Y. Feb. 17,
  2017).................................................................................................................21, 23, 25, 27

*Freeland v. AT&T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ............................................................................15

*FTC v. Actavis, Inc.*,
    570 U.S. 136, 133 S. Ct. 2223 (2013) ......................................................................6

*Hernandez v. Anjost Corp.*,
    No. 11 CIV. 1531 AT, 2013 WL 4145952 (S.D.N.Y. Aug. 14, 2013) ...................22

*Hernandez v. Merrill Lynch & Co.,*
    2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) ...................................22

*In re Abbott Labs. Norvir Antitrust Litig.*,
    No. C 04-1511, 2007 U.S. Dist. LEXIS 44459 (N.D.Cal. June 11, 2007) ...............9

*In re Aggrenox Antitrust Litig.,*
    199 F. Supp. 3d 662 (D. Conn. 2016) .......................................................................5

*In re Aggrenox Antitrust Litig.,*
    94 F. Supp. 3d 224 (D. Conn. 2015) ..........................................................................5

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. MDL No. 1775, 2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) ...................16

*In re Am. Int'l Grp. Secs. Litig.*,
    689 F.3d 229 (2d Cir. 2012) .................................................................................7, 8

*In re Buspirone Patent Litig.*,
    210 F.R.D. 43 (S.D.N.Y. 2002) .......................................................................passim

*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) ...................................................9, 17, 18, 24

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ..................................................................................24

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 97487 (S.D.N.Y. Aug. 15, 2011) .........................11, 12, 19

*In re Elec. Books Antitrust Litig.*,
    No. 11 MD 2293 (DLC), No. 11 MD 2293 DLC, 2014 WL 1282293 (S.D.N.Y.
    Mar. 28, 2014 ......................................................................................................16

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    256 F.R.D. 82 (D. Conn. 2009) .........................................................................15, 16

*In re Flonase Antitrust Litig.*,
    284 F.R.D. 207 (E.D. Pa. 2012) .........................................................................9, 15

*In re Glob. Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................25, 27

*In re Hydrogen Peroxide Antitrust Litig.,*
   552 F.3d 305 (3d Cir. 2008)...............................................................................14

*In re Processed Egg Prod. Antitrust Litig.,*
   312 F.R.D. 171 (E.D. Pa. 2015) .........................................................................14

*In re Initial Pub. Offering Sec. Litig.,*
   226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................23

*In re K-Dur Antitrust Litig.,*
   686 F.3d 197 (3d Cir. 2012)...........................................................16, 17, 18, 24

*In re Lidoderm Antitrust Litig.,*
   No. 14-md-2521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .........................9, 15

*In re Lorazepam & Clorazepate Antitrust Litig.,*
   205 F.R.D. 369 (D.D.C. 2002)..........................................................................9, 26

*In re Metlife Demutualization Litig.,*
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................22, 25, 26

*In re NASDAQ Market Makers Antitrust Litig.,*
   169 F.R.D. 493 (S.D.N.Y. 1996) .............................................15, 16, 23, 27

*In re Neurontin Antitrust Litig.,*
   No. 02-1390, 2011 WL 286118 (D.N.J. Jan. 25, 2011) ............................16, 17, 24

*In re Nexium (Esomeprazole) Antitrust Litig.,*
   297 F.R.D. 168 (D. Mass. 2013) ....................................................9, 16, 17

*In re Nexium Antitrust Litig.,*
   777 F.3d 9 (1st Cir. 2015) .................................................................................16

*In re Nifedipine Antitrust Litig.,*
   246 F.R.D. 365 (D.D.C. 2007) .....................................................................18, 24

*In re OxyContin Antitrust Litig.,*
   2010 U.S. Dist. LEXIS 146003 (S.D.N.Y. Sept. 27, 2010) ....................11, 12, 19, 24

*In re Pet Food Prods. Liab. Litig.,*
   629 F.3d 333 (3d Cir. 2010)...............................................................................8

*In re Petrobras Securities,*
   862 F.3d 250 (2d Cir. 2017) .............................................................................20

*In re Prograf Antitrust Litig.*,
   1:11-md-02242-RWZ (D. Mass.) ............................................................24

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004) ......................................................passim

*In re Remeron End-Payor Antitrust Litig.*,
   No. 02-2007, 2005 U.S. Dist. LEXIS 27011 (D.N.J. Sep. 13, 2005) ..................9, 24

*In re Sterling Foster & Co., Inc.* Sec. Litig.,
   238 F. Supp. 2d 480 (E.D.N.Y. 2002) ......................................................26

*In re  Telik, Inc. Sec. Litig.,*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................22

*In re  Terazosin Hydrochloride Antitrust Litig.*,
   No. 99-mdl-1317 (S.D. Fla.) ..............................................................24

*In re Traffic Exec. Ass'n E.R.Rs.*,
   627 F.2d 631 (2d Cir. 1980) ..........................................................21, 25

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989) ........................................................22

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*,
   280 F.3d 124 (2d Cir. 2001) ..............................................................14

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) ....................................................9, 16, 26

*In re Wellbutrin Sr Direct Purchaser Antitrust Litig.*,
   No. 04-cv-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008) ............................17, 18

*In re Wellbutrin XL Antitrust Litig.*,
   No. 08-2433, 2011 U.S. Dist. LEXIS 90697 (E.D. Pa. Aug. 12, 2011) ......................9

*J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*,
   225 F.R.D. 208 (S.D. Ohio 2003) ......................................................17, 18

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) .............................................................16

*Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*,
   2008 U.S. Dist. LEXIS 123291 (S.D.N.Y. Apr. 8, 2008) ..........................11, 12, 19

*Maley v. Del Global Techs. Corp*.,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................25

*Marisol A. v. Giuliani*,
   126 F.3d 372, 376 (2d Cir.1997) ...........................................................................10

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ..................................................................................22

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
   246 F.R.D. 293 (D.D.C. 2007) ....................................................................12, 17, 18

*Mims v. Stewart Title Guar. Co.*,
   590 F.3d 298 (5th Cir. 2009) .................................................................................16

*Mylan Pharma., Inc. v. Warner Chilcott, LTD*,
   No. 12-cv-3824 (E.D. Pa.) ......................................................................................24

*Nichols v. SmithKline Beecham Corp.*,
   No. 00-6222, 2005 WL 950616 (E.D.Pa. Apr. 22, 2005) ..................................9, 26

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ...........................................................................21

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003) ............................................................................19

*Palacio v. E*TRADE Fin. Corp.*,
   No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ..........................22

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................................23

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ..................................................................................10

*Ross v. Am. Express Co. (In re Currency  Conversion Fee Antitrust Litig.)*,
   264 F.R.D. 100 (S.D.N.Y. 2010) .....................................................................15, 16

*Spencer v. Hartford Fin. Servs. Group, Inc.*,
   256 F.R.D. 284 (D. Conn. 2009) .....................................................................10, 12

*Sullivan v. Barclays* PLC, No. 13-cv-2811 (PKC),
   2017 U.S. Dist. LEXIS 25756 (S.D.N.Y. Feb. 21, 2017) ......................................15

*Sullivan v. DB Invs, Inc.*,
   667 F.3d 273 (3d Cir.  2011) .................................................................................16

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) ....................................................................................14

*Tart v. Lions Gate Entm't Corp.*,
  No. 14-CV-8004 (AJN), 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) ..............7

*Teva Pharms. USA, Inc. v. Abbott Labs.*,
  252 F.R.D. 213 (D. Del. 2008)........................................................................passim

*True v. Am. Honda Motor Co.*,
  749 F.Supp.2d 1052 (C.D. Cal. 2010) ...................................................................24

