# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **IN RE AGGRENOX ANTITRUST LITIGATION** | **Master Docket No. 3:14-md-02516 (SRU)**<br><br>**Judge Stefan R. Underhill** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT   (the "Settlement Agreement") is made and entered into on December 22, 2017, by and between Defendants Boehringer Ingelheim Pharma GmbH & Co KG, Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"); and Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries, Ltd., Barr Pharmaceuticals, Inc. (n/k/a Barr Pharmaceuticals, LLC), Barr Laboratories Inc., Duramed Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.), and Duramed Pharmaceutical  Sales Corp. (n/k/a Teva Sales and Marketing, Inc.) ("Teva") (collectively "Defendants"); and Indirect End-Payor Purchaser Class Plaintiffs' (a.k.a. "End Payor Class Plaintiffs") Lead Counsel acting pursuant to the Court's Order, dated June 16, 2014 (Doc. No. 95), on behalf of Plaintiffs, A.F. of L. – A.G.C. Building Trades Welfare Plan; AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund; International Union of Operating Engineers Local 49 Health & Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; Painters District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health & Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health

and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137, 137A, 137B, 137C, and 137R; The Electrical Workers' Insurance Fund; and Sergeant's Benevolent Association Health & Welfare Fund (collectively "Indirect Purchaser Class Plaintiffs," "named Plaintiffs," "End Payor Class Plaintiffs" or "Plaintiffs"), and on behalf of the Indirect Purchaser Class (as defined in paragraph 1 below) in *In re Aggrenox Antitrust Litigation*, Civil Action No. 3:14-md-02516-(SRU) (D. Conn.) (the "Indirect Purchaser Class Action").

WHEREAS, the parties acknowledge that the United States District Court for the District of Connecticut (the "Court") has jurisdiction over these actions, each of the parties hereto, and all putative members of the Indirect Purchaser Class for all manifestations of this case, including this Settlement, except that Teva Pharmaceutical Industries Ltd. maintains that it is not subject to the Court's jurisdiction, consistent with the Court's Order dated March 23, 2015;

WHEREAS, Plaintiffs alleged that Defendants violated federal antitrust and numerous state antitrust and consumer protection laws by wrongfully delaying the introduction of generic versions of the branded prescription drug Aggrenox (extended release aspirin/extended-release dipyridamole), a drug indicated to reduce the risk of stroke in patients who have had a transient ischemic attack ("TIA" or "mini-stroke"), in violation of the Clayton Act, 15 U.S.C. § 26 and numerous States' antitrust and consumer protection acts, as detailed in the First Amended End-Payor Consolidated Class Action Complaint (Doc. No. 263) and other papers filed with the Court, and Plaintiffs and other members of the Indirect Purchaser Class incurred significant damages as a result;

WHEREAS, Defendants deny each and every one of Plaintiffs' allegations of unlawful conduct, deny that any conduct challenged by Plaintiffs caused any damage whatsoever, and have asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs and Defendants agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations alleged in the Indirect Purchaser Class Action or a waiver of any defenses thereto;

WHEREAS, arm's-length settlement negotiations have taken place between counsel for Plaintiffs and Defendants, including with the assistance of a neutral mediator, and this Settlement Agreement, which embodies all of the terms and conditions of the settlement between Defendants and Plaintiffs, both individually and on behalf of the proposed Indirect Purchaser Class (the "Settlement"), has been reached, subject to the final approval of the Court;

WHEREAS, Plaintiffs' counsel have concluded, after extensive fact discovery and expert analysis, and after having carefully considered the circumstances of the Indirect Purchaser Class Action, including the claims asserted, and the possible legal and factual defenses thereto, that it would be in the best interests of the Indirect Purchaser Class to enter into this Settlement Agreement to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a benefit to the Indirect Purchaser Class, and, further, that Plaintiffs' counsel consider the Settlement set forth herein to be fair, reasonable, and adequate compensation, and in the best interests of the Indirect Purchaser Class;

WHEREAS, Plaintiffs have obtained approval of this settlement from A.F. of L. – A.G.C. Building Trades Welfare Plan; AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund;

International Union of Operating Engineers Local 49 Health & Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; Painters District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health & Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137, 137A, 137B, 137C, and 137R; The Electrical Workers' Insurance Fund; and Sergeant's Benevolent Association Health & Welfare Fund;

WHEREAS, Defendants have concluded, despite their belief that they are not liable for the claims asserted and that they have good defenses thereto, that it would be in their best interests to enter into this Settlement Agreement to avoid the uncertainties of litigation, and thereby avoid the risks inherent in complex litigation; and

WHEREAS, Defendants (or any employee or agent or representative thereof, including any counsel) agree to refrain from contacting or communicating with any putative member of the Indirect Purchaser Class (as defined in paragraph 1), and/or attempting to effectuate any individual settlement with any putative member of the Indirect Purchaser Class, except Humana Inc. and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239) ("Humana"), and Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana ("BCBSLA"), regarding the subject matter of this litigation or the settlement thereof without conferring with Lead Counsel for the Indirect Purchaser Class, except as provided in Paragraph 5 hereof;

NOW THEREFORE, it is agreed by the undersigned, on behalf of Defendants, Plaintiffs, and the Indirect Purchaser Class, that all claims of Plaintiffs and the Indirect Purchaser Class against Defendants be settled, compromised and dismissed with prejudice and, except as hereinafter provided, without costs as to Defendants or Plaintiffs, subject to the approval of the Court, on the following terms and conditions:

1.      This settlement is on behalf of the Plaintiffs and a class defined as follows ("Indirect Purchaser Class"):

> All persons or entities in the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, who, in one of the listed states, indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for branded or generic Aggrenox, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, from November 30, 2009 through December 22, 2017.

The following persons or entities are excluded from the proposed Indirect Purchaser Class:

a.      Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

b.      All federal or state governmental entities, except cities, towns, or municipalities with self-funded prescription drug plans;

c.      All persons or entities who purchased Aggrenox for purposes of resale or who purchased directly from the Defendant or their affiliates;

d.    Fully insured health plans (plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members);

e.    Pharmacy Benefits Managers (but not excluding affiliates, subsidiaries or related companies who would otherwise be included in the class definition);

f.    Humana and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239);

g.    BCBSLA;

h.    Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

i.    Co-payers (consumers) who did not purchase branded Aggrenox before July 1, 2015 *and* who have a flat generic co-pay, *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

j.    All persons who purchased or received branded or generic Aggrenox through a Medicaid program only; and

k.    The judges in this case and any members of their immediate families;

l.    All persons or entities who purchased Aggrenox in the State of Rhode Island prior to July 15, 2013; and

m.    All persons or entities who purchased Aggrenox in the State of Oregon before 2010.

2.    **Reasonable Best Efforts to Effectuate This Settlement**. Counsel for the undersigned agree to recommend approval of this Settlement to the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any

other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to secure approval and to carry out the terms of this Settlement.

3.   **Motion for Preliminary Approval**.  Following the execution of this Settlement Agreement by all parties hereto, Plaintiffs shall file with the Court a motion for preliminary approval of the Settlement. The motion for preliminary approval shall request the entry of a preliminary approval order substantially in the form of Exhibit A hereto (the "Preliminary Approval Order"), including: (i) the preliminary approval of the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the Indirect Purchaser Class; (ii) preliminary approval of the Plan of Allocation of the Settlement Fund; (iii) approval of the notice and proposed notice plan; (iv) a schedule for a hearing by the Court after the notice period has expired to approve the Settlement and to consider Plaintiffs' counsel's applications for attorneys' fees, reimbursement of costs and expenses, and incentive awards as set forth in this Settlement Agreement; (v) a stay of all proceedings in the Indirect Purchaser Class Action against Defendants until such time as the Court renders a final decision regarding the approval of the Settlement as described below in paragraph 17; (vi) approval of an escrow agreement regarding the Settlement consideration described below in paragraph 8; and (vii) certification of the Indirect Purchaser Class as defined in paragraph 1 for purposes of settlement. After the Court preliminarily approves the Settlement, Plaintiffs shall, in accordance with the Preliminary Approval Order, provide Indirect Purchaser Class members with notice of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure substantially in the form attached hereto as Exhibit B.  Plaintiffs' counsel will recommend notice to the Class according to the Notice Plan submitted by the Claims and Notice Administrator which shall provide for the

best notice practicable and to include direct mail to those members of the class who can be reasonably identified and shall also provide notice by publication as set forth in the notice plan.

4.      **Class Certification**.  Concurrently with their Motion for Preliminary Approval, Plaintiffs shall seek Court approval of the certification of the Indirect Purchaser Class for purposes of the proposed Settlement only.  Defendants will not oppose Plaintiffs' motion for class certification in connection with the proposed Settlement only. Neither this Settlement Agreement, nor any other Settlement-related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Defendants as to whether any class, in this case or others, may be certified for purposes of litigation and trial.

5.      **Adjustments Based on Opt Outs from the Indirect Purchaser Class**.

a.  **Draw Down for Opt Outs.**  In the event that any member of the Indirect Purchaser Class opts out of the class (the "Opt Out"), other than Humana, and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239) or BCBSLA, Defendants shall have the right to withdraw dollars from, or reduce dollars to be deposited into, the Settlement Fund by an amount (the "Draw Down") equal to the Settlement Fund Amount multiplied by the ratio of the Opt Out's net spend on Aggrenox and generic Aggrenox (the "Numerator") over the Indirect Purchaser Class's total gross spend on Aggrenox and generic Aggrenox (the "Denominator").  The Opt Out's net spend is its gross spend on Aggrenox and generic Aggrenox minus the member copay, in the states and jurisdictions identified in Paragraph 1 above, for the time period from November 30, 2009 through December

31, 2016.  The Indirect Purchaser Class's gross spend is the amount spent on Aggrenox and generic Aggrenox in the same states and jurisdictions during the same time period used for the Opt Out's net spend in the Numerator.  Defendants shall not be entitled to a Draw Down with respect to Humana and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239) or BCBSLA, and those entities' spend shall not be included in calculating the total Indirect Purchaser Class's gross spend in the Denominator.

For purposes of this provision, the parties agree that the Denominator for purposes of calculating the Draw Down shall be calculated by determining the total expenditure for Aggrenox and generic Aggrenox for the cash, commercial and Medicare Part D segments of the U.S. market, using IMS National Prescription Audit (NPA) data to determine total expenditures and using CMS National Drug Utilization data to deduct the expenditures for Medicaid and National Health Expenditure data to deduct the expenditures of excluded federal and state governmental agencies.  Specifically, expenditures for the following government programs, as reported in the National Health Expenditure data, will be deducted: "CHIP (Title XIX and Title XXI)", "Department of Defense", "Department of Veterans Affairs", "Indian Health Services", "General Assistance", "Maternal/Child Health", "Other Federal Programs", and "Other State and Local Programs".   The nationwide expenditure as reported by IMS National Prescription Audit (NPA) data shall be adjusted to take account of mail order pricing using public sources such as "Pharmacy Benefit Management Institute (PBMI), Prescription Drug Benefit Cost and Plan Design Report."  Also deducted from this amount will be the expenditures of Humana and its subsidiaries' (as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239)) and BCBSLA's share of nationwide Aggrenox and generic Aggrenox spend by cash, commercial and Medicare Part D.  Humana and its subsidiaries and BCBS LA's

share of the nationwide Aggrenox and generic Aggrenox spend by cash, commercial and Medicare Part D drug expenditures shall be determined by utilization data, or if utilization data provided by Humana and its subsidiaries and BCBS LA appear to be incomplete or otherwise inaccurate, Humana and its subsidiaries' and BCBS LA's spend shall be calculated using the methodology set forth in Appendix A.  The resulting nationwide expenditure will be multiplied by the percentage of total drug expenditures incurred in the class states, as determined using data such as Kaiser Family Foundation State Health Facts Prescription Drug Expenditures. With respect to one specific class member only – the identity of which will be specified in a Supplemental Agreement submitted to the Court *in camera* – if that specific class member opts out, its net spend in the Numerator shall be reduced by ten percent (10%), but the net spend analysis for the Numerator for any other Opt Opt shall not be so reduced.  That class member will be notified by the parties of this provision.

b.  In determining the Opt Out's net spend, the parties shall use the utilization data provided by the Opt Out. If the Opt Out does not provide its utilization data, the parties agree that Class Counsel shall seek an order from the Court compelling its production.  If the Court does not compel production of the Opt Out's utilization data, or if utilization data provided by the Opt-Out appears to be incomplete or otherwise inaccurate, the Opt Out's net spend shall be calculated using the methodology set forth in Appendix A.

The parties shall jointly request the Court to resolve any disputes regarding the production of Opt Out utilization data or whether Opt Outs have authority to opt out from the Indirect Purchaser Class the claims of all the potential class members that those Opt Outs purport to represent, including but not limited to any disputes concerning the authority of Opt Outs with respect to Administrative Services Only ("ASO") or related agreements.

