# Exhibit 3

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

*In re Aggrenox Antitrust Litigation*  ⁞  3:14-md-02516

**STATE OF WISCONSIN**   )
                                          )  **ss.**
**MILWAUKEE COUNTY**   )

## AFFIDAVIT OF LINDA V. YOUNG

I, Linda V. Young, being duly sworn, certify as follows:

1.      I am the Vice President, Media with A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"). I submit this Affidavit at the request of Plaintiffs' Counsel in connection with the above-captioned action (the "Action").

2.      This Affidavit is based upon my personal knowledge of and upon information provided by Plaintiffs' Counsel, my associates, and A.B. Data staff members. The methods and tools used in developing the notice program are of a type reasonably relied upon in the fields of media, advertising, and communications.

3.      This Affidavit details a notice plan for the Action (the "Notice Program") designed to provide adequate notice to the End-Payor Class Members ("Class Members"), which are defined as follows:

> All persons or entities in the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, who, in one of the listed states, indirectly purchased, paid and/or provided reimbursement for

some or all of the purchase price for branded or generic Aggrenox, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, from November 30, 2009 through December 22, 2017.

The following persons or entities are excluded from the proposed End-Payor Class:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

- all federal or state governmental entities, *except* cities, towns, or municipalities with self-funded prescription drug plans;

- all persons or entities who purchased Aggrenox for purposes of resale or who purchased directly from the Defendant or their affiliates;

- fully-insured health plans (plans that purchased insurance from another third-party payor covering 100% of the plan's reimbursement obligations to its members);

- Pharmacy Benefits Managers;

- Humana Inc. and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint dated April 13, 2015 (Doc. No. 239);

- Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana ("BCBSLA") as defined in paragraph 17 of BCBSLA's Amended Complaint dated August 12, 2015 (Doc. No. 6);

- flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);

- co-payers (consumers) who did not purchase branded Aggrenox before July 1, 2015 **and** who have a flat generic co-pay, *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

- all persons who purchased or received branded or generic Aggrenox through a Medicaid program only;

- the judges in this case and any members of their immediate families;

- Purchasers for all purchases of Aggrenox in the State of Rhode Island prior to July 15, 2013; and

- Purchasers for all purchases of Aggrenox in the State of Oregon before 2010.

4.     The Notice Program (attached as Exhibit A) includes notice via print media, electronic media, and earned media.

### Digital "Banner" and Mobile Media

5.     "Banner" ads will appear in the United States and Puerto Rico on targeted websites and be served across multiple devices, including desktop, tablet, and mobile devices. Ads will be placed in premium positioning on websites, ensuring that they can be easily seen when viewers first open website pages. Internet advertising allows the viewer to click on a banner advertisement and instantly be directed to the settlement website.

6.     A campaign, an estimated 45 to 50 days in length, will be scheduled, which ensures ample time to deliver the targeted impressions. Approximately 172 million gross impressions will be delivered to the target audience.

7.     All banner ads will include an embedded link to the case-specific website. Images appropriate for this Action and target audience will also be included in all digital ad formats, as this increases the visibility and click-through rate of the ads.

8.      The following campaign microtargeting optimization strategies will be utilized.

| Strategy | Rationale |
|---|---|
| Contextual Targeting | Targeting websites with relevant content and context, such as those that provide health and medical information, will help capture potential Class Members who weren't in previous data-targeting pools but who have an interest in health topics. |
| Behavioral Targeting | Targeting user IDs across the internet whose owners have shown activity in the past or placed themselves in data pools of our audience tab. For example: user is located in the U.S., age 45+, interested in stroke-related health issues. |
| Predictive (Look-Alike) Modeling | With predictive modeling, we're using look-alike modeling to target user IDs whose owners have strong similarities to users who have previously clicked through to the case website. |

## Social Media

9.      To further extend engagement with potential Class Members, newsfeed and "right-rail" ads will be purchased on Facebook. Impressions served to Facebook users can be highly targeted, specifically reaching those who have expressed an interest in stroke-related

message boards and information. By utilizing microtargeting strategies, we can be very tactical in reaching potential Class Members numerous times, encouraging them to register on the case website. Facebook requires mobile newsfeed ads to be associated with a Facebook page. Therefore, a case-specific Facebook page will also be created as a landing page for the links in the mobile newsfeed and desktop right-rail ads.

### Google AdWords/Search

10.     To assist with easy location of the case website, sponsored search listings will be acquired on Google, the most highly visited search engine. When identified target phrases and keywords are used in searches on Google, links will appear on the search result pages. Representative keywords could include "TIA," "transient ischemic attack," "stroke medication," and "mini-stroke," plus many others.

### Print Media

11.     To reach potential Class Members who are primarily age 45 and older and take a prescription medication for stroke or who have experienced a transient ischemic attack ("TIA"), publication of the summary notice in the following consumer-targeted publications is recommended:

    a.      *People* (two ads);

    b.      *Time* (one ad); and

    c.      *Parade* (one ad).

### Targeted Third-Party-Payor ("TPP") Notice

### Digital-Media Notice

12.     To reach third-party payors ("TPPs") and related entities, in addition to direct postcard notice to TPPs and those entities, a banner ad campaign will be purchased to be carried

via the website ThinkAdvisor.com/life-health. This website is affiliated with the former publication *National Underwriter Life & Health*. This website is uniquely positioned to provide insurance agents and brokers with timely, insightful information as they navigate the specialty insurance markets and sort through critical industry developments. All banner ads will include an embedded link to the case-specific website. The banner ads produced will be colorful and appealing, while including text about the case and the settlement.

