```
 1                  UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF CONNECTICUT
 2
     - - - - - - - - - - - - - - x
 3
     IN RE:  AGGRENOX ANTITRUST    :   No. 3:14-md-02516(SRU)
 4   LITIGATION                    :   915 Lafayette Boulevard
                                   :   Bridgeport, Connecticut
 5                                 :
                                   :   December 13, 2017
 6
     - - - - - - - - - - - - - - x
 7

 8                  TELEPHONIC STATUS CONFERENCE

 9
     B E F O R E:
10
         THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.
11

12   A P P E A R A N C E S:

13      FOR PLAINTIFF, HUMANA:

14           LOWEY DANNENBERG COHEN & HART, P.C.
                44 South Broadway, Suite 1100
15              White Plains, New York  10601
             BY: PETER D. ST. PHILLIP, JR., ESQ.
16              NOELLE-KRISTEN F. RUGGIERO, ESQ.

17      FOR PLAINTIFF, LOUISIANA HEALTH SERVICE INDEMNITY
        COMPANY:
18
             YOUNG COTTER & MEADE LLC
19              909 Poydrass Street, Suite 1600
                New Orleans, Louisiana  70112
20           BY: JOHN ALDEN MEADE, ESQ.

21
        FOR THE DEFENDANT, BOEHRINGER:
22
             WHITE & CASE LLP
23              701 Thirteenth Street, NW
                Washington, D.C.  20005
24           BY: MATTHEW LEDDICOTTE, ESQ.

25   (continued)
```

```
 1          FOR THE DEFENDANT, BOEHRINGER:

 2              WHITE & CASE LLP
                    1155 Avenue of the Americas
 3                  New York, New York  10036
                BY: JACK E. PACE, III, ESQ.
 4

 5              NORTON ROSE FULBRIGHT LLP
                    1301 Avenue of the Americas
 6                  New York, New York  10019-6022
                BY: DAVID KESSLER, ESQ.
 7

 8          FOR THE DEFENDANT, TEVA PHARMACEUTICALS USA, INC.:

 9              GOODWIN PROCTER LLP
                    100 Northern Avenue
10                  Boston, Massachusetts  02210
                BY: CHRISTOPHER T. HOLDING, ESQ.
11

12

13

14

15

16

17

18

19

20

21

22

23
                        Sharon L. Masse, RMR, CRR
24                       Official Court Reporter
                         915 Lafayette Boulevard
25                  Bridgeport, Connecticut  06604
                           Tel: (860)937-4177
```

1               (Proceedings commenced at 1:32 p.m.)

2               THE COURT:  Stefan Underhill.

3               MR. ST. PHILLIP:  Good afternoon, Your Honor.

4               THE COURT:  Good afternoon.  So obviously we're having our ordinary status update.  I've seen the report. It did not appear to me that there were too many issues that had to be taken up today, but I'd be happy to hear anybody who thinks that there's an issue that we need to address.

10              MR. ST. PHILLIP:  Your Honor, this is Peter St. Phillip for Humana.  In connection with Your Honor's order concerning the motion to compel, there's a question concerning the timing of that production and how that interfaces with the expert report deadlines.  Where we identified in the status report this issue, the defendants have suggested that they will be seeking appellate relief by interlucutory appeal.  We did not have a date by which the production of the documents would be made.  We think that the materials and then the deposition of Ms. Persky, which also hasn't been set, might impact the expert reports that are currently due on January 16, and so we're just looking for guidance concerning that issue.  That's the only issue that the plaintiffs have.

24              THE COURT:  All right.  I think the Federal Rules call for production in response to a motion to

1  compel within 14 days, if I recall correctly, of the
2  order.  So I think there is at least a date by rule, if
3  not otherwise.
4             MR. ST. PHILLIP:  Okay.
5             MR. MEADE:  And, Your Honor, this is John Alden
6  Meade on behalf of Blue Cross.  We're obviously in the
7  same boat as Humana, and it probably isn't ripe for today,
8  but in the event an interlocutory review is sought and a
9  stay of production is sought, that would obviously impact
10 our ability to complete expert reports in time.
11            THE COURT:  Right.  Let me just find out from
12 Boehringer's point of view what they are intending here.
13            MR. LEDDICOTTE:  I'm sorry, Your Honor.  This is
14 Matthew Leddicotte.  There was a bit of interference.  I
15 couldn't quite get that.
16            THE COURT:  Okay.  What is your intention with
17 respect to the production of the documents?
18            MR. LEDDICOTTE:  We have -- we have taken the
19 steps since the order to make them production-ready.  As
20 our status report indicated, we also think that we are
21 going to be probably in the next week or during next week
22 filing a motion for interlocutory -- permission for an
23 interlocutory appeal as well as a request to stay the
24 production pending the decision of the D C. Circuit appeal
25 because of the reasons of potential disqualification that

