# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE AGGRENOX<br>ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*Humana*, No. 3:14-cv-00572 (SRU), and<br>*Louisiana Health*, No. 3:15-cv-00964 (SRU) | No. 3:14-md-02516 (SRU) |

## RULING ON MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

On November 29, 2017, in this multidistrict litigation, I entered a ruling and order compelling defendant Boehringer Ingelheim Pharmaceuticals ("Boehringer") to produce to plaintiffs Humana, Inc. and Louisiana Health Service Indemnity Co. (collectively, "Humana") portions of a set of 52 documents (the "FTC documents") that Boehringer had previously produced to the Federal Trade Commission ("FTC") in response to an order of the United States District Court for the District of Columbia. *See In re Aggrenox Antitrust Litig.*, 2017 WL 5885664 (D. Conn. Nov. 29, 2017) ("*Aggrenox*"). Boehringer now requests that I certify that order for interlocutory appeal to the United States Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1292(b). For the following reasons, I deny Boehringer's motion.

### I.     Standard of Review

The courts of appeals are given jurisdiction over appeals from all "*final* decisions of the district courts," 28 U.S.C. § 1291 (emphasis added), and so "a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 429–30 (1985). Nevertheless, 28 U.S.C. § 1292(b) creates a "rare exception to the final judgment rule." *Koehler v. Bank of Bermuda*, 101 F.3d 863, 865 (2d Cir.

1996). That statute allows a district judge to certify the interlocutory appeal of an order when the judge is "of the opinion" that:

> (1) the "order involves a controlling question of law,"
>
> (2) the question presents "substantial ground for difference of opinion," and
>
> (3) "an immediate appeal may materially advance the ultimate termination of the litigation."

28 U.S.C. § 1292(b). Whether to certify an order for interlocutory appeal "is entirely a matter of discretion for the District Court." *In re City of New York*, 607 F.3d 923, 933 (2d Cir. 2010).

The Second Circuit has cautioned that section 1292(b) should "not . . . be literally construed," and that "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24–25 (2d Cir. 1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978), *abrogated by* Fed. R. Civ. P. 23(f)); *accord White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994) ("[Section] 1292(b) 'should and will be used only in exceptional cases where a decision on appeal may avoid protracted and expensive litigation' . . . .") (quoting S. Rep. No. 2434, 85th Cong., 2d Sess. (1958), *reprinted in* 1958 U.S.C.C.A.N. 5255, 5260). The party that seeks certification under section 1292(b) "bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *White*, 43 F.3d at 376.

## II.     Background

The events leading to this discovery dispute are set forth at length in *Aggrenox*, 2017 WL 5885664, at *1–*4. In the course of the government's investigation of the reverse-payment settlement at issue in this case, Boehringer was ordered by the D.C. federal courts to produce a set of 52 documents to the FTC. *See generally FTC v. Boehringer Ingelheim Pharm.*, 286 F.R.D.

101 (D.D.C. 2012) ("*Boehringer I*"), *aff'd in part, vacated in part, and remanded*, 778 F.3d 142 (D.C. Cir. 2015) ("*Boehringer II*"), *on remand*, 180 F. Supp. 3d 1 (D.D.C. 2016) ("*Boehringer III*"). Humana asked Boehringer to produce the FTC documents in this case, as well; when Boehringer refused, Humana moved to compel. After consulting the parties' briefs, hearing oral argument, and examining the documents *in camera*, I issued a ruling on November 29, 2017 that directed Boehringer to produce the 29 FTC documents relevant to this case.[1]

The main issue addressed in my ruling was whether the documents "were fact work product" or "opinion work product,"[2] and—if the latter—whether Humana had "show[n] that it ha[d] substantial need for the materials . . . and c[ould] not, without undue hardship, obtain their substantial equivalent by other means." *See Aggrenox*, 2017 WL 5885664, at *5–*6. I concluded that the documents were fact work product. First, I noted that Boehringer might be "collaterally estopped from relitigating whether the FTC documents are fact work product or opinion work product."[3] *Id.* at *7. The D.C. federal courts had held that the documents were fact work product, and I concluded that the requirements for collateral estoppel were met. *See id.* at *7–*10.

---

[1] The remaining 23 documents concerned a reverse-payment settlement involving a different drug, Mirapex. Humana conceded that documents relating only to Mirapex were irrelevant.

