```
 1                     UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF CONNECTICUT
 2
     - - - - - - - - - - - - - - - - x
 3
     IN RE:                           :  No. 3:14-md-2516(SRU)
 4                                    :  915 Lafayette Boulevard
     AGGRENOX ANTITRUST LITIGATION    :  Bridgeport, Connecticut
 5                                    :
                                      :  March 2, 2018
 6
     - - - - - - - - - - - - - - - - x
 7

 8

 9

10                     TELEPHONE STATUS CONFERENCE

11

12

13   B E F O R E:

14        THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

15

16

17

18

19

20

21

22

23              Sharon L. Masse, RMR, CRR
                  Official Court Reporter
24                915 Lafayette Boulevard
               Bridgeport, Connecticut  06604
25                 Tel: (860)937-4177
```

```
 1  A P P E A R A N C E S:

 2
        FOR THE PLAINTIFFS:
 3
            LOWEY DANNENBERG, P.C.
 4              44 South Broadway, Suite 1100
                White Plains, New York  10601
 5          BY: PETER D. ST. PHILLIP, JR., ESQ.

 6          HILLIARD & SHADOWEN LLP
                2407 S. Congress Avenue
 7              Suite E 122
                Austin, Texas  78701
 8          BY: STEVEN D. SHADOWEN, ESQ.

 9          MILLER LAW LLC
                115 S. LaSalle Street
10              Suite 2910
                Chicago, Illinois  60603
11          BY: MARVIN A. MILLER, ESQ.

12

13      FOR THE DEFENDANTS:

14          WHITE & CASE
                1155 Avenue of Americas
15              New York, New York  10036
            BY: ROSS E. ELFAND, ESQ.
16

17          GOODWIN PROCTER LLP
                100 Northern Avenue
18              Boston, Massachusetts  02210
            BY: CHRISTOPHER T. HOLDING, ESQ.
19

20

21

22

23

24

25
```

1             (Proceedings commenced at 5:03 p.m.)

2             THE COURT:  Stefan Underhill.

3             MR. MILLER:  Good afternoon, Your Honor.

4             THE COURT:  'Afternoon.  We're on the record.  I understand there's several of you on the phone.  It may make sense just to have everybody identify themselves when they speak, and that way the record will be clear.

8             So we have several things to take up.  I think what I'd like to do is take up the merits of Humana's objection, which I think will be the easiest way to deal with the motion to strike, because my understanding is that we do not have a situation in the Aggrenox case that would be analogous to the *Central States* decision upon which Humana is relying, quite simply because we have a situation where there are quite a number of plaintiffs here who do have standing and who appear to be adequate representatives of a class, and under those circumstances I'm not aware of any authority that says that the parties are not free to settle not only the claims that are presently pending but also other claims at the same time.

21            So my intention, unless I'm convinced otherwise, is to overrule Humana's objection and deny as moot the motion to strike.

24            So perhaps I will hear from Humana first.

25            MR. ST. PHILLIP:  Thank you, Your Honor.  Peter

1   St. Phillip from Humana.

2           I hear your ruling.  We think that the Court's
3   prior decision on Article III was fairly clear as to these
4   issues, and it's our view -- and I understand that the
5   Court doesn't share it -- that *Central States* in those
6   circumstances requires that the Court not act, including
7   not act as to approving a settlement over those states.

8           So, you know, that's the nature of the objection
9   at this point, and basically what we have to say is in our
10  papers, so we'll rest on those.

11          THE COURT:  All right.  But you would agree,
12  wouldn't you, that the *Central States* case had
13  circumstances where there was no determination by the
14  district court that any plaintiff had standing to bring
15  any of the claims in litigation there?

16          MR. ST. PHILLIP:  Well, that's correct.  What
17  the Court said was had to -- it didn't have sufficient
18  facts to determine whether there was Article III
19  standing --

