UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE AGGRENOX ANTITRUST LITIGATION | : : : Docket No. 3:14 MD 2516 (SRU) : : |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR CLASS ACTIONS | : : : : : : |

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

    I.      Factual and Procedural Background ........................................................... 3

    II.     Terms of Settlement ................................................................................... 5

    III.   Legal Standards Governing Final Approval of Settlement ........................ 6

    IV.   The Settlement Is Fair, Reasonable and Adequate ..................................... 7

         A.  The Parties Engaged in Good Faith, Arms'-Length Negotiations ..................... 7

         B.  The Parties Had the Benefit of Extensive Discovery ............................................ 7

         C.  Experienced Class Counsel Support the Settlement ............................................. 7

         D.  The Settlement Has Been Well Received .................................................................. 8

    V.     The Settlement Provides Substantial Benefits to the Classes .................... 9

    VI.   Additional *Grinnell* Factors Support Approval ......................................... 9

    VII.  The Notice Program Was Robust .............................................................. 10

    VIII. The Court Should Approve the Plan of Allocation ................................... 12

    IX.   The CAFA Requirements have been satisfied. .......................................... 13

    X.     The Court should approve the requested attorneys' fees, reimbursement of expenses and requested service awards for class representatives. ........................... 13

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Alleyne v. Time Moving & Storage Inc.*,
    264 F.R.D. 41 (E.D.N.Y. 2010) ............................................................................................. 12

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013) ..................................................................................................... 6

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................................................ 6, 7, 9, 10

*Clark v. Ecolab, Inc.*,
    Nos. 07–CV–8623, 04–CV–4488, 06–CV–5672,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ......................................................................... 8

*Hill v. State Street Corp.*,
    No. 09–12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ....................................................... 9

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................... 12

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liability Litig.*,
    296 F.R.D. 351 (E.D. Pa. 2013) ............................................................................................... 8

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002) ............................................................................................... 13

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) .............................................................................................. 11

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2005) .................................................................................... 12

*In re Processed Egg Prods.*,
    284 F.R.D. 249 (E.D. Pa. 2012) ............................................................................................... 9

*In re Remeron End-Payor Antitrust Litig.*,
    No. 02-cv-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ................................................ 11

*In re Se. Milk Antitrust Litig.*,
    No. 2:08-md-1000, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ......................................... 8

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
   238 F. Supp. 2d 480 (E.D.N.Y. 2002) ................................................................. 12

*In re Volkswagen & Audi Warranty Extension Litig.*,
   273 F.R.D. 349 (D. Mass. 2011) ......................................................................... 11

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002) ............................................................................ 13

*Kelen v. World Fin. Network Nat. Bank,*
   302 F.R.D. 56 (S.D.N.Y. 2014) ............................................................................ 8

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ................................................................................. 6

*Nichols v. SmithKline Beecham Corp.*,
   No. 00-cv-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ......................... 11, 13

*Rolland v. Celluci,*
   191 F.R.D. 3 (D. Mass. 2000) ............................................................................... 8

*Vista Healthplan, Inc. v. Warner Holdings Company III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007) ........................................................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) .............................................................................. 6, 10

**Statutes**

28 U.S.C. § 1715 ..................................................................................................... 13

28 U.S.C. § 1715(d) ............................................................................................... 13

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... 10, 11, 12

Fed. R. Civ. P. 23(c)(2) .......................................................................................... 11

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 12

Fed. R. Civ. P. 23(e) ........................................................................................... 6, 10

Fed. R. Civ. P. 23(e)(1) .......................................................................................... 10

Fed. R. Civ. P. 23(e)(2) ........................................................................................................6

**<u>Other Authorities</u>**

William B. Rubenstein, *Newberg on Class Actions*, § 8:15 (5th ed. 2011) ................................10

## INTRODUCTION

End-Payor Class Plaintiffs,[1] on behalf of themselves and the certified End-Payor Class, have entered into a settlement agreement with Defendants Boehringer and Teva.  On March 6, 2018, this Court entered an Order (the "Preliminary Approval Order") preliminarily approving the settlement, certifying a settlement class, approving the proposed Notice Plan, appointing a notice administrator, and setting the deadlines for the fee application, for objections and requests for exclusion, and for the final approval briefing and hearing.  ECF No. 766.

