1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF CONNECTICUT
2
    - - - - - - - - - - - - - - - - x
3
    IN RE:                          :  No. 3:14-md-2516(SRU)
4                                   :  915 Lafayette Boulevard
    AGGRENOX ANTITRUST LITIGATION   :  Bridgeport, Connecticut
5                                   :
                                    :  August 31, 2018
6
    - - - - - - - - - - - - - - - - x
7

8

9

10                      TELEPHONE CONFERENCE

11

12

13  B E F O R E:

14       THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

15

16

17

18

19

20

21

22

23                   Sharon L. Masse, RMR, CRR
                       Official Court Reporter
24                    915 Lafayette Boulevard
                   Bridgeport, Connecticut  06604
25                     Tel: (860)937-4177

```
 1   A P P E A R A N C E S:

 2        FOR THE PLAINTIFFS:

 3            HEINS MILLS & OLSON, P.L.C.
                  310 Clifton Avenue
 4                Minneapolis, Minnesota  55403
             BY:  RENAE D. STEINER, ESQ.
 5
             HILLIARD & SHADOWEN LLP
 6                919 Congress Avenue
                  Suite 1325
 7                Austin, Texas  78701
             BY:  DONALD SEAN NATION, ESQ.
 8
             MILLER LAW LLC
 9                115 S. LaSalle Street
                  Suite 2910
10                Chicago, Illinois  60603
             BY:  MARVIN A. MILLER, ESQ.
11

12        FOR THE DEFENDANTS:

13            WHITE & CASE LLP
                  1221 Avenue of Americas
14                New York, New York  10020-1095
             BY:  ROSS E. ELFAND, ESQ.
15
             GOODWIN PROCTER LLP
16                100 Northern Avenue
                  Boston, Massachusetts  02210
17           BY:  CHRISTOPHER T. HOLDING, ESQ.
                  ROBERT D. CARROLL, ESQ.
18
             PULLMAN & COMLEY
19                850 Main Street
                  P.O. Box 7006
20                Bridgeport, Connecticut  06601-7006
             BY:  JAMES T. SHEARIN, ESQ.
21

22        COUNSEL FOR THE ORANGE COUNTY DISTRICT ATTORNEY:

23            MEADE YOUNG LLC
                  909 Poydrass Street
24                Suite 1600
                  New Orleans, Louisiana  70112
25           BY:  JOHN ALDEN MEADE, ESQ.
```

1                    (Proceedings commenced at 3:07 p.m.)

2                    THE COURT:  Good afternoon.  Stefan Underhill

3    here.  I understand --

4                    MR. MILLER:  Good afternoon, Your Honor.

5                    THE COURT:  Good afternoon.  I understand we

6    have quite a number of counsel on the record.  I don't

7    think it's necessary to do appearances.  I think you've

8    given your names to my law clerk, and they'll be reflected

9    in the record.

10                   I wanted to have a quick call really to take up

11   the motion for an injunction regarding the restitution

12   claims in the California state court.  I'll be frank.  My

13   initial reaction to that motion was a fairly deep

14   skepticism that it was either authorized or appropriate.

15   The cases cited do seem to suggest that it may be

16   authorized under the All Writs Act, but I guess I'd like

17   to hear why it's appropriate.  In other words, why

18   shouldn't we let the ordinary course follow.  That is, we

19   have a judgment here.  That judgment would seem to bar

20   claims pending in the California state court.  Any party

21   who wishes to can move in that court to argue that res

22   judicata bars the claims to the extent that they have been

23   decided here.

24                   MR. ELFAND:  Your Honor, this is Ross Elfand on

25   behalf of the Boehringer defendants.

