UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE AGGRENOX ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL END-PAYOR ACTIONS | No. 3:14-md-02516 (SRU) |

## RULING ON PENDING MOTIONS

The Orange County District Attorney ("OCDA"), purporting to act on behalf of the People of the State of California, has moved for relief from the order of this court requiring OCDA to post an appeal bond. That motion (doc. # 857) is grounded on Rules 59 and 60 of the Federal Rules of Civil Procedure, and is premised on the supposed lack of personal jurisdiction over OCDA and the limitations of sovereign immunity. The OCDA has separately renewed its motion to dismiss for lack of personal jurisdiction (doc. # 854), which it filed after filing a notice of appeal of the merits of this case, and which it claims the court "appears to have forgotten." Because none of OCDA's arguments has merit, the motions are denied.

### I. Background

On April 23, 2018, OCDA appeared in this case by way of "special appearance made solely for purposes of objecting to the Settlement Agreement . . . between the defendants and the end-payor plaintiff class . . ., and without making a general appearance or waiving personal jurisdiction." (Doc. # 793 at 1.) Thereafter, OCDA did not limit its arguments to issues of personal jurisdiction[1] over OCDA (which no party had ever asserted), but instead briefed and

---

[1] A special appearance is one made to contest the personal jurisdiction of the court without thereby submitting to the personal jurisdiction of the court. Black's Law Dictionary 119 (10th ed. 2014). Special appearances have been

extensively argued the legal effect of its filing of a California state court action on the ability of this court to grant class certification in the pending multi-district litigation, the merits of the Settlement Agreement, the applicability of sovereign immunity, and the impact of res judicata in this court and in the California state courts. *See, e.g.,* (doc. ## 794, 810, 819, 829). After an extensive oral argument, *see* (doc. # 823 at 5–25), the court rejected the objections made on behalf of the People of California "for the reasons I think adequately set forth in colloquy with counsel." (*Id.* at 25.)

The court entered an order granting judgment (doc. # 821), and OCDA filed a notice of appeal from that order and judgment. (Doc. # 829.) The End-Payor Plaintiffs filed a motion to require the appellants to post an appeal bond pursuant to Federal Rule of Appellate Procedure 7. That motion was granted with respect to OCDA for the reasons set forth in a written ruling. (Doc. # 856.)

Following the filing of OCDA's notice of appeal, it filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, an opposition to the motion for bond. (Doc. # 854.) That motion did not actually raise the issue of personal jurisdiction over OCDA or California residents, but instead argued that by filing "its own action in California state court asserting claims on behalf of The People of The State of California . . . , the People of the State of California were no longer 'absent' in the context of Federal Rule of Civil Procedure 23, and were thus ineligible for inclusion in the class." (Doc. # 854-1 at 1.) The issues of personal jurisdiction and the proper class definition under Rule 23 are obviously distinct. The motion did

---

abolished in federal court by Rule 12 of the Federal Rules of Civil Procedure. *Id.* Even when a valid personal jurisdiction defense exists, the defense can be waived by conduct if the objecting party litigates the case on the merits. *See Hamilton v. Atlas Turner, Inc*, 197 F.3d 58, 62 (2d Cir. 1999); *see also Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010). Thus, once OCDA briefed and argued the merits of the Settlement Agreement, it submitted to the jurisdiction of this court.

argue that the order to post an appeal bond was invalid because OCDA is protected by sovereign immunity.

## II.     Standard of Review

Motions for reconsideration pursuant to Rule 59 will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 at 790).

Rule 60 grants courts the discretion to set aside a final judgment in "exceptional circumstances." *Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (citing *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). The Rule provides that a district court may relieve a party from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

**III. Discussion**

OCDA raises two principal arguments in support of its motions attacking the order to post an appeal bond: lack of personal jurisdiction and sovereign immunity.

A. Personal Jurisdiction

OCDA has never made a meaningful argument that this court lacks personal jurisdiction over any party. In its opposition to the End-Payors motion to reject certain opt-out requests, OCDA made the following conclusory statement: "In addition to lacking subject matter jurisdiction, this Court also lacks personal jurisdiction over the OCDA, acting on behalf of the People of California." (Doc. # 810 at 4.) And in its late-filed motion to dismiss for lack of personal jurisdiction,[2] it made another conclusory statement: "But this Court does not have personal jurisdiction over the sovereign state of California." (Doc. # 854-1 at 2.) That is the total support for whatever argument OCDA has for this court lacking personal jurisdiction over OCDA, the People of California, or anyone else. The personal jurisdiction argument is legally frivolous and is rejected.