*Tyson Foods, Inc. v. Bouaphakeo*,
  __ U.S. __, 136 S. Ct. 1036 (2016) ........................................................................14

*United States v. City of N.Y.*,
  276 F.R.D. 22 (E.D.N.Y. 2011) ..............................................................................14

*Vista Healthplan, Inc. v. Warner Holdings Company III, Ltd.*,
  246 F.R.D. 349 (D.D.C. 2007)..........................................................................9, 26

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ....................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ...................................................................................25

*Wilson v. DirectBuy Inc.*,
  No. 3:09-CV-590 (JCH), 2011 U.S. Dist. LEXIS 51874 (D. Conn. May 16, 2011) ..............22

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969)..............................................................................................16

## Other Authorities

2 W. Rubenstein, *Newberg on Class Actions* § 4:49 (5th ed. 2012) ............................................14

6 Wm. B. Rubinstein, *Newberg on Class Actions* § 18:5 (4th ed. 2011).....................................11

7B FEDERAL PRACTICE AND PROCEDURE § 1781 ............................................................15

*Manual for Complex Litigation*, § 21.632 (4th ed. 2005) .............................................................22

## Rules

Fed. R. Civ. P. 23.................................................................................................................19, 20

On behalf of a putative class of end-payor purchasers, the named plaintiffs ("End-Payor Purchaser Plaintiffs" or "EPPs")[1] respectfully submit this memorandum in support of their unopposed motion for certification of a settlement class, preliminary approval of a proposed settlement reached by EPPs and Defendants,[2] approval of the proposed form and manner of notice to the class, approval of the Plan of Allocation, and related relief to begin the process for final approval.

## I.     INTRODUCTION

During the months following announcement of a proposed settlement between the Direct Purchaser Class Plaintiffs and Defendants, EPPs continued to aggressively prosecute their claims against Defendants. Now, after years of vigorous litigation and extended arm's-length negotiations, including two intensive mediation sessions with a highly respected neutral, Plaintiffs and Defendants have achieved a substantial all-cash $54,000,000 settlement (the "Settlement"), conditioned on the Court's approval. Plaintiffs seek the Court's certification of the

---

[1] EPPs are A.F. of L.-A.G.C. Building Trades Welfare Plan; AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund; International Union of Operating Engineers Local 49 Health & Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; Painters District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health & Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137, 137A, 137B, 137C, and 137R; The Electrical Workers' Insurance Fund; and Sergeant's Benevolent Association Health & Welfare Fund.

[2] Defendants are Boehringer Ingelheim Pharma GmbH & Co KG, Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") and Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries, Ltd., Barr Pharmaceuticals, Inc. (n/k/a Barr Pharmaceuticals, LLC), Barr Laboratories Inc., Duramed Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.) and Duramed Pharmaceutical Sales Corp. (n/k/a Teva Sales and Marketing, Inc. ("Teva") (collectively, "Defendants").

1

settlement class of end-payor purchasers (the "EPP Class" or "Class") and preliminary approval of the Settlement.

Pursuant to the terms of the Settlement, Defendants will deposit $54,000,000.00 into an escrow fund for the benefit of all members of the EPP Class. In exchange, EPPs will release their claims against Defendants and agree to dismissal of this action with prejudice. The complete terms of the Settlement are memorialized in the parties' Settlement Agreement, dated December 22, 2017 (the "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Marvin A. Miller ("Miller Declaration").

The Settlement warrants the Court's preliminary approval. It resulted from intense, protracted negotiations among highly experienced counsel whose intimate knowledge with the relevant facts and surrounding legal landscape ideally situates them to assess the merits of their respective claims and defenses, and the risks of proceeding to trial. Further, Court-appointed interim counsel for the Class have a wealth of experience with antitrust class litigation generally and have also represented, and are now representing, end payors in other class actions specifically alleging, as EPPs do here, antitrust injury caused by unlawful delayed entry of generic versions of branded pharmaceutical drugs.

The Settlement assures that all eligible Class members will receive a substantial cash settlement payment immediately, thereby avoiding the delay, risk and uncertainty that would inhere in prosecuting this action to judgment, and likely beyond in appellate review. The Settlement also spares the judicial resources and enormous costs that would be consumed by further litigation. Defendants do not oppose the relief requested in this motion, which is brought pursuant to the Settlement.

2

Accordingly, Plaintiffs respectfully request that the Court enter the proposed order attached as Exhibit A to the Settlement Agreement (the "Preliminary Approval Order"), which provides for the following:

1.      Certification of the proposed Indirect Purchaser Class for purposes of the Settlement;

2.      Appointment of the named Indirect Purchaser Class Plaintiffs as representatives of the Class;

3.      Appointment as Co-Lead Counsel, Liaison Counsel and the Executive Committee (collectively, "Class Counsel") for the Indirect Purchaser Class, the interim counsel previously appointed by the Court in its June 16, 2014 Order (ECF No. 95), with the same roles and responsibilities described in that Order;

4.      Preliminary approval of the Settlement Agreement and attached exhibits necessary to effectuate the Settlement, the Plan of Allocation (Exhibit 4 to the Miller Declaration), and the proposed forms of notice to the Class in substantially the form of Exhibit C to the Settlement Agreement (the "Class Notice" or "Notice");

5.      Appointment of A.B. Data, Ltd. to serve as claims administrator and to assist Class Counsel in disseminating Class Notice;

6.      Appointment of Bank Leumi USA as escrow agent to serve as Escrow Agent pursuant to the terms of the Escrow Agreement;

7.      Approval of a proposed schedule for obtaining final approval of the Settlement, including a fairness hearing (the "Fairness Hearing") at which the Court will consider, among other things: (a) Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment in substantially the form of Exhibit C to the Settlement Agreement (the

"Final Order and Judgment"); (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and incentive awards to the named EPPs as class representatives; and (c) Plaintiffs' request for dismissal of this action against Defendants with prejudice; and

8.      A stay of further litigation between the EPP Class Plaintiffs and the Defendants pending disposition of the anticipated motion for final approval of the Settlement.

## II.    BACKGROUND

### A.      Plaintiffs' Claims and Procedural History

Plaintiffs are sixteen union health and welfare funds that, as relevant here, have asserted claims on behalf of themselves and the absent Class members for damages under antitrust and consumer-protection statutes of 31 jurisdictions.[3] In December 2013, Plaintiffs filed the first of several putative class actions on behalf of end payors alleging that Defendants violated these laws by unlawfully delaying the availability of less expensive generic versions of the prescription pharmaceutical drug Aggrenox by means of unlawful conduct including "reverse payment" agreements.[4]

On June 6, 2014, after aggregation with other similar actions, EPPs filed their End-Payor Consolidated Class Action Complaint. (ECF No. 120.)  Defendants moved jointly to dismiss that complaint, and after extensive briefing and oral argument, on March 23, 2015, the Court largely

---

[3] They are Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

[4] *See FTC v. Actavis, Inc.*, 570 U.S. 136, 133 S. Ct. 2223, 2227 (2013) ("*Actavis*") (holding that "reverse payment agreements" may violate the Sherman Act).

denied the motion and granted Plaintiffs leave to replead certain claims.[5] (ECF No. 229.) EPPs did so in their First Amended End-Payor Consolidated Class Action Complaint (the "Complaint"), filed on May 15, 2015. (ECF No. 263.) Defendants again moved to dismiss (ECF No. 229), and on August 9, 2016, the Court again denied the motion in large part. (ECF No. 490.)[6]

In a decision issued a day earlier, on August 8, 2016, the Court denied Defendants' request for discovery aimed at defining a relevant product market to include products beyond branded Aggrenox and its generic equivalents.[7] (ECF No. 489.) The parties then engaged in extensive discovery, accompanied by flurries of contentious motion practice to define the scope and protocol of discovery practice. Documentary discovery has been voluminous, amounting to millions of pages of produced documents, as well as fact depositions.