To the extent the Court permits Opt Outs to include Aggrenox and/or generic Aggrenox transactions under ASO plans in their exclusion request and the Court does not compel the production of utilization data from ASO plan class members, then the net spend for these specific plans will be estimated based on the methodology outlined in Appendix A.  If the Court allows only certain, but not all, ASO plans to be included in the Opt Outs' claims, and the Court does not compel the production of the utilization data from the ASO plan class members included in the Opt Outs' exclusion request, an adjustment factor will be applied to the calculation outlined in Appendix A.  The exact source upon which this adjustment will be based shall be determined at a later date, and may include, to the extent available, Opt Out's and the ASO plan class members' publicly available financial or government compliance documents. The parties shall not request that a fairness hearing be set for sooner than 60 days after the Opt Out deadline.

c.      **Set Aside Fund.**  In the event that Defendants resolve the claims of any members of or Opt Out(s) from the Indirect Purchaser Class (not including Humana and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239) or BCBSLA) Defendants shall, contemporaneously with the date that Defendants make payment pursuant to that settlement agreement, place into an interest-bearing escrow account (the "Set Aside Fund") to be established by Indirect Purchaser Class' Lead Counsel an amount equal to 10% of the amount of the settlement with the member or Opt Out (the "Set Aside Fund Amount"). The Indirect Purchaser Class intends for this amount to cover a portion of Indirect Purchaser Class Counsel attorneys' fees, costs and expenses, and plan to file a motion requesting that the Court award some or all of the amount in the Set Aside Fund to Indirect Purchase Class Counsel as attorneys' fees, costs and expenses. Defendants agree that they will not take any position with respect to such request or award.  Defendants shall inform Lead Counsel for the

Indirect Purchaser Class of the amount of any private offers made to, and accepted by, Opt Out Indirect Purchasers within five (5) days of the acceptance of the offer by the Opt Out Indirect Purchaser.

       d.  The amount of any such attorneys' fees, costs and expenses awarded to Class Counsel from the Set Aside Fund shall be determined by the Court. Any Set Aside Funds, including interest accrued in the escrow account, not awarded to Class Counsel shall be returned to the Defendants.

       e.  **Blow Provision**.  Defendants shall have the option in their sole discretion to terminate the settlement depending on the amount of the total Draw Down for all Opt Outs as calculated in paragraph 5.a. above by notifying Lead Counsel within the latter of (i) 45 days after the Opt Out deadline, or (ii) if the parties have requested that the Court resolve disputes relating to ASO claims or utilization data as discussed above in Section 5.b., then 10 days after the Court resolves those disputes.  The Defendants' right to terminate the settlement shall be set forth in a Supplemental Agreement submitted to the Court solely for *in camera* review.  The parties shall not file a motion for final approval or request a final order until the Court resolves any disputes regarding the amount of the total Draw Down.

       6.  **Motion for Final Approval and Entry of Final Judgment**. If the Court certifies the Indirect Purchaser Class for purposes of settlement and preliminarily approves the Settlement, Plaintiffs shall submit a motion for final approval of this Settlement by the Court, after appropriate notice to the Indirect Purchaser Class, and shall seek entry of a Final Judgment and Order substantially in the form attached hereto as Exhibit C, with any additional findings of fact and conclusions of law (the "Final Order and Judgment"), at a final-approval hearing that the Indirect Purchaser Class shall seek to have set for no sooner than the latter of (i) 60 days after the

opt out deadline, and (ii) 15 days after the Court resolves any disputes regarding the amount of the total Draw Down:

      a.  finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Plaintiffs and the members of the Indirect Purchaser Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

      b.  providing for payment of reasonable attorneys' fees and reimbursement of the costs and expenses from the Settlement Fund (as defined below);

      c.  providing for payment solely from the Settlement Fund of incentive awards to the named Plaintiffs in addition to whatever monies they will receive from the Settlement Fund pursuant to a Court-approved plan of allocation;

      d.  directing that the Indirect Purchaser Class Action be dismissed with prejudice as to Defendants and, except as provided for herein, without attorneys' fees or costs recoverable under 15 U.S.C. §15(a) or similar state statutes;

      e.  reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including the provisions of paragraph 5, the administration and consummation of this Settlement, the award of attorneys' fees and reimbursement of costs and expenses, and the payment of incentive awards to each of the named Plaintiffs, if allowed by the Court; and

      f.  directing that the judgment of dismissal of all Indirect Purchaser Class claims against Defendants shall be final and appealable pursuant to Fed. R. Civ. P. 54(b), there being no just reason for delay.

      7.  **Finality of Settlement**.  This Settlement Agreement shall become final upon the occurrence of the following:

a.   it is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

b.   entry, as provided for in paragraph 6 herein, is made of the Final Order and Judgment of dismissal with prejudice against the Plaintiffs and the members of the Indirect Purchaser Class; and

c.   the time for appeal from the Court's approval of this Settlement and entry of the Final Order and Judgment has expired or, if appealed, either such appeal shall have been dismissed prior to resolution by the Court or approval of this Settlement and the Final Order and Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

8.   **Settlement Fund**.

(a)      Subject to the terms and conditions of this Settlement Agreement and the Escrow Agreement (as defined below), within ten (10) business days after the entry by the Court of the Preliminary Approval Order, Defendants shall deposit One Million Dollars ($1,000,000) of the Settlement Fund Amount (as defined below) into an escrow account (the "Escrow Account") and within thirty (30) business days after the deadline for Indirect Purchaser Class member to opt out of the Indirect Purchaser Class, Defendants shall deposit Fifty Three Million Dollars ($53,000,000) into the Escrow Account held and administered by Bank Leumi USA (the "Escrow Agent") pursuant to the terms of the Escrow Agreement entered into among the parties hereto and Bank Leumi USA ("Escrow Agent").  The Settlement Fund Amount shall be Fifty-Four million dollars and no/100 ($54,000,000.00).  The Settlement Fund Amount deposited by Defendants into the Escrow Account and any accrued interest after deposit shall become part of and shall be referred to as the "Settlement Fund."  The Settlement Fund may be adjusted as

provided in Paragraph 5.a. above (*i.e.*, Draw Downs).  Except as otherwise expressly permitted by paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse funds from the Escrow Account only pursuant to and consistent with the express terms of this Settlement Agreement, the Preliminary Approval Order, the Final Judgment and Order, the Escrow Agreement, and as expressly authorized by any other applicable order of the Court.  Interest earned by the Settlement Fund shall become part of the Settlement Fund, less any taxes imposed on such interest.

(b)     The Escrow Account shall be established and administered pursuant to the Escrow Agreement.  It is intended that the Escrow Account be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 and that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund.

(c)     The Settlement Fund shall be available for distributions to members of the Indirect Purchaser Class upon the Settlement becoming final pursuant to paragraph 7 of this Settlement Agreement, subject to deductions for payments of:  (1) reasonable attorneys' fees, costs and expenses approved by the Court (and any interest awarded thereon); (2) any Court-approved incentive awards to the named Plaintiffs in this Indirect Purchaser Class Action; (3) taxes payable on the Settlement Fund; and (4) any and all administrative and notice expenses associated with this litigation or the Settlement.  The total consideration that Defendants will pay for this Settlement shall be the Settlement Fund Amount and Set Aside Fund Amount only.  No portion of the Settlement consideration shall constitute, or shall be construed as constituting, a payment in lieu of treble damages, fines, penalties, punitive damages or forfeitures.

9.      **No Injunctive Relief**.  This Settlement does not include any provision for injunctive relief, and Plaintiffs waive any such claim as to any of the matters released or discharged in paragraph 14.

10.      **Full Satisfaction; Limitation of Interest and Liability**.  Members of the Indirect Purchaser Class shall look solely to the Settlement Fund and the Set Aside Fund for settlement and satisfaction against Defendants of any and all Released Claims as defined in paragraph 14 herein, including any costs, fees or expenses of any of the Settling Plaintiffs or their attorneys, experts, advisors, agents and representatives, including with respect to the negotiation, execution and performance of their obligations under this Settlement Agreement. In the event that the Settlement becomes final pursuant to paragraph 7 herein, the Settlement Fund and Set Aside Fund will fully satisfy any and all Released Claims as defined in paragraph 14 herein.  Except as provided by order of the Court, no member of the Indirect Purchaser Class shall have any interest in the Settlement Fund, the Set Aside Fund, or any portion thereof.  Defendants shall have no liability with respect to disbursements from the Settlement Fund or Set Aside Fund pursuant to any Court-approved Plan of Allocation.  It is expressly understood that any settlement agreement entered into between Defendants and Humana and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239), and/or BCBSLA is not part of this Settlement, and that any payments in any settlement agreement between Defendants and Humana and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239) and/or BCBSLA will not in any way reduce the payments made to the Indirect Purchaser Class or to the Indirect Purchasers pursuant to this Settlement.

11.      **Reimbursement of Costs and Expenses**.  Plaintiffs and their counsel will be reimbursed and indemnified solely out of the Settlement Fund and Set Aside Fund for all costs, fees, and expenses including, but not limited to, the costs of notice of this Settlement to Indirect Purchaser Class members, administration of the Settlement Fund, escrow administration, and taxes.  Defendants shall not be liable for any costs, fees or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents and representatives, or for any costs, fees or expenses for notice (other than the notice Defendants are required by the Class Action Fairness Act to send to the states' attorneys' general), administration or other costs of implementing this Settlement, but all such costs, fees and expenses as approved by the Court shall be paid out of the Settlement Fund and the Set Aside Fund.

12.      **Disbursement of the Settlement Fund**.  If this Settlement Agreement becomes final pursuant to the provisions of paragraph 7 herein, the Settlement Fund shall be distributed to Indirect Purchaser Class members as ordered by the Court.  Prior to the Settlement becoming final pursuant to the provisions of paragraph 7, disbursements for the costs and expenses of the notice to the Indirect Purchaser Class and for administration of the Settlement Fund, up to $1,000,000.00, including implementation of the methodology to determine the amount of Draw Down, if any (except that this may not include any fees charged by the Indirect Purchaser Class's experts), may be made from the Settlement Fund only upon written notice from the Lead Counsel for the Indirect Purchaser Class Plaintiffs to the Escrow Agent in the manner provided in the Escrow Agreement, with a copy provided to counsel for Defendants.  Defendants shall have no liability or responsibility with respect to disbursements from or administration of the Settlement Fund.

To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

13.     **Attorneys' Fees and Incentive Awards to the Named Plaintiffs**.  Class counsel intend to seek, solely from the Settlement Fund and Set Aside Fund, attorneys' fees not to exceed 33 1/3 % of the initial Settlement Fund plus the reimbursement of reasonable costs and expenses incurred in the prosecution of the Indirect Purchaser Class Action against Defendants plus interest thereon, and an incentive award of ten thousand dollars ($10,000.00) for each of A.F. of L. – A.G.C. Building Trades Welfare Plan; AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund; International Union of Operating Engineers Local 49 Health & Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; Painters District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health & Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137, 137A, 137B, 137C, and 137R; The Electrical Workers' Insurance Fund; and Sergeant's Benevolent Association Health & Welfare Fund. Defendants agree not to take any position with respect to the application by Class Counsel for attorneys' fees, reimbursement of expenses and costs, and the incentive awards set forth above.   Any attorneys' fees, expenses, costs and incentive awards approved by the Court shall be payable solely out of the Settlement Fund and the Set Aside Fund and Plaintiffs, members of

18

the Indirect Purchaser Class, and their respective counsel shall not seek payment of any attorneys' fees, expenses, costs or incentive awards from Defendants in this action, or in any other action related to the Released Claims (as defined in paragraph 14 hereof), from any source other than the Settlement Fund and Set Aside Fund.  The Released Parties (as defined in paragraph 14 hereof) shall not have any responsibility for, and no liability whatsoever with respect to, any payment or disbursement of attorneys' fees, expenses, costs or incentive awards, any allocation of attorneys' fees, expenses, costs or incentive awards among Class Counsel and/or Plaintiffs, or with respect to any allocation of attorneys' fees, expenses, costs or incentive awards to any other person or entity who may assert any claim thereto.

14.  **Releases.**

(a)  Upon this  Settlement  Agreement  becoming  final  in accordance with paragraph  7  hereof, Plaintiffs and the Indirect Purchaser Class, except those who have requested exclusion from the Class and such request has been approved by the Court,  shall unconditionally, fully and finally release  and forever discharge  Defendants,  any past, present, and  future  parents,  subsidiaries,  divisions,  affiliates,  joint  ventures,  stockholders,  officers, directors,  management,  supervisory  boards,  insurers,  general  or  limited  partners, employees, agents, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, heirs, executors, administrators,  successors and assigns of each of the foregoing) (the "Released Parties")  from  any  and  all manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, known  or  unknown,  suspected or unsuspected, fixed  or contingent, including costs, expenses, penalties and attorneys'  fees, accrued in whole or in part, in law or equity, that Plaintiffs or any member or members of the Indirect Purchaser

19

Class (including any of their past, present, or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such) (the "Releasors"), whether or not they object to the Settlement, ever had, now has, or hereafter can, shall or may have, indirectly, representatively, derivatively or in any other capacity, arising out of or relating in any way to any claim under federal or state laws that was alleged or could have been alleged in the Indirect Purchaser Class Action, prior to the date of this Settlement, including but not limited to:

(1)     the alleged delayed entry of generic Aggrenox;

(2)     conduct with respect to the procurement, maintenance and enforcement of United States Patent No. 6,015,577; and

(3)     the sale, marketing or distribution of Aggrenox or generic Aggrenox except as provided for in paragraph 15 herein (the "Released Claims").

Releasors hereby covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims. For the avoidance of doubt, the release provided herein applies, without limitation, to any conduct relating to the procurement, maintenance or enforcement of United States Patent Number 6,015,577, including any commencement, maintenance, defense or other participation in litigation concerning any such patent, that was alleged in, could be fairly characterized as being alleged in, is related to an allegation made in, or could have been alleged in the Indirect Purchaser Class Action.