**TPP Direct Notice**

13.     A.B. Data maintains a proprietary database of approximately 42,000 entities that include insurance companies; health maintenance organizations; self-insured entities such as certain large corporations, labor unions, and employee benefit and pension plans; and certain record keepers, such as pharmacy benefit managers ("PBMs") and third-party administrators ("TPAs"). A full, detailed notice package in a form approved by the Court will be sent via First-Class Mail directly to each TPP identified in this database. In addition, A.B. Data will send emails to potential TPP Class Members via email to the extent that email addresses are available. Included within the email notices will be a link allowing recipients to view the full, detailed notice package.

**Earned Media**

14.     A.B. Data recommends that a news release be disseminated via PR Newswire's US1 Newsline distribution list to announce the Notice of Settlement. This news release will be distributed via PR Newswire to the news desks of approximately 10,000 newsrooms, including those of print, broadcast, and digital websites across the United States and Puerto Rico.

**<u>Toll-Free-Telephone Number</u>**

15.     A.B. Data will establish and maintain a case-specific toll-free telephone number to support the Settlement, with live operators during business hours. Services will specifically include the following:

   a.     Inbound toll-free line;

   b.     Interactive-voice-response system;

   c.     Live operators during business hours;

   d.     Call scripts developed by our experts and approved by Plaintiffs' Counsel; and

   e.     Detailed reporting.

**<u>Case Website</u>**

16.     A dedicated informational case website will be developed to complement the Notice Program and to ensure Class members' easy access to updated information. The website will be secure, with an "https" designation. The website will be consumer-friendly, with easy-to-navigate tabs and a clear link to the online claim form. Pixels will be placed on the website to ensure accurate optimization. The home page will include the following features:

   •     Directions on how to register as a Class member;

   •     Qualifications to become a Class member; and

   •     Emphasis on the privacy and confidentiality of user names and account numbers for the online payment system.

Important information on the website, along with the claim forms, will be available in Spanish.

**Form and Content of Notice**

17.     Attached as Exhibit B is a copy of the proposed Summary Notice for this action. The Long-Form Notice will be available on the case website. The Summary Notice effectively communicates information about the Settlement. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language." A.B. Data applies the plain-language requirement in drafting notices for all class action cases.

18.     The proposed Summary Notice effectively communicates, in clear, concise, plain language, information about the Notice of Settlement, including the name of the Action, the purpose of the Notice, the definition of the Class, the names of the Defendants, key hearing and filing dates.

19.     Additionally, the Summary Notice provides substantial information, including the specific instructions Class Members must follow to properly exercise their rights and direct potential Class Members to the case website and toll-free telephone number via which they can obtain additional background information about the issues in the Action.

20.     The Long-Form Notice will be available on the case website. It will include background information about issues in the Action and details about the case along with an in-depth explanation of Class Members' rights and options. Both Notices are designed to encourage readership and understanding in a well-organized and reader-friendly format. A.B. Data's team of executives, professional proofreaders, and graphic design specialists will ensure that the Notice documents are in plain language, meet the requirements of due process, and are clear, concise, accurate, and easy to understand.

## **Relevant Experience**

21.     As the Vice President, Media for the Class Action Administration Company of A.B. Data, Ltd., I provide a broad range of services, including market research and analysis, creative development, advertising, and marketing planning. My curriculum vitae is attached as Exhibit C.

22.     I have developed and directed some of the largest and most complex national notification programs in the United States. The scope of my work includes notification programs in consumer pharmaceutical antitrust litigation, general consumer and general antitrust litigation, securities settlements, ERISA settlements, and insurance settlements. I have developed or consulted on more than 100 notification programs, placing millions of dollars' worth of media notice. Selected cases include the following:

a.     **Consumer Pharmaceutical Antitrust Settlements Notice Programs:** *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-MDL-1317, United States District Court, Southern District of Florida; *In re: Cardizem CD Antitrust Litigation*, 99-MD-1278, United States District Court, Eastern District of Michigan; *In re: Remeron Antitrust Litigation*, 03-CV-00085, United States District Court, District of New Jersey; *In re: Relafen Antitrust Litigation*, 01-12239-WGY, United States District Court, District of Massachusetts; *In re: Buspirone Antitrust*, 01-MD-01413, United States District Court, Southern District of New York; *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation (All End-Payor Plaintiff Actions)*, MDL No. 14-md-2503-DJC, United States District Court, District of Massachusetts; *Mahoney v. Endo Health Solutions, Inc., et al.*, Case No. 15-cv-9841 (DLC), United States District Court,

Southern District of New York; *State of New York, et al. v. Cephalon, Inc., et al.* ("Provigil Case"), Civil Action No. 16-cv-01833, United States District Court, Eastern District of Pennsylvania;

b.    **Consumer Settlements Notice Programs:** *Picant v. Premier Cruise Lines*, 96-06932-CA-FN, 18th Judicial Circuit, State of Florida; *In Re: Benzion v. Vivint, Inc.*, Case No. 12-cv-61826-WJZ, United States District Court, Southern District of Florida; and *In Re: ADT Security Services, Inc*., Case No. 1:11-cv-1925, United States District Court, Northern District of Illinois; *Bergman et al. v. DAP Products Inc. et al.* ("XHose Case"), Case No. 14-cv-03205-RDB, United States District Court, District of Maryland;

c.    **Other Antitrust and Commodities Settlements Notice Programs:** *Laydon v. Mizuho Bank, Ltd., et al.*, No. 12-cv-3419 (GBD) and *Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al.*, No. 15-cv-5844 (GBD) ("Euroyen Cases"), United States District Court, Southern District of New York; *Sullivan et al. v. Barclays plc et al.*, No. 13-cv-2811 (PKC) ("Euribor Case"), United States District Court, Southern District of New York; *In re: Platinum and Palladium Commodities Litigation (Platinum/Palladium Futures Action)*, 10-cv-3617 (WHP) ("Futures Action"), United States District Court, Southern District of New York; and *In re: Platinum and Palladium Commodities Litigation (Platinum/Palladium Physical Action)*, 10-cv-3617 (WHP) ("Physical Action"), United States District Court, Southern District of New York; *In re: Crude Oil Commodity Futures Litigation*, 11-cv-3600, United States District Court, Southern District of New York; *In re Polyurethane Foam Antitrust Litigation*, MDL Docket No. 2196,