1  both the D.C. magistrate judge flagged as well as Your
2  Honor questioned about during the motions hearing on the
3  motion to compel.
4        THE COURT:  Okay.  The production has not yet
5  been stayed and presumably is now overdue.  Is that right?
6        MR. LEDDICOTTE:  It has not yet been stayed,
7  that's correct.  We did ask plaintiffs about that.  I'm
8  counting the days now as to whether it's overdue or not.
9        MR. PACE:  And, Your Honor, sorry to jump in.
10 This is Jack Pace from White & Case on behalf of
11 Boehringer as well.  As Mr. Leddicotte was just noting,
12 last week we approached the plaintiffs as we were
13 reviewing the possible appeal under 1292(b) and asked them
14 if they would agree to a stay pending that review, and
15 then they informed us that they wouldn't agree to such a
16 stay.  And then knowing that we had this conference coming
17 up today, we anticipated -- it does create a bit of a time
18 issue because today, I guess, would be the fourteenth,
19 today or tomorrow would be the fourteenth day.  But we
20 anticipated having this conference and knew that it would
21 be raised and wanted to have this discussion now.  But
22 we'll obviously be guided by Your Honor in terms of next
23 steps.  But as Mr. Leddicotte indicated, it's our
24 intention to -- and we can certainly get into the issues
25 as much as anyone would like us to now, but both for

1   practical disqualification-type issues and substantive
2   legal issues we do intend to promptly seek 1292(b) review
3   and a stay of the order.
4           MR. ST. PHILLIP:  Your Honor, this is Peter
5   St. Phillip.  Today I think is the fourteenth day, so
6   under the rules it seems that the production is due today.
7           It is correct that we did not consent to an
8   extension, and we expect to receive the documents today.
9           We reviewed the disqualification issue.  We
10  don't think that production of these materials would give
11  rise to the disqualification, so we'd ask for the
12  defendants to produce the documents today and then to set
13  a deposition date for Ms. Persky, who is the general
14  counsel -- former general counsel of BI, which is the last
15  deposition that's outstanding in our view.
16          THE COURT:  Okay.  So let's back up a little
17  bit.
18          The interlocutory appeal that I have heard just
19  now would be brought pursuant to 1292(b), which requires
20  in the first instance that the district judge indicate
21  that the order involves a controlling question of law as
22  to which there is substantial ground for a difference of
23  opinion and that an immediate appeal from the order may
24  materially advance the ultimate termination of the
25  litigation.

1            That determination has to be in writing.  I've
2    not been asked to make that determination, nor does it,
3    frankly, appear to me that that is the case here.  So I
4    guess I'm questioning whether there is going to be an
5    interlocutory appeal available.  That's question one.
6            Question two is even if there is an
7    interlocutory appeal, absent an order to stay, I believe
8    that the obligation to comply with the order would
9    continue notwithstanding the interlocutory appeal.
10           MR. PACE:  Well, Your Honor, this is Jack Pace,
11   if I might.  I agree that certainly -- we certainly agree
12   that it wouldn't automatically be stayed, and we would be
13   making a separate request, and we'd be prepared to do that
14   today, a separate request to seek a stay in parallel with
15   the request for interlocutory review; and of course as
16   Your Honor points out, if the Court doesn't agree and
17   doesn't grant that request, then there wouldn't be -- it
18   wouldn't proceed to an appeal.
19           As to the -- as counsel for Humana points out,
20   there seems to be a difference of opinion over the likely
21   implications for disqualification of counsel if they saw
22   documents that ultimately were deemed to be protected from
23   disclosure following let's just say the D.C. Circuit
24   reversal of that separate appeal, and then of course we
25   would have to go back to Your Honor.  But it's an issue