[2] Fact work product "encompass[es] factual material, including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). Opinion work product, conversely, "reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative," and is subject to a higher standard of protection. *Id.* (internal quotation marks omitted). The parties agreed that the documents were some form of work product.

[3] Under federal common law, collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). In addition, the court also "must satisfy itself that application of the doctrine is fair." *Bear, Stearns & Co. v. 1109580 Ontario*, 409 F.3d 87, 91 (2d Cir. 2005).

Second, "even if collateral estoppel did not apply," I indicated that "I would independently hold that the FTC documents are fact work product." *Id.* at *10. The documents—"PowerPoint presentations, charts, graphs, and tables analyzing possible factual scenarios affecting the [Aggrenox] settlement," *id.* at *6 (quoting *Boehringer III*, 180 F. Supp. 3d at 25)—"'contain[ed] only factual information . . . produced by non-lawyers' and 'd[id] not reflect [counsel]'s assessments of the viability of success of Boehringer's litigation or settlement strategy.'" *Id.* at *11 (quoting *Boehringer II*, 778 F.3d at 152; *Boehringer III*, 180 F. Supp. at 27). "[B]ecause the FTC documents d[id] not 'propose[ ] possible legal theories or strategies' or 'ma[ke] predictions about the likely outcome of litigation,'" I held that they were "not entitled to the '[s]pecial treatment for opinion work product'" under Second Circuit precedent. *Id.* (quoting *United States v. Adlman*, 134 F.3d 1194, 1196–97 (2d Cir. 1998)).

Having determined that the FTC documents were fact work product, I proceeded to consider whether Humana had made "an adequate showing of substantial need for the document[s] and an inability to obtain [their] contents elsewhere without undue hardship." *Id.* at *12 (quoting *Adlman*, 134 F.3d at 1203). With respect to "substantial need"—the precise meaning of which, I noted, was "not clear from the plain language of the rule," *id.* (quoting *Boehringer II*, 778 F.3d at 154)—I relied upon district court decisions from this circuit that held "[a] substantial need exists 'where the information sought is "essential" to the party's defense, is "crucial" to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Id.* (quoting *Gucci Am. v. Guess?, Inc.*, 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010); *Nat'l Cong. for P.R. Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)). After examining the documents *in camera*, I concluded that the FTC documents had "unique value" and potentially "carrie[d] great probative value on contested

4

issues" because they "provide[d] unique information about Boehringer's reasons for settling in the manner that it did." *Id.* at *14 (quoting *Boehringer II*, 778 F.3d at 155, 158; *Gucci Am.*, 271 F.R.D. at 75). Therefore, I held that "Humana ha[d] sufficiently shown 'substantial need' for the documents under Rule 26(b)(3)." *Id.* at *14 (quoting *Gucci Am.*, 271 F.R.D. at 75).

With respect to "undue hardship," I observed that "[w]hat hardship is 'undue' depends on both the alternative means available and the need for continuing protection from discovery." *Id.* at *15 (quoting *FTC v. Grolier, Inc.*, 462 U.S. 19, 31 n.2 (1983)). "Undue hardship d[id] not mean that [Humana] must prove that obtaining the information elsewhere [was] absolutely impossible," *Lagace v. New Eng. Cent. R.R.*, 2007 WL 2889465, at *2 (D. Conn. Sept. 28, 2007); instead, Humana was only required to "show . . . that 'it [was] likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than from the factual work product of the objecting party.'" *Id.* (quoting *Strauss v. Credit Lyonnais*, 242 F.R.D. 199, 237 (E.D.N.Y. 2007)). I held that Humana had satisfied the test for "undue hardship" because it could not "feasibly . . . obtain[]" the FTC documents' "financial data . . . through oral questions," *id.* at *16, and because even Humana's own calculations from Boehringer's sales and pricing data would not be "equivalent" to the FTC documents' "'contemporaneous' indications of how Boehringer 'underst[ood] . . . the financial impact of the alleged anticompetitive agreement.'" *Id.* (quoting *Boehringer II*, 778 F.3d at 158).

Thus, I concluded that "Humana ha[d] shown 'substantial need' and 'undue hardship' sufficient to overcome Boehringer's fact work product privilege in the FTC documents." *Id.* I granted Humana's motion to compel and ordered Boehringer to produce the 29 FTC documents that related to the Aggrenox reverse-payment settlement. Boehringer produced the documents to

5

Humana on December 14–15, 2017. *See* Mem. Supp. Mot. to Certify Order for Interlocutory Appeal, Doc. No. 744-1, at 6 (hereinafter "Mem. Supp.").