20          THE COURT:  For any --

21          MR. ST. PHILLIP:  -- as to --

22          THE COURT:  For any claim.

23          MR. ST. PHILLIP:  For anyone, correct.

24          THE COURT:  Right.

25          MR. ST. PHILLIP:  But, you know, in connection

1   with the difference between one claim and another, the
2   Supreme Court has been pretty clear that you can't
3   evaluate that standing in gross, and --
4              THE COURT:  Right, right.  Okay, so maybe you're
5   misunderstanding my point.  I'd like to hear if you have
6   authority on this proposition.
7              Your argument is that when there is a case with
8   proper standing on behalf of some plaintiffs versus the
9   defendants, the parties cannot settle a claim either that
10  hasn't been brought in the case or as to which they would
11  not have -- the individual plaintiffs would not have
12  standing to bring that claim, which I don't understand to
13  be the case.
14             I mean, it's commonplace that parties have
15  general releases that release all claims from the
16  beginning of the world to the date of these presents,
17  which would include quite a number of claims potentially
18  beyond those brought in the lawsuit.  So I guess if you
19  have authority for the proposition that parties are
20  limited to settling the claims that are active in the
21  litigation at the moment of the settlement, I'd be
22  interested in hearing that.
23             MR. ST. PHILLIP:  Well, Your Honor, it's our
24  view that if there isn't, you know, a -- if the Court does
25  not have the Article III standing over a particular claim,

1    then it can't approve the settlement of those claims.
2    That's the -- you know, our interpretation of *Central*
3    *States,* and it's our interpretation of the limited power
4    of the federal courts and having to evaluate the standing
5    as to each claim, which comes from the Supreme Court.
6              THE COURT:  Right, but there's a difference,
7    isn't there, between litigating a claim and settling a
8    claim?  That's my point.  There's no doubt this court has
9    subject matter jurisdiction, and the plaintiffs have
10   standing to raise the claims that are in the case at the
11   moment.  So I am not a court without the authority, the
12   power of the federal -- under the Constitution to hear
13   this claim, and now the question is when I have a valid
14   claim and I have subject matter jurisdiction over that
15   claim, can the parties settle claims that are not
16   presently pending before the Court?
17             MR. ST. PHILLIP:  Yes, that's right.  You
18   certainly have the power to adjudicate and settle the
19   claims for which the plaintiffs have made --
20             THE REPORTER:  For which the plaintiffs have
21   made...?
22             THE COURT:  "Have made purchases," I think is
23   what you said.
24             MR. ST. PHILLIP:  That's correct, Your Honor.
25   Where I think we have a difference of opinion is in

1    connection with either litigating or settling claims for
2    which there are no purchases under state law, and I think
3    under Article III my understanding of the Court's judicial
4    power as to those claims, that it can't entertain the
5    litigation and/or settlement of those claims if it doesn't
6    have Article III power as to those particular claims.  And
7    I think that's, you know, what the defendants were citing
8    at the motion to dismiss, the Supreme Court authority as
9    to discussing Article III standing claim by claim and --
10              THE COURT:  Right, to litigate.  To litigate.
11   Right.
12              MR. ST. PHILLIP:  Well, Your Honor, I think if
13   you don't have Article III standing to litigate, you don't
14   have Article III standing to settle either.
15              THE COURT:  Well, that's what I'm asking you for
16   precedent for.  *Central States* was a situation in which
17   the Court had no subject matter jurisdiction over any
18   claim.  It was acting as -- without any power.  That's not
19   my situation.  Do you have a case where a court has
20   subject matter jurisdiction and is unable to permit the
21   parties to settle claims that are not presently pending
22   before it?
23              MR. ST. PHILLIP:  Your Honor, I did not cite
24   that authority.  I could -- I could provide some or seek
25   to provide some if Your Honor would allow it.

1              THE COURT:  But --

2              MR. ST. PHILLIP:  But it is my understanding,

3    though, that, you know, it's not -- the Article III power

4    does not differentiate between whether you have the

5    authority to entertain the claim at litigation or its

6    settlement.  If you don't have the Article III power to

7    entertain the claim, you know, I believe the Supreme Court

8    and the Second Circuit is clear on that, that you must

9    dismiss it.  You can't do anything else.

10             THE COURT:  Right, absolutely; and, in fact, I

11   did that.  And so here we are.  I've got dismissed claims.

12   And it's your position, apparently, that the parties to

13   this case cannot dismiss -- cannot settle dismissed

14   claims.  In other words, they cannot enter into an

15   agreement to settle anything other than a claim that is

16   actively pending before the Court.  That's not my

17   understanding of the law.

18             I think the parties are permitted, so long as

19   the Court has authority, the parties are permitted -- to

20   hear a case, the parties to that case can resolve whatever

21   they choose to resolve.