As described more fully in the accompanying E. Miller Declaration, the Notice Administrator carried out the approved Notice Plans within the time periods set by the Court for completing Notice.  As ordered, the End-Payor Class Plaintiffs filed their application for attorneys' fees, expenses and class representative service awards on April 14, 2018.  ECF No. 786. Having fulfilled their obligations regarding notice and the filing of the fee application, and because the settlement is fair, adequate and reasonable, End-Payor Class Plaintiffs now seek final approval of the settlement, an award of attorneys' fees and expenses and the grant of service awards for the class representatives.

---

[1] A.F. of L. – A.G.C. Building Trades Welfare Plan; AFSCME District Council 47 Health and Welfare Fund; AGC-International Union of Operating Engineers Local 701 Health & Welfare Trust Fund; International Union of Operating Engineers Local 49 Health & Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Man-U Service Contract Trust Fund; NECA-IBEW Welfare Trust Fund; Painters District Council No. 30 Health & Welfare Fund; Pipefitters Union Local No. 537 Health & Welfare Fund; Plumbers and Pipefitters Local 178 Health & Welfare Trust Fund; School Cafeteria Employees Local No. 634 Health and Welfare Fund; Twin City Iron Workers Health and Welfare Fund; United Food and Commercial Workers Local 1776 & Participating Health and Welfare Fund; Welfare Plan of the International Union of Operations Engineers Locals 137, 137A, 137B, 137C, and 137R; The Electrical Workers' Insurance Fund; and Sergeant's Benevolent Association Health & Welfare Fund (collectively "Indirect Purchaser Class Plaintiffs," "named Plaintiffs," "End Payor Class Plaintiffs" or "Plaintiffs").

Under the terms of the settlement, which is memorialized in a Settlement Agreement (the "Settlement Agreement" (ECF No. 748-3)), the Defendants agreed to pay the class $54,000,000, subject to a pro rata draw down of the Settlement Fund based on the percentage of the class that excluded themselves from the settlement.  On June 22, 2018, in accordance with ¶ 5 of the Settlement Agreement, the opt out draw down was determined, and the Defendants have deposited the net settlement, $50,229,193 into a Settlement Fund.[2]  That Settlement Fund will be available for distributions to eligible members of the End-Payor Class, subject to deductions for payment of reasonable attorneys' fees, expenses, and incentive awards approved by the Court. Settlement Agreement ¶¶ 5, 8, 11, 13. End-Payor Class Plaintiffs have agreed to release and dismiss with prejudice the End-Payor Class's claims against the Defendants.  *Id.* ¶ 14.

The parties agreed to the Settlement after nearly four years of hard-fought litigation, including fact discovery, motions to dismiss, significant discovery disputes, and motions for interlocutory appeals.[3]  The Settlement was reached approximately one month before the close of discovery.  The Settlement is the product of good faith, arms'-length negotiations among experienced counsel.  Robust notice was disseminated to the End-Payor Settlement Class in accordance with the Notice Plan previously approved by the Court, and members of the Class were given the opportunity to opt out or object to the Settlement.  *See* Supplemental Declaration of Eric J. Miller ("E. Miller Decl.," attached as Exhibit 1 to the Declaration of Steve D. Shadowen ("Shadowen Decl.") in Support of End-Payor Class Plaintiffs' Motion for Final

---

[2] The draw-down and net settlement amount assume the opt-out Insurers' Administrative Services Only clients remain in the Class.  *See* ECF No. 804.

[3] The history of this case is described in detail in the Joint Declaration of Marvin Miller, Renae Steiner and Steve Shadowen, recently filed in connection with EPPs' motion for attorneys' fees. ECF No. 787.

Approval) ¶¶ 4-13.  Co-Lead Class Counsel received one objection to the Settlement and no objections to their request for attorneys' fees, reimbursement of expenses or request for service awards.   Shadowen Decl. ¶¶ 4-7.