1           If Your Honor were to wait or allow the state

2     court to rule on this, it would be contrary to the case

3     law that's out there and that we cited.  The district

4     attorney here -- first of all, we would suffer prejudice

5     by waiting because the district attorney has admitted that

6     he intends to pursue his claims regardless of this Court's

7     judgment and regardless of how the Second Circuit rules,

8     and even if the Second Circuit were to uphold Your Honor's

9     judgment.  So waiting would just mean that the state court

10    would be -- state court proceedings would be allowed to

11    proceed.  We would subject to fact and expert discovery on

12    duplicative and extinguished claims, and we would be

13    subject to duplicative liability for likely over a year

14    unless the state court were, like you suggested, unless

15    the state court were to issue an order dismissing the

16    claims.

17          But it is not in the state court's providence to

18    decide this in these circumstances.  And that's because in

19    other cases, with factually analogous circumstances,

20    almost exactly the same circumstances, the federal courts

21    have repeatedly stated that in complex class actions,

22    where the federal court is sitting in a multidistrict

23    litigation, it is the federal court's jurisdiction and

24    authority, and the preference by Congress under the Class

25    Action Fairness Act, is for the federal courts to decide

1    the scope and extent of its own judgments and should be

2    the one to decide res judicata.

3              And, in fact, the Second Circuit itself stated

4    in *Wyly v. Weiss* -- that's the case that was relied upon

5    by the district attorney -- it said, quote:  Complex class

6    action suits present relatively unusual circumstances with

7    respect to comity towards state courts.  The risk of

8    vexatious litigation by dissatisfied litigants is higher,

9    and since the federal court is often in a better position

10   to quickly appraise the merits of a preclusion argument

11   regarding a complex suit that has already adjudicated --

12   that it has already adjudicated.

13             So Your Honor is the one who has been managing

14   this litigation for over -- for about four years now, and

15   Your Honor is the one that knows the facts of the case,

16   understands the judgment; and the state court has just

17   barely begun this case, hardly knows anything about the

18   case, does not have that extensive experience.  And in

19   those circumstances, it is the federal court that should

20   decide the scope and the extent of Your Honor's own

21   judgment.

22             And it's a pretty easy decision, frankly, at

23   least with respect to whether or not res judicata applies,

24   and that's because the district attorney has not disputed

25   it, that res judicata applies.  The defendant in the

1    opening, in our opening motion, laid out the elements of

2    res judicata and argued that it applies here; and in the

3    district attorney's opposition he did not contest that at

4    all.  So the only issue for Your Honor to decide is

5    whether or not you have the authority and the jurisdiction

6    to issue an injunction, and we recognize that to issue an

7    injunction against state court proceedings is not

8    something to be taken lightly, and it also is not

9    something -- we recognize why you would be skeptical in

10   the first instance.  But we're not asking the Court to go

11   out on a limb here.  This is not a case of first

12   impression.  In fact, the three cases we've heavily relied

13   on -- *Baldwin*, *IntelliGender* and *In Re:  American*

14   *Investors* -- had almost exactly the same circumstances as

15   here; and the courts, all three unanimously found that the

16   Court had jurisdiction to bind the state in -- the

17   attorneys general in those cases were the authority to

18   represent the state -- was not in question at all.

19          And then we cite in our opening brief, Docket

20   Entry Number 824-1, on page 9, footnote 3, a litany of

21   cases where courts have not deferred to the state court in

22   deciding res judicata because those cases were generally

23   complex class actions, and it was the federal court that

24   decided the extent and scope of its own judgment.

25          So, in short, waiting would prejudice the

1    defendants, and we will end up in the same place we are

2    today, where, absent an injunction, the district attorney

3    intends to pursue his claims in state court.  And where

4    the federal action or the class action that settled is a

5    complex, multidistrict litigation, it is the federal court

6    that should decide the scope of its own judgment.

7              THE COURT:  All right.  Just to be clear, based

8    upon your proposed order, you're not seeking that I enjoin

9    the suit in the state of California, but rather, enjoin

10   only pursuit of a restitution remedy in that matter.

11             MR. ELFAND:  That's right, Your Honor.  We're

12   seeking an injunction against the district attorney from

13   pursuing restitution claims in that state court

14   proceeding.