---

[2] This court has limited authority to act upon a motion that has the potential to deprive the Court of Appeals of authority to hear and decide an issue raised by a notice of appeal. *See Negron v. United States*, 394 F. App'x 788, 792 (2d Cir. 2010). Certainly, this court could not grant the late-filed motion to dismiss because the personal jurisdiction issue has arguably been raised by the appeal from the judgment. The denial of OCDA's late-filed motion should have no effect on the Court of Appeals' ability to reach the issue because that denial adheres to the ruling challenged on appeal.

4

B. Sovereign Immunity

With respect to the question of requiring the posting of an appeal bond, the OCDA raises two basic sovereign immunity arguments: (1) the Eleventh Amendment includes immunity from having its treasury taxed (doc. # 854-1 at 4); and (2) principles of state sovereignty and federalism counsel against requiring an appeal bond (*id.* at 5).

The first argument fails because no party has brought a claim against the OCDA in federal court. Had OCDA been sued on a claim for which it, or the State of California, was protected by Eleventh Amendment immunity, the court would have dismissed the claim. That simply did not occur in this case; OCDA voluntarily appeared in this case to object to the merits of the Settlement Agreement and to argue that the Rule 23 class could not legally include any California residents.

The second argument also fails because neither state sovereignty nor principles of federalism are implicated by the voluntary actions of OCDA that led to the appeal bond requirement. When a state or a state entity appears in or initiates federal litigation and acts in a way that subjects it to sanctions, attorneys' fees, costs, or bond requirements, the federal courts are not without the power to impose those consequences on the state. *See Lightfoot v. Walker*, 797 F.2d 505, 507 (7th Cir. 1986) (affirming the district court's ruling to impose an appeal bond on the State of Illinois); *see also Gagne v. Maher*, 594 F.2d 336, 342 (2d Cir. 1979), *aff'd*, 448 U.S. 122, (1980) (affirming an award of attorneys' fees against the Commissioner of Social Services of the State of Connecticut).[3] In effect, OCDA and/or the State of California waived the

---

[3] The OCDA's reliance on *Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 255 (N.D.N.Y. 2002), is unavailing. In *Pataki*, the court's decision to waive a supersedeas bond requirement for the State of New York was based primarily on the State's assurances that it would satisfy any judgment after the appeal. *Id.* at 254–55. In this case, the OCDA makes no such assurances. To the contrary, the OCDA states that, "the People of the State of California, as a sovereign authority with the ability to tax its citizens…are clearly able to pay appellee's costs if the appeal is unsuccessful. But of course, the constitutional issues are real, and it is unlikely anyway that such costs would be awarded to EPPs in the first place." (Doc. # 854-1 at 7.)

5

protections of sovereign immunity in this particular case by voluntarily seeking to involve itself in the litigation. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002) ("[W]here a state voluntarily become[s] a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the [Eleventh] Amendment); *see also In re: Charter Oak Assocs.*, 361 F.3d 760, 767 (2d Cir. 2004) ("[a] state is deemed to have invoked the court's jurisdiction when it has made a voluntary appearance in federal court."); *State of New York v. Oneida Indian Nation of New York*, 2007 WL 2287878, at *9 (N.D.N.Y. Aug. 7, 2007) ("The Nation did not ask for judicial review, Plaintiffs initiated this action themselves. Consequently, the Nation's counterclaims cannot be blamed for subjecting the State to the 'indignity' of being haled into court."). Although the procedural histories of those rulings are different than this case, the doctrine of waiver by litigation holds that a state may waive its sovereign immunity defense by voluntarily appearing in federal court. *See Oneida Indian Nation*, 2007 WL 2287878, at *7. Thus, the OCDA cannot avoid the resulting consequences by a claim of sovereign immunity made only <u>after</u> the court has imposed an order that the OCDA could have avoided by remaining on the sidelines of this case.[4]

**IV.     Conclusion**

OCDA made a series of frivolous arguments regarding the merits of the settlement and the power of this court to hear and decide the multi-district litigation then pending. For most of those arguments, OCDA could cite not a single authority in support of its position. In my view, OCDA is unlikely to prevail on appeal and then likely to resist paying costs to the prevailing

---

[4] Furthermore, it is not even apparent that the requirement to post a bond is subject to a sovereign immunity bar; a bond secures a future contingent payment, it does not order the OCDA or the state to pay anything now. If the OCDA prevails on appeal, it will have no obligation to pay anyone anything.

6

party.  The requirement to post a bond is fully justified and the requirements of Rules 59 and 60 are not met.

The pending motions are therefore denied.  The clerk is directed to inform the Court of Appeals of the issuance of this decision.

So ordered.

Dated at Bridgeport, Connecticut this 25th day of February 2019.

/s/ STEFAN R. UNDERHILL  
Stefan R. Underhill  
United States District Judge