### B.    Negotiation of the Settlement

After becoming thoroughly familiar with the relevant facts generated through discovery, the parties agreed to mediation with former federal judge Layn R. Phillips (retired).[8] Before mediation, the parties submitted comprehensive mediation briefs to Judge Phillips outlining the competing strengths and weaknesses of their respective cases. The arm's-length mediation

---

[5] *See In re Aggrenox Antitrust Litig.,* 94 F. Supp. 3d 224 (D. Conn. 2015).

[6] The Court certified its March 23, 2015 and August 9, 2016 Orders for interlocutory review but in the both instances the Second Circuit denied Defendants' petition to appeal.

[7] *In re Aggrenox Antitrust Litig.,* 199 F. Supp. 3d 662, 663 (D. Conn. 2016). The Second Circuit also denied Defendants' petition for interlocutory review of this order. (ECF No. 582.).

[8] Judge Phillips is a retired United States District Court Judge from the Western District of Oklahoma who is highly experienced in mediating complex litigation, including antitrust class actions.

continued for two full days.[9] Throughout these negotiations, Class Counsel brought their extensive experience litigating similar delayed generic entry cases to the task of evaluating the proposed settlement against the case's merits. They did so with an eye on relevant decisions issued by other courts, notably the Supreme Court's decision in *Actavis*, and on the opinions issued by this Court during the course of this litigation.

Despite good faith efforts to resolve their differences, Plaintiffs and Defendants were unable to reach agreement during those two days of mediation. But the parties did not abandon their efforts.  They continued throughout the next two months, negotiating directly and often through the mediator, to seek compromise and reach resolution, but those efforts too failed. Finally, the parties agreed to a second mediation session with Judge Phillips' colleague. The second round proved fruitful. In mid-September 2017, the parties successfully hammered out the key terms of a settlement.  Several issues remain unresolved, however, and the parties continued to work diligently over the next three months to negotiate the final terms, which are now memorialized in the Settlement Agreement.

The proposed Settlement provides that Defendants will pay $54,000,000 in cash for the benefit of all Indirect Purchaser Class members in exchange for Plaintiffs' release of claims against Defendants (as specified in paragraph 14 of the Settlement Agreement) and dismissal of their action with prejudice. As is typical for settlements of this nature and magnitude, the Settlement Agreement also provides that Defendants will receive a pro-rated credit from their cash payment for any Class members who elect to opt out of the Class. In fairness to members who remain in the Class, the Settlement also provides that, in order to help defray Class

---

[9] Counsel for both EPPs and the Direct Purchaser Plaintiffs participated in this mediation session with Defendants. It produced the settlement of the direct purchaser claims which the Court has since approved.

Counsel's fees that would otherwise be paid only by those remaining members, Defendants will make available an additional amount equal to 10% of any settlement they reach with former members who opt out of the Class (see Paragraph 5c of the Settlement Agreement).

Attached as Exhibit B to the Settlement Agreement is the suggested form of notice, approved by Defendants, to be disseminated to the Class.  The plan for disseminating notice to the Class is detailed in the Declaration of Linda Young, which is attached to the Miller Declaration as Exhibit 3.  As discussed in more detail in Section E below, the parties propose sending individual notice to the Third Party Payor ("TPP") members of the Class by first-class mail, as well as publication notice designed to reach all Class members, including the consumer members.  The notice clearly explains the key terms of the Settlement, the members' options and their consequences, and the deadlines for exercising their rights.

## III.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET.

Plaintiffs and Defendants have agreed, subject to the Court's review and approval, to certification of the Class for purposes of the Settlement. The requirements of Rule 23 apply equally to certification of a class, whether for purposes of settlement or continued litigation, except that "a district court need not inquire whether the case, if tried, would present intractable management problems."[10] Thus, the Court must still assess "whether the proposed class satisfies Rule 23(a)'s four threshold requirements," including: (1) numerosity (whether "the class is so numerous that joinder of all members is impracticable"), (2) commonality (whether "there are questions of law or fact common to the class"), (3) typicality (whether "the claims or defenses of

---

[10] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("*Amchem*"); *see also In re Am. Int'l Grp. Secs.  Litig.*, 689 F.3d 229, 239 (2d Cir. 2012) (quoting *Amchem*); *Tart v. Lions Gate Entm't Corp.*, No.  14-CV-8004 (AJN), 2015 U.S. Dist. LEXIS 139266, at *9 (S.D.N.Y. Oct. 13, 2015).

the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation (whether "the representative parties will fairly and adequately protect the interests of the class").[11] The Court must also determine whether the Class is appropriate under Rule 23(b)(1), (2), or (3).[12]

Here, pursuant to Rule 23(c)(1)(B), the Class is defined as follows: [13]

> All persons or entities in the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, who, in one of the listed states, indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for branded or generic Aggrenox, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, from November 30, 2009 through December 22, 2017.

> The following persons or entities are excluded from the proposed Indirect Purchaser Class:

> a.  Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

> b.  All federal or state governmental entities, except cities, towns, or municipalities with self-funded prescription drug plans;

> c.  All persons or entities who purchased Aggrenox for purposes of resale or who purchased directly from the Defendant or their affiliates;

> d.  Fully insured health plans (plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members);

> e.  Pharmacy Benefits Managers (but not excluding affiliates, subsidiaries or related companies who would otherwise be included in the class definition);

---

[11] *In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d at 238 (citing *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010)).

[12] *Id.*

[13] This definition, which is the one set forth in the proposed Order for Preliminary Approval (Exhibit A to the Settlement Agreement), amends the definition alleged in the Complaint.

     f.      Humana Inc. and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239);

     g.     Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana ("BCBSLA");

     h.     Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

     i.      Co-payers (consumers) who did not purchase branded Aggrenox before July 1, 2015 *and* who have a flat generic co-pay, *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

     j.     All persons who purchased or received branded or generic Aggrenox through a Medicaid program only;

     k.     The judges in this case and any members of their immediate families;

     l.      All persons or entities who purchased Aggrenox in the State of Rhode Island prior to July 15, 2013; and

     m.    All persons or entities who purchased Aggrenox in the State of Oregon before 2010.

Courts have certified similar classes in numerous other antitrust actions alleging delayed entry of generic prescription drugs, including for purposes of litigation as well as settlement.[14]

---

[14] *See, e.g., In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168 (D. Mass. 2013); *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213 (D. Del. 2008) ("*TriCor*"); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 264 (D. Del. 2002), *aff'd, In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *10 (E.D.Pa. Apr. 22, 2005); *In re Remeron End-Payor Antitrust Litig.*, No. 02-2007, 2005 U.S. Dist. LEXIS 27011, at *19, 35 (D.N.J. Sep. 13, 2005); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2433, 2011 U.S. Dist. LEXIS 90697, at *52-53 (E.D. Pa. Aug. 12, 2011); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 374, 396 (D.D.C. 2002); *Vista Healthplan, Inc. v. Warner Holdings Company III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007); *In re Abbott Labs. Norvir Antitrust Litig.*, No. C 04-1511, 2007 U.S. Dist. LEXIS 44459 at *22-23, 30-31 (N.D.Cal. June 11, 2007).