(b)      In addition, Plaintiffs on behalf of themselves and all other Releasors, hereby expressly waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights and benefits conferred by §1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Plaintiffs and members of the Indirect Purchaser Class may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph 14, but each Plaintiff and member of the Indirect Purchaser Class hereby expressly waives and fully, finally and forever settles, releases and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Plaintiff and member of the Indirect Purchaser Class also hereby expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against any Released Party under § 17200, *et seq*., of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

15.      **Reservation of Claims**.  This settlement is not intended to and does not release claims under Article 2 of the Uniform Commercial Code (pertaining to Sales), the laws of

negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury, or other claims unrelated to the allegations in the Indirect Purchaser Class Action.

16.     **Stay of Proceedings**.  Pending Court approval of the Settlement embodied in this Settlement Agreement, the parties agree to stay any and all proceedings against Defendants in the Indirect Purchaser Class Action other than those incident to the settlement process, and agree to extensions of time with respect to any court filings necessary to effectuate such stays.

17.     **Effect of Disapproval**.  If the Court declines to finally approve this Settlement, or if the Court does not enter the Final Order and Judgment in substantially the form provided for in paragraph 6, or if the Court enters the Final Order and Judgment and appellate review is sought, and on such review, the Final Order and Judgment is set aside or is affirmed with material modification, then this Settlement Agreement and the Settlement, shall be terminated upon the election of any of the Defendants or Lead Counsel for Plaintiffs (Marvin A. Miller, Steven Shadowen, and Renae Steiner) by providing written notice to the parties designated to receive such notice hereunder in accordance with paragraph 25 hereof and the Escrow Agent within ten (10) business days following the occurrence of any such event.  An Order by the Court awarding attorneys' fees, costs, expenses, and/or incentive awards from the Settlement Fund or the Set Aside Fund in any amount lower than requested by Plaintiffs' counsel pursuant to this Settlement Agreement (including paragraph 13) shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or the Final Order and Judgment and shall not give rise to any right of termination.  A modification or reversal on appeal of any amount of Plaintiffs' counsel's fees, costs and expenses awarded by the Court from the Settlement Fund and Set Aside Fund, or the amount of incentive awards from the Settlement Fund to Plaintiffs in the Class

Action, shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or the Final Order and Judgment and shall not give rise to any right of termination.

18.   **Termination**.   In the event that the Settlement is terminated pursuant to paragraph 5 or paragraph 17 hereof, then (a) this Settlement Agreement shall be of no force or effect, (b) any amount of the Settlement Fund and Set Aside Fund attributable to this Settlement, including any and all interest earned thereon, shall be paid to Defendants, but less the costs expended for notice of the Settlement, settlement administration, escrow administration, implementation of the methodology to determine the amount of Draw Down, if any (except that this may not include any fees charged by the Indirect Purchaser Class's experts), and taxes paid on the Settlement Fund.   Payment to Defendants under this provision shall be made as soon as practicable after the Escrow Agent receives notice of termination as provided for in paragraph 17 hereof, and (c) any release pursuant to paragraph 14 above shall be of no force or effect.

19.   **Preservation of Rights**.   The parties hereto agree that this Settlement Agreement, whether or not it shall become final, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party; shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Defendants, or of the truth of any of the claims or allegations contained in the complaint or any other pleading or document; and evidence thereof shall not be discoverable, admissible, or otherwise used directly or indirectly, in any way (except in accordance with the terms of this Settlement, and that the provisions of this Settlement Agreement can be used by the parties to enforce the provisions of the Settlement Agreement), whether in the Indirect Purchaser Class Action or in any other action or proceeding. The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement

Agreement.  Upon the Settlement becoming final, nothing in this paragraph shall prevent Defendants from asserting any release or using this Settlement Agreement to offset any liability to any other parties.

20.    **Resumption of Litigation**.  The parties agree, subject to approval of the Court, that in the event that the Settlement Agreement is not approved by the Court or the Settlement does not become final pursuant to paragraph 7 and Defendants do not perform under paragraph 5 herein, litigation of the Indirect Purchaser Class Action against Defendants will resume in a reasonable manner to be approved by the Court upon joint application by the parties hereto.

21.    **Confidentiality**.   The terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, except that the Court and any other parties may be informed of the fact of settlement, and the terms of the Set Aside Fund provisions under paragraph 5, unless Defendants and Lead Counsel for the Indirect Purchaser Class agree otherwise. However, this provision does not apply to statements made in judicial filings necessary to obtain preliminary Court approval of the Settlement, and each Defendant shall be entitled to make such disclosures of the Settlement Agreement as it, in its sole discretion, determines are appropriate under the law.  The parties further agree that neither the Parties nor their counsel will issue any press release or make any affirmative statement to any media outlet regarding this Agreement.

22.    **Binding Effect**.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the parties hereto, the Released Parties, the Releasors, and the successors and assigns of each of them.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and their counsel shall be binding upon all

members of the Indirect Purchaser Class and the Releasors and their respective successors and assigns.

23.   **Names of Parties**.  The undersigned counsel for Plaintiffs warrant that all of their named clients in the Indirect Purchaser Class Action are parties to this Settlement Agreement even if one or more of them is mistakenly identified in this Settlement Agreement by an incorrect name.

24.   **Notice**.  Any and all notices, requests, consents, directives, or communications by any party intended for any other party shall be in writing and shall, unless expressly provided otherwise herein, be given personally, or by express courier, or by electronic transmission (such as e-mail) followed by postage prepaid mail, to the following persons, and shall be addressed as follows:

> To Plaintiffs and the Indirect Purchaser Class:

> Marvin A. Miller
> Miller Law LLC
> 115 S. LaSalle Street, Suite 2910
> Chicago, IL 60603
> Tel: (312) 332-3400
> mmiller@millerlawllc.com

> Steven Shadowen
> Hilliard & Shadowen LLP
> 2407 S. Congress Avenue, Ste E122
> Austin, TX 78704
> Tel: (855) 344-3928
> steve@hilliardshadowenlaw.com

> Renae Steiner
> Heins Mills & Olson, P.L.C.
> 310 Clifton Avenue
> Minneapolis, MN 55403
> Tel: (612) 338-4605
> rsteiner@heinsmills.com

> *Interim Co-Lead Counsel for the Proposed Indirect Purchaser Class*

To Defendants:

>
> Peter J. Carney
> White & Case LLP
> 701 Thirteenth Street, NW
> Washington, DC 20005-3807
> Tel: 202-626-3600
> pcarney@whitecase.com
>
> *Counsel for Boehringer*
>
> Christopher T. Holding
> Goodwin Procter LLP
> 100 Northern Avenue
> Boston, MA 02210
> Tel: 617-570-1679
> cholding@goodwinlaw.com
>
> *Counsel for Teva*

Any of the parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be delivered, by giving the other parties prior written notice of the changed address, in the manner hereinabove provided, ten (10) calendar days before the change is effective.

25.    **Integrated Agreement**.  This Settlement Agreement (including the exhibits hereto and the *in camera* submissions) contains an entire, complete, and integrated statement of each and every term and provision agreed to, by and among the parties. This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto.

26.    **Headings**.  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

27.    **No Party is the Drafter**.  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

28.    **Choice of Law**.  All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of Connecticut without regard to its choice of law or conflict of laws principles.

29.    **Consent to Jurisdiction**.  Defendants and each member of the Indirect Purchaser Class who does not timely and properly seek exclusion from the Indirect Purchaser Class which has been approved by the Court hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for District of Connecticut for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, except that Teva Pharmaceutical Industries Ltd. maintains that it is not subject to the Court's jurisdiction, consistent with the Court's Order dated March 23, 2015. Nothing in this paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

30.    **No Admission of Liability**.  Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by Defendants including, without limitation, that Defendants have engaged in any conduct or practices that violates any antitrust statute or other law.   This

Settlement Agreement shall not be admissible for any purpose except in an action to enforce its terms or as otherwise provided in paragraphs 5, 20 and 30 hereof.

31.    **Execution in Counterparts**.   This Settlement Agreement may be executed in counterparts.   Signatures transmitted by facsimile or other electronic means shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

[The remainder of this page is intentionally left blank.]

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of December 22, 2017.

Plaintiffs

By: _____

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
mmiller@millerlawllc.com


_____

Steven Shadowen
Hilliard & Shadowen LLC
2407 S. Congress Avenue, Ste E122
Austin, TX 78704
Tel: (855) 344-3928
steve@hilliardshadowenlaw.com

_____

Renae Steiner
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel: (612) 338-4605
rsteiner@heinsmills.com


*Lead Counsel for Plaintiffs and the Indirect Purchaser Class*

Defendants

By: _____

Peter J. Carney
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel: 202-626-3600
pcarney@whitecase.com

*Counsel for Boehringer*

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of December 22, 2017.

Plaintiffs

By:_____

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
mmiller@millerlawllc.com

Steven Shadowen
Hilliard & Shadowen LLC
2407 S. Congress Avenue, Ste E122
Austin, TX 78704
Tel: (855) 344-3928
steve@hilliardshadowenlaw.com


_____

Renae Steiner
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel: (612) 338-4605
rsteiner@heinsmills.com


*Lead Counsel for Plaintiffs and the Indirect Purchaser Class*

Defendants

By:_____

Peter J. Carney
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel: 202-626-3600
pcarney@whitecase.com

*Counsel for Boehringer*


By:_____

Christopher T. Holding

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of December 22, 2017.

 Plaintiffs

By:_____

  Marvin A. Miller
  Miller Law LLC
  115 S. LaSalle Street, Suite 2910
  Chicago, IL 60603
  Tel: (312) 332-3400
  mmiller@millerlawllc.com


_____

  Steven Shadowen
  Hilliard & Shadowen LLC
  2407 S. Congress Avenue, Ste E122
  Austin, TX 78704
  Tel: (855) 344-3928
  steve@hilliardshadowenlaw.com


_____

  Renae Steiner
  Heins Mills & Olson, P.L.C.
  310 Clifton Avenue
  Minneapolis, MN 55403
  Tel: (612) 338-4605
  rsteiner@heinsmills.com


  *Lead Counsel for Plaintiffs and the Indirect Purchaser Class*

Defendants

By:___*Peter J. Carney*_____

  Peter J. Carney
  White & Case LLP
  701 Thirteenth Street, NW
  Washington, DC 20005-3807
  Tel: 202-626-3600
  pcarney@whitecase.com

  *Counsel for Boehringer*

By:_____

  Christopher T. Holding

29

Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Tel: 617-570-1679
cholding@goodwinlaw.com

*Counsel for Teva*

### Appendix A:  Alternative Methodology for Calculating Opt Out's Net Spend

This appendix describes the methodology to be used to estimate an Opt Out's net spend in Indirect Purchaser Class states identified in Paragraph 1 of the Settlement Agreement (the Numerator) in the event that the Court does not compel production of the Opt Out's utilization data:

1. The Aggrenox and generic Aggrenox gross spend amount for each Opt Out shall be estimated based on the share of covered lives as reported in the CMS Medical Loss Ratio ("MLR") data[1] for the 2013 reporting year for the states and jurisdictions included in the Indirect Purchaser Class.

   Specifically, data from the file "MR_Submission_Template_Header.csv" shall be used to identify each Opt-Out (based on the "GROUP_AFFILIATION", "COMPANY_NAME", and "DBA_MARKETING_NAME" columns), and should be limited to the Indirect Purchaser Class states (based on the "BUSINESS_STATE" column) identified in Paragraph 1 of the Settlement Agreement. File "Part1_2_Summary_Data_Premium_Claims.csv" shall be used to determine the number of covered lives (based on observations where the "ROW_LOOKUP_CODE" column equals "NUMBER_OF_COVERED_LIVES").[2]

   a. The number of commercial covered lives for the Opt Out and for all insurers in the data in Indirect Purchaser class states shall be calculated using columns "CMM_INDIVIDUAL_YEARLY," "CMM_SMALL_GROUP_YEARLY," and "CMM_LARGE_GROUP_YEARLY" for observations where the "ROW_LOOKUP_CODE" column equals

---

[1] Available at https://www.cms.gov/CCIIO/Resources/Data-Resources/mlr.html.

[2] If an Opt Out's covered lives cannot be determined from the CMS MLR data, research from other publicly available sources shall be used to provide an estimate for the number of covered lives for the entity.

"NUMBER_OF_COVERED_LIVES" and the "BUSINESS_STATE" column equals an Indirect Purchaser Class state.

b. The number of Medicare covered lives for the Opt Out and for all insurers in Indirect Purchaser Class states and jurisdictions shall be calculated using CMS Medical Loss Ratio ("MLR") data[3] for the 2015 reporting year for the states and jurisdictions included in the Indirect Purchaser Class, specifically, the "MDCR_MLR_BUSNS_YRLY_QTY" column corresponding to the rows where the "ROW_LOOKUP_CODE" column equals "NUMBER_OF_COVERED_LIVES" and the "BUSINESS_STATE" column equals an Indirect Purchaser Class state or jurisdiction and applying that ratio of Medicare covered lives to the public covered lives reported in the 2013 CMS Medical Loss Ratio ("MLR") data.

c. To the extent the Court permits Opt Outs to include any Aggrenox and/or generic Aggrenox transactions under ASO plans, the number of ASO covered lives for the Opt Out and for all insurers in Indirect Purchaser Class states shall be calculated using the "UNINSURED_PLANS_YEARLY" column corresponding to the rows where the "ROW_LOOKUP_CODE" column equals "NUMBER_OF_COVERED_LIVES and the "BUSINESS_STATE" column equals an Indirect Purchaser Class state.

d. The share of ASO covered lives with prescription drug coverage shall be estimated.  The exact sources upon which this adjustment shall be based will be determined at a later date, and may include, to the extent available, Opt Out's or ASO's client's publicly available financial or government compliance documents. Similarly, an adjustment factor will be applied to the number of ASO-covered lives for *all insurers* to estimate the number of total ASO lives with prescription drug coverage for all insurers in the Indirect Purchaser Class states.