United States District Court, Northern District of Ohio; *In Re: Potash Antitrust Litigation (II)*, Case No. 1:08-CV-6910, United States District Court, Northern District of Illinois; *In re: Optiver Commodities Litigation*, Case No. 1:08-cv-06842-LAP, United States District Court, Southern District of New York; *In re: Rough Rice Commodity Litigation*, Case No. 11-cv-00618, United States District Court, Northern District of Illinois; *State of Washington v. AU Optronics Corporation, et al.*, No. 10-2-29164-4 SEA, King County Superior Court, State of Washington;

d.   **Securities Settlements Notice Programs:** *Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), United States District Court, Southern District of New York; *High Tide Harry's, Inc. v. Waste Management Inc. of Florida*, 05-CA-009441, 9th Judicial Circuit, State of Florida; *In re: Campbell Soup Co. Securities Litigation*, 00-152-JEI, United States District Court, District of New Jersey; *Abrams v. Van Kampen Funds, Inc.*, 01-C-7538, United States District Court, Northern District of Illinois; *Stevelman v. Alias Research, Inc.*, 591-CV-00682 (EBB), United States District Court, District of Connecticut; *In re: Nuko Information Systems, Inc.*, C-97-20471 EAI, United States District Court, Northern District of California; *In Re: General Electric Co. Securities Litigation*, Civ. No. 09-CIV-1951 (DLC) ECF CASE, United States District Court, Southern District of New York; *In Re: PAR Pharmaceutical Securities Litigation*, Master File No. 2:06-03226 (ES) (SCM), United States District Court, District of New Jersey; *In Re: ING Groep, N.V. ERISA Litigation*, Master File No. 1:09-CV-00400-JEC, United States District Court, Northern District of Georgia; *In Re: Fannie Mae 2008*

*Securities Litigation*, Case No. 08-CV-7831, United States District Court, Southern District of New York; *In Re: Massey Energy Co. Securities Litigation*, Civil Action No. 5:10-cv-00689-ICB, United States District Court, Southern District of West Virginia; and

e.   **Other Settlements Notice Programs:** *Martin v. the State of Washington et al.*, 14-2-00016-7, Spokane County Superior Court, State of Washington.

23.   Additionally, A.B. Data and its staff members have developed and implemented notice plans in numerous antitrust cases, including *In re: Marine Hose Antitrust Litigation*, 08-MDL-1888, United States District Court, Southern District of Florida; *Ace Marine Rigging v. Virginia Harbor Services, Inc.*, SA-CV-11-00436, United States District Court, Central District of California; *In re: Iowa Ready-Mix Concrete Antitrust Litigation*, 5:10-CV-004038-MWB, United States District Court, Northern District of Iowa; and *In re Ready-Mixed Concrete Antitrust Litigation*, Case No. 1:05-cv-00979-SEB-JMS, United States District Court, Southern District of Indiana.

24.   A.B. Data has also been appointed as Notice, Claims, and/or Settlement Administrator in hundreds of high-volume securities, antitrust, consumer, civil rights, insurance, ERISA, and wage and hour cases, administering some of the largest and most complex class action settlements of all time, involving all aspects of media, direct, and third-party notice programs, data management, claims administration, and settlement fund distribution.

<u>Conclusion</u>

25.   It is my opinion that the Notice Program described herein reflects a strategic and contemporary method of deploying notice to this Class and is adequate and reasonable to reach the End-Payor Class Members effectively. Through a multi-media-channel approach to notice

that includes digital banner ads across the U.S. and Puerto Rico, microtargeted digital notice, social media, national print media, and earned media, a minimum of 80% of the target audience will be reached as calculated by GfK MRI, comScore, the Alliance for Audited Media, and A.B. Data media professionals. This Notice Program provides a reach and frequency similar to those that courts have approved and are recommended by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. This Notice Program would be considered the best practicable Notice Program under the circumstances to reach unidentified End-Payor Class Members. It is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of January 2018.

Linda V. Young

SUBSCRIBED and SWORN before me on the 5th day of January 2018.

Steve Straub, Notary Public

My commission expires 5/18/2020.

# Exhibit A

Exhibit A



A.B. Data, Ltd.

Class Action Administration Company

600 A.B. Data Drive

Milwaukee, WI 53217

# Notice Program

*In re Aggrenox Antitrust Litigation*

January 2018

Proprietary and Confidential

# NOTICE PROGRAM OVERVIEW

**Case Background/Class Definition**

This Notice Program is submitted by A.B. Data, Ltd. ("A.B. Data") in connection with end-payor plaintiffs for the indirect purchaser Class certified in *In re Aggrenox Antitrust Litigation*. This document outlines the efforts that will be made to provide notice of Class settlement to reach potential Class members.

Although the exact number of Class members is unknown, it is believed the potential Class members could number in the hundreds of thousands and possibly more. Members of the End-Payor Class are numerous, and joinder is impracticable.