1    that seems capable of being avoided, in our view, if we
2    held off on the production for what we think would be a
3    short amount of time while the D.C. Circuit reviews the
4    appeal.  I mean, at the oral argument for the appeal in
5    D.C., there were some questions about how to interpret
6    what a substantial need standard should be, and there was
7    a pretty serious debate such that we, of course, won't
8    predict one way or the other what's going to happen on
9    appeal, but we think that it's worth letting that decision
10   come out, which we would expect to come shortly.  It was
11   argued a couple months ago.  And so we thought that this
12   was just -- this disqualification issue was at least a
13   practical issue on top of our hopefully reasonable
14   disagreements about the substantial need standard in the
15   Second Circuit that could be avoided if the production was
16   held off for maybe it's just potentially a few weeks until
17   these issues are resolved.  And then if ultimately the
18   documents are produced, the documents are produced, of
19   course.
20            THE COURT:  Don't --
21            MR. PACE:  As to the deposition of Ms. Persky --
22            THE COURT:  Don't you --
23            MR. PACE:  I'm sorry.  I apologize.
24            THE COURT:  Don't you have to win in the D.C.
25   Circuit and in the Second Circuit?  In other words, you

1   have now --

2           MR. PACE:  Right.

3           THE COURT:  -- two district judges who have
4   ordered them produced.  If you win in D.C., that has no
5   bearing on my order, so you also have to have an
6   interlocutory appeal in this case and win that one.  So
7   the idea that we're going to be pausing for a few weeks I
8   think is unrealistic.  If this is going to hold things up,
9   it's going to hold things up for a significant period of
10  time, maybe a year.

11          MR. PACE:  Yes, Your Honor.  We would -- yes, we
12  would have to come -- it would certainly involve two
13  steps, we understand that, that it would have to come from
14  the D.C. Circuit, and then we would have to come back to
15  Your Honor in light of the D.C. Circuit ruling.  We
16  obviously -- those would be the two steps required.  And
17  we can't predict.  We would hope it would be as quickly as
18  possible.

19          To the extent that Your Honor's opinion, I know
20  it had multiple bases, but to the extent it was based on
21  collateral estoppel, then the ruling from D.C. we would
22  think would be relevant at least as to that portion; but
23  you're right, that would have to be step two.

24          And then just one final note on the deposition
25  of Ms. Persky.  I can update.  We found out her

1 availability. We certainly agreed with the plaintiff that
2 her deposition didn't make sense to happen before the
3 documents issue was resolved, because we anticipate that
4 if the documents are produced, then the plaintiffs would
5 ask her about those documents, and she's a third party who
6 we wouldn't understand could come twice or certainly would
7 be willing to come twice for a deposition before and
8 after. But, nonetheless, we went to her to find out her
9 availability so that we could at least be planning her
10 deposition in parallel in light of the fact that there are
11 some deadlines coming up, as Mr. St. Phillip pointed out.
12 And so I apologize that we only learned the specific
13 deadline -- the dates of her availability just recently.
14 But she is, of course, available, but not -- she's out of
15 the jurisdiction until early January, so she would be back
16 and available to be deposed January 12 and then for a few
17 days after that, like 12, 15, 16. We can work out the
18 details with the plaintiffs, but she'll be back then, and
19 the first day she's available we'll make her available for
20 a deposition.
21         THE COURT: Okay. Well, all right. Let's --
22         MR. ST. PHILLIP: Your Honor --
23         THE COURT: Yes, go ahead.
24         MR. ST. PHILLIP: The other thing I would say to
25 the last point that was made is that the testimony and the

1  documents, as I think Your Honor recognized in the motion
2  to compel as to substantial need bear on some issues that
3  will be covered by the expert reports that are due
4  January 16 under the current schedule.  So we can either
5  meet that deadline and then supplement or have some form
6  of relief such that that testimony can be cited and used.
7              MR. MEADE:  And, Your Honor, from Blue Cross's
8  perspective, it just seems that on one hand the relief
9  requested by the defendants is remote -- as to the timing,
10 it's uncertain as to the timing and remote as to its
11 chance of success, whereas on the issue of the expert
12 report deadlines and the current schedule in place, it
13 seems that that would be certain to have an impact.  So
14 that's why just on balance we don't support their request.
15             THE COURT:  Well, okay.  Let's go back to the
16 substantial need aspect of the ruling.  I did not, as I
17 recall, rely on collateral estoppel in deciding the
18 substantial need test, so it's not apparent to me that
19 even a successful appeal in D.C. is going to have an
20 impact on that issue here.
21             I obviously think the documents should be
22 produced, and we should quickly take the necessary
23 deposition and quickly get the expert reports disclosed.
24 It's not apparent to me that this issue, which -- I think
25 we're spending a lot of time on this issue, and it's not

1  apparent to me why we are.  The issue, in my view, was

2  fairly straightforward; and the documents, in my view,

3  maybe I don't understand them, but they did not appear to

4  be smoking guns.  So I think it makes sense to move on,

5  get these documents produced and get on with the

6  litigation.