On December 26, 2017, Boehringer filed a motion to certify my ruling on the motion to compel for interlocutory appeal under 28 U.S.C. § 1292(b). Mot. to Certify Order for Interlocutory Appeal, Doc. No. 744. Humana opposed Boehringer's motion on January 16, 2018. Mem. Opp'n Mot. to Certify Order for Interlocutory Appeal, Doc. No. 751 (hereinafter "Mem. Opp'n"). I elected to rule on the papers without a hearing.

**III.    Discussion**

"Pretrial discovery orders are generally not appealable . . . ." *In re W.R. Grace & Co.– Conn*, 984 F.2d 587, 589 (2d Cir. 1993) (Newman, J.) ("*W.R. Grace & Co.*"); *see also, e.g.*, *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 108 (2009) ("[W]e have generally denied review of pretrial discovery orders."); 15B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3914.23, at 123 (2d ed. 1992) ("[M]ost discovery rulings are not final."). In "exceptional circumstances," *Klinghoffer*, 921 F.2d at 25, section 1292(b) creates an "escape hatch[] from the finality rule" for "particularly injurious or novel privilege ruling[s]" that "involve[] . . . new legal question[s] or [are] of special consequence." *Mohawk Indus.*, 558 U.S. at 110–11; *Am. Express Warehousing v. Transam. Ins. Co.*, 380 F.2d 277, 282 (2d Cir. 1967) "(*Amexco*"). Still, "the existence of a claim of . . . privilege will not routinely permit review of discovery orders" before final judgment. *W.R. Grace & Co.*, 984 F.2d at 589.

Boehringer argues that the issues addressed in my November 29th order are of "special consequence," Mem. Supp., Doc. No. 744-1, at 9 (quoting *Mohawk*, 558 U.S. at 111), because they "have sweeping implications for privilege law and the ability of in-house counsel to render compliance advice." *Id.* Boehringer asserts that because "[*FTC v.*] *Actavis* placed the 'value' of a

6

patent settlement at the very heart of the antitrust inquiry, . . . the kind of analysis revealed by the documents at issue here is now a central focus of in-house counsel's legal advice." *Id.* at 10 (quoting 570 U.S. 136, 158 (2013)). Thus, according to Boehringer, "when an in-house counsel selects which financial forecasts and analyses she wants performed so that she may better evaluate the antitrust risks of the settlement options [under *Actavis*], those forecasts and analyses . . . reveal[] her mental impressions and opinions on legal issues." *Id.* Boehringer also asserts that my November 29th order, by "mak[ing] all fact work product as easily discoverable as non-work product documents, . . . 'imperil[s]' the 'substantial public interest' in preserving the attorney work product protection more generally." *Id.* at 11 (quoting *Mohawk*, 558 U.S. at 107).

As an initial matter, I note that "[t]he rule of nonappealability is no different when a claim of attorney's work-product [privilege] . . . is made." *Amexco*, 380 F.2d at 280 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). "Work-product protection is not so absolute that disclosure can never be justified," and the Second Circuit has expressed skepticism that "the mere possibility of erroneous application of the [work-product] principle to a given set of documents raises a spectre of such dire consequences that immediate appellate review . . . must follow." *Id.* at 281. As with any other "discovery question," interlocutory review is only available for privilege rulings "of extraordinary significance" for which "there is extreme need for reversal of the district court's mandate before the case goes to judgment." *Id.* at 282.

Here, I doubt that Boehringer has shown that my "run-of-the-mill" order compelling discovery is so extraordinarily significant to merit the exceptional relief of an interlocutory appeal.[4] *See Mohawk Indus.*, 558 U.S. at 108; *Amexco*, 380 F.2d at 282. This discovery dispute

---

[4] I acknowledge the "substantial public interest" in maintaining the work-product privilege. *See Mohawk Indus. v. Carpenter*, 558 U.S. 100, 107 (2009). "The crucial question," however, "is not whether an interest" such as work-product protection "is important in the abstract; it is whether

7

did not "involve[] a new legal question": the Second Circuit has repeatedly addressed the application of work-product privilege to business documents produced by non-attorneys at the behest of counsel. *See, e.g.*, *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015); *Adlman*, 134 F.3d 1194. Nor does the privilege ruling strike me as being "of special consequence," *see Mohawk*, 558 U.S. at 111, because it is "substantively tangential to the primary questions in this case." Conf. Mem. & Order, Doc. No. 738, at 2; *accord Stout v. Ill. Farmers Ins. Co.*, 882 F. Supp. 776, 778 (S.D. Ind. 1994) ("Discovery orders in the instant case, as in most cases, are substantially collateral to the substantive legal issues . . . .").