22             MR. ST. PHILLIP:  I think we have a disagreement

23   as to --

24             THE COURT:  All right.

25             MR. ST. PHILLIP:  As to that.

1             THE COURT:  All right.

2             MR. ST. PHILLIP:  And, you know, if Your

3   Honor -- that is our position, Your Honor; and if Your

4   Honor would like me to provide additional authority, I can

5   try, but -- or I can reserve it to final -- final

6   approval, Your Honor.

7             THE COURT:  I don't want to hold this up any

8   longer, frankly.  If you find that authority, I'm always

9   happy to look at it.

10            MR. ST. PHILLIP:  Okay.

11            THE COURT:  Okay.  So, in sum, I'm going to

12  overrule the objection and deny as moot the motion to

13  strike, unless anybody else wants to be heard on those

14  issues.

15            MR. ELFAND:  No, Your Honor.

16            THE COURT:  Hearing nothing.  All right, so

17  let's do this then.  I'm prepared, in effect, to grant

18  preliminary approval of the proposed settlement.  I did

19  have a few issues that I wanted to quickly run over with

20  you that I think would require minor changes.

21            The principal concern I have is with respect to

22  those -- the process for submission of objections, and

23  really I have two concerns there.

24            The first concern is in the event -- given the

25  potential that there may be a number of objections, I

Case 3:14-md-02516-SRU   Document 795   Filed 04/26/18   Page 10 of 16

10

| | |
|---|---|
| 1 | don't want the Clerk's Office here overwhelmed, frankly, |
| 2 | with receiving objections.  That's point one. |
| 3 | Point two is that the current process for |
| 4 | objecting is somewhat cumbersome because it requires not |
| 5 | only filing with the Court but sending copies out to |
| 6 | counsel, and it seems to me that when there's a claims |
| 7 | administrator that's going to be part of this proposed |
| 8 | settlement, the claims administrator can receive the |
| 9 | objections, can make copies or provide copies to |
| 10 | interested counsel and can, at some date in advance of the |
| 11 | final fairness hearing, can submit in a single filing the |
| 12 | compiled objections.  I don't know if anybody has a |
| 13 | problem with that.  I've done that in other cases.  I just |
| 14 | think it's, one, easier on objectors; and, two, easier on |
| 15 | the Clerk's Office here. |
| 16 | MR. SHADOWEN:  Your Honor -- |
| 17 | MR. MILLER:  Judge, this is -- |
| 18 | MR. SHADOWEN:  -- Steve Shadowen on behalf of |
| 19 | the end-payor class, and that makes eminent sense, and we |
| 20 | can revise the formal notice and the other papers |
| 21 | accordingly and resubmit them. |
| 22 | THE COURT: Very good.  Okay.  Anybody have a |
| 23 | concern with that approach? |
| 24 | MR. ELFAND:  No concerns for the Boehringer |
| 25 | defendants, Your Honor. |

1             THE COURT:  Okay, great.

2             There's also reference -- I'm looking now at the

3    motion, and there's kind of a highlighted insert at the

4    end of paragraph 16 that says "insert the dedicated

5    website."  I suppose we ought to get into the preliminary

6    ruling that website, and obviously we can submit the

7    dates.  So has that website been created yet?

8             MR. SHADOWEN:  It has, Your Honor.

9             THE COURT:  Okay.  I think we probably have it

10   somewhere.  I was looking --

11            MR. MILLER:  Your Honor, this is Marvin Miller.

12   It's on page 1 of the notice at the bottom.

13            THE COURT:  Okay, great.  All right, we can grab

14   that then.  I'm looking at Notice of Class Action and

15   Proposed End-Payor Settlement.  Maybe I'm just not seeing

16   it.

17            MR. MILLER:  Let me see here.  Maybe I'm on the

18   wrong page.

19            THE COURT:  I'm looking at Docket Entry 748-3

20   and --

21            MR. MILLER:  Oh, I'm looking at 748-5.

22            THE COURT:  Yes, and actually perhaps is it

23   inreaggrenoxantitrustlitigation.com?  That appears at the

24   bottom of page 5.