In its Preliminary Approval order, the Court found that the proposed settlement "was arrived at by arm's-length negotiations by highly experienced counsel after years of litigation, falls within the range of possibly approvable settlements, and is hereby preliminarily approved, subject to further consideration at the Fairness Hearing provided for below." ECF No. 766 at ¶10.

Now, End-Payor Class Plaintiffs respectfully request that the Court enter an Order granting final approval of the proposed Settlement.  The Settlement confers over $50 million to the End-Payor Class with no reversion to Defendants and eliminates the expense and uncertainty of continued litigation.  The settlement is well within the range of acceptable negotiated outcomes, is fair, adequate and reasonable and should be approved.

## I.  Factual and Procedural Background

Beginning in November 2013, End-Payor Class Plaintiffs filed several class actions, which were then consolidated in June 2014, alleging that Boehringer and Teva unlawfully delayed the introduction of generic versions of the brand name prescription drug Aggrenox.  *See* ECF No. 263, Consolidated Amended Class Action Complaint ("CAC").  End-Payor Class Plaintiffs allege that they paid more for Aggrenox and/or its AB-rated generic equivalents than they would have paid absent Defendants' conduct.  *See, e.g., id.* ¶ 9.  Defendants denied End-Payor Class Plaintiffs' allegations of unlawful or wrongful conduct, denied that any of the conduct challenged by End-Payor Class Plaintiffs caused any damage, and have asserted a number of defenses to End-Payor Class Plaintiffs' claims.  *See* ECF Nos. 515 & 517.

The Settlement Agreement was executed on December 22, 2017. As of the date of the Settlement Agreement, the parties had litigated this action for almost four years and were well-versed in the strengths and weaknesses of their respective positions.  The parties engaged in extensive fact and expert discovery, including the production and review of millions of pages of documents, argument on motions to compel, service of expert reports and the taking of more than 20 fact and expert depositions.  *See* ECF No. 787.[4]  The parties also briefed, argued, and had the benefit of the Court's rulings on Defendants' motion to dismiss (ECF No. 290), and a key motion relating to the antitrust market definition.  The parties engaged in extensive mediation with Judge Layn Phillips (ret.). End-Payor Class Plaintiffs and Class Counsel thus were well-positioned to assess and balance the risks of continuing to litigate with the Defendants against the benefits conferred by the Settlement.

In the Preliminary Approval Orders, the Court preliminarily approved the Settlement and approved Notice Plans for the Settlement.  *See* ECF No. 766.[5]  The Notice Administrator completed notice of the Settlement on May 18, 2018. E. Miller Decl. 6.  Class Counsel received two pending objections to the Settlement to date, one of which has been withdrawn.[6]  Shadowen Decl. ¶¶ 4-7; ECF No. 790, 794, 797. The one remaining objection, by non-class-member

---

[4] The work performed in this case is detailed in this previously-submitted Joint Declaration of co-lead counsel, and we will not repeat the detailed history here, but incorporate it by reference.

[5] The Court preliminarily approved the class definition and plan of notice over the objection of non-class member Humana and other class members represented by the same law firm.  *See* ECF Nos. 750, 753, 755, 759 and 763. Some of those class members subsequently excluded themselves from the class; the others that remained in the class have not renewed their prior objections.

[6] On April 20, 2018, Louisiana Health Service and Indemnity Company d/b/a/ Blue Cross and Blue Shield of Louisiana ("BCBSLA") objected to the settlement.  BCBSLA withdrew that objection on May 18, 2018.  ECF Nos. 790 and 797.

Orange County District Attorney is addressed in End-Payor Plaintiffs' Motion for An Order Regarding Certain Opt Out Requests (ECF No. 804) and Defendants' Memorandum Joining EPPs' Motion for An Order Regarding Certain Opt Out Requests and in Support of Final Approval of the EPP Settlement Over the Orange County District Attorney's Objection (ECF No. 805).