15             THE COURT:  Okay.  Is Mr. Meade on the phone?

16             MR. ALDEN-MEADE:  Yes, Your Honor, I am.

17             THE COURT:  All right.  Do you want to weigh in?

18             MR. ALDEN-MEADE:  Sure.  I think to back up a

19   little bit, the rendition of our position is inaccurate.

20   It's always kind of dangerous to summarize your opponent's

21   argument because you usually get it wrong.

22             We have not endeavored to ignore this Court or

23   these proceedings.  The fact that we went and filed an

24   objection, the fact that we have this present motion, the

25   fact that we filed an appeal all shows that we are, of

1      course, taking the federal -- this Court's authority very

2      seriously.  So the idea that we're ignoring anything is

3      just belied by the facts.  We're not ignoring anything.

4              The position of the district attorney is in our

5      papers, that we obviously have a disagreement on what

6      *IntelliGender* means.  We don't have to rehash the argument

7      we had at the final approval hearing.  We've acknowledged

8      that we've lost that, and that's why we're taking an

9      appeal.  But our position is that the simplest answer

10     here, the simplest path forward is to allow the defendants

11     to, as you suggested, Your Honor, assert their partial

12     defense as to part of the remedies of restitution, res

13     judicata as to restitution in California.

14             I think what's interesting here is that the

15     defendants are all already present in the California case.

16     They acknowledge that the case is going forward regardless

17     as to civil penalties and potential injunctive relief.

18     And I think it's entirely in their power to assert their

19     res judicata defense as soon as they can.  I doubt they

20     would -- they talked about prejudice.  I don't think

21     they're going to go into California and just sit on their

22     res judicata defense.  I think they're going to bring it

23     up right away, and they're going to say to the Court,

24     Well, we don't want to go into discovery and do expert

25     work on restitution because of res judicata.  So it's all

1    going to be teed up right away.  So I think the prejudice

2    they're talking about is not only speculative, but it's

3    really unlikely.

4              And there's been no argument that the California

5    courts are somehow incapable of applying res judicata to

6    our case.  We will be hearing it on both ends.  We are

7    here in front of Your Honor today, and we have filed our

8    appeal in front of the Second Circuit, and we intend to be

9    making all of our arguments there, and I guess I should

10   note for the present moment the fact that we're contesting

11   personal jurisdiction.  But the way this shakes out is

12   very simple.  As soon as we have an enforceable final

13   judgment -- and I guess they would say they have one

14   now -- they're going to file in California court right

15   away and say, We would like to have the claims asserting

16   remedy of restitution dismissed, and there's nothing to

17   prevent them from doing that.  A lot of these lawyers,

18   myself and Mr. Elfand, were all admitted and enrolled in

19   the California case.

20             I think where it gets a little complicated is

21   that the injunction they're asking for exceeds what they

22   contend is the authority of the Orange County district

23   attorney to begin with.  So they're in a pretty awkward

24   position when they say, Oh, Orange County D.A. only has

25   authority as to Orange County; nevertheless, we want you

1   to enjoin him from seeking that relief across the whole

2   state.  So they currently lied over that, and this is

3   presently, as we put in our motion papers, a very big

4   issue in California law, and we've addressed it in our

5   *Burford* and *Thibodaux* abstention section, that the

6   California Supreme Court has just accepted the Orange

7   County D.A.'s petition for review on this very point.

8          So the scope of the injunction, even were you

9   inclined to grant one, is uncertain right now, and it will

10  remain uncertain until the California Supreme Court

11  decides just how far the geographic scope of the Orange

12  County D.A.'s authority is.  So I would think that would

13  make the federal court a little gun shy about delineating

14  the injunction.