**A.      Rule 23(a)'s Requirements Are Satisfied.**

1.      <u>Numerosity</u>

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is

impracticable. To meet this requirement, joinder need not be impossible.[15] Rather, the court must

look at the class as a whole and assess if "the difficulty or inconvenience of joining all members

of the class make use of the class action appropriate."[16] "Relevant considerations include judicial

economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class

members, financial resources of class members, [and] the ability of claimants to institute

individual suits."[17]

The numerosity requirement is easily met here, where the Class comprises at least 42,000

TPP members, and likely millions of consumer members, geographically dispersed in 31

jurisdictions throughout the United States.

2.      <u>Commonality</u>

Rule 23(a)(2) requires that there be questions of law or fact common to the class. "The

commonality requirement is met if plaintiffs' grievances share a common question of law or of

fact." But "[i]t does not require that all questions of law or fact raised be common."[18] Rather,

Rule 23(a)(2) requires only that common questions exist "at the core of the cause of action

alleged." Where the question of law involves "standardized conduct of the defendant towards

---

[15] *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible.").

[16] *Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284, 289-90 (D. Conn. 2009) (citing *Robidoux*, 987 F.2d at 935).

[17] *Id.*

[18] *Spencer*, 256 F.R.D. at 290 (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997)).

10

members of the proposed class . . . the commonality requirement of Rule 23(a)(2) is usually met."[19]

Commonality may easily be established in this antitrust case where "[a]n allegation of … monopolization [ ] or conspiracy will be viewed as a central or single overriding issue or a common nucleus of operative fact and will establish a common question."[20] Here, as in all delayed generic entry cases, all of the Class members allege injury due to the same misconduct.[21] The numerous common issues here include whether Boehringer possessed market power during the relevant time period; whether the conduct alleged in the Complaint constituted a conspiracy in restraint of trade and violated the state-law analogues of Section 1 of the Sherman Act; whether the conduct alleged in the Complaint constituted a conspiracy to monopolize or monopolization in violation of the state-law analogues of Section 2 of the Sherman Act; whether Boehringer made a large and unjustified payment to Teva to delay its introduction of less expensive generic version of Aggrenox; whether Teva was capable of entering, and would have entered, the market earlier but for Boehringer's payment; and what were the immediate and longer term effects on supply and pricing in the relevant market caused by Teva's delayed entry, including the extent of overcharges incurred by EPPs.

---

[19] *Spencer*, 256 F.R.D. at 290.

[20] 6 Wm. B. Rubinstein, *Newberg on Class Actions* § 18:5 (4th ed. 2011).

[21] *See, e.g.*, *Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis*, 2008 U.S. Dist. LEXIS 123291, at *6 (S.D.N.Y. Apr. 8, 2008) ("*Arava*") (determining "that the foregoing  classwide claims, issues, and defenses are questions of law or fact common to the Direct  Purchaser Class that satisfy Rule 23(a)(2)."); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2011 U.S. Dist. LEXIS 97487, at *6 (S.D.N.Y. Aug. 15, 2011) (similar); *In re OxyContin Antitrust Litig.*, 2010 U.S. Dist. LEXIS 146003, at *41 (S.D.N.Y. Sept. 27, 2010) (similar); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 57 (S.D.N.Y. 2002) (similar).

3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."[22] The typicality requirement is satisfied even if some class members have larger damage claims than others because "typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff."[23] Courts have uniformly found that alleged delayed generic entry satisfies the typicality prong because, as EPPs do, the class representatives seek identically caused overcharges of the same kind for both themselves and the other members of the class.[24] The same finding is appropriate here.

4.    Adequacy of Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." This inquiry requires a court to consider "whether (1) the plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation."[25] EPPs pass the first test because

---

[22] *Spencer,* 256 F.R.D. at 291.

[23] *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 301-02 (D.D.C. 2007) ("*Ovcon*").

[24] *See, e.g.*, *Arava*, 2008 U. S. Dist. LEXIS 123291 at *7 (determining "LWD alleges on behalf of the proposed Direct Purchaser Class the very same manner of injury from the very same course of conduct that it complains of for itself, and LWD asserts on its own behalf the same legal theory that it asserts for the Class."); *DDAVP*, 2011 U.S. Dist. LEXIS 97487, at *6 (similar); *Oxycontin*, 2010 U.S. Dist. LEXIS 146003, at *42 (similar); *Buspirone*, 210 F.R.D. at 57 (similar).

[25] *Spencer*, 256 F.R.D. at 292 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (citation omitted).

12

they share with all Class members the same financial incentive to prove that they were overcharged as a result of Defendants' conduct and to be compensated for the overcharge. As the Court recognized when it appointed Class Counsel on an interim basis, the team of lawyers assembled to represent the interests of the Class members is highly qualified and brings many years of experience litigating antitrust cases arising from unlawful generic suppression. Since their appointment Class Counsel have continued to demonstrate their ability to effectively prosecute this litigation on behalf of the Class.

**B.      The Requirements of Rule 23(b)(3) Are Also Satisfied.**

EPPs also satisfy both prongs of Rule 23(b)(3), which requires (1) that the Court find that common questions of law or fact predominate over individual questions (the "predominance" requirement); and (2) that a class action is superior to other available methods of adjudication (the "superiority" requirement).

1.      Common Questions of Law and Fact Predominate.

Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'"[26] Predominance requires that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[27] "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"[28] In *Amgen*, the Supreme Court explained that "Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each "elemen[t] of [her] claim [is] susceptible to classwide proof" but rather that

_____

[26] *Cordes*, 502 F.3d at 108.

[27] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013) (emphasis added).

[28] *Id.*

"common questions 'predominate over any questions affecting only individual [class] members.'"[29] As the Supreme Court recently explained, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"[30] "[T]he inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[31] So long as common issues and evidence carry greater significance for the case as a whole, the presence of individual issues will not defeat predominance.[32] Rather, the plaintiff need only "demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members."[33]

Here, a close look reveals that, just as in earlier cases alleging suppression of generic drug competition,[34] the predominance standard is satisfied. With respect first to proving liability,

_____

[29] *Id.* at 1196.

[30] *Tyson Foods, Inc. v. Bouaphakeo.*__ U.S. __, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:49, pp. 195–196 (5th ed. 2012)).

[31] *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quoting *Amchem*, 521 U.S. at 623

[32] *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015) ("The mere existence of individual issues will not be sufficient to defeat certification. Rather, the balance must tip such that these individual issues predominate."); *United States v. City of N.Y.*, 276 F.R.D. 22, 48 (E.D.N.Y. 2011) ("The mere fact that there are a great many people with plausible claims that the City has discriminated against them is hardly a reason to conclude that the individual issues that will arise in their claims will diminish the economies achieved by resolving those issues common to the claims of all the City's victims in a single class proceeding."); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI)(RML), 2013 U.S. Dist. LEXIS 184232, at *88 n.35 (E.D.N.Y. July 17, 2013) ("'[A]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)'") (quoting *In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 138 (2d Cir. 2001).

[33] *In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 171, 183 (E.D. Pa. 2015) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008)) (emphasis added); *Allen v. Dairy Farmers of Am., Inc.*, No.  5:09-cv-230, 2012 U.S. Dist. LEXIS 164718, at *32 (D. Vt. Nov. 19, 2012) (citing *Hydrogen  Peroxide*, 552 F.3d at 311-312).

[34] *See supra* n.14.

14

common issues predominate because evidence of unlawful conduct causing antitrust injury "will not vary among class members."[35] Were Class members to pursue their cases individually, each would have to establish the identical course of conduct, using the same documents and witnesses as their supporting evidence. As for proving antitrust violations, then, common issues not only predominate but are virtually exclusive.[36]

Second, demonstrating antitrust injury similarly presents predominantly common issues, some of which are mentioned above.[37] Antitrust injury, or impact, requires only a showing of

---

[35] *In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996).