---

[3] Available at https://www.cms.gov/CCIIO/Resources/Data-Resources/mlr.html.

e.  To the extent it is determined that the ASO covered lives with prescription drug coverage include both Medicare and commercial lives, the number of Medicare ASO lives shall be estimated by multiplying the total number of ASO covered lives with prescription drug coverage by the ratio of the Opt Out's covered lives in Medicare plans in Indirect Purchaser Class states (see Paragraph 1.b.) to the Opt Out's covered commercial and Medicare lives in Indirect Purchaser Class states (see Paragraphs 1.a and 1.b.).  The number of commercial ASO lives shall be estimated by multiplying the total number of ASO covered lives with prescription drug coverage by the ratio of the Opt Out's covered lives in commercial plans in Indirect Purchaser Class states (see Paragraph 1.a.) to the Opt Out's covered commercial and Medicare lives in Indirect Purchaser Class states (see Paragraphs 1a. and 1.b.).

f.  If the Court permits Opt Outs to include any Aggrenox or generic Aggrenox transactions covered under ASO plans, the Opt Out's total fully-insured and ASO covered lives with prescription drug benefits in commercial and Medicare plans shall be calculated as the sum of the amounts in Paragraphs 1.a., 1.b., and 1.e.  If the Court does not allow the Opt Out insurer(s) to include Aggrenox transactions covered under ASO plans, then the Opt Out's covered lives with prescription drug benefits in commercial and Medicare plans shall be calculated as the sum of the amounts in Paragraphs 1.a. and 1.b.

g.  If the Court permits Opt Outs to include any Aggrenox or generic Aggrenox transactions covered under ASO plans, all insurers' total fully-insured and ASO covered lives with prescription drug benefits in commercial and Medicare plans shall be calculated as the sum of the amounts in Paragraphs 1.a., 1.b., and 1.d.  If the Court does not allow the Opt Out insurer(s) to include Aggrenox transactions covered under ASO plans, then all insurers' covered lives with prescription drug benefits in commercial and Medicare plans shall be calculated as the sum of the amounts in Paragraphs 1.a. and 1.b.

    h.  The Opt Out's share of total relevant lives of all insurers' relevant covered lives shall be calculated by dividing Paragraph 1.f. by Paragraph 1.g.

2.  The Opt Out's estimated Aggrenox and generic Aggrenox gross spend in Indirect Purchaser Class states shall be calculated by multiplying the Opt Out's share of all insurers' relevant covered lives (see Paragraph 1.h.) by the Denominator, after making the following adjustments:

    a.  Aggrenox and generic Aggrenox spending by Humana and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239) and BCBSLA will be added back to the Denominator;

    b.  Purchases of Aggrenox by uninsured individuals shall be removed from the Denominator.  If available, the prescriptions and dollar amounts associated with cash payers shall be calculated from the IQVIA (formerly IMS) NPA data for brand and generic Aggrenox.  If the available NPA data do not offer the ability to identify cash payers, then this amount shall be calculated by multiplying the total Aggrenox and generic Aggrenox sales dollars reported in the NPA data by the percent uninsured as reported by the Kaiser Family Foundation's "Health Coverage & Uninsured" data.[4]  Again, this amount shall be subtracted from the Denominator; and

    c.  The Denominator shall be decomposed into Aggrenox and generic Aggrenox sales.

This total estimate shall also be decomposed into commercial and Medicare spending, based on the Opt Out's distribution of commercial and Medicare covered lives (see Paragraph 1.f.).

---

[4] Available at https://www.kff.org/state-category/health-coverage-uninsured/health-insurance-status.

3. The member contribution shall be removed from the Opt Out's estimated Aggrenox sales in Indirect Purchaser Class states (see Paragraph 2). Several components shall be calculated for this adjustment:

   a. The average Aggrenox price per prescription shall be estimated by taking the total Aggrenox sales dollars, less Medicaid purchases, and dividing by the total number of Aggrenox prescriptions, less Medicaid purchases, based on IQVIA NPA data. The average generic Aggrenox price per prescription shall be estimated in a similar fashion based on generic Aggrenox sales dollars and prescriptions.

   b. The Opt Out's number of Aggrenox and generic Aggrenox prescriptions in Indirect Purchaser Class states shall be estimated by dividing the Opt Out's estimated gross spend in Indirect Purchaser Class states in Paragraph 2 by the average prices per prescription in Paragraph 3.a. This shall be done separately for the Opt Out's estimated commercial spend as well as the Opt Out's estimated Medicare spend.

   c. For Aggrenox, the member contribution per prescription shall be based on for the commercial segment, the number that is the weighted average of: (1) the weighted average of the preferred brand copay and the non-preferred brand co-pay, and (2) weighted average of the preferred brand co-insurance percentage and the non-preferred brand co-insurance percentage, multiplied by the average price per prescription, using data from reports issued by the Kaiser Family Foundation, such as "Employer Health Benefits: 2015 Annual Survey"[5] and for the Part D segment, the number that is the weighted average of preferred brand co-pay and the non-preferred brand co-pay, using data from "Medicare Part D at Ten Years: The 2015 Marketplace and Key Trends, 2006-2015."[6] The weighting of the average shall be based on

---

[5] Available at http://files.kff.org/attachment/report-2015-employer-health-benefits-surveyhttp://files.kff.org/attachment/report-2015-employer-health-benefits-survey.

[6] Available at http://files.kff.org/attachment/report-medicare-part-d-at-ten-years-the-2015-marketplace-and-key-trends-2006-2015.

Aggrenox tier placement data produced in this litigation and publicly available data, such as that reported by MMIT.

d.  For generic Aggrenox, the member contribution per prescription shall be calculated as in 3.c. for co-insurance consumers only, and shall be based on an estimate of the insured lives with a prescription coinsurance benefit, using data from reports issued by the Kaiser Family Foundation, such as "Employer Health Benefits: 2015 Annual Survey,"[7] multiplied by the average price per prescription.

e.  The Aggrenox and generic Aggrenox member contribution amounts shall be estimated by multiplying the Opt Out's number of prescriptions in Paragraph 3.b. by the corresponding member contribution per prescription (as calculated in Paragraph 3.c. and 3.d.).

4.  The Numerator for the Opt Out's draw down rate shall thus be computed by taking the Opt Out's estimated gross Aggrenox and generic Aggrenox spend in the Indirect Purchaser Class states calculated in Paragraph 2 and subtracting the estimated member contribution amounts in Indirect Purchaser Class states in Paragraph 3.e.

---

[7] Available at http://files.kff.org/attachment/report-2015-employer-health-benefits-surveyhttp://files.kff.org/attachment/report-2015-employer-health-benefits-survey.

# Exhibit A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IN RE AGGRENOX<br>ANTITRUST LITIGATION | : | Docket No. 3:14 MD 2516 (SRU) |
|  | : |  |
|  | : |  |
| THIS DOCUMENT RELATES TO: | : |  |
|  | : |  |
| ALL INDIRECT PURCHASER<br>ACTIONS | : |  |

### ORDER GRANTING INDIRECT PURCHASER CLASS PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, AND SCHEDULE FOR A FAIRNESS HEARING

Upon review and consideration of Indirect Purchaser Class Plaintiffs' Unopposed Motion for Certification of a Settlement Class, Appointment of Class Counsel, Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class, Proposed Schedule for a Fairness Hearing, and exhibits thereto, and any hearing thereon, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that said motion is GRANTED as follows:

### Jurisdiction

1.      This Order hereby incorporates by reference the definitions in the Settlement Agreement among Defendants, Plaintiffs, and the Indirect Purchaser Class, and all capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.      This Court has jurisdiction over each of the named plaintiffs, Plaintiffs, A.F.

of L. – A.G.C. Building Trades Welfare Plan; AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund; International Union of Operating Engineers Local 49 Health & Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; Painters District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health & Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137, 137A, 137B, 137C, and 137R; The Electrical Workers' Insurance Fund; and Sergeant's Benevolent Association Health & Welfare Fund (collectively "Indirect Purchaser Class Plaintiffs," "named Plaintiffs," or "Plaintiffs") and Boehringer Ingelheim Pharma GmbH & Co. KG, Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"); and Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries, Ltd., Barr Pharmaceuticals, Inc. (n/k/a Barr Pharmaceuticals, LLC), Barr Laboratories Inc., Duramed Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.), and Duramed Pharmaceutical Sales Corp. (n/k/a Teva Sales and Marketing, Inc.) ("Teva") (collectively "Defendants"), and jurisdiction over the litigation to which Indirect Purchaser Class Plaintiffs and Defendants are parties.

## <u>Certification of the Proposed Class</u>

The Court makes the following determinations as required by Federal Rule of Civil Procedure 23 solely in connection with the proposed settlement:

1.      Pursuant to Rule 23(c)(1)(B), the Class, which shall hereinafter be denominated "the Class," is defined as follows:

All persons or entities in the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, who, in one of the listed states, indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for branded or generic Aggrenox, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, from November 30, 2009 through December 22, 2017.

The following persons or entities are excluded from the proposed Indirect Purchaser Class:

a.      Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

b.      All federal or state governmental entities, except cities, towns, or municipalities with self-funded prescription drug plans;

c.      All persons or entities who purchased Aggrenox for purposes of resale or who purchased directly from the Defendant or their affiliates;

d.      Fully insured health plans (plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members);

e.      Pharmacy Benefits Managers (but not excluding affiliates, subsidiaries or related companies who would otherwise be included in the class definition);

a.      Humana Inc. and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239);

b.      Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana ("BCBSLA");

c.      Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

3

d.  Co-payers (consumers) who did not purchase branded Aggrenox before July 1, 2015 **and** who have a flat generic co-pay, *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

e.  All persons who purchased or received branded or generic Aggrenox through a Medicaid program only; and

f.  The judges in this case and any members of their immediate families;

g.  All persons or entities who purchased Aggrenox in the State of Rhode Island prior to July 15, 2013; and

h.  All persons or entities who purchased Aggrenox in the State of Oregon before 2010.

2.   Pursuant to Rule 23(a)(1), the Court determines that the Class is so numerous and geographically dispersed that joinder of all members is impracticable. The Class has (at least) 42,000 members geographically dispersed throughout the United States, which is sufficient to satisfy the impracticality of joinder requirement of Rule 23(a)(l).

3.   Pursuant to Rule 23(c)(l)(B), the Court determines that the following issues relating to claims and/or defenses (expressed in summary fashion) present common, class-wide questions:

(a)  Whether the conduct challenged by the Class as anticompetitive in the Consolidated Amended Class Action Complaint filed June 16, 2014 (the "Complaint") (Doc. No. 98) constituted a conspiracy to monopolize or monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

(b)  Whether the conduct challenged by the Class as anticompetitive in the Complaint constituted a conspiracy in restraint of trade and violated Section 1 of the Sherman Act, 15 U.S.C. § 1 and several states' antitrust and consumer protection acts;

4

(c)     Whether the challenged conduct substantially affected interstate commerce and caused antitrust injury-in-fact to the Class, in the nature of overcharges; and

(d)     The amount of overcharge damages, if any, owed to the Class in the aggregate under the several states' antitrust and consumer protection acts.

4.     The Court determines that the foregoing class-wide issues relating to claims and/or defenses are questions of law or fact common to the Class that satisfy Rule 23(a)(2).

5.     The Named Plaintiffs are hereby appointed as representatives of the Class, for the following reasons:

(a)     The Named Plaintiffs allege, on behalf of the Class, the same manner of injury from the same course of conduct that they complain of themselves, and assert on their own behalf the same legal theory that they assert for the Class. The Court therefore determines that the Named Plaintiffs' claims are typical of the claims of the proposed Class within the meaning of Rule 23(a)(3); and

(b)     Pursuant to Rule 23(a)(4), the Court determines that the Named Plaintiffs have and will continue to fairly and adequately protect the interests of the Class. The Named Plaintiffs' interests do not conflict with the interests of absent members of the Class. All of the members of the Class share a common interest in proving Defendants' alleged anticompetitive conduct, and all Class members share a common interest in recovering the overcharge damages sought in the Complaint. Moreover, the Class is made up of business entities and individual consumers and any member of the Class that wishes to opt out will be given an opportunity to do so. Furthermore, the Named Plaintiffs and their Counsel are well qualified to represent the Class

in this case, given their experience in prior cases, and the vigor with which

they have prosecuted this action thus far.

6.      Pursuant to Rule 23(b)(3), the Court determines that, in connection with and

solely for purposes of settlement, common questions of law and fact predominate over

questions affecting only individual members. In light of the class-wide claims, issues, and

defenses set forth above, the issues in this action that are subject to generalized proof, and

thus applicable to the Class as a whole, predominate over those issues that are subject only

to individualized proof. *See Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 81–82 (2d Cir.

2015); *Collins v. Olin Corp.*, 248 F.R.D. 95, 100–02 (D. Conn. 2008).