As stated in Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, "individual notice to all members who can be identified through reasonable effort" is the best notice option. Since individual notice to all Class members is not an option for this action, a paid-media Notice Program is necessary to reach unidentified Class members.

The End-Payor Class, as defined in this litigation, includes the following persons and entities:

> All persons or entities in the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, who, in one of the listed states, indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for branded or generic Aggrenox, for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries, other than for resale, from November 30, 2009 through December 22, 2017.

The following persons or entities are excluded from the proposed End-Payor Class:

- Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;
- all federal or state governmental entities, *except* cities, towns, or municipalities with self-funded prescription drug plans;
- all persons or entities who purchased Aggrenox for purposes of resale or who purchased directly from the Defendant or their affiliates;
- fully-insured health plans (plans that purchased insurance from another third-party payor ("TPP") covering 100% of the plan's reimbursement obligations to its members);
- Pharmacy Benefits Managers;
- Humana Inc. and its subsidiaries as listed in paragraph 4 of Humana's Second Amended Complaint dated April 13, 2015 (Doc. No. 239);

- Louisiana Health Service Indemnity Company d/b/a BlueCross/BlueShield of Louisiana ("BCBSLA") as defined in paragraph 17 of BCBSLA's Amended Complaint dated August 12, 2015 (Doc. No. 6);
- flat co-payers (consumers who paid the same co-payment amount for brand and generic drugs);
- co-payers (consumers) who did not purchase branded Aggrenox before July 1, 2015 *and* who have a flat generic co-pay, *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;
- all persons who purchased or received branded or generic Aggrenox through a Medicaid program only;
- the judges in this case and any members of their immediate families;
- Purchasers for all purchases of Aggrenox in the State of Rhode Island prior to July 15, 2013; and
- Purchasers for all purchases of Aggrenox in the State of Oregon before 2010.

**Program Components**

This document summarizes the recommended Notice Program for *In re Aggrenox Antitrust Litigation*. The Notice Program proposed herein are consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. The methods and tools used in developing this Notice Plan have been employed in many other court-approved notice plans.

To reach unidentifiable Class members, A.B. Data recommends the use of paid and earned media. Paid-media advertising is guaranteed to appear. Paid media also allow for limited control of the content, timing, and positioning of the message. Newspapers, magazines, television, radio, out-of-home media, and the internet, among other sources, offer paid-media opportunities.

Below is a summary of the recommended components for the Notice Program. Each of the following elements of the program is detailed further in this document.

- Digital "banner" media;
- Social media;
- National consumer print media;
- TPP media; and
- Earned media.

In addition, a dedicated informational case website will be developed to complement the Notice Program and to ensure Class members' easy access to updated information. The website will be secure, with an "https" designation. The website will be consumer-friendly, with easy-to-navigate tabs and a clear link to the online claim form. Pixels will be placed on the website to ensure accurate and efficient optimization.

The home page will include the following features:

- Directions on how to register as a Class member;
- Qualifications to become a Class member; and
- Emphasis on the privacy and confidentiality of user names and account numbers for the online payment system.

Important information on the website, along with the claim forms, will be available in Spanish.

The notice options will be national in scope, with coverage of Puerto Rico.

**Target Audience and Media Usage Analysis**

In evaluating the media options to be considered for this case, A.B. Data first reviewed demographic data from the media research firm GfK MRI to assist in the development of the target audience. The following categories were reviewed and are available upon request:

- Adults age 18+ and have/had hypertension, high blood pressure, heart attack or heart disease and used a branded prescription medication.
- Adults age 45+ and have/had hypertension, high blood pressure, heart attack or heart disease and used a branded prescription medication.

People who have experienced a stroke or transient ischemic attack ("TIA") are not available as a category in GfK MRI data. Looking at the demographics and characteristics of people with similar diseases/conditions, such as hypertension, high blood pressure, heart attack, or heart disease, provides direction in development of the Notice Program.

Additionally, statistics from the American Heart Association provide us with a potential outer bound of the Class size of approximately 5 million people in the United States. According to the website of the American Heart Association, American Stroke Association Chair Mitch Elkind, M.D., on May 1, 2017, stated: "Officially, about five million Americans, or 2.3 percent, have had a self-reported, physician-diagnosed TIA, but as this survey suggests, we suspect the true prevalence is higher because many people who experience symptoms consistent with a TIA fail to report it." With 5 million people who have physician-diagnosed TIA, we can assume that many of these people have had medication prescribed for them to help control it.

Some of the key demographic characteristics that stand out for people who have/had hypertension, high blood pressure, heart attack, or heart disease and used a branded prescription medication include the following:

- Men – 47.3%
- Women – 52.7%
- Age 45+ – 85%
- Graduated high school, did not attend college – 46%
- Not employed – 61%
- Net worth of $100K-$500K+ – 51%
- Homeowners – 76%

Based on the information described above, a target demographic of Adults Age 45+ and have/had hypertension, high blood pressure, heart attack, or heart disease and used a branded prescription medication is recommended as the primary audience.

A.B. Data further researched syndicated data regarding the target audience's media-consumption habits, determining the most appropriate media vehicles that would best deliver unidentified potential Class members and provide them with the opportunity to see and respond to the Notice.

The Notice Programs described herein will deliver an efficient and effective plan for reaching unidentified potential Class members.

**Paid-Media and Earned-Media Placement Summary**

Below is a summary of A.B. Data's recommended paid-media and earned-media placements. Detailed information about each publication and digital-media network and its respective coverage of the target audience in this case is available upon request.

Digital Banner and Mobile Media

Among the target audience members, according to GfK MRI almost 75% have accessed the internet within the last 30 days. Digital banner ads will be targeted to potential Class members described above.