7           So what that means in terms of people's

8  decisions, I'm not saying you can't file whatever motion

9  you want to file, but I think -- it's not apparent to me,

10 not having seen the motion, how the 1292(b) standard is

11 going to be met.  It doesn't appear to be a situation

12 where it makes sense to stay, as a practical matter, stay

13 the litigation pending the outcome here of any appeal.

14 And I think we ought to be moving forward.

15          So in terms of scheduling, I think the way

16 probably to do this is to set a date for the disclosure of

17 plaintiff's expert report that is triggered by the

18 completion of the deposition, 14 days, 21 days after that

19 deposition.

20          MR. ST. PHILLIP:  Your Honor, I think 21 would

21 be preferable from the plaintiffs, but that's fine with

22 us.  I appreciate that.

23          THE COURT:  Anybody have a problem with that

24 approach?

25          MR. MEADE:  Agreed from Blue Cross.

1           THE COURT:  Okay.  All right.

2           MR. PACE:  On behalf of Boehringer, we don't

3 have an objection to that.

4           THE COURT:  Okay.  So the deposition should

5 proceed once the documents are produced; and, obviously,

6 I'm assuming that they'll be produced soon; but if they're

7 not, then the triggering date for the disclosure of the

8 expert report will be put off.

9           Are there other scheduling implications of this

10 issue that I'm not perceiving at the moment?

11           MR. PACE:  The only thing -- this is Jack Pace.

12 I guess under the current scheduling order, there are, I

13 guess, sort of a cascade of deadlines of expert

14 disclosures responding to each other, and so I guess our

15 only request would be that since in light of that, that if

16 whatever the deadline -- and we'll work with counsel to

17 get the deposition scheduled as we discussed -- that the

18 then following dates of the reports responding to the

19 plaintiffs' reports that would be rescheduled would just

20 fall accordingly, and we could propose dates that put

21 those specific dates on the calendar, if that's helpful.

22           THE COURT:  It would, and I would urge you to

23 keep the scheduled trial date in mind as you do that.  I

24 don't want to do anything that is going to put that date

25 at risk.

1           MR. PACE:  Yes, Your Honor.

2           THE COURT:  Okay.

3           MR. ST. PHILLIP:  Your Honor, this is Peter St.
4    Phillip.  I don't think there are any other scheduling
5    issues from the plaintiff's perspective.

6           THE COURT:  Okay.  Thank you.

7           MR. MEADE:  Agreed from Blue Cross.

8           THE COURT:  Great.  And are there other issues
9    that anybody wants to raise on the call today?

10          MR. KESSLER:  Yes, Your Honor.  This is David
11   Kessler from Norton Rose Fulbright on behalf of BIPI.

12          As discussed in the status report, there
13   continues to be problems with the production by Humana and
14   by Blue Cross/Blue Shield that I'd like to raise.

15          With respect to Humana, the Court may remember
16   that in late October it ordered Humana to produce
17   documents from five network shares and documents related
18   to links from various emails that we identified for the
19   Court.  Those productions are still not complete.  There
20   have been some technical issues that we've been working
21   with Humana on with respect to the link documents, and
22   we're still working with them on those issues, and the
23   production of the network shares, unfortunately, is still
24   not complete.  Hopefully, we can get that done soon.
25   Obviously, it's way past the 14 days, but hopefully we can

1 work those things out.

2 On the Blue Cross/Blue Shield side, the
3 discovery has been going much slower, unfortunately. Last
4 week we learned that the original searches by Blue
5 Cross/Blue Shield inadvertently missed ten years of data.
6 Instead of going back to 2006 as agreed, Blue Cross/Blue
7 Shield went back only to 2016, which compounds other
8 errors that had been made in the production. And we'd ask
9 the Court to compel Blue Cross/Blue Shield to complete its
10 production by the end of the year. It's been going on
11 obviously well past the fact discovery deadline, and we
12 need to wrap this up.

13 THE COURT: All right. Who wants to respond,
14 Humana or Blue Cross?

15 MR. MEADE: Peter, you can go first.

16 MS. RUGGIERO: This is Noelle Ruggiero on behalf
17 of Humana. With respect to the network shares and the
18 link documents, we made these production of the responses
19 network share files as we informed defendants, and it's in
20 the status report. We are just finishing the privilege
21 review. We actually finished that this morning. There's
22 only a small number of documents that resulted from that.
23 Those will go out by the end of the week.