To be sure, Boehringer strains to convey the impression that this discovery dispute is unusually significant because "the kind of analysis revealed by the documents at issue"—calculating "the 'value' of a patent settlement"—is "at the very heart of the antitrust inquiry" under *Actavis*. Mem. Supp., Doc. No. 744-1, at 10 (quoting *Actavis*, 570 U.S. at 158). But while the FTC documents "may have 'unique value' and 'carr[y] great probative value'" in determining "whether 'the [Aggrenox] settlement included a large and unjustified reverse payment that was made *in order* to avoid the risk of patent invalidation,'" *id.* at *14 (quoting *Boehringer II*, 778 F.3d at 155; *Gucci Am.*, 271 F.R.D. at 75; *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 247 (D. Conn. 2015)) (other alterations and internal quotation marks omitted), the documents are not by themselves so dispositive of antitrust liability that there is "extreme

---

deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal . . . ." *Id.* at 108. After all, courts "routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system." *Id.* at 108–09. Absent an interlocutory appeal, "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id.* at 109.

need" for reversal of my order to produce the documents "before the case goes to judgment."[5] *See Amexco*, 380 F.2d at 282; *cf. Aggrenox*, 2017 WL 5885664, at *15 ("[E]vidence need not be 'dispositive' in order to be sufficiently 'probative' to show substantial need.") (quoting *Boehringer II*, 778 F.3d at 154; *Gucci Am.*, 271 F.R.D. at 75). Thus, I do not think that my order compelling production of the FTC documents is of such "extraordinary significance" to warrant interlocutory review. *See Amexco*, 380 F.2d at 282.

Even were the November 29th order "of special consequence," *see Mohawk Indus.*, 558 U.S. at 111, an interlocutory appeal would not be appropriate because Boehringer cannot satisfy the three requirements for certification set forth in section 1292(b). I proceed to explain why the statutory requirements are not met.

A. Controlling question of law

For a district judge to certify an order for interlocutory appeal pursuant to section 1292(b), the judge must "be of the opinion that such order involves a controlling question of law." 28 U.S.C. § 1292(b). "A controlling question of law . . . is one that is 'serious to the conduct of the litigation, either practically or legally.'" *In re Lupron Mktg. & Sales Pracs. Litig.*, 313 F. Supp. 2d 8, 9 (D. Mass. 2004) ("*Lupron*") (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)). "Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. "Questions of

---

[5] If Boehringer truly believed that "appeal after final judgment w[ould] not cure [the] erroneous discovery order" here, it could have "def[ied] the order, permit[ted] a contempt citation to be entered against [it], and challenge[d] the order on direct appeal of the contempt ruling." *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981). Boehringer evidently elected to forgo that alternative on December 14–15, 2017, when it complied with my order by producing the FTC documents to Humana. *See* Mem. Supp., Doc. No. 744-1, at 6.

9

personal or subject matter jurisdiction are most commonly appealed under section 1292(b) because resolution of those issues could potentially dispose of the case without need to delve into the merits." *In re Complete Retreats*, 2008 WL 220752, at *2 n.3 (D. Conn. Jan. 23, 2008); *cf. Klinghoffer*, 921 F.2d at 24 ("[W]e have granted certification when the order involved issues of in personam and subject matter jurisdiction.").

"A controlling question of law 'must refer to a pure question of law,'" *HSBC Ltd. v. Brandt*, 2017 WL 6729191, at *4 (S.D.N.Y. Dec. 29, 2017), and "contrasts with a matter for the discretion of the trial court." *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994) (internal quotation marks omitted). As a general matter, discovery rulings are "committed to the district court's discretion" and so "present[] no controlling legal question."[6] *Id.* For example, claims that the district court "abused its discretion in ordering production" of certain documents generally "do[] not create a legal issue." *Id.*; *see United States v. Salter*, 421 F.2d 1393, 1394 (1st Cir. 1970) ("[T]he admissibility of certain evidence on a legally relevant issue . . . is not a controlling question of law.") (internal citation omitted).