25            MR. MILLER:  Yes.

1           THE COURT:  All right, great.

2           MR. MILLER:  Yes.  That's it, Judge.

3           THE COURT:  Okay.  So that's in the notice I'm
4  looking at.

5           One thing I wanted to point out is on page 2 at
6  the bottom, there's a table of contents, and Items 1
7  through 9 are omitted, so we probably ought to get those
8  in there.  And there's one or two typos in the notice,
9  which I can either tell you about or -- I'm assuming
10 somebody on your end is going to revise this and get it to
11 us or give it to us in Word so that we can revise it and
12 put the dates in, and so forth?

13          MR. SHADOWEN:  Yes, we will do the revisions,
14 Your Honor.

15          THE COURT:  You'll do it?  Okay.

16          Let me just tell you a couple things real quick.
17 I mentioned 1 through 9, page 2.  There's several places
18 where we have to insert dates.  You can work with my law
19 clerk, and we'll provide those dates.

20          The bottom of page 5 where there is a bolded
21 website set forth, I think the "fully describe" should be
22 "fully describes," with an "s."

23          And then on page 13, paragraph 23, right after
24 the bolded area for -- the highlighted area for the final
25 date, I think it should say "Eastern Time" rather than

1  just "Eastern."  Presumably that's going to be day and
2  time.
3          MR. SHADOWEN:  Got it.
4          THE COURT:  Got it?  All right.
5          Those were the items that I noticed that needed
6  to be addressed.  Obviously, the dates have to be put in.
7          Give me one second.  I just want to make sure I
8  didn't have anything else.
9          Yes, those are the ones I noticed.
10         So I'm happy to grant the preliminary approval.
11 We'll set some dates, if you can work with my law clerk to
12 set those up.  And you guys will revise the notice and get
13 that out.
14         Anything else we need to be thinking about in
15 terms of logistics of the preliminary approval?
16         MR. ELFAND:  Yes, Your Honor, one thing -- this
17 is Ross Elfand for the Boehringer defendants.
18         Just to go back to the requirement that the
19 administrator compile all of the objections, defendants
20 would like to have a provision in that amended -- the
21 amended order that defendants receive notice within a
22 certain period of time as those objections come in, rather
23 than waiting until they're all compiled.
24         THE COURT:  Absolutely.  I mean, obviously, I
25 think that's appropriate, and the claims administrator

1  presumably will be in a position just to send those out as
2  soon as they come in, either by scanning them and then
3  emailing them out, or by mailing them or whatever,
4  whatever makes sense.  But I agree with you; they ought to
5  be shared with all counsel who want to receive them, very
6  promptly upon receipt by the claims administrator.
7           MR. ELFAND:  Great.  Thank you, Your Honor.
8           THE COURT:  All right.  Unless there's anything
9  else, I'm just going to suggest that somebody contact
10 Keith Jamieson in my chambers to work through the dates,
11 frankly, probably sometime tomorrow.  He and I need to
12 talk through when we can do the fairness hearing, and then
13 we can get those dates for all of you.  All right?
14          MR. MILLER:  Judge, this is Marv Miller.  Are
15 you talking about tomorrow or Monday?
16          THE COURT:  Gosh, you guys not working tomorrow?
17          MR. MILLER:  I am.  I just want to make sure
18 that --
19          THE COURT:  No, no.
20          MR. MILLER:  -- somebody in your office is.
21          THE COURT:  Well, the way it works around here,
22 I'll probably be here working, but my clerks won't, so...
23          MR. HOLDING:  Are you not flooding in
24 Bridgeport?
25          THE COURT:  I've been in trial all day, so I

1  have no idea.  It's been pretty nasty.  We do have a leak
2  in the courtroom, but other than that, I'm not sure what's
3  going on out there.
4          No, seriously, if you could touch base with him
5  on Monday, that would be great.
6          MR. MILLER:  Okay.
7          THE COURT:  All right.  Everybody have a great
8  weekend, and be safe if you're in this storm.
9          ALL COUNSEL:  Thank you, Your Honor.
10          THE COURT:  Take care.  Bye-bye.
11          (Proceedings adjourned at 5:22 p.m.)

C E R T I F I C A T E

No. 3:14-md-2516(SRU)
In Re:  Aggrenox Antitrust Litigation

      I, Sharon L. Masse, RMR, CRR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

      April 26, 2018

      <u>/S/ Sharon L. Masse</u>
      Sharon L. Masse, RMR, CRR
      Official Court Reporter
      915 Lafayette Boulevard
    Bridgeport, Connecticut  06604
        Tel: (860)937-4177