## II. Terms of Settlement

In the Settlement Agreement, Defendants agreed to deposit, and have deposited, up to $54,000,000 into a Settlement Fund.  Settlement Agreement ¶ 8.[7]  The Settlement Agreement allows for a draw-down of funds based on the net percentage of opt-out claims. *Id.* ¶ 5.  The parties have conferred and agreed that pursuant to the terms of the draw-down, the final net amount of the settlement is $50,229,193. Shadowen Decl. ¶ 8-11.  The Settlement Fund, and any interest earned thereon, will be used to pay court-approved attorneys' fees, costs and expenses already incurred and to be incurred in the prosecution of this litigation, including the costs of notice and claims administration.  Settlement Agreement ¶¶ 8, 11-13.  Funds remaining in the Settlement Fund after these payments will be available for disbursement to the eligible members of End-Payor Class.  *Id.*

All proceedings against the Defendants in this action, other than those incidental to the settlement process, were stayed by the Court's March 6 Order.  ECF No. 766 ¶ 21.  Upon the Settlement Agreement becoming final in accordance with its terms, End-Payor Class Plaintiffs' claims against the Defendants in this action are to be dismissed with prejudice.  Settlement Agreement ¶ 6(d).

---

[7] The full terms of the Settlement are set forth in the Settlement Agreement.

### III. Legal Standards Governing Final Approval of Settlement

Under Fed. R. Civ. P. 23(e), a court may approve a proposed settlement if it is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); s*ee also Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).  Although case law identifies laundry lists of factors courts may consider, the Second Circuit first "recognize[s] a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009), *quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).  A presumption in favor of final approval in these circumstances is consistent with the "strong judicial policy in favor of settlements, particularly in the class action context." *Id.*

Aside from these presumptions, courts in this Circuit also consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

As shown below, the proposed Settlement is entitled to a presumption of fairness and, moreover, the *Grinnell* factors weigh heavily in favor of approval.  Accordingly, the Settlement should be approved.

### IV. The Settlement Is Fair, Reasonable and Adequate

#### A. The Parties Engaged in Good Faith, Arms'-Length Negotiations

The proposed Settlement is the result of good faith negotiations between counsel for Defendants and Co-Lead Counsel for the End-Payor Settlement Classes with the assistance of an experienced mediator.  Joint Declaration of Co-lead Counsel, ECF No. 787 at ¶¶ 27-30 (the "Joint Declaration").  Counsel considered information learned during discovery, the positions taken by the parties in the pleadings and during extensive motion practice, and the Court's rulings in this case.  *Id.* at ¶¶ 15- 20.  Like all aspects of this litigation, the negotiations were hard-fought, and the proposed Settlement is the result of well-informed and zealous negotiations. *Id.* at 30-33.

#### B. The Parties Had the Benefit of Extensive Discovery

The parties reached the proposed Settlement after almost four years of litigation, including extensive discovery and motion practice.  Defendants produced hundreds of thousands of documents, and more than 20 fact witnesses were deposed.  Joint Declaration at ¶¶ 19-20. The parties also briefed and argued motions to dismiss and several discovery disputes, and took into account the Court's rulings on those motions.  *Id.* at ¶ 21. As a result, Co-Lead Counsel had the advantage of a well-developed understanding of the risks and benefits of continued litigation when agreeing to the terms of the Settlement.  *Id.* at ¶28.

#### C. Experienced Class Counsel Support the Settlement

Co-Lead Counsel have extensive antitrust and complex litigation experience, including experience litigating generic drug antitrust class actions.  *See* ECF No. 61 at pg. 15-21 (Appointment Motion, describing counsel's experience). Co-Lead Counsel have been pioneers and innovators in antitrust pharmaceutical litigation, particularly pay-for-delay cases.  *Id*.

Relying on their years of experience and their assessment of this litigation, Co-Lead Counsel recommend approval of the proposed Settlement. Joint Declaration at ¶¶ 32-36.

Given this depth of experience, Co-Lead Counsel's recommendation that the Settlement is in the best interests of the End-Payor Class is entitled to substantial weight.[8]

This is particularly true where, as here, counsel have the benefit of extensive pre-trial proceedings and have the ability to fully understand the risks and rewards of proceeding with the litigation. *See, e.g., Kelen v. World Fin. Network Nat. Bank,* 302 F.R.D. 56, 68 (S.D.N.Y. 2014) ("In exercising this discretion, courts should give proper deference to the private consensual decision of the parties," and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation.") *quoting Clark v. Ecolab, Inc.,* Nos. 07– CV–8623, 04–CV–4488, 06–CV–5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009).