15         So I don't see the prejudice to them or how it's

16  at all ineffective for them to plead res judicata in the

17  state court.  I think it's a completely adequate approach,

18  and we disagree about whether or not -- and this is where

19  I'll get to the personal jurisdiction.  This is why we

20  filed a motion to dismiss, because we -- in our prior

21  papers, we've always been careful to maintain our

22  objections to personal jurisdiction.  And, you know,

23  whereas the main case cited by the defendants was back in

24  the 1980s, there have been a lot of subsequent decisions,

25  including in the Second Circuit, the *Schurkman* case

1    interpreting the *Baldwin-United* case thing that's really

2    constrained to its facts, but it was a very unusual

3    situation where they -- they actually created a fiction,

4    turning an inpersonam action into an in rem, and it's

5    highly unusual and it's been restricted to that fact

6    pattern, which isn't present here.  So we think that makes

7    it even more of a problem to grant the relief that the

8    defendants are asking for here.

9         As to personal jurisdiction itself, the *Flonase*

10   case, where I had the honor of representing the State of

11   Louisiana, this was exactly the same scenario.  It was

12   another paper delay, Hatch-Waxman pharmaceutical case, and

13   in that case GlaxoSmithKline sought Louisiana, the

14   Attorney General, whom I represent, filed an action in

15   state court.  GSK said that there was some partial overlap

16   between what we were asserting there and what had been,

17   they contended, already resolved in a prior class action

18   settlement.  They moved to enforce it in the Eastern

19   District of Pennsylvania against -- asking for an

20   injunction against the Louisiana Attorney General.

21        I don't know about all of these other attorneys

22   general, whether they made the case or not in every

23   instance, but in *Flonase* we did, and here we are, too,

24   which is to say that the federal court -- and this comes

25   from the line of cases in the U.S. Supreme Court starting

1    with *Fiske*, back in the -- *Missouri v. Fiske* back in the

2    '30s, which is to say that sovereign immunity and the 11th

3    Amendment -- almost coterminous but not quite -- prevents

4    the federal district court from rendering this type of

5    relief.  The district court agreed with us there, and the

6    Third Circuit in just December of last year, so less than

7    a year ago, affirmed.  Now, in full disclosure, the

8    defendants and GlaskoSmithKline have petitioned the U.S.

9    Supreme Court for a writ of certiorari, and that's

10   pending.  We have not yet opposed it.  That will be due in

11   October.  But that is a much more recent analysis of the

12   constitutional issues here that the defendants, I believe

13   in their current papers, have just kind of glossed over.

14           So that's essentially -- we think it's a real

15   hornet's nest for this Court to grant the relief that is

16   being requested, and it doesn't really seem to make much

17   sense given the perfect adequacy of allowing the

18   defendants, who are already present, including with their

19   current counsel, just to plead res judicata in California.

20   So I can go further, but I think that's probably all you'd

21   want to hear.

22           THE COURT:  So let me just understand whether

23   you -- if the Second Circuit affirms the judgment in this

24   case, would res judicata bar the pursuit of restitution in

25   the California state court?

1            MR. ALDEN-MEADE:  Yeah, I think what would

2    happen is -- assuming we don't take a writ to the U.S.

3    Supreme Court  -- yeah, I think that's what happens, is

4    that I guess the final analysis is that the federal courts

5    would be able -- and, if necessary, the U.S. Supreme

6    Court -- gets to say how much sovereignty the states have

7    left.  And if these actions, the judgment here, if it is

8    finally upheld to be valid by the federal courts as to

9    restitution, yes, I think we'd be stuck with that.  I

10   haven't taken my client's temperature on that one, but it

11   seems -- I can't currently think of a way around that.  I

12   think if jurisdiction was proper to begin with, and the

13   judgment is valid and final as to the California claims

14   for restitution, I think -- yeah, I think we're stuck.  We

15   would just be stuck with civil penalties and injunctive

16   relief, and that's putting aside the issue of the

17   geographic scope, whether it's just Orange County or the

18   whole state of California.