[36] *Lidoderm*, 2017 WL 679367, at *13; *TriCor*, 252 F.R.D. at 232 ("[i]n the case at bar, denying certification would require each individual plaintiff to file suit individually, at the expense of judicial economy and litigation costs for each party. This action involves the resolution of numerous complex issues of law and fact common to all putative class members. As class certification provides an opportunity for the efficient resolution of the entire class in a single forum, the court concludes that the class action mechanism is a superior litigation approach"); *Relafen*, 221 F.R.D. at 287 ("resolution of the end payor plaintiffs' numerous claims by class action would provide substantial savings in time, effort, and expense") (quoting 7B FEDERAL PRACTICE AND PROCEDURE § 1781 ("since antitrust actions typically present many complicated issues, the courts should utilize these … provisions to settle the common issues on a representational basis to avoid congesting the courts with separate actions requiring the repetitive adjudication of the same matters")); *Flonase*, 284 F.R.D. at 232-34 ("[B]oth fairness and efficiency dictate that I certify the class in this case; otherwise, the numerous individual class members would be forced to file suit individually, producing numerous identical issues in each case that would waste judicial resources and leave all parties vulnerable to unfair inconsistencies.").

[37] *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 86-87 (D. Conn. 2009) (citing *Cordes*, 502 F.3d at 105); *Ross v. Am. Express Co. (In re Currency Conversion Fee Antitrust Litig.)*, 264 F.R.D. 100, 114 (S.D.N.Y. 2010) (same); *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 149 (S.D.N.Y. 2006) ("To establish antitrust injury, "a plaintiff must show (1) an injury-in-fact; (2)  that has been caused by the violation; and (3) that is the type of injury contemplated by the  statute.") (citing *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004)); *Sullivan v. Barclays* PLC, No. 13-cv-2811 (PKC), 2017 U.S. Dist. LEXIS 25756, at *45 (S.D.N.Y. Feb. 21, 2017) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S.  477, 489 (1977) ("A plaintiff 'must prove antitrust injury, which is to say injury of the type the  antitrust laws were intended to prevent and that flows from that which makes defendants' acts  unlawful.'").

"some damage" due to a defendant's antitrust violation.[38] When applying the predominance

requirement of Rule 23(b)(3), the Court "need only determine whether the element of injury-in-

fact can be proven by evidence common to the class."[39] A plaintiff need only show "widespread

injury to the class."[40] The fact that some class members may ultimately be shown to have

sustained no injury does not preclude certification.[41]

---

[38] *See Ross,* 264 F.R.D. at 115-16 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc*., 395 U.S. 100, 114 n.9 (1969) ("'plaintiff's burden of proving the fact of damage under § 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage'").

[39] *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig*., 256 F.R.D. at 90. *Comcast* presents no problem to plaintiffs. They have one theory of injury and one consistent theory of damages. *See also In re Nexium Antitrust Litig*., 777 F.3d 9, 19 (1st Cir. 2015) (in affirming certification of similar end-payor class, rejecting challenge under *Comcast* where "the plaintiffs' theory and model for damages would only require that the defendants pay aggregate damages equivalent to the injury that they caused.").

[40] *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252 (D. Del. 2002) (quoting *NASDAQ*, 169 F.R.D. at 523); *In re Neurontin Antitrust Litig.*, No. 02-1390, 2011 WL 286118, at *8 n. 23 (D.N.J. Jan. 25, 2011) ("widespread injury  to the class" sufficient).

[41] *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MDL No. 1775, 2014 U.S. Dist. LEXIS 180914, at *219-21  (E.D.N.Y. Oct. 15, 2014) (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC,* 571 F.3d 672, 677 (7th Cir. 2009)) ("Nothing in our  class certification jurisprudence requires that every single class member suffer an impact or  damages, regardless of the size of the class. To the contrary, courts have routinely recognized  what an unrealistic burden this would put on plaintiffs"); *In re Elec. Books Antitrust Litig.*, No.  11 MD 2293 (DLC), No. 11 MD 2293 DLC, 2014 WL 1282293, at *22 (S.D.N.Y. Mar. 28, 2014) (citing *Kohen,* 571 F.3d at 677) ("[I]t is widely recognized that 'a class will often include persons who have not  been injured by the defendant's conduct . . . Such a possibility or indeed inevitability does not  preclude class certification"); *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 221-22 (3d Cir. 2012) (that some class members have "zero" or "negative" damages does not defeat certification if "all (or virtually all) members of the  proposed class" were harmed); *Sullivan v. DB Invs, Inc.*, 667 F.3d 273, 306 (3d Cir.  2011) (*en banc*) (rejecting argument that would require "each class member possess[] a valid  claim under the applicable substantive laws"); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188,  1198 (10th Cir. 2010); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009); *Nexium*, 296 F.R.D. at 58 (same).

EPPs rely on evidence of class-wide injury consistent with that supporting certification in similar generic delay cases.[42] The Declaration of EPP Class Plaintiffs' economics expert, Dr. Meredith Rosenthal,[43] is attached as Exhibit 2 to the Miller Declaration.  She opines that a standard methodology exists to calculate damages that may have occurred as a result of the delayed entry of generic Aggrenox, which "can be uniformly applied to all of the Class members."[44] Under this approach, commonly used in antitrust cases, actual market prices and quantities are compared to those that would have occurred in the market "but for" the delayed entry. That difference is then used to estimate the overcharges and damages to the Class caused by the suppressed competition.[45] As Dr. Rosenthal states, because "[i]t is well understood in economic literature and similar litigation that post-generic launch, the vast majority of sales shift to the generic version of the incumbent branded product at much lower prices," it "is my opinion that common impact can be shown using Class-wide data and formulaic methodologies common to the Class."[46] Her analysis of actual sales and price data confirmed that once generic Aggrenox was finally launched in July 2015, it was priced substantially below the brand and purchasers quickly switched from the brand to the generic. This data enabled Dr. Rosenthal to calculate the

---

[42] *See, e.g., Nexium*, 296 F.R.D. at 55-59; *Tricor*, 252 F.R.D. at 229; *Neurontin*, 2011 WL 286118, at *6-12; *In re Wellbutrin Sr Direct Purchaser Antitrust Litig.*, No. 04-cv-5525, 2008 WL 1946848, at *7-10 (E.D. Pa. May 2, 2008); *K-Dur*, 2008 WL 2699390, at *14-15; *Ovcon*, 246 F.R.D. at 308-10; *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D. 208, 218 (S.D. Ohio 2003) ("*Premarin*"); *Relafen*, 218 F.R.D. at 343-46; *Buspirone*, 210 F.R.D. at 58; *Cardizem*, 200 F.R.D. at 307-21.

[43] Dr. Rosenthal is a Professor of Health Economics and Policy at the Harvard School of Public Health and an Academic Affiliate of Greylock McKinnon Associates, a consulting and litigation support firm. Her principal research interests concern the economics of the healthcare industry including pharmaceuticals. *See* Declaration of Meredith Rosenthal, Ph.D. ("Rosenthal Decl."), at ¶ 1.

[44] Rosenthal Decl., at ¶ 20.

[45] *Id.* at ¶ 21.

[46] *Id.* at ¶ 25.