7.      Also pursuant to Rule 23(b)(3), the Court determines that, in connection

with and solely for purposes of settlement, a class action is superior to other available

methods for the fair and efficient adjudication of this action. The Court believes it is

desirable, for purposes of judicial and litigation efficiency, to concentrate the claims of the

Class in a single action. The Court also believes that there are few manageability problems

presented by a case such as this, particularly in light of the Settlement preliminarily

approved in this Order.

8.      Pursuant to Fed. R. Civ. P. 23(c)(l)(B) and 23(g), the Court having

considered the factors provided in Rule 23(g)(1)(A), the Court appoints Lead Counsel,

Liaison Counsel and an Executive Committee ("Class Counsel") for the Indirect Purchaser

Class, consistent with the Court's Order dated June 16, 2014 (ECF No. 95), and the duties

and responsibilities described in that Order.

## **Preliminary Approval of the Proposed Settlement**

9.      A court may approve a class action settlement if it is "fair, adequate, and

reasonable, and not a product of collusion." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96,

116 (2d Cir. 2005) (internal quotation marks omitted). In evaluating a proposed settlement

for preliminary approval, however, the Court is required to determine only whether "it is

the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representative or segments of the class and falls within the reasonable range of approval." *O'Connor v. AR Res.*, 2010 U.S. Dist. LEXIS 30345, at *7 (D. Conn. Mar. 30, 2010) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *see also Berkson v. Gogo, LLC*, 147 F. Supp. 3d 123, 130 (E.D.N.Y. 2015) (quoting *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009)). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)). The proposed settlement satisfies this standard.

10.    The Court finds that the proposed settlement, which includes a cash payment of $54,000,000 by Defendants into an escrow account for the benefit of the Class (the "Settlement Fund") in exchange for, *inter alia*, dismissal of the litigation between Indirect Purchaser Class Plaintiffs and Defendants with prejudice and releases of certain claims filed or that could have been filed against Defendants by Indirect Purchaser Class Plaintiffs and the Class, as set forth in the Settlement Agreement, was arrived at by arm's-length negotiations by highly experienced counsel after years of litigation, falls within the range of possibly approvable settlements, and is hereby preliminarily approved, subject to further consideration at the Fairness Hearing provided for below.

**Approval of the Plan of Notice to the Class**

11.    The proposed form of Notice to members of the Class of the pendency of this Class Action and the proposed Settlement thereof (annexed as Exhibit B to the Settlement Agreement) satisfy the requirements of Rule 23(e) and due process, are otherwise fair and reasonable, and therefore are approved. Class Counsel shall cause the

Notice substantially in the form attached to the Settlement Agreement to be disseminated by _____, 2018, *via* first-class mail to those members of the Class who can reasonably and economically be identified, by publication, and email as set forth in the Notice Plan.

12.    Members of the Class may request exclusion from the Class or object to the Settlement no later than _____, 2018 (65 days after this order). Class Counsel or their designee shall monitor and record any and all opt-out requests that are received.

13.    Pursuant to the Class Action Fairness Act of 2005 ("CAFA") Defendants shall serve notices as required under CAFA within 10 days from the date Plaintiffs file the Settlement Documents with the Court. Defendants shall contemporaneously provide Class Counsel with copies of any such notices.

14.    The Court appoints A.B. Data, Ltd. to serve as claims administrator and to assist Class Counsel in disseminating the Notice. All expenses incurred by the claims administrator must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund.

15.    The Court appoints Bank Leumi USA to serve as Escrow Agent pursuant to the terms of the Escrow Agreement for the purpose of administering the escrow account holding the Settlement Fund. Except as the parties have agreed in the Escrow Agreement, all expenses incurred by the Escrow Agent must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund.

## **Final Fairness Hearing**

16.    A hearing on final approval (the "Fairness Hearing") shall be held before this Court at 1:00 p.m. on _____, 2018, at the United States District Court for the District of Connecticut, Brien McMahon Federal Building, 915 Lafayette Boulevard, Courtroom One, Bridgeport, CT 06604. At the Fairness Hearing, the Court will consider, inter alia: (a) the fairness, reasonableness and adequacy of the Settlement and whether the Settlement

8

should be finally approved; (b) whether the Court should approve the proposed plan of distribution of the Settlement Fund among Class members; (c) whether the Court should approve awards of attorneys' fees and reimbursement of expenses to Class Counsel; (d) whether incentive awards should be awarded to the Named Plaintiffs; and (e) whether entry of a Final Order and Judgment terminating the litigation between Indirect Purchaser Class Plaintiffs and Defendants should be entered. The Fairness Hearing may be rescheduled or continued; in this event, the Court will furnish all counsel with appropriate notice. Class Counsel shall be responsible for communicating any such notice promptly to the Class by posting a conspicuous notice on the following website of the Claims Administrator:

INSERT DEDICATED WEBSITE ESTABLISHED BY CLAIMS ADMIN.

17.    Class members who wish to: (a) object with respect to the proposed Settlement; and/or (b) wish to appear in person at the Fairness Hearing, must first send an Objection and, if intending to appear, a Notice of Intention to Appear, along with a Summary Statement outlining the position(s) to be asserted and the grounds therefore together with copies of any supporting papers or briefs, via first class mail, postage prepaid, to the Clerk of the United States District Court for the District of Connecticut, Brien McMahon Federal Building, 915 Lafayette Boulevard, Bridgeport CT 06604, with copies to the following counsel:

> *On Behalf of Indirect Purchaser Class*
>
> Marvin A. Miller
> Miller Law LLC
> 115 S. LaSalle Street, Suite 2910
> Chicago, IL 60603
> Tel: (312) 332-3400
> mmiller@millerlawllc.com
>
> Steven Shadowen
> Hilliard & Shadowen LLP
> 2407 S Congress Avenue, Ste E 122
> Austin, TX 78704
> Tel: (855) 344-3928

steve@hilliardshadowenlaw.com

Renae Steiner
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403
Tel: (612) 338-4605
rsteiner@heinsmills.com


*On behalf of Boehringer*:

Peter J. Carney White & Case LLP
701 Thirteenth Street, NW Washington, DC 20005-3807
Tel: 202-626-3600
Pcarney@whitecase.com

*On behalf of Teva*

Christopher T. Holding Goodwin Procter LLP 100 Northern Avenue
Boston, MA 02210
Tel: 617-570-1679
cholding@goodwinlaw.com

To be valid, any such Objection and/or Notice of Intention to Appear and Summary statement must be postmarked no later than _____. Except as herein provided, no person or entity shall be entitled to contest the terms of the proposed Settlement. All persons and entities who fail to file an Objection and/or Notice of Intention to Appear as well as a Summary Statement as provided above shall be deemed to have waived any such objections by appeal, collateral attack or otherwise and will not be heard at the Fairness Hearing.

18.     All briefs and materials in support of the final approval of the settlement and the entry of Final Order and Judgment proposed by the parties to the Settlement Agreement shall be filed with the Court by _____, 2018.

19.     All briefs and materials in support of the application for an award of attorneys' fees and reimbursement of expenses, and incentive awards for the Named Plaintiffs, shall be filed with the Court by _____, 2018.

20.     All proceedings in the action between the Indirect Purchaser Class

Plaintiffs and Defendants are hereby stayed until such time as the Court renders a final decision regarding the approval of the Settlement and, if the Court approves the Settlement, enters Final Order and Judgment and dismisses such actions with prejudice.

21.     Neither this Order, nor the Settlement Agreement, nor any other Settlement related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Defendants as to the validity of any claim that has been or could have been asserted by Indirect Purchaser Class Plaintiffs against Defendants or as to any liability by Defendants as to any matter set forth in this Order, or as to whether any class, in this case or others, may be certified for purposes of litigation and trial.

So ordered.

Dated at Bridgeport, Connecticut, this __th day of _____ 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

# Exhibit B

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

**NOTICE OF CLASS ACTION AND PROPOSED END-PAYOR SETTLEMENT**

**If you purchased Aggrenox or its generic version,
the settlement of a class action lawsuit may affect your rights.**

*This Notice is being provided by Order of the U.S. District Court.
It is not a solicitation from a lawyer. You are not being sued.*

- **Your legal rights are affected whether you act or do not act, so please read this notice carefully.**

- The purpose of this notice is to alert you to a proposed settlement relating to a Class Action Lawsuit (the "Lawsuit") brought by indirect purchasers ("End-Payor Class Plaintiffs") of Aggrenox (aspirin/extended-release dipyridamole). The Lawsuit is pending in the United States District Court for the District of Connecticut ("the Court") against the following Defendants: Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim International GmbH, Boehringer Ingelheim Pharma GmbH & Co. KG, (collectively "Boehringer Ingelheim"); and Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd. ("Teva"), Barr Pharmaceuticals Inc. (n/k/a Barr Pharmaceuticals LLC), Barr Laboratories, Inc., Duramed Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.) and Duramed Pharmaceuticals Sales Corp. (n/k/a/ Teva Sales and Marketing, Inc.) ("Barr") (collectively "Teva"). Plaintiffs in the lawsuit claim that Defendants hurt competition and violated state laws in the United States and its territories, including Puerto Rico. Plaintiffs allege Defendants unlawfully delayed the availability of allegedly less-expensive generic versions of Aggrenox and that Defendants' conduct caused consumers and third-party payors (discussed below) to pay too much for Aggrenox in these states and territories. Defendants deny any wrongdoing.

*This lawsuit does not claim that Aggrenox is unsafe or ineffective.*

**PROPOSED CLASS**

This Notice (the "Settlement Notice") provides notice of the proposed settlements with the Defendants on behalf of the members of the Proposed Settlement Class as defined below. As described below, if you are a member of the Proposed Settlement Class, you may object to the Settlement.

The Court has determined that the lawsuit between End-Payor Class Plaintiffs and Defendants can be a class action for purposes of this settlement because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts, for those purposes.   The class (hereinafter, the "End-Payor Class Plaintiffs" or the "Class") includes the following:

> All persons or entities in the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, who, in one of the listed states, indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for branded or generic Aggrenox, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, from November 30, 2009 through December 22, 2017.
> .

The following persons or entities are excluded from the proposed End-Payor Class Settlement: (a) Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates; (b) all federal or state governmental entities, *except* cities, towns, or municipalities with self-funded prescription drug plans; (c) all persons or entities who purchased Aggrenox for purposes of resale or who purchased directly from the Defendant or their affiliates; (d) fully-insured health plans (plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members); (e) Pharmacy Benefits Managers (but not excluding affiliates, subsidiaries or related companies who would otherwise be included in the class definition; (f) Humana Inc. and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint dated April 13, 2015 (Doc. No. 239); (f) Louisiana Health Service Indemnity Company d/b/a BlueCross/Blueshield of Louisiana ("BCBSLA") as defined in paragraph 17 of BCBSLA's Amended Complaint dated August 12, 2015 (Doc. No. 6); (g) flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs); (h) co-payers (consumers) who did not purchase branded Aggrenox before July 1, 2015 *and* who have a flat generic co-pay, *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs; (i) all persons who purchased or received branded or generic Aggrenox through a Medicaid program only; (j) the judges in this case and any members of their immediate families; (k); Purchasers for all purchases of Aggrenox in the State of Rhode Island prior to July 15, 2013; and (l) Purchasers for all purchases of Aggrenox in the State of Oregon before 2010.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** | You may choose to exclude yourself (i.e., "opt out") from the Class. If you decide to exclude yourself, you will not be bound by any decision in this Lawsuit relating to Defendants. This is the only option that allows you ever to be part of any lawsuit (other than this Lawsuit) against Defendants relating to the legal claims against Defendants in this case. The Exclusion Deadline is [_____]. |
| **OBJECT TO THE SETTLEMENT** | Do not exclude yourself. Write to the Court and explain what you do not like about the Settlement. The objection deadline is [_____]. Please consult [CASE WEBSITE] for any updates on deadlines. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. Your notice of intention to appear at the Final Approval Hearing must be postmarked no later than [_____]. Please consult [CASE WEBSITE] for any updates on deadlines. |
| **DO NOTHING** | Remain a part of this lawsuit and participate in the Settlements. |

## THESE RIGHTS AND OPTIONS AND THE DEADLINES TO EXERCISE THEM ARE EXPLAINED IN THIS NOTICE.

## TABLE OF CONTENTS

10. What are my options as a member of the Class? ...................................................................8
11. What does it mean to object? .................................................................................................9
12. How do I object to the proposed Settlements? .......................................................................9
EXCLUDING YOURSELF FROM THE SETTLEMENT .................................................................9
13. What does it mean to request to be excluded from the Settlement? .....................................10
14. How do I get out of the Settlement? (Excluding yourself.) ..................................................10

2

15. How do Third-Party Payors get out of the Settlement? (Excluding a Third-Party Payor) .......................10
16. What is the legal significance of excluding myself? ........................................................................11
17. If I don't exclude myself, can I sue later?......................................................................................11
18. What's the difference between objecting and excluding myself from the Settlement?.....................12
IF YOU DO NOTHING ...................................................................................................................12
19. What happens if I do nothing at all? .............................................................................................12
THE LAWYERS REPRESENTING YOU ...........................................................................................12
20. As a member of the Class, do I have a lawyer representing my interests in this Class Action and  the
Settlements?................................................................................................................................12
21. How will the lawyers be compensated? Will the named Plaintiffs receive an incentive award?.............13
22. Should I get my own lawyer? .......................................................................................................13
THE COURT'S FINAL APPROVAL HEARING...................................................................................13
23. When and where will the Court determine whether to approve the Settlements? .....................................13
24. Do I have to attend the Final Approval Hearing? ............................................................................13
25. May I speak at the Final Approval Hearing?...................................................................................13
GETTING MORE INFORMATION.....................................................................................................14
26. Where do I get more information?................................................................................................14

## BASIC INFORMATION ABOUT THE LAWSUIT AND SETTLEMENTS

1.   **Why did I get this Notice?**

You received this Notice because you requested it or records indicate that you may be a member of the End-Payor Class. A Settlement has been reached with Defendants. All Defendants deny any wrongdoing. You are not being sued. This Settlement Notice describes the lawsuit, the Settlement of this case, and the rights and options you have now.