The banner ads will appear over a 45-to-50-day campaign in the United States and Puerto Rico. The banner ads will be in English, and in Puerto Rico a mix of English and Spanish banner ads will be served. Ads will be served across multiple devices, including desktop, tablet, and mobile devices. Ads will be placed in premium positioning on websites, ensuring that they can be easily seen when viewers first open the page.

Banner advertising over a large online network, such as Google Networks, can deliver a sizable number of impressions over numerous website categories. It is recommended to schedule a 45-to-50-day campaign, which ensures ample time to deliver the targeted impressions. The banner ad campaign will be optimized for notification.

Due to the fluidness of the online market, internet packages will be negotiated and finalized once A.B. Data has received authorization. This will enable us to purchase the most cost-efficient internet packages to maximize impressions and to deliver click-throughs to the case website and, ultimately, claims. All digital ads will include an embedded link to the case-specific website. Generic product images will also be included in all digital ad formats, as this increases the visibility and click-through rate of the ads.

Microtargeted Digital Media

In addition to banner ads that will be placed across thousands of websites to meet audience notification requirements, microtargeted digital media will be purchased to achieve maximum engagement with the ads. The following microtargeting optimization strategies will be utilized in the campaign:

| Strategy | Rationale |
|---|---|
| Contextual Targeting | Targeting websites with relevant content and context, such as those that provide health and medical information, will help capture potential Class members who weren't in previous data-targeting pools but have an interest in health topics. |
| Behavioral Targeting | Targeting user IDs across the internet whose owners have shown activity in the past or placed themselves in data pools of our audience tab. For example: user is located in the U.S., age 45+, interested in stroke-related health issues. |
| Predictive (Look-Alike) Modeling | With predictive modeling, we're using look-alike modeling to target user IDs whose owners have strong similarities to users who have previously clicked through to the case website. |

Social Media

To further extend engagement with potential Class members, newsfeed and "right-rail" ads will be purchased on Facebook. Impressions served to Facebook users can be very targeted, specifically reaching those who have expressed an interest in stroke-related message boards and information. By utilizing microtargeting strategies, we can be very tactical in reaching potential Class members numerous times, encouraging them to register on the case website.

Facebook requires mobile newsfeed ads to be associated with a Facebook page. Therefore, a case-specific Facebook page will also be created as a landing page for the links in the mobile newsfeed and desktop right-rail ads.

Google AdWords/Search

To assist with easy location of the case website, sponsored search listings will be acquired on Google, the most highly visited search engine. When identified target phrases and keywords are used in searches on Google, links will appear on the search result pages. Representative keywords could include "TIA," "transient ischemic attack," "stroke medication," and "mini-stroke," plus many others.

National Print Media

Because digital media can reach only 75% of the target audience and adults age 45+ are still strong audiences and supporters of print media, it is recommended that the summary notice be published in consumer print publications.

- *People*
  - One-third-page black-and-white ad unit to run in two issues
  - Published weekly
  - Reaches an average of 41.0 million adults with each issue

- *Time*
  - One-third-page black-and-white ad unit
  - Published weekly
  - Reaches an average of 16.4 million adults with each issue
- *Parade*
  - Three-tenths-page black-and-white ad unit
  - Published weekly
  - Reaches an average of 48.1 million adults with each issue

TPP Media

To reach TPPs and other entities that may be Class members, it is recommended that a digital banner ad campaign on ThinkAdvisor.com/life-health be run. This website is affiliated with the former publication *National Underwriter Life & Health*. This website is uniquely positioned to provide agents and brokers with timely, insightful information as they navigate the specialty insurance markets and sort through critical industry developments.

In addition to the banner ad campaign targeting health insurance professionals, it is recommended that a direct notice program be implemented. A.B. Data maintains a proprietary database of approximately 42,000 entities that include insurance companies; health maintenance organizations; self-insured entities such as certain large corporations, labor unions, and employee benefit and pension plans; and certain record keepers, such as pharmacy benefit managers ("PBMs") and third-party administrators ("TPAs"). A full, detailed notice package in a form approved by the Court will be sent via First-Class Mail directly to each TPP identified in this database. In addition, A.B. Data will send emails to potential TPP Class members via email to the extent that email addresses are available. Included within the email notices will be a link allowing users to view the full, detailed notice package.

Earned Media

In addition to the notice efforts involving digital media, social media, and print publications, A.B. Data recommends that a news release be disseminated via PR Newswire's US1 National distribution network to announce the notice of Class settlement. This news release will be distributed via PR Newswire to more than 10,000 general-market print and broadcast newsrooms and websites across the U.S. and Puerto Rico.

The case will gain more attention when general-market media become aware of the news.

**Due Process**

The robust notice efforts described herein reflect a strategic, microtargeted, and contemporary method to deploy notice to this Class. Through a multi-media-channel approach to notice that includes digital banner ads across the U.S. and Puerto Rico, microtargeted digital notice, social media, national print media, and earned media, a minimum of 80% of the target audience will be reached as calculated by GfK MRI, comScore, the Alliance for Audited Media, and A.B. Data media professionals. The proposed plan would provide a reach and frequency similar to those that courts have approved and are recommended by the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. This Notice Program will meet the due process requirements of Rule 23 and would be considered the best practicable Notice Program under the circumstances to reach unidentified Class members.

# Exhibit B

Exhibit B

# If You Purchased Aggrenox® or Generic Aggrenox®

## A Class Action Settlement Could Affect You

A proposed $54 million settlement has been reached in a class action lawsuit regarding the prescription Aggrenox (aspirin/extended-release dipyridamole). The lawsuit claims that Defendants Boehringer Ingelheim and Teva Pharmaceutical hurt competition and violated state laws by delaying the availability of allegedly less-expensive generic versions of Aggrenox®. Defendants deny any wrongdoing.