24 With respect to the link documents, we have
25 already produced to defendants all of the individual

1    documents that we were able to pull from the links.  If
2    you remember, the defendants had requested links in about
3    1,200 documents.  That turned out to be 55,000 links.  So
4    there has been substantial back and forth on those.  We've
5    done the best we could to produce everything that we were
6    able to locate, and we just received a proposal from
7    defendants last night regarding some of the additional
8    topics that they would like to discuss there to get that
9    resolved.  So we are continuing to meet and confer on
10   that, but we think we're almost done there as well.
11              THE COURT:  All right.  Let me hear any response
12   to that series of statements.
13              MR. LEDDICOTTE:  Thank you, Your Honor.  Well,
14   obviously we're very happy to hear that the privilege
15   review for the network shares is almost done and we'll get
16   those documents.
17              With respect to the link documents, we do need
18   to go back and forth.  It's from our review of the links
19   that there are more than a handful of documents missing
20   from the production, but I believe we can work amicably to
21   work that through.  There were more links than expected,
22   so the vast majority of those 55,000 that were just
23   mentioned, well more than 40,000 of them were in hidden
24   files, hidden rows inside the production that no one could
25   see until we opened them up.  But we've been able to work

1   through all of those issues.
2              There does appear to be, including some of the
3   documents we specifically mentioned in our motion, that
4   have not been produced yet, but given counsel's statements
5   I believe we can work through this and resolve it
6   amicably.
7              THE COURT:  Okay, good.  All right.  What about
8   Blue Cross?
9              MR. MEADE:  Thank you, Your Honor.  This is John
10  Alden Meade for Blue Cross.
11             It is true that we did have essentially a
12  keystroke error on one of the subjects.  It doesn't apply
13  to everything that we did.  The data we produced goes all
14  the way back to -- covering the relevant timeframe, as do
15  a lot of the documents themselves, but there were certain
16  subparts that didn't -- 1-6 got put in instead of a 0-6,
17  so we are aware of that.  We realized that and disclosed
18  it.  We discussed whether defendants wanted to go forward
19  with the deposition on the front end and hold it open, so
20  we did go forward last Friday.  Rare two snow days in
21  south Louisiana.  And counsel for White & Case -- at White
22  & Case, with defendants there, we met and conferred and
23  discussed it, and we are aware of the issues, and we've
24  just now received another update from my client on how
25  soon we can be fixing them.  Certainly by the end of the

1  year I think, if that is what's being requested, that is
2  not undoable.  So our view is we know we made this
3  mistake, it's not quite as bad as it was made to sound,
4  but we are fixing it and have agreed to the reservations
5  of rights that the defendants have requested regarding the
6  ability to come back and continue the deposition if they
7  so choose.
8              THE COURT:  Okay.  So would Blue Cross have any
9  objection to my issuing an order that the kind of
10 corrected or supplemental production be completed by the
11 end of the year?
12             MR. MEADE:  No objection, Your Honor.
13             THE COURT:  All right.  So I'll order that.
14 Okay.
15             MR. LEDDICOTTE:  Thank you, Your Honor.
16             THE COURT:  Sure.  What else would anyone like
17 to raise today?
18             MR. ST. PHILLIP:  Nothing else from plaintiffs,
19 Your Honor.
20             THE COURT:  All right.  From either defendant?
21             MR. LEDDICOTTE:  I don't believe there's
22 anything else from the Boehringer defendants, Your Honor.
23             MR. KESSLER:  No, Your Honor.
24             THE COURT:  All right.  Thank you.
25             MR. HOLDING:  Nothing from Teva.  Thank you.

1             THE COURT:  Thank you.
2             Well, everyone have a happy holiday and keep up
3  the good work.  Let's push this through and get onto the
4  last stages of this case.  I appreciate your help.  Take
5  care.
6             MS. RUGGIERO:  Thank you, Your Honor.
7             THE COURT:  Bye-bye.
8             (Proceedings adjourned at 1:59 p.m.)

C E R T I F I C A T E

No. 3:14-md-02516-SRU

In Re:  Aggrenox Antitrust Litigation

      I, Sharon L. Masse, RMR, CRR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

January 12, 2018

/S/ Sharon L. Masse
Sharon L. Masse, RMR, CRR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (860)937-4177