"The availability vel non of [a] privilege" to a particular party, however, can be a "controlling question of law." *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096–97 (5th Cir. 1970). Thus, arguments that "files are protected by some privilege," such as "the work product doctrine," have been deemed to "present a controlling legal issue as to the existence of the privilege." *White*, 43 F.3d at 377 n.3. Even then, though, privilege rulings remain inappropriate

---

[6] "The discretionary nature of discovery issues has led at least one court to conclude that discovery orders generally will never involve a controlling question of law." *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994) (citing *McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1506, 1533–34 (D. Conn. 1991)).

10

for interlocutory review when application of the privilege "entails . . . a fact-specific inquiry." *In re WorldCom Sec. Litig.*, 2003 U.S. Dist. LEXIS 22718, at *27 (S.D.N.Y. Dec. 16, 2003).

Were the parties to dispute—as a general matter—the application of the work-product privilege to non-legal business documents created at the behest of counsel, they would indeed present a "'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Century Pac. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (internal quotation marks omitted). But that question is "not novel," *see White*, 43 F.3d at 377 n.3—it was resolved by the Second Circuit in *Adlman* and *Schaeffler*. Instead, the instant dispute concerns whether the FTC documents are fact work product or opinion work product, and (if the former) whether Humana has made sufficient showings of "substantial need" and "undue hardship" to overcome the work-product privilege. Those are, at the very least, "mixed questions of law and fact," resolution of which "would require the Second Circuit to review "this [c]ourt's application of the law to the evidence adduced" in the motion to compel. *Century Pac.*, 574 F. Supp. 2d at 371–72. For example, in order to decide whether the FTC documents were fact work product or opinion work product, the court of appeals would need to consider the testimony of Boehringer's employees before the FTC, and might also need to examine the documents *in camera*. Because the Second Circuit could not "decide [the questions] quickly and cleanly without having to study the record," the present dispute "do[es] not present issues of pure law and . . . [is] not appropriate for interlocutory review." *Id.* at 371–72. Hence, Boehringer has not satisfied the first requirement of section 1292(b).

B. Substantial ground for difference of opinion

To certify an order for interlocutory appeal, the district judge also must "be of the opinion" that the pertinent legal issue presents "substantial ground for difference of opinion." 28

11

U.S.C. § 1292(b). Substantial ground for difference of opinion requires more than "[m]ere disagreement with the . . . decision," *Complete Retreats*, 2008 WL 220752, at *3, and "does not exist merely because there is a death of cases." *White*, 43 F.3d at 378. Instead, the movant "must create substantial doubt about the correctness of the court's order." *Complete Retreats*, 2008 WL 220752, at *3 (internal quotation marks omitted); *see Brandt*, 2017 WL 6729191, at *4 ("[A] substantial ground for a difference of opinion . . . must arise out of a genuine doubt as to the correct applicable legal standard relied on in the order.") (internal quotation marks omitted). Substantial doubt may exist (1) when there are "a sufficient number of conflicting and contradictory opinions," *White*, 43 F.3d at 378, such as "a split among the circuits," *Marriott Int'l Resorts v. United States*, 122 F. App'x 490, 491–92 (Fed. Cir. 2005) (unpublished); or (2) when "the issue is one of first impression," *Complete Retreats*, 2008 WL 220752, at *3 (citing *Klinghoffer*, 921 F.2d at 25), or is "not substantially guided by previous decisions." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 878 (E.D. Mich. 2012). The "substantial ground for difference of opinion" requirement ensures that interlocutory appeal is reserved for "difficult" issues and "close call[s]." *Klinghoffer*, 921 F.2d at 25; *Newsome*, 873 F. Supp. 2d at 878.

Here, Boehringer attempts to create substantial ground for difference of opinion by "manufactur[ing]" a circuit split over the "substantial need" standard. *Cf. Lupron*, 313 F. Supp. 2d at 12. Boehringer asserts that I "applied a more relaxed mere relevance standard" derived from *Boehringer II* rather than the "heightened showing" of "substantial need" required by the Second Circuit's decision in *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 557 (2d Cir. 1967). Quoting my observation that "[t]he meaning of Rule 26(b)(3)'s 'substantial need' requirement is not clear from the plain language of the rule," *Aggrenox*, 2017 WL 5885664, at *12 (quoting *Boehringer II*, 778 F.3d at 154), Boehringer suggests that I certify my order for

interlocutory appeal so that the Second Circuit may "examine how *Republic Gear*, *Adlman*, and the Advisory Committee notes should be reconciled." Mem. Supp., Doc. No. 744-1, at 15.