Accordingly, Co-Lead Counsel's recommendation is a key factor weighing in favor of approval of the Settlement.

### D.  The Settlement Has Been Well Received

The Preliminary Approval Order provided that objections to the Settlement and notices of intention to appear at the hearing were to be submitted to the Court, with copies to Co-Lead Counsel and counsel for Defendants, postmarked no later than May 11, 2018.  ECF No. 766.  To

---

[8] *See, e.g.*, *Rolland v. Celluci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liability Litig.*, 296 F.R.D. 351, 364 (E.D. Pa. 2013) ("Because a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, courts have given considerable weight to the views of experienced counsel as to the merits of the settlement."); *In re Se. Milk Antitrust Litig.*, No. 2:08-md-1000, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013) (counsel's "collective judgment that the settlement is in the best interest of class members weighs heavily in favor of the Court's final approval of the agreement.").

date, Co-Lead Counsel have received two objections to the Settlement, one of which has been

withdrawn.  ECF No. 790, 797 (withdrawal request of 790) and 794.[9]  Likewise, only 12 class

members have requested exclusion from the class, representing less than 7 percent of the class

purchases.  Shadowen Decl. ¶10. This positive reception by the End-Payor Class, which includes

large, sophisticated insurance companies like United Health, Anthem and Health Care Services

Corp—all of whom have opted out and individually litigated other pay-for-delay claims—

evidences the fairness of the Settlement.  *See, e.g., Hill v. State Street Corp.*, No. 09–12146,

2015 WL 127728, at *8 (D. Mass. Jan. 8, 2015) (where only two objections and ten requests for

exclusion received, "[t]he very positive reaction of the Settlement Class supports the approval of

the Settlement."); *In re Processed Egg Prods.*, 284 F.R.D. 249, 298 (E.D. Pa. 2012) (absence of

objections and small numbers of opt-outs weigh in favor of approval of settlement).

### V.  The Settlement Provides Substantial Benefits to the Classes

The Settlement provides substantial consideration for the benefit of the End-Payor Class.

The Settlement Funds totaling $50,229,193, which have been invested, will be available for

disbursement to eligible Class members after payment of reasonable attorneys' fees, costs,

expenses, and service awards as approved by this Court.  Settlement Agreement ¶ 5-6.

### VI. Additional *Grinnell* Factors Support Approval

The above-listed factors demonstrate that the Settlement is entitled to a presumption of

fairness.  Application of the *Grinnell* factors – some of which overlap with the above analysis –

likewise demonstrates that the settlement is fair, reasonable and adequate.  *Grinnell*, 495 F.2d at

---

[9] The Objection by the Orange County District Attorney should be overruled for the reasons stated in ECF No. 803.  The Objection by Louisiana Healthcare should be allowed to be withdrawn.

463.  Indeed, two of the factors are the same:  the parties agreed on the settlement after

substantial discovery and the reaction of the End-Payor Settlement Class has been positive.  *Id.*

Other *Grinnell* factors likewise weigh in favor of approval of the Settlement.  This

litigation, like many antitrust litigations, is complex, time consuming, and expensive.  End-Payor

Class Plaintiffs have alleged claims under the laws of 29 states, plus Puerto Rico and the District

of Columbia, against two large, well-funded defendants.  The facts and legal issues are

extraordinarily complicated, as was apparent during the *Nexium, Provigil* and *Solodyn* trials.  If

this case were to be tried, the parties would present testimony from numerous fact and expert

witnesses on, *inter alia*, patents, antitrust economics, causation and pharmaceutical regulation.

Moreover, Defendants have denied wrongdoing and would raise a vigorous defense, and even if

there were a plaintiffs' verdict, there is considerable risk of post-trial motion practice and

appeals.  The Settlement avoids these risks, eliminates delay, avoids further expenses and

provides concrete benefits to the End-Payor Class.  Accordingly, the Settlement is fair,

reasonable and adequate, warranting approval.