19            But that's what we would expect to find, is they

20   move in California state court res judicata, and our only

21   defense against the res judicata plea by them would be to

22   say that the federal courts didn't have jurisdiction,

23   which is why we're here right now.  So if we lose, and we

24   lose by the Second Circuit, and if we either lose again at

25   the Supreme Court or we don't go, yeah, that's the end of

1    the road.

2                   MR. ELFAND:  Your Honor, may I respond to that?

3                   THE COURT:  Sure.

4                   MR. ELFAND:  So that's the first we've heard

5    that, obviously, because we sent a letter asking what

6    their position was in light of the judgment, and we didn't

7    get a response.  And it somewhat contradicts what was said

8    at the fairness hearing, which is why we thought the

9    motion was necessary here.  And I think the last statement

10   by counsel is important, which was that their only defense

11   would be that this Court lacked jurisdiction.  Well, that

12   essentially means that they're going to -- they're going

13   to raise this issue again, even though the Second Circuit

14   and the U.S. Supreme Court, if it takes the case, would be

15   the last word on that issue.

16                  And so we are in a position where we have -- at

17   least now we know we have confirmation that we're in

18   agreement that res judicata would apply, but what we don't

19   have is agreement that the Second Circuit appeal will be

20   the end of that issue.  And so that means that the case in

21   state court is going to proceed, and unless counsel here

22   says that he won't raise the issue again in state court,

23   we're going to have a state court deciding on a federal

24   court's jurisdiction, which is not what the case law

25   states is appropriate.  And it's this Court's -- this

1    Court is the one that should be deciding on the scope of

2    its own judgment and its own jurisdiction; and the Second

3    Circuit can review that, certainly, but that issue should

4    not be allowed to be raised again in state court.

5            MR. ALDEN-MEADE:  Well, this is John Alden-Meade

6    again.  I don't think that's quite what we're saying.

7    We're not going to be asking a state court to decide the

8    federal court's jurisdiction.  I mean, the way I

9    understand this working is that we are making our argument

10   here, in federal court, about why the -- we lost the first

11   part about how we believe that we had, by filing our own

12   suit, already opted out.  We know we lost that.  We're

13   taking an appeal on that.  And here as to -- I don't want

14   to bleed back into the other argument because I've

15   acknowledged that at least as it stands right now we've

16   lost.  We hope to get the Second Circuit to reverse, and I

17   don't feel bad about saying that.  We're within our rights

18   to take an appeal, and our contentions we believe have a

19   lot of merit.  Nevertheless, if the federal courts decide

20   that we had not opted out essentially by filing a case

21   prior to class certification, that this Court did have

22   jurisdiction over all those claims, I don't think we can

23   attack that.

24           I'm not sure what you -- I mean, defendants seem

25   to be crafting an argument for me that I haven't made, and

1    I'm not really sure how it works.  And so it makes it kind

2    of hard to respond to.

3            I think what we're here for today is just to say

4    should this injunction be issued, and there's a lot of

5    problems with it, you know, the scope of the injunction,

6    and the piecemeal fashion of it, the *Colorado River*

7    aspect, and compared to the adequacy of the remedy of

8    applying -- of them pleading res judicata in the state

9    court action, it seems like it's not worth the trouble.

10   It seems to be like it's just creating more problems than

11   it solves, because there's no prejudice to the defendants

12   to allow them to assert in California.  So that's where we

13   are.

14           And I guess back to Your Honor's original

15   question, can California disregard what the federal courts

16   say about the interplay between the two sovereigns?  No.

17   The U.S. Supreme Court gets to be the ultimate arbiter of

18   the balance and sovereignty between the federal government

19   and the states, and California can't ignore that.  You

20   know, they may be unhappy with it, but ultimately it's the

21   federal courts that get to make that decision.