17

aggregate amount paid by the Class members for Aggrenox and its generics.[47] She also concludes that the standard economic theory and methods she used "make clear that it is possible to allocate damages among consumers and third party payers – and opt-out entities – as described in the Settlement Agreement."[48] This analysis presents "precisely the types of evidence" found sufficient to meet predominance requirement in other cases alleging delayed generic entry.[49]

Any minor variations among the state laws invoked by EPPs are not material enough to defeat certification. Because the core elements of these laws are substantially identical and generally interpreted consistently with federal antitrust law, numerous courts have certified indirect purchaser claims brought under different state laws. These decisions include delayed entry claims. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *27 (N.D. Cal. Feb. 21, 2017) (finding that "[t]he differences in the applicable state laws identified by defendants do not appear to be material or even significant" and collecting cases); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 176 (D. Mass. 2013), *aff'd sub nom. In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) (holding that variance in state laws did not bar class certification under Rule 23(b)(3)). Moreover, in the case of classes certified for litigation purposes, courts have recognized that any significant differences that might emerge "can be readily accommodated on a special verdict form or through other mechanisms routinely employed in complex litigations," *Lidoderm*, 2017 WL 679367, at *27,

---

[47] *Id.* at ¶ 37.

[48] *Id.* at ¶ 41.

[49] *K-Dur,* 2008 WL 2699390, at *15; *see also Wellbutrin SR*, 2008  WL 1946848, at *8 n.20; *Tricor*, 252 F.R.D. at 229; *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 369-71 & n.10 (D.D.C. 2007); *Ovcon*, 246 F.R.D. at 308-09; *Relafen*, 218 F.R.D. at 345-46; *Cardizem*, 200 F.R.D. at 308; *Premarin*, 225 F.R.D. at 217-18.

and "are insufficient to overcome the innumerable advantages that class treatment will afford."
*In re Terazosin Hydrochloride*, 220 F.R.D. 672, 701 (S.D. Fla. 2004). Of course, no such issues
are implicated for certification of a settlement class.

        2.      <u>A Class Action Is Superior to Other Methods of Adjudicating the Class Claims.</u>

To assess the superiority of the class action mechanism to the alternative of numerous
individual actions, Rule 23(b)(3) allows the Court to weigh factors such as any interest Class
members might have in pursuing separate actions, the extent of any independent litigation
already commenced by Class members, the risk of conflicting orders and judgments, the
desirability of concentrating the litigation in this forum, and the difficulties likely to be
encountered managing a class action.[50] These factors militate strongly in favor of certification of
the Class.

To begin with, class treatment for purposes of the Settlement obviously will not raise any
significant manageability concerns, because litigation on the merits will cease.[51] Further, class
treatment is superior to resolving Class members' claims on an individual basis for a number of
compelling reasons.[52] The parties have engaged in the intensive, targeted fact discovery that
characterizes delayed entry cases, and the Court's prior rulings have shaped the contours of the
case. Given this progress, the case is ideally situated for class treatment, a manner of disposing

---

[50] Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615 (the requirement of superiority ensures that resolution by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.").

[51] *Amchem*, 521 U.S. at 620; *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 291 (E.D. Pa. 2003).

[52] *See, e.g., Arava*, 2008 U.S. Dist. LEXIS 123291 at *10; *Buspirone*, 210 F.R.D. at 58; *DDAVP*, 2011 U.S. Dist. LEXIS 97487 at *8; *OxyContin*, 2010 U.S. Dist. LEXIS 146003 at *44.

of EPPs' claims that is vastly superior to individualized adjudication of the many Class members' claims, whether here or in multiple courts around the country. Among other benefits, class certification promises to conserve judicial resources, reduce costs, achieve efficiencies of scale, and eliminate the possibility of inconsistent rulings.[53]

This case is also amenable to class treatment because the Class members are easily ascertainable.[54] As is the case for all pharmaceuticals, the marketing of Aggrenox generates detailed data readily accessed from multiple industry sources, which allows the identification of Class members and relevant transactional information. In particular, this data can be sorted by state to the extent necessary for EPPs' state law claims.

In short, certification of the Class is the best way for Class members to obtain the relief they seek.[55]

       3.     <u>Class Counsel Meet the Requirements for Appointment Under Rule 23(g).</u>

Under Rule 23(g), a court that certifies a class must appoint class counsel. Class counsel is charged with fairly and adequately representing the interests of the class.[56] In appointing class counsel, the Court must consider: (1) the work counsel has done in identifying or investigating

---

[53] *See Relafen*, 218 F.R.D. at 347 ("Resolution by class action would instead promote uniform treatment of class members-similarly situated direct purchasers who allege similar injuries resulting from the same conduct.").

[54] For a class to be sufficiently ascertainable, its members need only be identified using "objective criteria that establish a membership with definite boundaries," a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Securities,* 862 F.3d 250, 257 (2d Cir. 2017).

[55] As the Court is aware, Humana has elected to prosecute its own individual action, which has proceeded in parallel with this one. The pendency of a single individual action does little to alter the balance of relevant superiority criteria. Other Class members will likely opt out of the Class as well. The courts have never found the potential for that multiplicity to preclude the benefits of class certification for the remaining Class members.

[56] *See* Fed. R. Civ. P. 23(g)(1)(B).

potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.[57]

For the reasons that the Court appointed Class Counsel on an interim basis, reinforced by their demonstrated ability to effectively prosecute this action, EPPs respectfully request that the Court reaffirm the appointments of Class Counsel. Armed with their years of experience prosecuting antitrust class actions arising from unlawful generic suppression, Class Counsel are more than capable of continuing to capably represent the Class until completion of this litigation.

## IV. THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL.

Preliminary approval of the Settlement is warranted if the Court determines that it is the product of serious, informed, and non-collusive negotiations, there is no reason to doubt its fairness, it has no obvious deficiencies, and it appears to fall within the range of possible approval.[58]

Preliminary approval does not require the Court to reach any ultimate conclusions on the fairness and reasonableness of the Settlement.[59] Rather, a court "need only determine that there is probable cause to submit the agreement to the proposed class members and to hold a fairness hearing, at which time the court will have the opportunity to closely examine the intricacies of the settlement terms and to assess their fairness."[60]

---

[57] *See* Fed. R. Civ. P. 23(g)(1)(A)(i-iv); *see also Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 339-40  (S.D.N.Y. 2004).

[58] *See Elkind v. Revlon Consumer Prods. Corp*., No. CV 14-2484 (JS) (AKT), 2017 U.S. Dist. LEXIS 24512, at *46 (E.D.N.Y. Feb. 17, 2017).

[59] *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974).

[60] *See Elkind v. Revlon Consumer Prods. Corp.,* 2017 U.S. Dist. LEXIS 24512, at *45-46 (citing *In re Traffic Exec. Ass'n E.R.Rs*., 627 F.2d 631, 634 (2d Cir. 1980)).

21

As the Court evaluates the Settlement according to that standard, the "professional judgment of counsel involved in the litigation is entitled to great weight."[61] A hearing is not necessary or required under Rule 23(e) at the preliminary approval stage. As explained in the *Manual for Complex Litigation* (the "*Manual*"), "[i]n some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."[62] Of course, the EPPs and Class Counsel are available should the Court wish to hold a hearing at this preliminary approval stage.

### A.   The Proposed Settlement Was the Result of Serious and Informed Negotiations by Experienced Counsel.

If the Court finds that the Settlement is the result of good faith, serious, "arm's-length negotiations between experienced, capable counsel after meaningful discovery," it is entitled to a presumption of fairness.[63] Moreover, participation in the negotiation process by a neutral third party, as was the case here, supports a finding that a settlement is not collusive.[64]

---

[61] *In re Metlife Demutualization Litig.,* 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008)); *see also Wilson v. DirectBuy Inc.,* No. 3:09-CV-590 (JCH), 2011 U.S. Dist. LEXIS 51874, at *15 (D. Conn. May 16, 2011) ("A presumption of fairness will arise, where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)).