2.   **What is the lawsuit about?**

The lawsuit is about the price of Aggrenox and whether its manufacturer, Boehringer Ingelheim, delayed the availability of an allegedly less-expensive generic version through alleged anticompetitive agreements with Barr. Plaintiffs (those who brought the suit) allege that Boehringer Ingelheim and Barr did so through unlawful settlement of patent lawsuits in which the patents covering Aggrenox were in dispute. After the challenged agreements were entered into, Barr was acquired by Teva.  Plaintiffs claim that Defendants' actions denied End-Payors who paid for Aggrenox the benefits of competition and caused them to pay higher prices for Aggrenox than they otherwise would have paid.

Defendants deny these claims and deny that they did anything wrong. Defendants assert that the settlement of the patent lawsuits did not violate Federal or state antitrust or consumer protection laws. Defendants assert that their conduct has not delayed the entry of generic versions of Aggrenox into the market.  No court or other authority has found that Defendants engaged in any wrongdoing.

3.   **What is the current status of the lawsuit?**

Plaintiffs have agreed to settle with the Defendants. The lawsuit is currently pending in the United States District Court for the District of Connecticut before United States District Judge Stefan R. Underhill. The case name is *In re Aggrenox Antitrust Litigation*, and the civil action number is 3:14-md-2516-SRU (D. Conn.). The Court has set a Final Approval Hearing for the proposed Settlement on [FINAL FAIRNESS DATE] in Courtroom 1 at the United States District Court for the District of Connecticut, Brien McMahon

Federal Building, 915 Lafayette Boulevard, Bridgeport CT 06604.The Court may continue the Final Approval Hearing without further notice so please consult **InReAggrenoxAntitrustLitigation.com** for any updates on deadlines.

4. **What does the Settlement provide?**

Defendants have agreed to pay fifty-four million dollars ($54,000,000.00) in cash into the Settlement Fund (which will include any earnings or interest that accrues). End-Payor Class Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees (of up to thirty-three and one-third percent (33⅓%) of the Settlement Fund), a proportionate share of the interest earned on the Settlement Fund, and expenses, incentive awards to the Class Representatives of $10,000.00 each their services to the Class, and payment for costs of administering the settlement from the fund. The remainder (the "Net Settlement Fund") will be divided among Class Members. Plaintiffs' Counsel may also apply for additional attorneys' fees and costs incurred for services rendered to defend any appeals from final approval of the Settlement, additional services rendered in connection with claims administration, and to enforce the terms of the Settlement.

The Settlement additionally provides for what happens if the Defendants subsequently resolve the litigation with any persons or entities who elect to exclude themselves from the Settlement ("opt outs") and pursue Aggrenox-related claims against the Defendants. If such a resolution occurs, the Settlement provides that the Defendants shall make additional payments to Class Counsel, in an interest-bearing account (the "Set Aside Fund"), in an amount equal to ten percent (10%) of any amount that Defendants pay to any person or entity who opted out of this Class and will be available for distribution to Class Counsel upon Court approval. The parties agree that this amount is intended to cover a portion of Indirect Purchaser Class Counsels' attorneys' fees, costs and expenses. The amount of any such attorneys' fees, costs and expenses awarded to Class Counsel from the Set Aside Fund shall be determined by the Court. Any Set Aside Funds not awarded to Class Counsel shall be returned to the Defendants.

5. **What are members of the Class giving up in exchange for the Settlements?**

In exchange for the Settlements, members of the Class will agree to a "Release of Claims" against the Defendants as follows:

Upon the Settlement Agreement  becoming final, Plaintiffs and the Indirect Purchaser Class, except those who have requested exclusion from the Class and such request has been approved by the Court,  shall unconditionally, fully and finally release  and forever discharge  Defendants,  any past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors,  management, supervisory boards, insurers, general or limited partners, employees, agents, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, heirs, executors, administrators,  successors and assigns of each of the foregoing) (the "Released Parties") from  any  and  all manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever  incurred, liabilities of any nature whatsoever, known  or  unknown,  suspected or unsuspected, fixed  or contingent, including costs, expenses, penalties and attorneys'  fees, accrued in whole or in part, in law or equity, that Plaintiffs or any member or members of the Indirect Purchaser Class (including any of their past, present, or future officers, directors, insurers, general or limited partners, divisions,  stockholders, agents,  attorneys, employees,  legal representatives,  trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such) (the "Releasors"), whether or not they object to the Settlement, ever had, now has, or hereafter can, shall or may have, indirectly, representatively, derivatively or in any other capacity, arising out of or relating in any way to any claim under federal or state laws that was alleged or could have been alleged in the Indirect Purchaser Class Action, prior to the date of this Settlement, including but not limited to:

4

(1) the alleged delayed entry of generic Aggrenox;

(2) conduct with respect to the procurement, maintenance and enforcement of United States Patent No. 6,015,577; and

(3) the sale, marketing or distribution of Aggrenox or generic Aggrenox except as provided for in paragraph 15 of the Settlement Agreement (the "Released Claims").

Releasors hereby covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.  For the avoidance of doubt, the release provided herein applies, without limitation, to any conduct relating to the procurement, maintenance or enforcement of United States Patent Number 6,015,577, including any commencement, maintenance, defense or other participation in litigation concerning any such patent, that was alleged in, could be fairly characterized as being alleged in, is related to an allegation made in, or could have been alleged in the Indirect Purchaser Class Action.

In addition, Plaintiffs, on behalf of themselves and all other Releasors, hereby expressly waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights and benefits conferred by §1542 of the California Civil Code, which reads:

**SECTION 1542. GENERAL RELEASE; EXTENT. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;**

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Plaintiffs and members of the Indirect Purchaser Class may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect  to the claims which are the subject matter of this paragraph 14, but each Plaintiff and member of the Indirect Purchaser Class hereby expressly waives and fully, finally and forever settles, releases and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Plaintiff and member of the Indirect Purchaser Class also hereby expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against any Released Party under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

The Settlement Agreement, available at **InReAggrenoxAntitrustLitigation.com**, fully describe the Settlement and the Released Claims. If you have any questions, you can talk with the lawyers listed in Question 20 for free, or you can, of course, talk with your own lawyer if you have questions about what this means.

**DETERMINING IF YOU ARE A MEMBER OF THE CLASS**

6. **I am an individual who purchased or paid for Aggrenox and/or its generic equivalent; how do I know if I am a member of the Class?**

As a **Consumer**, you may be a member of the Class if:

- From November 30, 2009, until December 22, 2017, you purchased or paid for some or all of the purchase price for Aggrenox and/or its generic versions in the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon[1], Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, for consumption by yourself or your family.

The following are ***NOT*** members of the Class:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- All federal or state governmental entities, except cities, towns, or municipalities with self-funded prescription drug plans;
- All persons or entities who purchased Aggrenox for purposes of resale or who purchased directly from the Defendant or their affiliates;
- Fully insured health plans (plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members);
- Pharmacy Benefits Managers (but not excluding affiliates, subsidiaries or related companies who would otherwise be included in the class definition);
- Humana and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239);
- BCBSLA;
- Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- Co-payers (consumers) who did not purchase branded Aggrenox before July 1, 2015 ***and*** who have a flat generic co-pay, *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;
- All persons that purchased or received branded or generic Aggrenox through a Medicaid program only; and
- The judges in this case and any members of their immediate families;
- All persons or entities who purchased Aggrenox in the State of Rhode Island prior to July 15, 2013; and
- All persons or entities who purchased Aggrenox in the State of Oregon before 2010.

7. **I am a Third-Party Payor that has purchased or paid for Aggrenox and/or its generic equivalent; how do I know if I am a member of the Settlement Class?**

As a **Third-Party Payor**, you may be a member of the Class if:

- From November 30, 2009, until December 22, 2017, you purchased, paid and/or reimbursed for some or all of the purchase price for Aggrenox and/or its generic versions in the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada,

---

[1] Purchases in Oregon must have been made in 2010 or after and purchases in Rhode Island must have been made after July 15, 2013.

New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon[2], Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, for consumption by your members, employees, insureds, participants, or beneficiaries.

- As a Third-Party Payor, you are *NOT* a member of the Class if you are among any of the following:

   o Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

   o All federal or state governmental entities, excluding cities, towns, or municipalities with self-funded prescription drug plans;

   o All persons or entities that purchased Aggrenox or its generic equivalents for purposes of resale or directly from the Defendants or their affiliates;

   o Fully-insured health plans (plans that purchased insurance from another Third-Party Payor covering 100% of the plan's reimbursement obligations to its members);

   o Pharmacy Benefits Managers (but not excluding affiliates, subsidiaries or related companies who would otherwise be included in the class definition);

   o Humana Inc. and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239) ("Humana");

   o Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana ("BCBSLA") as defined in paragraph 17 of BCBSLA's Amended Complaint dated August 12, 2015 (Doc. No. 6).

   o All entities who did not purchase branded Aggrenox before July 1, 2015 *and* purchased only branded Aggrenox after July 1, 2015;

   o The judges in this case and any members of their immediate families;

   o Purchasers for their purchases of Aggrenox in the State of Oregon before 2010;

   o Purchasers for their purchases of Aggrenox in the State of Rhode Island before July 15, 2013.

Third-Party Payors include all health insurance companies, third-party administrators, health maintenance organizations, health and welfare plans that make payments from their own funds, and other health benefit providers and entities with self-funded plans that contract with a health insurer or administrator to administer their prescription drug benefits. Third-Party Payors include such private entities that may provide prescription drug benefits for current or former public employees and/or public benefits programs, but only to the extent that such a private entity purchased Aggrenox and/or its generic equivalent for consumption by its members, employees, insureds, participants, or beneficiaries. For purposes of this definition, an entity "paid for" Aggrenox and/or its generic equivalent if it paid some or all of the purchase price.

---

[2] Purchases in Oregon must have been made in 2010 or after and purchases in Rhode Island must have been made after July 15, 2013.

**YOUR SETTLEMENT OPTIONS AS A MEMBER OF THE CLASS**

8. **How much money can I get?**

At this time, it is unknown how much each member of the Class who submits a valid claim will receive. Payments will be based on a number of factors, including the number of valid claims filed by all members of the Settlement Class and the dollar value of each member of the Class' purchase(s) in proportion to the total claims filed. No matter how many claims are filed, no money will be returned to the Defendants once the Court finally approves the Settlement. In order to receive a payment, you will need to file a valid claim form before the claims period ends. The claims period has not yet begun. The net settlement funds, after the payment of Court-approved attorneys' fees, reimbursement of expenses, incentive awards, escrow fees, and claims administration fees and costs, shall be distributed to eligible members of the Class according to the Plan of Allocation described herein.

9. **When will I get a payment?**

When you get your payment depends on several matters, including whether the Court decides to give Final Approval to the settlement, and any subsequent proceedings, including appeals from the Final Order and Judgment.

**If you decide not to exclude yourself from the Class, when you get a payment depends on the timing of Final Approval and any appeal of that Final Approval. The Net Settlement Fund will be allocated to members of the Class as soon as practical after Final Approval has been obtained for the proposed Settlement. You will not be responsible for calculating the amount you may be entitled to receive.**

The Plan of Allocation is as follows: the Net Settlement Fund will be divided into two pools, one for consumers and one for third-party payors. The Consumer Pool shall receive 21.2% of the Net Settlement Fund and the Third-Party Payor Pool shall receive 78.8% of the Net Settlement Fund Amount, both percentages to be adjusted to account for any opt-outs. Eligible Claimants shall be paid out of each Allocation Pool for which they are eligible. Eligible Consumer Claimants will receive a distribution on a *pro rata* basis in the Consumer Pool based on the number of 30-day prescriptions for which they paid. Third-Party Payors will receive a distribution on a *pro rata* basis in the Third-Party Payor Pool based on their reimbursements of Aggrenox® and/or generic Aggrenox®. If the initial proposed distribution to an Allocation Pool would result in the Claimants in that pool receiving more than their single damages, then the distributions shall be adjusted as noted in the Plan of Allocation, which is available on **InReAggrenoxAntitrustLitigation.com**.

If the proposed Settlement is given Final Approval, but there is an appeal of the Final Approval, the appeal could take several years to resolve. Any net earnings and accrued interest on the Settlement Fund will be included, *pro rata*, in the amount paid to the members of the Class.

If you do decide to exclude yourself from the Settlement Class, which means that you are choosing not to be a part of the Settlement Class and the Settlement, then you will not receive a share of the Settlement Fund.

10. **What are my options as a member of the Class?**

If you are a member of the Settlement Class, you can choose to do nothing, exclude yourself from the Settlement Class, or object to the Settlement.