***No one is claiming that Aggrenox or its generic equivalent is unsafe or ineffective.***

## Who is included?

You are a Consumer Class Member if you:
- Purchased and/or paid for Aggrenox® or generic versions of Aggrenox®,
- In the Commonwealth of Puerto Rico, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon (2010 or after), Rhode Island (purchases after July 15, 2013), South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin
- For consumption by yourself or your family,
- Between November 30, 2009 and December 22, 2017.

You are NOT a Class Member if you paid a flat co-pay (consumers who paid the same co-payment amount for brand and generic drugs), if you pay a flat co-pay for generic prescriptions and did not purchase Aggrenox before July 1, 2015, or if you purchased or received branded or generic Aggrenox though a Medicaid program only.

## What do the settlements provide?

The Defendants will pay a total of $54 million into a Settlement Fund to settle all claims in the lawsuit brought on behalf of consumer and health insurers known as third-party payors.

Class Counsel will ask the Court to award attorneys' fees in an amount not to exceed one-third of the Settlement Fund, plus interest, litigation expenses and incentive payments to the Class Representatives.  After these deductions, the remainder of the Settlement Fund will be distributed *pro* rata to Class Members who file a valid claim form. The amount of money you are eligible to receive will depend on how much you (and other consumers) paid for Aggrenox® or generic versions of Aggrenox®.

## How do I get a payment?

You must submit a Claim Form by **_____, 2018** to be eligible for a payment. See below.

## What are my other rights?

If you do not want to be legally bound by the Settlement, you must exclude yourself.  The exclusions deadline is **_____, 2018**. If you do not exclude yourself, you will not be able to sue the Defendants for any claim relating to the lawsuit. If you stay in the Settlement, you may object to the Settlement by **_____, 2018**. The Court will hold a hearing on **_____, 2018** at XX:XX a.m./p.m. to consider whether to approve the Settlement, a request for attorneys' fees, expenses and incentive awards. The Court has appointed attorneys to represent the Class. You or your own lawyer may ask to appear and speak at the hearing at your own expense.

## For more information and a Claim Form:
## Visit www.InReAggrenoxAntitrustLitigation.com or call 1-8XX-XXX-XXXX.

Exhibit C

# LINDA V. YOUNG

**Linda.Young@abdata.com**

## EXPERIENCE

**A.B. Data, Ltd., Milwaukee, WI**                                    **2013-Present**

Vice President, Media

Lead the A.B. Data Class Action Administration media team in research, development, and implementation of media notice plans for settlements and other class action administrations. Cases include the following:

**Antitrust Settlements Notice Programs:** *In re Polyurethane Foam Antitrust Litigation*, MDL Docket No. 2196 (United States District Court, Northern District of Ohio); *In re Medco Health Solutions, Inc., Pharmacy Benefits Management Litigation*, MDL No. 1508, United States District Court, Southern District of New York; *In re Warfarin Sodium Antitrust Litigation*, MDL No. 98-1232 (SLR), United States District Court, District of Delaware; *Blevins v. Wyeth-Ayerst Laboratories, Inc. and American Home Products Corp.*, Case No. 324380, Superior Court of California for the County of San Francisco; *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-MDL-1317, United States District Court, Southern District of Florida; *In re: Cardizem CD Antitrust Litigation*, 99-MD-1278, United States District Court, Eastern District of Michigan; *In re High Pressure Laminate Antitrust Litigation*, Civil Action No. 00C-1989 and Related Cases, Second Circuit Court for Davidson County, Tennessee, 20th Judicial District at Nashville; *In re: Pennsylvania Baycol Third-Party Payor Litigation*, September Term, 2001, Case No. 001874, Court of Common Pleas, Philadelphia County, South Carolina; *In re Remeron End-Payor Antitrust Litigation*, Master File No. 02-CV-2007 (FSH), United States District Court, District of New Jersey; *In re: Relafen Antitrust Litigation*, 01-12239-WGY, United States District Court, District of Massachusetts; *In re: Buspirone Antitrust*, 01-MD-01413, United States District Court, Southern District of New York; *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation,* Docket No. 2:02cv442, United States District Court, Eastern District of Virginia; *Cipro Cases I and II*, Judicial Council Coordination Proceedings Nos. 4154 and 4220, Superior Court of the State of California, County of San Diego; *In Re: Potash Antitrust Litigation (II)*, Case No. 1:08-CV-6910, in the United States District Court for the Northern District of Illinois; *In re: Optiver Commodities Litigation*, Case No. 1:08-cv-06842-LAP, United States District Court, Southern District of New York; *In re: Rough Rice Commodity Litigation*, Case No. 11-cv-00618, United States District Court, Northern District of Illinois; *In re: Platinum and Palladium Commodities Litigation (Platinum/Palladium Futures Action)*, 10-cv-3617 (WHP) ("Futures Action"), United States District Court, Southern District of New York; and *In re: Platinum and Palladium Commodities Litigation (Platinum/Palladium Physical Action)*, 10-cv-

3617 (WHP) ("Physical Action"), United States District Court, Southern District of New York; *Kamakahi and Levy v. American Society for Reproductive Medicine and Society for Assisted Reproductive Technology*, Case No. 3:11-CV-1781 JCS, United States District Court, Northern District of California; *Mahoney v. Endo Health Solutions, Inc., et al.*, Case No. 15-cv-9841 (DLC)*,* United States District Court, Southern District of New York; *State of New York, et al. v. Cephalon, Inc., et al.*, Civil Action No. 16-cv-01833, United States District Court, Eastern District of Pennsylvania; and