I previously discussed Boehringer's claimed circuit split in my November 29th order. Then, as now, Boehringer argued that the Second Circuit applies "a higher standard to show 'substantial need'" than does the D.C. Circuit. *See Aggrenox*, 2017 WL 5885664, at *13. The D.C. Circuit apparently agreed, contrasting its own precedent with the Second Circuit's decision in *Republic Gear Co. See id.* (quoting *Boehringer II*, 778 F.3d at 156). Nonetheless, I continue to think that the two circuits' standards do not dramatically differ.

Although *Republic Gear Co.* held that, to be discoverable, work product must be "'essential to the preparation of one's case' . . . on [a] critical issue," 381 F.2d at 557–58 (quoting *Hickman*, 329 U.S. at 511), the Second Circuit went on to reason that "[s]uch necessity may arise when the documents would 'give clues to the existence or location of relevant facts . . . , [are] useful for purposes of impeachment or corroboration . . . , [or] where the witnesses [whose information is contained in the documents sought] are no longer available or can only be reached with difficulty.'" *Id.* at 557 (quoting *Hickman*, 329 U.S. at 511). The Court required a "heightened showing" to discover work product only insofar as "discovery [would] not [be] permitted merely to aid opposing counsel 'to help prepare himself . . . and to make sure that he has overlooked nothing.'"[7] *Id.* (quoting *Hickman*, 329 U.S. at 513). Thus, as I stated in my November 29th order, "the full language of *Republic Gear Co.* indicates a somewhat less demanding standard than the 'essential to the preparation of . . . [the] case' phrase would

---

[7] Indeed, *Republic Gear Co.* derived its standard for discovery of work product from that set forth in *Hickman v. Taylor*, which the D.C. Circuit characterized as "remarkably similar to the relevance standard under Rule 26(b)(1)." *Boehringer II*, 778 F.3d 142, 156 (D.C. Cir. 2015).

13

suggest,"[8] *Aggrenox*, 2017 WL 5885664, at *13 n.9 (quoting *Republic Gear Co.*, 381 F.2d at 557)—a standard no more rigorous than that of the D.C. Circuit.

But even assuming, *arguendo*, that the Second Circuit applies a stricter test for "substantial need" than does the D.C. Circuit, I expressly held that the Second Circuit's standard was met. I relied upon decisions such as *Gucci America v. Guess?, Inc.*—cited by Boehringer in its papers, *see* Mem. Supp. Doc. No. 744-1, at 14—which held that "[a] substantial need exists 'where the information sought is "essential" to the party's defense, is "crucial" to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Aggrenox*, 2017 WL 5885664, at *12 (quoting *Gucci Am.*, 271 F.R.D. at 74–75). After examining the FTC documents *in camera*, I concluded that they have "unique value" and "carr[y] great probative value on contested issues," because "[t]he 'contemporaneous financial evaluations' in the FTC documents . . . 'provide unique information about Boehringer's reasons for settling in the manner that it did.'" *Id.* at *14 (quoting *Boehringer II*, 778 F.3d at 158). That is enough to make the documents "essential to the preparation of [Humana]'s case" and discoverable under *Republic Gear Co.*, 381 F.2d at 558.

Boehringer also attempts to conjure up substantial grounds for difference of opinion by relitigating whether the FTC documents are fact work product or opinion work product. That dog will not hunt. First, there is no circuit split: in deeming the FTC documents to be fact work

---

[8] *Republic Gear Co.* also did not distinguish between fact work product and opinion work product, a difference "emphasized in more recent Second Circuit cases." *Aggrenox*, 2017 WL 5885664, at *13 (D. Conn. Nov. 29, 2017) (citing *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183–84; *United States v. Adlman*, 134 F.3d 1194, 1197, 1204 (2d Cir. 1998)). The nature of the documents at issue in *Republic Gear Co.*—files of a lawyer who had "professionally represented" the defendants at the time of the actions forming the basis of the suit—suggests that they "may have been opinion work product." *Id.* at *13 n.10.

14

product, *Boehringer II* "specifically relied upon decisions that followed *Adlman* and other Second Circuit cases."[9] *Aggrenox*, 2017 WL 5885664, at *9 n.8. Far from being "inconsistent with" one another, "[t]he Second Circuit and the D.C. Circuit agree that [ ] 'factual material'"—such as "the result of a factual investigation"—"is not entitled to the '[s]pecial treatment for opinion work product.'"[10] *Aggrenox*, 2017 WL 5885664, at *6, *10 (quoting *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183; *Adlman*, 134 F.3d at 1197).