## VII.      The Notice Program Was Robust

Federal Rule of Civil Procedure 23(e)(1) requires "notice in a reasonable manner to all

class members who would be bound" by a settlement.  Fed. R. Civ. P. 23(e)(1).  Notice meets

Rule 23 and due process requirements if it is "fairly apprise[s] the prospective members of the

class of the terms of the proposed settlement and of the options that are open to them in

connection with the proceedings." *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d

Cir. 2005) ("There are no rigid rules to determine whether a settlement notice to the class

satisfies constitutional or Rule 23(e) requirements…"); *see also* William B. Rubenstein,

Newberg on Class Actions, § 8:15 (5th ed. 2011) (settlement notice must be "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (citations omitted).

In its Preliminary Approval Order, the Court appointed A.B. Data, Ltd. as Notice Administrator and approved the Notice Plan and the Long and Short Form of Notices proposed by End-Payor Class Plaintiffs.  ECF No. 766.  The proposed Notice Plan included a combination of mail and publication notice, which numerous courts have held satisfy the requirements of Rule 23.[10]  Accordingly, this Court directed the Notice Administrator to implement the Plan.  *Id.*

As described more fully in the accompanying E. Miller Declaration, the Notice Administrator carried out the approved Notice Plans within the time periods set by the Court for completing Notice.  E. Miller Decl. ¶¶ 4-13.   In summary:

- *Direct First Class Mail to TPPs*:  The Notice Administrator created a mailing list of 40,876 potential TPP members of the End-Payor Class using a database of TPPs compiled from prior pharmaceutical litigations and publicly available information.  E. Miller Decl. ¶¶ 10.  The Long Form Notice was mailed to each of these potential members of the End-Payor Class via first-class mail.  E. Miller Decl. ¶ 11.

- *Media Notice Targeted to Consumers*:  The Notice Administrator caused the Summary Notice to be published in *People* and *Time* magazines.  Miller Decl. ¶ 5.  In addition, banner advertisements were placed on popular websites through Facebook, Google Networks and YouTube.  E. Miller Decl. ¶¶ 6.  The Summary Notice was also distributed as a news release.  E. Miller Decl. ¶ 5.

- *Website and Toll-Free Number*:  The Notice Administrator established and maintains a case-specific website where potential members of the End-Payor Class can access the Long Form Notice.  The website also lists the exclusion and objection deadlines; the date, time and location of the fairness hearing; and general information about the case.  E.

---

[10] *See In re Volkswagen & Audi Warranty Extension Litig.*, 273 F.R.D. 349, 351, 354-55 (D. Mass. 2011) (approving notice plan including first-class mail notice and notice by publication); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 84-85 (D. Mass. 2005) (approving notice plan that distributed direct mail to third-party payors and publication notice to the entirety of the class); *In re Remeron End-Payor Antitrust Litig.*, No. 02-cv-2007, 2005 WL 2230314, at *15 (D.N.J. Sept. 13, 2005) ("For those whose names and addresses cannot be determined by reasonable efforts, notice by publication suffices under both Rule 23(c)(2) and the Due Process Clause."); *Nichols v. SmithKline Beecham Corp.*, No. 00-cv-6222, 2005 WL 950616, at *10 (E.D. Pa. Apr. 22, 2005) (approving notice plan consisting of direct mail notice to third-party payors and summary publication notice targeted at third-party payors and consumers).

Miller Decl. ¶ 7.  The Summary Notice and Long Form Notice and the banner advertisements directed potential members of the End-Payor Class to the website for information.  E. Miller Decl. ¶ 7.  The Notice Administrator also established a case-specific toll-free number, which was provided to members of the End-Payor Class in the Summary and Long Form Notices.  E. Miller Decl. ¶ 8.

The Long Form and Summary Notices also met all legal requirements by providing an easily understood explanation of the litigation and settlement.  *See* Fed. R. Civ. P. 23(c)(2)(B); ECF No. 748-5.  They explained the case in clear, concise language and fairly apprised class members of, *inter alia*, the claims in the litigation, the material terms of the Settlement, and Class members' options in connection with the Settlement, including their opportunity to object to the Settlement.  In addition, Co-Lead Counsel and the Notice Administrator have fielded inquiries concerning the Settlement.  Accordingly, notice to the members of the End-Payor Settlement Class satisfied Rule 23.