22           THE COURT:  Well, okay.  Let me ask a practical

23   question; and, Mr. Meade, I'm pretty much directing this

24   at you, I guess, in the first instance at least.  If you

25   acknowledge that the Second Circuit is going to decide

1    these issues one way or the other, and if they affirm that

2    you're bound by that, why would you not basically

3    forestall the dispute by putting the restitution claims on

4    pause and making clear to the state court that you intend

5    to pursue those in the event that you're successful on

6    your appeal?  The case is going to go forward on the other

7    claims.  You'll get discovery.  I think the discovery will

8    be the same.  There may be perhaps some differences, but

9    most of the discovery is going to be the same.  Most of

10   the arguments are going to be the same.  And there will

11   come a point, presumably relatively soon, when we'll know

12   what the Second Circuit is doing, and you'll either be

13   freed up from --

14            MR. ALDEN-MEADE:  I think that's right, Your

15   Honor.  I think that's exactly correct.  I mean, we are

16   not presently engaged in that discovery.  Everyone is kind

17   of waiting.  Everyone acknowledges that what we're really

18   waiting for is to see what the California Supreme Court is

19   going to do regarding the scope, geographic scope of

20   authority.

21            THE COURT:  But that issue seems independent of

22   the restitution issue.  In other words, you're seeking

23   civil penalties --

24            MR. ALDEN-MEADE:  Yes, it is.

25            THE COURT:  -- on behalf of either everybody in

1    California or only those in Orange County.  And so that

2    issue is not going to be mooted out by putting the

3    restitution claims on hold.

4              MR. ALDEN-MEADE:  Right.  And so maybe I'm not

5    understanding your question.  Could you ask it one more

6    time?

7              THE COURT:  Yes, sure.  So one approach to this

8    whole problem is for you and your client to say, We

9    voluntarily agree to hold the restitution claims pending

10   decision by the Second Circuit on our appeal of Judge

11   Underhill's ruling.  Should you --

12             MR. ALDEN-MEADE:  Yes, I think something like

13   that can work.  I'm sorry, are you finished?

14             THE COURT:  Well, I was just going to say if you

15   did that, I don't need to enjoin anybody from pursuing

16   those claims because they're being held in abeyance.  You

17   seem to acknowledge that if you lose the appeal, that res

18   judicata would bar the restitution claims; and obviously

19   if you win the appeal, then there's no basis for an

20   injunction.  So it just seems to me that we're creating a

21   problem of a magnitude that literally people are talking

22   about cert to the Supreme Court about when the solution

23   may be simply a notice to the state court in California:

24   We would, with the Court's permission, like to put our

25   restitution claims on hold pending the outcome of the

1    Second Circuit decision.

2              MR. ALDEN-MEADE:  Now I understand.  And so I

3    don't know that it got put in front of Your Honor, maybe

4    it was one of the defendants' exhibits.  I know I've seen

5    it a bunch of times, but I don't know if it got submitted

6    to you.  But their letter request to us was to just

7    outright dismiss our restitution claims, and that's

8    obviously premature because we have a right to an appeal,

9    which we've taken, to the Second Circuit, and we're not

10   going to preemptively assume we're going to lose our

11   appeal and dismiss our restitution claims in state court.

12   I mean, that may be where we wind up, but their request

13   was highly premature.  They didn't say, Hey, can we put a

14   hold on this pending the outcome of your appeal?  And,

15   granted, they asked us before we appealed.  But the whole

16   point is we have our appellate rights; we are pursuing

17   them; and we declined their request because, like I said,

18   it's premature.

19             Now, what Your Honor has suggested, putting

20   things on hold, that's already happening.  There's nothing

21   happening with either this case or the *Niaspan* case, which

22   is another case brought by the Orange County D.A., not the

23   one where the scope of the authority is going up to the

24   California Supreme Court.  But we're not engaging in

25   discovery right now.  We're not retaining experts.

1          We just -- at our last status conference we put

2    everything off again.  So these cases are at a standstill.

3    So there's nothing for us to stop doing.  We're not in

4    medias res; we're in a holding pattern.  So I think we're

5    fine with that.