[62] *Manual for Complex Litigation*, § 21.632 at 382 (4th ed. 2005); *see also Hernandez v.  Merrill Lynch & Co.,* 2012 U.S. Dist. LEXIS 165771, at *4 (S.D.N.Y. Nov. 15, 2012) (citing  *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012)); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595 2012 WL 1656920, at *1 (S.D.N.Y. May  9, 2012) ("Courts often grant preliminary settlement approval without requiring a hearing or a  court appearance.").

[63] *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570 at 575 (citing *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("a class action  settlement enjoys a "presumption of correctness" where it is the product of arm's-length  negotiations conducted by experienced, capable counsel.").

[64] *Hernandez v. Anjost Corp.*, No. 11 CIV. 1531 AT, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013).

The Settlement was achieved after more than three years of hard-fought litigation before it was successfully mediated. The voluminous documentary discovery and the depositions enabled the parties to scrutinize the strengths and weaknesses of their respective claims and defenses in light of a developed factual record. Equipped with this knowledge, the parties engaged in intensive settlement discussions through two separate sessions of mediation facilitated by Judge Phillips. As noted above, the negotiations were detailed, time-consuming, and hard-fought.

> **B.    Class Counsel Are Highly Experienced in Antitrust Litigation Alleging Delayed Generic Drug Competition.**

In approving class action settlements, courts often rely to a significant degree on the judgment of experienced counsel who have previously engaged in arm's-length negotiations to resolve complex litigation.[65] This reliance reflects courts' recognition that vigorous negotiation by highly skilled counsel is likely to generate fair and reasonable settlements.

Here, Class Counsel believe that the Settlement is fair and reasonable, and serves well the best interests of the Class. Class Counsel base this evaluation on their familiarity with the facts and circumstances of this case as well as their broad experience representing purchaser plaintiffs

---

[65] *See, e.g., Elkind v. Revlon Consumer Prods. Corp., No.* 2017 U.S. Dist. LEXIS 24512, at * 46-48 (citing *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006)) (settlement found to be the result of "serious, informed, and non-collusive negotiations "[b]ased on counsel's representations, the agreement is the product of vigorously fought litigation and months of arm's-length negotiations between seasoned attorneys"); *see also In re Initial Pub. Offering Sec. Litig.,* 226 F.R.D. 186, 194 (S.D.N.Y. 2005) (proposed settlement clearly the product of "serious, informed, non-collusive negotiations'" where the parties were "represented by experienced and talented counsel that share expertise in this field and an extensive knowledge of the details of this case.") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

in similar delayed generic entry cases.[66] Additionally, the Court has first-hand knowledge of

Class Counsel's prosecution of this case.

### C.     The Proposed Settlement Is Well Within the Realm of Possible Approval.

The test to be applied at this preliminary approval stage is whether the Settlement falls

"within the range of" settlements that could "possibly" be worthy of final approval as fair,

reasonable, and adequate.[67] Whether the Settlement ultimately merits final approval from the

Court will be determined at the final fairness stage in accordance with *City of Detroit v. Grinnell

Corp.*, 495 F.2d 448 (2d Cir. 1974), which enumerates nine factors to be considered by courts

assessing the fairness of a settlement under Rule 23(e).[68] For now, the Court need only determine

whether the Settlement potentially merits approval in light of the *Grinnell* criteria.[69]

---

[66] Some or all of End-Payor Class Co-Lead counsel here also were counsel in the following prior generic delay cases: *K-Dur*, 2:01-cv-1652-SRC (D.N.J.) ECF No. 1045 (preliminary  approval granted on May 23, 2017); *In re Prograf Antitrust Litig.*, 1:11-md-02242-RWZ, ECF No. 678 (D. Mass.) (final  approval granted on May 19, 2015); *Mylan Pharma., Inc. v. Warner Chilcott, LTD*, No. 12-cv-3824 (E.D. Pa.) (Diamond, J.) (Sept. 15, 2014); *In re Neurontin Antitrust Litig.*, No. 02-1830 (D.N.J.) (Hochberg, J.) (Aug. 6, 2014); *In re Wellbutrin SR  Antitrust Litig.*, No.04-5525 (E.D. Pa.) (Stengel, J.) (Nov. 21, 2011); *Meijer, Inc. v. Abbot Labs.*, N.D. Cal. No. 07-5985 (N.D. Cal.) (Wilken, J.) (August 11, 2011); *In re Nifedipine Antitrust  Litig.*, MDL No. 1515  (D.D.C.) (Leon, J.) (Jan. 31, 2011); *In re OxyContin Antitrust Litig.*, No.04 md 1603 (S.D.N.Y.) (Stein, J.) (Jan. 25, 2011); *In re Tricor Antitrust Litig.*, No. 05-340  (D. Del.) (Robinson, J.) (April 24, 2009); *Meijer, Inc. et al. v. Warner Chilcott, & Barr Pharma.  Inc.  et al.*, No. 05-2195 (D.D.C.) (Kollar-Kotelly J.) (April 20, 2009); *In  re Remeron Antitrust Litig*, No. 03-CV-0085 (D.N.J.) (Hochberg, J.) (Nov. 9, 2005); *In re  Terazosin Hydrochloride Antitrust Litig.*, No. 99-mdl-1317 (S.D. Fla.) (Seitz, J.) (Apr. 19, 2005);   *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.) (Young, J.) (April 9, 2004); *In re Buspirone Antitrust Litig.*, MDL Docket No. 1413 (S.D.N.Y.) (Koeltl, J.) (April 7, 2003); *In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (E.D. Mich.) (Edmunds, J.) (November 25, 2002).

[67] *True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1063 (C.D. Cal. 2010) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981)).

[68] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

The Settlement sits comfortably within the zone of possible approval. It serves the best interests of the Class by securing a substantial and immediate cash recovery of $54 million while avoiding delay, risks and uncertainties, including the vagaries of juries tasked with rendering a verdict in cases as complex as this one, and the potential appeal of any favorable verdict the Class might be awarded. Compared to litigating to a final resolution, the certain, immediate receipt of the settlement proceeds establishes an initial presumption that the settlement is "fair, adequate, and reasonable."[70]

### D.     The Plan of Allocation is Fair, Reasonable, and Adequate.

The standard for approving a plan of allocation for a settlement fund in a class action, like the one governing approval of the settlement as a whole, is that the plan must be fair, reasonable and adequate.[71] Generally, to be found "fair and reasonable," the plan of allocation "need have only a reasonable, rational basis," when recommended "by competent and experienced class counsel,"[72] whose assessment "is entitled to considerable weight."[73]

---

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 117 (2d Cir. 2005) (citing *Grinnell*, 495 F.2d at 463).

[69] *See Elkind v. Revlon Consumer Prods. Corp.* 2017 U.S. Dist. LEXIS 25412 at *52-53 (citing *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006) ("Fleshing out these nine factors at this stage of the settlement approval process is premature. Such a review is reserved for the final stage of approval"); *see also Reade-Alvarez* 237 F.R.D. at 34 ("Clearly, some of these factors, particularly the reaction of the class to the settlement, are  impossible to weigh prior to notice and a hearing.")

[70] *Elkind v. Revlon Consumer Products Corp.,* 2017 U.S. Dist. LEXIS 24512 at *18-19) (quoting *In re Traffic Exec. Asso.--E. R.Rs.*, 627 F. 2d at 634) ("Preliminary approval 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'").

[71] *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d at 341.

[72] *Id.* (citing *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).