11.  **What does it mean to object?**

Objecting is telling the Court that you don't like something about the request for attorneys' fees and request for reimbursement of expenses, request for payment of incentive awards to the Class Representatives, or the proposed Settlement. You can give reasons why you think the Court should not approve it. The Court will consider your views before making a decision, but if the Court rejects your objection you will remain a member of the Class.

12.  **How do I object to the proposed Settlements?**

To object, you must prepare and sign a written objection that includes: (1) the case name and number ("*In re Aggrenox Antitrust Litigation*, Civil Action No. 3:14-md-2516"); (2) your full name, current address, and telephone number; (3) a written statement of your objections and the specific reasons for each; (4) any supporting papers, evidence, or documents; (5) a statement of whether you intend to appear and present your objections at the Fairness Hearing (see Question 23); and (6) your signature. You must file your objection with the Court, and mail copies to Class Counsel and Defense Counsel postmarked not later than_____CAPS AND BOLD [ DATE].

| COURT | CLASS COUNSEL |
|---|---|
|  | Renae Steiner<br>**HEINS MILLS & OLSON, PLC**<br>310 Clifton Avenue<br>Minneapolis, MN 55403<br>612-338-4605<br><br>Marvin A. Miller<br>**MILLER LAW LLC**<br>115 S. LaSalle Street, Suite 2910,<br>Chicago, IL 60603<br>312-332-3400<br><br>Steve Shadowen<br>**HILLIARD & SHADOWEN LLP**<br>2407 S. Congress Ave., Ste. E 122<br>Austin, TX  78704<br>855-344-3298 |
| **DEFENSE COUNSEL FOR BOEHRINGER DEFENDANTS** | **DEFENSE COUNSEL FOR BARR AND Teva** |
| Peter J. Carney<br>**WHITE & CASE LLP**<br>701 Thirteenth Street, NW<br>Washington, DC 20005-3807<br>Tel: 202-626-3600<br>pcarney@whitecase.com | Christopher T. Holding<br>**GOODWIN PROCTER LLP**<br>100 Northern Avenue<br>Boston, MA 02210<br>Tel: 617-570-1679<br>cholding@goodwinlaw.com |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**13.   What does it mean to request to be excluded from the Settlement?**

If you do not want to be part of the Settlement and you want to keep your right to sue the Defendants relating to the allegations in *In re Aggrenox Antitrust Litigation* concerning the alleged delay in the entry of generic Aggrenox, then you must take steps to remove yourself from the Settlement. This is called excluding yourself, or "opting out" of the Settlement Class. If you exclude yourself, you will not receive any payment or anything else from the Settlement. Any orders entered by the Court will not be binding on you.

**14.   How do I get out of the Settlement? (Excluding yourself.)**

To exclude yourself from the Settlement, you must send a letter by mail saying that you wish to be excluded from the Settlement Class for the Settlement Agreements with the Defendants in *In re Aggrenox Antitrust Litigation*, Civil Action No. 3:14-md-2516. Be sure to include your name, address, telephone number, and signature. You cannot exclude yourself on the telephone or by email. You must mail your Request for Exclusion, postmarked no later than [DATE],CAPS AND BOLD to:

Aggrenox Settlement
c/o A.B. Data, Ltd.
P.O. Box 17XXXX
Milwaukee, WI 53217

**15.   How do Third-Party Payors get out of the Settlement? (Excluding a Third-Party Payor)**

Third-Party Payors that want to be excluded from the Settlement Class must submit a written request for exclusion to the Claims Administrator. Your request for exclusion must include: (1) the entity name, address, and IRS EIN; (2) the name and title of the entity representative; (3) the name of this case, *In re Aggrenox Antitrust Litigation*, Civil Action No. 3:14-md-2516; (4) a statement, signed by an authorized representative, that you are a member of the Settlement Class and wish to be excluded from the Settlement Class; (5) data sufficient to establish your entity's relevant Aggrenox and generic aspirin/extended-release dipyridamole purchases or payments, for the period November 30, 2009 to December 31, 2016, measured in number of prescriptions, number of pills, and dollars paid by you, and aggregated on a monthly basis for each of Aggrenox and generic aspirin/extended-release dipyridamole, and each Class State (those listed in Paragraph 7 above) in which relevant purchases or payments were made. Exclusion requests must be mailed to the Claims Administrator at the address below and postmarked no later than [OPT OUT DATE]:CAPS AND BOLD

Aggrenox Settlement
c/o A.B. Data, Ltd.
P.O. Box 17XXXX
Milwaukee, WI 53217

A separate exclusion request must be submitted by each Third-Party Payor electing to be excluded from the Settlement Class in the settlement with Defendants. Any Third-Party Payor included in the Settlement Class that does not submit a valid request for exclusion providing all necessary information will be bound by the terms of the settlement.

Any Third-Party Payor that wants to opt out the claims of others whom the Third-Party Payor represents (*e.g.*, welfare funds or employers for whom the Third-Party Payor acts as an Administrative Services

10

Organization), must include for each such entity all of the information noted in subparagraphs 15 (1) through (5). In addition, for each such entity the Third-Party Payor must provide a Declaration from an authorized representative of the entity, substantially in the form noted below and executed specifically in connection with this litigation, attesting to the Third-Party Payor's authority to opt the entity's claims out of the Class, and include the language in any written agreement that provides the Third-Party Payor with such authority. The Third-Party Payor must mail this information to the Claims Administrator at the address below and postmarked no later than [OPT OUT DATE]CAPS AND BOLD.

---

Date
Declarant Entity Name
Declarant Entity Address
Declarant Entity Telephone Number

Declarant Entity EIN:

Dear Notice Administrator:

I am [Name and Title of Officer or Employee of Declarant Entity Requesting Exclusion].
[Declarant Entity] has authorized [Third-Party Payor] to request exclusion from the End-Payor Class on
[Declarant Entity's] behalf in the case *In re Aggrenox Antitrust Litigation*, 3:14-md-02516-(SRU).
[Declarant Entity] hereby acknowledges that, as a result of this authorization and opting out,
[Declarant Entity] will not receive any future proceeds of the End-Payor Class case, should any exist.

I do so declare under penalty of perjury.

_____
        _____
Name of Officer or Employee                    Date Signed
Title of Officer or Employee

---

**FAILURE TO INCLUDE ALL OF THIS INFORMATION IN YOUR REQUEST FOR EXCLUSION WILL RESULT IN YOUR REQUEST NOT BEING VALID AND YOU WILL CONTINUE TO BE A MEMBER OF THE SETTLEMENT CLASS.**

16.   **What is the legal significance of excluding myself?**

If you exclude yourself, you will not be legally bound by the Settlement or orders entered by the Court. You may be able to sue the Defendants in the future.

17.   **If I don't exclude myself, can I sue later?**

No. Unless you exclude yourself, you give up the right to sue the Defendants relating to your purchases of Aggrenox® and/or its generic versions. That is called "releasing" your claims and potential claims relating to your purchases of Aggrenox® and/or generic Aggrenox from the Defendants. The full text of the

release is included in the Settlement Agreement at Paragraph 14.  If you have your own pending lawsuit, speak to your lawyer in that case immediately, because you must exclude yourself from this Class to continue your own lawsuit against Defendants. You must exclude yourself from the Settlement Class to be able to bring your own, separate lawsuit(s) against the Defendants. Remember, the exclusion deadline is [OPT-OUT DATE].

18.   **What's the difference between objecting and excluding myself from the Settlement?**

Objecting is telling the Court that you do not like something about the request for attorneys' fees and reimbursement of expenses, request for incentive payments to the Class Representatives, or the Settlement. You can object only if you stay in Settlement Class. In contrast, excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself from the Settlement Class, you have no basis to object to the Settlement because the action no longer affects you.

## IF YOU DO NOTHING

19.   **What happens if I do nothing at all?**

If you do nothing, and the Court approves the Settlement, you will be bound by its terms and you will participate in the Settlement. Unless you exclude yourself, you will not be able to file a lawsuit or be part of any other lawsuit asserting claims against the Defendants concerning or relating to the claims and factual allegations that were or could have been raised in this action. The complete Settlement Agreement is available at **InReAggrenoxAntitrustLitigation.com** and the released claims are fully described at Paragraph 14 of the Settlement Agreement.

## THE LAWYERS REPRESENTING YOU

20.   **As a member of the Settlement Class, do I have a lawyer representing my interests in this Class Action and the Settlements?**

Yes. The Court has appointed lawyers to represent you and other members of the Class. These lawyers are called Class Counsel. You will not be charged individually for these lawyers. They will ask the Court to approve an award for attorneys' fees and expenses in connection with the Aggrenox Antitrust Litigation. The following lawyers represent the Class:

### COUNSEL FOR THE CLASS

Renae Steiner
**HEINS MILLS & OLSON, PLC**
310 Clifton Avenue
Minneapolis, MN 55403
612-338-4605

Marvin A. Miller
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910,
Chicago, IL 60603
312-332-3400

Steve Shadowen

**HILLIARD & SHADOWEN LLP**
2407 S. Congress Ave., Ste. E 122
Austin, TX  78704
855-344-3298

21.   **How will the lawyers representing the Class be compensated? Will the named Plaintiffs receive an incentive award?**

If the Court gives Final Approval to the Settlement, then the Court will be asked to approve a fee to the lawyers representing the Class of up to thirty-three and one-third percent (33⅓%) of the Settlement Fund (including earnings and accrued interest) plus reimbursement to the lawyers for the costs and expenses they have paid. If you decide not to exclude yourself from the Class, you will not have to pay these fees, costs and expenses out of your own pocket. If the Court grants Class Counsel's requests, these amounts would be deducted from the Settlement Fund. Class Counsel also will apply for incentive awards of $10,000.00 to each of the Class Representatives for their services to the Settlement Class.

22.   **Should I get my own lawyer?**

You do not need to hire your own lawyer, but if you hire a lawyer to speak for you or appear in Court, your lawyer must file a Notice of Appearance. If you hire your own lawyer, you will have to pay for that lawyer on your own.

| THE COURT'S FINAL APPROVAL HEARING |
|:---:|

23.   **When and where will the Court determine whether to approve the Settlements?**

The Final Approval Hearing will be on [FINAL DATE] eastern before Judge Stefan R. Underhill in Courtroom 1 at the United States District Court for the District of Connecticut, Brien McMahon Federal Building, United States Courthouse, 915 Lafayette Boulevard, Bridgeport, Connecticut 06604. At this Hearing, the Court will consider whether the proposed Settlements and all of their terms are fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who have asked for permission to speak at the Hearing (see Question 12). At or after the Final Approval Hearing, the Court will decide whether to finally approve the proposed Settlement. There may be appeals after that. We do not know how long these decisions will take.

The time and date of the Final Approval Hearing is subject to change without further notice as provided by this Notice.  Please visit **InReAggrenoxAntitrustLitigation.com** for updates.

24.   **Do I have to attend the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. So long as you file your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but that is not required.

25.   **May I speak at the Final Approval Hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include a Notice of Intent to Appear at the Final Approval Hearing with your objection (see Question 12). You must provide copies of any documents you intend to rely upon, including the names and addresses of any witnesses who will appear at the Final Approval Hearing, and the name of any counsel representing you as an objector. Ultimately, the Court will decide who will be allowed to speak at the Final Approval Hearing. You cannot speak at the hearing if you excluded yourself as a Class Member or if you do not send a notice of intention to appear.

## GETTING MORE INFORMATION

**26.  Where do I get more information?**

This Notice contains a summary of relevant court papers. Complete copies of public pleadings, Court rulings, and other filings are available for review and copying at the Clerk's office. The address is Brien McMahon Federal Building, United States Courthouse, 915 Lafayette Boulevard, Bridgeport, Connecticut 06604. Judge Stefan R. Underhill for the United States District Court for the District of Connecticut is overseeing the Class Action. You can also review relevant Decisions and Orders online at **InReAggrenoxAntitrustLitigation.com.** Additional information about the Class Action and proposed Settlement is available on the case website at **InReAggrenoxAntitrustLitigation.com** or you can call the Settlement Administrator toll-free at NUMBER. *Please do not contact the Court or Judge Underhill.*

**For more information, call the Settlement Administrator at NUMBER, or go to InReAggrenoxAntitrustLitigation.com.**

DATED: DATE                                    BY ORDER OF THE UNITED STATES DISTRICT COURT
                                               DISTRICT OF CONNECTICUT

# Exhibit C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

IN RE AGGRENOX     :    Docket No. 3:14 MD 2516 (SRU)
ANTITRUST LITIGATION    :
   :
   :
THIS DOCUMENT RELATES TO:    :
   :
ALL INDIRECT PURCHASER    :
ACTIONS    :

**[PROPOSED] ORDER GRANTING FINAL JUDGMENT AND ORDER OF DISMISSAL**
**APPROVING INDIRECT PURCHASER CLASS SETTLEMENT AND DISMISSING**
**INDIRECT PURCHASER CLASS CLAIMS AGAINST BOEHRINGER AND TEVA**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in accordance with the

terms of the Settlement Agreement between Defendants Boehringer Ingelheim Pharma GmbH &

Co. KG, Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals,

Inc. ("Boehringer"); and Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries, Ltd.,

Barr Pharmaceuticals, Inc. (n/k/a Barr Pharmaceuticals, LLC), Barr Laboratories Inc., Duramed

Pharmaceuticals Inc. (n/k/a Teva Women's Health Inc.), and Duramed Pharmaceutical Sales

Corp. (n/k/a Teva Sales and Marketing, Inc.) ("Teva") (collectively "Defendants") and Indirect

Purchaser Plaintiffs' Lead Counsel acting pursuant to the Court's Order, dated June 16, 2014

(Doc. No. 95), on behalf of Plaintiffs A.F. of L. – A.G.C. Building Trades Welfare Plan;

AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating

Engineers Local 701 Health & Welfare Trust Fund; International Union of Operating Engineers

Local 49 Health & Welfare Fund; International Union of Operating Engineers Local 132 Health

and Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund;

Painters District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health

& Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School

Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health

and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and

Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137,

137A, 137B, 137C, and 137R; The Electrical Workers' Insurance Fund; and Sergeant's

Benevolent Association Health & Welfare Fund  (collectively "Indirect Purchaser Class

Plaintiffs," "named Plaintiffs," or "Plaintiffs"), it is hereby ORDERED, ADJUDGED AND

DECREED as follows:

1.     This Final Judgment and Order of Dismissal hereby incorporates by reference the

definitions in the Settlement Agreement among Defendants, Plaintiffs, and the Indirect Purchaser

Class, and all capitalized terms used and not otherwise defined herein shall have the meanings set

forth in the Settlement Agreement.