**Securities Settlements Notice Programs:** *In re Berkshire Realty Company, Inc. Shareholder Litigation*, C.A. No. 17242, Court of Chancery for the State of Delaware in and for New Castle County; *Lipson v. Simon et al.*, CV 98 4573 (TCP), United States District Court, Eastern District of New York; *In re: Service Corporation International*, Civil Action H-99-280, United States District Court, Southern District of Texas; *Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), United States District Court, Southern District of New York; *High Tide Harry's, Inc. v. Waste Management Inc. of Florida*, 05-CA-009441, 9th Judicial Circuit, State of Florida; *In re: Campbell Soup Co. Securities Litigation*, 00-152-JEI, United States District Court, District of New Jersey; *Abrams v. Van Kampen Funds, Inc.*, 01-C-7538, United States District Court, Northern District of Illinois; *In re Seitel, Inc. Securities Litigation*, Civil Action No. 02-1566, United States District Court, Southern District of Texas; *Stevelman v. Alias Research, Inc.*, 591-CV-00682 (EBB), United States District Court, District of Connecticut; *In re Phoenix Leasing Limited Partnership Litigation*, Case No. 173739, Superior Court of the State of California, County of Marin; *In re: Nuko Information Systems, Inc.,* C-97-20471 EAI, United States District Court, Northern District of California; *In re PriceSmart Securities Litigation*, Master File No. 03-Cv-2260-JAH – (BLM), United States District Court, Southern District of California; *In Re: General Electric Co. Securities Litigation*, Civ. No. 09-CIV-1951 (DLC) ECF CASE, United States District Court, Southern District of New York; *In Re: PAR Pharmaceutical Securities Litigation*, Master File No. 2:06-03226 (ES) (SCM), United States District Court, District of New Jersey; *In Re: ING Groep, N.V. ERISA Litigation*, Master File No. 1:09-CV-00400-JEC, United States District Court, Northern District of Georgia; *In Re: Fannie Mae 2008 Securities Litigation*, Case No. 08-CV-7831, United States District Court, Southern District of New York; *In Re: Massey Energy Co. Securities Litigation*, Civil Action No. 5:10-cv-00689-ICB, United States District Court, Southern District of West Virginia; *In re 2014 Avon Products, Inc. ERISA Litigation*, United States District Court, Southern District of New York; *In re BioScrip, Inc. Securities Litigation*, Civil Action No. 13-cv-6922-AJN, United States District Court, Southern District of New York; *In re BP plc Securities Litigation*, No. 4:10-md-02185, United States District Court, Southern District of Texas; *The Department of the Treasury of the State of New Jersey and Its Division of Investment v. Cliffs Natural Resources Inc. et al.*, Case No. 1:14-cv-1031, United States District Court, Northern District of Ohio; *Laydon v. Mizuho Bank, Ltd., et al.,* No. 12-cv-3419 (GBD) and *Sonterra Capital Master Fund Ltd., et al. v. UBS AG, et al.*, No. 15-cv-5844 (GBD), United States District Court, Southern District of New York; *In re Eastman Kodak ERISA Litigation*, Master File No. 6:12-CV-06051-

DGL, United States District Court, Western District of New York; *In re NII Holdings, Inc. Securities Litigation*, Civ. No. 1:14-cv-00227-LMB-JFA, United States District Court, Eastern District of Virginia; *In re Nu Skin Enterprises, Inc., Securities Litigation*, Master File No. 2:14-cv-00033-JNP-BCW, United States District Court, District of Utah; *Första AP-Fonden and Danske Invest Management A/S v. St. Jude Medical, Inc. et al.*, Civil No. 12-3070 (JNE/HB), United States District Court, District of Minnesota; *In re TIBCO Software Inc. Stockholders Litigation*, Consolidated C.A. No. 10319-CB, Court of Chancery, State of Delaware; and

**Consumer Settlements Notice Programs:** *Picant v. Premier Cruise Lines*, 96-06932-CA-FN, 18th Judicial Circuit, State of Florida; *McParland and Picking v. Keystone Health Plan Central, Inc.*, Civil Action No. 98-SU-00770-01, Court of Common Pleas, York County, Pennsylvania; *Smith v. American Family Mutual Automobile Insurance Co.*, No. 00-CV-211554, Circuit Court of Jackson County, Missouri; *Duncan v. The Unity Life and Accident Insurance Association, et al.*, Civil Action No. 00-CIV-7621, United States District Court, Southern District of New York; *Duncan v. Columbian Protective Association of Binghamton, New York, and Columbian Mutual Life Insurance Company*, Case No. 00 CIV. 7236 (JGK), United States District Court, Southern District of New York; *Watkins, as Executrix of the Estate of Hines, and as Beneficiary of the Adult Whole Life Industrial Policy of Hines, v. Columbian Mutual Life Insurance Company, a Subsidiary of Columbian Financial Group, and Golden Eagle Mutual Life Insurance Corporation*, Case No. 03 CIV. 8620 (JGK), United States District Court, Southern District of New York; *In Re: Benzion v. Vivint, Inc.*, Case No. 12-cv-61826-WJZ, United States District Court, Southern District of Florida; *In Re: ADT Security Services, Inc.*, Case No. 1:11-cv-1925, United States District Court, Northeastern District of Illinois; *The State of Illinois v. Au Optronics Corporation et al.*, No. 10 CH 34472, Circuit Court of Cook County, Illinois; *State of Washington v. AU Optronics Corporation, et al.*, No. 10-2-29164-4 SEA, King County Superior Court, Washington; *Mey vs. Interstate National Dealer Services, Inc. et al.*, Case No. 1:14-cv-01846-ELR, United States District Court, Northern District of Georgia; *Estakhrian et al. v. Obenstine, et al.*, Case No. CV11-3480-FMO (CWx), Nevada District Court; *Krakauer v. DISH Network, L.L.C.*, Civil Action No. 14-cv-333, United States District Court, Middle District of North Carolina; *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-05665-YGR, United States District Court, Northern District of California; *Lyons, et al., v. Litton Loan Servicing, LP, et al.*, Case No. 13-cv-00513, United States District Court, Southern District of New York; *Katz et al. v. Live Nation, Inc. et al.*, Civil Action No. 1:09-cv-003740-MLC-DEA, United States District Court, District of New Jersey; and *Bergman et al. v. DAP Products Inc. et al.*, Case No. 14-cv-03205-RDB, United States District Court, District of Maryland.