Second, and more importantly, my determination that the FTC documents are fact work product "involve[d] application of well-known law to commonplace fact, and rested on the district judge's appraisal of facts and exercise of discretion." *Amexco*, 380 F.2d at 283; *see also Aggrenox*, 2017 WL 5885664, at *11 (holding that "*Adlman* and *Schaeffler* [were] inapposite . . . , because the FTC documents do not 'propose[ ] possible legal theories or strategies' or 'ma[ke] predictions about the likely outcome of litigation'") (quoting *Adlman*, 134 F.3d at 1196). The

---

[9] For example, the D.C. Circuit ultimately took from *Adlman* the statement that "[w]here a document would have been created 'in substantially similar form' regardless of the litigation, work product protection is not available." *Boehringer II*, 778 F.3d at 149 (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010), which quoted *Adlman*, 134 F.3d at 1195). Likewise, the D.C. Circuit derived from *In re John Doe Corp.*, 675 F.2d 482, 493 (2d Cir. 1982), the principle that "[w]here an attorney's mental impressions are those that 'a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description "legal theory,"' those impressions are not opinion work product." *Boehringer II*, 778 F.3d at 153 (quoting *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 11 (D.D.C. 2008), which quoted *In re John Doe Corp.*, 675 F.2d at 493).

[10] Boehringer also argues that I "incorrect[ly]" applied collateral estoppel to whether the FTC documents were fact work product or opinion work product. Mem. Supp., Doc. No. 744-1, at 20. Boehringer asserts that the legal issues are not "identical" because "the context for the D.C. courts' decisions was a federal agency's pre-complaint investigation," rather than this case's "private litigant post-complaint discovery request." *Id.* I frankly cannot understand Boehringer's suggestion that the identity of the plaintiff somehow affects whether documents sought in discovery express facts or opinions. Unlike the substantial need component—which depends on the need shown by a particular plaintiff, and for which I did not apply collateral estoppel—the FTC documents are the same regardless of the party who asks for them.

"sole question" on an interlocutory appeal would be "the correctness of [my] determination," *see Atl. City Elec. Co. v. A.B. Chance Co.*, 313 F.2d 431, 434 (2d Cir. 1963) (per curiam), and "interlocutory orders are not appealable 'on the mere ground that they may be erroneous.'" *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981). "Questions of this sort, involving the discretion of the judge in conducting pretrial discovery proceedings, should not be reviewed by an appellate court at this stage of a litigation except where there has been a manifest abuse of discretion.'" *Atl. City Elec. Co.*, 313 F.2d at 434. Boehringer does not contend that I abused my discretion, but rather that—at most—different judges might disagree with regard to whether the FTC documents contain factual material or opinions. That is not enough to justify interlocutory review of a "matter[] . . . [that] rest[s] primarily in the wise discretion of experienced trial judges." *Amexco*, 380 F.2d at 282.

Interlocutory appeals are intended for "issues . . . of first impression" and "close call[s]." *Klinghoffer*, 921 F.2d at 25; *Newsome*, 873 F. Supp. 2d at 878. As I previously observed, this discovery dispute was "legally straightforward," Conf. Mem. & Order, Doc. No. 738, at 2, and I do not believe that my decision entailed a particularly "close call." *See In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 4646822, at *1 (S.D.N.Y. May 14, 2015). Thus, Boehringer has not satisfied the second requirement of section 1292(b).

C. Materially advance the ultimate termination of the litigation

Finally, in order to certify an order for interlocutory appeal, the court must "be of the opinion . . . that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "An appeal will advance the termination of the litigation if it advances the time for trial or shortens the time required for trial." *Complete Retreats*, 2008 WL 220752, at *4. "Courts place particular weight on this third factor," *Brandt*,

16

2017 WL 6729191, at *4, which "aim[s] to . . . sav[e] trial court time by avoiding fruitless litigation."[11] *Koehler*, 101 F.3d at 866.