## VIII.    The Court Should Approve the Plan of Allocation

The Court should approve the Plan of Allocation.  ECF No. 748-6. Generally, to be found "fair and reasonable," the plan of allocation "need have only a reasonable, rational basis," when recommended "by competent and experienced class counsel," whose assessment "is entitled to considerable weight." *See In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 341 (E.D.N.Y. 2005), (*citing In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) and *quoting Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 52 (E.D.N.Y. 2010) (*citing In re Sterling Foster & Co., Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 486 (E.D.N.Y. 2002)).

The Plan of Allocation (ECF No. 748-3, Ex. 4) meets this standard. In summary, the Plan allocates the Settlement proceeds pro rata based on each Class member's purchases of Aggrenox. The share of each prescription's overcharge as between the individual consumer and the

insurance provider was determined by Professor Rosenthal at Greylock.  *See* ECF No. 748-3, Ex. 2 at ¶¶ 27-39. The Settlement proceeds will be allocated to Class members who submit claims based on each member's pro rata share of purchases of Aggrenox in the Class States during the Class Period. The Plan also provides for a fair allocation of any "overages" in the event that Third-Party Payor claimants as a group, or consumer claimants as a group, recover more than their single damages. The Plan of Allocation allocates the Net Settlement Fund in substantially the same manner as plans that have been approved by courts in analogous cases and implemented fairly and efficiently. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 264 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *10 (E.D.Pa. Apr. 22, 2005); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 374 (D.D.C. 2002); *Vista Healthplan, Inc. v. Warner Holdings Company III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007).

For these reasons, the Plan of Allocation should be finally approved as well.

## IX. The CAFA Requirements have been satisfied.

The Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA") requires that the Defendants notify appropriate state and federal officials of the proposed settlement and to allow 90 days to pass before final approval of the proposed settlement may be entered. *See* 28 U.S.C. § 1715(d).  Defendants aver that such notification was given on January 18, 2018.  ECF No. 804-12. The 90-day period expired on April 18, 2018, allowing the Court to approve the settlement.

## X. The Court should approve the requested attorneys' fees, reimbursement of expenses and requested service awards for class representatives.

On April 13, 2018, End-Payor Plaintiffs moved for an award of attorneys' fees, reimbursement of expenses, and for service awards payments to Class Representatives. ECF No.

786.  As explained in that filing, counsel are seeking one-third of the total fund available for the

class, which, after opt outs, is $50,229,193.  Thus, counsel seek a fee award of $16,743,064.

Counsel additionally request reimbursement of expenses in the final amount of $439,514.59 and

service awards of $10,000 for each class representative.  For the reasons stated in the prior

motion, this amount is fair and reasonable.  Counsel for the End-Payor Plaintiffs may

additionally move for an award from any eventual set-aside as contemplated in ¶ 5(c) of the

Settlement Agreement.  End-Payor Plaintiffs have received no objections to this request.

## CONCLUSION

For the foregoing reasons, End-Payor Class Plaintiffs respectfully request that the Court

grant final approval of the proposed Settlement, award attorneys' fees, award reimbursement of

expenses, and award incentive payments to the Class Representatives.

Dated: June 18, 2018                                         Respectfully submitted,

End-Payor Class Plaintiffs

/s/*Steve Shadowen*
Steve Shadowen
HILLIARD & SHADOWEN LLP
2407 S. Congress Ave., Ste. E 122
Austin, TX  78704
855-344-3298

/s/*Marvin A. Miller*
Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910,
Chicago, IL 60603
312-332-3400

/s/*Renae D. Steiner*
Renae D. Steiner
HEINS MILLS & OLSON, PLC
310 Clifton Avenue
Minneapolis, MN 55403
612-338-4605

*Co-Lead Counsel for the End-Payor Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2018, a true copy of the foregoing document was served on counsel of record by filing the document with the Court's CM/ECF system.

*/s/ Steve D. Shadowen*
_____
Steve D. Shadowen