6          THE COURT:  Well, okay.  My suggestion is maybe

7    a little different than what you're talking about.  I

8    mean, any case can kind of hit a lull and, for whatever

9    reason, not going to be actively litigated at any time.  I

10   guess what I'm suggesting is something more formal where

11   there's a notice or some document filed with the Court

12   saying it's our intention not to proceed at the moment on

13   the restitution claim pending the outcome of the appeal.

14   And then, presumably, with an agreement to give notice to

15   me, frankly, so that in the event that that kind of hold

16   is lifted, I can decide whether I need to issue an

17   injunction or not.

18         Otherwise, I don't need to enjoin -- I don't

19   need to enjoin what is kind of fairly formally put on hold

20   or stayed, and that eliminates a lot of difficult

21   decisions here and another appeal, presumably, and who

22   knows what.  It, frankly, will reduce the tension between

23   the federal court system and the California state court

24   system, which I would be interested to reduce.

25         So I would throw that out as an option that I

1    hope you'll consider, and obviously I'm not asking for a

2    decision now.  You're going to have to consult with your

3    client.  But I would hope that all the parties would

4    consider that as a way out of the problem.

5         And I'm happy to hear from the defendants here

6    if they have any concerns about whether that would, in

7    fact, be adequate or would moot out the injunction.  But

8    it seems to me everybody ought to be thinking along those

9    lines because it sounds like perhaps that's what we're

10   doing kind of informally anyway.

11        MR. ELFAND:  Your Honor, now speaking for the

12   Boehringer defendants, without having discussed this with

13   our co-defendant, we would certainly be open to -- that

14   would resolve one of our main concerns, that discovery

15   would proceed.  It does not resolve the issue of

16   duplicative liability hanging over our head in state court

17   because once the -- we would want an agreement -- an

18   agreement to hold it in abeyance is one aspect.  We would

19   also want an agreement that once the Second Circuit appeal

20   is resolved, either by the Second Circuit or with the

21   Supreme Court refusing to take the case, or addressing it,

22   but once it's been affirmed, if Your Honor's judgment has

23   been affirmed, an agreement that those restitution claims

24   will be dismissed.  Otherwise, the duplicative liability

25   will be hanging over us given statements by counsel for

1   the district attorney at the fairness hearing and some

2   hedging here as well that there still may be motion

3   practice in state court where the state court would have

4   to decide whether or not there was jurisdiction in the

5   first place.  And maybe counsel has conceded that issue at

6   this point, but I think the agreement to dismiss at the

7   end of the appeal, if the judgment has been affirmed, will

8   allay a lot of our concern here.

9           THE COURT:  Well, obviously that would wrap

10  everything up; but for present purposes, if there is a

11  formal stay of the restitution claims, call it a stay,

12  hold, whatever, some formal acknowledgment to the state

13  court that those claims are not going to be pursued

14  pending the appeal, I can simply put this motion for an

15  injunction up on the shelf and wait until the appeal is

16  decided and/or we get a notice saying there's some

17  activity in the state court case regarding restitution.

18  That's when the issue would become ripe again, it seems to

19  me.

20          MR. ALDEN-MEADE:  Let me just add, Your Honor,

21  that I didn't see the outline of the agreement, but not

22  having the district attorney himself with me right now,

23  I'd be happy to consult with him on this, but this is --

24  every elected official, you know, every constitutional

25  officer, you know, really jealously guards their

1    prerogative, and so I do want to make sure that whatever

2    agreement we hammer out, that he's on board with, which is

3    to say -- and I think this makes sense, it's recognizing

4    that the federal court system is the ultimate arbiter of

5    the balance of sovereignty between two systems.

6           So I don't want to warrant that I have that

7    consent from him right now, but that's I would think what

8    we would turn to right away.

9           THE COURT:  All right.  Why don't we do this,

10   then.  I'm obviously not deciding the issue today, and I'm

11   going to have to write on it in the event that I do need

12   to decide it.  But can the parties get back to me in, say,

13   a week and let me know whether this is at least worth

14   further consideration?

15          In other words, I'm hopeful of, frankly,

16   avoiding a bunch of writing here on a complex issue.

17          MR. ALDEN-MEADE:  We're certainly amenable to

18   that, Your Honor.  This is a holiday weekend.

19          THE COURT:  True.

20          MR. ALDEN-MEADE:  A week, I think I can get that

21   done; but, again, I haven't talked to my client.  That

22   would certainly be our goal.

23          THE COURT:  Let's go a little beyond a week.

24   How about if we say -- how about September 12?

25          MR. ALDEN-MEADE:  I think that should work.

1          THE COURT:  Does that work?

2          MR. ELFAND:  That works for the Boehringer

3    defendants.

4          THE COURT:  It does?  Okay, good.

5          MR. ALDEN-MEADE:  One other thing, Your Honor.

6    Just on the motion side of stuff, in the event we are

7    unable to reach an agreement, our opposition was obviously

8    only couched in the second alternative, and we also had

9    the 12(b)(2) motion to dismiss and motion for stay.  So I

10   didn't know if, in the absence of an agreement, if we

11   needed to give the defendants a briefing opportunity to

12   oppose that?  And I got a reply last night in response to

13   their motion.  I don't know if we would get a reply in

14   support of ours.  Maybe we can cross that bridge on the

15   12th, but --

16         THE COURT:  Well, how about this?  If we don't

17   have an agreement on the 12th and you want to file one

18   last pleading, do that by the 19th.

19         MR. ALDEN-MEADE:  Okay.

20         THE COURT:  All right?

21         MR. ELFAND:  Yes, that makes sense.

22         THE COURT:  And good luck.  I know this is

23   something that you're going back and forth on, but it

24   would be helpful to me to see whether you can resolve it

25   in this way, which I think does perhaps preserve

1       everybody's interests, at least pending the Second

2       Circuit's decision.

3                    Okay.  So anything further on that topic?

4                    (No response.)

5                    All right, very good.

6                    I don't know that we have everybody on the phone

7       that I need to have for this question, but just in terms

8       of my case management on this end, perhaps Boehringer can

9       comment on this.

10                   In my view, at this point, I can close out any

11      case that sought class action relief.  Is that a fair

12      statement?

13                   MS. STEINER:  Your Honor, this is Renae Steiner

14      for plaintiffs.  Maybe not.

15                   THE COURT:  Oh.

16                   MS. STEINER:  We just filed a motion for a

17      Rule 7 bond, and so I'm not sure what would happen if you

18      closed the cases.

19                   THE COURT:  Okay.  I haven't seen that motion,

20      but I'll take a look at it.

21                   Okay.  If you could let me know everybody's

22      views on that, that would be helpful; that is, whether I

23      can close those cases out or not.  That would be helpful.

24                   MR. ELFAND:  Will do, Your Honor.

25                   THE COURT:  Anything else from any of you?

1          MR. ALDEN-MEADE:  No, Your Honor.

2          MR. ELFAND:  No, Your Honor.

3          THE COURT:  Best of luck.  Thanks for calling

4   in.  Take care.

5          (Proceedings adjourned at 3:47 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


No. 3:14-md-02516(SRU)
In Re:  Aggrenox Antitrust Litigation


         I, Sharon L. Masse, RMR, CRR, Official Court

Reporter for the United States District Court for the

District of Connecticut, do hereby certify that the

foregoing pages are a true and accurate transcription of

my shorthand notes taken in the aforementioned matter to

the best of my skill and ability.



                    September 9, 2018


                    /S/ Sharon L. Masse
                 Sharon L. Masse, RMR, CRR
                   Official Court Reporter
                   915 Lafayette Boulevard
               Bridgeport, Connecticut  06604
                    Tel: (860)937-4177