The proposed Plan of Allocation, which is attached as Exhibit 4 to the Miller Declaration, meets this standard.  In summary, the Plan allocates the Settlement proceeds pro rata based on each Class member's purchases of Aggrenox.  The Settlement proceeds will be allocated: (1) net of Court-approved attorneys' fees, incentive awards for the named EPPs, and costs of litigation ("Net Settlement Fund"); (2) to Class members who submit claims; (3) based on each member's pro rata share of purchases of Aggrenox; (4) in the Class States; (5) during the Class Period. The Plan also provides for a fair allocation of any "overages" in the event that Third-Party Payor claimants as a group, or consumer claimants as a group, recover more than their single damages. The proposed claim forms are attached as Exhibits 5 and 6 to the Miller Declaration.

The Plan of Allocation allocates the Net Settlement Fund in substantially the same manner as plans that have been approved by courts in analogous cases and implemented fairly and efficiently.[74] For these reasons, the Plan of Allocation should be approved as well.

**E.     The Proposed Form and Manner of Notice Are Appropriate.**

1.     Form of Notice

Under Rule 23(e), the Class members are entitled to reasonable notice of the Settlement before the Court decides whether to grant final approval, including notice of the Fairness Hearing.[75] For 23(b)(3) classes, the court must "direct to class members the best notice that is

---

[73] *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d at 341 (quoting *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 52 (E.D.N.Y. 2010) (citing *In re Sterling Foster & Co., Inc.* Sec. Litig., 238 F. Supp. 2d 480, 486 (E.D.N.Y. 2002))).

[74] *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 264 (D. Del. 2002), *aff'd, In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *10 (E.D.Pa. Apr. 22, 2005); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 374 (D.D.C. 2002); *Vista Healthplan, Inc. v. Warner Holdings Company III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007).

[75] *See Manual* §§ 21.312, 21.633.

practical under the circumstances, including individual notice to all members who can be identified through reasonable effort."[76] There are two components of notice to be considered: (1) the form of notice; and (2) the manner in which notice is given to Class members.

The proposed form of the Class Notice, which Defendants have approved, is based on notices approved and disseminated in similar cases. The Notice is designed to alert Class members to the Settlement with a bold headline and plain language providing the essential information regarding the salient terms.[77] In addition, the Notice prominently features Class Counsel's contact information and the address of a website dedicated to the Settlement where Class members can access the Settlement documents and other useful information, as well as contact information for the settlement administrator.

    2.    <u>Manner of Notice</u>

Where class members can be individually identified and reached with substantial certainty, the method of notice favored by the courts is to send written notice to each member by first-class U.S. mail.[78] Plaintiffs propose to mail the Notice in this manner to 42,000 TPP

---

[76] *Elkind v. Revlon Consumer Prods. Corp.* 2017 U.S. Dist. LEXIS 24512 at *55 ("the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(b)(3)").

[77] In particular, the terms described in plain language include the  nature of the action, the Class definition, Defendants who are parties to the Settlement, the Settlement amount, the release of claims and binding effect on the Class members, the rights and deadlines to opt out or object and their consequences, the claims process for obtaining a portion   of the settlement proceeds, Class Counsel's request for attorneys' fees and reimbursement of litigation expenses, and incentive awards, and the schedule for the final approval process, including the time and place of the Fairness Hearing. *See generally* Exhibit B to the  Settlement Agreement.

[78] *See, e.g. In re Glob. Crossing Sec. & ERISA Litig.,* 225 F.R.D. at 448  (citing  *In re NASDAQ Market-Makers Antitrust Litig.*, 1999 U.S. Dist. LEXIS 8889, at *2 n.3) ("for opt out class

member of the Class. The consumer members will be reached via publication.  The details of the manner of providing Notice are set forth in the accompanying Declaration of Linda Young, a notice expert with A.B. Data, Ltd.  The Notice Plan will ensure that at least 80% of the Class members receive notice.  This Notice Program provides a reach and frequency similar to those that courts have approved and that are recommended by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

F.      **The Court Should Appoint A.B. Data, Ltd. as Settlement Administrator.**

Plaintiffs request that the Court appoint A.B. Data, Ltd., which is highly regarded and frequently handles claims administration for settlements of large, complex antitrust cases, and with whom Class Counsel have worked in other similar cases, as the settlement administrator. Under Class Counsel's supervision, A.B. Data, Ltd. will oversee administration of the Settlement, including dissemination of the Notice, processing claims, and distribution of the Net Settlement Fund to the Class members.

G.      **The Court Should Appoint Bank Leumi USA as Escrow Agent.**

As the parties have agreed, the Court should approve Bank Leumi USA to serve as escrow agent.

H.      **The Court Should Approve the Proposed Schedule for Final Approval.**

Consistent with the Settlement Agreement (see Paragraph 6), EPPs propose the following schedule for completing the process for final approval of the Settlement:

- Within 10 days from the date Plaintiffs file for preliminary approval of the Settlement, Defendants shall serve any notices required by the Class Action Fairness Act of 2005;

---

actions, due process and the Federal Rules require individual notice only to 'all class members whose names and addresses may be ascertained through reasonable effort"); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 94 S. Ct. 2140, 2150 (1974) (same).

- Within 60 days from entry of the Preliminary Approval Order, EPPs shall Complete Notice to the Class in the form and manner proposed;

- 65 days from entry of the Preliminary Approval Order (the "Opt-Out/Exclusion Deadline"), Class members may request exclusion from the Class or object to the Settlement;

- On a date to be set by the Court no less than 125 days following entry of the Preliminary Approval Order, the Court will hold the Fairness Hearing;

- Should the parties have any dispute regarding the Draw Down or Blow Provisions of the Settlement Agreement, those disputes shall be submitted to the Court within 30 days after the Opt-Out Deadline;

- All briefs and materials in support of the final approval of the Settlement and the entry of Final Order and Judgment shall be filed with the Court at least 15 days before the Final Fairness Hearing; and

- All briefs and materials in support of the Fee and Expense Request shall be filed with the Court at least 15 days before the Final Fairness Hearing.

This schedule, comparable to timelines approved and used successfully in similar cases, is fair to Class members. It allows ample time for Class members to consider the Settlement and Class Counsel's request for fees, expenses and incentive awards (the "Fee and Expense Request") before the deadline for either opting out of the Class or submitting an objection to the Settlement. Specifically, Class members will have four months or more from the beginning of the Notice Program to request exclusion or otherwise object to the Settlement.  And as noted herein, the notice will, inter alia, explain the Settlement, inform Class members of Class Counsel's intent to move for attorney's fees, expenses and incentive awards, and direct Class members as to how they can get more information or answers to any questions they may have. In addition, the schedule allows the full statutory period for Defendants to serve their Class Action Fairness Act notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed settlement and, if they choose, advise the Court of their view.

29

## I.    The Court Should Stay Further Litigation Between the Parties.

Pursuant to Paragraph 3(v) of the Settlement Agreement, the EPP Class Plaintiffs and the

Defendants jointly request that the Court formally stay further litigation between these parties

pending disposition of the potential final approval of the Settlement.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the

submitted Preliminary Approval Order.


        Respectfully submitted,

        End-Payor Class Plaintiffs

        By: s/*Marvin A. Miller*
        Marvin A. Miller
        **MILLER LAW LLC**
        115 S. LaSalle Street, Suite 2910,
        Chicago, IL 60603
        312-332-3400

        s/*Renae D. Steiner*
        Renae D. Steiner
        **HEINS MILLS & OLSON, PLC**
        310 Clifton Avenue
        Minneapolis, MN 55403
        612-338-4605

        s/*Steve Shadowen*
        Steve Shadowen
        **HILLIARD & SHADOWEN LLP**
        2407 S. Congress Ave., Ste. E 122
        Austin, TX  78704
        855-344-3298