2.     On____, 2017, this Court certified a class for purposes of settlement ("Indirect

Purchaser Class"):

> All persons or entities in the Commonwealth of Puerto Rico, Arizona, California,
> Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine,
> Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada,
> New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon,
> Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and
> Wisconsin, who, in one of the listed states, indirectly purchased, paid and/or
> provided reimbursement for some or all of the purchase price for branded or
> generic Aggrenox, for consumption by themselves, their families, or their
> members, employees, insureds, participants, or beneficiaries, other than for resale,
> from November 30, 2009 through December 22, 2017.

The following persons or entities are excluded from the proposed Indirect Purchaser Class:

a.     Defendants and their counsel, officers, directors, management, employees,

subsidiaries, or affiliates;

b.     All federal or state governmental entities, except cities, towns, or municipalities

with self-funded prescription drug plans;

2

c.  All persons or entities who purchased Aggrenox for purposes of resale or who purchased directly from the Defendant or their affiliates;

d.  Fully insured health plans (plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members);

e.  Pharmacy Benefits Managers (but not excluding affiliates, subsidiaries or related companies who would otherwise be included in the class definition);

a.  Humana Inc. and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239);

b.  Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana ("BCBSLA");

c.  Flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

d.  Co-payers (consumers) who did not purchase branded Aggrenox before July 1, 2015 *and* who have a flat generic co-pay, *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

e.  All persons that purchased or received branded or generic Aggrenox through a Medicaid program only; and

f.  The judges in this case and any members of their immediate families;

g.  All persons or entities who purchased Aggrenox in the State of Rhode Island prior to July 15, 2013; and

h.  All persons or entities who purchased Aggrenox in the State of Oregon before 2010.

3.  The Court has appointed the following as representatives of the Indirect Purchaser Class (the "Class Representatives"): A.F. of L. – A.G.C. Building Trades Welfare Plan; AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund; International Union of Operating Engineers Local 49

3

Health & Welfare Fund; International Union of Operating Engineers Local 132 Health and

Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; Painters

District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health &

Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School

Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health

and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and

Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137,

137A, 137B, 137C, and 137R; The Electrical Workers' Insurance Fund; and Sergeant's

Benevolent Association Health & Welfare Fund. The Court has found that Lead Counsel, Liaison

Counsel and the Executive Committee ("Class Counsel") have fairly and adequately represented

the interests of the Indirect Purchaser Class and satisfied the requirements of Fed. R. Civ. P.

23(g).

     4.     The Court has jurisdiction over these actions, each of the parties, and all members

of the Indirect Purchaser Class for all manifestations of this case, including this Settlement.

     5.     The notice of settlement (substantially in the form presented to this Court as

Exhibit B to the Settlement Agreement) (the "Notice") directed to the members of the Class,

constituted the best notice practicable under the circumstances. In making this determination, the

Court finds that the Notice provided for individual notice to all members of the Indirect Purchaser

Class who were identified through reasonable efforts. Pursuant to, and in accordance with, Rule

23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice provided

Indirect Purchaser Class members due and adequate notice of the Settlement, the Settlement

Agreement, these proceedings, and the rights of Class members to opt out of the Indirect

Purchaser Class and/or object to the Settlement.

     6.     Due and adequate notice of the proceedings having been given to the Indirect

Purchaser Class and a full opportunity having been offered to the Indirect Purchaser Class to

participate in the _____, 2018 Fairness Hearing, it is hereby determined that all Indirect

Purchaser Class members are bound by this Order and Final Judgment.

7.       The Settlement of this Indirect Purchaser Class Action was not the product of collusion between the Indirect Purchaser Class Plaintiffs and Defendants or their respective counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between Indirect Purchaser Class Counsel and counsel for Defendants, with the assistance of a mediator.

8.       Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement, and finds that the Settlement is, in all respects, fair, reasonable and adequate to Indirect Purchaser Class members. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

9.       The Court hereby approves the Plan of Allocation of the Settlement Fund as proposed by Class Counsel (the "Plan of Allocation"), which was summarized in the Notice of Proposed Settlement and is attached to Indirect Purchaser Class Plaintiffs' Motion for Final Approval of Settlement, and directs A.B. Data, Ltd., the firm retained by Indirect Purchaser Class Counsel as the Claims Administrator, to distribute the net Settlement Fund as provided in the Plan of Allocation.

10.       All claims against Defendants in *In re Aggrenox Antitrust Litigation*., Civil Action No. 3:14-md-02516-(SRU) (D. Conn.) (the "Indirect Purchaser Class Action"), including by those members of the Indirect Purchaser Class who have not timely excluded themselves from the Indirect Purchaser Class, are hereby dismissed with prejudice, and without costs.

11.       Upon the Settlement Agreement becoming final in accordance with paragraph 7 of the Settlement Agreement, Plaintiffs and the Indirect Purchaser Class, except those who have requested exclusion from the Class and such request has been approved by the Court, shall unconditionally, fully and finally release and forever discharge Defendants, any past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees,

5

agents, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") from any and all manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including costs, expenses, penalties and attorneys' fees, accrued in whole or in part, in law or equity, that Plaintiffs or any member or members of the Indirect Purchaser Class (including any of their past, present, or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such) (the "Releasors"), whether or not they object to the Settlement, ever had, now has, or hereafter can, shall or may have, indirectly, representatively, derivatively or in any other capacity, arising out of or relating in any way to any claim under federal or state laws that was alleged or could have been alleged in the Indirect Purchaser Class Action, prior to the date of this Settlement, including but not limited to:

(1)     the alleged delayed entry of generic Aggrenox;

(2)     conduct with respect to the procurement, maintenance and enforcement of United States Patent No. 6,015,577; and

(3)     the sale, marketing or distribution of Aggrenox or generic Aggrenox except as provided for in paragraph 14 herein (the "Released Claims").

Releasors hereby covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims. For the avoidance of doubt, the release provided herein applies, without limitation, to any conduct relating to the procurement, maintenance or enforcement of United States Patent Number 6,015,577, including any commencement, maintenance, defense or other participation in litigation concerning any such patent, that was alleged in, could be fairly characterized as being alleged in,

is related to an allegation made in, or could have been alleged in the Indirect Purchaser Class Action.

12.     In addition, Plaintiffs on behalf of themselves and all other Releasors, hereby expressly waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights and benefits conferred by §1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Plaintiffs and members of the Indirect Purchaser Class may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph 14, but each Plaintiff and member of the Indirect Purchaser Class hereby expressly waives and fully, finally and forever settles, releases and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Plaintiff and member of the Indirect Purchaser Class also hereby expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against any Released Party under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

13.     In addition, Plaintiffs on behalf of themselves and all other Releasors, hereby expressly waive, release and forever discharge, upon the Settlement becoming final, any and all

provisions, rights and benefits conferred by §1542 of the California Civil Code, which reads:

> Section 1542. <u>General Release; extent.</u> A general release does not extend  to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Plaintiffs and members of the Indirect Purchaser Class may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph 12, but each Plaintiff and member of the Indirect Purchaser Class hereby expressly waives and fully, finally and forever settles, releases and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Plaintiff and member of the Indirect Purchaser Class also hereby expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against any Released Party under § 17200, *et seq*., of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

14.     The releases set forth in paragraphs 11 and 12 of this Order shall not release claims between Plaintiffs, members of the Indirect Purchaser Class, and the Released Parties unrelated to the allegations in *In re Aggrenox Antitrust Litigation*., Civil Action No. 3:14-md- 02516-(SRU) (D. Conn.), including claims under Article 2 of the Uniform Commercial Code (pertaining to Sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury, or other claims unrelated to the allegations in *In re*

*Aggrenox Antitrust Litigation*., Civil Action No. 3:14-md-02516-(SRU) (D. Conn.).

15.     Class Counsel for the Indirect Purchaser Class have moved for an award of attorneys' fees, reimbursement of expenses and incentive awards for the class representatives. Class Counsel request an award of attorneys' fees of 33 1/3% of the Settlement (including the interest accrued thereon), reimbursement of the reasonable costs and expenses incurred in the prosecution of this action in the amount of____, and incentive awards totaling collectively for the ____ named plaintiffs, and such motion has been on the docket and otherwise publicly available since__, 2017.

16.     Upon consideration of Class Counsel's petition for fees, costs and expenses, Class Counsel are hereby awarded attorneys' fees totaling (representing 33 1/3 % of the Settlement Fund) and costs and expenses totaling_____, together with a proportionate share of the interest thereon from the date the funds are deposited in the Settlement Escrow Account until payment of such attorneys' fees, costs and expenses, at the rate earned by the Settlement Fund, to be paid solely from the Settlement Fund and Set Aside Fund and only if and after the Settlement becomes final in accordance with paragraph __ of the Settlement Agreement. Upon consideration of Class counsel's petition for incentive payments for Indirect Purchaser Class Representatives, each of A.F. of L. – A.G.C. Building Trades Welfare Plan; AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund; International Union of Operating Engineers Local 49 Health & Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; Painters District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health & Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137, 137A, 137B, 137C, and 137R; The

9

Electrical Workers' Insurance Fund; and Sergeant's Benevolent Association Health & Welfare Fund are hereby awarded $__, to be paid solely from the Settlement Fund and only if and after the Settlement becomes final in accordance with paragraph 7 of the Settlement Agreement. Miller Law LLC, Hilliard & Shadowen, and Heins Mills & Olson shall allocate and distribute such attorneys' fees, costs and expenses among the various Class Counsel which have participated in this litigation. Miller Law LLC, Hilliard & Shadowen, and Heins Mills & Olson shall allocate and distribute such incentive awards among the various Indirect Purchaser Class Representatives which have participated in this litigation. The Released Parties (as defined in paragraph 14 of the Settlement Agreement) shall have no responsibility for, and no liability whatsoever with respect to, any payment or disbursement of attorneys' fees, expenses, costs or incentive awards among Class Counsel and/or Class Representatives, nor with respect to any allocation of attorneys' fees, expenses, costs or incentive awards to any other person or entity who may assert any claim thereto. The attorneys' fees, costs and expenses, and incentive awards authorized and approved by this Final Order and Judgment shall be paid to Miller Law LLC, Hilliard & Shadowen, and Heins Mills & Olson within five (5) business days after this Settlement becomes final pursuant to paragraph 7 of the Settlement Agreement or as soon thereafter as is practical and in accordance with the terms of the Settlement Agreement and the Escrow Agreement. The attorneys' fees, costs and expenses, and incentive award authorized and approved by this Final Order and Judgment shall constitute full and final satisfaction of any and all claims that Plaintiffs and any Indirect Purchaser Class member, and their respective counsel, may have or assert for reimbursement of fees, costs, and expenses, and incentive awards, and Plaintiffs and members of the Indirect Purchaser Class, and their respective counsel, shall not seek or demand payment of any fees and/or costs and/or expenses and/or incentive awards from Defendants other than the Settlement Fund.

17.     The Court further orders that, in the event that Defendants resolve the claims of any members of or Opt Out(s) from the Indirect Purchaser Class (not including Humana and its

subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint, dated April 13, 2015 (Doc. No. 239) or BCBSLA), Defendants shall, in accordance with Paragraph 5.c. of the Settlement Agreement, place into an interest-bearing escrow account to be established by Indirect Purchaser Class' Lead Counsel an amount equal to 10% of the amount of the settlement with the member or Opt Out, which may be paid to Class Counsel pursuant to further order of Court.

18.     The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration and consummation of the Settlement, and over this Final Order and Judgment.

19.     The Court finds that this Final Order and Judgment adjudicates all of the claims, rights and liabilities of the parties to the Settlement Agreement (including the members of the Indirect Purchaser Class), and is final and shall be immediately appealable. Neither this Order nor the Settlement Agreement nor any other Settlement-related document shall constitute any evidence or admission by Defendants or any other Released Party on liability, any merits issue, or any class certification issue (including but not limited to whether a class can be certified for purposes of litigation or trial) in this or any other matter or proceeding, nor shall either the Settlement Agreement, this Order, or any other Settlement-related document be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement, the terms of this Order, or if offered by any released Party in responding to any action purporting to assert Released Claims

So ordered.

Dated at Bridgeport, Connecticut, this __th day of _____ 2018.


_____
Stefan R. Underhill
United States District Judge