**Mile Marker Zero, LLC, Greenville, SC**                                   **2000-2012**

Principal

Directed the development of marketing and advertising plans for national and local clients, including the following:

- **Complete Claim Solutions, Inc.**
  - o Developed media recommendations and implemented newspaper, magazine, and press release notice programs with budgets ranging from $500 to as high as $2 million for third-party-payor settlements, including settlements regarding Terazosin Hydrochloride (Hytrin), Coumadin-Warfarin, Augmentin, Cardizem, Remeron, Relafen, Buspar, and Taxol.
  - o Developed and implemented media plans for securities settlements in cases involving such firms as Morgan Stanley, First Central Financial, Waste Management, Campbell Soup, Van Kampen, Alias Research, and Nuko Information Systems. Some plans included running newspaper ads in more than 50 city newspapers over a single two-week period.
  - o Developed media recommendations and implemented newspaper and magazine advertising campaigns on both regional and national levels for consumer and insurance settlements in cases involving such firms as Premier Cruise Lines and Unity Life Insurance Company.

  Mile Marker Zero worked with Complete Claim Solutions, Inc., for six years as its sole media planning and buying partner. Mile Marker Zero developed and implemented national and international print and earned media notice programs to support the notification of consumers and third-party payors in cases such as the following:

- Coumadin-Warfarin
- Hytrin
- Cardizem
- Buspar
- Nuko
- Columbian Mutual Life
- Freeport-McMoRan Sulphur, Inc.
- Relafen
- Remeron
- Service Corporation International
- Premarin

- Taxol
- Waste Management
- Campbell Soup
- Alias Research
- Augmentin
- Keystone Health Plan
- Seitel, Inc. Securities

- 3M-Scotch
- Baycol
- SmartForce, PLC

- PriceSmart

- Van Kampen
- Unity Life Insurance Co.
- Premier Cruise Lines
- MedCo
- Berkshire Realty
- Platinol
- Transaction System Architects
- Eaton Vance Corp.
- Cipro
- American Family Mutual Automobile Insurance Co.
- Morgan Stanley

- **The Arthritis Foundation** – the largest U.S. not-for-profit organization that supports research regarding more than 100 types of arthritis and related conditions.
  - o Wrote and produced national sponsorship programs to generate financial support for the Foundation.
  - o Wrote and produced collateral materials to support national Foundation events such as *Joints in Motion* and the *Arthritis Walk*.

- **Papa Murphy's Pizza** – the fifth-largest pizza chain in the U.S., with over 1,000 units in the U.S. and Canada.
  - o Developed and implemented grand opening advertising plans for more than 50 stores in 40 cities.
  - o Utilized direct mail, local newspapers, outdoor/billboard advertising, and local radio to promote grand opening activities.

- **FIERO** (Fire Industry Equipment Research Organization) – national fire services association.
  - o Developed collateral material and advertising campaign to generate awareness of association and to announce its annual symposium on fire station design and safety. Symposium exceeded FIERO goals by hosting more than 500 fire-fighting support personnel. FIERO also saw a 25% increase in membership during this period.

- **TeamPoint Systems, Inc.** – a global software company with over 20,000 users.
  - o Directed graphic design, writing, and development of company website, www.teampointsystems.com, which received over 8,000 visits monthly.
  - o Produced brochures, signage, and promotional materials for attendance at the national SITEK convention.
  - o Interviewed TeamPoint customers and wrote case studies about their successful use of TeamPoint's products. After putting the case studies on the website, visit time lengthened from an average of three minutes to more than eight minutes per visit. Sales also increased by 45% and have risen steadily.

**<u>Denny's Corporation, Spartanburg, SC</u>**                                                **1996-2000**

Senior National Advertising Manager

- Partnered with Brand Marketing Director of major worldwide restaurant chain in the development of new product promotions and determined all marketing materials needed to support business initiatives and ensure message consistency; directed five national U.S. advertising agencies and one Canadian agency in development and implementation of advertising and media strategies, objectives, and tactics. Ensured that all advertising reinforced brand positioning and marketing mission.

**The Coca-Cola Company, Atlanta, GA**                                    **1994-1996**

Advertising Services Manager

- Presented and reinforced general market, African-American, and Hispanic brand strategies, objectives, and positioning for both carbonated soft drinks and noncarbonated beverages to company's bottler system and local agencies; developed local vendor promotions with bottlers and agencies that strengthened brand positioning and increased case volume, including development of POP materials, merchandising displays, and broadcast creative advertising.

**McCann Erickson, Atlanta, GA**                                         **1986-1994**

Media Supervisor

- Supervised six advertising professionals in media planning and buying for travel, B2B, consumer retail, and consumer packaged goods accounts.

**EDUCATION**

- Bachelor of Business Administration, University of North Dakota.