Because discovery orders in most cases are "substantially collateral to the substantive legal issues of the case," it generally is "difficult to believe . . . that an immediate appeal" from such an order "will materially advance the termination of the litigation." *Stout*, 882 F. Supp. at 778. This order is no different. I previously noted that the dispute over the FTC documents was "substantively tangential to the primary questions in th[e] case." Conf. Mem. & Order, Doc. No. 738, at 2. For that reason, I "think it quite unlikely that an immediate appeal may materially advance the termination of this lawsuit." *Isra Fruit v. Agrexco Agr. Export Co.*, 804 F.2d 24, 25 (2d Cir. 1986) (Newman, J.). Reversal of my order will not obviate the need for a trial, nor will it appreciably "affect the scope of the evidence" at this late stage of the litigation. *Cf. Garner*, 430 F.2d at 1096–97; *see also White*, 43 F.3d at 378–79 ("When litigation will be conducted in substantially the same manner regardless . . . , the appeal cannot be said to materially advance the ultimate termination of the litigation."). I conclude that permitting interlocutory review of my "discretionary discovery order"—which is "merely an intermediate step" in this complex case— "would thwart rather than effectuate the purpose of 1292(b) to 'materially advance the ultimate termination of the litigation." *Atl. City Elec. Co.*, 313 F.2d at 434.

---

[11] Boehringer asserts that "[i]n 'so-called big cases,' courts may grant certification more freely." Mem. Supp., Doc. No. 744-1, at 11 (quoting *In re WorldCom Sec. Litig.*, 2003 U.S. Dist. LEXIS 22718, at *26 (S.D.N.Y. Dec. 16, 2003)). It is true that "'big' or 'complex' cases" are more likely to satisfy section 1292(b)'s goal that an "interlocutory appeal[] . . . avoid protracted litigation." *See Mohamed v. Marriott Int'l*, 1996 WL 741596 at *3 (S.D.N.Y. Dec. 27, 1996). But the size of the litigation does not, by itself, weigh in favor of certifying an interlocutory appeal. *See, e.g.*, *Amexco*, 380 F.2d 277, 278–79 (2d Cir. 1967) (denying "interlocutory review of a discovery order in a so-called 'big case'").

Boehringer argues that "appellate review also would materially advance this litigation because '[a] reversal of the [November 29 Order] would require [Plaintiffs] to retain new counsel' and then proceed to retry the case." Mot. Supp., Doc. No. 744-1, at 22 (quoting *Telectronics Proprietary v. Medtronic, Inc.*, 690 F. Supp. 170, 176 (S.D.N.Y. 1987)). That argument is unpersuasive. Not only is it far from certain that reversal would require Plaintiffs to retain new counsel, *cf. Tyco Healthcare Grp. v. Ethicon Endo-Surgery*, 2011 WL 12910725, at *5 (D. Conn. Dec. 30, 2011) (stating that "[d]isqualification is disfavored in the Second Circuit" and that "the moving party's burden of proof is a high one."), but also Humana's attorneys already have reviewed the FTC documents. Under Boehringer's theory, Humana's counsel already would need to be disqualified in the event of reversal. Hence, an interlocutory appeal seems unlikely to produce "any appreciable saving of time." *Id.* at 26.

I previously certified two orders for interlocutory appeal in this case—both of which the Second Circuit declined to take up—because "the issues . . . ha[d] the potential to be dispositive of at least a substantial portion of the claims," *Aggrenox*, 2015 WL 4459607, at *1 (D. Conn. July 21, 2015), and reversal would cause "the litigation [to] effectively start anew." *Aggrenox*, 199 F. Supp. 3d 662, 669–70 (D. Conn. 2016). Neither of those reasons holds for my November 29th order, an interlocutory appeal of which "will not in any measurable way affect the law that is applied to the substantive issues of the case or materially advance the ultimate termination of the litigation." *Stout*, 882 F. Supp. at 779. I remain unwilling to "hold this litigation in abeyance for a year or more" while Boehringer pursues "duplicative" appeals on a frankly "tangential" issue. Conf. Mem. & Order, Doc. No. 738, at 2; *FTC v. Boehringer Ingelheim Pharm.*, 241 F. Supp. 3d 91, 98 (D.D.C. 2017) ('*Boehringer IV*'). Therefore, I hold that Boehringer has not satisfied the third requirement of section 1292(b).

18

**IV.    Conclusion**

This discovery dispute does not present "exceptional circumstances" that "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer*, 921 F.2d at 25. In addition, Boehringer has not met any of the statutory requirements for interlocutory review under section 1292(b). Consequently, I deny Boehringer's motion to certify my November 29th order for interlocutory appeal.

So ordered.

Dated at Bridgeport, Connecticut, this 12th day of February 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge